HEALY & BAILLIE, LLP
Attorneys for Plaintiff
61 Broadway
New York, NY 10006
(212) 943-3980
Richard V. Singleton (RS-9489)



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IROQUOIS GAS TRANSMISSION SYSTEM L.P.,<br><br>                                   Plaintiff,<br><br>-against-<br><br>ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LTD., Hamilton, Bermuda; CERTAIN UNDERWRITERS AT LLOYD'S; AON RISK SERVICES OF TEXAS, INC.; and AMERICAN HOME ASSURANCE CO.,<br><br>                                   Defendants. | (ECF Case)<br><br>05 Civ. 2149 (JSR)<br><br>**SECOND AMENDED COMPLAINT IN ACTION FOR DECLARATORY JUDGMENT** |

Plaintiff, Iroquois Gas Transmission System L.P. (hereinafter "Iroquois"), by its attorneys Healy & Baillie, LLP, complaining of Defendants, Associated Electric & Gas Insurance Services Ltd., Hamilton, Bermuda (hereinafter "AEGIS"), Certain Underwriters at Lloyd's (hereinafter "Lloyd's Underwriters"), Aon Risk Services of Texas, Inc. (hereinafter "Aon"), and American Home Assurance Co. ("American Home"), alleges as follows:

1.  This is an action for money damages and for a declaratory judgment pursuant to 28 U.S.C. § 2201.

2.	This Court has admiralty jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1333 because the instant matter concerns insurance primarily applying to vessels engaged in commerce upon the navigable waters of the United States.

3.	Additionally and alternatively, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 in that any claims that are not within this Court's admiralty jurisdiction are so related to claims within such jurisdiction that they form a part of the same case or controversy within the meaning of Article III of the Constitution.

4.	Additionally and alternatively, this Court has diversity jurisdiction over the claims asserted herein pursuant to 28 U.S.C. §1332, on the grounds that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states, and/or of a foreign state.

5.	Plaintiff is a limited liability partnership organized and existing under the laws of the State of Delaware, with its principal place of business at 1 Corporate Drive, Shelton, Connecticut 06484.

6.	Defendant AEGIS is a corporation organized and existing under the laws of the Commonwealth of Bermuda, with an office and place of business at 10 Exchange Place, Jersey City, New Jersey 07302.

7.	Defendant AEGIS is subject to jurisdiction in the State of New York and has appointed an agent for service of process in New York.

8.	Defendants Lloyd's Underwriters are insurers and underwriters obligated to provide coverage pursuant to an insurance policy issued through Aon Risk Services of Texas, Inc. for the period from May 1, 2002 through May 1, 2003, bearing the number

ARS-3246 and subject to Insuring Conditions identified as LE0280715. A list of each of these insurers and/or underwriters and their relative shares of cover under this contract of insurance, as is relevant to coverage under Section 1A of said policy, is attached hereto as "A."

9. Defendant Lloyd's Underwriters are subject to jurisdiction in the State of New York and have appointed an agent for service of process in New York.

10. Defendant Aon is a corporation organized and existing under the laws of the State of Texas with its principal place of business at 200 East Randolph Street, Chicago, Illinois. Aon has numerous offices in the State of Texas and transacted business relevant to the instant action at its office in Houston, Texas.

11. Defendant Aon is subject to jurisdiction in the State of New York and has appointed an agent for service of process in New York.

12. Defendant American Home is a corporation organized and existing under the laws of the State of New York with its principal place of business at 70 Pine Street, New York, New York.

13. Defendant American Home is subject to jurisdiction in the New York, has appointed an agent for service in New York, and may be found in New York.

14. Venue is proper in that defendants are corporations or other entities subject to jurisdiction within the Southern District of New York.

## THE CONSTRUCTION CONTRACT

15. On April 12, 2002, Iroquois, through its agent, Iroquois Pipeline Operating Company, entered into a contract with Horizon Offshore Contractors, Inc. (hereinafter

"Horizon") for the construction of a 34-mile underwater natural gas pipeline from Northport, New York to Hunts Point, New York ("the Contract").

16. Pursuant to § 12 of the Contract, Horizon was obligated to maintain various insurance policies in accordance with the terms and conditions of Exhibit G to the Contract.

17. Section 2.4 of Exhibit G to the Contract obligated Horizon to name Iroquois as an additional assured on Horizon's variously enumerated insurance policies.

18. Section Clause 2.4.2 of Exhibit G to the Contract provided that the coverage Horizon was contractually bound to provide Iroquois was deemed to be primary coverage in relation to other policies held directly by Iroquois.

