NOURSE & BOWLES, LLP
Attorneys for Defendant
ASSOCIATED ELECTRIC &
GAS INSURANCE SERVICES LTD.
One Exchange Plaza
At 55 Broadway
New York, NY  10006-3030
(212) 952-6200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                         :

IROQUOIS GAS TRANSMISSION SYSTEM L.P.,  :    05 Civ. 2149 (JSR)
                         :

              Plaintiff,      :    **ECF CASE**

         - against -        :

                         :

ASSOCIATED ELECTRIC & GAS INSURANCE  :
SERVICES LTD., Hamilton, Bermuda (AEGIS),  :
and CERTAIN UNDERWRITERS AT LLOYD'S,  :
                         :

             Defendants.     :
                         :
-------------------------------------------------------------X

## DECLARATION UNDER PENALTY OF PERJURY

      FRANK TIERNEY hereby declares the following pursuant to 28 U.S. Code Section

1746:

      1.  I am employed by Associated Electric & Gas Insurance Services Limited, commonly

known as AEGIS, at 10 Exchange Place, Jersey City, New Jersey 07302.  My title is

_____.  As such, my duties include _____.

      2.  I was personally involved in negotiating and finalizing the policy of insurance which

AEGIS issued to Horizon Offshore, Inc. and others in 2002 and is the subject matter of this

litigation ("the Policy").  As such, I am personally familiar with all of the terms and conditions

of the Policy.  Attached hereto as Exhibit A is a true and genuine copy of the Policy issued by

AEGIS to Horizon Offshore Inc. which is the subject matter of this litigation.

       3.  The Policy incorporates the Class 1 Rules - Protection & Indemnity of the Steamship

Mutual Underwriting Association (Bermuda) Limited ("Rules") as specifically modified by the

Policy.  Attached hereto as Exhibit B is a true and accurate copy of the Rules which were in

effect when the Policy was issued in 2002 and which are incorporated into the Policy and as

modified by the Policy.


                                      _____


Dated: Jersey City, New Jersey

      June ___, 2005

# EXHIBIT A

**AEGIS**

ASSOCIATED ELECTRIC & GAS
INSURANCE SERVICES LIMITED

10 EXCHANGE PLACE, JERSEY CITY, NJ 07302

# CERTIFICATE OF INSURANCE AND ACCEPTANCE

by AEGIS of your proposal for insurance of the unit(s) specified below, and of the tonnage set

out against each, under

## Protection and Indemnity Insurance

provided by AEGIS from

Noon 20th February, 2002 (G.M.T.) to 12:01 a.m. 1st May, 2003 (C.S.T.)

or until sold, lost, withdrawn or the insurance is terminated in accordance with the applicable terms and conditions.

To the extent specified herein, the Rules of the Steamship Mutual Underwriting Association (Bermuda) Limited ("the Association") apply to the contract of insurance evidenced by this certificate, and references to specific Rule numbers and paragraphs are references to the Rules of the Association in force at the date hereof.

The assured(s) in respect of the unit(s) specified below are as set out immediately hereunder:

| FOR ACCOUNT OF: | CERTIFICATE NUMBER |
|---|---|
| Horizon Offshore, Inc. and/or<br>Horizon Offshore Contractors, Inc., and/or<br>Joint Members in accordance with Rule 14(i) and/or<br>affiliated, associated and subsidiary companies, all in<br>accordance with Rule 14 (ii). | 02 (Revised 2002)<br><br>**(OFFICE COPY NOTE:**<br>**SAVED IN BASIS AS: 02.AEGIS.2002)** |

| NAME OF UNIT | BUILT | PORT OF REGISTRY | DECLARED GROSS TONNAGE |
|---|---|---|---|
| **"AMERICAN HORIZON" and Others**<br><br>as shown in the attached schedule. | | | |

N.B. THIS CERTIFICATE IS EVIDENCE ONLY OF THE CONTRACT OF INDEMNITY INSURANCE BETWEEN THE ABOVE-NAME ASSURED(S) AND AEGIS, AND SHALL NOT BE CONSTRUED AS EVIDENCE OF ANY UNDERTAKING, FINANCIAL OR OTHERWISE, ON THE PART OF AEGIS, ORIGIN OR THE ASSOCIATION, TO ANY OTHER PARTY IN THE EVENT THAT THE ASSURED TENDERS A CERTIFICATE AS EVIDENCE OF INSURANCE UNDER ANY APPLICABLE LAW RELATING TO FINANCIAL RESPONSIBILITY, OR OTHERWISE SHOWS OR OFFERS IT TO ANY OTHER PARTY AS EVIDENCE OF INSURANCE, SUCH USE OF THIS CERTIFICATE IS NOT TO BE TAKEN AS ANY INDICATION THAT AEGIS, ORIGIN, OR THE ASSOCIATION THEREBY CONSENTS TO ACT AS GUARANTOR OR TO BE SUED DIRECTLY IN ANY JURISDICTION WHATSOEVER. AEGIS, ORIGIN AND THE ASSOCIATION DO NOT SO CONSENT

FOR AND ON BEHALF OF ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED

23rd May, 2002

INCORPORATION OF TERMS:

The "Class 1 Rules – Protection and Indemnity" of The Steamship Mutual Underwriting Association (Bermuda) Limited (the "Rules") in effect at the attachment date are hereby incorporated into this certificate, insofar as they may be applicable, subject to the following amendments and exceptions. All references in the Rules to "the Club" shall be read as references to "AEGIS" and/or where the context permits, its agent; all references to "the Directors" shall be read as references to AEGIS; all references to "the Member" shall be read as references to the "Assured"; all references to "the Managers" shall be read as references to "ORIGIN"; and references to "entry" and "entered" shall be read as references to "insurance" and "Assured"; and the Rules shall be deemed amended accordingly.

The following Rules are hereby excluded from this Certificate: Rule numbers: 1, 3 to 9, 11 to 13, 15(ii), 16(iii) to (iv); 33, 34 and 36(ii). [Any written notice of termination of cover shall only be effective no less than 15 days from receipt by the Assured]. Further amendments or exclusions to the Rules are as specified below.

RISKS COVERED:

In accordance with the Rules, and all terms, conditions and warranties set out herein and as incorporated in accordance with the preceding paragraph.

The Assured's Protection and Indemnity cover under the terms of this policy of insurance is in respect of, and limited to, liabilities to/or crew and employees only, as more fully set out herein, and only to pay claims in respect of liability to persons performing work in connection with the operations of the Assured, including, but not limited to, liability arising under Maritime Employers Liability, Death on the High Seas Act and Admiralty Law, as per wording attached.

Limit of Liability:

US$ 950,000 -    any one accident or occurrence or series of accidents or occurrences arising out of one event including legal and survey fees and expenses, subject to a general aggregate limit of US$ 15,000,000 for the period.

Deductible:

US$ 50,000 -    any one accident or occurrence or series of accidents or occurrences arising out of one event, including legal and survey fees and expenses.

Warranted:

Cancelling Returns only.

Including

1)    Including risks otherwise excluded under Rule 17b (Specialist Operations), Rule 17c (Drilling Operations), Rule 17d (Diving Operations) and Rule 17e (Salvage Operations).

2)    Notwithstanding the inclusion of risks otherwise excluded by Rule 17d (Diving Operations), the cover afforded hereunder is limited to liabilities, costs and expenses incurred by the Assured arising out of diving operations performed by third party contractors; warranted the Assured shall obtain indemnity and defense indemnities from diving contractors for personal injuries to the diving contractor personnel.

3)    Notwithstanding the inclusion of risks otherwise excluded by Rule 17e (Salvage Operations), the cover afforded hereunder shall be limited to liabilities, costs and expenses associated with salvage operations incidental to activities associated with risks described under Rule 17b (Specialist Operations), Rule 17c (Drilling Operations) and Rule 17d (Diving Operations), and this insurance shall not cover liabilities, costs and expenses arising out of salvage operations as a professional salvor.

/ continued.

- 2 -

<u>Including</u>:  *continued...*

4)   Including coverage for Contractual Liabilities in respect of seamen for death, injury or illness and it is agreed to waive the requirement for approval of any crew agreements and other contracts of service or employment and contracts for services.

5)   Including coverage for liabilities assumed by the Insured not otherwise provided under Rule 25 xix (Towage) and its subparagraphs and it is agreed to waive the requirement for approval of the terms of any such contracts, but excluding amounts recoverable under Hull Risks insurance effected by the Assured.

6)   Including coverage for liabilities as provided under Rule 25 xx (Contract and Indemnities) and its subparagraphs and it is agreed to waive the requirement for approval of the terms of any such contracts.

7)   Including liabilities, costs and expenses in respect of wreck and debris removal whether liability be compulsory under law or assumed under contract, or whether voluntarily assumed where it is determined that the wreck or debris interferes with the operation of the Assured, but excluding amounts recoverable under Hull Risks insurance effected by the Assured.

8)   Including 4/4ths Collision Liability and damage to Fixed and Floating Objects, but excluding amounts recoverable under Hull Risks insurance effected by the Assured.

9)   Subject otherwise to the terms, conditions and risks covered, including liabilities, costs and expenses for death, injury or illness in respect of any person performing work in connection with any offshore or maritime operation of the Assured, whether such person is an employee of the Assured or is engaged by the Assured under contract of services or for services, whether or not such operations are performed from a entered ship.

10)  Subject otherwise to the terms, conditions and risks covered, including liabilities, costs and expenses incurred by the Assured in respect of the short term charter or hire of miscellaneous barges and tugs used in support of the operations of the entered Vessels/Units; including liabilities, costs and expenses for risks otherwise excluded by Rule 17(a) Hull Risks, subject such support craft are not bareboat chartered by the Assured and excepting craft rented or hired where the Assured has assumed a "first party" risk or the obligation to provide Hull Risks insurance.


## OTHER TERMS, CLAUSES AND CONDITIONS

**1.    ADDITIONAL INSURED CLAUSE AND OTHER PROVISIONS**

i.)   The Assured has privilege to name others as an additional insured for their respective rights and interests and/or waive any rights of recovery, but only to the extent as may be required under contract or agreement.

ii.)  In connection with any person, firm or corporation included as an additional insured, the provisions of Rule 14(ii) and any other reference within the Rules purporting to limit coverage to any "Co-Insured" to that of the "Member" is deleted.  It is further noted and agreed any person, firm, or corporation included as an additional insured has no obligation for payment of premium hereunder.

iii.) It is agreed that in respect of additional insured(s), the coverage provided hereunder shall be primary in respect of any coverage carried by said additional insured(s) but only to the extent as may be required by contract or agreement.

*/ continued..*

- 3 -

**1.    ADDITIONAL INSURED CLAUSE AND OTHER PROVISIONS**  *continued...*

iv.)    In the event of an Assured incurring liability to any other Insured, this insurance shall cover the Assured against whom claim is or may be made in the same manner as if separate policies had been issued to each Insured. Nothing contained herein shall operate to increase the limit of liability as set forth in this insurance.

v.)    Such coverage as is afforded by this insurance shall not be denied solely on the basis that the claim or suit against the Insured is based upon an "In Rem" proceeding.

vi.)    It is agreed that a claim against any person, firm or organization by an employee of the Assured on the "Borrowed Servant Doctrine" will, for the purpose of this insurance, be treated as a claim arising under this insurance, against the Assured and that any person, firm or organization and/or its insurers will receive the benefit of this insurance with respect to such claims but only to the extent required under written contract or agreement.

vii.)    It is agreed to name any entity as alternative employer(s) with respect to bodily injury or death to the Assured's and/or their subcontractor's employees when such employees are determined to be in the course of a special or temporary employment of the alternative employer(s) but only to the extent required under contract or agreement. Such insurance shall further provide that it will not ask any other insurer to share in any loss or payment pursuant to this provision.

viii.)    It is agreed that any "Other Than Owners Limitation" clause and "As Owner of Vessel" provisions are deleted but only to the extent required under contract or agreement.

ix.)    It is understood and agreed that this insurance shall indemnify the Assured for amounts for which it shall have become liable to pay and shall have paid on account of investigation, defense and indemnity as respects its responsibilities, if any, to third parties by virtue of defense and indemnity obligations assumed under written contract or agreement and arising from accidental death of or bodily or personal injury to or illness of any employee(s) of the Assured.

**3.    SERVICE OF SUIT CLAUSE**

Notwithstanding the fact that this Certificate of Insurance was issued from Bermuda, Aegis hereby undertakes to accept service of any proceedings instituted by the Assured in the US Courts through its duly authorized agents, LaBoeuf, Lamb, Greene Macrae, LLP at their offices, 125 West 55th Street, New York NY 10019. It is further agreed that such service may be made upon such agent personally or by mailing the summons to the above address by first-class registered United States mail. The foregoing is without prejudice to the rights of Aegis to contest jurisdiction and is specifically subject to Rule 36.

When used in this Clause, the word "Assured" shall include any mortgagee under a ship mortgage which applies to a ship while it is insured in accordance with this Certificate and any person succeeding to the right of any such mortgagee and also any other person or persons who, under the express terms of the insurance, may be legally entitled to maintain an action thereon in his own name and for his own account, but the word "Assured" shall not include any third party whose action is based upon a liability which is alleged to have been incurred by the Assured and is alleged to be insured in accordance with this Certificate.

**4.    LOSS PAYABLE CLAUSE**

Loss, if any, payable to the Assured or order.

**5.    AFFILIATED, ASSOCIATED, SUBSIDIARY COMPANY CLAUSE**

Those provisions in Rule 14 ii (Affiliates) and any other reference within the Rules, purporting to limit coverage to any affiliated, associated or subsidiary company of the Assured to that of the Member, as Owner of the vessel, are deleted.

*/ continued..*

- 4 -

6.  **WAR RISKS CLAUSE**

Cover excluded under Rule 19 is hereby reinstated, subject always to the following conditions :-

(1)  Notice of Cancellation and War
Automatic Termination of Cover and War and Nuclear Exclusions Clause

Cancellation

Cover hereunder in respect of the risks set out under Rule 19 may be cancelled by AEGIS giving 7 days notice (such cancellation becoming effective on the expiry of 7 days from midnight of the day on which notice of cancellation is issued by AEGIS). AEGIS agrees however to reinstate cover subject to agreement between AEGIS and the Assured prior to the expiry of such notice of cancellation as to new rate of premium and/or conditions and/or warranties.

