NOURSE & BOWLES, LLP
Attorneys for Defendant
ASSOCIATED ELECTRIC &
GAS INSURANCE SERVICES LTD.
One Exchange Plaza
At 55 Broadway
New York, NY  10006-3030
(212) 952-6200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
IROQUOIS GAS TRANSMISSION SYSTEM L.P.,   :   05 Civ. 2149 (JSR)
                                                                  :
                          Plaintiff,                              :   **ECF CASE**
                                                                  :
         - against -                                              :
                                                                  :
ASSOCIATED ELECTRIC & GAS INSURANCE       :
SERVICES LTD., Hamilton, Bermuda (AEGIS),   :
CERTAIN UNDERWRITERS AT LLOYD'S; AON    :
RISK SERVICES OF TEXAS, INC.; and                  :
AMERICAN HOME ASSURANCE CO.,              :
                                                                  :
                          Defendants.                             :
------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANT
AEGIS TO STAY OR DISMISS THE SECOND AMENDED COMPLAINT**

NOURSE & BOWLES, LLP
Attorneys for Defendant
ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LTD.
One Exchange Plaza, At 55 Broadway
New York, NY 10006-3030
(212) 952-6200

Of Counsel:
   John P. Vayda, Esq.
   Rahul Wanchoo, Esq.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. i

STATEMENT OF FACTS ................................................................................................... 1

POINT I:   THE DISPUTE RESOLUTION/ARBITRATION CLAUSE INCORPORATED INTO THE POLICY IS ENFORCEABLE AS A TERM OF THE CONTRACT ........................................... 4

      1.  The Federal Arbitration Act Requires That The Second Amended Complaint Be Stayed Or Dismissed ....................................... 5

      2.  The Arbitration Clause Is Also Enforceable Pursuant to the New York Convention ................................................................. 9

POINT II:  THE DISPUTE RESOLUTION AND ARBITRATION CLAUSE IS NOT SUPERCEDED BY THE SERVICE OF SUIT CLAUSE ........................ 10

POINT III: ASSUMING (WITHOUT ADMITTING) THAT IROQUOIS IS AN ADDITIONAL ASSURED UNDER THE POLICY, THEN IT IS BOUND BY THE BROAD ARBITRATION CLAUSE OF THAT CONTRACT ........................................................................... 12

CONCLUSION ..................................................................................................................... 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*AT&T Technology, Inc. v. Communications Workers*,
475 U.S. 643, 651 (1986) ..................................................................................6

*Cargill Ferrous International v. M/V HUTA ZYGMUNT*,
1996 U.S.Dist. LEXIS 6290 *8 (E.D. La. 1996) .........................................13

*Continental U.K. Ltd. v. Anagel Confidence Compania*,
658 F.Supp. 809, 814 (S.D.N.Y. 1987) ......................................................13

*Dimercurio v. Sphere Drake*, 202 F.3d 71, 74 at n. 2 (2d Cir. 2000) ...................9

*Ferrostaal, Inc. v. M/V SERSOU*, 1999 AMC 2352, 2353
(S.D.N.Y. 1999) (Baer, D.J.) ........................................................................6

*Fisser v. International Bank*, 282 F.2d 231, 233,
1961 AMC 306, 308 (2d Cir. 1960); ..........................................................12

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) ...............................4

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614, 629 (1985) ..............................................................................4

*Montauk Oil Transportation Corp. v. Steamship Mutual
Underwriting Association (Bermuda) Ltd.*,
79 F.3d 295, 297, 298 (2d Cir. 1996) .........................................7, 8, 10, 11

*Morrie & Shirless Mages Foundation v. Thrifty Corp.*,
916 F.2d 402, 405-6 (7th Cir. 1990) ............................................................6

*Moses H. Cone Memorial Hospital v. Mercury Construction
Corp.*, 460 U.S. 1, 24 (1983) ........................................................................5

*Prima Paint Corp. v. Flood & Conklin
Manufacturing Co.*, 388 U.S. 395, 400 (1967) ..........................................6

*Progressive Casualty Insurance Co. v. C.A. Reaseguradora
Nacional de Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993) ..........................4

*Sharif v. Wellness International Network, Ltd.*,
2004 U.S.Dist. LEXIS 24521 *7 ................................................................6

*Smith/Enron Cogeneration Limited Partnership, Inc. v.*
  *Enron International C.V.*, 198 F.3d 88, 92 (2d Cir. 1999),
  cert. denied, 531 U.S. 815 (2000) ..................................................................................9

