HEALY & BAILLIE, LLP
Attorneys for Plaintiff
61 Broadway
New York, NY 10006
(212) 943-3980
Richard V. Singleton (RS-9489)
John C. Koster (JK-4086)
David D. Jensen (DJ-2261)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IROQUOIS GAS TRANSMISSION SYSTEM L.P., <br><br> Plaintiff, <br><br> -against- <br><br> ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LTD., Hamilton, Bermuda; CERTAIN UNDERWRITERS AT LLOYD'S; AON RISK SERVICES OF TEXAS, INC.; and AMERICAN HOME ASSURANCE CO., <br><br> Defendants. | (ECF Case) <br><br> 05 Civ. 2149 (JSR) <br><br><br> **PLAINTIFF'S STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1** |

## STATEMENT OF FACTS AS TO WHICH THERE IS NO ISSUE TO BE TRIED

Bracketed numbers refer to attached documents. For example,
"[4]" refers to the attachment numbered as "4."

### A.    The Parties

1.    Plaintiff Iroquois Gas Transmission System L.P. ("Iroquois") is a limited partnership organized and existing under the laws of the State of Delaware, with its principal place of business in Shelton, Connecticut. Diehl Aff. [4].

2.    Defendant Certain Underwriters at Lloyd's ("Lloyd's") are insurers and underwriters under a policy of insurance identified as LE0280715, covering the period May 1, 2002 through May 1, 2003 (the "Hull Policy"). Answer, Doc. No. 11, ¶ 8.

**B.    The Pipeline Extension**

3.    Iroquois is the owner of a 412 mile natural gas pipeline that extends from the Canada-New York border to Bronx, New York. Diehl Aff. [4].

4.    On April 12, 2002 Iroquois entered into a contract (the "Construction Contract") with Horizon Offshore Contractors, Inc. ("Horizon") for the construction of a 35 mile underwater extension to its existing pipeline. The extension was to be mostly in Long Island Sound, between Northport, New York and Hunts Point, New York. Diehl Aff. [4] (authentication); Admissions of Lloyd's, ¶ 9 (authentication); Wieler dep. [3] pp. 18, 24-25, ex. 12 (authentication); Construction Contract [7].

5.    The Construction Contract required Horizon: (1) to "furnish and maintain, at its own expense" ten enumerated lines of insurance, including "Marine Protection and Indemnity Insurance" and "Marine Hull and Machinery Insurance"; (2) to name Iroquois as an additional insured; (3) to waive any right of subrogation against Iroquois; (4) to include a cross-liability provision "in the event of one insured incurring liability to any other insured"; and (5) to procure the policies subject to Iroquois' approval. Construction Contract [7] at IRO/AE 00026-00028.

6.    The Construction Contract required Iroquois to maintain only one line of insurance: builders' risk insurance covering against loss or damage to the pipeline project itself. Id. at IRO/AE 00030-00031.

7.    An earlier version of the Construction Contract, which required Horizon also to obtain builder's risk insurance, was modified after Horizon objected that Iroquois could more readily obtain builder's risk coverage. Wieler Aff. [5].

8.    To complete the pipeline extension it was necessary to cross four undersea 345,000-volt electric transmission cables ("Cables") owned by The Power Authority of the State

of New York ("NYPA"). NYPA refused to agree to such a crossing absent a written agreement with Iroquois regarding responsibility for any damage to its cables. Diehl Aff. [4].

9.      Accordingly, Iroquois and NYPA entered into a "Crossing Agreement" that allowed the Iroquois pipeline to cross the NYPA Cables. Diehl Aff. [4] (authentication); Wieler dep. [3] pp. 50-51, ex. 17 (authentication); Crossing Agreement [8].

10.     The Crossing Agreement provided that Iroquois would indemnify NYPA against damage resulting from "the negligence, acts, omissions or willful misconduct of Iroquois Gas, its contractors, subcontractors, agents or employees." Crossing Agreement [8] at Art. III(G).

11.     In addition, the Crossing Agreement provided that Iroquois indemnify NYPA from "all costs and expenses incurred as a result of damage to the [cables] arising out of [such circumstances]". Id. at Art. III(D).

## C.      The Hull Policy

12.     Aon Risk Services of Texas, Inc. ("Aon"), Horizon's insurance brokers, issued a Certificate of Insurance showing that Iroquois was covered under Horizon's insurance policies. Montano dep. [2] pp. 69-71 (authentication); Certificate of Insurance [9].

