# Attachment 3 (a)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IROQUOIS GAS TRANSMISSION SYSTEM L.P.,

Plaintiff,

-against-

ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LTD., Hamilton, Bermuda; CERTAIN UNDERWRITERS AT LLOYD'S; AON RISK SERVICES OF TEXAS, INC.; and AMERICAN HOME ASSURANCE CO.,

Defendants.

05 CV 2149 (JSR)

---

August 3, 2005
10:16 a.m.

DEPOSITION of MICHELLE L. WIELER, taken by Defendants, pursuant to Notice, held at the offices of HEALY & BAILLIE, LLP, 61 Broadway, New York, New York before Wayne Hock, a Notary Public of the State of New York.

2

93591.TXT

☐

11

1            M. L. Wieler
2            MR. RADZIK: If we could get them
3       marked as the next exhibit.  And these
4       bear Bates stamp numbers IRO/AE 00584
5       through 00604.
6            (Whereupon, a letter with
7       attachments dated March 17, 2003
8       was marked Deposition Exhibit 11
9       for identification.)
10       Q.    Ms. Wieler, I show you what's
11  been marked as Exhibit 11 in this case.
12            On the first page bearing Bates
13  stamp number IRO/AE 00584, do you
14  recognize this document?
15       A.    I do.
16       Q.    Is that your signature on the
17  bottom?
18       A.    Uh-huh.
19       Q.    Now, in addition to notifying
20  Iroquois' own insurance, who I understand
21  to be Liberty Mutual?
22       A.    That's correct.
23       Q.    AEGIS and Energy Insurance
24  Mutual?
25       A.    That's correct.

☐

12

93591.TXT

1              M. L. Wieler

2       Q.    Did you notify the insurers of

3    anyone else?

4       A.    Yes.  Actually, legal had also

5    instructed me to contact Horizon's risk

6    manager, at the time it was Bill Arnold,

7    and confirm that they had notified their

8    insurance carriers as well, which I did.

9    I did contact him and he assured me that

10   his brokers at Aon were providing

11   notification to all the insurers.

12      Q.    Now, in addition to Aon

13   providing notice to all of the Horizon's

14   insurers, did Iroquois take it upon

15   itself --

16      A.    Yes, we did -- to notify --

17      Q.    If you could wait until I finish

18   the question.

19            Did Iroquois take it upon itself

20   to notify Horizon's insurers?

21      A.    Yes.

22      Q.    And is this first page that

23   we're looking at here, Exhibit 11, Bates

24   stamp 584, Iroquois' notice to AEGIS, one

25   of Horizon's underwriters?

□

13

1              M. L. Wieler

2       A.    Yes.

3       Q.    And you understand this to be

                    Page 11

93591.TXT

4    Horizon's protection and indemnity

5    underwriter?

6        A.    Yes.

7        Q.    And the second page of the

8    exhibit, 585, is that the return receipt

9    information on the certified mail that you

10   sent to AEGIS?

11       A.    Yes.

12       Q.    If you could refer to the next

13   page of the exhibit which is Bates

14   stamped 579, do you recognize that

15   document?

16       A.    Yes, I do.

17       Q.    And is that a notification dated

18   March 18, 2003 to American Home Assurance

19   Company, also one of Horizon's excess

20   liability underwriters?

21       A.    Yes.

22       Q.    And the next page which is also

23   a letter addressed to American Home

24   Assurance Company dated March 17, 2003, is

25   that a letter that you sent to American

▯

14

1                M. L. Wieler

2    Home?

3        A.    Yes.

4        Q.    And the next page with Bates

5    stamped 588, do you also recognize that to

6    be a letter from you dated March 18, 2003

Page 12

93591.TXT

7    addressed to American Home care of

8    American International Marine Agency,

9    Inc., the excess liability underwriters

10   for Horizon?

11        A.    I do.

12        Q.    And the following page bearing

13   Bates stamp 589, do you recognize that to

14   be the return receipt information for

15   certified mail going to American Home?

16        A.    I do.

17        Q.    The next page bearing Bates

18   stamp 590, is that a letter dated

19   March 18, 2003 also addressed to American

20   Home care of American International Marine

21   Agency of Houston, Texas with respect to

22   Horizon's general liability policy?

23        A.    Yes.

24        Q.    And the next page is the return

25   receipt information for that mailing?

15

1              M. L. Wieler

2        A.    Yes.

3        Q.    The next page bearing Bates

4    stamp 582 is a letter from you dated

5    March 18 addressed to Navigators Insurance

6    Company via Navigators Insurance Services

7    of Texas, Inc., Houston, Texas with

8    respect to Horizon's excess liability

9    policy.

              Page 13

93591.TXT

10          Do you recognize that to be the

11   case?

