# Attachment 3 (b)

**Construction Contract No. 02-12**
April 12, 2002
**Iroquois Gas Transmission System, L.P.**
by its agent
**Iroquois Pipeline Operating Company**
and
**Horizon Offshore Contractors, Inc.**

Marine Pipeline Crossing
Eastchester Extension Project

**VOLUME I**




IRO/AE 00001




IROQ 0013031

CONFIDENTIAL

**Construction Contract No. 02-12**
April 12, 2002
**Iroquois Gas Transmission System, L.P.**
by its agent
**Iroquois Pipeline Operating Company**
and
**Horizon Offshore Contractors, Inc.**

Marine Pipeline Crossing
Eastchester Extension Project

**VOLUME I**

IRO/AE 00002

IROQ 0013032

CONFIDENTIAL

Contracts

# CONSTRUCTION CONTRACT
## TABLE OF CONTENTS


1 THE WORK ..... 1
- 1.1 The Work ..... 1
- 1.2 The Contract ..... 1
- 1.3 Start and Completion Dates ..... 3
- 1.4 Executed Contract, Insurance and Bonds ..... 3
- 1.5 Definitions ..... 3
  - 1.5.1 Change Order ..... 3
  - 1.5.2 Chief Engineer ..... 3
  - 1.5.3 Company ..... 3
  - 1.5.4 Company Representative ..... 3
  - 1.5.5 Contract ..... 3
  - 1.5.6 Contractor ..... 3
  - 1.5.7 Contract Price ..... 3
  - 1.5.8 Defective Work ..... 3
  - 1.5.9 Environment ..... 3
  - 1.5.10 Equipment ..... 3
  - 1.5.11 Field Manager ..... 3
  - 1.5.12 Final Completion ..... 3
  - 1.5.13 Force Majeure ..... 3
  - 1.5.14 Subcontractor ..... 3
  - 1.5.15 Substantial Completion ..... 3
  - 1.5.16 Warranty Period ..... 3
  - 1.5.17 Work ..... 3
  - 1.5.18 Work Authorization ..... 4
  - 1.5.19 Work Site ..... 4
- 1.6 Work Site Use ..... 4
- 1.7 Inspection ..... 4
- 1.8 Defective Work ..... 4
- 1.9 Other Contractors ..... 4
- 1.10 Notification and Consultation ..... 4

2 COMPENSATION ..... 4
- 2.1 Contract Price ..... 4
- 2.2 Taxes, Fees and Charges ..... 4
- 2.3 Billings ..... 5
  - 2.3.1 Billing, Payment and Retainage ..... 5
  - 2.3.2 Billing Requirements ..... 5
- 2.4 Payment Withholding ..... 5
- 2.5 Release of Retainage ..... 5
- 2.6 Payment for Materials ..... 5
- 2.7 Payments Not Acceptance of Work ..... 5

3 CHANGES TO THE CONTRACT ..... 5
- 3.1 Change Orders ..... 5
- 3.2 No Contractor Changes ..... 5
- 3.3 Company Changes ..... 6
- 3.4 Contractor's Duties for Changes ..... 6
- 3.5 Change Order Compensation ..... 6
- 3.6 Support Documents and Audits ..... 6
- 3.7 Work Authorizations; Disputed Work ..... 6
  - 3.7.1 Undisputed Work ..... 6
  - 3.7.2 Disputed Work ..... 6

4 DELAYS AND SHUTDOWNS ..... 7
- 4.1 Diligent Performance of the Work ..... 7

4.2 Weather Delays. ..... 7
4.3 Company Caused Delay or Shutdown ..... 7
4.3.1 Company Caused Delay. ..... 7
4.3.2 Company Directed Shutdown. ..... 7
4.3.3 Notice of Affected Crews. ..... 7
4.3.4 Remedy ..... 7
4.4 Shutdown for Unsafe Conditions. ..... 7
4.5 Shutdown for Environmental Disturbance. ..... 7

5 FORCE MAJEURE ..... 7
5.1 Definition ..... 7
5.2 Notice ..... 8
5.3 Remedies. ..... 8

6 TERMINATION FOR CAUSE ..... 8
6.1 Termination for Contractor's Insolvency, etc. ..... 8
6.2 Contractor's Default. ..... 8
6.3 Contractor's Failure to Remedy Default ..... 8
6.4 Company's Rights ..... 8
6.5 Termination of Contractor's Rights. ..... 9
6.6 Cost of Completing Work. ..... 9
6.7 General Obligations ..... 9

7 TERMINATION FOR CONVENIENCE ..... 9
7.1 Termination at Company's Option ..... 9
7.2 Remedies for Such Termination. ..... 9

8 SAFETY ..... 10
8.1 Safety ..... 10
8.2 Safety Meetings and Equipment ..... 10
8.3 First Aid Facilities. ..... 10
8.4 Emergencies ..... 10

9 ENVIRONMENTAL PROTECTION ..... 10
9.1 Environmental Conditions. ..... 10
9.2 Definition of "Environment ..... 10
9.3 Contractor Compliance. ..... 10
9.4 Contractor Default ..... 10
9.5 Notice of Environmental Disturbance. ..... 10
9.6 Pollution Control. ..... 10

10 SUBCONTRACTORS ..... 11
10.1 Prior Company Approval. ..... 11
10.2 Rejection of Subcontracts ..... 11
10.3 Subcontract Assignment to Company. ..... 11
10.4 Contractor's Responsibility. ..... 11

11 INDEMNIFICATIONS ..... 11
11.1 General Indemnity. ..... 11
11.2 Consequential Damages ..... 12
11.3 Settlement of Claims. ..... 12
11.4 Patent Indemnity. ..... 12
11.5 Law Compliance Indemnity ..... 12
11.6 Tax Indemnity (including Social Security). ..... 13
11.7 Lien Indemnity. ..... 13

12 INSURANCE AND BONDING ..... 13

12.1 Insurance. 13
12.2 Bonding. 13

13 WARRANTIES 13
13.1 General Warranty. 13
13.2 Remedial Work. 13
13.3 Extended Warranties. 14
13.4 Limitation of Warranties. 14
13.5 Completion Guarantee; Liquidated Damages. 14

14 OTHER CONTRACTOR OBLIGATIONS 14
14.1 Competent Supervision. 14
14.2 Qualified Workers. 14
14.3 Responsibility for Work, Security and Property. 14
14.3.1 Risk of Loss. 14
14.3.2 Security. 14
14.3.3 Title to Work. 14
14.3.4 People and Property. 14
14.4 Non-Discrimination. 15
14.5 Protection of Third Party Property. 15
14.5.1 Landowners and Tenants. 15
14.5.2 Other Facilities. 15
14.6 Reports. 15
14.7 Records. 15
14.8 Title to Drawings. 15

15 CONTRACTOR'S REPRESENTATIONS 15
15.1 Contractor's Good Standing. 15
15.2 Independent Contractor. 15
15.3 Authority to do Business. 15
15.4 No Violation of Law; Litigation. 15
15.5 Contractor Acknowledgments. 15
15.6 Contractor Covenants. 16

16 MISCELLANEOUS 16
16.1 Entire Agreement. 16
16.2 No Waiver. 16
16.3 Severability. 16
16.4 Applicable Law and Venue. 16
16.5 Assignability. 16
16.6 Accommodation of Company's Financing. 16
16.7 Non-Recourse Obligations. 17
16.8 Notices. 17
16.8.1 Company Address. 17
16.8.2 Contractor Address. 17
16.8.3 Delivery. 17
16.9 Conflicts. 17
16.10 Captions. 17
16.11 Time of the Essence. 17
16.12 Amendment. 17
16.13 Costs of Enforcement. 18

# CONSTRUCTION CONTRACT NO. 02-12

THIS CONSTRUCTION CONTRACT made as of the 12th day of April, 2002

BETWEEN:

**Iroquois Gas Transmission System, L.P.,**
a Delaware limited partnership
by its agent
**Iroquois Pipeline Operating Company**
a Delaware corporation
(the "**Company**")

- and -

**Horizon Offshore Contractors, Inc.**
Incorporated under the laws of the State of Delaware
(the "**Contractor**")

WITNESSES as follows:

## 1 THE WORK

1.1 **The Work.** The Contractor shall provide all necessary labor, equipment, supervision to perform and shall perform the work of constructing a 24-inch diameter gas pipeline and appurtenant facilities to cross Long Island Sound between Northport, Long Island and Hunts Point (the Bronx) and as more particularly set out in Exhibit "A", Project Description.

