# Attachment 18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN THE MATTER OF HORIZON VESSELS, INC., AS OWNER, and HORIZON OFFSHORE CONTRACTORS, INC., HORIZON OFFSHORE, INC., and TEXAS OFFSHORE CONTRACTORS CORP., AS OWNERS, OPERATORS, OWNERS PRO HAC FICE, OF THE L/B GULF HORIZON, PRAYING FOR EXONERATION FROM OR LIMITATION OF LIABILITY REGARDING THE INCIDENT OF FEBRUARY 27, 2003

CIVIL ACTION NO. H-03-3280

ADMIRALTY RULE 9(h)

Plaintiffs.

## CLAIM OF IROQUOIS GAS TRANSMISSION SYSTEM, LP

Claimant IROQUOIS GAS TRANSMISSION SYSTEM, L.P. by its attorneys McLeod Powell Alexander & Apfell, hereby claims against petitioners in limitation Horizon Vessels, Inc., Horizon Offshore Contractors, Inc., Horizon Offshore, Inc., and Texas Offshore Contractors Corp. (hereafter collectively the "Horizon Group" or "Petitioners") as follows:

1. This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. Claimant Iroquois Gas Transmissions System, L.P. ("Iroquois") is a Delaware Limited Partnership with its principal place of business at Shelton, Connecticut.

IRO/AE 00786

3. On information and belief, at all relevant times the Horizon Group were and still are corporations organized and existing under the laws of the state of Delaware, having a place of business in Houston, Texas.

4. On information and belief, at all relevant times one or more companies in the Horizon Group, including Horizon Offshore Contractors, Inc. ("Horizon"), were and still are the owners and operators of the vessel L/B GULF HORIZON.

5. Iroquois is the owner of a 377-mile natural gas pipeline extending from the United States-Canadian border to Northport, Long Island, New York. The pipeline is operated by Iroquois' agent, Iroquois Pipeline Operating Company ("IPOC"), also headquartered in Shelton, Connecticut.

6. On April 12, 2002, Iroquois, through IPOC acting as agent for a disclosed principal, entered into a contract with Horizon whereby Horizon undertook as general contractor to construct a 35-mile long underwater extension to Iroquois' existing pipeline to cross Long Island Sound between Northport, Long Island and Hunts Point in the Bronx, New York (the "Contract"). The construction project is known as the Eastchester Extension.

7. The Contract obligated Horizon, among other things, to provide all labor, supervision, equipment and vessels necessary to construct the pipeline, and contained the following relevant provisions:

- Paragraph 11.1.3 provides that Horizon will indemnify and hold Iroquois harmless from all liabilities or damages for "any damage to property or any losses of any kind suffered by third parties" which are caused by the breach of Horizon's obligations under the Contract or "the negligence of [Horizon] or its Subcontractors in carrying out its responsibilities under this agreement".

- Paragraph 4.1 of the Contract requires Horizon to diligently perform the work after commencement and to acquire the necessary additional equipment, hire additional manpower and perform other acts necessary to avoid delay in the completion of the pipeline.

- Paragraph 13.1 "warrants" that Horizon's work shall be "new, free of defects in construction and workmanship and shall conform to the Final project plans and specifications and descriptions set forth herein and all other requirements of this Contract".

- Paragraph 14.2 requires Horizon to "do the work in a workmanlike manner by qualified, careful and efficient workers in strict conformity with the contract."

- Paragraph 8.1 requires Horizon to "reasonable care to properly maintain and operate the vessels under its control".

- Paragraph 10.4 provides that Horizon shall be fully responsible for any act or omission of its subcontractors.

- Paragraph 16.4 of the Contract provides that "the Contract shall be governed by and construed and enforced in accordance with the substantive laws of the State of New York, exclusive of conflicts of laws provisions" and further provides that any action or proceeding arising from or in connection with the Contract "shall be brought in a state or federal court of appropriate jurisdiction in New York State".

