# Attachment 19

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN THE MATTER OF HORIZON §
VESSELS, INC., AS OWNER and §
HORIZON OFFSHORE §
CONTRACTORS, INC., HORIZON §
OFFSHORE, INC., AND TEXAS §           C. A. NO. H-03-3280
OFFSHORE CONTRACTORS CORP., §          ADMIRALTY
AS OWNERS, OPERATORS, OWNERS §
PRO HAC VICE, OF THE L/B GULF §
HORIZON, PRAYING FOR §
EXONERATION FROM OR §
LIMITATION OF LIABILITY §
REGARDING THE INCIDENT OF §
FEBRUARY 27, 2003 §

## CROSS-CLAIMS OF LIMITATION DEFENDANTS/CROSS-CLAIMANTS, THE POWER AUTHORITY OF THE STATE OF NEW YORK, THE LONG ISLAND LIGHTING COMPANY D/B/A LIPA, AND FACTORY MUTUAL INSURANCE COMPANY

Limitation Defendants/Cross-Claimants, the Power Authority of the State of New York (hereinafter referred to as "NYPA"), the Long Island Lighting Company d/b/a/ LIPA, a wholly-owned subsidiary of the Long Island Power Authority (hereinafter referred to as "LIPA"), and Factory Mutual Insurance Company (FM Global) (hereinafter referred to as "FMIC") (hereinafter collectively referred to as "Utility Claimants"), by and through undersigned counsel, allege cross-claims against: Iroquois Gas Transmission System, L.P. (hereinafter referred to as "Iroquois") and Thales GeoSolutions, Inc., (hereinafter referred to as "Thales"), upon information and belief as follows:

### JURISDICTION

1.      This Court has jurisdiction of the subject matter of the within action under 28 U.S.C. §§ 1332, 1333, 1367; and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims, and the claims herein exceed $75,000.

IRO/AE 00387

2.      Horizon Vessels, Inc., as owner, and Horizon Offshore Contractors, Inc., Horizon Offshore, Inc. and Texas Offshore Contractors Corp., as owners, operators, owners *pro hac vice*, of the L/B GULF HORIZON (collectively "Horizon") have filed a Limitation Complaint in this Court, Civ. Action No. H-03-3280 02/6397 (SL)(NKJ). A copy of the Limitation Complaint and Amended Complaint are attached as Exhibit A.

3.      Utility Claimants cross-claims come within the admiralty and maritime jurisdiction of the federal court, as hereinafter more fully appears and are admiralty and maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

4.      The cross-claims are permitted by Federal Rule of Civil Procedure 13(g), as the claims against Iroquois and Thales arise from the same transaction and/or occurrence which constitute the subject matter of Horizon's limitation proceeding.

## THE PARTIES

5.      NYPA is a corporate municipal instrumentality of the State of New York created by the Legislature of the State by Chapter 772 of the laws of 1931, as amended, Public Authorities Law § 1002. NYPA is a body corporate and politic and a political subdivision of the State of New York, exercising essential governmental and public powers. NYPA's principal office is in Albany, New York.

6.      LIPA is a business corporation organized under the laws of the State of New York, and is a wholly-owned subsidiary of the Long Island Power Authority (hereinafter referred to as the "Authority"). The Authority is a corporate municipal instrumentality of the State of New York which is a body corporate and politic and a political subdivision of the State of New York, exercising essential governmental and public powers. The Authority was created by the Laws of 1986, Chapter

-2-

IRO/AE 00388

517, §1, Public Authorities Law § 1020-c. The Authority's executive offices are located in Uniondale, New York.

7.    FMIC is a corporation duly organized and existing under and by virtue of the laws of the State of Rhode Island, with a principal place of business in Johnston, Rhode Island. At all times relevant to this action, FMIC was the first party physical damage insurer of the Y-49 Cable System, described below.

8.    Iroquois, upon information and belief, was and is a limited partnership formed under the laws of the State of Delaware having a principal place of business in Connecticut.

9.    Thales, upon information and belief, was and is a corporation organized and existing under the laws of the State of Delaware having a principal place of business at Houston, Texas.

## FACTUAL ALLEGATIONS

10.    On or about February 27, 2003, NYPA was the owner of four parallel, self-contained, fluid filled, 345,000 volt cables (Cables Nos. 1- 4) buried beneath Long Island Sound (hereinafter referred to as the "Y-49 Cable System").