19. Pursuant to its contractual obligation, Horizon named Iroquois as an additional assured on various policies held by Horizon, including the following:

    (a)    an AEGIS Policy providing the first layer of applicable insurance coverage extending to a limit of $1,000,000 (hereinafter the "AEGIS Policy");

    (b)    an American Home policy providing excess cover beyond the AEGIS Policy to a limit of $10,000,000 (hereinafter the "American Home Policy"); and

    (c)    an excess liability insurance policy providing excess cover beyond the aforementioned American Home excess policy to a limit of $140,000,000, underwritten by Navigators Insurance Co., American Home

Assurance Co., Liberty Insurance Underwriters and XL Specialty Insurance Co. (hereinafter the "Conglomerate Excess Policy").

20. The American Home Policy and the Conglomerate Excess Policy are follow-on policies to the AEGIS Policy with some variations not here relevant.

21. Horizon also procured an additional policy of hull insurance underwritten (as is relevant here) by the Lloyd's Underwriters. The policy covers the period from May 1, 2002 through May 1, 2003 and bears the number ARS-3246. This policy is hereinafter referred to as the "Lloyd's Hull Policy."

22. Aon issued the AEGIS Policy, the American Home Policy, the Conglomerate Excess Policy and the Lloyd's Hull Policy from its office in Houston, Texas.

23. Horizon is the named insured under all of the foregoing policies, and all of the foregoing policies indicate that Horizon's address is in Houston, Texas.

24. Horizon procured all of the foregoing policies from Aon within the State of Texas, and Aon delivered all of the foregoing policies within the State of Texas.

### THE OCCURRENCE

25. On or about February 27, 2003, while performing plowing work to bury the pipeline in the bottom of Long Island Sound pursuant to the Contract, the anchor of the pipe-lay barge GULF HORIZON, belonging to Horizon, allegedly snagged and damaged an underwater electrical cable belonging to the Power Authority of the State of New York ("NYPA"). This incident is hereinafter referred to as the "Occurrence."

26. The GULF HORIZON is named as an insured vessel under the AEGIS Policy.

27. The GULF HORIZON is named as an insured vessel under the Lloyd's Hull Policy.

28. Shortly after the Occurrence NYPA placed Iroquois on notice that it intended to hold Iroquois fully responsible for all damage resulting from the incident.

29. On or about August 2003, Horizon commenced litigation in the United States District Court for the Southern District of Texas under the Shipowner's Limited Liability Act ("Act") seeking exoneration from or limitation of liability with respect to the cable damage.

30. Iroquois and NYPA filed claims in that action as they were required to do under the Act. NYPA claimed for its damages, and Iroquois claimed for indemnity for any liability it may be found to have to NYPA.

31. On or about July 21, 2004, NYPA filed cross-claims against Iroquois seeking to recover in full from Iroquois for the cost of repairs and other losses in connection with the Occurrence.

32. On or about October 13, 2004, NYPA filed a motion for summary judgment against Iroquois.

## THE AEGIS POLICY

33. The cover note to the AEGIS Policy issued in favor of Iroquois recites under "OTHER TERMS, CLAUSES AND CONDITIONS" that AEGIS agreed to such coverage as follows:

2.  ADDITIONAL INSURED CLAUSE AND OTHER PROVISIONS

> i.) The insured has privilege to name others as an additional insured for their respective rights and interests and/or waive any rights of recovery, but only to the extent as may be required under contract or agreement.

34. AEGIS, agreed to provide primary cover to Iroquois pursuant to the Contract, and the cover note to the Horizon AEGIS Policy further states the following with respect to primary coverage:

> iii.) It is agreed that in respect of additional insured(s), the coverage provided hereunder shall be primary in respect of any coverage carried by said additional insured(s) but only to the extent as may be required by contract or agreement.

35. The coverage Horizon was contractually bound to provide Iroquois included cover for the legal cost of defending actions brought against the assured(s), which includes Iroquois.

36. The AEGIS Policy provided coverage for $950,000 excess of $50,000 per accident/occurrence pursuant to the "Declarations" of the policy.

37. Clause 4 of the "Declarations" of the policy states:

**SUM(S) INSURED**

> US$950,000 any one accident or occurrence, including legal and survey fees and expenses, subject to a general aggregate limit of liability of US$15,000,000 per period.

38. Clause 5 of the "Declarations" of the policy states:

**EXCESS**

> US$50,000 any one accident or occurrence, including legal and survey fees and expenses.