Automatic Termination of Cover

Whether or not such notice of cancellation has been given cover hereunder in respect of the risks set out under Rule 19 shall TERMINATE AUTOMATICALLY

(i)  upon the outbreak of war (whether there be a declaration of war or not) between any of the following Countries:

United Kingdom, United States of America, France, The Russian Federation, the People's Republic of China;

(ii)  in respect of any vessel, in connection with which cover is granted hereunder, in the event of such vessel being requisitioned either for title or use.

Five Powers War and Nuclear Exclusions

This insurance excludes

1.  loss damage liability or expense arising from

1.1  the outbreak of war (whether there be a declaration of war or not) between any of the following countries:

United Kingdom, United States of America, France, The Russian Federation, the People's Republic of China;

1.2  requisition either for title or use.

2.  loss damage liability or expense directly or indirectly caused by or arising from

2.1  ionising radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

2.2  the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

2.3  any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

Cover in respect of the risks set out under Rule 19 shall not become effective if, subsequent to acceptance by AEGIS and prior to the intended time of attachment of risk, there has occurred any event which would have automatically terminated cover under the provisions of this clause.

(2)  Cover hereunder in respect of War Risks shall be subject to an excess of either:-

a.  the US dollar equivalent of "proper value" of the entered ship, or

b.  the amount recoverable from War Risk underwriters, whichever is the greater.

"Proper value" will be construed in accordance with the provisions of the Note to Rule 25 (xxvii), but will, for the purposes of this cover, be deemed to be no greater than US$100 million.

*/ continued..*

7.  **CLAIMS HANDLING CLAUSE**

> Aegis agrees to use all current and/or future law firms of the Assured's choice.

8.  **PRIMARY INSURANCE**

> It is noted that Rule 21 (Double Insurance) is deleted and that cover under this policy shall be primary to any other insurance available to the Assured, excepting Rule 21 shall apply if and to the extent that the Assured is covered under any other insurance effected by any third party.

9.  **CLASSIFICATION AMENDMENT CLAUSE**

> It is noted that, where and as applicable due to the non-operational status and/or type and/or geographical limits of operation and navigation of an entered vessel/unit, a United States Coast Guard Certificate of Inspection or a United States Coast Guard Letter of Compliance or a Load Line Certificate shall satisfy the requirements of Rule 23(i) (Classification). It is further noted that Rule 23(i) (Classification) as amended shall not apply to any vessels where size and/or type and/or navigational operation do not require inspection and/or load line certification from the appropriate regulatory agency.

10.  **COMPENSATION ACT EXCLUSION CLAUSE:**

> Notwithstanding the Primary Insurance clause, this insurance excludes any amount recoverable under any State Workers' Compensation Act including Federal Longshore and Harbor Workers' Compensation Act or similar compulsory insurance acts

11.  **AUTOMOBILE EXCLUSION CLAUSE:**

> This insurance excludes liabilities arising out of any automobile other than those for injury to any maritime or offshore employee where the Insured is responsible for that maritime or offshore employee whilst using an automobile as part of his employment. Notwithstanding the foregoing exception of this exclusion and the Primary Insurance clause contained herein, there shall be no recovery hereunder for any amount recoverable under any Automobile Liability insurance available to the Insured.

12.  **PRODUCTS LIABILITY EXCLUSION CLAUSE:**

> Excluding liabilities, costs and expenses in respect of products liability; but this exclusion shall not apply to liabilities as set out under paragraphs 1 to 11 (of the Risks covered section) above, arising from operations normally performed by the Assured in their capacity as an offshore energy service contractor which are customary or usual to the drilling, oil and gas development and production, diving and inspection industry.

## SCHEDULE OF VESSELS ATTACHING TO AND FORMING PART OF
## CERTIFICATE OF ENTRY N⁰· 02 (REVISED 2002)

| VESSEL NAME | YEAR BUILT / RE-BUILT | GROSS TONNAGE | TYPE |
|---|---|---|---|
| "AMERICAN HORIZON" | 1960/64/86 | 1,762 | Lay/Bury Barge |
| "PHOENIX HORIZON" | 1977/82/96 | 4,988 | Derrick/Lay Barge |
| "CAJUN HORIZON" | 1980 | 514 | Lay Barge |
| "GULF HORIZON" | 1968 | 3,859 | Lay Barge |
| "CANYON HORIZON" | 1966 | 5,686 | Bury Barge |
| "LONE STAR HORIZON" | 1961/73 | 3,774 | Lay Barge |
| "PEARL HORIZON" | 1973 | 1,063 | Dive Support Vessel |
| "STEPHANITURM" ** | 1978 | 1,954 | Dive Support Vessel |
| "HORIZON MB100" | 1982/83/96 | 5,950 | Cargo Barge |
| "ATANTIC HORIZON" | 1982/98 | 6,103 | Derrick Barge |
| "PACIFIC HORIZON" | 1972/74/98 | 7,218 | Derrick Barge |
| "BRAZOS HORIZON" | TBA | 2,225 | Derrick Barge |
| "PECOS HORIZON" | 1970 | 2,688 | Pipe Bury Barge |
| "SEA HORIZON" | 1977 | 6,889 | Derrick Pipelay Barge |

** Bareboat Chartered out

# EXHIBIT B

## CLASS 1  PROTECTION AND INDEMNITY

**1**  These rules are subject to the Act and Bye-Laws of The Steamship Mutual Underwriting Association (Bermuda) Limited, hereinafter referred to as 'the Club'.

**2**  **Definitions**  In these Rules the words and phrases hereinafter set out shall have the following meanings or effects if not inconsistent with the subject or context:

**Act**  means The Steamship Mutual Underwriting Association (Bermuda) Limited Company Act 1974 enacted in Bermuda on 24 June 1974 and every modification thereof for the time being in force;

**Container**  includes trailer, flat, pallet, tank, or similar receptacle which may have been specifically agreed by the Club;

**Contributing Tonnage**  means the gross tonnage of a ship, or other agreed tonnage upon which, according to the terms of entry of the ship, contribution is paid to the funds of the Club;

**Convention Limit**  in respect of a ship, the limit of liability of the owner of that ship for claims (other than claims for loss of life or personal injury) at the Overspill Claim Date, calculated in accordance with Article 6 paragraph 1(b) of the International Convention on Limitation of Liability for Maritime Claims 1976 (the "Convention") and converted from Special Drawing Rights into United States Dollars at the rate of exchange conclusively certified by the Club as being the rate prevailing on the Overspill Claim Date, provided that,

(a) where a ship is entered for a proportion (the "relevant proportion") of its tonnage only, the Convention Limit shall be the relevant proportion of the limit of liability calculated and converted as aforesaid, and

(b) each ship shall be deemed to be a seagoing ship to which the Convention applies, notwithstanding any provision in the Convention to the contrary;

**Directors**  means the Board of Directors for the time being of the Club;

**Effects**  includes clothes, documents, navigation and other technical instruments and tools but does not include cash, valuables, watches, jewellery, radios or any other article which in the opinion of the Directors is not an essential requirement for a member of the crew;

**Entered Ship**  means a ship which has been entered in the Club for any of the risks enumerated herein in the manner hereinafter provided;

**Group Excess Loss Reinsurance Contract**  means the excess loss reinsurance contract entered into by the parties to the Pooling Agreement;

**2 continued**  **Group Reinsurance Limit**  the amount of the smallest claim (other than any claim arising in respect of oil pollution) incurred by the Club or by any other party to the Pooling Agreement which would exhaust the largest limit for any type of claim (other than any claim arising in respect of oil pollution) from time to time imposed in the Group Excess Loss Reinsurance Contract;

**Hull policies**  means the Policies effected on the Hull and Machinery of a ship, including Excess Liability Policies;

**Managers**  means Steamship Mutual Management (Bermuda) Limited appointed Managers thereof;

**Member**  means every owner of a ship entered by him in the Club and any other person insured under these Rules in relation to such ship;

**Overspill Call**  a call levied by the Directors pursuant to Rule **8** for the purpose of providing funds to pay part of an Overspill Claim;

**Overspill Claim**  that part (if any) of a claim (other than any claim or part of a claim arising in respect of oil pollution) incurred by the Club or by any other party to the Pooling Agreement under the terms of entry of a ship which exceeds or may exceed the Group Reinsurance Limit;

**Overspill Claim Date**  in relation to any Overspill Call, the time and date on which the incident or occurrence giving rise to the Overspill Claim occurred in respect of which the Overspill Call is made or, if the Policy Year in which such incident or occurrence occurred has been closed in accordance with the provisions of Rule **8 ii a** and **b**, noon GMT on 20th August of the Policy Year in respect of which the Club makes a declaration under Rule **8 ii c**;

**Owner**  means an owner, owners in partnership, owners holding separate shares in severalty, part owner, mortgagee, trustee, charterer, operator or manager of a ship;

**Policy Year**  means the year from noon Greenwich Mean Time on 20 February to noon Greenwich Mean Time on 20 February next ensuing;

**Pooling Agreement**  means the agreement to which the Club is a party between various Members of the London Group of P & I Clubs dated 18th September 1975 and any amendment variation or substitution thereof;

**Seaman**  means any person, including Apprentices (but excepting Masters) engaged in any capacity on board a ship as part of the ship's complement;

**Ship**  means a ship or boat or any other description of vessel used in navigation or for the carriage or storage of goods or for carriage of passengers, or any part thereof or any proportion of the tonnage or insured value thereof or any share therein, including any ship, boat or vessel under construction;

**Statutory Obligations**  includes any direction obligation or liability imposed by enactment decree, order or regulation having the force of law;

**Tonnage**  means the gross tonnage of a ship as certified or stated in the Certificate of Registry or other official document relating to the registry of the ship; and 'Ton' refers to the unit of such tonnage;

**3  Directors  i**  The business of the Club shall be managed by the Board of Directors who shall exercise the powers given them by the Act and Bye-Laws.

**ii**  The Directors may delegate any of their powers to sub-committees consisting of such member or members of their body as they think fit. Any sub-committee so formed shall in the exercise of any power so delegated conform to any regulations that may from time to time be imposed upon it by the Directors.

**iii**  The Directors, or subject to any regulations imposed upon it as aforesaid, any sub-committee may from time to time vest in the Managers such of the powers vested in the Directors or delegated to such sub-committees as the case may be, as the Directors or such sub-committee shall think fit, and such powers may be exercisable for such period and upon such conditions and subject to such restrictions and generally upon such terms as the Directors or sub-committee, as the case may be, may determine.

**4  Members  i**  Every Owner who enters any ship in the Club shall (if not already a Member) be and become a Member of the Club as from the date of the commencement of such entry. Each Member is bound by the Act and Bye-Laws of the Club and by these Rules.

**ii**  Every Member of the Board of Directors, whilst holding office as such shall ex-officio be a Member of the Club.

**iii**  Membership shall not be transferable nor transmissible.

**iv**  The Directors shall be at liberty to refuse any application for entry of a ship in the Club from any Owner.

**5  Special Entries**  The Directors may, notwithstanding the provisions of the Bye-Laws of the Club or of these Rules, at any time and in their absolute discretion accept entries upon special terms as to contribution nature and extent of risks covered and/or otherwise howsoever and to the acceptance of reinsurances, and the Directors may also reinsure the whole or any portion of the risks of the Club upon such terms as they may think fit.

**6  Contributions**  Subject to the power of the Directors, expressed in Rule **5**, to accept entries upon special terms the Members shall, pursuant to the provisions of the Act and Bye-Laws of the Club and these Rules, mutually insure each other as hereinafter set out against liabilities, costs and expenses which they or any of them may become liable to pay or may incur in respect of any entered ship; and for this purpose each Member shall, subject to these Rules and unless his entry has been accepted upon special terms which otherwise provide, contribute to the funds of the Club pro rata according to the total tonnage entered by him or on his behalf in the Club and the Mutual Premium levied thereon.

**7  Assessment of Calls and Closure of Policy Years**  Save as provided under Rules **8** and **13** hereof the funds required for the payment of claims, expenses and outgoings falling upon the Club shall be raised as follows:

at the beginning of each policy year the Club shall agree a Mutual Premium with each Member in respect of the ship or ships entered by him or on his behalf;

such Mutual Premium shall be levied during the relevant policy year and in the two years subsequent thereto in such instalments as the Directors may from time to time determine;

a ship entered in the course of a policy year shall pay a daily pro rata proportion of the Mutual Premium to the beginning of the next policy year;

the Managers may require a vessel to contribute to Mutual Premium on a minimum tonnage;

vessels entered with the exclusion of any of the risks specified in the Rules shall receive such rebate of Mutual Premium as may be agreed by the Managers at the time such exclusions take effect;

if the claims, expenses and outgoings for such year (including the anticipated claims expenses and outgoings, the excess of the claims expenses and outgoings of any closed policy year over the provisions or reserves made therefor and the setting up of such reserves as the Directors may deem expedient) should exceed the contributions raised by the Mutual Premium, the Directors may in order to make good the deficiency direct that an Additional Premium or Premiums shall be paid by each Member (subject to such special terms) at such time or times and at such rate or at such percentage of the Mutual Premium already paid as the Directors may decide;

in the event of any Member making default in payment of any contribution due from him to the Club the same shall (subject to the provisions as to any entries on special terms) be paid by such of the other Members entered rateably in proportion to the contributions last due from them respectively and payment may be enforced by the Club. Each Member who may for the time being be entitled to receive from the Club any payment in respect of any loss, claim or demand shall bear and contribute to the proportion thereof due in respect of any ship or ships entered by him, including the ship in respect of which the loss, claim or demand arises;

the Directors may decide that, at such times as they may deem expedient, any policy year shall be closed, in which event, if the contributions so obtained in respect of such policy year should exceed the claims, expenses and out-goings falling upon the Club for that year, the Directors may either carry that surplus in whole or in part to such reserve or reserves as the Directors think proper or may return it in whole or in part to the persons who made such contributions in proportion thereto.