*Son Shipping Co., Inc. v. De Fosse & Tanghe,*
  199 F.2d 687, 688 (2d Cir. 1952) ..............................................................................12, 13

*Sparling v. Hoffman*, 684 F.2d 635, 638 (9th Cir. 1988) ........................................................7

*Thomson-CSF v. American Arbitration Association,*
  64 F.3d 773, 776 (2d Cir. 1995) ......................................................................................12

*West Shore Pipe Line Company v. Associated Electric*
  *& Gas Insurance Services Ltd.,*
  791 F. Supp. 200, 204 (N.D. Ill. 1992) ....................................................................6, 8, 11

## FEDERAL STATUTES

9 U.S.C. § 1 *et seq.*, ................................................................................................5, 7, 9, 10, 11

9 U.S.C. § 201 *et seq.*, ..........................................................................................................9, 10

NOURSE & BOWLES, LLP
Attorneys for Defendant
ASSOCIATED ELECTRIC &
GAS INSURANCE SERVICES LTD.
One Exchange Plaza
At 55 Broadway
New York, NY 10006-3030
(212) 952-6200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
IROQUOIS GAS TRANSMISSION SYSTEM L.P.,  :  05 Civ. 2149 (JSR)

                Plaintiff,  :  **ECF CASE**

  - against -  :

ASSOCIATED ELECTRIC & GAS INSURANCE  :
SERVICES LTD., Hamilton, Bermuda (AEGIS),  :
CERTAIN UNDERWRITERS AT LLOYD'S; AON  :
RISK SERVICES OF TEXAS, INC.; and
AMERICAN HOME ASSURANCE CO.,  :

                Defendants.  :
-----------------------------------------------------------------X

### MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANT AEGIS TO STAY OR DISMISS THE SECOND AMENDED COMPLAINT

Defendant, ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LTD. ("AEGIS"), by its attorneys, Nourse & Bowles, LLP, submits this Memorandum in support of its motion for entry of an order to stay or in the alternative to dismiss the Second Amended Complaint against it in order to effect the mandatory dispute resolution provision, including an arbitration clause, incorporated into the governing Certificate of Insurance and Acceptance.

### STATEMENT OF FACTS

The facts relevant to this motion are set forth in the Declaration of Frank Tierney, executed on June 13, 2005, the Second Amended Complaint and the Answer thereto.

HORIZON OFFSHORE, INC. ("Horizon") entered into a contract with Plaintiff, IROQUOIS GAS TRANSMISSION SYSTEM L.P. ("Iroquois"), to construct a pipeline under the Long Island Sound. On information and belief, the contract between Iroquois and Horizon provided that Horizon was to obtain insurance for itself. Iroquois alleges that Horizon also agreed to name Iroquois as an additional assured on Horizon's policies. AEGIS issued a Certificate of Insurance and Acceptance dated May 23, 2002 ("Policy") naming Horizon Offshore, Inc. and others as assureds. The Policy provided Horizon with the right to name additional assureds and Iroquois alleges and AEGIS denies that Iroquois is under all circumstances an additional assured under and entitled to coverage under the Policy. This Motion does not address, but specifically preserves, this "additional assured" status issue for determination at a later date in the proper forum.

The Policy, which covered the period February 20, 2002 through May 1, 2003 provided that:

> To the extent specified herein, the Rules of the Steamship Mutual Underwriting Association (Bermuda) Limited ("the Association") apply to the contract of insurance evidenced by this certificate, and references to specific Rule numbers and paragraphs are references to the Rules of the Association in force at the date hereof.

The Policy also provided that "all references in the Rules to "the Club" shall be read as references to "AEGIS" and/or where the context permits, its agent; all references to "the Directors" shall be read as references to AEGIS; all references to "the Member" shall be read as references to the "Assured".