13.     The Hull Policy is governed by an 8-page "Slip Policy" that incorporates other forms and documents by reference. Montano dep. [2] pp. 15-16, ex. 29 (authentication); Hull Policy From Aon [10].

14.     In addition to the Policy Slip itself and the Confirmation of Coverage and other appendices and attachments thereto, the forms and documents relevant here are the American Institute Hull Clauses (06/02/1977), the American Institute Tug Form (08/01/1976), and the Institute Service of Suit Clause (U.S.A.) (01/11/1992).    Admissions of Lloyd's, ¶ 2 (authenticity); Hull Policy From Lloyd's [11].

15.    Horizon has its principal place of business at 2500 City West Boulevard, Suite 2200, Houston, Texas 77042. Diehl Aff. [4].

16.    The GULF HORIZON is a barge owned by Horizon which was used by Horizon on the construction project here at issue. The barge is based in Texas and her home part is Houston, Texas.

17.    Horizon purchased the Hull Policy and is the named insured thereon. Montano dep. [2] pp. 14-16. The GULF HORIZON is listed as a covered vessel under the Hull Policy.

18.    Aon is an insurance agent and broker licensed by the Texas Department of Insurance. Id. ex. 36.

19.    The Aon offices involved in issuing the Hull Policy are or were in Houston, Texas. Id. pp. 14-16.

20.    The Hull Policy was addressed and delivered to Horizon at its Houston, Texas address. Id.; Hull Policy From Lloyd's [11] at p. 1.

21.    The Hull Policy delivered to Horizon included Texas Department of Insurance notices and directed the insured to contact the Texas Department of Insurance with any complaints. Montano dep. [2] at pp. 16-19; Hull Policy From Aon [10] at IRO/AE 00300-00301.

22.    According to Aon, complaints about the Hull Policy should be directed to the Texas Department of Insurance at the address and phone number provided on the Hull Policy. Montano dep. [2] at pp. 18-19.

23.    The Hull Policy provides coverage "Worldwide" subject to trading warranties. Hull Policy From Aon [10] at IRO/AE 00303; Hull Policy From Lloyd's [11] at p. 3.

24.    There was another claim under the Hull Policy that occurred as a result of a May 18, 2004 fire on board the GULF HORIZON, while the vessel was in the Atlantic Ocean en route

to Israel, and this loss will ultimately be paid through Aon's Houston, Texas office. Montano dep. [2] p. 106-07.

**D.    The Anchor Drag Incident**

25.    On February 27, 2003 NYPA's No. 4 cable tripped while Horizon was working in Long Island Sound in the vicinity of the NYPA Cables pursuant to the Construction Contract. Diehl Aff. [4]. Subsequent investigation identified damage to this cable.

26.    NYPA alleges that the damage occurred when one of the GULF HORIZON's anchors dragged and contacted the Cables (the "Anchor Drag"). <u>Id.</u>

27.    NYPA further alleges that, as a result of the Anchor Drag, the Cables were taken out of service and the damaged cable repaired, at substantial cost to NYPA and its underwriters. <u>Id.</u>

28.    The GULF HORIZON is an insured vessel under the Hull Policy. Answer, Doc. No. 11, ¶ 27.

29.    On March 25, 2003, NYPA put Iroquois on notice that it intended to hold Iroquois responsible for the damage to the Cables.

30.    Iroquois retained the firm of Healy & Baillie, LLP immediately after the February 27, 2003 incident to investigate the facts of the anchor drag incident, defend it in connection with NYPA's anticipated and threatened claims, and pursue Horizon and/or any other responsible party for indemnity for any liability Iroquois may be found to have to NYPA.

**E.    The Limitation Proceeding**

31.    On March 25, 2003, NYPA notified Iroquois that it intended to hold Iroquois fully responsible for all damage caused by the anchor strike.

32.    On August 18, 2003, Horizon commenced a proceeding to limit its liability in the United States District Court for the Southern District of Texas (the "Limitation Proceeding").

See Limitation Complaint [17] from In re Horizon Vessels, Inc., No. H-03-3280, Doc. No. 1 (S.D. Tex.).