12       A.   I do.

13       Q.   The next letter, which is a

14   piece of correspondence bearing Bates

15   stamp number 583 addressed to the

16   Steamship Mutual Underwriting Associates

17   Bermuda LTD in London, England, do you

18   recognize this to be a letter dated

19   March 17, 2003 to that company?

20       A.   I do.

21       Q.   The next document bearing Bates

22   stamp 596 is a letter dated March 17, 2003

23   addressed to Liberty Insurance

24   Underwriters with respect to Horizon's

25   excess liability policy.

□

16

1              M. L. Wieler

2          Do you recognize that to be the

3   case?

4       A.   I do.

5       Q.   And the next page bearing Bates

6   stamp 597, is that the return receipt

7   information with respect to the mailing to

8   Liberty Insurance Company -- Liberty

9   Insurance Underwriters?

10       A.   I do.

11       Q.   The next letter in the

12   Exhibit 11 bears Bates stamp 600 addressed

93591.TXT

13    to Navigators with the address crossed out

14    is 2121 Sage, suite 145, Houston, Texas,

15    is that your writing?

16        A.    It is.

17        Q.    Is that a mailing that you sent

18    to Navigators Insurance Company on or

19    about March 17, 2003?

20        A.    It is.

21        Q.    And the next document is a

22    document bearing Bates stamp 601, is that

23    the return receipt information with

24    respect to the mailing to Navigators

25    Insurance?

                                                    17

1                    M. L. Wieler

2        A.    It is.

3        Q.    The next document bearing Bates

4    stamp 602, is that a letter dated

5    March 17, 2003 addressed to Excess

6    Specialty Insurance Company, also one of

7    Horizon's excess liability underwriters,

8    from you on that date?

9        A.    It is.

10        Q.    And the next document in the

11    package is -- bears Bates stamp

12    number 603, is that the return receipt

13    information with respect to the mailing to

14    Excess Specialty Insurance?

15        A.    Yes.

93591.TXT

16      Q.    What was your purpose in sending

17   these notifications to Horizon's

18   underwriters?

19      A.    I was requested by the legal

20   department to do so.  We had asked Horizon

21   to provide copies of their notifications

22   to us and they had not so we had decided

23   to be cautious and send our own

24   notifications as well.

25      Q.    Are you claiming as an initial

☐

18

1                    M. L. Wieler

2   insured on Horizon's various policies?

3      A.    Yes.

4      Q.    Was that pursuant to a contract,

5   a construction contract between Horizon

6   and Iroquois?

7      A.    That's correct.

8      Q.    Did Iroquois ever send

9   independently notification to Horizon's

10   hull and machinery underwriters?

11      A.    No.

12            MR. RADZIK: I'm going to show

13      you what's been produced as the

14      construction contract between Iroquois

15      and Horizon bearing Bates stamp

16      numbers IRO/AE 1 through 31.

17            Can I have this marked as

18      Exhibit 12, please.

                    Page 16

93591.TXT

19          (Whereupon, a document entitled
20     Construction Contract was marked
21     Deposition Exhibit 12 for
22     identification.)
23     Q.    Before we start with Exhibit 12,
24 is there any particular reason that
25 Iroquois did not independently pull

                                                    19

1               M. L. Wieler
2   Horizon's hull and machinery on
3   notification of the claim?
4       A.    Yeah, at the time when we made
5   these notifications, we were not aware
6   that the hull carrier had any aspect, had
7   any liability aspect to it.  We thought
8   that it was strictly a hull policy,
9   property policy that covered property and
10  equipment of Horizon.
11      Q.    Did you subsequently become
12  aware that the hull and machinery policy
13  did have a collision liability feature?
14      A.    Not until much later.  It was
15  actually around the time of November to
16  December of last year, Iroquois and
17  Horizon had some contractual disputes that
18  were being settled, and around that time
19  our general counsel had asked me to send
20  around drafts of that settlement, contract
21  settlement agreement to the various
                    Page 17

93591.TXT

22

1            M. L. Wieler
2    the carrier, but that's who I obtained it
3    from.  We had been asking Horizon if they
4    notified the hull carrier and they told us
5    they did so we asked them to provide us
6    with the documentation and we didn't get
7    it from them, but I was dealing with Willy
8    Farmer getting these drafts circulated to
9    the various parties and I was able to get
10   this from Willy Farmer.
11       Q.    And Willy Farmer is with
12   McGriff?
13       A.    Yes.
14       Q.    He's the present broker for
15   Horizon?
16       A.    Present broker for Horizon, yes.
17       Q.    Who has replaced Aon?
18       A.    That's correct.
19       Q.    Do you know when that change
20   took place?
21       A.    I believe he told me that it was
22   recent so I want to say in November, 2005,
23   you know, a couple of months prior to
24   that.
25            MR. SINGLETON: You mean 2004.