1.2 **The Contract.** The Contractor shall perform the Work in accordance with the terms and conditions contained herein and in the following exhibits attached hereto and made part hereof:

<u>Volume I</u>

Contract

| | | |
|---|---|---|
| Exhibit "A" | - | Project Description |
| | - | Contractor Letter dated 4/8/02 |
| | - | Contractor Letter dated 4/6/02 |
| | - | Contractor Letter dated 4/5/02 |
| | - | Contractor Letter dated 4/1/02 |
| | - | Company Letter dated 3/28/02 |
| | - | Contractor Letter dated 3/22/02 |
| | - | Contractor E-mail dated 3/16/02 |
| | - | Contractor Letter dated 3/14/02 |
| | - | Technical & Commercial Clarifications, Rev. 2, dated 3/12/02 |
| | - | Company Letter dated 2/20/02 |
| | - | Contractor Letter dated 10/30/01 |
| | - | Contractor Letter dated 6/22/01 |
| | - | Company Inquiry dated 6/21/01 |
| | - | Contractor Letter dated 6/18/01 |
| Exhibit "B" | - | Target Price Contract |
| | - | Detailed Cost Estimates |
| | - | Schedule of Rates |
| | - | List of Equipment and Manpower |
| | - | List of Subcontractors |

- Work Schedule
- Contractor Project Billing Schedule dated 4/12/02
- Contractor Letter dated 4/1/02
- Contractor Proposal, dated 3/12/02, Vol. I
- International Union of Operating Engineers Union Letter dated 2/15/02

Exhibit "C" - Forms of Affidavit & Release Upon Substantial Completion
Exhibit "D" - Forms of Affidavit & Release Upon Final Completion
Exhibit "E" - Form of Change Order
Exhibit "F" - Form of Work Authorization
Exhibit "G" - Insurance

Volume II – Exhibit "A" - Specifications & Appendices
- Appendix I – Contractor Documentation Requirements
- Appendix II - Not Used
- Appendix III – Project Specifications
- Appendix IV – Project Drawings
- Appendix V – Additional Project Data

Reference Documents:
- Project Addendum No. 1 issued 5/29/01
- Project Addendum No. 2 issued 6/13/01
- Project Addendum No. 3 issued 6/18/01
- Project Addendum No. 4 issued 6/18/01
- Project Addendum No. 5 issued 7/2/01
- Project Addendum No. 6 issued 7/10/01
- Project Addendum No. 7 issued 7/13/01
- Project Addendum No. 8 issued 7/18/01
- Project Addendum No. 9 issued 8/17/01
- Project Addendum No. 10 issued 8/30/01
- Project Addendum No. 11 issued 9/5/01
- Project Addendum No. 12 issued 2/28/02
- Instructions to Bidders
- Contractor Revised Bid 3/12/02, Vol. I
- Contractor Revised Bid 3/12/02, Vol. II-Trenching
- Contractor Revised Technical Proposal, Vol. III a Contractor Letter dated 11/13/01
- Contractor Operations HSE Plan, Vol. IIIb
- Contractor Revised Bid 8/24/01, Vol. 1A Supplemental
- Contractor Bid 8/1/01, Vol. I – Commercial
- Contractor Bid Vol. II Construction Procedures
- Company Letter dated 3/26/02 re: Permit, Specification & Information
- Company Addendum – East River/Hunts Point dated 3/22/02
- Company Letter dated 2/28/02 re Insurance & Bonding

Under Separate Cover:
Drawings – As per Section 3.3.1, Exhibit "A", Construction Drawings
Iroquois Environmental Procedure Manual
Iroquois Welding and Nondestructive Testing Manual
Eastchester Application; Docket No. CP00-232-000, dated April 28, 2000, Vols. I, II III & V
Eastchester Amended Application; Docket No. CP00-232-001, dated December 15, 2000, Vols. I and II
Joint Application for Permit – Eastchester Extension Project, submitted to NYS DEC, March 16, 2001
Iroquois Engineering & Operations Drafting Standards Manual, November 1, 2000, Rev. 0
Iroquois Health & Safety Procedure Manual
Supplementary Geotechnical Data – as per Article 28 of the Instructions to Bidders
Additional Geophysical Survey Data-As per Article 28 of the Instructions to Bidders
Final Environmental Impact Statement
Geotechnical Investigation – Interim Report dated 12/24/01
Geophysical Survey – Vol. 1, East River Survey dated 1/25/02
NYS DEC Permit #0-0000-00062/00001, Section 401 Water Quality Certificate



CONFIDENTIAL

Pre-Pipelay Dredging Specification, Rev. 2, 1/23/02
Dredging Act Ruling Request – U.S. Customs Service
Joint Application for Permit, February 2002 (Amended Application)
Eastchester Permitting Matrix, as provided 2/20/02
Iroquois Comments on DEIS, dated October 5, 2001
FERC Supplemental DEIS for the Millennium Project (Reference Only)
Pipe Mill Certificate
Pipe Data Book

(sometimes collectively, the "Contract").

1.3 **Start and Completion Dates.** Subject to compliance with Article 1.4, the Contractor shall commence the Work on or before September 3, 2002, and shall use due diligence to achieve Substantial Completion on or before March 1, 2003, and Final Completion on or before April 1, 2003. Contractor shall commence preparatory activities necessary to meet this schedule on or about April 12, 2002.

1.4 **Executed Contract, Insurance and Bonds.** Prior to commencing the Work, the Contractor shall furnish to the Company the following:

.1 the Contract duly executed by the Contractor;
.2 evidence of compliance with the insurance provisions set out in Article 12.1; and
.3 performance bond as set out in Article 12.2

1.5 **Definitions.** The following terms, when capitalized, shall have the meanings set out below when used in the Contract:

1.5.1 **Change Order.** – a written order to the Contractor pursuant to Article 3.

1.5.2 **Chief Engineer.** – Mr. Ken Webb, Manager, New Projects, or such other person as may from time to time be designated in writing by the Company.

1.5.3 **Company.** – Iroquois Gas Transmission System, L.P. by and including its agent Iroquois Pipeline Operating Company, and any other persons acting pursuant to the authorization of, or on behalf of, the Company.

1.5.4 **Company Representative.** – the person or persons designated in writing by the Chief Engineer, which designation shall include Environmental Inspector, to the Contractor before the Work commences or such other person or persons as may from time to time be designated in writing during the progress of the Work. The written designation of the Chief Engineer shall state the name, title and authority of each Company Representative.

1.5.5 **Contract.** – the Contract as set out in Paragraph 1.2.

1.5.6 **Contractor.** – the Contractor named above.

1.5.7 **Contract Price.** – the prices specified in Paragraph 2.1, including any adjustments thereto.

1.5.8 **Defective Work.** –any part of the Work performed by the Contractor which, fails to comply with the provisions hereof excluding defective materials provided by the Company.

1.5.9 **Environment.** – Environment as set out in Article 9.

1.5.10 **Equipment.** – all materials, plants, tools, equipment, appliances machinery, supplies, property or other things of whatever nature required or provided in connection with the execution, completion, or maintenance of the Work, but not including things intended to form or forming part of the Work.

1.5.11 **Field Manager.** - Mr. Robert Yelton, or such other person as may from time to time be designated in writing by the Company.

1.5.12 **Final Completion.** – completion of all the Work in accordance with the Contract and certification thereof by the Chief Engineer.

1.5.13 **Force Majeure.** – an event of Force Majeure as set out in Article 5.

1.5.14 **Subcontractor.** – any party with whom the Contractor enters into an arrangement for the performance of the Work or for the supply of equipment, material, or services to the Contractor, including parties at any tier with whom any Subcontractor has further subcontracted any part of the Work, and the legal or personal representatives, successors, and assigns of such party.

1.5.15 **Substantial Completion.** – completion of all of the Work in accordance with the Contract Documents or all work necessary to place the Work in service, whichever shall occur first.

1.5.16 **Warranty Period.** – a period of one (1) year from the date of Final Completion and, for repair work performed during the Warranty Period, an additional period of one (1) year from the date of acceptance by the Company of such repair work.

1.5.17 **Work.** – the Work as set out in Paragraph 1.1, including all activities to be performed by the Contractor under the Contract and all obligations, duties and responsibilities assigned to or undertaken by the Contractor pursuant to the Contract.

1.5.18 **Work Authorization.** -a written authorization to the Contractor to proceed with certain work pursuant to Article 3.

1.5.19 **Work Site.** – sites provided by the Company where the Work is to be performed including, without limitation, fee lands, easements for right-of-way, work room rights, storage or stockpile areas, and the right of ingress and egress.

1.6 **Work Site Use.** The Company shall provide the Contractor with any provisions, including restrictions and conditions, relating to the use of the Work Site. The Contractor shall observe and comply with all such provisions, including restrictions and conditions, respecting the use and enjoyment of the Work Site, shall confine its operations to the Work Site and shall be responsible for security measures at the Work Site and in connection with the performance of the Work.

1.7 **Inspection.** The Company contemplates and the Contractor hereby agrees to a thorough inspection by the Company and its designees of all the Work, materials and services furnished under the Contract. All Work performed by the Contractor and all materials and services furnished by it hereunder shall be subject to inspection by the Company and its designees at any time and the decision of the Chief Engineer shall be conclusive as to the compliance of the Work with the Contract provided however, Company's inspection shall be timely and not unreasonably interrupt or delay Contractor's schedule.

1.8 **Defective Work.** The Company shall give notice to the Contractor of any Defective Work and within five (5) days thereafter the Contractor shall commence to repair or replace the Defective Work regardless of the stage of its completion (if it is subsequently determined that there was no defect then the Company shall reimburse the Contractor for the cost of repairing or replacing the Work). No such inspection shall constitute an approval of any Work or Equipment, or relieve Contractor of any of its obligations hereunder. .