8. Horizon was to perform the contract in three stages. The first stage required Horizon to weld the sections of pipe together to form a continuous pipeline and lower that pipeline to the bottom of Long Island Sound along the specified route. The second stage of the Contract required Horizon, after all 35 miles of the pipeline was welded and resting on the seabed, to trench the sea bottom, place the pipe in the trench

255898.1

3

and then backfill the trench so that the pipe was buried below the sea bottom up to depths of 10 feet. The third stage required Horizon, among other things, to place concrete mattresses over the pipe where it crossed NYPA's cables and cover the pipeline between NYPA's cables with rock as protection.

9. Horizon commenced work under the Contract on or about November 6, 2002. To fulfill its obligations under the Contract, Horizon utilized the L/B GULF HORIZON, one of the vessels in its fleet. Horizon also subcontracted for the use of other vessels, including contracting with Cal Dive International for the use of Cal Dive's support vessel MR SONNY and with Don Jon Marine Co., Inc. and Weeks Marine, Inc. for the use of tugs to assist in the pipe-laying operations.

10. The Eastchester Extension is not yet completed, and at this time work on the project is continuing with Horizon as the general contractor.

## FIRST CLAIM—INDEMNIFICATION

11. On or about February 27, 2003, while performing work under the Contract, one or more of the L/B GULF HORIZON's anchors apparently snagged and damaged an underwater electric cable, which was part of the Y-49 cable system owned by the Power Authority of the State of New York ("NYPA"). Permanent repairs to the cable were performed in August-September 2003.

12. Iroquois had been required to obtain NYPA's prior consent to its pipeline crossing NYPA's cable. Pursuant to a Crossing Agreement dated October 30, 2002 (the

255898.1

4

"Crossing Agreement") NYPA consented to Iroquois' pipeline crossing over its cables in consideration of, among other things, Iroquois' agreement to hold NYPA harmless from all costs and expenses incurred as a result of damages to the Y-49 cables arising out of any acts or omissions by Iroquois or its contractors and subcontractors.

13. NYPA has placed Iroquois on notice that it intends to claim against Iroquois pursuant to the Crossing Agreement for all damages incurred by NYPA in connection with loss of use and repairs to its Y-49. The quantum of NYPA's claimed damages has not yet been specified.

14. The Long Island Power Authority ("LIPA"), a corporate municipal instrumentality of the State of New York and a primary user of the damaged cable's electrical transmissions capability, also has served notice on Iroquois that it intends to claim against Iroquois for its losses arising out of the loss of use of the Y-49 cable. The quantum of LIPA's claimed damages has not yet been specified.

15. In the event that NYPA, LIPA or any other party is found entitled to recover from Iroquois for some or all of their damages resulting from the damage to NYPA's Y-49 cable, then Iroquois is entitled to indemnification and/or contribution from Horizon and/or Horizon Group because the true cause of the loss resulted from Horizon's neglect, fault, reckless or intentional acts, breach of contract, breach of warranty and/or the unseaworthy conditions of the L/B GULF HORIZON or was due to the neglect, fault, reckless or intentional act, breach of contract and/or breach of warranty of a party for

255898.1

5

whose conduct Horizon and/or the Horizon Group is responsible. Such indemnification rights include all attorneys fees reasonably incurred in investigating and defending such third party claims.

16. Horizon is not entitled to the benefits or protections of the Shipowner's Limitation of Liability Act, 46 U.S.C. § 181 et seq. (the "Limitation Act") and Iroquois is not subject to Horizon's limitation proceeding with respect to this claim because Iroquois' claim is based on Horizon's personal contractual undertakings in the Contract, including Horizon's personal contractual undertaking to indemnify and hold Iroquois harmless from all such liability. Iroquois therefore is free to pursue this claim outside of the limitation proceeding and will be making an appropriate motion to permit it to do so in due course.