11.    The Self-Contained Fluid Filled ("SCFF") portion of the Y-49 Cable System runs from a transition station in the City of New Rochelle, Westchester County, New York to a transition station in the Town of North Hempstead, Nassau County, New York. On or about February 27, 2003, the Y-49 Cable System was in active use and operation.

12.    On or about February 27, 2003, the Y-49 Cable System was operated and managed by LIPA, acting in conjunction with its subcontractor, KeySpan Electric Services, LLC ("KeySpan"), a company located in Hicksville, New York.  LIPA is the primary or dedicated user of the Y-49 Cable System's electrical transmission capacity.

IRO/AE 00389

13.    The Y-49 Cable System was prominently marked on all relevant navigation charts and its location was well known to all mariners or other users of the Long Island Sound.

14.    On or about February 27, 2003, Iroquois was engaged in the construction of a 33 mile extension to the interstate natural gas pipeline extending from the United States-Canadian border to Eastchester, New York, sometimes referred to as the Eastchester Expansion Project (hereinafter "Iroquois Pipeline Project"). The Iroquois Pipeline Project, in large part, was to be buried in the Long Island Sound.

15.    Iroquois contracted with Horizon as its principal or general contractor on the Iroquois Pipeline Project.

16.    Iroquois and/or Horizon contracted with various subcontractors, including Thales, to perform pipeline construction, surveying and other marine related services on the Iroquois Pipeline Project.

17.    As the Iroquois Pipeline Project, by its design and planned route, was to cross over the buried Y-49 Cable System, Iroquois and NYPA reached a contractual understanding of their respective rights and duties with respect to the natural gas pipeline crossing over the Y-49 Cable System (the contract hereinafter is referred to as the "Crossing Agreement"). As part of the obligations of the Crossing Agreement, prior to any construction of the Iroquois Pipeline Project, NYPA provided "as built" information to Iroquois which depicted the locations of the SCFF portions of the Y-49 Cable System. In the Crossing Agreement, Iroquois and NYPA recognized that the electrical capacity of the Y-49 Cable System is primarily dedicated to LIPA.

18.    The Crossing Agreement necessarily and explicitly recognized that Iroquois and its contractors and subcontractors were required to do their work in a manner so as not to harm or damage the Y-49 Cable System.

-4-

IRO/AE 00390

19.    The Crossing Agreement also explicitly contained indemnification provisions whereby Iroquois agreed to wholly and fully indemnify and hold harmless NYPA against any costs and expenses resulting from damage to the Y-49 Cable.

20.    On or about February 27, 2003, as part of the Iroquois Pipeline Project, Horizon was operating the LB GULF HORIZON with one or more of its anchors deployed in the immediate vicinity of the Y-49 Cable System.  At the time, Iroquois's contractor Horizon was or should have been aware of the location and existence of the Y-49 Cable System.

21.    Horizon and the L/B GULF HORIZON were working as described above pursuant to instructions from Iroquois and/or information or navigational guidance from Thales. At the time, Iroquois and Thales were aware or should have been aware of the existence and location of the Y-49 Cable System.

22.    On February 27, 2003, at about 21:41 hours, the feeder for the Y-49 Cable System tripped offline. Immediate indications were that Cable No. 4 of the Y-49 Cable System had experienced a phase to ground fault.  Given Iroquois' activity in the area, NYPA surmised this situation was a result of physical impact on Cable No. 4 as subsequent investigation established.

23.    Informed of the impact damage to Cable No. 4, NYPA, pursuant to the terms of the Crossing Agreement, instructed Iroquois to stop all work aboard the L/B GULF HORIZON, and to stop work on the Iroquois Pipeline.

24.    The Federal Energy Regulatory Commission and United States Coast Guard were notified promptly. Emergency response personnel were summoned to investigate.  It soon was discovered that an anchor deployed by the LB GULF HORIZON had dragged against and/or across Cable No. 4 of the Y-49 Cable. This contact caused severe damage, including a cable rupture, and required NYPA to remove the entire Y-49 Cable System from service.

IRO/AE 00391

25.    Pursuant to agreements between NYPA and LIPA, NYPA promptly requested LIPA to implement its emergency response plan, whereby maintenance subcontractor KeySpan would monitor, supervise and effect temporary repairs to Cable No. 4 of the Y-49 Cable System. Further investigation revealed that the bottom of the sound had been disturbed where the LB GULF HORIZON's anchor CP1 dragged against and/or across Cable No. 4.