39. The foregoing clauses set out the obligations of AEGIS to Iroquois, which include, *inter alia*, payment of legal fees incurred by Iroquois respecting covered risks.

## THE LLOYD'S HULL POLICY

40. The Lloyd's Hull Policy incorporates "Insuring Conditions" denominated as "LE0280715." Said Conditions provide in pertinent part as follows:

> It is understood and agreed that where required by contract, bid or work order, Additional Assured and/or Waivers of Rights of Subrogation are automatically included hereunder, subject further to Notice Clauses as may be required by written contract only and that coverage provided hereunder shall be primary in respect of any coverage carried by said additional assureds where required by written contract.

41. The Lloyd's Hull Policy grants coverage to other parties identified as Additional Assureds when required by contract, bid or work order.

42. Iroquois is an Additional Assured within the meaning of the foregoing provision.

43. Accordingly, the Lloyd's Hull Policy is obligated to provide coverage that is primary in respect any coverage carried by Iroquois.

44. The obligation of Certain Underwriters at Lloyd's to provide cover to Iroquois additionally includes the obligation to pay legal fees and costs incurred by Iroquois in respect of covered risks.

## THE AMERICAN HOME POLICY

45. The American Home Policy provides (in pertinent part) that "the unqualified word Assured whenever used includes any person or organization that the Named Insured is obligated to include as an additional Assured under this policy."

46. Iroquois is accordingly an "Assured" entitled to coverage for claims arising out of the Occurrence such as and including the claims asserted against it in the Horizon Limitation Action.

47. The American Home Policy follows the insuring conditions of the AEGIS Policy except as expressly modified by the terms of the American Home Policy.

48. Thus, except as expressly modified by its own terms, the American Home Policy must provide coverage on the same terms as the AEGIS Policy.

49. AEGIS contends that the AEGIS Policy has been exhausted by claims arising from the Occurrence, and pending claims against the AEGIS Policy exceed the policy's limit of coverage.

50. Accordingly, American Home is obligated to indemnify Iroquois against the claims and liabilities asserted against it in the Horizon Limitation Action, as well as against its attorney's fees and other expenses incurred in that action.

## NOTIFICATION TO THE INSURERS

51. Aon acted as an insurance agent or broker with respect to all of the aforesaid policies of insurance.

52. Shortly after the Occurrence, Iroquois and Horizon notified Aon of the incident.

53. Aon undertook to identify and notify all of the potentially applicable insurers of the policies it had issued to Horizon and Iroquois of the Occurrence.

54. Aon thereafter notified the carriers of the AEGIS Policy, the Steamship Policy, the American Home Policy, and the Conglomerate Excess Policy of the

Occurrence. Aon did not notify the Lloyd's Underwriters of a potential claim against the Lloyd's Hull Policy.

55. Aon then advised Iroquois that it had notified "all appropriate insurers" of the Occurrence.

56. Aon had provided Iroquois with documents indicating that Iroquois was an additional insured under the Lloyd's Hull Policy, but neither Aon nor Horizon nor the Lloyd's Underwriters provided Iroquois with the terms and conditions the coverage provided by the Lloyd's Hull Policy.

57. In respect of the instant controversy, the Lloyd's Hull Policy provided coverage that was coextensive to, and duplicative of, the coverage provided by the AEGIS Policy, the Steamship Policy, the American Home Policy, and the Conglomerate Excess Policy.

58. Iroquois thus had no basis for knowing or determining that it was entitled to coverage under the Lloyd's Hull Policy.

59. Like Aon, both Iroquois and Horizon also notified the carriers of the AEGIS Policy, the Steamship Policy, the American Home Policy, and the Conglomerate Excess Policy of the Occurrence.

60. On or about May 17, 2004 Aon provided its first notice of the Occurrence to the Lloyd's Underwriters.

61. Aon engaged in the aforesaid conduct from its office in Houston, Texas.

## *COUNT I*
## JUDGMENT AS TO AEGIS

62.     In response to the actions filed against it Iroquois has expended substantial sums in legal fees to defend itself against the claims of third parties and to assert indemnity claims against Horizon.

63.     AEGIS is obligated to defend and indemnify Iroquois as an additional insured under the AEGIS Policy and to reimburse Iroquois for its legal costs incurred in connection with the cable damage litigations.