*provided that:*

policy years shall not be closed for the purposes of levying Overspill Calls except in accordance with the provisions of Rule **8 ii** hereof.

**8  Levying of Overspill Calls**

(i) If the Directors shall at any time determine that funds are or may in future be required to pay part of an Overspill Claim (whether incurred by the Club or by any other party to the Pooling Agreement); and

(ii) if the Directors shall have made a declaration under Rule **8 ii a** or **b** that a Policy Year shall remain open for the purpose of levying an Overspill Call or Calls in respect of that Overspill Claim, the Directors in their discretion, at any time or times after such declaration has been made, may levy one or more Overspill Calls in respect of that Overspill Claim in accordance with sub paragraph b hereof

**b**  The Directors shall levy any such Overspill Call:

(i) on all Members entered in the Club on the Overspill Claim Date in respect of ships entered by them at that time, notwithstanding the fact that, if the Overspill Claim Date shall be in a Policy Year in respect of which the Directors have made a declaration under Rule **8 ii c**, any such ship may not have been entered in the Club at the time the relevant incident or occurrence occurred; and

(ii) at such percentage of the Convention Limit of each such ship as the Directors in their discretion shall decide.

**c**  An Overspill Call shall not be levied in respect of any ship entered on the Overspill Claim Date with an overall limit of cover equal to or less than the Group Reinsurance Limit.

**d**  The Directors shall not levy on any Member in respect of the entry of any one ship an Overspill Call or Calls in respect of any one Overspill Claim exceeding in the aggregate two and one half per cent ($2\frac{1}{2}\%$) of the Convention Limit of that ship.

**e**  If at any time after the levying of an Overspill Call upon the Members entered in the Club in any Policy Year, it shall appear to the Directors that the whole of such Overspill Call is unlikely to be required to meet the Overspill Claim in respect of which such Overspill Call was levied, the Directors may decide to dispose of any excess which in the opinion of the Directors is not so required in one or both of the following ways:

(i) by transferring the excess or any part thereof to such reserve or reserves as they think proper; or

(ii) by returning the excess or any part thereof to those Members who have paid that Overspill Call in proportion to the payments made by them.

**Closing of a Policy Years for Overspill Calls**

If at any time prior to the expiry of a period of thirty-six months from the commencement of a Policy Year (the "relevant Policy Year"), any of the parties to the Pooling Agreement sends a notice (an "Overspill Notice") in accordance with the Pooling Agreement that an incident or occurrence has occurred in the relevant Policy Year which has given or at any time may give rise to an Overspill Claim, the Directors shall as soon as practicable thereafter declare that the relevant Policy Year shall remain open for the purpose of levying an Overspill Call or Calls in respect of that claim and the relevant Policy Year shall not be closed for the purpose of making an Overspill Call or Calls in respect of that claim until such date as the Directors shall determine.

**8 ii continued**

**b**  If at the expiry of the period of thirty-six months provided for in sub Rule **a** hereof, no Overspill Notice as therein provided for has been sent, the relevant Policy Year shall be closed automatically for the purpose of levying Overspill Calls only, whether or not closed for any other purposes, such closure to have effect from the date falling thirty-six months after the commencement of the relevant Policy Year.

**c**  If at any time after a Policy Year has been closed in accordance with the provisions of paragraphs **a** and **b** hereof, it appears to the Directors that an incident or occurrence which occurred during such closed Policy Year may then or at any time in the future give rise to an Overspill Claim, the Directors shall as soon as practicable declare that the earliest subsequent open Policy Year (not being a Policy Year in respect of which the Club has already made a declaration in accordance with paragraphs **a** or **b** hereof) shall remain open for the purpose of levying an Overspill Call or Calls in respect of that claim and such open Policy Year shall not be closed for the purpose of making an Overspill Call or Calls in respect of that claim until such date as the Directors shall determine.

**d**  A Policy Year shall not be closed for the purpose of levying Overspill Calls save in accordance with this Rule **8 ii**.

**Note:** The limit of the Group Excess Loss Reinsurance Contract from 20th February 1998 is US$2,000,000,000.

**9**

Each Member shall, on becoming a Member, and thereafter at the beginning of each policy year, pay management commission as determined by the Directors.

**10**

A Member shall (provided that notice in writing is given to the Managers within one month after the happening of any of the following events) be liable for contribution in respect of an entered ship to the Premiums and Calls levied by the Club for the current policy year pro rata only to the period beginning with that policy year and ending:

**a**  at noon of the day upon which the ship was legally transferred by bill of sale or other formal document whereby the ownership was legally transferred;

**b**  at noon of the day upon which the ship became an actual or constructive total loss or was accepted by Hull Underwriters as being a constructive or compromised total loss or was considered or deemed by the Managers to be an actual or constructive or compromised total loss, whichever shall have been the earlier; but if the Managers have agreed to extend cover for any period beyond that date in accordance with the proviso to Rule **31 ii c** and **31 ii d**, then at noon of the day upon which the period of such extension of cover ends;

**c**  ten days from the date of the ship being last heard of or from her being posted at Lloyd's as missing, whichever shall be the earlier.

**11**      **Entry**    Entries of ships in the Club shall be effected in the following manner:

application for the entry of a ship shall be made upon the appropriate application form in current use by the Club, signed by or on behalf of the Owner, and giving the full particulars therein required together with any other particulars or information specially requested by the Managers. Upon acceptance of the entry by the Club the Managers shall notify the Member, and the ship shall thereupon be deemed to be entered in the Club from the time and on the terms stated in the Certificate of Entry until noon of 20 February next following (unless otherwise agreed at the time of entry), and thereafter from policy year to policy year, unless notice to the contrary be given as hereinafter provided in Rule **12**;

*provided always that:*

(a) the particulars given in the application form together with any other particulars or information given in connection with or during the negotiations for the entry of the ship or requested by the Managers, shall be deemed to form part of the contract of insurance between the Member and the Club;

(b) if no application form is signed or an application form cannot be produced at any time but nevertheless it is clear that the Member has requested and the Club has accepted the risks, the absence of an entry form shall not prejudice the rights and obligations of the Member and the Club.

**12**    The cover afforded by the Club shall begin at the time stated in the Certificate of Entry for the commencement of the cover and continue until noon of 20 February next following (unless otherwise agreed at the time of entry). The cover shall continue from policy year to policy year unless and until notice to the contrary is given by the Member two calendar months before 20 February then next. Should the Directors or Managers wish any ship withdrawn at any time then they shall cause fifteen days' notice effective at the expiry thereof to be given to the Member.

An entered ship shall not be withdrawn from the Club at any other time or in any other manner except with the consent of the Directors.

**13**  **Release Calls**  **i**  Upon the entry of a Member ceasing in respect of an entered ship, the Managers may demand, at any time after the date of the said cesser of entry, an amount representing the estimated liability of the Member for further Mutual and/or Additional Premium in respect of the said vessel, other than Overspill Calls. The said amount shall be assessed in accordance with the terms laid down from time to time by the Directors at their sole and absolute discretion. The amount assessed shall be payable by the Member on demand by the Managers, unless a bank guarantee acceptable to the Managers is forthwith provided by the Member to secure payment of such instalments of Mutual and/or Additional Premium as may be levied in respect of the said vessel after the date of the said demand.

**13**  **i**
*continued*

Upon payment of the said amount assessed, the Member shall be released from any liability for further Mutual and/or Additional Premium in respect of the said vessel which may be levied after the date of the said assessment, other than in respect of Overspill Calls. Thereafter, the Member shall not be entitled to any return of any surplus which may be made in accordance with Rule **7**.

In the event that the assessed amount remains unpaid and no guarantee is provided as hereinbefore set out, the Managers may demand such additional amounts as may be chargeable in accordance with any revision of the terms laid down by the Directors as they may from time to time determine in accordance with their powers under this Rule.

**ii a**   If the Club makes a declaration in accordance with Rule **8 ii a** or **c** that a policy year shall remain open for the purpose of levying an Overspill Call or Calls, and

**b**   if a Member who is liable to pay any such Overspill Call or Calls as may be levied by the Directors in accordance with Rule **8 i** ceases or has ceased to be insured by the Club for any reason, or the Managers determine that the insurance of any such Member shall cease the Club may require such Member to provide to the Club by such date as the Club may determine (the "due date") a guarantee or other security in respect of the Member's estimated future liability for such Overspill Call or Calls, such guarantee or other security to be in such form and amount (the "guarantee amount") and upon such terms as the Club in its discretion may deem to be appropriate in the circumstances.

Unless and until such guarantee or other security as is required by the Managers has been provided by the Member, the Member shall not be entitled to recovery from the Club of any claims whatsoever and whensoever arising in respect of any and all vessels entered in the Club by him or on his behalf.

If such guarantee or other security is not provided by the Member to the Club by the due date, a sum equal to the guarantee amount shall be due and payable by the Member to the Club on the due date, and shall be retained by the Club as a security deposit on such terms as the Managers in their discretion may deem to be appropriate in the circumstances.

The provision of a guarantee or other security as required by the Managers, including a payment in accordance with the above paragraph, shall in no way restrict or limit the Member's liability to pay such Overspill Call or Calls as may be levied by the Club in accordance with Rule **8**.

**14**    **Joint**  **i**  If an entry is made in the names of or on behalf of more persons than
         **Members**    one (hereinafter referred to as Joint Members) they shall be jointly and severally liable to pay contributions due to the Club in respect of such entry; and the receipt by any one Joint Member of any sums payable by the Club in respect of such entry shall be sufficient discharge of the Club for the same.

**14 i**
continued

The cover afforded to Joint Members shall extend only to risks, liabilities, costs and expenses arising out of operations and/or activities customarily carried on by or at the risk and responsibility of shipowners and which are within the scope of the cover provided under the terms, conditions and exceptions provided by these Rules and by the Certificate of Entry.

The conduct of any one Joint Member which is sufficient to bar that Joint Member's right of recovery under the terms, conditions and exceptions provided by these Rules and by the Certificate of Entry shall bar absolutely the rights of recovery of all Joint Members thereunder.

**Affiliates ii** When an entry is made by a Member, cover provided under these Rules and by the Certificate of Entry may be extended, subject to the written agreement of the Managers, to any person associated or affiliated with that Member;

provided that:

(a) such cover shall only extend to a liability which would have been incurred by the Member if the claim concerning that liability had been made against the Member;

(b) such cover shall not extend to any amount which would not have been recoverable from the Club by that Member had such claim been made or enforced against that Member;

(c) to the extent that the Club indemnifies such associated or affiliated persons under such cover it shall not be under any further liability and shall not make any further payment to any person whatsoever, including the said Member, in respect of the claim so indemnified;

(d) the conduct of that Member or any associated or affiliated person which is sufficient to bar that persons rights of recovery under the terms, conditions and exceptions provided by these Rules and by the Certificate of Entry shall bar the rights of recovery of all persons thereunder.

**iii** There shall be no recovery out of the funds of the Club in respect of any liability, costs or expenses arising out of any claims or dispute between Joint Members and/or Affiliates under one entry.

**15 Recovery i** If any Member shall become liable in damages or otherwise or shall incur any costs or expenses as hereinafter set out in Rules **25** and **26**, in respect of a ship which was entered in the Club at the time of the casualty or event giving rise to such liability, costs or expenses, such Member shall be entitled to recover, out of the funds of the Club, the amount of such liability, costs or expenses to the extent and upon the terms, conditions and exceptions provided by these Rules and by the Certificate of Entry;

provided always that:

(a) unless the Directors otherwise determine, it shall be a condition precedent of a Member's right to recover from the funds of the Club in respect of any liability, costs or expenses that he shall first have paid the same;

33

**15 i**
proviso
continued

(b) any liability costs or expenses (other than those arising in respect of oil pollution) incurred by the Club or by any other party to the Pooling Agreement in respect of an entered ship arising from any one casualty or event, including any claim in respect of liability for the removal or non-removal of any wreck, shall be treated for the purposes of these Rules as if they were one claim.

**Payment of ii a** The funds required to pay any Overspill Claim incurred by the Club shall
**Overspill Claim** be provided:

(i) from such sums as the Club is able to recover from the other parties to the Pooling Agreement as their contributions to the Overspill Claim, and

(ii) from such sums as the Club is able to recover from any special insurance which may, in the discretion of the Club, have been effected to protect the Club against the risk of payments of Overspill Claims, and

(iii) from such proportion as the Directors in their discretion determine of any sums standing to the credit of such Reserves as the Directors may in their discretion have established, and

(iv) by levying one or more Overspill Calls in accordance with Rule **8**, irrespective of whether the Club has sought to recover or has recovered all or any of the sums referred to in sub paragraph **(ii)** hereof but provided that the Club shall first have made a determination in accordance with sub paragraph **(iii)** hereof, and

(v) from any interest accruing to the Club on any funds provided as aforesaid.

**b** The funds required to pay such proportion of any Overspill Claim incurred by any other party to the Pooling Agreement which the Club is liable to contribute under the terms of the Pooling Agreement shall be provided in the manner specified in sub paragraph **a (i) - (iv)** hereof.

**c** To the extent that the Club intends to provide funds required to pay any Overspill Claim incurred by it in the manner specified in sub paragraph **a (iv)** hereof, the Club shall only be required to pay such Overspill Claims as and when such funds are received by it, provided that it can show from time to time that, in seeking to collect such funds, it has taken the steps referred to Rule **16 iii c** sub paragraphs **(i)** and **(ii)**.

**16 General i** If a ship is entered in the Club for the account of a time charterer, the
**Exceptions** liability of the Club shall be limited to such amount as would apply if he
**and Limitations** were the registered owner of the ship and entitled to limit liability, or to such other amount as may be stated in the Certificate of Entry.

**Oil Pollution ii** Save as otherwise provided under the relevant Certificate of Entry, the
**Limit** liability of the Club in respect of claims for oil pollution shall be limited to such sum and be subject to such terms and conditions as the Directors may from time to time determine.