Clause 3 (Service of Suit Clause) of the Policy provided that:

> Notwithstanding the fact that this Certificate of Insurance was issued from Bermuda, AEGIS hereby undertakes to accept the service of any proceedings instituted by the assured in the U.S. courts through its duly authorized agents [in New York] ... <u>the</u>

>foregoing is without prejudice to the rights of AEGIS to contest jurisdiction and **is specifically subject to Rule 36**.
>
>When used in this Clause, the word "Assured" shall include any … other person or persons who, under the express terms of the insurance, may be legally entitled to maintain an action thereon in his own name and for his own account …

(emphasis added)

Rule 36 of the Rules incorporated as above into the Policy is captioned Dispute Resolution and as modified by the above-quoted portion of the Policy provided that:

> i a  If any difference or dispute shall arise between the [Assured] and [AEGIS] concerning the construction of these Rules or of the Rules applicable to any Class in [AEGIS] or of any Bye-Law passed thereunder, or the insurance afforded by [AEGIS] under these Rules, or any amount due from [AEGIS] to the [Assured], such difference or dispute shall in the first instance be referred to and adjudicated by [AEGIS].
>
> b  If the [Assured] does not accept the decision of [AEGIS] the difference or dispute shall be referred to the arbitration of two arbitrators, one to be appointed by each of the parties, in London, and the submission to arbitration and all the proceedings therein shall be subject to the provisions of the English Arbitration Act, …
>
> c  No [Assured] shall be entitled to maintain any action, suit or other legal proceedings against [AEGIS] upon any such difference or dispute unless and until the same has been submitted to the [AEGIS] and they shall have given their decision thereon, or shall have made default for three months in so doing; and, if such decision be not accepted by the [Assured] or such default be made, unless and until the difference or dispute shall have been referred to arbitration in the manner provided in this Rule, …
>
> d  These Rules and any Contract of Insurance between [AEGIS] and [the Assured] shall be governed by and construed in accordance with English Law.

(emphasis added)

-3-

Iroquois does not argue that the Rules were not incorporated into the Policy. Similarly, Iroquois does not argue that Rule 36, Disputes Resolution, is not a binding term and arbitration provision of the Contract. These facts appear accepted by Iroquois.

## POINT I

### THE DISPUTE RESOLUTION/ARBITRATION CLAUSE INCORPORATED INTO THE POLICY IS ENFORCEABLE AS A TERM OF THE CONTRACT

Forum selection clauses in a contract have long been found presumptively valid and enforceable in the absence of any contravention of strong public policy. See, M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972). Indeed, "concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes" demand enforcement of forum selection clauses in foreign contracts. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 629 (1985).

Moreover, it has long been an accepted principle of U.S. law that parties to a contract may incorporate written arbitration and disputes resolution agreements into their contract by reference. Progressive Casualty Insurance Co. v. C.A. Reaseguradora Nacional de Venezuela, 991 F.2d 42, 46 (2d Cir. 1993). In the present case, Clause 3 of the Policy incorporates Rule 36 of the Rules which provides a disputes resolution process. First, "If any difference or dispute shall arise between [the Assured] and [AEGIS] such difference or dispute shall in the first instance be referred to and adjudicated by [AEGIS]". Second, "If [the Assured] does not accept the decision of [AEGIS] the difference or dispute shall be referred to the arbitration … in London."

1. **The Federal Arbitration Act Requires That The
   <u>Second Amended Complaint Be Stayed Or Dismissed</u>**

The United States Arbitration Act, 9 U.S. Code § 1 *et seq.*, frequently referred to as the Federal Arbitration Act or "FAA", provides in pertinent part that "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract". 9 U.S. Code § 2.

As the U.S. Supreme Court has stated, referring to Section 2 of the FAA, in language which is frequently quoted by other U.S. courts:

> Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.

<u>Moses H. Cone Memorial Hospital v. Mercury Construction Corp.</u>, 460 U.S. 1, 24 (1983).

Under the FAA, a court must stay its proceedings pending arbitration where a binding agreement exists that encompasses an issue referable to arbitration under that agreement. 9 U.S.C. § 3 provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

The FAA is mandatory. Once a binding agreement to arbitrate has been demonstrated, the court must stay the litigation and refer the parties to arbitration in accordance with the contract. See, e.g., Morrie & Shirless Mages Foundation v. Thrifty Corp., 916 F.2d 402, 405-6 (7th Cir. 1990) ("Under the terms of the FAA, district courts have no discretion to refuse a request for a stay and shall direct the parties to proceed to arbitration on issues covered by an arbitration agreement."). See also, Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 400 (1967) ("Section 3 requires a federal court in which suit has been brought upon any issue referable to arbitration under an agreement in writing for such arbitration to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement."). "An order to arbitrate … should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." AT&T Technology, Inc. v. Communications Workers, 475 U.S. 643, 651 (1986) (citations omitted). "Consistent with this policy, all doubts to the scope of issues eligible for arbitration must be resolved in favor of arbitration." Ferrostaal, Inc. v. M/V SERSOU, 1999 AMC 2352, 2353 (S.D.N.Y. 1999) (Baer, D.J.).