33.    In its complaint, Horizon pleaded that while no written claims had been asserted as of the date of its Limitation Proceeding, it "anticipate[d] that the owner of the electric cable, as well as other persons or entities, may assert or attempt to assert claims or suits against [Horizon], alleging property damages, financial losses, and other damages, and/or the right to indemnity/contribution in connection with the aforesaid alleged incident." Id. at ¶ 16.

34.    Iroquois instructed Healy & Baillie to file, and Healy & Baillie did file, a claim in the Limitation Proceeding seeking indemnity for any liability Iroquois may be found to have to NYPA as a result of the anchor drag incident.  Iroquois also filed certain other claims regarding damages resulting from a suspension of construction work, indemnity in the event Iroquois was held liable for damage to archaeological sites caused by Horizon, and damages for other contract breaches by Horizon (hereinafter "Unrelated Claims").  Diehl Aff. [4]; Claim of Iroquois [18] from In re Horizon Vessels, Inc., No. H-03-3280, Doc. No. 92 (S.D. Tex.).

35.    Iroquois filed the Unrelated Claims in the Limitation Proceeding solely as a precaution to avoid losing the ability to assert the claims in the future in a separate proceeding. Id.

36.    On February 25, 2004, The Texas Limitation Proceeding court lifted the limitation injunction as to Iroquois, permitting Iroquois to pursue the Unrelated Claims outside of the Limitation Proceeding.  Iroquois and Horizon thereafter litigated the Unrelated Claims in the Supreme Court for the County of New York in an action styled Horizon Offshore Contractors, Inc. v. Iroquois Gas Transmission System, L.P., et al. and bearing the docket number 600140/04 ("State Court Litigation").  Id.

37.    In the State Court Litigation, Iroquois retained and was represented by Cullen & Dykman Bleakley Platt LLP, not Healy & Baillie, LLP. Id.

38.    The precautionary filing of the Unrelated Claims in the Limitation Proceeding was the only substantive involvement Healy & Baillie, LLP had in the litigation of the Unrelated Claims and the State Court Litigation. Id.

39.    On July 21, 2004 NYPA, Factory Mutual Insurance Company ("FMIC") the subrogated property insurer of the cable, and the Long Island Power Authority ("LIPA"), a user of the cable (hereinafter collectively referred to as the "NYPA interests"), asserted Cross-Claims against Iroquois, seeking to hold Iroquois liable for damages they sustained as a result of the alleged February 27, 2003 cable incident.

40.    NYPA and FMIC's Cross-Claims relied on the terms of the Crossing Agreement and allege that the damage to the NYPA Cables "arose out of or was connected with the negligence, acts, omissions, or willful misconduct of Iroquois, its contractors, subcontractors, agents, or employees in connection with the Iroquois Pipeline Project." Id. at ¶¶ 36-38. NYPA and FMIC also allege claims in tort against Iroquois. LIPA has no contract with Iroquois. LIPA's Cross-Claims therefore are solely in tort alleging that Iroquois was negligent in connection with the pipeline's construction.

41.    Healy & Baillie prepared and filed Answers to these Cross-Claims on behalf of Iroquois on September 1, 2004 and has since conducted a defense against NYPA's claims. Diehl Aff. [4]; Singleton Aff. [20]; See Cross-Claim [19] from In re Horizon Vessels, Inc., No. H-03-3280, Doc. No. 92 (S.D. Tex.).

42.    Healy & Baillie's representation of Iroquois in its defense of the cable strike incident and the NYPA interests' Cross-Claims has included extensive document discovery, depositions, research, pleading and motion practice, the retention of expert witnesses, and

continued prosecution of Iroquois' claim for indemnity from Horizon (the only Iroquois claim at issue in the Limitation Proceeding). Id.

43.    As of June 30, 2005, Iroquois has incurred $975,064.46 in attorney's fees in its defense of the NYPA Cross-Claim. Id.

**F.    Notice to Lloyd's**

44.    Shortly after the Anchor Drag, Aon notified Horizon's protection and indemnity, liability, and excess carriers, but did not notify Lloyd's. Montano dep. [2] pp. 13-14, 31-32 (authenticating); Aon's Notices [12] at ARS-TX 0036, 0040-0042.

45.    On July 17, 2003 Aon advised Horizon and Iroquois that it (Aon) had notified "all appropriate insurers." Montano dep. [2] pp. 111-15, ex. 38 (authentication); Aon Coverage Letter [13].