☐

23

1            M. L. Wieler

93591.TXT
2      Q.    November, 2004?

3      A.    Yes.

4      Q.    November, 2005 hasn't occurred
5    yet.

6            So around November of 2005, you
7    had a conversation with Willy Farmer of
8    McGriff's and he advised you that hull and
9    machinery underwriters had been put on
10   notice of the claim?

11     A.    Yes, and he helped us get the
12   copy of the contractual settlement
13   agreement over to the hull underwriters
14   and the other underwriters of Horizon.

15     Q.    But the contractual settlement
16   has nothing to do with the February 27
17   incident?

18     A.    Yes, other than that being
19   around the time that we found out or that
20   we had heard that the hull policy might
21   have some bearing in the case.

22           MR. SINGLETON: Ed, let me just
23       interject here, there are actually
24       three separate litigations.

25           MR. RADZIK: We'll get into that.

D

24

1                M. L. Wieler
2            MR. SINGLETON: But you keep
3        flopping back and forth.  There was
4        the limitation action in Texas that

Page 21

93591.TXT
5      deals with the anchorage, there was --
6              MR. RADZIK: We haven't gotten
7      there.
8              MR. SINGLETON: Then there was
9          the initial cable strike that occurred
10         around November of 2002.  Then there
11         was a separate suit that Horizon
12         started in New York State court to
13         resolve contractual suits and Iroquois
14         counterclaimed in that.  That is the
15         settlement that Michelle was talking
16         about that was the driving force
17         behind sending a settlement notice.
18         Q.    You indicated earlier in your
19     testimony that you were not aware that the
20     hull and machinery policy had collision
21     and liability features to it; is that
22     right?
23         A.    Yes.
24         Q.    Did you take any part in
25     drafting or putting together the contract

□

25

1                  M. L. Wieler
2      that's before you which is marked as
3      Exhibit 12?
4          A.    No, the contract was drafted by
5      the legal department.  I did take a look
6      at the insurance section to see if there
7      was anything that I thought needed to be
                      Page 22

93591.TXT
8   added, but this is the standard

9   requirements that we require from

10  contractors.

11      Q.   Did you review the insurance

12  provisions of this contract before it was

13  signed?

14      A.   Before it was signed? Yeah, I

15  sent it over to Marsh, checked with them

16  to see if they noticed anything.

17      Q.   Could you refer to the insurance

18  provisions in the contract?  I believe

19  they're starting at page 0026.  It looks

20  like they run from 0026 to 0031.

21      A.   (Reviewing).

22      Q.   I want to refer you specifically

23  to page 0027.

24          Do you see that?

25      A.   Okay.

26

1           M. L. Wieler

2       Q.   And section 2.1.8, it refers to

3   marine hull and machinery insurance.

4       A.   Okay.

5       Q.   Did you review this provision

6   prior to the contract being signed?

7       A.   Yeah, back in 2001 or whenever

8   this was being put together.  Like I said,

9   I was given this to look over to see if

10  there was any other insurance requirements

Page 23

93591.TXT
11    that we might need and forward it to Marsh

12    for them to look at as well.

13        Q.    Did you see the language

14    section 2.1.8?  It said, "if watercraft

15    are involved, including collision

16    liability?"

17        A.    Yes.

18        Q.    And that provision did not

19    trigger your or Iroquois' putting the hull

20    and machinery underwriters on notice at

21    the outset of the incident in March of

22    2003?

23        A.    When we were putting together

24    the notifications, we went by an insurance

25    certificate provided to us from Aon and

☐

27

1                  M. L. Wieler

2    the insurance certificate was organized in

3    a fashion where it listed the liability

4    policies, the CGL, the protection and

5    indemnity, the excess policies, it had a

6    section for Workers' Comp, and then it had

7    a section on the bottom for property

8    insurance and machinery and equipment, so

9    I was working off the insurance

10    certificate and I notified all of the

11    insurance companies that were listed as

12    having liability insurance.  The

13    certificate was organized as such that the

93591.TXT
14    hull and machinery policy was listed as

15    machinery and equipment property

16    insurance, it wasn't indicated that there

17    was any liability portion of it, and I did

18    not have this in front of me when I was

19    doing that.

20        Q.    Nevertheless, would you agree

21    with me that this provision in the

22    Iroquois Horizon contract varies somewhat

23    from the ordinary hull and machinery

24    policy inasmuch as it includes a feature

25    for collision liability?

28

1                M. L. Wieler

2        A.    I'm actually really not familiar

3    with hull and machinery policies. I don't

4    have any experience with them.

5        Q.    Did anything prevent Iroquois

6    from notifying the hull and machinery

7    underwriters of this loss at the time of

8    the incident?

9        A.    Only the fact that we were not

10    aware that there was an implication of a

11    hull and machinery policy. We made every

12    attempt to notify the insurers. Again, we

13    were not aware at the time.