1.9 **Other Contractors.** Additional construction not covered by the Contract may be carried on at the Work Site either by the Company or other contractors. The Contractor shall cooperate fully with the Company or with such other contractors and carefully fit the performance of the Work with such additional construction. The Contractor agrees that in all matters relating to employment and labor it will comply, if necessary, with the schedule of wages and working conditions generally accepted by the trade unions representing the various trades engaged at the Work Site or required by law. If, despite the exercises of due diligence to avoid incurring delays or extra expense, Contractor nevertheless incurs such delay or expense, Company shall issue a change order in accordance with the provisions of Article 4, Exhibit "B", Target Price Contract.

1.10 **Notification and Consultation.** Notwithstanding any other provisions of the Contract, and in accordance with provisions of Exhibit "B" Target Price Contract, should the Contractor observe or be advised of any condition or state of facts, or omission or error in the Contract, which may affect or delay the performance of the Work or give rise to extra costs, the Contractor shall immediately advise the Company Representative in writing. Notwithstanding any other provisions of the Contract and in accordance with the provisions of Exhibit "B", Target Price Contract, should the Contractor fail to notify the Company in writing within forty-eight (48) hours of commencing any additional resulting work or delay, the Company shall not be responsible for payment to the Contractor of additional compensation resulting from any such matter, condition or thing. The Contractor shall be obligated to consult with the Company concerning its handling of conditions or matters which may give rise to extra work. By this provision, the Company does not waive any other provision of the Contract.

## 2 COMPENSATION

2.1 **Contract Price.** For and in consideration of the performance of the Work, the Company shall pay the Contractor the Contract Price of [redacted] as described in Exhibit "B" which may be adjusted by Change Order pursuant to Article 3. The Contract Price includes, by way of illustration and not limitation, all supervision, labor, material (except material specified to be furnished by the Company), use of equipment furnished, taxes, consumables, utilities, overhead, profit, and all other costs and expenses incurred by the Contractor in the performance of the Work, whether of the same or of a different nature from those enumerated. Except as otherwise specifically provided in the Contract, all costs incurred by the Contractor in performing the Work shall be paid by the Contractor without reimbursement by the Company.

2.2 Taxes, Fees and Charges. The Contract Price shall cover and include the Contractor's entire compensation for payment of all taxes, fees and charges incurred or incident to the performance of the Work, exacted, levied or assessed by the Federal Government, any state, county, town or any political subdivision of any state. The Contractor shall secure and pay for all royalties, permits, and all license fees and taxes on the services, labor, materials and equipment, including the cost of all rental equipment, to be furnished by the Contractor in connection with the performance of the Work. In addition, the Contractor shall pay all worker's/workmen's compensation contributions, unemployment insurance contributions, and all other taxes and payroll contributions now or hereafter imposed by any lawful authority, and shall indemnify and save harmless the Company

from any and all claims, penalties, interest and costs against any of the same which may be made or assessed against the Company in respect thereof. The Company shall be liable for and pay only property or use tax levied on material to be furnished by the Company under the Contract, and the cost of any Federal, state, county or other governmental permits for right-of-way furnished by the Company.

2.3 **Billings.**

2.3.1 **Billing, Payment and Retainage.** The Contractor, during the performance of the Work, shall furnish to the Company Representative twice each month a billing in form satisfactory to the Company for Work completed to the end of the previous period. The Company shall pay to the Contractor within fifteen (15) days following approval by the Company Representative of the billing, the approved portion thereof, retaining therefrom retainage of a maximum of ten percent (10%), as more fully described in Exhibit "B". If the Contractor disputes any determination by the Company with regard to a billing, the Contractor nevertheless expeditiously shall continue to prosecute the Work.

2.3.2 **Billing Requirements.** The Contractor shall furnish the Company with such backup and support material as the Company may request.

2.4 **Payment Withholding.** From any payment by the Company to the Contractor the Company may withhold sums, without payment of interest, of any amounts that the Company reasonably believes should not be paid to the Contractor, arising from events including but not limited to the following:

.1 Defective Work not remedied by the Contractor; or
.2 the filing of a lien or liens, and the costs of removing same; or
.3 settlement of claims pursuant to Article 11.3; or
.4 the Contractor's failure to pay when due the liquidated damages provided for in Section 13.5; or
.5 default by the Contractor in the performance of any of its obligations hereunder.

If the Contractor, after receipt of notice from the Company, fails or refuses to remedy the cause for withholding within twenty (20) days thereafter, then the Company may remedy the same and deduct the costs thereof from the compensation payable to the Contractor or otherwise seek to recover such sums from the Contractor in the event there is insufficient compensation remaining due to the Contractor to satisfy those obligations.

When the cause for withholding any payment has been remedied by the Contractor and satisfactory evidence of such remedy has been furnished to the Company, the payment or payments so withheld shall be made to the Contractor within thirty (30) days thereafter.

2.5 **Release of Retainage.** Upon Contractor's achieving Substantial Completion and completion of all building finishings to the satisfaction of the Company, the Company shall pay to the Contractor one-half of the retainage following the Contractor's submission of Affidavits and Releases properly executed. Attached hereto as Exhibit "C" are the forms of the Company's Affidavits and Releases Upon Substantial Completion which the Contractor (and such Subcontractors as the Company may require) will be required to sign. Upon Final Completion and the Contractor's submission of Affidavits and Releases properly executed, the Company shall pay the balance of the retainage to the Contractor. Attached hereto as Exhibit "D" are the forms of the Company's Affidavit and Release Upon Final Completion which the Contractor (and such Subcontractors as the Company may require) will be required to sign.

2.6 **Payment for Materials.** Contractor shall be paid for materials and equipment to be incorporated into the Work which is supplied by the Contractor upon purchase of such materials and equipment. All such materials shall become the property of the Company upon such payment being made.

2.7 **Payments Not Acceptance of Work.** No payment made hereunder shall be considered approval or acceptance of any Work. All payments shall be subject to correction or adjustment in subsequent progress reviews and payments.

## 3 CHANGES TO THE CONTRACT

3.1 **Change Orders.** Any changes to the provisions hereof shall only be made by means of a Change Order or a Work Authorization given by the Company, signed on behalf of the Company, and delivered to the Contractor. An example Change Order is attached hereto as Exhibit "E" and an example Work Authorization is attached hereto as Exhibit "F" for reference. Oral changes shall not be binding on the Company.

3.2 **No Contractor Changes.** The Contractor shall not make additions, changes, alterations or omissions, perform extra work, or supply or use extra materials or equipment incorporated into the Work, of any kind, unless a Change Order or Work Authorization has first been signed, given and received.

3.3 **Company Changes.** The Company may at any time by a Change Order and without notice to the sureties, if any, issue additional instructions, make changes in the Work, omit certain work or require additional work to be performed by the Contractor. In each such event, the Company shall specify the amount and kind of work to be done or omitted, the materials to be used and the equipment to be furnished.

3.4 **Contractor's Duties for Changes.** If additional work is authorized by a Change Order, the Contractor shall make every effort to provide such additional personnel and equipment to complete the additional work within the time specified in the Contract. The time for completion of the Work, notwithstanding changes in the Work, shall not be extended unless approved in writing by the Company.

3.5 **Change Order Compensation.** If any addition, change, alteration or omission authorized by a Change Order either increases or decreases the cost of the Work to the Contractor, the compensation payable to the Contractor shall be correspondingly increased or decreased and in each instance the amount of such increase or decrease, as the case may be, shall be reasonable and shall be calculated and determined in accordance with either established unit rates, or agreed upon lump sums and as provided in Exhibit "B", Target Price Contract.

3.6 **Support Documents and Audits.** Charges made for the foregoing items shall be supported by reports (on forms to be furnished or approved by the Company), signed by the Contractor and the Company and shall be subject to audit by the Company.

3.7 **Work Authorizations; Disputed Work.**

3.7.1 **Undisputed Work.** Extra work or alterations in the Work not in dispute may be authorized, in the first instance, by (a) the Field Manager pursuant to a Work Authorization if the amount of the adjustment to the Contact Price is reasonably estimated by the Contractor and Field Manager to be less than $25,000, and no extension of time is requested by the Contractor, or (b) the Chief Engineer or his designee in writing pursuant to a Work Authorization if the amount of the adjustment to the Contract Price is reasonably estimated by the Contractor and the Field Manager to be in excess of $25,000, and no extension of time is requested by the Contractor. Upon issuance of the Work Authorization, Contractor shall proceed promptly to execute the work. Such authorization shall be binding on the Company and payment thereon shall be made pursuant to a Change Order issued thereafter by the Company.