17. In the alternative, neither Horizon nor the Horizon Group is entitled to the benefits or protections of the Limitation Act because the casualty resulted from a cause that was within the privity and knowledge of Horizon and/or the Horizon Group.

## SECOND CLAIM—DAMAGES

18. After the damage to the Y-49 cable occurred, work on the Contract was immediately suspended while an investigation of the damage was conducted and temporary repairs were made.

19. The Federal Energy Regulatory Commission ("FERC") refused to permit the work to re-commence until FERC could be assured that no further damage to

255898.1

6

IRO/AE 00791

NYPA's cable or other cable crossings would occur. Work by the L/B GULF HORIZON remained suspended until April 15, 2003 when FERC gave the approval to recommence work.

20. In addition, as a result of the cable strike, NYPA refused to permit Iroquois to perform any further work in the area of its cables unless Iroquois agreed to use anchorless vessels. These vessels, which are constructed with a sophisticated propeller and thruster system that permits them to remain stationary while working, are rare and are substantially more expensive then other pipe lay barges that use conventional anchors.

21. As Horizon does not have an anchorless vessel in its fleet, Horizon was required to charter in such vessel, the Intrepid, at great expense to Iroquois, so Horizon could finish its obligations under the Contract for the work in the area of NYPA's cables. The Intrepid began work in the area of NYPA's cables on or about September 1, 2003 and finished on or about October 8, 2003.

22. The expense for the delays to the project due to the cable strike, the additional expense related to chartering the Intrepid vessel to complete the construction, and all other losses in connection therewith were directly caused by the neglect, fault, reckless or intentional act, breach of contract and/or breach of warranty of Horizon and/or the Horizon Group, or a party for whom Horizon is responsible, and/or the unseaworthy condition of the L/B GULF HORIZON, and Iroquois is entitled to compensation therefor.

23. The damages suffered by Iroquois in this regard, as closely as can be presently determined, is $8,900,000.

24. Horizon is not entitled to the benefits or protections of the Limitation Act and Iroquois is not subject to Horizon's limitation proceeding with respect to this claim because Iroquois' claim is based on Horizon's personal contractual undertakings in the Contract. Iroquois therefore is free to pursue this claim outside of the limitation proceeding and will be making an appropriate motion to permit it to do so in due course.

25. In the alternative, neither the Horizon nor the Horizon Group is entitled to the benefits or protections of the Limitation Act because the casualty resulted from a cause that was within the privity or knowledge of Horizon and/or the Horizon Group.

## THIRD CLAIM—INDEMNIFICATION
(submitted under reservation)

26. Iroquois respectfully submits that the claim set forth below, which is unrelated to the Y-49 cable strike, is outside the scope of Horizon's limitation proceeding and not subject to the limitation injunction. Accordingly, Iroquois is entitled to pursue this claim in the forum of its choice, and Petitioners have no rights under the Limitation Act with respect to such claim. Iroquois asserts this claim here as a protective measure in the event that Horizon contends that this limitation proceeding applies to such claim and the Court so rules.

255898.1

8

27. The route for the pipeline was carefully mapped with a permitted construction corridor. Underwater archeological sites within the corridor were identified and restricted zones were placed around them. These sites are protected, and oversight of that protection is vested in New York State Historic Preservation Office (NYSHPO).

28. The Contract provided that areas outside the construction corridor and areas within the restricted zones (hereinafter collectively "exclusionary zones") were not to be violated, and Horizon was provided with the exact location of the exclusionary zones and was instructed to avoid dropping its anchors in or dragging its anchors through such exclusionary zones.

29. Notwithstanding these instructions, preliminary indications are that Horizon and/or the L/B GULF HORIZON may have violated exclusionary zones by dropping anchors on or dragging anchors through them. Iroquois has notified NYSHPO of this possibility and investigation is continuing to determine whether any damage to the archeological sites within those zones was in fact sustained.