26.    Pirelli Construction Services, Inc. (hereinafter referred to as "Pirelli") the original designer and manufacturer of the Y-49 Cable System, was awarded an emergency contract to recover and cap the damaged Cable No. 4 at the impact point, near the north shore of Long Island Sound. This work and further testing and inspection having been accomplished, the three remaining undamaged cables of the Y-49 Cable System were returned to service on March 8, 2003.

27.    During the following months, with due notice to Iroquois, Thales and Horizon, NYPA prepared a Request for Proposal(s) to distribute to pre-qualified marine and cable contractors. This process resulted in award of a permanent repair contract to Pirelli. Permanent repair of Cable No. 4 of the Y-49 Cable System was effected in August and September of 2003.

28.    As a result of the negligent, grossly negligent, reckless, careless, willful and wanton actions and/or omissions of Iroquois, in conjunction with Horizon and Thales, in the manner, method, navigation and operation of the LB GULF HORIZON, and of its masters, officers, and crews, and their servants, agents, employees, contractors and consultants, and the unseaworthiness of said vessel, the Cable No. 4 of the Y-49 Cable System was severely damaged and/or destroyed.

29.    Cable No. 4 of the Y-49 Cable System did not in any way obstruct or interfere with navigation, and was lawfully placed and existing in accordance with and pursuant to the terms of permits issued for that purpose by the appropriate authorities.

IRO/AE 00392

30.     Up until the aforesaid cable severance on or about February 27, 2003, the Y-49 Cable System had been in active use and operation by NYPA and LIPA providing a conduit for electrical transmission between the electrical systems in Westchester and Nassau Counties, New York.

31.     The conduct of Iroquois, Horizon, and Thales in causing the rupture and destruction of Cable No. 4 of the Y-49 Cable System resulted in, *inter alia*, a loss of service to the Y-49 Cable System and the disruption and degradation of reliability to NYPA's and LIPA's electrical operating systems.

32.     At all times relevant to this matter, FMIC provided first-party physical damage insurance to NYPA for the Y-49 Cable System subject to the terms, conditions, exclusions and limitations of Policy No. LB664.

33.     Pursuant to the terms of Policy No. LB457, FMIC has paid NYPA $10,000,000 to indemnify NYPA in part for the cost of repairing damage to the Y-49 Cable System caused by the acts or omissions of Iroquois, Horizon and/or Thales.

34.     By virtue of its payment to NYPA under the terms of Policy No. LB664, FMIC is legally and equitably subrogated to the extent of its payment to the rights, claims, and causes of action that NYPA has, whether in contract, tort or otherwise, against third parties for damage to the Y-49 Cable System including rights, claims or causes of action against Iroquois, Horizon and/or Thales.

## AS AND FOR FIRST COUNT
## (INDEMNIFICATION AGAINST IROQUOIS)

35.     Utility Claimants repeat, reallege, and incorporate by reference the allegations of Paragraphs 1-34 as if fully set forth herein.

IRO/AE 00393

36.     Article III (D) of the Crossing Agreement entered into between NYPA and Iroquois

provides:

> D. Iroquois Gas shall defend, indemnify and hold harmless the Grantee [NYPA] from and against any and all costs and expenses incurred as a result of damage to the Y-49 Cable arising out of or connected with the negligence, acts, omissions or willful misconduct of Iroquois Gas, its contractors, subcontractors, agents and employees in connection with the Work.

37.     Article III (G) of the Crossing Agreement provides:

> In the event that the Y-49 Cable is damaged or rendered inoperable, during the Work, and such damage or inoperability arises out of the negligence, acts, omissions or willful misconduct of Iroquois Gas, its contractors, subcontractors, agents or employees: (i) Iroquois Gas shall pay all costs and expenses to repair and restore the Y-49 Cable to the operational status as existed before the damage or rendering of inoperability; and (ii) the Grantee shall make arrangements for and provide, at Iroquois Gas' sole cost and expense, equivalent replacement electrical capacity during the period the Y-49 Cable is inoperable....

38.     The damage that occurred to the Y-49 Cable System on or about February 27, 2004, including the rupturing and complete destruction of a segment of Cable No. 4, arose out of or was connected with the negligence, acts, omissions, or willful misconduct of Iroquois, its contractors, subcontractors, agents, or employees in connection with the Iroquois Pipeline Project.