64.     Despite due demand, AEGIS has failed to reimburse Iroquois' legal costs which now exceed $800,000.

65.     As a result of the failure of AEGIS to pay Iroquois' legal costs, Iroquois has had to fund its own legal costs and/or seek on account payments against secondary insurance policies which would otherwise take effect only in the event of non-payment by AEGIS and/or the other insurance policies affected by Horizon as stated above.

66.     AEGIS has continued to fail to respond to Iroquois' requests to defend and for coverage of legal costs and expenses although there is no basis on which to do so, and accordingly has waived its right to object to coverage and/or is now estopped from denying coverage.

67.     The continued failure of AEGIS to defend and to reimburse Iroquois' on-going legal costs in the pending litigations may at some point prejudice Iroquois' ability to defend the various claims asserted against it and to pursue recovery against those responsible for the incident.

68. Moreover, AEGIS had and has an obligation to deal fairly and in good faith with Iroquois.

69. AEGIS has encumbered its entire policy limit pursuant to a Letter of Undertaking issued in favor Horizon in the Horizon Limitation Action.

70. By encumbering its entire policy limit in favor of Horizon, and leaving no remaining coverage for its insured Iroquois, AEGIS has violated its obligation to deal fairly and in good faith.

## *COUNT II*
## JUDGMENT AS TO THE
## LLOYD'S UNDERWRITERS

71. In response to the actions filed against it Iroquois has expended substantial sums in legal fees to defend itself against the claims of third parties and to assert indemnity claims against Horizon.

72. As an additional insured under the Lloyd's Hull Policy, the Lloyd's Underwriters are obligated to defend and indemnify Iroquois and to reimburse Iroquois for its legal costs incurred in connection with the cable damage litigations.

73. Despite due demand, the Lloyd's Underwriters have failed to reimburse Iroquois' legal costs which now exceed $800,000.

74. As a result of the failure of the Lloyd's Underwriters to pay Iroquois' legal costs, Iroquois has had to fund its own legal costs and/or seek on account payments against secondary insurance policies which would otherwise take effect only in the event of non-payment by the Lloyd's Underwriters and/or the other insurance policies affected by Horizon as stated above.

75. The Lloyd's Underwriters have continued to fail to respond to Iroquois' requests to defend and for coverage of legal costs and expenses although there is no basis on which to do so, and accordingly have waived their right to object to coverage and/or are now estopped from denying coverage.

76. The continued failure of the Lloyd's Underwriters to defend and to reimburse Iroquois' on-going legal costs in the pending litigations may at some point prejudice Iroquois' ability to defend the various claims asserted against it and to pursue recovery against those responsible for the incident.

## *COUNT III*
## JUDGMENT AS TO AMERICAN HOME

77. In response to the actions filed against it Iroquois has expended substantial sums in legal fees to defend itself against the claims of third parties and to assert indemnity claims against Horizon.

78. Iroquois is advised that the expenses of Horizon, in addition to Iroquois' expenses, and/or as a result of other claims on the AEGIS Policy, have exhausted the AEGIS Policy.

79. American Home is obligated to defend and indemnify Iroquois and to reimburse Iroquois for its legal costs incurred in connection with the cable damage litigations.

80. Despite due demand, American Home has failed to reimburse Iroquois' legal costs.

81. As a result of the failure of American Home to pay Iroquois' legal costs,

Iroquois has had to fund its own legal costs and/or seek on account payments against secondary insurance policies which would otherwise take effect only in the event of non-payment by American Home and/or the other insurance policies affected by Horizon as stated above.

82. American Home has failed to respond to Iroquois' requests to defend, for legal costs and expenses, and otherwise to indemnify Iroquois, and accordingly has waived its right to object to coverage and/or is now estopped from denying coverage.

83. The continued failure of American Home to defend and to reimburse Iroquois' on-going legal costs in the pending litigations may at some point prejudice Iroquois' ability to defend the various claims asserted against it and to pursue recovery against those responsible for the incident.

### *COUNT IV*
### JUDGMENT BASED ON NEGLIGENCE
### AS TO AON

84. The Lloyd's Underwriters have asserted late notice as a defense to Irouqois' claim for cover. While Iroquois disputes the validity of such defense, if the defense is upheld, any resulting lack of cover will be due to the faults and/or defaults of Aon.

85. Aon had a duty to exercise reasonable diligence in carrying out its undertaking of notifying the potentially applicable insurers of the Occurrence.

86. Aon had a duty to exercise reasonable diligence in advising and representing to Horizon and Iroquois the insurers potentially applicable for this loss.