34

**16  ii**

continued

*provided always that:*

(a) for the purposes of this Rule, claims for oil pollution shall be deemed to include claims in respect of all liabilities arising out of the escape or discharge or threatened escape or discharge of oil from the entered vessel or any other vessel or vessels or any fixed or movable object as a result of any one accident or occurrence and recoverable from the Club by virtue of one or more of the provisions of Rule **25** of these Rules;

(b) in the event that the aggregate of such claims exceeds the limit determined by the Directors hereunder, the liability of the Club in respect of each claim shall be such proportion of the said limit as each claim recoverable from the Club bears to the said aggregate;

(c) where claims for oil pollution arise in respect of an entered vessel providing salvage or other assistance to another vessel following an accident or occurrence such claims shall be aggregated with any claims for oil pollution made by other vessels providing salvage or other assistance to the said vessel following the said accident or occurrence against the Club or any other P. & I. Association which participates in the reinsurance arrangements of the International Group of P. & I. Clubs. The liability of the Club in respect of such claims shall be limited to that proportion of the limit determined by the Directors that each claim recoverable from the Club bears to the said aggregate;

(d) where a bareboat charterer and an owner are separately insured with the Club or any other P. & I. Association which participates in the reinsurance arrangements of the International Group of P. & I. Clubs, the aggregate of all claims for oil pollution following an accident or occurrence brought against the Club and/or such other Association shall be limited to the sum determined hereunder. The liability of the Club in respect of such claims shall be limited to that proportion of the sum determined by the Directors that each claim recoverable from the Club bears to the aggregate of the claims recoverable against the Club and such other Association if any;

(e) in the event of legislation coming into force anywhere in the world affecting a Member's liability in respect of oil pollution the Club shall, upon each and every such enactment, have the right to increase such Member's rate of contribution or to charge additional premium or limit its liability in respect thereto;

(f) if the total amount of any pollution claim against a Member exceeds a sum equal to the Club's limit of liability in respect of oil pollution claims, as determined by the Directors in accordance with this Rule **16**, the Club will have no liability in respect of that amount by which any such claim exceeds the sum equal to the limit aforesaid.

**Note:** *The sum approved by the Directors to apply to Rule **16 ii** as from 20th February 2000 is US$1,000,000,000 each vessel any one accident or occurrence.*

---

**16  iii**

continued

**Claims Limit**

*over and above and without prejudice to any other applicable limit,* any Overspill Claim incurred by the Club shall not be recoverable from the Club in excess of the aggregate of:

(i) that part of the Overspill Claim which is eligible for pooling under the Pooling Agreement but which, under the terms of the Pooling Agreement, is to be borne by the Club; and

(ii) the maximum amount that the Club is able to recover from the other parties to the Pooling Agreement as their contributions to the Overspill Claim.

**b** The aggregate amount referred to in sub Rule **a** hereof shall be reduced to the extent that the Club can evidence:

(i) that costs have been properly incurred by it in collecting or seeking to collect:

(a) Overspill Calls levied to provide funds to pay that part of the Overspill Claim referred to in sub paragraph **a (i)** hereof, or

(b) the amount referred to in sub paragraph **a (ii)** hereof; or

(ii) that it is unable to collect an amount equal to that part of the Overspill Claim referred to in sub paragraph **a (i)** hereof which it had intended to pay out of the levy of Overspill Calls because any Overspill Calls so levied, or parts thereof, are not economically recoverable, provided that if, due to a change in circumstances, such amounts subsequently become economically recoverable, the aggregate amount referred to in sub paragraph **a** hereof shall be reinstated to that extent.

**c** In evidencing the matters referred to in sub paragraph **b (ii)** hereof the Club shall be required to show that:

(i) it has levied Overspill Calls in respect of the Overspill Claim referred to in sub paragraph **a** hereof on all Members entered in the Club on the Overspill Claim Date in accordance with and in the maximum amounts permitted under Rule **8 I**; and

(ii) it has levied those Overspill Calls in a timely manner, has not released or otherwise waived a Member's obligation to pay those calls and has taken all reasonable steps to recover those calls.

**iv** When a Member for whose account a ship is entered in this Class is entitled to limit his liability, the liability of the Club shall not exceed the amount of such limitation or, if the ship is not entered for her full tonnage, such proportion of the said amount as the entered tonnage bears to the full tonnage.

**17**

Unless the Managers otherwise agree in writing as a term of entry, the Club shall not insure any Member to any extent whatsoever, against the following risks:

**17** **Hull Risks** **a** liabilities, costs or expenses against which the Member would be insured
continued if the entered ship were fully insured under the hull policies on terms no
less wide than those of the usual Lloyd's policy for the current market
value with attached London Institute Time Clauses - Hulls 1/10/83
(including Clause 8) and were fully entered in Class II of the Club or other
Club affording the same cover.

If the entered vessel be insured at Lloyd's or elsewhere on wider terms
than the foregoing and the Club's liability under Rules **25 xxvi** or **25
xxvii** be thereby reduced, an appropriate reduction in calls shall be
made for the excluded risks provided notice be given by the Member at
the inception of the risk;

**Specialist** **b** liabilities, costs or expenses incurred by a Member who contracts to
**Operations** perform specialist operations, including but not limited to dredging,
blasting, pile driving, well stimulation, cable or pipe laying, maintenance
or removal, core sampling, depositing of spoil, waste incineration or
disposal operations, professional oil spill response or professional oil spill
response training;

**Drilling** **c** liabilities, costs or expenses incurred in respect of an entered ship (being
**Operations** a drilling ship or barge or any other ship or barge carrying out drilling
exploration, construction or production operations including any
accommodation unit moored on site as an integral part of such
operations) and arising out of or during drilling or core sampling or
production operations;

**Diving** **d** liabilities, costs or expenses arising out of the operation by the Member
**Operations** of submarines, mini submarines or diving bells or the activities of
professional or commercial divers;

**Salvage** **e** liabilities, costs and expenses arising out of salvage operations conducted
**Operations** by an entered vessel, other than where the purpose of such operations is
saving or attempting to save life at sea.

**18** **Nuclear Risks** The Club shall not insure any Member to any extent whatever against
any loss, damage, liability or expense directly or indirectly caused by,
contributed to, or arising from:

**a** ionising radiation from, or the radioactive, toxic, explosive or other
hazardous or contaminating properties of any nuclear fuel or any
nuclear waste or the combustion of nuclear fuel;

**b** ionising radiation from, or the radioactive, toxic, explosive or other
hazardous or contaminating properties of any nuclear installation,
reactor or other nuclear assembly or nuclear component thereof;

**c** any weapon of war employing atomic or nuclear fission and/or fusion
and/or other like reaction or radioactive force or matter.

*provided always that:*

this Rule does not exclude liabilities, costs and expenses arising out of the
carriage of "excepted matter" (as defined in the Nuclear Installations Act
1965 of the United Kingdom or any regulations made thereunder) being
carried as cargo on an entered vessel.

**18** *Note: The Nuclear Installations Regulations reflect the provisions of the*
continued *OECD Paris Convention on Carriage of Nuclear Material. "Excepted*
*matter" is nuclear matter consisting only of one or more of the following:*

*a   isotopes prepared for use for industrial, commercial, agricultural,*
*medical or scientific purposes;*

*b   natural uranium;*

*c   depleted uranium;*

*d   small quantities of nuclear matter as prescribed.*

**19** **War Risks** There shall be no recovery from the Club in respect of a Member's
liabilities, costs or expenses (irrespective of whether a contributory cause
of the same being incurred was any neglect on the part of the Member
or on the part of the Member's servants or agents) when the incident in
respect of which such liability arises, or such costs or expenses are
incurred, was caused by:

**a** War, civil war, revolution, rebellion, insurrection or civil strife arising
therefrom, or any hostile act by or against a belligerent power or any act
of terrorism;

**b** capture, seizure, arrest, restraint or detainment (barratry or piracy
excepted) and the consequences thereof or any attempt thereat;

**c** mines, torpedoes, bombs, rockets, shells, explosives or other similar
weapons of war, save for those liabilities, costs or expenses which arise
solely by reason of:

(i) The transport of any such weapons whether on board the entered
ship or not, or

(ii) the use of any such weapons either as a result of Government order
or through compliance with a written direction given by the
Managers or Directors where the reason for such use was the
avoidance or mitigation of liabilities, costs or expenses which would
otherwise fall within the cover of the Club.

*provided that:*

The Directors may resolve that special cover be provided to the Members
against any or all of the risks set out in Rule **25**, notwithstanding that
those liabilities, costs or expenses would otherwise be excluded by this
Rule **19** and that such special cover should be limited to such sum or sums
and subject to such terms and conditions as the Directors may from time
to time determine.

In the event of any dispute as to whether or not any act constitutes an
act of terrorism, the decision of the Directors shall be final.

**20** **Equipment** The Club shall not under any circumstances, save only those provided for
**and Freight** in the specific Rules enumerated hereunder, pay for loss of or damage to
an entered ship, or her tackle, apparel, furniture, stores, fittings or
equipment, or for any proportion thereof, or for the cost or charges of

**20**
continued

or relating in any manner whatsoever to the repair of an entered ship, or for loss of freight or hire or any proportion thereof, or for salvage, or for loss arising out of the cancellation of a charter or other engagement of an entered ship, or for bad debts, or for insolvency or for fraud of agents, or for demurrage on or detention of an entered ship.

The specific Rules referred to are as follows:

Rule 25 **xii** - relating to life salvage;

Rule 25 **xxiv**, sub-paragraph **j** - relating to loss of freight or hire being part of the measure of damage recoverable in respect of loss of or damage to cargo;

Rule 25 **xxvii** - relating to ship's proportion of general average;

Rule 25 **xxxviii** - relating to expenses incurred by direction of the Club.

**21** **Double Insurance**

If a Member is, apart from the protection or indemnity of the Club, insured, protected or indemnified in any manner whatsoever against any of the liabilities, costs or expenses enumerated in Rules **25** or **26**, no contribution shall be made by the Club to such liability, costs or expenses, on the basis of double insurance or otherwise, to the extent to which he is so insured or protected or indemnified. Nevertheless, with the approval of the Directors, a Member may be protected or indemnified by special agreement with the Club made either directly with himself or with other Insurers upon the terms that certain liabilities, costs or expenses shall be borne by the Club notwithstanding such other insurance, protection or indemnity

**22** **Imprudent Trading**

**i** No claim shall be recoverable from the Club if it arises out of or is consequent upon an entered ship;

(a) carrying contraband, blockade running or being employed in a trade unlawful in the countries of shipment, destination or transit, or

(b) performing any voyage or being employed in any trade which in the opinion of the Directors is unsafe or improper or involves extraordinary risks.

**ii a** There shall be no recovery from the Association in respect of any liability, cost or expense whatsoever or howsoever arising, whether directly or indirectly, out of or in consequence of

(i) the Member's participation in or use of any system or contractual arrangement the predominant purpose of which is to replace paper-based documentation in shipping and/or international trade with electronic messages, including, without limitation, the Bolero system (and any such system or arrangement being referred to in this rule as a "paperless system"), or

(ii) a document which is created or transmitted under a paperless system which document contains or evidences a contract of carriage, or

**22 ii**
continued

(iii) the carriage of goods pursuant to such a contract of carriage.

Save to the extent that the Association in its sole discretion may determine that such liability, cost or expense would have arisen and would have been covered by the Association if the Member had not participated in or used a paperless system and any contract of carriage had been contained in or evidenced by a paper document.

**b** For the purpose of this rule a "document" shall mean anything in which information of any description is recorded, including, but not limited to, computer or other electronically generated information."

**23 Classification**

**i** The Member shall ensure that from the time when a vessel is entered in the Club and throughout the period of the vessel's entry:

**a** the vessel is and remains classed with a Classification Society approved by the Managers in respect of the entered vessel;

**b** any incident or condition in respect of which that Classification Society might make recommendations as to repairs or other action to be taken is promptly reported to that Classification Society;

**c** all Rules, recommendations and requirements of the Classification Society relating to the entered vessel are complied with within the time or times specified by the Society;

**d** the Managers are authorised to inspect any documents and obtain any information relating to the maintenance of Class of the entered vessel in the possession of any Classification Society with which the vessel is or has at any time been classed and such Classification Society or Societies are where necessary authorised to disclose and make available such documents and information to the Managers upon request by them and for whatsoever purpose the Managers may consider necessary;

**e** the Managers will be informed immediately by the Member if at any time during the period of entry, the Classification Society with which the ship is classed is changed.

**Prudent Uninsured**

**ii** The Member shall take such steps to protect his interests both before and/or during, and/or after any event likely to give rise to a claim on the Club as he should have done or as he would have done if he had not been protected by the Club.

*provided always that:*

compliance with the provisions of Rules **23 i** and **23 ii** above shall be a condition precedent to a Member's right of recovery from the Club, provided that the Directors shall have power in their absolute discretion to admit in whole or in part a claim, notwithstanding a breach of such condition. The exercise of their discretion by the Directors shall be final and conclusive for all purposes.

***Note:*** *Rule 23 ii, which requires a Member to take such steps to protect his interests as would be expected of an uninsured person acting reasonably in similar circumstances, applies, inter alia, to date compliance. "Date Compliance" means that, in relation to computers and other equipment or systems for processing, storing or retrieving*

**23  ii**
*Note
continued*

*data, hardware, software, firmware and microprocessors and any equipment which contains or relies upon microprocessors, neither performance nor functionality is adversely affected by dates prior to, during and after the year 2000 and in particular that:*

*a   no value for current date will cause any interruption in operation;*

*b   date-based functionality and performance shall behave consistently for dates prior to, during and after the year 2000;*

*c   in all interfaces and data storage, the century in any date shall be specified either explicitly or by unambiguous algorithms or inferencing rules; and*

*d   the year 2000 shall be recognised as a leap year.*

**Wilful   iii
Misconduct**

There shall be no recovery in respect of any liabilities, costs or expenses arising out of or constituted by the wilful misconduct on the part of the Member unless the Directors shall in their absolute discretion otherwise determine.

**Condition   iv
Surveys**

The Managers may require a Member to submit an entered vessel for survey at any time by a surveyor nominated by the Managers, within such period as may be specified by them. No claim for recovery from the Club as a result of an incident arising after the expiry of such period shall be admitted if the entered vessel has not been made available for survey within the period specified;

*provided always that:*

the Directors shall have power in their absolute discretion to admit in whole or in part a claim so arising and the exercise of their discretion by the Directors shall be final and conclusive for all purposes.