Despite the statutory reference to a "stay" pending arbitration, many courts have "dismissed" the complaint and action in light of an arbitration provision. West Shore Pipe Line Company v. Associated Electric & Gas Insurance Services Ltd., 791 F. Supp. 200, 204 (N.D. Ill. 1992) (a declaratory judgment action was dismissed under F. R. Civ. P. 12(b)(1) – for lack of subject matter jurisdiction – in order to effect arbitration provision), Sharif v. Wellness Int'l Network, Ltd., 2004 U.S. Dist. Lexis 24521 *7 (action dismissed for improper venue in light of arbitration provision).

"However, where the arbitration clause is sufficiently broad to bar all of plaintiff's claims, dismissal, rather than a stay, of plaintiff's claims is within the court's discretion." Sparling v. Hoffman, 684 F.2d 635, 638 (9th Cir. 1988).

Clause 3 of the AEGIS Policy, which incorporates Rule 36 of the Rules, provides that if any dispute shall arise between the Assured and AEGIS, such dispute shall in the first instance be referred to and adjudicated by AEGIS. Rule 36 further provides that if the Assured does not accept the decision of AEGIS, the dispute shall be referred to arbitration in London in accordance with the provisions of the English Arbitration Act. Rule 36 also provides that no Assured shall be entitled to maintain any "action, suit or other legal proceedings" against AEGIS unless the dispute has first been submitted to AEGIS and it shall have given its decision, and until the dispute shall have been referred to arbitration in London. Accordingly, a binding dispute resolution procedure which includes arbitration, has been incorporated in the contract, and under Section 2 of the FAA, the Court must stay (or dismiss) the Second Amended Complaint and refer the parties to adjudication and/or arbitration in accordance with the contract.

In Montauk Oil Transportation Corp. v. Steamship Mutual Underwriting Association (Bermuda) Ltd., 79 F.3d 295, 298 (2d Cir. 1996), the identical "Rules" which are now before this Court were incorporated into a policy of insurance between Montauk Oil Transportation Corp. and Steamship Mutual Underwriting. Rule 36, in that case, just as in this case, required a two-step disputes resolution procedure. First, disputes would be put to the underwriter (in that case, Steamship Mutual). Second, if there remained a dispute, it would be arbitrated in London. There was also a prohibition on suit outside the Rule 36 procedure. Despite that provision, Montauk Oil brought a declaratory judgment (just as AEGIS has now done) in the Southern District. Steamship Mutual moved to stay the Montauk Oil suit pending arbitration which

motion was granted by the District Court. The dispute was then referred to the directors of Steamship Mutual and then to London arbitration. The London arbitrators ruled in favor of Steamship Mutual and awarded costs in favor of Steamship Mutual. Steamship Mutual then moved for confirmation of the London award of costs in its favor in the District Court. The District Court confirmed the award, which decision was appealed. The Second Circuit confirmed the District Court decision stating:

> Rule 36 provides a mandatory procedure for the settlement of disputes that requires referral of disputes to the association's directors and arbitration in any case in which a member of the association does not accept the decision of the directors. Under the Federal Arbitration Act '[a] written provision in any maritime transaction to settle by arbitration a controversy thereafter arising out of such ... transaction ... shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract'. **Thus, Steamship Mutual has an affirmative right to arbitrate this dispute.**"

(citations omitted)
(emphasis added).

The facts are identical between Montauk Oil and the case at Bar if one replaces the words "Steamship Mutual" or "association's directors" with "AEGIS" and "Montauk Oil" or "member" with "Iroquois".

In West Shore Pipe Line Company, 791 F. Supp. at 200, the same defendant now before this Court, AEGIS, sought to enforce the arbitration provision incorporated into the insurance contract before that court. The court enforced the arbitration agreement.

This Court should enforce the dispute resolution provision and its included arbitration provision by staying this action.

2. **The Arbitration Clause Is Also Enforceable
   Pursuant to the New York Convention**

The arbitration agreement is equally enforceable under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, which has been implemented in the United States as Chapter 2 of the FAA, 9 U.S.C. § 201 *et seq.* (the "New York Convention"). Section 206 of the FAA provides that:

> A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States.