46.    On or about July 17, 2003, Aon created a chart showing applicable insurance coverage for liability claims arising from the Anchor Drag incident. This chart omitted any reference to the Hull Policy. Aon Coverage Letter [13].

47.    Iroquois sent its own notices to several of Horizon's insurers, but excluding Lloyd's. Wieler dep [3]. pp. 12-17, ex. 11 (authentication); Iroquois Notices [14] at IRO/AE 00584-00603.

48.    Iroquois employee Michelle Wieler reviewed the Certificate of Insurance provided by Aon in favor of Iroquois and did not send a notice to Lloyd's because the Certificate did not reflect that the Hull Policy covered liability claims. Wieler dep. [3] pp. 26-27.

49.    The coverage provided by the Hull Policy and the coverage provided by Horizon's protection and indemnity insurance was essentially duplicative insofar as coverage for liability resulting from the striking of fixed objects is concerned, and this could be a source of confusion for an insured. See Hodgett dep. [1] p. 69; Montano dep. [2] pp. 80-82.

50.    Colin Williams at Aegis recognized that the Hull Policy potentially applied to liability claims arising from the Anchor Drag as early as May, 2003. Admissions of Lloyd's, ¶ 22 (authenticity); Colin Williams Emails [15] at A 0012.

51.    On May 14, 2004 Colin Williams of Aegis requested an explanation from Aon of why the Anchor Drag claims were not covered by the Hull Policy and indicated that he had made the same request on April 16. Montano dep. [2] pp. 53-55, ex. 35 (authenticity); Colin Williams Emails [15] at A 0083-0084.

52.    On May 17, 2004 Aon transmitted a loss notice to Lloyd's via JLT Risk Solutions, Inc. ("JLT") in London. Montano dep. [2] pp. 31-32, 113, ex. 31 (authenticity); May 2004 Notice [16] at ARS-TX 0043.

53.    On May 17, 2004 Aon also transmitted the Lloyd's notice of loss to Continental Insurance Co., American Employers Insurance Co., Fireman's Fund Insurance Co., Markel Insurance Co., and Royal Insurance Co. Montano dep. [2] pp. 91-92.

54.    Continental Insurance Co. and Royal Insurance Co. confirmed receipt of the notice soon after May 17, 2004. Montano dep. [2] pp. 127-28, ex. 31 (authenticity); May 2004 Notice [16] at ARS-TX 0044-0045.

55.    Lloyd's representative John Hodgett testified that he did not receive any notice of the Anchor Drag or of Iroquois' claim until December 1, 2004. Hodgett dep. [1] pp. 24-26, 47-49.

56.    JLT confirmed receipt of Aon's May 17, 2004 notice on June 1, 2004. Montano dep. [2] pp. 129, ex. 31 (authenticity); May 2004 Notice [16] at ARS-TX 0046.

57.    Aon submitted two additional items to JLT for onward transmission to Lloyds on June 7 and 24, 2004. Montano dep. [2] pp. 129-31, ex. 31 (authenticity); May 2004 Notice [16] at ARS-TX 0047-0048.

58.     On September 20, 2004 JLT advised Aon that it had "received a request from leading Underwriters for an update on this loss."    Montano dep. [2] pp. 102-05, ex. 40 (authenticity); May 2004 Notice [16] at ARS-TX 0052.

**G.     Lloyd's Refuses to Respond**

59.     After Lloyd's became aware of Iroquois' claim for coverage under the Hull Policy, it referred the matter to outside counsel for an opinion.  Hodgett dep. [1] pp. 35-36, 82-84, ex. 7.

60.     After Lloyd's received its coverage opinion back, it refused to disclose the contents or conclusion thereof.  Hodgett dep. [1] pp. 57-58, 73-76, ex. 6 (excerpt); <u>see also</u> Koster Aff. [6] (authenticity); Colin Williams Emails [15] at A 0370-0371, A 0385-0388.

61.     Lloyd's has stated that it has not denied coverage to Iroquois and that it has no plans of denying coverage, but has otherwise refused to respond to Iroquois' claim.  Hodgett dep. [1] pp. 56-57; <u>see also</u> Colin Williams Emails [15] at A 0370-0371.

62.     Lloyd's refused to attend discussions initiated by Aegis concerning coverage under the Hull Policy.  Colin Williams Emails [15] at A 0385-0388.