14        Q.    You were instructed by Iroquois'

15    legal counsel?

16        A.    Legal counsel.

Page 25

93591.TXT
14      A.    I didn't put them on the Web

15   site, no, and I haven't been to most of

16   them so I guess I can't know personally.

17      Q.    To your knowledge, in

18   preparation for this pipeline or

19   Eastchester project, extension project,

20   did Iroquois have to obtain easements from

21   the Town of Huntington and from the City

22   of New York to drill horizontally,

23   directionally drill holes?

24      A.    I believe they did.

25      Q.    And to your knowledge, did

0

                                                    49

1                M. L. Wieler

2   Iroquois have to obtain permits from the

3   department of -- New York Department of

4   Environmental Conservation?

5      A.    It sounds reasonable, but I

6   don't have personal knowledge of it.

7      Q.    And to your knowledge, did

8   Iroquois have to obtain permits from the

9   Office of General Services of New York

10   State?

11      A.    I'm not sure.

12      Q.    Do you know, after this

13   incident, whether Iroquois brought the

14   United States Coast Guard's office in New

15   York on notice of this incident?

16      A.    I don't have personal knowledge.

Page 44

93591.TXT
17     Q.    Do you know whether, in

18   connection with the Eastchester extension

19   project, Iroquois had to obtain permits

20   from the New York office of the Army Corps

21   of Engineers?

22     A.    I don't have personal knowledge.

23   Again, the permitting area is not my area.

24     Q.    Who within Iroquois would

25   know --

☐

50

1                M. L. Wieler

2     A.    I think Ken Webb would have been

3   responsible for obtaining all the permits.

4     Q.    Ken Webb was the project

5   manager?

6     A.    Yes.

7     Q.    Is he now employed as a

8   consultant for Iroquois?

9     A.    I believe so.

10     Q.    Now, in connection with the

11   Eastchester project, did Iroquois enter

12   into what's called a crossing agreement

13   with the New York Power Authority?

14     A.    Yes.

15          MR. RADZIK: I show you what's

16       been produced by your counsel bearing

17       Bates stamp numbers IRO/AE 0755

18       through IRO/AE 00785.

19          (Whereupon, a document entitled

Page 45

93591.TXT
20    Crossing Agreement Long Island Sound

21    was marked Deposition Exhibit 17

22    for identification.)

23    Q.    Ms. Wieler, do you recognize

24    Exhibit 17 as the crossing agreement

25    between the Power Authority of the State

51

1                    M. L. Wieler

2    of New York and Iroquois?

3    A.    It appears to be.

4    Q.    Are you familiar with the

5    insurance provisions in Exhibit 17?

6    A.    Yes.  I would have worked with

7    Marsh to get insurance certificates for

8    the New York Power Authority, the evidence

9    that we had the insurance in place.

10              MR. RADZIK: I will show you a

11        document -- three documents, the first

12        one is a certificate of insurance on

13        Marsh letterhead.

14              (Whereupon, a document entitled

15        Certificate of Insurance

16        was marked Deposition Exhibit 18

17        for identification.)

18    Q.    I show you Exhibit 18 which

19    actually is five pages and ask you if

20    those are the certificates of insurance

21    that Iroquois provided to the New York

22    Power Authority in connection with the

Page 46

93591.TXT
23    Eastchester extension project.

24        A.    (Reviewing).

25              Yes, that's what they appear to

☐

52

1                    M. L. Wieler

2    be.

3        Q.    Did you have any involvement

4    with the provision of these certificates

5    to the New York Power Authority?

6        A.    As I said, I worked with Marsh

7    to get certificates of insurance to

8    evidence the insurance.

9        Q.    To your knowledge, is the

10   crossing agreement marked as Exhibit 17,

11   is that governed by New York law?

12       A.    I really don't -- I don't know

13   about law.

14       Q.    Do you know if it's Iroquois'

15   intention when it enters into contracts to

16   have provisions for the application of New

17   York law?

18              MR. SINGLETON: Objection.

19       A.    I don't know.

20       Q.    How about its insurance

21   policies?

22       A.    What about its insurance

23   policies?

24       Q.    Does Iroquois strive to have New

25   York -- the application of New York law

Page 47



**Iroquois**
GAS TRANSMISSION SYSTEM
IROQUOIS PIPELINE OPERATING COMPANY
OPERATOR

ONE CORPORATE DRIVE, SUITE 600
SHELTON, CT 06484-6211

TEL: (203) 925-7200
FAX: (203) 929-9501

March 17, 2003

_Via Certified Mail_

AEGIS
10 Exchange Place
Jersey City, NJ 07302

RE:    Protection and Indemnity
       Policy Number ARS-3175

Your Insured:    Horizon Offshore Contractors Inc.