3.7.2 **Disputed Work.** If the Company and the Contractor disagree about whether work ordered to be done as Contract Work is extra work, or about an extension of time or any adjustment to be made to the Contract Price for an alteration in the Work, the Company may, pursuant to a Work Authorization, direct the Contractor to proceed with the work on the basis of an adjustment (if any) to be determined at the earliest practicable date thereafter, and the Contractor shall promptly proceed to execute the work. Such Work Authorization may be issued by the Field Manager if the amount in dispute is less than $25,000 for each occurrence and no extension of time is requested by the Contractor. For amounts in dispute in excess of $25,000 or a request for an extension of time, a Work Authorization may be issued by the Chief Engineer or his designee in writing. No claims for extra work shall be reviewed by the Company unless a Work Authorization has been issued. Subject to the dispute resolution procedures available under this Agreement, the decision of the Company concerning disputed work shall be final.



CONFIDENTIAL

## 4. DELAYS AND SHUTDOWNS

4.1 **Diligent Performance of the Work.** After commencement, the Work shall be diligently performed by the Contractor until Final Completion. If the Contractor or any Subcontractor is responsible for a delay in the progress of the Work, the Contractor shall, work overtime, acquire necessary additional equipment, hire additional manpower or perform other acts as may be necessary to avoid delay in the completion of the Work. Where Contractor's actual costs differ from the Target Cost, Company shall be obligated to pay the Contractor's actual costs in accordance with Exhibit "B" Target Price Contract.

4.2 **Weather Delays.** As provided in this Article 4.2, Contractor's Target Price includes for compensation due to delays caused by adverse weather conditions, provided that any weather downtime shall be cause for an extension of time to the extent that such downtime affects the critical path of the project schedule. Downtime incurred as a result of weather disturbances which become named storms by the National Weather service or as a result of excessive ice shall be compensated in accordance with Article 4, Exhibit "B", Target Price Contract.

4.3 **Company Caused Delay or Shutdown.**

4.3.1 **Company Caused Delay.** Should there be a shutdown or delay in the Work or any part thereof as a result of any act, error or omission of the Company, the Contractor shall give notice thereof to the Company. Such shut down or delay shall be held not to have begun earlier than 48 hours prior to receipt of such notice. Upon receipt of such notice the Chief Engineer shall ascertain the reasons for and the extent of such shut down or delay, if any.

4.3.2 **Company Directed Shutdown.** The Company may, at any time, shut down the Work or any part thereof by giving three (3) days notice to the Contractor. The Contractor shall resume the Work within five (5) days after receipt of notice from the Company.

4.3.3 **Notice of Affected Crews.** Immediately following the giving or receipt of the notices referred to in Articles 4.3.1 or 4.3.2, the Contractor shall advise the Company in writing of the number of crews and employees made idle by such shutdown or delay. The period of shutdown or delay pursuant to 4.3.2 shall continue as to such crews until receipt by the Contractor of the notice to resume the Work.

4.3.4 **Remedy.** In the event of a Company caused delay Contractor shall be entitled to compensation for costs and/or delay in accordance with Contract rates, Exhibit "B", Target Price Contract. If delay extends beyond 12 hours, Company shall reserve the right to compensate Contractor at standby or non-operating rates as applicable.

4.4 **Shutdown for Unsafe Conditions.** Should the Contractor fail to comply with any safety rules or regulations, show disregard for recognized safety practices, or if the Company determines during the performance of the Work that there may be immediate danger to human life or property, or in the opinion of the Company a condition exists as caused by Contractor which may result in a violation of rules, regulations or laws, the Company Representative may order an immediate shutdown in the Work or any part thereof. The Company Representative shall not order the Work affected to be recommenced until such time as the unsafe condition or practice has been corrected by the Contractor to the satisfaction of the Company. Contractor shall be entitled to extra compensation and extra time shall be allowed for the completion of the Work as a result of such shutdown unless such shutdown results from the Contractor's failure to comply with any safety rules or regulations or the Contractor's disregard for recognized safety practices.

4.5 **Shutdown for Environmental Disturbance.** In the event a condition exists that may result in a violation of environmental permits, rules, regulations or laws, the Company Representative may order an immediate shutdown of the work causing or affecting the environmental disturbance. Contractor shall be entitled to extra compensation and extra time shall be allowed for the completion of the Work as a result of such shutdown unless such shutdown results from Contractor's violation of an environmental permit, rule, regulation or law. The Company representative shall not order the Work affected to be recommenced until such time as the environmental condition or practice has been corrected by the Contractor to the satisfaction of the Company.

## 5 FORCE MAJEURE

5.1 **Definition.** The term "Force Majeure" means any of the following: fires, floods, epidemics, lightning; earthquakes; quarantine; blockade; change in governmental laws, regulations, acts, orders, or injunctions subsequent to execution of the Contract; war; insurrection or civil strife; labor strike; sabotage; explosions; and any other similar events, but only to the extent that such events adversely affect the ability of the affected party to perform its obligations, do not result from the fault or negligence of the affected party or its agents and are beyond the control of the affected party and beyond such party's reasonable efforts to prevent, avoid, or mitigate such acts, events, or occurrences.

5.2 **Notice.** In the event that either party's performance of its obligations under the Contract is delayed by an event of Force Majeure, such party shall within two (2) days of the commencement of any such delay provide to the other party written notice thereof including a statement describing the event of Force Majeure in detail. Within five (5) days following delivery of such notice or such other period as may be agreed upon in writing by the parties, the affected party shall specify to the other party in writing the effect of the event of Force Majeure upon the performance of the Contract.

5.3 **Remedies.** The remedy for an event of Force Majeure shall be an extension of time within which to perform the affected obligation equal to the duration of the event of Force Majeure and reimbursement of Contractor's costs for all Contractor equipment and personnel made idle during such event of Force Majeure in accordance with Section 2.2 of Exhibit "B" and at such reduced or standby rates as are mutually agreed upon between the Company and the Contractor. This reimbursement shall be in addition to the Target Cost. Should the Force Majeure event persist in excess of seven (7) days, Contractor shall, if mutually agreeable between the Company and the Contractor, demobilize to other project obligations and remobilize at a mutually agreeable date.

## 6 TERMINATION FOR CAUSE

6.1 **Termination for Contractor's Insolvency, etc.** If the Contractor sells or transfers all or substantially all of its assets, or makes a general assignment for the benefit of its creditors, or institutes a proceeding in bankruptcy, or if a receiver is appointed on account of its insolvency, the Company may request of the Contractor or its successor in interest assurance satisfactory to the Company of the Contractor's future performance in accordance with the terms and conditions of the Contract. If the Contractor or its successor fails to provide such satisfactory assurances within seven (7) days of a request therefor, the Company may, without prejudice to any right or remedy and after giving Contractor seven (7) days notice thereof, terminate the employment of the Contractor.

6.2 **Contractor's Default.** If the Contractor commits a material violation of any provision of the Contract then the Company may give notice to the Contractor stating the event in which the Contractor is in default. By way of illustration but not limitation, a material violation of the Contract includes:

.1 Contractor's failure to supply properly skilled workmen or materials and Equipment of the proper quality or quantity;

.2 Contractor's failure in any respect to perform the Work or any portion thereof in an efficient, workmanlike, skilled, safe, and careful manner

.3 Contractor's failure at any time after Contractor's work schedule shall show that Substantial Completion will be delayed more than thirty days beyond March 1, 2003, to commence such steps as shall be reasonably calculated to allow Substantial Completion to occur within thirty days of March 1, 2003. In such instance, Contractor must be capable of demonstrating that the steps taken will result in Substantial Completion within thirty days of March 1, 2003;

.4 Contractor's failure to make prompt payment of undisputed invoices due to subcontractors for materials or labor;

.5 Contractor's failure to perform its contractual obligations in good faith.

6.3 **Contractor's Failure to Remedy Default.** Should the Contractor fail to commence to remedy the default within five (5) days after receipt of such notice then the Company shall have the right to:

.1 provide labor, Equipment and materials as may be required to remedy the default and to bill the Contractor and its sureties for expenses, costs and damages so incurred or to deduct such amount due or to become due to the Contractor; or

.2 terminate the Contract and/or the right of the Contractor to proceed with the Work or any part thereof, regardless of its state of completion without prejudice to any right or remedy that the Company may have hereunder.

6.4 **Company's Rights.** In the event of termination pursuant to this Article 6, the Contractor shall provide the Company with the right to continue to use any and all patented and/or proprietary information that the Company deems necessary to complete the Work, provided that the Company agrees to maintain the confidentiality of such information. Furthermore, the Company may finish the Work by whatever method it may deem expedient, including the hiring of any other person, firm or corporation under such form of contract as the Company may deem desirable. The Company shall not be required to obtain the lowest bids for completing the Work but may make such expenditures as, in its sole judgment, will best accomplish the completion of the Work. The Company shall continue to possess all rights and remedies available to it at law and in equity associated with the Contract.

6.5 **Termination of Contractor's Rights.** In the event of termination pursuant to this Article 6, the Contractor shall not be entitled to receive any further payment under the Contract except for payments for Work satisfactorily performed prior to such termination and for costs incurred or committed prior to termination, which payments shall be due to the Contractor at the time of termination. Contractor shall continue to possess all rights and remedies available to it at law and in equity associated with the Contract, and Contractor shall continue to be bound by those provisions of the contract which survive the date of termination.