30. In the event that any damage is found to have occurred to any archeological sites in Long Island Sound or the East River and any party is found entitled to recover from Iroquois for such damage, then Iroquois is entitled to indemnification and/or contribution from Horizon and/or the Horizon Group because the true cause of the loss resulted from Horizon's neglect, fault, reckless or intentional acts, breach of contract, breach of warranty and/or the unseaworthy condition of the L/B GULF HORIZON, or

was due to the neglect, fault, reckless or intentional act, breach of contract and/or breach of warranty of a party for whose conduct Horizon is responsible.

31. Horizon is not entitled to the benefits or protections of the Limitation Act and Iroquois is not subject to Horizon's limitation proceeding with respect to this claim because Iroquois' claim is based on Horizon's personal contractual obligations in the Contract, including Horizon's personal contractual undertaking to indemnify Iroquois and hold Iroquois harmless for all such liability. Iroquois thus is free to pursue these claims outside of this limitation proceeding and will be making an appropriate motion to permit it to do so in due course.

32. In the alternative, neither Horizon nor any of the Horizon Group is entitled to the benefits or protections under the Limitation Act because any damage to the archeological sites resulted from a cause which was within their privity or knowledge.

## FOURTH CLAIM—BREACH OF CONTRACT
### (submitted under reservation)

33. Iroquois respectfully submits that the claims set forth below, which are unrelated to the Y-49 cable strike, are outside the scope of Horizon's limitation proceeding and not subject to the limitation injunction. Accordingly, Iroquois is entitled to pursue those claims in the forum of its choice, and Petitioners have no rights under the Limitation Act with respect to such claims. Iroquois asserts these claims here as a protective measure in the event that Horizon later contends that this limitation proceeding applies to such claims and the Court so rules.

255898.1

10

IRO/AE 00795

34. Horizon has committed numerous breaches of the Contract during the performance of its obligations thereunder, unrelated to the Y-49 cable strike and any damage to archeological sites, which have resulted in substantial delay and much additional expense to Iroquois to complete the project. Iroquois' claims for such breaches include the following:

### Misrepresentation, Deficient Performance and Delay

A. Horizon bid the job and was awarded the Contract based on its representation that it would perform about 225 welds per day. In actuality, Horizon only performed an average of 110 welds per day from commencement of work in November 2002 through completion of the welding in January 2003. Due to Horizon's misrepresentation and/or failure to meets its represented work performance, the production effort took twice as long as forecast.

B. Horizon's production procedures with respect the welding and laying of the pipe were grossly deficient, which caused extensive barge downtime and additional expense to Iroquois. These deficiencies included, among others, the failure to properly prepare the pipe for welding and the employment of inexperienced welders whose employment was later terminated.

C. As a result of the foregoing, Iroquois has suffered damages in the amount of $4,836,250, as closely as can be estimated at this time.

## Damage to Pipeline and Liability for Corrective Actions

D. The Contract required Horizon to cover the NYPA Y-49 cables with concrete mattresses before laying Iroquois' pipe over the cables. This appears either to not have been done at all or not to have been done correctly.

E. The Contract further required that, after Iroquois' pipe was laid over NYPA's cables, the pipe would be covered with concrete mattresses. In addition, the pipeline in the areas between NYPA's cables would be covered with rock as a protective measure.

F. During February 2003, Horizon's subcontractor Weeks, acting under Horizon's supervision, through breach of contract and lack of due care, placed 4,500 tons of rock on Iroquois' pipeline between NYPA's No. 1 and No. 2 cables, when the Contract estimate of the rock to be used in that area was approximately 1,000 tons.

G. As a result of the above actions, the Iroquois pipe has been damaged and needs repairs. In addition, the Iroquois pipeline and/or the concrete mattresses have been pushed down and closer to the NYPA cables than permitted under the Crossing Agreement, and NYPA has demanded that Iroquois take corrective action to rectify the situation to avoid damage to its cables.