39.     Under the terms of the Crossing Agreement, Iroquois is liable to and bound to indemnify NYPA, FMIC, as NYPA's subrogee, and LIPA, as an intended third-party beneficiary of the Crossing Agreement, in whole for any and all damages, costs and expenses as a result of the ruptured Y-49 Cable.

40.     NYPA, FMIC and LIPA have already incurred substantial losses, costs and expenses for which Iroquois has refused to indemnify them, in breach of the Crossing Agreement, despite due demand.

IRO/AE 00394

41.    More specifically, NYPA, FMIC and LIPA have incurred substantial costs and expenses to investigate the damages to the Y-49 Cable System, to secure the damaged Y-49 Cable System, and to restore the related electrical operating systems including, *inter alia*, hiring outside contractors (including attorneys and other experts and consultants), conducting diving inspections, expenses for emergency response measures, engineering work, and the supervision and planning for the temporary and permanent repairs to Cable No. 4 of the Y-49 Cable System, resulting in damages, costs and expenses, which, so nearly as can be estimated at this time, are in excess of $18,000,000.

## AS AND FOR SECOND COUNT
### (NEGLIGENCE AGAINST IROQUOIS)

42.    Utility Claimants repeat, reallege, and incorporate by reference the allegations of Paragraphs 1-41 as if fully set forth herein.

43.    Iroquois owed a duty to Utility Claimants to perform its construction activities with reasonable care and diligence and also to oversee its contractors to ensure they acted in a prudent manner.

44.    Iroquois knew or should have known based on the service in which the LB GULF HORIZON was involved that special supervision and care was necessary to ensure all actions were undertaken in a safe, coordinated, and prudent manner.

45.    Iroquois breached its duty by failing to exercise reasonable care, *inter alia*, in monitoring, supervising and conducting the operations of the LB GULF HORIZON in a safe manner.

46.    Iroquois breached its duty by failing to exercise reasonable care, *inter alia*, in monitoring and supervising the work of its contractors and sub-contractors.

47.    Iroquois's breach of its duties of reasonable care were the proximate cause of the damages and harm suffered by Utility Claimants.

IRO/AE 00395

48.    By virtue of the above, Iroquois violated the General Maritime Law of the United States and other applicable laws. Said violations were a direct and proximate cause of the damages suffered by Utility Claimants.

49.    As a result of the foregoing, Utility Claimants incurred substantial costs and expenses to investigate the damages to the Y-49 Cable System, to secure the damaged Y-49 Cable System, and to restore the related electrical operating systems including, *inter alia*, hiring outside contractors, conducting diving inspections, expenses for emergency response measures, engineering work, and the supervision and planning for the temporary and permanent repairs to Cable No. 4 of the Y-49 Cable System. In summary, Utility Claimants have suffered property damage to the Y-49 Cable System, repair costs and other expenditures all caused by Iroquois's negligence, lack of due care, and reckless and grossly negligent conduct resulting in damages which, so nearly as can be estimated at this time, are in excess of $18,000,000.

50.    LIPA required the use and service of the Y-49 Cable System in order to meet certain New York Independent System Operator ("NYISO") requirements. As a result of Iroquois's negligence, lack of due care, and reckless and grossly negligent conduct, LIPA has suffered congestion and rent shortfalls and related damages, during the period the Y-49 Cable System was out of service and/or inoperable. Such damages currently are estimated in excess of $445,000.

## AS AND FOR THIRD COUNT
## (NEGLIGENCE AGAINST THALES)

51.    Utility Claimants repeat, reallege, and incorporate by reference the allegations of Paragraphs 1-50 as if fully set forth herein.

IRO/AE 00396

52.     Thales owed a duty to Utility Claimants to perform its surveying work with reasonable care and diligence so as to avoid any harm to underwater objects, like the Y-49 Cable System, which Thales failed to do.

53.     Thales knew or should have known based on the layout of the Long Island Sound that the LB GULF HORIZON was near underwater objects, like the Y-49 Cable System, and that the vessel and its anchor should carefully steer clear of said object while performing its pipe-laying duties.

54.     Thales breached its duty of reasonable care owed to Utility Claimants by allowing Iroquois and/or Horizon to perform their duties in a negligent manner.

55.     Thales' breach of its duties of reasonable care were the proximate cause of the damages and harm suffered by Utility Claimants.