87. If the defense of the Lloyd's Underwriters is upheld, any resulting loss of cover will have been caused by Aon having failed to exercise reasonable diligence by

failing to timely notify the Lloyd's Underwriters of the Occurrence, by failing to timely notify the Lloyd's Underwriters of Iroquois' claim, by affirmatively representing to Horizon and Iroquois that the Lloyd's Hull Policy did not potentially apply to claims arising from the Occurrence, and by affirmatively misrepresenting that only insurance policies other than the Lloyd's Hull Policy potentially applied to the claims.

88.     To whatever extent Iroquois is unable to recover from the Lloyd's Underwriters, any such inability is the direct and proximate result of Aon's negligence as described herein.

## *COUNT V*
## JUDGMENT BASED ON
## BREACH OF CONTRACT
## AS TO AON

89.     An agreement arose between Aon and Iroquois and/or between Aon and Horizon for Aon to submit claims related to the Occurrence to the appropriate insurance carriers.

90.     This agreement arose from the course of dealing between the parties. Aon provides comprehensive insurance services for a number of policies inuring to the benefit of Iroquois and Horizon and received commissions therefrom and other good and valuable consideration.

91.     If Iroquois was not a party to this agreement, Iroquois was a third-party beneficiary of the agreement.

92.     To whatever extent Iroquois is unable to recover from the Lloyd's Underwriters, any such inability is the direct and proximately result of Aon's breach of

its contractual obligation to submit insurance claims.

## DEMAND

WHEREFORE, Plaintiff prays for judgment:

1. declaring AEGIS is bound to cover Iroquois' legal expenses to the limit of Iroquois' cover;

2. declaring Lloyd's Underwriters are bound to cover Iroquois legal expenses pursuant to the Lloyd's Hull Policy;

3. alternatively, declaring that Aon is obligated to make good any loss to Iroquois if the Lloyd's Underwriters are excused from defending and indemnifying per the terms of the Lloyd's Hull Policy;

4. declaring American Home is bound to cover Iroquois legal expenses pursuant to the American Home Policy;

5. awarding Plaintiff its costs and reasonable attorneys' fees expended to date in connection with the litigation;

6. awarding Plaintiff its costs and reasonable attorneys' fees in connection with this action; and

7. awarding Plaintiff such other and further relief as this Honorable Court may find to be just.

Dated:  New York, New York
        March 23, 2005

                                        HEALY & BAILLIE, LLP

                           By  _____
                                        Richard V. Singleton (RS-9489)
                                        Attorneys for Plaintiffs
                                        61 Broadway, 32nd Floor
                                        New York, New York 10006-2701
                                        (212) 943-3980

TO:    LaBOEUF, LAMB, GREENE, MACRAE, LLP.
           Agent for Service of Process for Defendant
             Associated Electric & Gas Insurance Services Ltd.
           125 West 55th Street
           New York, New York 10019

           MENDEZ & MOUNT, LLP
           Agent for Service of Process for Defendant
             Certain Underwriters at Lloyd's
           750 Seventh Avenue
           New York, New York 10019-6829

A

June 28, 2002

ARS-3246

*Aon Risk Services*

*Natural Resources Group*

SECURITY:

Section IA and IB:

| UNDERWRITER | PERCENTAGE WRITTEN |
|---|---|
| Underwriters at Lloyd's Syndicate No. 2020 | 15.0% |
| Underwriters at Lloyd's Syndicate No. 510 | 7.5% |
| Underwriters at Lloyd's Syndicate No. 2791 | 5.0% |
| Underwriters at Lloyd's Syndicate No. 457 | 10.0% |
| Zurich Specialties London Ltd. | 7.5% |
| Great Lakes Reinsurance (UK) Ltd. | 7.5% |
| Underwriters at Lloyd's Syndicate No. 2323 | 2.5% |
| Underwriters at Lloyd's Syndicate No. 2987 | 4.0% |
| International Company of Hannover | 4.5% |
| Underwriters at Lloyd's Syndicate No. 1183 | 5.0% |
| Underwriters at Lloyd's Syndicate No. 382 | 1.5% |
| GE Specialty (UK) Ltd. via JLT Risk Solutions Limited | 20.0% |
| Continental Insurance Company via Marine Office of America/CNA | 5.0% |
| American Employer's Insurance Company | 1.5% |
| Fireman's Fund Insurance Company | 1.3% |
| Markel Insurance Company | 1.7% |
| Royal Insurance Company via Gulf Coast Marine, Inc. | 0.5% |
| | 100.0% |