Any recommendations as to repair made by a surveyor appointed under the provisions of this Rule must be carried out forthwith, or within such time as may be specified by the Managers.

The Managers shall be empowered, in their discretion to:

**a**   terminate the entry of the vessel from a time and date specified by a notice in writing to the Members at any time after a duly appointed surveyor shall have made such recommendations, in which case a return of premium shall be allowed pro rata for the period in respect of which the entry has been terminated;

**b**   exclude cover for claims arising out of or contributed to by any defect in the vessel in respect of which the surveyor has made a recommendation as to repair and which arise out of any incident occurring after the surveyor has made such recommendation or;

**c**   exclude cover for all claims arising out of or contributed to by any defect in the ship in respect of which the surveyor has made a recommendation as to repair and arising after such date as the Managers may specify, unless by that date the Member has submitted the vessel for re-survey and the repairs recommended have been carried out to the satisfaction of the Managers.

**23   Statutory   v
Requirements**

It is a condition of the cover afforded under these Rules that the Member shall comply with all statutory requirements of the state of the vessel's flag relating to the construction, adaptation, condition, fitment, equipment and manning of the entered vessel, and shall at all times maintain the validity of such statutory certificates as are issued by or on behalf of the state of the vessel's flag in relation to such requirements and in relation to the International Safety Management (ISM) Code;

*provided always that;*

unless and to the extent that the Directors shall in their absolute discretion otherwise determine, a Member shall not be entitled to any recovery from the Club in respect of any claim arising during a period when the Member is not fulfilling or has not fulfilled the conditions set out in this paragraph **v** of this Rule **23**.

**24   Powers of
Directors**

Notwithstanding any neglect and/or non-compliance with or breach of any rules, warranties, conditions precedent, instructions, orders or directions of the Club, the Directors may pass and pay in full or in part any claim which in their sole discretion they think fit and waive any penalties. Any steps taken by the Club with or without knowledge of any breach of the rules or any indulgence in the payment of premiums shall not be a waiver of the Club's right under these rules to repudiate any claims.

**25   Risks Covered**

The liabilities, costs and expenses against which Members shall be entitled to Protection and Indemnity in the Club are limited to the following and are subject to such deductibles as may be applied under paragraph **xLi** of this Rule:

**Damages or   i
Compensation for
Loss of Life,
Personal Injury
or Illness**

damages or compensation for loss of life of, or personal injury to, or illness of any person (excluding those referred to under **Rule 25 ii, iii, iv** and **v**) including hospital, medical or funeral expenses for which the Member may in consequence be liable, arising out of the negligent navigation or management of the entered ship or other negligent act or omission on board of or in relation to the entered ship, or for which a Member may be liable under the terms of an indemnity given by him to the owners or operators (including Port or Dock Authorities) of any dock or drydock;

*provided always that:*

the terms of the indemnity shall have been approved by the Managers, or the Directors have in their discretion determined that a particular claim falls within the scope of Club cover.

**ii**   any seaman or other person carried in an entered ship, or any member of the crew of an entered ship (or any substitute for or replacement of a member of the crew of an entered ship) for which the Member may be liable under Compensation Acts or similar enactments, decrees or regulations, or under National Maritime Board Agreements or similar collective or special agreements approved by the Managers;

25    iii    any person arising in relation to the handling of the cargo of an entered ship or in consequence of the negligence of persons employed solely for that purpose, from the time of receipt for shipment on quay or wharf until final delivery ex quay or wharf at the port of discharge, for which the Member may be liable. The Club may issue a form of indemnity for stevedores or other sub-contractor on request when a benefit results to the Member;

iv    any person in or on board any other ship or vessel caused by the negligent navigation or management of an entered ship or other negligent act or omission on board of or in relation to an entered ship;

**Expenses Incurred Under Statute or Collective or Special Agreements in Respect of Loss of Life, Personal Injury or Illness**    v    hospital, medical and funeral expenses incurred under statutory obligation or in accordance with any collective or special agreement approved by the Managers, in consequence of loss of life of, or personal injury to or illness of any master or seaman on board an entered ship, or of any member of the crew of an entered ship (or any substitute for or replacement of a member of the crew of an entered ship) including expenses incurred in consequence of any master or seaman being by reason of injury or illness temporarily removed from an entered ship.

Such expenses, including the expense of repatriation in consequence of illness, incurred in respect of the master of an entered ship without statutory obligation or collective or special agreement shall be recoverable if the Managers determine that such expenses should not, having regard to all the circumstances of the case, be borne by or charged against the master;

**Shipwreck Unemployment Indemnity**    vi    wages or other compensation payable to seamen in consequence of the loss or wreck of an entered ship, under statutory or other legal obligation, or under National Maritime Board Agreements or similar collective or special agreements approved by the Managers;

**Crew Repatriation**    vii    repatriation expenses incurred under statutory obligation or under the terms of a collective or special agreement approved by the Managers, in respect of all or any members of the crew of an entered ship in consequence of a casualty thereto or consequent on illness or injury;

provided always that:

no such expenses shall be recovered if they arise out of or ensue upon the termination of any agreement either in accordance with the terms thereof or by mutual consent, or by dismissal, or the sale of the entered ship, or any other act of the Member in respect of the entered ship.

**Crew Substitute Expenses**    viii    expenses necessarily incurred in sending abroad substitutes, or in securing, engaging, repatriating or deporting a substitute engaged abroad, to replace any master or seaman on board an entered ship who shall have died, or who shall have been left ashore in consequence of injury, illness, desertion or in any other case in which the Directors shall determine that such expenses were reasonably incurred;

provided always that:

43

**25 proviso continued**

(a) no such expenses shall be recoverable if they arise out of or ensue upon the termination of any agreement either in accordance with the terms thereof or by mutual consent, or the breach by the Member of any of the statutory or contractual obligations, or of the terms or condition of any collective agreement, and

(b) wages shall only be recoverable as part of such expenses when payable to substitutes, engaged abroad, while awaiting and during repatriation.

**Loss of Seamen's Effects**    ix    payments made to seamen in respect of the loss of their effects under nationally negotiated agreements approved by the Managers or other agreements approved by the Managers in writing or under statutory obligation;

provided always that:

no payment shall be made for loss of articles not coming within the definition of 'effects' contained in Rule **2**.

**Deserters and Stowaways**    x    fines and repatriation expenses incurred under statutory obligation for any crew member who shall be posted as a deserter from the ship or for any stowaway. If a detainment notice is served in the United States in respect of any crew member or stowaway the Club will pay the cost of employing shore watchmen approved by the local Club correspondents or the cost of maintaining the crew member or stowaway ashore in safe custody;

provided always that:

if a detainment notice is served and shore watchmen are not employed or the crew member or stowaway concerned is not taken ashore in safe custody the Club will have no responsibility for the fines or expenses incurred as a result of his desertion or escape. Any wages due to a deserter shall, so far as permissible by statute, be retained by the Member and deducted from the repatriation expenses payable by the Club.

**Port and Deviation Expenses**    xi    port and other charges solely incurred for the purpose of landing or disposing of stowaways or landing or securing the necessary treatment for an injured or sick person being carried in an entered ship including the net loss to Members in respect of fuel, insurance, wages, stores and provisions incurred for such purpose or while awaiting a substitute for such person;

**Life Salvage**    xii    life salvage shall be recoverable to the extent only that the same is not recoverable from Hull Underwriters on the entered ship or from Cargo Owners and Underwriters;

**Passengers**    xiii    a    damages or compensation for illness of, injury to or loss of life of passengers, whether fare paying or otherwise, including medical, hospital, repatriation, funeral and deviation expenses as defined in Rule **25 xi**, arising out of any act, neglect or default on board or in relation to the entered ship, or during the forwarding of passengers to destination or return to port of embarkation and maintenance of passengers ashore;

44

**25 xiii**
continued

**b**  loss of or damage to a passenger's baggage or effects;

**c**  damages or compensation to passengers on board an entered ship (other than set out under sub-Rule **a** hereof) for which a Member may be liable under a passage contract in consequence of a casualty to the entered ship, or during the forwarding of passengers to destination or return to port of embarkation and maintenance of passengers ashore;

*provided always that:*

(a)  in relation to paragraph **xiii b** of this Rule, save as otherwise agreed in writing by the Managers prior to the event giving rise to a claim, there shall be no recovery from the Club in respect of claims relating to cash, negotiable instruments, precious or rare metals or stones, valuables or objects of a rare or precious nature;

(b)  in relation to paragraphs **xiii a, b** and **c** of this Rule, the terms of any contract under which such liability may arise shall have been approved by the Managers in writing prior to the event giving rise to the claim. In giving such approval, the Managers may impose any such terms or conditions as they think fit;

(c)  save at the sole discretion of the Directors no liability shall attach to the Club for any payments made by the Member in excess of his legal liability. Further on demand by the Managers the Member shall be bound to prosecute any right of recovery he may have against the passenger;

(d)  there shall be no recovery in relation to any liabilities, costs and expenses whatsoever arising out of travel by air unless:

(i)  arising out of the repatriation by air of sick or injured passengers or of passengers following a casualty to the entered ship:

(ii)  arising out of excursions by air from the entered ship, subject to proviso **(e)** hereof;

(e)  there shall be no recovery in relation to contractual liabilities, costs and expenses arising in respect of a passenger on an excursion from the entered ship in circumstances where either:

(i)  a separate contract has been entered into by the passenger for the excursion and/or

(ii)  the Member has waived any or all of his rights of recourse against any sub contractor or any third party in respect of the excursion.

**Note:** *It is recommended that whenever practicable an indemnity be taken from non fare paying passengers. The Managers will provide a form of indemnity on request, and also arrange a separate insurance to cover such passengers' risks and liabilities.*

**Collision xiv**
**Liability**  owners shall be entitled to recover from the Club without limit one-fourth, or such other proportion as may been agreed in writing by the Managers, of the collision liability with costs and expenses incidental thereto, if and to the extent that such proportion is not covered under the collision liability clause contained in the Hull Policies of the entered vessel, provided that such liabilities, costs and expenses do not represent any franchise or deductible applied under such policies;

continued

**xv**  a Member shall also be entitled to recover from the Club collision liability, with costs and expenses incidental thereto, if excluded under Hull Policies of the entered vessel and/or to the extent by which such liabilities, costs and expenses exceed the amount recoverable under the Hull Policies;

*provided always that in relation to paragraphs **xiv-xv** of this Rule;*

(a)  the Directors may for the purpose of assessing any sum recoverable under paragraph xv of this Rule determine the proper amount for which the entered ship should have been insured for collision liabilities, and the Cub shall pay only the excess, if any, of the amount which would have been recoverable under such policies if the entered ship had been insured thereunder for such amount and for such liabilities;

**Note:** *As to the 'Proper amount' see Note which follows proviso **a** of Rule 25 xxvii.*

(b)  the Club shall have power, but shall not be bound at the request of a Member to agree for the purpose of paragraph xv of this Rule, the proper amount for which an entered ship should be insured for collision liabilities for the current year;

(c)  unless otherwise agreed at the time of entry, a Member shall not be entitled to recover from the Club any excess, franchise or deductible borne by him under the Hull Policies;

(d)  such liabilities shall however be recoverable hereunder in full if, but to the extent only to which it represents the legal liability of the Member to pay, or to indemnify the Owner of another ship against:

(i)  the costs, charges and expenses of or incidental to the raising, removal, destruction, lighting or marking of the wreck of such other ship;

(ii)  damage done by such other ship to any harbour, dock, pier, jetty, land, water or any other fixed or movable thing whatsoever (not being another ship or any property therein or the cargo or other property intended to be, or being or having been carried in the entered ship);

**Note:** *See Note to Rule 25 xvi.*

(e)  if a claim arises under this Rule upon a collision involving two ships belonging to the same Member, he shall be entitled to recover from the Club, and the Club shall have the same rights, as if the ships had belonged to different Owners;

(f)  if both ships are to blame, then unless the liability of the owners of one or both of them becomes limited by law, claims under this Rule shall be settled upon the principle of Cross-Liabilities, as if the owner of each ship had been compelled to pay the owner of the other ship one-half or other proportion of the later's damages as may have been properly allowed in ascertaining the balance or sum payable by or to the former in consequence of the collision;

(g)  cover hereunder is subject to the proviso contained in sub-paragraph **(a)** of the succeeding Rule 25 xvii (Fixed and Floating Objects).

**25 Pollution**  **xvi**  **a**  liabilities, costs or expenses arising out of the escape or discharge or threatened escape or discharge of any substance from the entered ship including the cost of any measures reasonably taken to avoid or minimise any consequential loss or damage and any liability for loss or damage to property caused by measures so taken;

**b**  liabilities, costs or expenses incurred as a result of compliance with the order or direction of any Government or authority directed towards the avoidance or minimising of pollution provided always that such liabilities, costs or expenses are not recoverable under the Hull Policies of the entered ship;

**c**  liabilities, costs or expenses for which a Member may be liable under any voluntary agreement relating to pollution having the prior approval of the Directors;

**d**  unless otherwise agreed by the Managers in writing prior to the event giving rise to a claim, or unless the Directors shall in their discretion otherwise determine, there shall be no recovery under sub-paragraphs **a**, **b** and **c** of this Rule **25 xvi** in respect of liabilities, costs and expenses which would have been recoverable by the Member in general average if the relevant charter party or other contract of carriage had incorporated the unamended York/Antwerp Rules 1994;

**e**  unless the Directors shall in their absolute discretion otherwise determine, there shall be no cover under this or any other rule in respect of any liability for loss, damage, costs and expenses arising as a consequence of the disposal, discharge or existence of any hazardous waste or other material at any dump, storage or disposal facility;

*provided always that:*

before the event giving rise to the liability the cover has been specifically extended to include such liabilities, and the Member has undertaken to pay such additional calls or contributions as may be required by the Managers.