A court's "scope of inquiry in considering enforcement of an arbitration agreement under Chapter Two of the FAA is 'very limited.'" Smith/Enron Cogeneration Limited Partnership, Inc. v. Enron Int'l C.V., 198 F.3d 88, 92 (2d Cir. 1999), cert. denied, 531 U.S. 815 (2000). See also Dimercurio v. Sphere Drake, 202 F.3d 71, 74 at n. 2 (2d Cir. 2000) ("A Court in the United States faced with a request to refer a dispute governed by Chapter Two to arbitration performs a 'very limited inquiry' into whether an arbitration agreement exists and falls within the Convention's coverage."). Section 202 of the FAA defines the type of arbitration agreements that fall within the purview of the New York Convention:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.

As the Smith/Enron court noted:

> The Convention and the implementing provisions of the FAA set forth four basic requirements for enforcement of arbitration agreements under the Convention: (1) there must be a written agreement, (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope. Id.

In the present case, all four of these criteria are met. First, there is no dispute that the Rule 36 arbitration clause of the Rules is incorporated into a written agreement, i.e., the Policy. The second requirement is met as the contract calls for arbitration in London and England is a signatory to the Convention. 9 U.S.C. § 202. The third and fourth requirements are met as the subject matter of the contract - the Certificate of Insurance and Acceptance issued by AEGIS, a Bermudan company - is both commercial and international in nature.

## POINT II

### THE DISPUTE RESOLUTION AND ARBITRATION CLAUSE IS NOT SUPERCEDED BY THE SERVICE OF SUIT CLAUSE

The insurance contract before the Second Circuit in Montauk Oil, 79 F.3d at 297, included a "New York Suable Clause" which stated in pertinent part:

> The Association hereby undertakes to appear in any civil action which the Member may bring against the Association in the United States District Court for the Southern District of New York to recover for any loss or claim payable or alleged to be payable by the Association under the contract of insurance described in this Certificate....Except as to jurisdiction over the person of the Association, the foregoing provision[] shall not effect [sic] any defence to which the Association would otherwise be entitled and shall not change the contractual or other substantive rights and obligations of the Association or of the Member, which shall all be determined in accordance with English Law.

Montauk argued that the New York Suable Clause conflicted with and superceded the contract's compulsory arbitration clause. The Second Circuit rejected this argument, affirming the District Court's holding that:

> This exact issue regarding the interpretation of the exact same two clauses has been recently decided by this Court in the course of another dispute between the same two parties. <u>It was recently held that "the [New York suable] clause does not eliminate the obligation to proceed with arbitration." As a result, there is no question but that these two clauses indicate that the parties agree to arbitrate disputes as provided by Rule 36</u>.

79 F.3d at 297<br>(citations omitted) (emphasis added)

The Second Circuit then went on to affirm the District Court's opinion holding that:

> <u>The New York Suable Clause does not vitiate this contractual right</u>, given its clear statement that it "shall not change the contractual or other substantive rights and obligations of the Association or of the Member."

Id. at 298<br>(citations omitted) (emphasis added).

This conclusion is more compelling in the facts at Bar as the "Service of Suit Clause" before this Court has the additional language that it is

> without prejudice to the rights of AEGIS to contest jurisdiction and is **specifically subject to Rule 36**.

As the Second Circuit stated in <u>Montauk Oil</u>:

> The principal effect of the [Service of Suit] Clause is to resolve the issue of personal jurisdiction over a foreign association ... to enable parties to enforce an arbitral award.

Montauk, 79 F.3d at 298<br>[explanation added].

In <u>West Shore Pipe Line Company</u>, 791 F. Supp. at 202, there was a service of suit clause which appointed the same New York law firm as AEGIS's agent for service as in the matter at Bar. That court rejected the argument that the service of suit clause constituted a waiver of the arbitration agreement. That court then dismissed the suit for lack of subject matter jurisdiction. Id. at 202.

-11-

This Court should, similarly, find that the Service of Suit Clause does not oust the mandatory Disputes Resolution and Arbitration Provision in the Policy.

### POINT III

### ASSUMING (WITHOUT ADMITTING) THAT IROQUOIS IS AN ADDITIONAL ASSURED UNDER THE POLICY, THEN IT IS BOUND BY THE BROAD ARBITRATION CLAUSE OF THAT CONTRACT

Despite the necessity that parties agree to arbitrate in order to be bound to the terms of an arbitration agreement, "[i]t does not follow, however, that under the [Federal Arbitration] Act an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision." Fisser v. Int'l Bank, 282 F.2d 231, 233 (2d Cir. 1960); Thomson-CSF v. American Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995). In Thomson-CSF v. American Arbitration Ass'n, the court stated that "a nonsignatory party may be bound to an arbitration agreement if so dictated by the 'ordinary principles of contract and agency.'" Id.