**H.     Recovery by Iroquois**

63.     The Hull Policy contains the quoted language under the American Institute Tug Form, as modified by the Policy Slip. Hull Policy From Aon [10] at IRO/AE 00312; Hull Policy From Lloyd's [11] at 3, 30.

64.     The Hull Policy contains the quoted "additional assured" clause. Hull Policy From Aon [10] at IRO/AE 00316; Hull Policy From Lloyd's [11] at 9.

65.     The Hull Policy contains the quoted "cross liability" clause and the quoted incorporation "as required by contract" language. Hull Policy From Aon [10] at 00316; Hull Policy From Lloyd's [11] at 9, 213.

66.    The Construction Contract contains the quoted language at ¶ 2.4.  Construction Contract [7] at IRO/AE 00028.

67.    Lloyd's representative testified that if Lloyd's had been earlier notified of the Anchor Drag and the Limitation Proceeding, it might have become involved in the litigation by retaining experts, attorneys and/or surveyors.  Hodgett dep. [1] pp. 58-59.

68.    Lloyd's representative testified that Iroquois had not prevented Lloyd's from participating in the Limitation Proceeding.  Id. pp. 60-61.

69.    Lloyd's representative testified that Lloyd's had no specific objection to any action taken by Iroquois in the Limitation Proceeding.  Id. pp. 59-60.

70.    The Hull Policy contains the quoted deductible provision.  Hull Policy From Aon [10] at IRO/AE 00312; Hull Policy From Lloyd's [11] at 3.

71.    The Hull Policy contains a notice provision that grants Lloyd's the right to survey the vessel and direct where the vessel is repaired.  Hull Policy From Lloyd's [11] at 26.

## STATEMENT OF FACTS AS TO WHICH
## THERE *IS* AN ISSUE TO BE TRIED

1.    Whether JLT relayed the May 17, 2004 loss notice sent by Aon to Lloyd's representative John Hodgett after May 17, 2004 but before December 1, 2004.  Montano dep. [2] pp. 102-06, 92-93.

2.    Whether, when JLT relayed the loss notice as stated above, Hodgett refused to accept it unless JLT also provided a copy of the policy language.  Id. pp. 93-94.

3.    Whether Lloyd's maintains copies of the relevant policy language in its Signing Office.  Id. p. 34.

4.    Thus, it is disputed whether Lloyd's received notice at some point between May 17, 2004 and December 1, 2004.

Dated: New York, New York
      August 17, 2005

HEALY & BAILLIE, LLP

By:           

Richard V. Singleton (RS-9489)
John C. Koster (JK-4086)
David D. Jensen (DJ-2261)
Attorneys for Plaintiffs
61 Broadway, 32nd Floor
New York, New York 10006-2701
(212) 943-3980

TO:    DONOVAN, PARRY, McDERMOTT & RADZIK
        Attorney for Defendant Certain Underwriters at Lloyd's
        Wall Street Plaza, 88 Pine Street
        New York, New York 10005-1801
        Attention:  Edward C. Radzik, Esq.

## Exhibits

1.  John Hodgett deposition (excerpts)

2.  James Montano deposition (excerpts)

3.  Michelle Wieler deposition (excerpts)

4.  Affidavit of Paul W. Diehl

5.  Affidavit of Michelle L. Wieler

6.  Affidavit of John C. Koster

7.  Construction Contract (IRO/AE 00001-00031)

8.  Crossing Agreement (IRO/AE 00755-00785)

9.  Certificate of Insurance (ARS-TX 0001-0007)

10. Hull Policy From Aon (IRO/AE 00300-00326)

11. Hull Policy From Lloyd's (pp. 1-20, 23-30, 213, 223)

12. Aon's Notices (ARS-TX 0036, 0040-0042)

13. Aon Coverage Letter (Montano dep. ex. 38)

14. Iroquois' Notices (IRO/AE 00584-00603)

15. Colin Williams Emails (A 0012, 0083-0084, 0370-0371, 0385-0388)

16. May 2004 Notice (ARS-TX 0043-0048, 0052)

17. Limitation Complaint (IRO/AE 00401-00417)

18. Claim of Iroquois (IRO/AE 00786-00801)

19. NYPA Cross-Claim (IRO/AE 00387-00400)

20. Affidavit of Richard V. Singleton