Dear Ladies and Gentlemen:

On February 27, 2003 the New York Power Authority's (NYPA) Y49 cable was struck and damaged. NYPA has informed us that the costs associated with the temporary as well as permanent repairs will be extensive.

Although one would assume that your named insured has notified you concerning this loss, we as additional insured are nonetheless alerting you of NYPA's loss and Iroquois' potential claim against the policy of insurance written by your company.

Kindly acknowledge receipt of same.

Very truly yours,

Michelle L. Wieler
Risk Management

cc: Jeffrey Bruner – Iroquois Legal



IRO/AE 00584

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

AEGiS
10 Exchage Place
Jersey City, NJ
             07302

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____    ☐ Agent
                     ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?    ☐ Yes
   If YES, enter delivery address below:          ☐ No

3. Service Type
   ☒ Certified Mail     ☐ Express Mail
   ☐ Registered         ☒ Return Receipt for Merchandise
   ☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service   7002 0460 0000 9136 0958

PS Form 3811, August 2001        Domestic Return Receipt        102595-02-M-1540

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

**O F F I C I A L   U S E**

| | | |
|---|---|---|
| Postage | $ | |
| Certified Fee | | |
| Return Receipt Fee (Endorsement Required) | | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | |

Sent To    AEGiS
Street, Apt. No.; or PO Box No.    10 Exchange Place
City, State, ZIP+4    Jersey City NJ 07802

PS Form 3800, January 2001        See Reverse for Instructions

IRO/AE 00585



**Iroquois**

**GAS TRANSMISSION SYSTEM**
IROQUOIS PIPELINE OPERATING COMPANY,
OPERATOR

ONE CORPORATE DRIVE, SUITE 600
SHELTON, CT 06484-6211

TEL: (203) 925-7200
FAX: (203) 929-9501

March 18, 2003

*Via Certified Mail*

American Home Assurance Co.
70 Pine Street, 3rd Floor
New York, NY 10270

RE:    Excess Liabilities
       Policy Number ARS-3215

Your Insured:    Horizon Offshore Contractors Inc.

Dear Ladies and Gentlemen:

On February 27, 2003 the New York Power Authority's (NYPA) Y49 cable was struck and damaged. NYPA has informed us that the costs associated with the temporary as well as permanent repairs will be extensive.

Although one would assume that your named insured has notified you concerning this loss, we as additional insured are nonetheless alerting you of NYPA's loss and Iroquois' potential claim against the policy of insurance written by your company.

Kindly acknowledge receipt of same.

Very truly yours,

Michelle L. Wieler
Risk Management

cc: Jeffrey Bruner - Iroquois Legal

recycled paper



**Iroquois**
GAS TRANSMISSION SYSTEM
IROQUOIS PIPELINE OPERATING COMPANY,
OPERATOR

ONE CORPORATE DRIVE, SUITE 600
SHELTON, CT 06484-6211

TEL: (203) 925-7200
FAX: (203) 929-9501

March 17, 2003

*Via Certified Mail*

American Home Assurance Co.
70 Pine Street, 3rd Floor
New York, NY 10270

RE:   **Excess Liabilities**
      **Policy Number ARS-3215**

Your Insured:    Horizon Offshore Contractors Inc.

Dear Ladies and Gentlemen:

On February 27, 2003 the New York Power Authority's (NYPA) Y49 cable was struck and damaged.  NYPA has informed us that the costs associated with the temporary as well as permanent repairs will be extensive.

Although one would assume that your named insured has notified you concerning this loss, we as additional insured are nonetheless alerting you of NYPA's loss and Iroquois' potential claim against the policy of insurance written by your company.

Kindly acknowledge receipt of same.

Very truly yours,

*Michelle L. Wieler*

Michelle L. Wieler
Risk Management

cc:  Jeffrey Bruner - Iroquois Legal

recycled paper



**GAS TRANSMISSION SYSTEM**
IROQUOIS PIPELINE OPERATING COMPANY,
OPERATOR

ONE CORPORATE DRIVE, SUITE 600
SHELTON, CT 06484-6211

TEL: (203) 925-7200
FAX: (203) 929-9501

March 18, 2003

*Via Certified Mail*

American Home Assurance Company
c/o American International Marine Agency, Inc.
675 Bering Drive, Suite 600
Houston, TX 77057

RE:   **Excess Liabilities**
      **Policy Number C-1727**
      **(ARS-3177)**

Your Insured:   Horizon Offshore Contractors Inc.

Dear Ladies and Gentlemen:

On February 27, 2003 the New York Power Authority's (NYPA) Y49 cable was struck and damaged. NYPA has informed us that the costs associated with the temporary as well as permanent repairs will be extensive.

Although one would assume that your named insured has notified you concerning this loss, we as additional insured are nonetheless alerting you of NYPA's loss and Iroquois' potential claim against the policy of insurance written by your company.