6.6 **Cost of Completing Work.** The cost to the Company of completing the Work, including reasonable charges for administering such completion and for legal fees associated with the termination, will be charged to the Contractor, and such costs may be deducted by the Company out of monies due, or that may at any time thereafter become due, to the Contractor. In the event that such costs exceed the sum that would have otherwise been payable under the Contract, then the Contractor and its sureties shall be liable for and shall pay to the Company the amount of such excess. Provided, however, that Contractor's responsibility for the excess cost of completion of the Work and/or all other damages which may be recoverable by Company from Contractor for Contractor's default shall be limited to an aggregate sum equal to twenty percent (20%) of the total contract price of the Work otherwise payable to Contractor under the terms of this Agreement; this limitation of Contractor's liability does not affect the Company's rights to recover such costs and/or all other damages from the Contractor's sureties to the extent of the amount of the bond in effect at the time of termination.

6.7 **General Obligations.** In the event of termination pursuant to this Article 6, the Contractor shall, at the Company's request and the Contractor's expense, perform the following services relative to the Work so affected:

.1 Assist the Company in preparing an inventory of all Equipment and property of any and every Kind provided by the Contractor in use or in storage at the Work Site.

.2 Assign to the Company all subcontracts and other contractual agreements as may be designated by the Company; and

.3 Remove from the Work Site such of the Equipment provided by the Contractor and rubbish as the Company may request.

7 **TERMINATION FOR CONVENIENCE**

7.1 **Termination at Company's Option.** The Company may, at any time, terminate the Work or any part thereof by giving notice to the Contractor, whether or not the Contractor is in default. Upon receipt of such notice the Contractor shall, unless the notice directs otherwise:

.1 immediately discontinue the Work on the date and to the extent specified in the notice;

.2 cease placing orders or subcontracts for materials, equipment or services and make every effort to cancel existing orders or subcontracts on terms satisfactory to the Company, except as may be necessary for completion of such portion of the Work not discontinued;

.3 do only such portion of the Work as may be necessary to preserve and protect the portion of the Work installed prior to termination;

.4 protect materials and equipment on or in transit to the Work Site; and

.5 continue to be responsible for the portion of the Work performed prior to termination.

7.2 **Remedies for Such Termination.** Upon any such termination the Contractor agrees to waive any claims for damages, including loss of anticipated profits on account thereof, and agrees that the sole remedy for such termination shall be to receive the sum of the following:

.1 All amounts due and not previously paid to the Contractor for that part of the Work completed prior to such notice and for that part of the Work thereafter completed as specified by the Company.

.2 All other amounts incidental to or arising out of the termination of the Work which, shall be reasonable, including costs relating to,

(i) the termination of non-union labor or union labor contracts;
(ii) the termination of leases of rented premises and rented office equipment;
(iii) the termination of utility services in connection with the rented premises referred to in the immediately preceding subclause (ii);
(iv) the termination of equipment, machinery and automotive leases;
(v) unused materials, which shall then be delivered to the Company;
(vi) unabsorbed overhead costs prorated to the unfinished portion of the Work; and
(vii) any demobilization costs incurred as per Exhibit "B", Target Price Contract
(viii) reasonable amounts paid by Contractor in settlement or termination of claims of its subcontractors and suppliers;

(ix) an amount, as liquidated damages, equal to 5% of the value of the uncompleted portion of the Work. The Parties agree that any sums which may be payable by Company under this Article 7.2 (ix) are in the nature of liquidated damages and not a penalty, and are fair and reasonable, and such payment represents a reasonable estimate of fair compensation for the losses that may reasonably be anticipated from Company's termination of the Agreement.

## 8 SAFETY

8.1 **Safety.** The Contractor shall execute the Work in a safe manner and conduct its operations in compliance with all applicable laws, regulations, and standards, including those governing safety. The Contractor shall designate a qualified safety representative to implement a safety program and direct its and its Subcontractors' employees to take all precautions necessary to protect against and prevent injury to the public, personnel and property. Contractor shall use reasonable care to properly maintain and operate the vessels under its control and to require its Subcontractors to properly maintain and operate the vessels under their control.

8.2 **Safety Meetings and Equipment.** The Contractor shall hold regularly scheduled meetings prior to and during the performance of the Work to instruct its and its Subcontractors' employees on safety practices and the requirements of its safety program. The Contractor shall furnish safety equipment and enforce the use of such equipment by its and its Subcontractors' personnel.

8.3 **First Aid Facilities.** The Contractor shall, at its expense, provide first aid facilities and equipment, including transportation, and make such facilities and equipment available for the treatment of persons who may be injured or become ill while engaged in the performance of the Work.

8.4 **Emergencies.** In the event of any emergency endangering life or property or the Environment, Contractor shall take such action as may be reasonable and necessary to prevent, avoid or mitigate injury, damage or loss and shall report any such incidents to the Company as soon as possible.

## 9 ENVIRONMENTAL PROTECTION

9.1 **Environmental Conditions.** The Contractor acknowledges that performance of the Work may involve a disturbance of the Environment and that the regulatory authority which authorized the Company to construct the Work requires the Company to do so with as little disturbance of the Environment as is reasonable and possible in the circumstances.

9.2 **Definition of "Environment".** For purposes of any contract, Environment includes physical environment (air, water, land) and biological environment (birds, fishes, reptiles, insects, mammals, man) and the Company and the Contractor accept that the physical and biological environment interrelate with man-made elements (cities, highways, railways, pipelines) to form independent "ecosystems" and that a change in one element of the system may result in subtle, moderate or massive alterations to other parts. Therefore, with respect to the performance of the Work the Contractor must ensure that its activities are conducted in a manner that conforms to acceptable environmental standards.

9.3 **Contractor Compliance.** The Contractor shall observe and comply with the environmental requirements forming part of the Contract. The Company may retain independent persons experienced in environmental matters to ensure that acceptable environmental standards are being maintained during construction.

9.4 **Contractor Default.** Failure by the Contractor to comply with the environmental requirements of the Contract shall constitute an event of default and upon the occurrence thereof the Company shall exercise any or all of the remedies available to it under the Contract.

9.5 **Notice of Environmental Disturbance.** The Contractor shall immediately give notice to the Company of any environmental disturbance, including but not limited to contamination of the environment, spills or leaks of pollutants, erosion, or archaeological finds. The Contractor shall, if so directed by the Company Representative, immediately stop the Work causing or affecting the environmental disturbance, and take such other actions as may be required by the Company.

9.6 **Pollution Control.** The Contractor shall assume all responsibility for, including control and removal of, and indemnify and hold harmless the Company against and from loss, cost or damage arising from pollution or contamination which originates from, (i) without limitation, and without limit, spills or leaks of fuels, lubricants, motor oils, pipe dope or coating, paints, solvents, ballasts, bilge garbage, sewerage, or other materials in the Contractor's or its Subcontractors' possession and (ii) for the first

$100,000 of any claims which arise or result from all other sudden and accidental spills, leaks, discharges from any other source, (but excluding disturbance of existing contaminated soils) resulting from operations of Contractor or its Subcontractors or from damage caused by Contractor's or its Subcontractor's vessels or other equipment or the anchors thereof, which are caused by the negligence or other fault of Contractor, or the unseaworthiness of any vessel.

Company shall assume all responsibility for, including control and removal of, and shall defend, indemnify and hold Contractor and its Subcontractors harmless from and against any and all loss, cost or damage arising from (iii) pollution or contamination which results from any source other than those enumerated in (i) above in excess of $100,000, and (iv), Contractor's disturbance of existing contaminated soils during performance of the Work, whether the presence of such contamination is known or unknown, and regardless of whether their disturbance is expected or intended to occur as a result of operations performed by Contractor or its Subcontractors under this Agreement, regardless of cause, even if caused by the negligence or other fault of Contractor or its Subcontractors or the unseaworthiness of any vessel, so long as the Contractor has not willfully or knowingly violated the requirements of any environmental permits. However, any pollution liability arising out of collision with another vessel during the operation or navigation of Contractor's vessel shall be the responsibility of the Contractor.

Company shall obtain and maintain during the performance of the Work a policy of Contractor's Pollution Liability Insurance at limits and deductibles to be determined by the Company based on need and market conditions. Contractor and its Subcontractors to any tier shall be named as additional assureds under the policy, and underwriters on the policy shall waive all rights of subrogation against such additional assureds. The policy shall be primary to any other insurance carried by the Contractor. If Contractor does not agree that the limits of the insurance purchased by Company pursuant to this Article 9.6 are sufficient to cover the exposure for pollution, then Contractor shall have the right to obtain higher limits of coverage, and the premium shall be shared equally by Company and Contractor.

## 10 SUBCONTRACTORS

10.1 **Prior Company Approval.** The Contractor shall obtain written approval of the Company before subcontracting any portion of the Work to other than those Subcontractors set out in the Contract. No Subcontractor shall subcontract any portion of its subcontract without the prior written approval of the Company. Such approvals shall not relieve the Contractor from any of its obligations under the Contract. The Contractor shall be and remain liable as if no such subcontract had been approved by the Company. The Contractor shall furnish reports and other information relative to any Subcontractor as the Company may request.