H. The expense required for the corrective action required by NYPA and to repair to Iroquois' pipeline is estimated to be approximately $24,000,000.

### Subcontractor Negligence

I.  On or about December 9, 2002, while Horizon's subcontractor Tom Allen was pulling the pipe from the Hunts Points Horizontal Directorial Drill Hole, due to the subcontractor's negligence and lack of proper equipment and/or procedures, the pipe became stuck and the drill string parted. This made it necessary to extract the pipe and drill a new hole. In addition, the L/B GULF HORIZON was required to leave its pipe lay work in Long Island Sound and proceed to Hunts Point to assist with the extraction of the stuck pipe.

J.  Horizon is responsible for the negligence of its subcontractors and thus is liable to Iroquois for the costs of extracting the pipe and drilling a new hole, as well as for delays to the pipe laying operations caused by the temporary redeployment of the L/B GULF HORIZON, the costs of which, as closely as can be presently determined, total $15,279,043.

35. The events and damages described in paragraphs 34A through 34J above were directly caused by Horizon's breach of its obligations under the Contract, including but not limited to the following warranties/obligations: (i) Horizon's failure to diligently perform the work after commencement of the job and Horizon's failure to avoid delay in the completion of the pipeline as required by the Contract; (ii) Horizon's breach of its contractual warranty that its work should be of good quality and free of defects in construction and workmanship and its obligations to do work in a workmanlike manner by "qualified careful and efficient workers;" (iii) Horizon's breach of its contractual

obligations to use reasonable care to properly maintain and operate the vessels under its control and (iv) Horizon's breach of its contractual undertaking to be fully liable for any acts or omissions of its subcontractors.

36. As a result of the above said breaches of contract and/or negligent acts of Horizon, Iroquois has suffered damages as closely as can be presently approximated, in the total amount of $44,115,293 as will be more fully and particularly demonstrated at the time of trial.

37. Horizon is not entitled to the benefits or protections of the Limitation Act and Iroquois is not subject to Horizon's limitation proceeding with respect to the claims set forth in paragraphs 34A through 34J because Iroquois' claims are based on Horizon's personal contractual obligations contained in the Contract. Iroquois thus is free to pursue these claims outside of this limitation proceeding and will be making an appropriate motion to permit it do so in due course.

38. In the alternative, Horizon is not entitled to the benefits or protections under the Limitation Act because the damages complained of resulted from a cause which was within the privity or knowledge of Horizon.

## RESERVATION OF RIGHTS

39. Iroquois' contractual relationship with Horizon is ongoing, and the Eastchester Extension Project is not yet completed. In addition, Petitioners' Complaint is vague, indefinite and does not define the voyage for which Petitioners seek exoneration

or limitation. Iroquois therefore reserves the right to supplement this claim as events and additional facts may warrant, including the right to modify or withdrawal any of the claims asserted herein and/or to add new claims by Iroquois and/or IPOC.

WHEREFORE, claimant Iroquois prays as follows:

a. That Petitioner's Complaint for Exoneration from or Limitation of Liability be dismissed in its entirety as to Iroquois based on the "personal contract doctrine" and/or that the limitation injunction be lifted to permit Iroquois to pursue its personal contract claims in the forum of its choice; or

b. In the alternative, that Petitioners' Complaint for Exoneration From or Limitation of Liability be denied in full and that Iroquois' claims for indemnity and breach of contract be granted in full; and

c. That Iroquois be granted such other and further relief as may be just and appropriate.

25589R.1

15

IRO/AE 00800

Dated:     Houston, Texas
November 12, 2003

By: _____

Michael B. Hughes
Attorney in Charge for Claimant
Iroquois Gas Transmission Systems, L.P.
Texas State Bar # 10227200
P.O. Box 629
Houston, Texas
409-795-2018 (phone)
409-726-1155 (fax)

Of Counsel:

Richard V. Singleton
Healy & Baillie, LLP
29 Broadway
New York, NY 10006
(212) 943-3980