56.     By virtue of the above, Thales violated the common law, General Maritime and Admiralty laws of the United States and other applicable laws.  Said violations were a direct and proximate cause of the damages suffered by Utility Claimants.

57.     As a result of the foregoing, Utility Claimants incurred substantial costs and expenses to investigate the damages to the Y-49 Cable System, to secure the damaged Y-49 Cable System, and to restore the related electrical operating systems including, *inter alia*, hiring outside contractors, conducting diving inspections, expenses for emergency response measures, engineering work, and the supervision and planning for the temporary and permanent repairs to Cable No. 4 of the Y-49 Cable System. In summary, Utility Claimants have suffered property damage to the Y-49 Cable System, repair costs and other expenditures all caused by Thales' negligence, lack of due care, and reckless and grossly negligent conduct resulting in damages which, so nearly as can be estimated at this time, are in excess of $18,000,000.

-11-

IRO/AE 00397

58.    LIPA required the use and service of the Y-49 Cable System in order to meet certain NYISO requirements. As a result of Thales' negligence, lack of due care, and reckless and grossly negligent conduct, LIPA has suffered congestion and rent shortfalls and related damages, during the period the Y-49 Cable System was out of service and/or inoperable. Such damages currently are estimated in excess of $445,000.

**WHEREFORE**, Utility Claimants demand judgment as follows:

1. .    As to the First Count: that judgment be entered against Iroquois for Utility Claimants' damages, costs and expenses (including attorneys' fees and disbursements) as may be finally determined by this Court together with interest and (legal) costs;

2.    As to the Second Count:  that judgment be entered against Iroquois for Utility Claimants' damages as may be finally determined by this Court together with interest and costs;

3.    As to the Third Count: that judgment be entered against Thales for Utility Claimants' damages as may be finally determined by this Court together with interest and costs; and,

4.    That the Court grant such other and further relief as may be just and proper in the circumstances.

Respectfully submitted,

By: _____
       Mark Cohen
       State Bar No. 04508395
       Federal Bar No. 2807
       Richard L. Gorman
       State Bar No. 00784155
       Federal I.D. No. 15685
       1010 Lamar Street, Suite 1000
       Houston, Texas 77002-6314
       Telephone: (713) 224-0628
       Facsimile: (713) 224-7487

IRO/AE 00398

Attorneys-in-Charge for
Limitation Defendants/Cross-Claimants,
The Power Authority of the State of New York,
the Long Island Lighting Company d/b/a
LIPA, and Factory Mutual Insurance
Company (FM Global)

James H. Hohenstein
Vincent Foley
Holland & Knight LLP
195 Broadway
New York, New York 10007
Telephone: (212) 513-3200
Telefax: (212) 385-9010

    - and -

Robert F. Cossolini
Robert B. Meola
Budd Larner
150 John F. Kennedy Parkway, 3rd Floor
Short Hills, NJ 07078
Telephone: (973) 315-4415
Telefax: (973) 379-7734

OF COUNSEL:

-13-

IRO/AE 00399

## CERTIFICATE OF SERVICE

I hereby certify that on the **21st** day of July 2004, a true and correct copy of the foregoing was sent to the following:

Mr. Daryl G. Dursum
Adams and Reese LLP
4400 One Houston Center
1221 McKinney
Houston, Texas 77010
*Hand Delivery*

Mr. Charles A. Cerise, Jr.
Mr. Edwin C. Lazier
Adams and Reese LLP
One Shell Square
701 Poydras, Suite 4500
New Orleans, Louisiana 70139
*Overnight Delivery*

Mr. Richard V. Singleton
Healy & Baillie, LLP
61 Broadway, 32nd Floor
New York, New York 10006-2701
*Overnight Delivery*

Mr. John M. Woods
Mr. John P. Doherty
Thacher Proffitt & Wood, L.L.P.
Two World Financial Center
New York, New York 10281
*Overnight Delivery*

Mr. Michael B. Hughes
McLeod, Alexander, Powel & Apffel, P.C.
802 Rosenberg
Post Office Box 629
Galveston, Texas 77553-0629
*Overnight Delivery*

Mr. R. Lawrence Macon
Akin, Gump, Strauss, Hauer & Feld, L.L.P.
300 Convent Street, Suite 1500
San Antonio, Texas 78205-3732
*Overnight Delivery*

Of Cohen, Gorman & Putnam, L.L.P.

01182/pleadings/cross-claims.07/21/04

-14-

IRO/AE 00400