**Note:** *The extent of liability for claims involving oil pollution are determined by the Directors under Rule 16 ii. The limit with effect from 20th February 2000 is US$1,000,000,000 each vessel any one accident or occurrence.*

*Cover for pollution liabilities generally falls into two parts. Firstly, there is cover for the Member's liability for pollution or the threat of pollution from the entered vessel (see Rules 25 xvi and xxi). Secondly, there is cover for the Member's liability for pollution or the threat of pollution from another vessel (see Rules 25 xiv, xv and xviii) or object (see Rule 25 xvii) which the insured vessel has damaged. In both cases, liabilities in connection with the operation of the insured vessel by or on behalf of the Member are covered in accordance with the conditions set out in the relevant Rule(s).*

**25**  **xvi**
*Note continued*

*Pollution liabilities relating to or arising from material discharged from the vessel and disposed of at a dump, storage or disposal facility, either with or without the direct involvement of the shipowner, are excluded unless the Directors exercise their absolute discretion to reimburse the Member in respect of such claims.*

**Fixed xvii and Floating Objects**  loss of, or damage to, or interference with the rights in relation to any harbour, dock, pier, jetty, land, water, or any other fixed or movable thing whatsoever not being another ship or any property therein, or the cargo or other property intended to be or being or having been carried in the entered ship, if liability for such loss or damage is imposed by statute or arose out of the negligent navigation or management of an entered ship or other negligent act or omission on board of or in relation to an entered ship;

*provided always that:*

(a)  unless the Directors shall in their absolute discretion otherwise determine, there shall be no cover under this or any other rule in respect of any liability for loss, damage, costs and expenses arising as a consequence of the disposal, discharge or existence of any hazardous waste or other material at any dump, storage or disposal facility;

(b)  if a claim is made on the Club under this Rule upon loss of or damage to any property or object belonging to the Member in respect of whose entered ship the claim arose, the Members shall be entitled to recover from the Club and the Club shall have the same rights, as if such property or object had belonged to a third party, but to the extent only that such loss or damage is not recoverable under any other insurance upon the said property or object.

**Note:** *See note to Rule 25 xvi.*

**Damage xviii to Vessels or Property Without Collision**  loss of, or damage to, or interference with rights in relation to any other ship or any property therein (and costs and expenses incidental thereto) occasioned otherwise than by collision with the entered ship and arising out of the negligent navigation or management of the entered ship or other negligent act or omission on board or in relation to the entered ship;

If a claim arises under this Rule upon loss of or damage to any other ship belonging to the Member, in respect of whose entered ship the claim arose, the Member shall be entitled to recover from the Club and the Club shall have same rights as if the ship lost or damaged had belonged to a third party, but to the extent that only such loss or damage is not recoverable under any other insurance upon such ship.

*provided always that:*

cover hereunder is subject to the proviso contained in sub-paragraph (a) of the preceding Rule **25 xvii** (Fixed and Floating Objects).

**Note:** *See note to Rule 25 xvi.*

**25  Towage  xix**  **a**  loss of or damage for which a Member may become liable under the terms of a contract for towage of an entered ship;

(i)  entered into during the ordinary course of trading for the purpose of entering, leaving or manoeuvring within the port;

(ii)  entered into during the ordinary course of trading, when the entered vessel is habitually towed from place to place and has been declared as such to the Managers, to the extent only to which such liability is not recoverable under the Hull Policies;

(iii)  when the terms of that contract, not being a contract falling under the terms of **(i)** or **(ii)** above, have been approved in writing by the Managers on such terms as they may require;

**b**  loss or damage for which a Member may become liable under the terms of a contract for towage by an entered ship;

*provided always that:*

(a)  the terms of the contract have been approved in writing by the Managers on such terms as they may require, or

(b)  the Directors shall in their discretion decide that, having regard to all circumstances of the towage, the particular claim falls within the scope of Club cover.

**c**  loss of or damage for which a Member may become liable otherwise than under the terms of a towage contract, arising out of towage of or by an entered ship;

*provided always that:*

notwithstanding any other provision of these Rules, there shall be no recovery in respect of liability arising out of towage by an entered ship for loss of, or damage to or wreck removal of a towed ship or object and/or cargo carried thereon, unless the towage is being carried out under a contract, the terms of which have been agreed in writing by the Managers prior to the commencement of the tow giving rise to such liability.

**d**  there shall be no recovery in respect of any liabilities costs or expenses arising out of towage except insofar as such liabilities, costs and expenses relate to risks defined under provisions of Rule **25** other than this Rule **25 xix**, and also fall within the terms of sub-paragraph **a**, **b** or **c** hereof;

**Contracts and  xx**
**Indemnities**  liabilities in respect of risks covered under any Rule (other than this Rule **25 xx**) which is applicable to the Member's entry in the Club, arising under the terms of an indemnity or contract made by the Member;

*provided always that:*

the terms of the indemnity or contract shall have been approved in writing by the Managers, or the Directors have in their discretion determined that a particular claim falls within the scope of Club cover.

***Note:*** *See note to Rule **25 xvi**.*

**25  Removal  xxi**
**of Wreck**  costs and expenses of or incidental to the raising, removal, destruction, lighting or marking of the wreck of an entered ship, or cargo carried thereon, when such raising, removal, destruction, lighting or marking is compulsory by law, or the costs thereof are legally recoverable from the Member;

*provided always that:*

(a)  the value of all cargo, stores and materials saved, to the extent of the Member's interest therein, as well as the value of the wreck itself, shall first be deducted from such costs, charges and expenses, and any balance thereof if any shall be recoverable from the Club, and

(b)  nothing shall be recoverable from the Club under paragraph **xxi** of this Rule if the Member shall, without consent of the Club in writing, have transferred his interest in the cargo or wreck, otherwise than by abandonment, prior to the raising, removal, destruction, lighting or marking of the wreck;

(c)  cover hereunder is subject to the proviso contained in sub-paragraph **(a)** of the preceding Rule **25 xvii** (Fixed and Floating Objects).

***Note:*** *See note to Rule **25 xvi**.*

**Quarantine  xxii**
**Expenses**  quarantine expenses and extraordinary expenses incidental to the outbreak of infectious or contagious disease upon an entered ship incurred for or by way of:

**a**  the disinfection of the entered ship or of persons on board her under quarantine or public health enactments, regulations or orders, including the cost of taking in fuel in quarantine, and of loading and discharging cargo and of the victualling of the crew and passengers after deducting the ordinary expenses of loading, discharging and victualling;

**b**  fuel consumed or towage in proceeding to and from and lying at a special station or place in accordance with such enactments, regulations or orders;

**c**  expenses directly consequent upon bearing up for, or putting into a port or place of refuge and resuming the voyage thereafter by reason solely of the outbreak of infectious or contagious disease upon an entered ship;

*provided always that:*

there shall be no recovery under paragraph **xxii** of this Rule if the entered ship was at the time such expenses were incurred, chartered to proceed to or under orders from the Member or her Managers to proceed to a port at which it was known or should in the determination of the Directors have reasonably been anticipated that she would be quarantined.

**Liability for  xxiii**
**Loss or Shortage**
**of Cargo or**
**Other Property**  loss of cargo or other property intended to be, or being, or having been carried in an entered ship arising out of any breach by the Member, or by any person for whose acts, neglect or default he may be legally liable of his obligation or duty as a carrier by sea properly to load, handle, stow, carry, keep, care for, discharge and deliver such cargo or property, or out of unseaworthiness or unfitness of the entered ship;

**25**    **xxiv a**
continued **Liability for or Damage to or Responsibility in Respect of Cargo or Other Property**

damage to or responsibility in respect of cargo or other property intended to be, or being, or having been carried in an entered ship arising out of any breach by the Member, or by any person for whose acts, neglect or default he may be legally liable of his obligation or duty as a carrier by sea properly to load, handle, stow, carry, keep, care for, discharge and deliver such cargo or property, or out of unseaworthiness or unfitness of the entered ship;

Under this paragraph a Member shall be entitled also to recover the extra cost (in excess of the cost which would normally have been incurred by him under the contract of carriage) of discharging or disposing of damaged or worthless cargo, provided that the Member is liable for such cost and has no recourse to recover the same from any other party.

*provided always that in relation to paragraphs **xxiii** and **xxiv** of this Rule:*

if the contract of carriage under which any cargo or other property is carried solely in the entered ship is not subject to the provisions of the International Convention for the Unification of certain rules relating to Bills of Lading, signed at Brussels on 25 August 1924 (known as 'the Hague Rules') or to the Hague Rules as amended by the Protocol signed at Brussels on 23rd February 1968 (known as the 'Hague-Visby Rules') or to equally wide exemptions of the Carrier from liability, the Directors may reject or reduce a claim to the extent to which it would not have arisen under paragraphs **xxiii** or **xxiv** of this Rule if the contract of carriage had been subject to such provisions unless the Member shall have given notice in writing to the Managers of the contract of carriage and its terms, immediately he became aware of them, and the Managers have been able to effect an insurance of the liability of the Club and/or of the Member, at the expense of the Member, in respect of such cargo.

**b**   a Member shall be entitled to recover from the Club loss of or damage to or responsibility in respect of cargo or other property for which the Member may be liable under a Through or Transhipment Bill of Lading or other form of contract of carriage (not hereunder prohibited) issued either:

(i)   for a carriage partly to be performed by an entered ship and partly by another ship, or

(ii)   for a carriage partly to be performed by an entered ship and partly by land and air transport provided that the terms of the contract of carriage have been approved by the Club and the Member has paid or agreed to pay such additional calls or premiums as may be required by the Managers.

Unless otherwise agreed by the Club in writing, the Member shall, in respect of any time other than when the cargo is being carried on the entered ship, preserve all rights against any other carrier and shall not reduce or restrict the liability of such other carrier by agreement or otherwise. In the event of the carrier being the Member, the Club shall have the same rights as if the Member was a third party.

**25**    **xxiv b**
continued

In all cases the Directors shall have power at any time to prohibit for general use or for use in particular trade, any form of Bill of Lading or contract of carriage under which the Owner of an entered ship may become liable for loss of or damage to cargo carried by a means of transport other than the entered ship.

**c**   a Member shall be entitled to recover from the Club loss of or damage to or responsibility in respect of cargo or other property for which the Member may become liable under the terms of a contract with or of an indemnity given by him to the owners or operators of floating cranes or lighters or other appliances or craft used during the operations of loading or discharging or forwarding cargo in or from an entered ship, or to persons responsible for the custody of cargo to be loaded in or having been discharged from an entered ship;

*provided that:*

the terms of the indemnity shall have been approved by the Managers, or the Directors have in their discretion determined that a particular claim falls within the scope of Club cover.

**d**   a Member shall not be entitled to recover from the Club any liability, costs or expenses in respect of specie, bullion, precious or rare metals or stones, plate jewellery or other objects of a rare or precious nature, banknotes or other forms of currency, bonds or other negotiable instruments, unless the Club has approved in writing of the contract of carriage and of the spaces in which the same are to be carried and of the instructions given to those on board the ships with regard to the safe custody thereof;

**e**   no claim on the Club shall be allowed for liabilities, costs or other expenses exceeding US$2,500 per unit (as defined in the Hague Rules) in respect of cargo carried under an 'ad valorem' Bill of Lading where the value per unit has been stated to be in excess of US$2,500 or the equivalent under any other currency unless the Member shall have given notice to the Club of the contract of carriage and its terms and the Managers have been given an opportunity to effect an insurance of the liability of the Member in respect of such cargo. The Member shall pay such additional premium not exceeding the cost of insurance (whether effected or not) as the Managers may require;

**f**   the Club may at any time require to be satisfied as to the spaces, plant and apparatus, and means used for the carriage of refrigerated cargo in an entered vessel, the instructions given to those on board and the terms of the contract of carriage under which the same is to be carried, and the Member shall upon such request supply the relevant information to the Club. If in the event the Club withholds its approval and so notifies the Member in writing, he shall not be entitled to recover from the Club in respect of any loss of or damage to such refrigerated cargo carried upon a voyage which began after the receipt by him of such notice;

**25** xxiv
continued

g   if the cargo or property in respect of which a claim is made on the Club under paragraphs **xxiii** or **xxiv** of this Rule is the property of the Member, the Member shall be entitled to recover from the Club and the Club Rules shall apply in all respects as if such cargo or property belonged to a third party, but to the extent only that such claim is not recoverable under any other insurance upon the said cargo or property, which in any event shall be deemed to be insured without deductible for its full value at the time of shipment under the usual Lloyd's policy with Institute Cargo Clauses (C) attached;

h   there shall be no recovery under paragraphs **xxiii** or **xxiv** of this Rule if liability, costs and expenses arise in consequence of a deviation of an entered ship or in relation to cargo before, during or after being carried in an entered ship, unless in the case of a deviation authorised by the Member, he shall have prior thereto given notice of the same to the Managers, or in the case of a deviation without his authority, he shall have given notice to the Managers immediately upon receiving information thereof, and the Managers have confirmed to the Member that his cover under the said paragraphs shall continue unprejudiced. Nevertheless the Directors shall have power to authorise payment by the Club of such a claim in whole or in part if the Directors shall determine that the Member had reasonable grounds for believing that no deviation was to be or had been made or that, having regard to all the circumstances of the case, the Member should be otherwise excused for failure to give such notice. The Member shall pay the whole or such part, if any, as the Directors may require of the cost of any special insurance of the liability of the Club and/or of the Member arising in consequence of any deviation authorised by the Member as the Managers may have deemed prudent to effect or if the Directors decide in their sole discretion to accept such liability without such special insurance, the Member shall pay such additional premium as they deem appropriate;

*Note: If the contract of carriage contains a Voyage Clause approved by the Club the necessity of effecting a special insurance may in certain cases be avoided, in the discretion of the Managers. The shipment of cargo on deck without a specific statement in the Bill of Lading that the particular cargo is shipped on deck has been held in some countries to be a deviation.*

i   unless the Directors shall in their absolute discretion otherwise determine, there shall be no recovery under paragraph **xxiii** or **xxiv** of this Rule in respect of the Member's liability or expenses arising out of:

(i)   the discharge of the cargo or any part thereof from an entered ship at any port or place other than a port or place permitted by the contract;

(ii)  the delivery of cargo carried on an entered ship without the production of the relevant Bill of Lading;

(iii) the issue of an ante dated or post dated Bill of Lading, Way Bill or other document containing or evidencing the contract of carriage;

**25** xxiv i
continued

(iv)  a Bill of Lading, Way Bill or other document containing or evidencing a contract of carriage issued with the knowledge of the Member or his Master with incorrect description of the cargo or the condition or quantity thereof;

(v)   the failure to arrive or late arrival of an entered ship at any port of loading, or out of the failure to load any particular cargo or cargoes in an entered ship otherwise than under a Bill of Lading already issued.

j   loss of freight or hire or any proportion thereof shall be recoverable under paragraph **xxiii** or **xxiv** of this Rule if, but only if, such loss is part of the measure of damage recoverable by persons interested in cargo carried in the entered ship for loss of or damage to such cargo, or is with the consent of the Club, included in the compromise of a claim by such persons;

k   unless and to the extent that the Managers have otherwise agreed with the Member in writing, no liabilities shall attach to the Club in respect of any deck cargo carried unless the Bill of Lading or other contract of affreightment clearly states:

(i)   that the cargo is carried on deck, and

(ii)  either provides that the Member is free from all liability for loss of or damage to cargo or provides that the responsibility of the Member is the minimum required by law.