Courts consistently differentiate between an arbitration clause that specifically identifies the parties to which it applies and broader forms of arbitration clauses that do not restrict the parties who are bound to arbitrate. Language providing that "all disputes arising out of this contract are to be submitted to arbitration" is broad enough to be applied to nonsignatories. Son Shipping Co., Inc. v. De Fosse & Tanghe, 199 F.2d 687, 688 (2d Cir. 1952). In that case, the charter provided that "Any and all differences and disputes of whatsoever nature arising out of this charter shall be put to arbitration in the city of New York". The contracts (bills of lading) provided that "This shipment is carried under and pursuant to the terms of the charter dated Antwerp, June 29th, 1948 between Son Shipping Company and De Fosse & Tanghe, charterer, and all the terms whatsoever of the said charter except the rate and payment of freight specified

-12-

therein apply to and govern the rights of the parties concerned in this shipment." In reversing the order of the district court enjoining arbitration, the Second Circuit Court of Appeals held:

> These order bills of lading specifically referred to the charter party and, in language so plain that its meaning is unmistakable, incorporated in the bills all the terms "whatsoever" of the charter party "except the rate and payment of freight specified therein". The very breadth of the language of inclusion is emphasized by the specific exception and leaves no fair doubt as to the meaning of the parties. [citation omitted]...<u>Where terms of the charter party are, as here, expressly incorporated into the bills of lading they are a part of the contract of carriage and are binding upon those making claim for damages for the breach of that contract just as they would be if the dispute were between the charterer and the shipowner.</u>
>
> (citations omitted).
> 199 F.2d at 688.

Many cases have followed and applied the holding in <u>Son Shipping Co.</u>, 199 F.2d at 687 that the parties' agreement to arbitrate "Any and all differences and disputes of whatsoever nature arising out of this charter…" may bind nonsignatories to the arbitration agreement. See, for example, <u>Continental U.K. Ltd. v. Anagel Confidence Compania</u>, 658 F. Supp. 809, 814 (S.D.N.Y. 1987) (in order for an arbitration clause to be binding on a party who is not a signatory, the clause must not only be incorporated by reference into the contract, but also contain "language … broad enough to allow nonsignatories' disputes to be brought within its terms.") <u>Cargill Ferrous International v. M/V HUTA ZYGMUNT</u>, 1996 U.S. Dist. LEXIS 6290 *8 (E.D. La. 1996)(staying the suit by Cargill, which had become a party to the bill of lading by negotiation, against the vessel's time charterer pending arbitration in London under the arbitration clause incorporated in the bill of lading, holding that the language "<u>any dispute arising out of this contract</u>" was sufficiently "<u>broad</u>" to bind Cargill and encompassed its claim against the time chartered owner of the vessel.)

The Policy defines the "Member" as the "Assured". The root of Iroquois' Second Amended Complaint in this action is that it is entitled to the benefits and coverage of the Policy as an assured, albeit as an additional assured. Indeed, if it is not an (additional) assured its Second Amended Complaint must be dismissed on that basis alone. Iroquois has thus admitted that it is bound by the Policy and its dispute resolution provision.

## CONCLUSION

This Court should stay or dismiss the Second Amended Complaint against AEGIS and enforce the contract's dispute resolution provision.

Dated:  New York, New York
        June 15, 2005

NOURSE & BOWLES, LLP
Attorneys for Defendant
ASSOCIATED ELECTRIC & GAS
INSURANCE SERVICES LTD.

By: _____
John P. Vayda, Esq. (JV 0309)
One Exchange Plaza
At 55 Broadway
New York, NY 10006-3030
(212) 952-6200

Of Counsel:
    Rahul Wanchoo, Esq.

TO:  HEALY & BAILLIE, LLP
     Attorneys for Plaintiff
     61 Broadway
     New York, NY 10006
     (212) 943-3980
     Attention: Richard V. Singleton, Esq.
                John Koster, Esq.

     DONOVAN PARRY McDERMOTT & RADZIK
     Attorneys for Defendants, Lloyd's Underwriters
     Wall Street Plaza, 88 Pine Street
     New York, NY 10005-1801
     (212) 376-6400
     Attention: Edward C. Radzik, Esq.