Kindly acknowledge receipt of same.

Very truly yours,

Michelle L. Wieler
Risk Management

cc: Jeffrey Bruner - Iroquois Legal

recycled paper

IRO/AE 00588



| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____ ☐ Agent ☐ Addressee<br>B. Received by ( *Printed Name*)    C. Date of Delivery 5/1/03 |
| 1. Article Addressed to:<br><br>American Home Assurance<br>675 Bering Drive Suite 600<br>Houston Tx    77057 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below:  ☐ No<br><br>3. Service Type<br>☒ Certified Mail  ☐ Express Mail<br>☐ Registered  ☒ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D.<br>4. Restricted Delivery? *(Extra Fee)*  ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 7002 0460 0000 9136 0934 |

PS Form 3811, August 2001        Domestic Return Receipt        102595-02-M-1540

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

**O F F I C I A L   U S E**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To
American Home Assurance
Street, Apt. No.; or PO Box No.  675 Bering Drive
City, State, ZIP+4  Houston Tx  77057

PS Form 3800, January 2001        See Reverse for Instructions

7002 0460 0000 9136 0934

IRO/AE 00589



**Iroquois**

**GAS TRANSMISSION SYSTEM**

IROQUOIS PIPELINE OPERATING COMPANY,
OPERATOR

ONE CORPORATE DRIVE, SUITE 600
SHELTON, CT 06484-6211

TEL: (203) 925-7200
FAX: (203) 929-9501

March 18, 2003

*Via Certified Mail*

American Home Assurance Company
c/o American International Marine Agency, Inc.
675 Bering Drive, Suite 600
Houston, TX 77057

RE:  General Liabilities
     Policy Number C-1727
     (ARS-3177)

Your Insured:    Horizon Offshore Contractors Inc.

Dear Ladies and Gentlemen:

On February 27, 2003 the New York Power Authority's (NYPA) Y49 cable was struck and damaged. NYPA has informed us that the costs associated with the temporary as well as permanent repairs will be extensive.

Although one would assume that your named insured has notified you concerning this loss, we, as additional insured are nonetheless alerting you of NYPA's loss and Iroquois' potential claim against the policy of insurance written by your company.

Kindly acknowledge receipt of same.

Very truly yours,

Michelle L. Wieler
Risk Management

cc:  Jeffrey Bruner - Iroquois Legal

recycled paper

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

American Home Assurance Co.
675 Bering Drive
Suite 600
Houston, TX 77057

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Barrett_          ☐ Agent
                     ☐ Addressee

B. Received by ( Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
   ☑ Certified Mail      ☐ Express Mail
   ☐ Registered          ☑ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)            ☐ Yes

2. Article Number
   (Transfer from service label)      7002 2410 0001 2474 3016

PS Form 3811, August 2001     Domestic Return Receipt     102595-02-M-1540

IRO/AE 00591



**Iroquois**

GAS TRANSMISSION SYSTEM
IROQUOIS PIPELINE OPERATING COMPANY
OPERATOR

ONE CORPORATE DRIVE, SUITE 600
SHELTON, CT 06484-6211

TEL: (203) 925-7200
FAX: (203) 929-9501

March 18, 2003

_Via Certified Mail_

Navigators Insurance Company
via Navigators Insurance Services of Texas, Inc.
Sage Park 1
2121 Sage, Suite 145
Houston, TX 77056

RE:   **Excess Liabilities**
      **Policy Number ARS-3215**

<u>Your Insured:</u>    Horizon Offshore Contractors Inc.

Dear Ladies and Gentlemen:

On February 27, 2003 the New York Power Authority's (NYPA) Y49 cable was struck and damaged. NYPA has informed us that the costs associated with the temporary as well as permanent repairs will be extensive.

Although one would assume that your named insured has notified you concerning this loss, we as additional insured are nonetheless alerting you of NYPA's loss and Iroquois' potential claim against the policy of insurance written by your company.

Kindly acknowledge receipt of same.

Very truly yours,

_Michelle L. Wieler_

Michelle L. Wieler
Risk Management

cc: Jeffrey Bruner - Iroquois Legal



IRO/AE 00582



**Iroquois**

GAS TRANSMISSION SYSTEM
IROQUOIS PIPELINE OPERATING COMPANY,
OPERATOR

ONE CORPORATE DRIVE, SUITE 600
SHELTON, CT 06484-6211

TEL: (203) 925-7200
FAX: (203) 929-9501

March 17, 2003

*Via Certified Mail*

The Steamship Mutual Underwriting Associates (Bermuda) Ltd.
Steamship Insurance Management Services Ltd.
Aquatical House
39 Bell Lane
London, E17LU
United Kingdom

RE:    **Protection and Indemnify
        Policy Number ARS-3176**

<u>Your Insured:</u>    Horizon Offshore Contractors Inc.