If requested by the Company, the Contractor shall furnish to the Company a breakdown of all bids from subcontractors prior to awarding any subcontract. Each contract between the Contractor and any Subcontractor (of any tier) shall include a provision to the effect that each Subcontractor shall be bound to the provisions, terms and conditions of this Contract to the same extent as the Contractor, except that subcontractors may utilize lump sum or unit price compensation methods in lieu of the Target Cost/Target Fee method described in Exhibit "B".

10.2 **Rejection of Subcontracts.** The Company reserves the right to reject any subcontract or to require the termination of any subcontract at any time, if, in the opinion of the Chief Engineer, the Subcontractor is not performing the Work in the manner specified, and such rejection shall not affect, increase or diminish the Company's or the Contractor's obligations or rights under this Contract.

10.3 **Subcontract Assignment to Company.** Any subcontract shall not bind or purport to bind the Company nor create any right in the Subcontractor against the Company but shall contain provisions permitting the assignment thereof by the Contractor to the Company without the consent of the Subcontractor, and shall provide that, if Contractor is terminated pursuant to Articles 6 or 7 hereof, the Subcontract shall be assigned without further action to the Company or any replacement contractor designated by the Company, except that the Company may, at its option, refuse to accept any such assignment.

10.4 **Contractor's Responsibility.** The Contractor shall be fully responsible for any act or omission of any of its Subcontractors and of persons either directly or indirectly employed by any of them.

## 11 INDEMNIFICATIONS

11.1.1. **General Indemnity.** Contractor shall be liable in any case of illness, injury or death to employees and other personnel of Contractor or its Subcontractors of any tier or in any case of loss or loss of use or damage to its or their equipment other property. Contractor shall release, defend, protect, indemnify and hold harmless Company from and against any loss, cost, claim, liability, suit, judgement, award or damage, including reasonable attorney's fees and expenses including expert witness fees, on

account of such illness, injury, death, loss or damage regardless of whether caused or contributed to by the sole, joint, or concurrent negligence or other fault of Company or its other contractors, or the unseaworthiness of any vessel.

11.1.2 Company shall be liable in any case of illness, injury or death to employees and other personnel of Company or its contractors or subcontractors of any tier other than Contractor and its Subcontractors or in any case of loss or loss of use or damage to the Work or its or their equipment or other property. Company shall release, defend, protect, indemnify and hold harmless Contractor from and against any loss, cost, claim, liability, suit, judgment, award or damage, including reasonable attorney's fees and expenses including expert witness fees, on account of such illness, injury, death, loss or damage regardless of whether caused or contributed to by the sole, joint, or concurrent negligence or other fault of Contractor or its subcontractors of any tier, or the unseaworthiness of any vessel.

11.1.3 The Contractor shall indemnify, hold harmless and release the Company and its affiliates, and its and their officers, contractors, employees and agents from and against all liabilities or causes of action, demands, suits, damages, judgments, fees, fines, penalties, costs and expenses resulting from injury to or death of third parties and from any damage to property or any losses of any kind suffered by third parties, due to or caused by the breach of the Contractor of its obligations hereunder, or the willful misconduct or negligence of the Contractor or its Subcontractors in carrying out its responsibilities under this Agreement, except and to the extent such injury, death, damage or loss is caused by the negligence or willful misconduct of the Company or its affiliates, and its or their officers, employees, agents and contractors.

11.1.4 The Company shall indemnify, hold harmless and release the Contractor and its affiliates, and its and their officers, contractors, employees and agents from and against all liabilities or causes of action, demands, suits, damages, judgments, fees, fines, penalties, costs and expenses resulting from injury to or death of third parties from any damage to property or any losses of any kind suffered by third parties, due to or caused by the breach of the Company of its obligations hereunder, or the willful misconduct or negligence of the Company or its subcontractors in carrying out its responsibilities under this Agreement, except and to the extent such injury, death, damage or loss is caused by the negligence or willful misconduct of the Contractor or its affiliates, and its or their officers, employees, agents and contractors.

11.1.5 In the event that the claims, damages, losses, judgments, or settlements covered by the provisions set forth in Articles 11.1.3 and 11.1.4 are the result of the negligence of both parties, each party shall be liable to the extent or degree of their respective negligence, as determined by mutual agreement of both parties or in the absence thereof, as determined by adjudication of comparative negligence.

11.2 **Consequential Damages.** Notwithstanding any other provision in this Agreement, neither Party shall be liable to the other for loss of profit or revenue, loss of use of capital, loss of product or loss or delay of production, business interruptions, or losses resulting from failure to meet other contractual commitments or deadlines and downtime of facilities or equipment or any consequential damages or suffered in connection with or arising out of the performance of the Work regardless of whether any such loss or damage is caused or contributed to by the sole, joint, or concurrent negligence or other fault of either Party or the unseaworthiness of any vessel.

11.3 **Settlement of Claims.** The Company shall have the right to settle any damage caused by the Contractor to any property in an amount not exceeding Three Thousand Dollars ($3,000) without prior reference to the Contractor. With respect to any claims in excess of Three Thousand Dollars ($3,000) or any claims arising out of the death of or injury to any person, the Company shall give notice thereof to the Contractor. Unless the Contractor advises the Company within twenty-one (21) days thereafter that it has settled or intends to dispute such claim, the Company shall have the right to settle such claim. The Company shall charge the amount of any settlement, including the costs of the Company, against the compensation payable to the Contractor hereunder. At the time of settlement, the Company shall obtain a release in favor of both the Company and the Contractor and shall deliver a copy of such release to the Contractor.

11.4 **Patent Indemnity.** The Contractor agrees be responsible for and to protect indemnify, defend, and hold harmless the Company, its participants, its employees, the Company Representative, the Chief Engineer, entities related to the Company, and lenders to the Company (including their independent engineers) from and against any and all loss, cost, and damage (including attorney's fees, costs and expenses) of whatever kind or nature which the Company may hereafter suffer or pay out by reason of any infringement of a United States patent, copyright or trademark issued prior to the date of design, based upon the performance of the Work or materials and Equipment designed or used by the Contractor or its Subcontractors except for materials and equipment furnished or specified for use by the Company.

11.5 **Law Compliance Indemnity.** The Contractor agrees to be responsible for and to protect, indemnify, defend, and hold harmless the Company, its participants, its employees, the Company Representative, the Chief Engineer, entities related to

the Company, and lenders to the Company (including their independent engineers) from any and all assessments, taxes, penalties, fines, interest, attorney's fees, costs and expenses, and claims in connection with any violation of or noncompliance with any law, rule, regulation, ordinance, code, schedule, or order of the Federal Government or any state or local government, including those with respect to environmental matters, or any price-fixing or price adjudication by governmental agencies or courts, arising out of the Work, the Contract Price, or the Contractor's performance or nonperformance of the Work unless such obligation has been expressly assumed by the Company in the Contract.

11.6 **Tax Indemnity (including Social Security).** The Contractor agrees to be responsible for and to protect, indemnify, defend, and hold harmless the Company, its participants, its employees, the Company Representative, the Chief Engineer, entities related to the Company, and lenders to the Company (including their independent engineers) from any and all assessments, taxes, penalties, fines, interest, attorney's fees, costs and expenses, and claims, which may be made or assessed against the Company, arising out of the Contractor's failure to pay all assessments, taxes, fees, or contributions, which are the Contractor's responsibility under the Contract, including but not limited to, taxes or contributions for unemployment insurance, old age pensions, benefits or annuities now or hereafter imposed by the United States or any state, which are measured by wages, salaries, or other remuneration paid or due persons employed in the performance of the Work.

11.7 **Lien Indemnity.** The Contractor shall be responsible for, protect, indemnify, defend, and save harmless the Company, its participants, its employees, the Company Representative, the Chief Engineer, entities related to the Company, and lenders to the Company (including their independent engineers) from and against all claims, demands, causes of action, suits, damages, liabilities, interest, attorney's fees, costs and expenses of whatever nature arising out of the service, labor, equipment and materials or any of them furnished by the Contractor or any of its Subcontractors; from all statutory liens upon the Work or Work Site arising out of the services, labor, equipment and materials or any of them furnished by the Contractor or any of its Subcontractors and shall keep the Work and Work Site free and clear of all liens, claims and encumbrances arising from the performance of the Contract by the Contractor or any of its Subcontractors. By this provision the Contractor specifically waives any statutory lien rights associated with the foregoing which the Contractor may have, but only to the extent of payments actually made by the Company. The Contractor shall cause any lien asserted against property arising out of or related to the Work to be discharged within twenty (20) days of its assertion.

## 12 INSURANCE AND BONDING

12.1 **Insurance.** The Company and the Contractor shall maintain insurance in accordance with the terms and conditions set out in Exhibit "G".