*Note: Use of the appropriate deck cargo clause appearing in the Club's List of Recommended Clauses will be deemed to be a sufficient compliance with the requirements of this Rule. It is not normally sufficient that the Bill of Lading shall give general permission to carry cargo on deck. The Managers will on request endeavour to arrange an insurance to cover the Member's liability arising from the carriage of deck cargo with under-deck Bills of Lading but such insurance will be at the Member's expense.*

l   there shall be no recovery under paragraphs **xxiii** or **xxiv** of this rule **25** in respect of:

(i)   any liabilities, costs or expenses arising out of the escape or discharge or threatened escape or discharge of any substance from the entered ship or any property therein including cargo, or from any other ship or any property therein, or from any fixed or other movable thing or object whatsoever;

(ii)  any liability for loss, damage, costs and expenses arising as a consequence of the disposal, discharge or existence of any hazardous waste or other material (previously carried or intended for carriage on the vessel) at any dump, storage or disposal facility, unless the Directors shall in their absolute discretion otherwise determine.

**25 Collision xxv Liability to Cargo Carried in an Entered Ship**  loss or damage to cargo or other property being carried in an entered ship arising out of collision between the entered ship and another ship against which the Member is liable by law to indemnify the owner or charterer of such other ship;

If such cargo or property being carried in the entered ship is the property of the Member, the Member shall be entitled to recover from the Club and the Club Rules shall apply in all respects as if such cargo or property belonged to a third party, but to the extent only that such claim is not recoverable under any other insurance upon the said cargo or property which in any event shall be deemed to be insured without deductible for its full value at the time of shipment under the usual Lloyd's policy with Institute Cargo Clauses (C) attached.

*Note: Provided that the contract of carriage contains the usual exemption of the carrier from liability for the negligent navigation or management of the entered ship, the indemnity specified in paragraph* **xxv** *of this Rule can only arise if responsibility for the collision is determined under the laws of a country which has not adopted the International Convention for the Unification of Certain Rules to govern the Liability of Vessels when collisions occur between them signed at Brussels 1910, which is incorporated in the law of England by The Maritime Conventions Act 1911.*

**Cargo's xxvi Proportion of General Average**  cargo's proportion of general average, including special charges, which is not legally recoverable solely by reason of a breach of the contract of carriage;

*provided always that:*

(a) if the cargo's proportion is irrecoverable by reason of a deviation, the terms of Rule **25 xxiv** sub-paragraph **h** shall likewise apply to any claim under this Rule **25 xxvi**;

(b) the Directors may reject or reduce a claim under paragraph **xxvi** of this Rule if the contract of carriage under which the cargo concerned was being carried did not contain as part of its terms the provisions of Article 4 Rule ii a of the International Convention for the Unification of Certain Rules relating to Bills of Lading, signed at Brussels on 25 August 1924 known as 'the Hague Rules' or the corresponding provision of the Hague Rules as amended by the Protocol signed at Brussels on 23rd February 1968 known as 'the Hague-Visby Rules' (or an equally wide exemption from liability, whereby neither the Carrier nor the ship is liable for loss or damage arising or resulting from the act, neglect, or default of the masters, mariners, pilot or the servants of the carrier in the navigation or management of the ship);

(c) any cargo allowance stated in the adjustment, but for which credit has not in fact been taken by cargo, shall be deducted.

*Note: By virtue of the Rules no proportion of any sacrifices of ship or interest, commission or adjustment charges on sacrifices of ship (which are normally recoverable from Hull Underwriters) are payable under this Rule.*

**25 Ship's xxvii Proportion of General Average**  a Member shall be entitled to recover ship's proportion of general average, special charges or salvage not recoverable under the Hull Policies by reason of the value of the entered ship being assessed for contribution to general average or salvage at a sound value in excess of the insured value under the Hull Policies;

*provided always that:*

(a) the Directors may for the purpose of assessing any sum recoverable under paragraph **xxvi** of this Rule determine the proper value at which the entered ship should have been insured under the Hull Policies and the Club shall pay only the amount, if any, of the ship's proportion of general average which would not have been recoverable under the Hull Policies, even if the ship had been insured thereunder at such value;

*Note: When considering the 'proper amount' or 'proper value' for which an entered ship should be insured or deemed to be insured for the purpose of Rules* **25 xv** *and* **25 xxvii***, the Directors will normally require to be satisfied that the hull and machinery and/or excess liability policies of the Member concerned have been the subject of periodic review as market conditions may require, so that the total amount of liability coverage contained in these policies is maintained at a figure which is as near as possible to the free uncommitted market value of the ship.*

*Members are recommended to confer with their brokers and/or ship valuers in order to assess, in the light of the above, the amount for which insurances should be effected to cover collision and general average or salvage liabilities. Provided that the necessary insurances are effected, on the basis of the advice received, the Directors will give favourable consideration to a claim under these Rules consequent upon assessment of the value of the ship by a Court or Tribunal at an amount in excess of the insurances so effected.*

(b) the Club shall have power but shall not be bound, at the request of a Member to agree for the purpose of paragraph **xxvii** of this Rule, the proper value at which an entered ship should be insured for the current year.

**Salvors' xxviii Expenses**  liability for special compensation and any increment awarded thereon payable to salvors and incurred by a Member under the provision of Article 14 of the International Convention on Salvage 1989 or assumed under the terms of a standard form of salvage contract approved by the Directors;

*Note: See note to Rule* **25 xvi***.*

**Fines xxix**  fines imposed upon a Member in respect of an entered ship by any court, tribunal or authority of competent jurisdiction for short or over delivery of cargo, or for failure to comply with regulations concerning the declaration of goods, or the documentation of cargo;

*provided always that:*

the Member is insured by the Club for liability in respect of cargo, and subject to the terms of entry and the Rules applicable to such cover.

25

| | | |
|---|---|---|
| | xxx | fines imposed upon a Member in respect of an entered ship by any court, tribunal or authority of competent jurisdiction for breach of any immigration law or regulation; |
| | xxxi | fines imposed upon a Member in respect of an entered ship by any court, tribunal or authority of competent jurisdiction in respect of the accidental escape or discharge of oil or any other substance; |

provided always that:

the Member is insured for pollution liability by the Club, and subject to the terms of entry, the Rules, and the limit of liability applicable to such cover.

| | xxxii | fines imposed upon a Member in respect of an entered ship by any court, tribunal or authority of competent jurisdiction for smuggling by the master, officers, crew or other servant or agent of the Member; |
| | xxxiii | there shall be no recovery in respect of fines other than those specified in paragraphs **xxix, xxx, xxxi** and **xxxii** of this Rule unless the Member has satisfied the Directors that he took such steps as appear to the Directors to be reasonable to avoid the event giving rise to the fine; |

provided always that:

any amount claimed under this paragraph **xxxiii** in respect of any such fine shall be recoverable to such extent only as the Directors in their absolute discretion may determine without having to give any reason for their decision

**Confiscation** xxxiv notwithstanding the terms of Rule **20**, the Directors in their discretion may authorise the payment, in whole or in part, of an Owner's claim for loss of an entered ship following confiscation of the ship by any legally empowered court, tribunal or authority by reason of the infringement of any customs law or customs regulation;

provided always that:

(a) the amount recoverable from the Club shall under no circumstances exceed the market value of the ship without commitment at the date of the confiscation;

(b) the Owner shall have satisfied the Directors that he took such steps as appear to the Directors to be reasonable to prevent the infringement of the customs law or regulation giving rise to the confiscation;

(c) any amount claimed under this Rule **xxxiv** shall be recoverable to such extent only as the Directors in their absolute discretion may determine without having to give any reason for their decision;

(d) no such claim shall be considered by the Directors until such time as the Owner has been finally deprived of his full interest in the entered ship.

**Enquiry** xxxv costs and expenses incurred by a Member in defending himself or in protecting his interests before a Formal Enquiry into the loss of or casualty to an entered ship in cases in which, in the opinion of the Managers, a claim upon the Club is likely to arise out of such loss or casualty;

25

**Expenses Incidental to Shipowning** xxxvi liabilities, costs and expenses incidental to the business of owning, operating or managing ships which the Directors may decide to be within the scope of the Club cover. Claims under this paragraph shall be recoverable to such extent only as the Directors may determine;

**Legal Expenses** xxxvii costs and expenses including legal costs and charges, which a Member may incur in respect of (or in avoiding or attempting to avoid) any liability or expenditure against which he is indemnified by the Club;

provided always that:

no such costs or expenses shall be recoverable unless either

(a) the same have been incurred with the prior consent in writing of the Club, or

(b) the Directors shall determine that such costs or expenses were reasonably incurred.

**Expenses Incurred by Direction of the Club** xxxviii costs, expenses and loss which a Member may incur by special direction of the Club in cases which the Directors consider that the interests of the Members or Club are or may be affected;

**Through Transit Liabilities in Relation to Containers** xxxix liabilities costs and expenses which a Member may incur in relation to containers (other than actual loss of or damage to the containers themselves) owned or leased by the Member and carried, or intended to be carried, on board a ship entered in this Class, to the same extent as is provided for in Rule **25 i** to **xxxviii**; (so far as they may be applicable) by deeming such containers to be an extension of such entered ship even when away from the ship, but only to the extent and upon such terms and conditions as may be agreed in writing by the Managers prior to the attachment of the cover;

provided always that:

(a) there shall be no recovery under this Rule unless the contract of through carriage has been approved by the Managers and the Member has paid or agreed to pay such additional calls or premium as may be required by the Managers;

(b) there shall be no cover under this Rule for liabilities arising out of the ownership, possession, operation, driving or use by the Member, or by any person employed by the Member, of any road vehicle;

(c) unless otherwise agreed by the Club in writing, the Member shall, in respect of any time other than when a container is being carried on an entered ship, preserve all his rights against any other carrier and shall not reduce or restrict the liability of such other carrier by agreement or otherwise. In the event of the carrier being the Member, the Club shall have the same rights as if the Member was a third party;

**25**   Loss   xL
of or
Damage
to Containers

loss of or damage to containers owned or leased by the Member;

*provided always that:*

there shall be no recovery under this Rule unless the Member has obtained the prior written agreement of the Managers to extend his cover in terms of this Rule and the Member has agreed to such special terms, and has agreed to pay such additional calls or premium, as the Managers may require.

xLi
Deductibles

claims shall be limited to the excess of stipulated deductibles. Deductibles to be applied to particular claims will be on the basis agreed between the Member and the Managers as part of the terms and conditions upon which the entry of the ship is either accepted or continued. In the absence of contrary notification from the Club, the deductibles applicable to any particular entry at the end of any policy year shall be deemed to continue to apply to that entry in the next policy year.

**26**   General   i a
Terms and
Conditions

NOTICE IN WRITING OF EVERY CASUALTY OR OTHER EVENT LIKELY TO LEAD TO A CLAIM UPON THE CLUB, and of any survey in connection with any loss or damage in respect of which the Member may be insured by the Club must forthwith be given to the Managers;

b   in addition, every claim, liability or expense which may affect Club cover shall be notified to the Club as soon as possible, but in no case later than 12 months after the Member, or his agent has received notice that the claim, liability, or expense is or may be made against him, or incurred by him;

ii   no claim shall be settled nor shall any liability be admitted by or on behalf of a Member without the prior consent in writing of the Club;

iii   if a Member has obtained the approval of the Club to settle a claim, the Member shall present his claim for recovery from the Club within 12 months of receiving the Club's approval to the settlement;

iv   compliance with the provisions of this Rule shall be a condition precedent of a Member's right of recovery from the Club, provided that the Directors shall have power in their absolute discretion to admit in whole or in part a claim, notwithstanding a breach of such condition. The exercise of their discretion by the Directors shall be final and conclusive for all purposes.

**27**

The Directors shall meet as often as may be required for the settlement of claims which shall be paid by the Club as the Directors may determine in accordance with these Rules, but the Directors shall have power from time to time to authorise the Managers to effect payment of claims, without prior reference to the Directors. No Director shall act as such in the settlement of any claim in which he is interested.

**28**

i   Unless the Managers shall otherwise agree in writing, any claim or other matter which has resulted or may result in loss, damage, expense or liability in respect of which a Member is insured under these Rules, shall be investigated and handled on behalf of the Member by the Club and any person appointed by the Club on behalf of a Member for this purpose.

ii   Whenever requested to do so, a Member shall disclose to the Club as soon as reasonably possible any document or information in his or his agent's power, possession or knowledge which in the opinion of the Managers is or might be a matter in respect whereof the Member is or might be entitled to protection or indemnity by the Club.

iii   A Member shall comply with any direction given by the Club in connection with the handling or settlement of any claim or potential claim or in connection with any casualty or any other event or matter liable to give rise to a claim upon the Club.

iv   Compliance with the provisions of this Rule shall be a condition precedent of a Member's right of recovery from the Club, provided that the Directors shall have power in their absolute discretion to admit in whole or in part a claim, notwithstanding a breach of such condition. The exercise of their discretion by the Directors shall be final and conclusive for all purposes.