Dear Ladies and Gentlemen:

On February 27, 2003 the New York Power Authority's (NYPA) Y49 cable was struck and damaged.  NYPA has informed us that the costs associated with the temporary as well as permanent repairs will be extensive.

Although one would assume that your named insured has notified you concerning this loss, we as additional insured are nonetheless alerting you of NYPA's loss and Iroquois' potential claim against the policy of insurance written by your company.

Kindly acknowledge receipt of same.

Very truly yours,

Michelle L. Wieler
Risk Management

cc:  Jeffrey Bruner – Iroquois Legal



IRO/AE 00583



**Iroquois**
**GAS TRANSMISSION SYSTEM**
IROQUOIS PIPELINE OPERATING COMPANY
OPERATOR

ONE CORPORATE DRIVE, SUITE 600
SHELTON, CT 06484-6211

TEL: (203) 925-7200
FAX: (203) 929-9501

March 17, 2003

*Via Certified Mail*

Liberty Insurance Underwriters
61 Broadway, 32nd Floor
New York, NY 10006

RE:   **Excess Liabilities**
      **Policy Number ARS-3215**

Your Insured:    Horizon Offshore Contractors Inc.

Dear Ladies and Gentlemen:

On February 27, 2003 the New York Power Authority's (NYPA) Y49 cable was struck and damaged. NYPA has informed us that the costs associated with the temporary as well as permanent repairs will be extensive.

Although one would assume that your named insured has notified you concerning this loss, we as additional insured are nonetheless alerting you of NYPA's loss and Iroquois' potential claim against the policy of insurance written by your company.

Kindly acknowledge receipt of same.

Very truly yours,

*Michelle L Wieler*

Michelle L. Wieler
Risk Management

cc: Jeffrey Bruner - Iroquois Legal

♻ recycled paper

IRO/AE 00596

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature

X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery
3-20

1. Article Addressed to:

Liberty Insurance underwriters
61 Broadway 32 floor
New york, NY
          10006

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered       ☒ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article
   (Tra

PS Fo                                            102595-02-M-1540

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

## O F F I C I A L   U S E

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To  Liberty insurance underwriter
Street, Apt. No.; or PO Box No.  lol Broadway  32 Floor
City, State, ZIP+4  New york  NY  10006

PS Form 3800, January 2001          See Reverse for Instructions

IRO/AE 00597



**Iroquois**

GAS TRANSMISSION SYSTEM
IROQUOIS PIPELINE OPERATING COMPANY
OPERATOR

ONE CORPORATE DRIVE, SUITE 600
SHELTON, CT 06484-6211

TEL: (203) 925-7200
FAX: (203) 929-9501

March 17, 2003

*Via Certified Mail*

Navigators Insurance Co.
~~One Penn Plaza, 55th Floor~~    2121 Sage Suite 145
New York, NY 10119    Houston, TX 77056

RE:    **Excess Liability**
       **Policy Number ARS 3215**

<u>Your Insured:</u>    Horizon Offshore Contractors, Inc.

Dear Ladies and Gentlemen:

On February 27, 2003 the New York Power Authority's (NYPA) Y49 cable was struck and damaged. NYPA has informed us that the costs associated with the temporary as well as permanent repairs will be extensive.

Although one would assume that your named insured has notified you concerning this loss, we as additional insured are nonetheless alerting you of NYPA's loss and Iroquois' potential claim against the policy of insurance written by your company.

Kindly acknowledge receipt of same.

Very truly yours,

Michelle L Wieler

Michelle L. Wieler
Risk Management

cc: Jeffrey Bruner – Iroquois Legal

recycled paper

IRO/AE 00600



| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete Items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired. ■ Print your name and address on the reverse so that we can return the card to you. ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature  X ☐ Agent ☐ Addressee  B. Received by (*Printed Name*)   C. Date of Delivery  2-20-03 |
| 1. Article Addressed to:  Navigates Insurance One Penn Plaza 55th Floor New York, NY  10119 | D. Is delivery address different from item 1?  ☐ Yes   If YES, enter delivery address below:  ☐ No |
|  | 3. Service Type  ☒ Certified Mail  ☐ Express Mail  ☐ Registered  ☒ Return Receipt for Merchandise  ☐ Insured Mail  ☐ C.O.D. |
| 2. Art (Tr | 4. Restricted Delivery? (*Extra Fee*)   ☐ Yes |
| PS F | 102595-02-M-1540 |

U.S. Postal Service
CERTIFIED MAIL RECEIPT
*(Domestic Mail Only; No Insurance Coverage Provided)*

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Sent To  Navigates Insurance
Street, Apt. No.; or PO Box No.  One Penn Plaza
City, State, ZIP+4  New York NY 10119

PS Form 3800, January 2001          See Reverse for Instructions

IRO/AE 00601

# Iroquois
## GAS TRANSMISSION SYSTEM
IROQUOIS PIPELINE OPERATING COMPANY,
OPERATOR

ONE CORPORATE DRIVE, SUITE 600
SHELTON, CT 06484-6211

TEL: (203) 925-7200
FAX: (203) 929-9501

March 17, 2003

*Via Certified Mail*

XL Specialty Insurance Co.
1540 E. American Lane, 20th Floor
Schaumberg, IL 60173

RE:  **Excess Liabilities**
     **Policy Number ARS-3215**

Your Insured:    Horizon Offshore Contractors Inc.