12.2 **Bonding.** The Contractor shall provide performance bonds issued by a surety company approved by the Company, in form satisfactory to the Company. The cost of such bonds shall be paid at the rates set out in Exhibit "B" hereto and shall be supported by an invoice in reasonable detail from the Surety Company. The amount of bond shall be equal to the Contract Price from commencement of Work until completion of the pipe lay and burial scope of work of the Laybarge Gulf Horizon. Thereafter, the amount of the bond shall be equal to the greater of 125% of the outstanding Contract Price or 125% of the forecast to complete.

## 13 WARRANTIES

13.1 **General Warranty.** Notwithstanding any other provisions of the Contract, the Contractor represents and warrants that the Work, shall be new, of good quality and free of defects in construction and workmanship and shall conform to the final project plans and specifications and descriptions set forth herein, and all other requirements of this Contract and this Warranty shall remain in effect for the duration of the Warranty Period. Materials not manufactured by the Contractor are not warranted to any extent, but Contractor shall assign to Company, to the extent in each case that the same are assignable any warranties received by Contractor from the manufacturers thereof.

13.2 **Remedial Work.** Should any defect in the workmanship be discovered during the Warranty Period, the Company shall give notice thereof to the Contractor. Upon receipt of such notice or Contractor's otherwise obtaining knowledge of any breach of warranty the Contractor shall promptly remedy the failure or defect and perform such tests as the Company may require to verify that the remedial work complies with the requirements of the Contract. All costs incidental to the performance of any remedial work and tests, shall be borne by the Contractor. The warranty shall apply equally to any remedial work performed by the Contractor and the Warranty Period shall be extended for a period of one (1) year from the date of acceptance by the Company of the remedial work. Should the Contractor fail to commence steps to perform the remedial work within a

reasonable time specified by the Company, the Company shall have the right to have such remedial work performed and all costs incidental to the performance thereof shall be borne by the Contractor.

13.3 **Extended Warranties.** The Contractor shall transfer to the Company all warranties and/or guarantees relating to the Work that the Contractor receives from all and any Subcontractors. The Contractor shall assign to the Company, at no additional cost, the benefits of warranties to the Contractor from its Subcontractors. Contractor shall assist the Company in prosecuting any warranty claims.

13.4 **Limitation of Warranties.** CONTRACTOR EXCLUDES ALL OTHER REPRESENTATIONS, OBLIGATIONS, AND WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY EXPRESS OR IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, CONFORMITY TO MODELS OR SAMPLES, COMPLIANCE WITH SPECIFICATIONS OR INDUSTRY STANDARDS, DESIGN OR PERFORMANCE, AND ALL OTHER LIABILITIES IN CONNECTION WITH THE WORK AS PERFORMED (AT COMMON LAW OR IN CONTRACT OR TORT OR OTHERWISE, INCLUDING WITHOUT LIMITATION, STRICT LIABILITY AND NEGLIGENCE OF CONTRACTOR).

13.5 **Completion Guarantee; Liquidated Damages.** The Contractor guarantees that lay barge mobilization and completion of all of the activities required prior to lay barge mobilization shall occur on or before October 1, 2002. If Contractor fails to cause mobilization completion of the lay barge by such date, the Contractor shall pay the Company liquidated damages in the amount [redacted] for each day following October 1, 2002 until and including the date of mobilization completion, up to a maximum of fourteen days. All liquidated damages shall be payable to the Company weekly in arrears within five (5) days of the date the Company submits to the Contractor an invoice therefor and will not be added to retainage. The Contractor agrees that (i) any sums which may be payable by the Contractor under this Article 13.5 are in the nature of liquidated damages and not a penalty, and are fair and reasonable, and (ii) such payment represents a reasonable estimate of fair compensation for the losses that may reasonably be anticipated from the Contractor's failure to meet this completion guarantee. Notwithstanding the Contractor's payment of liquidated damages in accordance with this Article 13.5, the Contractor shall continue to prosecute the Work in accordance with the requirements of this Agreement.

## 14 OTHER CONTRACTOR OBLIGATIONS

14.1 **Competent Supervision.** The Contractor shall provide adequate and competent supervision, shall keep a competent Superintendent or a competent Foreman acceptable to the Company at each Work Site. Prior to commencing the Work, the Contractor shall notify the Company in writing of the name and qualifications of its Superintendent or Foreman, if someone other than the person(s) set out in the Contract.

14.2 **Qualified Workers.** The Contractor shall do the Work in a workmanlike manner by qualified, careful and efficient workers in strict conformity with the Contract. The Company shall have the right to require the removal from the Work Site of any employee of the Contractor, or of its Subcontractors, who, in the Company's opinion, may be incompetent, careless or not qualified to perform the Work assigned to him or who in the opinion of the Company may be otherwise insubordinate or guilty of improper conduct or who shows disregard for or is in violation of any safety or environmental rules and regulations.

14.3 **Responsibility for Work, Security and Property.**

14.3.1 **Risk of Loss.** The Company shall be responsible for and shall bear any and all risk of loss of or damage to Work in progress, and to all materials and equipment (other than Contractor equipment) in excess of the deductible of Builders Risk Policy until Substantial Completion or termination of this Contract, whichever shall first occur.

14.3.2 **Security.** The Contractor shall at all times conduct operations in a manner to avoid the risk of loss, theft, or damage by vandalism, sabotage, or any other means. Contractor shall continuously inspect all Work, materials and equipment to discover and determine any conditions that might involve such risks and shall be solely responsible for discovery, determination, and correction of such conditions.

The Contractor shall establish and implement a project security program and shall cooperate with the Company on all security matters.

14.3.3 **Title to Work.** Notwithstanding Sections 14.3.1 and 14.3.2, Contractor guarantees that legal title to and ownership of all Work and all materials at all times shall be in the Company.

14.3.4 **People and Property.** The Contractor shall use due care an diligence to protect the Work, the personnel and property of the Company and the person and property of others which may in any way be affected by the Work. The Contractor shall use due care and diligence to ensure that no person is injured and no property rights are infringed upon during the performance of the Work.

14.4 **Non-Discrimination.** In performing the Work, the Contractor shall not discriminate against any employee or applicant for employment because of race, creed, color, religion, sex, national origin, age or handicap, and will comply with all provisions of Executive Order 11246 of September 24, 1965 and any successor order thereto, to the extent that such provisions are applicable. This Article 14.4 shall be applicable to any Subcontractors retained by the Contractor.

14.5 **Protection of Third Party Property.**

14.5.1 **Landowners and Tenants.** The Contractor shall give due consideration to the interests and property of landowners and tenants wherever involved and shall carry out and perform the Work in a manner which shall cause the minimum of inconvenience, injury or damage. The Contractor shall restore all damaged property to as good condition as before damage occurred.

14.5.2 **Other Facilities.** The Contractor shall use due diligence in crossing pipelines, pole lines, sewers, water lines, cables or other facilities, to protect such facilities from damage during the performance of the Work.

14.6 **Reports.** The Contractor, when requested in writing by the Company to do so, shall provide written reports setting forth in reasonable detail the information requested relating to the Work.

14.7 **Records.** Contractor shall maintain during the term hereof and for a period of five years after Final Completion, in accordance with generally accepted accounting principles consistently applied, such financial records and books of account as the Company may require and as will allow the Company and its representatives to monitor and verify the accuracy of progress payments and adjustments to the Contract Price. The Company and its designees may inspect and audit such records and books of account during normal business hours and upon at least three (3) days' notice. Contractor shall have the right to exclude from disclosure records which reveal the make up of pre-agreed major equipment rates and any information which is confidential or proprietary to Contractor.

14.8 **Title to Drawings.** All drawings and specifications are the property of the Company and the Contractor may not use the drawings and specifications for any purpose not relating to the project without the Company's prior written consent.

## 15 CONTRACTOR'S REPRESENTATIONS

15.1 **Contractor's Good Standing.** The Contractor represents and warrants that it is a corporation duly organized, validly existing and in good standing under the laws of its jurisdiction of incorporation, and that the execution, delivery, and performance of the Contract has been duly authorized by all requisite corporate action and will not violate any provision of any governmental rule, regulation, or ordinance, its charter or bylaws, of any indenture, agreement, or instrument to which it is a party, or by which it or its property may be bound or affected.

15.2 **Independent Contractor.** The Contractor is an independent contractor (and not an agent for the Company) and shall supervise and direct the Work, using its best skill and attention and shall be solely responsible for all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work, notwithstanding that the performance of the Work or any part thereof may be subject to direction from or inspection by the Company.

15.3 **Authority to do Business.** The Contractor represents that it has lawful authority to carry on and has qualified to do business in the state(s) and location(s) in which the Work is to be performed.

15.4 **No Violation of Law; Litigation.** The Contractor represents and warrants that it is not in violation of any law promulgated, or judgment entered, by any federal, state, local or governmental authority which would adversely affect Contractor or its performance of any obligations under this Contract. The Contractor represents that it is not a party to any legal, administrative, arbitral, investigatorial, or other proceeding or controversy pending, or, to the best of its knowledge or reasonable expectation, any such threatened proceeding, which would adversely affect its ability to perform under the Contract.