**29**

If an entered ship shall be without cargo and so remain in any safe port for a period of 30 or more consecutive days after finally mooring there (such period being computed from the day of arrival to the day of departure, one only being included) the Member shall be allowed a return of Mutual Premium at the following rate:

a   if the ship so remains with more than one-fourth of her normal crew on board - at the rate of 50% of the Mutual Premium payable on her contributing tonnage;

b   if the ship so remains with less than one-fourth of her normal crew - at the rate of 90% of the Mutual Premium payable on her contributing tonnage.

*provided always that:*

(a)   the Directors shall have sole discretion in deciding whether the port involved (or the position of the ship in that port) is a safe port within the meaning of this Rule;

(b)   no claim shall be admitted for lying-up returns under this Rule unless the claim is made within twelve months of the end of the policy year concerned;

(c)   the percentage of Mutual Premium returnable shall be calculated upon the net Mutual Premium only. For this purpose "net Mutual Premium" means Mutual Premium payable, excluding Overspill Calls; less such allowance for the unrecovered cost of reinsurance as the Managers may from time to time determine.

**30**

No assignment or subrogation by a Member of any interest under these Rules shall be deemed to bind the Club to any extent whatever.

**31**

i   A Member shall cease to be a Member and shall cease to be insured by the Club in respect of any and all ships entered by him upon the happening of any of the following events:

a   in the case of an individual upon his death;

b   in the case of a corporation if it be wound up;

c   if he ceases to have any ship entered in the Club;

d   in the case of an individual if he becomes bankrupt or makes any arrangement or composition with his creditors generally;

*provided that:*

(a)   if the cesser of Membership and of insurance be occasioned by the death of an individual Member or by the loss of an entered ship in the circumstances defined in Rule **10**, the Member's liability for contributions shall be as therein provided; and the Club shall remain liable for claims under these Rules in respect of all or such ships arising by virtue of an event which had occurred prior to the happening of the event giving rise to such cesser of Membership and of insurance, and

(a)   if the cesser of Membership and of insurance be occasioned by any of the events specified in sub-paragraph **b** or **d** above, such Member, his estate, legal, personal representatives, trustees in bankruptcy or liquidator as the case may be, shall be and remain liable for contributions in respect of the policy year during the currency of which the event occurred, pro rata only to the period beginning with that policy year and ending upon the happening of such event; but the Club shall thereupon cease to be liable for all claims in respect of such ship or ships arising after the happening of such event, and nothing done by the Club subsequent to such event shall constitute a waiver of the Club's rights under this sub-paragraph, unless the Club shall thereafter have expressly, in writing to the Member, accepted liability for such claim.

(c)   nothing in the foregoing proviso **(b)** shall prejudice the Managers' rights, under paragraph **iii**, of Rule **31**, to terminate or rescind cover, and to require payment of premium, as therein provided.

ii   A Member shall cease to be insured by the Club in respect of any ship entered by him upon the happening of any of the following events:

a   if the ownership of such ship is legally transferred;

b   if the ship be mortgaged or otherwise hypothecated without an undertaking or guarantee approved by the Managers being given to pay all contributions due or to become due upon the tonnage of the entered ship, unless the Managers exercise their discretion in any particular case to dispense with such an undertaking or guarantee;

**31   ii**
**continued**

c   if the ship becomes an actual or constructive total loss or is accepted or acknowledged by Hull Underwriters as being a constructive or compromised total loss or is considered or deemed by the Managers to be an actual or constructive or compromised total loss, whichever shall have been the earlier;

d   ten days from the date of the ship being last heard of or from her being posted at Lloyd's as missing, whichever shall be the earlier.

*provided that:*

(a)   in the event specified in sub-paragraph **a** of paragraph **ii** of this Rule the Member's liability for contributions in respect of such ship and the Club's liability for claims in respect thereof under these Rules shall be as stipulated in Proviso **(a)** of paragraph **i** of this Rule, and

(b)   in the event specified in sub-paragraph **b** of paragraph **ii** of this Rule the Member's liability for contributions in respect of such ship and the Club's liability for claims in respect thereof under these Rules shall be as stipulated in Proviso **(b)** of paragraph **i** of this Rule, and

(c)   in relation to Rule **31 ii c** and **31 ii d**, subject to the Managers' written agreement, and in their absolute discretion, the Member may continue to be covered by the Club in respect of liabilities arising out of any accidents or occurrences occurring after an event referred to in Rule **31 ii c** or **31 ii d** above, for such period, and upon such terms and conditions, and upon payment of such premium (additional to that provided for under Rule **10**) as the Managers think fit.

iii   If a Member fails to pay when due and demanded by the Managers any amounts due from him to the Club, the Managers shall be entitled in the exercise of their absolute discretion:

a   by notice in writing, to terminate the entry with the Club of any or all vessels entered by or on behalf of such Member in respect of any policy year to which the Member's default relates with effect from the beginning of that policy year. In such circumstances the Club shall:

(i)   return to the Member any premium paid for that policy year, after deduction of any sums already paid by the Club and of any sums for which the Club is or thereafter may become liable in respect of the said vessels for that year (including but not limited to any claim, reimbursement, reinsurance cost, or fee);

*provided always that:*

if the total amount of the sums already paid and/or which may become payable by the Club exceeds any premium paid for that policy year, the Member shall be and remain liable for the difference.

(ii)   not be liable for claims in relation to the said vessels arising by virtue of events occurring in any policy year to which the termination of entry relates.

**31 iii**
**continued**

b by notice in writing, to terminate the entry with the Club of any or all vessels entered by or on behalf of the Member in respect of the policy year to which the Member's default relates, with effect from the date given in such notice. In such circumstances, the Club shall:

(i) be entitled, in respect of any or all vessels entered at any time during the policy year in respect of which entry has been terminated under this Rule to that proportion of all Premiums and calls as the actual period of entry in respect of any such vessel bears to the policy year;

(ii) not be liable in respect of claims in relation to the said vessels arising by virtue of any event during the policy year to which the Member's default relates occurring after the date of termination.

*provided always that in relation to this Rule 31 iii:*

if a Member fails to pay when due and demanded by the Managers any amounts due from him to the Club in respect of more than one vessel entered in the Club, the Managers shall be entitled, in their absolute discretion, to exercise any of the options set out in this Rule **31 iii** in respect of any such vessel, and shall not be bound to exercise their discretion in the same manner in respect of each such vessel.

iv The Directors may in their sole and absolute discretion admit:

a any claim in respect of any ship or ships entered by a Member arising by virtue of an event occurring before an event upon the happening of which such Member shall have ceased to be a Member and to be insured by the Club in respect of such ship or ships under sub-paragraph **b** or **d** of paragraph **i** of this Rule;

b any claim in respect of any ship or ships entered by a Member occurring either before or after an event upon the happening of which such Member shall have ceased to be a Member and/or to be insured by the Club in respect of such ship or ships under paragraph **iii** of this Rule or under sub-paragraph **b** of paragraph **ii** of this Rule.

**32**

i Deduction shall be made from any claims or recoveries from third parties due to a Member for any premiums, deductibles or any liabilities of such Member to the Club. Further if the Managers think it desirable, deduction shall also be made of such sum as the Managers estimate will cover any Premiums and Calls due to the Club up to the date that such claims or recoveries fall due for payment to the Member.

ii For the purpose of this Rule the claims and recoveries in any one Class shall be deemed to be available for the purpose of satisfying Premiums and calls, deductibles or other liabilities due to the Club in respect of that or any other Class or Classes. Further for the purposes of this Rule, Corporations who are Members under different names but whose stockholders are the same shall be considered as one Corporation or Member.

**32**
**continued**

iii Without prejudice to the rights and remedies of the Club under these Rules, if any Premium and Calls or part thereof or any sum of whatsoever nature due from any Member to the Club is not paid by such Member on or before the date specified for payment thereof, such Member shall pay interest on the amount not so paid from and including the date so specified down to the date of payment at such rate as the Directors may from time to time determine, but the Directors may waive payment of such interest in whole or in part.

**33**

The Rules of this Class may be altered or added to by Ordinary Resolution passed at a separate meeting of the Members of this Class provided that no such alterations shall be effective unless and until the same shall be sanctioned by the Directors.

**34**

i The Directors may cause the Club, in respect of such of the Members of the Club as are eligible, to become a Member of or affiliated to the General Council of British Shipping or any similar Society or Organisation and for this purpose may authorise the payment by the Club to those bodies of such subscriptions or grants as the Directors may think fit.

ii The Directors shall also have power from time to time to pass Bye-Laws prescribing the conditions or forms of contracts of carriage either generally or for use in any particular trade or at any particular port or place. Upon the passing of any such Bye-Law, of which notice shall be sent by the Managers to all the Members concerned it shall be deemed to be incorporated in these Rules, and every Member shall conform thereto in so far as the same may apply to the voyages performed by the ships entered by him or on his behalf in the Club, or to the trades in which they may be engaged and if any Member shall commit a breach of any Bye-Law, the Directors may reject or reduce any claim made by the Member to the extent to which it would not have arisen if he had complied with the Bye-Law, and may further impose such terms upon him as they may think fit as a condition of the continuance of the entry of the Members' ship or ships in the Club.

iii The Directors may also from time to time recommend the use of any particular form of contract of carriage in any particular trade. Members whose ships are engaged in such trades will endeavour to use the appropriate form of contract of carriage when the circumstances of the fixtures or engagement of such ships permit.

**Note:** *Any recommendations made by the Directors will be found in an Appendix to the Rules.*

**35**   **Provision**  **i**  The Club is under no obligation to provide bail or other security on
**of Bail**     behalf of any Member. When the Club does provide bail or other security
        the Managers may at any time require the Member to provide an
        indemnity acceptable to the Managers.

**ii**  The provision of bail or other security by the Club does not constitute any
        admission of liability by the Club for the claim in respect of which the bail
        or other security is given.

**36**   **Dispute**  **i a**  If any difference or dispute shall arise between a Member and the Club
**Resolution**     concerning the construction of these Rules or of the Rules applicable to
        any Class in the Club or of any Bye-Law passed thereunder, or the
        insurance afforded by the Club under these Rules, or any amount due
        from the Club to the Member, such difference or dispute shall in the first
        instance be referred to and adjudicated by the Directors.

**b**  If the Member does not accept the decision of the Directors the
        difference or dispute shall be referred to the arbitration of two
        arbitrators, one to be appointed by each of the parties, in London, and
        the submission to arbitration and all the proceedings therein shall be
        subject to the provisions of the English Arbitration Act, 1950 and the
        Schedules thereto or any statutory modification or re-enactment
        thereof.

**c**  No Member shall be entitled to maintain any action, suit or other legal
        proceedings against the Club upon any such difference or dispute unless
        and until the same has been submitted to the Directors and they shall
        have given their decision thereon, or shall have made default for three
        months in so doing; and, if such decision be not accepted by the Member
        or such default be made, unless and until the difference or dispute shall
        have been referred to arbitration in the manner provided in this Rule,
        and the Award shall have been published; and then only for such sum as
        the Award may direct to be paid by the Club. And the sole obligation of
        the Club to the Member under these Rules or otherwise howsoever in
        respect of any disputed claim made by the Member shall be to pay such
        sum as may be directed by such an Award.

**d**  These Rules and any Contract of Insurance between the Club and a
        Member shall be governed by and construed in accordance with English
        Law.

        *provided always that:*

        no benefit or rights are conferred, or are intended to be conferred,
        under or through the operation of the Contracts (Rights of Third Parties)
        Act 1999 or other similar legislation.

**ii a**  Any issue of whether, for the purpose of applying any of Rules **15 ii c,**
        **16 iii b** and **16 iii c** and in relation to any Overspill Claim (the "relevant
        Overspill Claim"):

        (i) costs have been properly incurred in collecting or seeking to collect
        Overspill Calls, or

**36 ii**
continued

        (ii) any Overspill Call or part thereof is economically recoverable, or

        (iii) in seeking to collect the funds referred to in Rule **15 ii c,** the Club has
        taken the steps referred to in that Rule, on which the Club and a
        Member cannot agree shall be referred to a panel (the "Panel")
        constituted in accordance with arrangements established in the
        Pooling Agreement which, acting as a body of experts and not as an
        arbitration tribunal, shall determine the issue.

**b**  If the Panel has not been constituted at a time when a Member wishes
        to refer an issue to it, the Club shall, on request by the Member, give a
        direction for the constitution of the Panel as required under the Pooling
        Agreement.

**c**  The Club may (and, on the direction of the Member, shall) give such
        direction as is required under the Pooling Agreement for the formal
        instruction of the Panel to investigate any issue and to give its
        determination as soon as reasonably practicable.

**d**  The Panel shall in its discretion decide what information, documents,
        evidence and submissions it requires in order to determine an issue and
        how to obtain these, and the Club and the Member shall co-operate fully
        with the Panel.

**e**  In determining any issue referred to it under this Rule **36** the Panel shall
        endeavour to follow the same procedures as it follows in determining
        issues arising in respect of the relevant Overspill Claim which are referred
        to it under the Pooling Agreement.

**f**  In determining an issue the members of the Panel:

        (i) shall rely on their own knowledge and expertise, and

        (ii) may rely on any information, documents, evidence or submission
        provided to it by the Club or the Member as the Panel sees fit.

**g**  If the three members of the Panel cannot agree on any matter, the view
        of the majority shall prevail.

**h**  The Panel shall not be required to give reasons for any determination.

**i**  The Panel's determination shall be final and binding upon the Club and
        the Member (subject only to paragraph **j** hereof) and there shall be no
        right of appeal from such determination.

**j**  If the Panel makes a determination on an issue referred to in
        subparagraph a **(ii)** or **(iii)** the Club or the Member may refer the issue
        back to the Panel, notwithstanding paragraph **i** hereof, if it considers
        that the position has materially changed since the Panel made its
        determination.

**k**  The costs of the Panel shall be paid by the Club.

**l**  Costs, indemnities and other sums payable to the Panel by the Club in
        relation to any Overspill Claim, whether the reference to the Panel has
        been made under this Rule **36 ii** or under the Pooling Agreement, shall
        be deemed to be costs properly incurred by the Club in respect of that
        Overspill Claim for the purposes specified in Rule **16 iii b (i).**