Dear Ladies and Gentlemen:

On February 27, 2003 the New York Power Authority's (NYPA) Y49 cable was struck and damaged.  NYPA has informed us that the costs associated with the temporary as well as permanent repairs will be extensive.

Although one would assume that your named insured has notified you concerning this loss, we as additional insured are nonetheless alerting you of NYPA's loss and Iroquois' potential claim against the policy of insurance written by your company.

Kindly acknowledge receipt of same.

Very truly yours,

*Michelle L. Wieler*

Michelle L. Wieler
Risk Management

cc:  Jeffrey Bruner - Iroquois Legal

recycled paper

IRO/AE 00602



SENDER: *COMPLETE THIS SECTION*

- Complete Items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature
X *David Peat*  ☐ Agent  ☐ Addressee

B. Received by ( *Printed Name* )  David Peat  C. Date of Delivery  2003

1. Article Addressed to:

XL Specialty Insurance Co
1540 E. American Lane
20TH Floor
Shaumberg, IL
60173

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☒ Certified Mail  ☐ Express Mail
   ☐ Registered  ☒ Return Receipt for Merchandise
   ☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*)  ☐ Yes

2. Article Number
   (*Transfer from service label*)    7002 0460 0000 9136 0985

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1540

---

U.S. Postal Service
CERTIFIED MAIL RECEIPT
(*Domestic Mail Only; No Insurance Coverage Provided*)

**O F F I C I A L   U S E**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To  XL Specialty Ins. Co.
Street, Apt. No.; or PO Box No.  1540 E. American Lan
City, State, ZIP+4  Shaumberg IL 60173

PS Form 3800, January 2001    See Reverse for Instructions

IRO/AE 00603

VIA FAX



## Aon Natural Resources
1330 Post Oak Boulevard, Suite 900
Houston, Texas 77056
Telephone: (832) 476-6000; Telefax: (832) 476-6590

| REPORT OF LOSS ON: | Protection & Indemnity | | DATE: | March 4, 2003 |
|---|---|---|---|---|

| To: | COMPANY | POLICY NO. | INTEREST |
|---|---|---|---|
| | Associated Electric & Gas Insurance Services Limited (AEGIS), Hamilton, Bermuda per Origin Limited, London, U.K. c/o JLT Risk Solutions Limited London, England, U.K. Attn: Mr. Simon Dawes | ARS-3175 | 100% |

Please accept notice of the following casualty which may result in a claim for:   Damage to Property

Name of the Assured:   Horizon Offshore, Inc. and Horizon Offshore Contractors, et al.

Policy Inception:  2/20/02   Date of Casualty:  2/27/03   Policy Expiration:  5/1/03

Insured Vessel:   GULF HORIZON   Limit of Liability $   950,000 O. A. O.

Excess of: $  50,000   Deductible: $  N/A   AAD: $  N/A   Stop Loss: $  N/A

Place where casualty occurred:   Long Island Sound, NY

Nature of Casualty:   Whilst performing pipelaying operations (pipe burial) the insured vessel's anchor cable parted and allegedly

damaged a sub-sea power cable owned by the New York Power Authority.

Estimated amount of entire loss $   (unknown)   Excess $   N/A

Instructed:

Remarks:   Details of casualty and developments will be reported in due course.

Claim #:  03-M5058   Producer:  BJ   Claims Made:   No

Client's Claim #:

by:   James I. Montano

If you have any instructions to give, please advise us promptly.

PLEASE ACKNOWLEDGE RECEIPT BY SIGNING AND RETURNING A COPY OF THIS NOTICE

Signature:

\\server\...\BUSINESS UNITS\ANR\Claims\Claims Shared\Horizon\003-M5058.doc-1
The information contained in this fax is confidential and/or privileged. This fax is intended to be received initially by only the individual named above. If the reader of this transmittal page is not the intended recipient or a representative of the intended recipient, you are hereby notified that any review, dissemination copying of this fax or the information contained herein is prohibited. If you have received this fax in error, please immediately notify the sender by telephone and return this fax to the sender at the address above.

07/17/2003 THU 15:56  [TX/RX NO 8207] ☐011