15.5 **Contractor Acknowledgments.** The Contractor acknowledges and agrees that:

.1 it represents that it is fully qualified and holds all required licenses, permits, or other governmental authorizations to do the Work in accordance with the terms of the Contract within the time specified;

.2 it has had full opportunity to examine and has carefully examined the Contract;

.3 it understands the information contained in the Contract;

.4 it shall provide all and pay for all services, labor, materials and equipment (other than Company supplied materials and equipment), tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for the proper execution and completion of the Work;

.5 it shall observe and comply with:

.1 all of the Company's safety instructions, rules and regulations, and

.2 all applicable laws, orders, regulations, ordinances and other rules of all lawful authorities acting within their powers;

.6 it has an understanding of the difficulties which may be encountered in the performance of the Work and

.7 it has acquainted itself with Company provided geotechnical and geophysical surveys and has assumed they are representative of the general topography, soil structure, subsurface conditions, obstructions, and other conditions pertaining to the performance of the Work and the Work site;

.8 materials and equipment of every kind and character furnished by the Contractor shall be subject to the inspection and approval of the Company Representative; and

.9 it shall be fully responsible for any act or omission of any person, directly or indirectly, employed or otherwise engaged by it.

15.6 **Contractor Covenants.** The Contractor covenants and agrees that:

.1 it is not aware of the existence of any relationship, family, business, contractual or otherwise, between itself, its principals, officers or employees and the Company, its directors, officers or employees;

.2 it will not perform any work for or enter into any contract with others that may conflict with its contractual, professional, equitable or other obligations to the Company without first obtaining the written approval of the Company; and

.3 it will not use for the benefit of others, or reveal to others any information or knowledge, not otherwise in the public domain, about the business and operation of the Company without first obtaining the written approval of the Company.

## 16 MISCELLANEOUS

16.1 **Entire Agreement.** The Contract embodies the entire agreement between the Company and the Contractor with respect to the Work and no other understandings or agreements, verbal or otherwise, exist.

16.2 **No Waiver.** Any failure by either party at any time to enforce the performance of any of the provisions of the Contract shall not constitute a waiver of such provisions and shall not affect the right of such at any time to avail itself of such remedies as it may have for any breaches of such provisions.

16.3 **Severability.** If any provisions of the Contract are invalid under any applicable statute or rule of law, they are, to that extent, omitted, but the remainder of the Contract shall continue to be binding upon the parties hereto.

16.4 **Applicable Law and Venue.** The Contract shall be governed by and construed and enforced in accordance with, the substantive laws of the State of New York, exclusive of conflicts of law provisions. The Contractor and the Company agree that any action or proceeding arising from or in connection with this Contract shall be brought in a state or federal court of appropriate jurisdiction in New York State. In the event of any litigation with respect to this Contract or any instrument or document executed and delivered in connection herewith, each party waives the right to a trial by jury.

16.5 **Assignability.** The Contractor shall not assign its interest in the Contract nor any monies to become due hereunder without the prior consent of the Company. All covenants and agreements herein contained shall extend to and be binding upon the successors and assigns of the Contractor and the Company.
The Contractor acknowledges that the Company intends to make a collateral assignment of the Contract to financial institutions in connection with a financing agreement and agrees that if financial institutions with a security interest in the Contract succeed to the interest of the Company by foreclosure or otherwise, the Contractor shall accord such financial institution the same rights as the Company hereunder.

16.6 **Accommodation of Company's Financing.** The Contractor acknowledges that the Contract is an integral part of the Company's financing agreements and agrees to make all reasonable efforts to assist with such financing, including meeting with potential lenders and technical consultants, and consenting to the assignment of the Contract for the benefit of the lenders. In the event of an assignment to Company lender(s), Contractor's obligations shall be no greater than its obligations to Company, and Contractor will be compensated for any costs associated with satisfying lender requirements which are over and above Company's requirements.

16.7 **Non-Recourse Obligations.** The Contractor understands and agrees that:

.1 it shall have no recourse against any partners in the Company and its sole recourse shall be against the Company and the Company's assets, irrespective of any failure to comply with applicable law or any provision of the Contract;

.2 no claim shall be made against any partners in the Company in connection with the Contract, except that the partners may be joined as nominal parties for the purpose of enforcing the Contractor's rights hereunder;

.3 it shall have no right to any claim against the Company for any capital contributions from any partner in the Company; and

.4 this representation is made expressly for the benefit of the partners in the Company.

16.8 **Notices.** Any notice or other communication provided for in the Contract shall be in writing to:

16.8.1 **Company Address.** The Company at

Suite 600
One Corporate Drive
Shelton, CT 06484

| | |
|---|---|
| Attention: | Mr. Dave Warman<br>Vice President, Engineering & Operations |
| Telephone # | (203) 925-7200 |
| Fax # | (203) 929-9501 |

and

16.8.2 **Contractor Address.** The Contractor at

2500 City West Boulevard
Suite 2200
Houston, Texas 77042-3097

| | |
|---|---|
| Attention: | Mr. George G. Reuter<br>Vice President, Business Development |
| Telephone # | (713) 361-2600 |
| Fax # | (713) 361-2691 |

16.8.3 **Delivery.** Such notice shall be deemed to have been properly given:

.1 in the case of delivery, when delivered to the party to whom it is addressed; or

.2 when given by telegram, telecopy or other similar means, at 9:00 a.m. local time on the next business day.

Either the Company or the Contractor may change its address by notice to the other.

16.9 **Conflicts.** The several parts of the Contract shall be taken together to explain each other and to make the whole consistent. Subject thereto, if any conflict exists between any parts of the Contract then such conflict shall be resolved by the Chief Engineer in his absolute discretion.

16.10 **Captions.** The captions and subheadings contained in the Contract are for convenience and reference only, and shall not affect the meaning or interpretation of the Contract.

16.11 **Time of the Essence.** Time shall in all respects be of the essence of the Contract, provided, however, that Company's remedy for any failure of Contractor to comply with the provisions of this Article 16.11 shall be limited to those remedies expressly stated in this Agreement, and any other remedies are expressly excluded.

16.12 **Amendment.** No amendment to this Contract shall be effective unless it is in writing and signed by the parties hereto.

16.13 **Costs of Enforcement.** Contractor agrees to pay the Company's costs, including reasonable attorney's fees, costs and expenses, arising out of any action against the Contractor to enforce the Company's rights under this Contract.

IN WITNESS WHEREOF the Company and the Contractor have executed this Construction Contract as of the day and year first above written.

**Iroquois Gas Transmission System, L.P.**
by its agent
**Iroquois Pipeline Operating Company**

____________________________________

____________________________________

Contractor's Tax I.D. No.:
76-0534878

**Horizon Offshore Contractors, Inc.**

____________________________________

Exhibit G

IRO/AE 00025

IROQ 0013301

CONFIDENTIAL

# SCHEDULE OF INSURANCE REQUIREMENTS

## 1 INSURANCE

1.2 **Insurance.** The Contractor and Company shall furnish and maintain insurance in accordance with this Schedule of Insurance Requirements.

1.3 **Definitions.** The following terms, when capitalized, shall have the meanings set out below when used in this Schedule of Insurance Requirements:

1.3.1 **Company's Insurance.** - the insurance set out in Section 3.

1.4 **Cooperation and Assistance to Insurance Inspectors and Loss Prevention Personnel.** The Contractor shall cooperate with and assist any and all insurance inspectors and technical personnel in their duties to investigate and establish loss prevention procedures and remedies at the Work Site.

1.5 **Accident Reports.** The Contractor shall immediately report orally all job related accidents to the Company's inspector and within five (5) days furnish the Company with a written accident report giving full details thereof.

## 2 CONTRACTOR'S INSURANCE

2.1 **Contractor's Insurance.** The Contractor shall prior to commencing the Work furnish and maintain, at its own expense the following insurance:

2.1.1 **Comprehensive Automobile Liability Insurance** with a combined single limit of not less than Ten Million Dollars ($10,000,000) each occurrence for bodily injury (including passenger hazard) and property damage. Such insurance shall cover all owned, non-owned and hired land motor vehicles, trailers or semi-trailers designed for travel on public roads, whether licensed or not (including any machinery or apparatus attached thereto) in accordance with the 1986 ISO definitions.

2.1.2 **Automobile Collision and Comprehensive Insurance** covering all owned, non-owned, and hired land motor vehicles, trailers or semi-trailers designed for travel on public roads, whether licensed or not (including any machinery or apparatus attached thereto) for physical damage to said units from collision and comprehensive perils. The Company may, at its sole discretion, waive the Contractor's obligation to maintain this insurance coverage, provided the Contractor shall waive all its rights of recovery against the Company in the event of loss or damage to the units in question.

2.1.3 **Contractor's Equipment Insurance** covering physical damage to all equipment (not otherwise insured, for example automobiles, trucks, marine hull and machinery, et cetera) to be used in the performance of the Work. Said insurance shall include loss to or damage of equipment below the surface of the water and transit, loading and unloading risks. The Company may, at its sole discretion, waive the Contractor's obligation to maintain this insurance coverage, provided the Contractor shall waive all its rights of recovery against the Company in the event of loss or damage to the Contractor's Equipment in question.