DONOVAN PARRY McDERMOTT & RADZIK
Edward C. Radzik (ER-2473)
Carolyn Elizabeth Meers (CM-1464)
Attorneys for Defendants, Lloyd's Underwriters
Wall Street Plaza
88 Pine Street - 21st Floor
New York, NY 10005-1801
(212) 376-6400

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X

IROQUOIS GAS TRANSMISSION                        **ECF CASE**
SYSTEM L.P.,

                                Plaintiff,        05 CV 2149 (JSR)

        - against -

ASSOCIATED ELECTRIC & GAS
INSURANCE SERVICES LTD.,
Hamilton, Bermuda; CERTAIN
UNDERWRITERS AT LLOYD'S; AON
RISK SERVICES OF TEXAS, INC.; and
AMERICAN HOME ASSURANCE CO.,

                                Defendants.
--------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS, LLOYD'S UNDERWRITERS', MOTION FOR SUMMARY JUDGMENT FOR LACK OF NOTICE

## Table of Contents

Table of Contents ............................................................................................................. i

Table of Authorities ........................................................................................................ ii

Preliminary Statement ..................................................................................................... 1

Statement of Facts ........................................................................................................... 1

Statement of Issues .......................................................................................................... 3

Argument .......................................................................................................................... 4

I.     Choice of Law – The Lloyd's Policy Must be Construed Pursuant to
New York Law ........................................................................................................ 4

a.     Prejudice Requirement: New York v. Texas ...................................................... 5

b.     New York and Federal Choice of Law Rules Apply ......................................... 6

c.     Any Coverage Afforded Iroquois Under the Lloyd's Policy Must
be Construed in Accordance with New York Law ........................................... 8

II.     Iroquois Is Precluded From Claiming Coverage Under the
Lloyd's Policy Due to Its Unreasonable Failure to Notify
Lloyd's Underwriters of the Incident Giving Rise to its Claim
for Coverage ........................................................................................................ 12

a.     The "No Prejudice" Rule ................................................................................. 12

b.     Iroquois Has No Excuse for Its Failure to Provide Notice ............................ 15

c.     Lloyd's Underwriters are Entitled to Summary Judgment
Dismissing Iroquois' Claim for Coverage as an Additional
Insured Under the Lloyd's Policy .................................................................... 22

III.     Lloyd's Underwriters Did Not, and Could Not, Waive the Defense of
Late Notice ........................................................................................................ 23

IV.     Iroquois' Failure to Meet the Notice Requirement
Was Prejudicial to Lloyd's Underwriters ........................................................ 23

Conclusion ..................................................................................................................... 24

## Table of Authorities

**Federal Cases:**

*237 Park Investors v. Royal and Son Alliance*, 2004 U.S. Dist. LEXIS 3132
(S.D.N.Y. 2004) ................................................................................................ 21

*Advani Enters. v. Underwriters at Lloyds*, 140 F.3d 157 (2d Cir. 1998) ...................... 7

*Agway, Inc. v. Travelers Indem. Co.*, 1993 U.S. Dist. LEXIS 21092
(N.D.N.Y. 1993) ......................................................................................... 12

Am. Ins. Co. v. Fairchild Ind., Inc., 56 F.3d 435 (2d Cir. 1995) ................................. 14

*AXA Marine v. Seajet Indus. Inc.*, 84 F.3d 622 (2d Cir. 1996) ............................... 12, 13

*Christiania Gen. Ins. Corp. v. Great Am. Ins. Co.*, 979 F.2d 268
(2d Cir. 1992) ............................................................................................ 14

*Const. Reins. Corp. v. Stonewall Ins. Co.*, 980 F. Supp. 124 (S.D.N.Y. 1997) ...................... 14, 22

*Green Door Realty Corp. v. TIG Ins. Co.*, 329 F.3d 282 (2d Cir. 2003) ............................ 18, 19

*Globalnet Fin. Com. v. Frank Crystal & Co.*, 2004 U.S. Dist. LEXIS 13731
(S.D.N.Y. July 22, 2004) ................................................................................ 11

*Hanson Production Co. v. Am. Ins. Co.*, 108 F.3d 627 (5th Cir. 1997) ......................... 5

*Howard Fuel v. Lloyd's Underwriters*, 588 F. Supp. 1103 (S.D.N.Y. 1984) ................ 4, 5, 12, 14

*Int'l Multifoods Corp. v. Commercial Union Ins.*, 98 F. Supp. 2d 498
(S.D.N.Y. 2000) ......................................................................................... 7, 9

*Lauritzen v. Larsen*, 345 U.S. 571 (1953) ................................................................ 7

*Magnaflux Corp. v. Glen Falls Ins. Co.*, 1979 U.S. Dist. LEXIS 10568
(S.D.N.Y. Aug. 6, 1979) ................................................................................ 7

*Marino v. New York Tel. Co.*, 1992 U.S. Dist. LEXIS 12705 (S.D.N.Y. 1992) ........................ 23

*Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145 (2d Cir. 2003) ............................ 8

*Nat'l Union Fire Ins. Co. v. Travelers Indem. Co.*, 210 F. Supp. 2d 479
(S.D.N.Y. 2002) ......................................................................................... 6, 10

*Ogden Corp. v. The Travelers Indem. Co.*, 739 F. Supp. 796 (S.D.N.Y. 1989) .......................... 16

*Phila. Indem. Ins. Co. v. Emplrs. Ins. Co.*, 318 F. Supp. 2d 170 (S.D.N.Y. 2004) .................... 11

*Reliance Ins. Co. v. Keystone Shipping Co.*, 102 F. Supp. 2d 181 (S.D.N.Y. 2000) .................... 7

*Royal Ins. Co. v. Sportswear Group*, 85 F. Supp. 2d 275, 278(S.D.N.Y. 2000) .................. 6, 7, 8

*Seidel v. Houston Cas. Co.*, 2005 U.S. Dist. LEXIS 4328 (S.D.N.Y. 2005) .................. 5, 7, 8, 11

*Sparacino v. Pawtucket Mut. Ins. Co.*, 50 F.3d 141 (2d. Cir. 1994) ........................................... 19

*SSBSS Realty Corp. v. Pub. Serv. Mut. Ins. Co.*, 235 A.D.2d 538
     (N.Y. App. Div. 1998) ................................................................................................. 16

*Underwriters at Lloyd's v. 150 Nassau St. Billiards, Inc.*, 2003 U.S. Dist.
     LEXIS 23028 (S.D.N.Y. 2003) .............................................................................. 16, 18

*Varrichio v. Chicago Ins. Co.*, 2001 U.S. Dist. LEXIS 19744 (S.D.N.Y. 2001) ......................... 16

*Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310 (1954) ............................................. 4

## New York State Cases:

*Aetna Cas. & Sur. Co. v. Penn. Mfr. Assoc. Ins. Co.*, 57 A.D.2d 982
     (N.Y. App. Div. 1977) ................................................................................................. 17

*Am. Home Assurance Co. v. Int'l Ins. Co.*, 90 N.Y.2d 433 (N.Y. App. Div. 1997) .................... 13

*Argo Corp. v. Greater New York Mut. Ins. Co.*, 2005 N.Y. LEXIS 770 (N.Y. 2005) ................. 13

*Great Canal Realty Corp. v. Seneca Ins. Co.*, 2005 N.Y. LEXIS 1257
     (N.Y. June 16, 2005) ................................................................................................... 13

*Koretnicki v. Firemen's Ins. Co.*, 109 A.D.2d 993 (N.Y. App. Div. 1985) ................................ 17

*Power Auth. v. Westinghouse Elec. Corp.*, 502 N.Y. Supp. 2d 420
     (N.Y. App. Div. 1986) ............................................................................................. 13, 21

*Rekemeyer v. State Farm*, 2005 N.Y. LEXIS 771 (N.Y. 2005) .................................................. 13

*Travelers Ins. Co. v. Volmar Constr. Co.*, 300 A.D.2d 40
     (N.Y. App. Div. 2002) ................................................................... 15, 16, 20, 21, 23

*Unigard Sec. Ins. Co. v. North River Ins. Co.*, 79 N.Y.2d 576 (N.Y. 1992) .................... 5, 12, 13

*White v. City of New York*, 81 N.Y.2d 955, 957 (N.Y. 1993) ................................. 16, 20

*Whitney M. Young, Jr. Health Ctr., Inc. v. New York State Dep't of Ins.*,
    152 A.D.2d 835 (N.Y. App. Div. 1989) .................................... 18, 21

*Winstead v. Uniondale Union Free Sch. Dist.*, 201 A.D.2d 721
    (N.Y. App. Div. 1994) .................................................................. 18

## Texas State Cases:

*Dairyland County Mutual Ins. Co. v. Cruz*, 498 S.W.2d 154 (Tex. 1973) .................................... 5

*Chiles v. Chubb Lloyds Ins. Co.*, 858 S.W.2d 633 (Tex. Ct. App. 1993) ....................................... 5

*Flores v. Allstate*, 278 F. Supp. 2d 810 (S.D. Tex. 2003) ............................................... 5

*Lennar Corp. v. Great Am. Ins. Co.*, 2005 Tex. App. LEXIS 4214
    (Tex. Ct. App. 2005) .................................................................. 6

*New Era of Networks, Inc. v. Great N. Ins. Co.*, 2003 U.S. Dist. LEXIS 14247
    (S.D. Tex. Aug. 5, 2003) .............................................................. 5

*Trevino v. Allstate Ins. Co.*, 651 S.W.2d 8 (Tex. Ct. App. 1983) ................................. 5

## Preliminary Statement

Defendants, Underwriters at Lloyd's and Certain Insurers subscribing to Policy No. LE0280715 ("Lloyd's Underwriters"), submit this memorandum of law pursuant to Federal Rule of Civil Procedure, Rule 56 and in support of their motion for summary judgment seeking a determination that Plaintiff, Iroquois Gas Transmission System L.P. ("Iroquois"), is precluded from demanding coverage from Lloyd's Underwriters because it failed to notify Lloyd's of the occurrence on February 27, 2003 giving rise to its claim for coverage as an additional insured.

Additionally, as the Court is aware, Iroquois filed its own motion for summary on August 17, 2005. Lloyd's Underwriters will oppose Iroquois' motion in accordance with the Court's April 15, 2005 Scheduling Order. However, it is Lloyd's Underwriters' position that Iroquois' motion improperly violates the stay in effect in this action. Radzik Aff., Ex. "A". During the July 22, 2005 motion hearing, the Court stayed this entire action except for two depositions, which have been completed, and motions for summary judgment by Iroquois and Lloyd's Underwriters on the issue of late notice. Radzik Aff., Ex. "A". Iroquois motion goes well beyond the notice issue and seeks affirmative relief on the issue of coverage and seeks a judgment for money damages. To the extent that Iroquois' motion seeks a decision on anything other than Lloyd's Underwriters' notice defense, it is requested that Iroquois' motion be stricken as it is made in violation of the Court's stay.

## Statement of Facts

Lloyd's Underwriters' Rule 56.1 Statement of Material Facts is incorporated by reference. Lloyd's Underwriters respectfully request that the Court refer to its Rule 56.1 Statement for a complete recitation of the facts. The following is a brief summary of the facts, which are fully laid out in the Rule 56.1 Statement.

Iroquois Gas Transmission Systems, L.P. ("Iroquois") is the owner of a 412-mile natural gas pipeline (the "Iroquois Pipeline") located predominately within the state of New York, with a small portion extending across the corner of Connecticut. R. 56.1, ¶ 35. Iroquois hired Horizon Offshore Contractors, Inc. ("Horizon") to act as general contractor for the construction of a 35-mile extension to the Iroquois Pipeline (the "Eastchester Extension") located in the Long Island Sound in New York. R. 56.1, ¶ 39. Iroquois and Horizon entered into a contract governing the terms of the Eastchester Extension project (the "Construction Contract"). R. 56.1, ¶ 39. The Construction Contract, *inter alia*, required Horizon to maintain certain insurance policies, including Hull & Machinery with collision liability, and name Iroquois as additional insureds under the policies. Additionally, the Construction Contract contained a New York choice of law and New York forum selection clause. Horizon did maintain a Hull & Machinery Policy with Lloyd's Underwriters, which included collision liability (hereinafter the "Lloyd's Policy" or "Hull & Machinery Policy"), however, Iroquois was never named as an additional insured under the policy. Radzik Aff., Ex. "E".

Additionally, Iroquois entered into an agreement with the New York Power Authority ("NYPA") to allow Iroquois the right to bury its new pipeline in the Long Island Sound under the condition that Iroquois indemnify NYPA if any damage occurs to NYPA's power cables, also buried under the Long Island Sound.[1] R. 56.1, ¶ 47.

On February 27, 2005, while Horizon's vessel the GULF HORIZON was performing pipe-laying operations in the Long Island Sound, as part of the Eastchester Extension project, one of NYPA's power cables in the same area (the Y-49 cable) allegedly suffered serious

---

[1] Under the Construction Contract, however, Horizon did not agree to be strictly liable to Iroquois. Radzik Aff., Ex. "E".

damage (hereinafter the "Incident"). R. 56.1, ¶ 58. It is alleged that the damage was caused by one of the anchors of the GULF HORIZON. R. 56.1, ¶ 59.[2] However, a judicial determination of the actual cause of the damage has not been made. Radzik Aff., Ex. "Z". Iroquois' claim for coverage under the Lloyd's Policy arises out of the Incident.

It is undisputed that Iroquois failed to notify Lloyd's Underwriters of the Incident. R. 56.1, ¶ 84. Yet, within the month immediately following the Incident, Iroquois notified all of Horizon's other underwriters, of which Iroquois could claim status as an additional assured, of the Incident. R. 56.1, ¶ 83. Because Iroquois is not named as an additional insured under the Lloyd's Policy, the only basis Iroquois has to claim coverage under the Policy is pursuant to the requirement of the Construction Contract. Notwithstanding, Iroquois never looked at the terms of the Construction Contract when determining which insurers to notify. R. 56.1, ¶ 86. Thus, Iroquois' failure to give notice is unexcused and Iroquois must be precluded from seeking coverage under the Policy.

## Statement of Issues

1. Whether Iroquois' insurance coverage claim, arising out of an Incident wholly located with in the State of New York and pursuant to a Construction Contract mandating application of New York law, must be construed pursuant to the law of the State of New York.

2. Whether Iroquois is precluded from seeking coverage under the Lloyd's Policy as a matter of law for failure to notify Lloyd's Underwriters of the New York Incident allegedly giving rise to coverage.

3. Whether Iroquois' failure to exercise due diligence in ascertaining coverage and providing notice renders any excuse it may assert is invalid as a matter of law.

---

[2]  This Incident has also been referred to as the Anchor Drag Incident and is the occurrence for which Iroquois is currently seeking coverage from Lloyd's Underwriters.

## Argument

### I.  Choice of Law - The Lloyd's Policy Must be Construed Pursuant to New York Law

Iroquois' present claim for insurance coverage under the Lloyd's Policy must be construed in accordance with New York law.  The only basis for Iroquois' claim of cover as an additional insured is pursuant to the terms of the Construction Contract, between Iroquois and Horizon.  These terms are essentially incorporated by the language of the Lloyd's Policy.  Further, the Construction Contract mandates the application of New York law.  Thus, to the extent, *if any*,[3] that Iroquois is covered by the Lloyd's Policy, New York law must govern.

The insurance policy issued by Lloyd's Underwriters, to Iroquois' subcontractor Horizon, is predominately a Hull & Machinery policy of marine insurance, which extends its hull cover to include collision liability.  "In a case involving a marine insurance contract, state law governs unless there is a well-settled federal admiralty rule applicable to the particular issues raised by the case."  *Howard Fuel v. Lloyd's Underwriters*, 588 F. Supp. 1103, 1106 n. 8 (S.D.N.Y. 1984)(citing *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310 (1954)).  There is no established maritime rule regarding the application of notice provisions in marine insurance

---

[3]          As previously stated, it is Lloyd's Underwriter's position that the stay entered in this action precludes Iroquois from arguing the issue of coverage at this time.  Notwithstanding, Lloyd's vigorously contests coverage under its Policy.  First, any coverage due under the Lloyd's Policy must be predicated upon a finding that the primary insured, Horizon, or the additional insured as the owner/operator of the GULF HORIZON, Iroquois, were at fault in causing damage to the NYPA electrical cable.  There has been no such finding of fault, and, therefore, the issue is not ripe and a declaration that the Lloyd's Policy provides coverage would be premature.

Second, the Lloyd's Policy does not cover Horizon or Iroquois for contractual indemnity.  Under the Crossing Agreement, Iroquois agreed to be strictly liable to NYPA for damage to the electrical cable.  Under the Construction Contract, Horizon did not agree to be strictly liable but only agreed to indemnify Iroquois for Horizon's own negligence.  The Lloyd's Policy is only triggered upon an adjudication of fault.  Other policies such as Horizon's Protection and Indemnity and Commercial General Liability policies may provide coverage for Horizon's contractual liability.

Third, the Lloyd's Policy is subject to a per occurrence deductible of $500,000.00.  The combined occurrence deductible and annual aggregate deductible is $2,000,000.00, which exceeds Iroquois' claim.

policies. *Id.*  Thus, to evaluate whether Iroquois is entitled to coverage under the policy, it is necessary to determine what state's law will apply.

**a.    Prejudice Requirement: New York v. Texas**

A choice of law analysis is only necessary if there is a conflict between the applicable law of competing states.  Thus, "the first step in any case potentially presenting a choice-of-law question is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *Seidel v. Houston Cas. Co.*, 2005 U.S. Dist. LEXIS 4328 (S.D.N.Y. 2005).  The potential conflict here is between New York and Texas law, specifically, on the question of whether a party seeking to disclaim insurance coverage on the basis of lack of notice or late notice must show prejudice.

The law in New York is clear, if an insured fails to comply with a notice provision "the claim is barred regardless of whether or not the insurer has been prejudiced." *Howard Fuel v. Lloyd's Underwriters*, 588 F. Supp. 1103, 1106 (S.D.N.Y. 1984); *Unigard Sec. Ins. Co. v. North River Ins. Co.*, 79 N.Y.2d 576, 581 (N.Y. 1992).  In Texas however, the law is somewhat less clear on this issue,[4] it appears that insurers may be required to show prejudice in order to prevail

---

[4]        The rule in Texas used to be the same as New York, i.e. that an insurer did not have to show prejudice to succeed on a defense of late notice.  *See Dairyland County Mutual Ins. Co. v. Cruz*, 498 S.W.2d 154, 157 (Tex. 1973); *see also, Trevino v. Allstate Ins. Co.*, 651 S.W.2d 8, n.1 (Tex. Ct. App. 1983).  In the early 1970's, the Texas State Board of Insurance issued two orders limiting the no prejudice rule by requiring a showing of prejudice for late notice for both general liability and automobile insurance policies. *See Flores v. Allstate*, 278 F. Supp. 2d 810, 816 (S.D. Tex. 2003).  Notwithstanding, the Fifth Circuit has held that the prejudice requirement applies to all insurance policies under Texas Law. *Hanson Production Co. v. Am. Ins. Co.*, 108 F.3d 627 (5th Cir. 1997).  Texas State Courts and United States District Courts in Texas have, however, continued to hold that the prejudice requirement only extends to those types of policies specifically identified by the Insurance Board, i.e. CGL and auto policies. *Flores v. Allstate*, 278 F. Supp. 2d 810, 816 (S.D. Tex. 2003); *see also New Era of Networks, Inc. v. Great N. Ins. Co.*, 2003 U.S. Dist. LEXIS 14247 (S.D. Tex. Aug. 5, 2003); *Chiles v. Chubb Lloyds Ins. Co.*, 858 S.W.2d 633 (Tex. Ct. App. 1993).  Since there are no Texas State cases considering the prejudice rule with respect to marine policies, or specifically, Hull & Machinery policies, and federal cases interpreting Texas law would not be binding on this Court, it is not entirely clear whether a showing of prejudice would be required for Lloyd's Underwriter's defense of lack of notice to succeed in Texas.  Were Texas law to apply, Lloyd's Underwriters would argue that a showing of prejudice is not required of a hull and/or marine insurer to support a defense of late notice.  The fact that

on a defense of failure to notify or late notice. *Lennar Corp. v. Great Am. Ins. Co.*, 2005 Tex. App. LEXIS 4214 (Tex. Ct. App. 2005) (finding that a CGL insurer must show prejudice to support late notice defense). It is not necessary, however, to determine the exact status of Texas' prejudice, rules or whether the Texas prejudice requirement would extend to policies of marine insurance, because, as discussed below, New York law must govern the evaluation of whether Iroquois has cover under the Lloyd's Policy.

### b.     New York and Federal Choice of Law Rules Apply

In order to determine what state's law will apply, it is necessary to establish what choice of law principles will govern. There are two bodies of law that potentially govern the choice of law analysis in this case: general federal or New York. Iroquois pled both diversity and admiralty jurisdiction in this action.[5] Radzik Aff., Ex. "T". A federal court sitting in diversity will apply the choice of law rules of the state in which it sits, here New York. *Nat'l Union Fire Ins. Co. v. Travelers Indem. Co.*, 210 F. Supp. 2d 479, 484 (S.D.N.Y. 2002). However, in an admiralty jurisdiction case, courts look to federal choice of law principles to determine which state's law will apply. *Royal Ins. Co. v. Sportswear Group*, 85 F. Supp. 2d 275, 278 (S.D.N.Y. 2000).

The choice of law principles applied in New York and in federal maritime cases are substantially the same:

---

Texas law on this issue is somewhat unclear, however, supports application of New York law as this Court should avoid being called upon to sort out this confusion. If Iroquois intended for Texas law to apply it should have filed its declaratory judgment action in Texas where the limitation action is already pending.

[5]     Iroquois has amended its Complaint twice in this action. In the first complaint, Iroquois filed suit only against AEGIS, and asserted only diversity as the basis for federal jurisdiction. Radzik Aff., Ex. "R". In the first Amended Complaint, Iroquois added Lloyd's Underwriters as a defendant and still only pled diversity as the basis for federal jurisdiction. Radzik Aff., Ex. "S". It was not until the Second Amended Complaint, wherein Iroquois

The New York approach to conflict disputes related to contract interpretation has been described as a "center of gravity" or "grouping of contacts" approach. Following this approach, New York "applies the law of the place having the most significant contacts with the matter in dispute." *Magnaflux Corp. v. Glen Falls Ins. Co.*, 1979 U.S. Dist. LEXIS 10568 (S.D.N.Y. Aug. 6, 1979); *Seidel v. Houston Cas. Co.*, 2005 U.S. Dist. LEXIS 4328 (S.D.N.Y. 2005). "[T]he factors to be considered include the places of contracting, negotiation, and performance; the location of the subject matter that is insured; and the domicile of the parties to the contract." *Int'l Multifoods Corp. v. Commercial Union Ins.*, 98 F. Supp. 2d 498, 502 (S.D.N.Y. 2000).

In maritime cases, choice of law is determined by "ascertaining and valuing points of contact between the transaction and the states or governments whose competing laws are involved." *Reliance Ins. Co. v. Keystone Shipping Co.*, 102 F. Supp. 2d 181, 186 (S.D.N.Y. 2000)(citing *Lauritzen v. Larsen*, 345 U.S. 571, 582 (1953). Maritime choice of law analysis with respect to insurance contracts generally includes "(1) any choice-of law provision contained in the contract; (2) the place where the contract was negotiated, issued and signed; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of business of the parties." *Royal Ins. Co. v. Sportswear Group*, 85 F. Supp. 2d 275, 278 (S.D.N.Y. 2000); *Advani Enters. v. Underwriters at Lloyds*, 140 F.3d 157, 162 (2d Cir. 1998); *see also Reliance*, 102 F. Supp. 2d at 187 (applying the framework of the Restatement (Second) of Conflict of Laws to a maritime insurance policy).

Notwithstanding the slightly varying nomenclature, both federal and New York choice of law analysis rely on similar, if not identical, factors in determining what law to apply to an

---

added AON and American Home a defendants, that Iroquois asserted admiralty jurisdiction in addition to diversity. Radzik Aff., Ex. "T".

insurance policy, in particular, the factors identified in the Restatement (Second) of Conflicts. *See e.g. Royal Ins. Co. v. Sportswear Group*, 85 F. Supp. 2d 275, 278 (S.D.N.Y. 2000)(applying the framework of the Restatement (Second) of Conflict of Laws to a maritime insurance policy); *Seidel v. Houston Cas. Co.*, 2005 U.S. Dist. LEXIS 4328 (S.D.N.Y. 2005)(applying New York choice law factors to insurance contracts); *Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 151-2 (2d Cir. 2003)(New York choice of law analysis applying the Restatement (Second) of Conflicts to an insurance contract). Thus, cases applying both New York and maritime conflict principles will be referenced herein as they both rely on the same general criteria and are applicable in this case.

### c. Any Coverage Afforded Iroquois Under the Lloyd's Policy Must be Construed in Accordance with New York Law

The circumstances out of which Iroquois' potential claim for coverage under the Lloyd's Policy arose mandates application of New York law. Typically, courts place considerable emphasis on the location where an insurance policy was placed when determining what law to apply. Here however, the placement of the Lloyd's Policy itself is of little significance.

The Lloyd's Policy was issued to Horizon, Iroquois' subcontractor in the Eastchester Extension project. R. 56.1, ¶ 4. Review of the Lloyd's Policy in isolation would reveal absolutely no basis for Iroquois to claim coverage under the policy. R. 56.1, ¶ 20. Iroquois is not a named insured under the Policy. R. 56.1, ¶ 20. Horizon is the named insured. R. 56.1, ¶ 17. Iroquois' claim for coverage as an additional insured arises only out of the requirements of the Construction Contract between Iroquois and Horizon appointing Horizon as the general contractor for the 35-mile pipeline extension in the Long Island Sound. Radzik Aff., Ex. "T". One of Iroquois' requirements in the Construction Contract, was that Horizon procure various

insurance policies to cover the project, including Hull & Machinery coverage.[6]  R. 56.1, ¶ 14.
The Lloyd's Policy fulfills the Hull & Machinery requirement, including collision liability, but
the Policy does not name Iroquois as an additional insured.    Radzik Aff., Ex. "E".
Notwithstanding, the Lloyd's Policy includes a provision allowing coverage for additional
insureds "where required by contract." R. 56.1, ¶ 23.  Iroquois can only claim coverage under
the Policy because the specified coverage is "required by contract."  Were it not for the
Construction Contract, Iroquois would have no basis to allege coverage under the Policy.  In a
sense, the Construction Contract *is* the insurance policy with respect to Iroquois, at least, to the
extent it is incorporated by the Lloyd's Policy.  Thus, in this case, it is the circumstances
surrounding the Construction Contract, rather than the Policy itself, that have the most
significance in determining what state law to apply.

   "New York's conflicts law looks first to the choice of law intended by the parties as
expressed in their contract."  *Int'l Multifoods Corp. v. Commercial Union Ins.*, 98 F. Supp. 2d
498, 502 (S.D.N.Y. 2000).   The relevant contract here is the Construction Contract.   The
Construction Contract contains a New York choice of law clause and a New York forum
selection clause.  R. 56.1, ¶ 27.  Since Iroquois' coverage only arises to the extent that the
requirements of the Construction Contract are incorporated into the Lloyd's Policy, Iroquois
cannot claim coverage unless the choice of law requirements of the Contract are also honored.
This rationale does not conflict with the terms of the Lloyd's Policy, which call for application of
U.S. law and appoints New York agents for service of process. Radzik Aff., Ex. "E".   To the

---

[6]     The Hull & Machinery coverage required under the Construction Contract specifically demanded a policy
that included collision liability coverage. Radzik Aff., Ex. "H".

extent that Iroquois is seeking coverage derived from the requirements of the Construction Contract, Iroquois is bound by the contract requirement mandating application of New York law.

Just as the location where the Policy was placed is of little significance, the fact that Horizon is a Delaware corporation residing in Texas should not affect this Court's choice of law analysis. The location of the party claiming coverage supports application of that state's law. *Nat'l Union Fire Ins. Co. v. Travelers Indem. Co.*, 210 F. Supp. 2d 479, 484 (S.D.N.Y. 2002). Conversely, the location of a non-party not claiming coverage is of little significance. *Id.* Thus, while the location of the insured typically has some bearing on choice of law, the location of Horizon is of no significance in this case because Horizon is not a party to this action and is not currently seeking coverage under the Lloyd's Policy.

The circumstances surrounding the Incident, giving rise to Iroquois insurance claim, also support application of New York law. Iroquois is the owner of a 412-mile natural gas pipeline, the majority of which is located in New York. R. 56.1, ¶ 35. The purpose of Eastchester Extension project (the subject of the Construction Contract) was to construct a 35-mile extension to the pipeline and five new compressor stations, all wholly located within the State of New York. R. 56.1, ¶ 39. This extension was constructed to provide natural gas to residential, industrial, and commercial customers in the State of New York. R. 56.1, ¶ 42. In order to legally complete the extension Iroquois sought various permits and easements from New York agencies. R. 56.1, ¶ 44. Further, Iroquois entered into a Crossing Agreement[7] with the New York Power Authority (NYPA), which allowed Iroquois to lay pipe over NYPA's underwater power lines in the Long Island Sound in exchange for Iroquois' promise to indemnify NYPA should any damage occur. R. 56.1, ¶ 47. The Incident giving rise to Iroquois' insurance

10

coverage claim occurred during construction of the Eastchester Extension project, within the State of New York, when one of the anchors of the GULF HORIZON allegedly struck one of NYPA's underwater power cables. R. 56.1, ¶ 59.

When applying the choice of law factors, there is no single factor that is of the most significance in determining what state's law should apply to an insurance contract.  Different factors may weigh more heavily than others depending upon the facts of a particular situation. *See Seidel v. Houston Casualty Co.*, 2005 U.S. Dist. LEXIS 4328, *20 (S.D.N.Y. 2005). Sometimes that most important factor is the location that "the parties understood was to be the principal location of the insured risk." *Phila. Indem. Ins. Co. v. Emplrs Ins. Co.*, 318 F. Supp. 2d 170, 172 (S.D.N.Y. 2004).  Alternatively, when the location of the insured risk encompasses many locations courts have placed more emphasis on the on the location where the policy was executed. *Globalnet Fin. Com. V. Frank Crystal & Co.*, 2004 U.S. Dist. LEXIS 13731 (S.D.N.Y. July 22, 2004). This, however, should not be the case here.  While Horizon may have insured risks worldwide, with respect to Iroquois, New York is undoubtedly the "principal location of the insured risk."  As to Iroquois, coverage could only arise out of the construction of the Eastchester Extension, which is located wholly within the State of New York. R. 56.1, ¶ 41. Thus, as to Iroquois, New York is the principal location of the insured risk, i.e. the Eastchester Extension project.  Again, the location of the Policy's execution is of little significance given that coverage as to Iroquois arises only out of the Construction Contract rather than directly from the terms of policy.

Other factors supporting the application of New York law include the fact that both parties conduct business in New York, the policy, as mandated by the Construction Contract,

---

[7]    The Crossing Agreement also mandates application of New York law. R. 56.1, ¶ 49.

was maintained for Iroquois' activities in New York; and Iroquois selected New York as its

forum. *See Agway, Inc. v. Travelers Indem. Co.*, 1993 U.S. Dist. LEXIS 21092 (N.D.N.Y.

1993).

Finally, Iroquois should be precluded from arguing that Texas law should govern this

dispute given that it adamantly argued that New York law applied in the Texas Limitation

Action. R.56.1, ¶ 72; Radzik Aff., Ex. "V". Any right to coverage under the Lloyd's Policy that

Iroquois may have must be determined in accordance with New York law.

## II.    Iroquois Is Precluded From Claiming Coverage Under the Lloyd's Policy Due to Its Unreasonable Failure to Notify Lloyd's Underwriters of the Incident Giving Rise to its Claim for Coverage

### a.    The "No Prejudice" Rule

In New York, notice requirements in insurance policies act as conditions precedent to

coverage. *AXA Marine v. Seajet Indus. Inc.*, 84 F.3d 622, 624 (2d Cir. 1996). Thus,

"noncompliance with a notice provision in an insurance policy bars the claim unless the insured

can demonstrate that it was not reasonably possible to give notice within the prescribed time and

that notice was provided as soon as was reasonably possible." *Howard Fuel v. Lloyd's

Underwriters*, 588 F. Supp. 1103, 1106 (S.D.N.Y. 1984). Additionally, an untimely claim "is

barred regardless of whether or not the insurer has been prejudiced by the failure to give timely

notice." *Id.*

This "no prejudice" rule is rooted in the understanding that prejudice is inherent in late

notice. *See AXA Marine v. Seajet Indus. Inc.*, 84 F.3d 622, 625 (2d Cir. 1996). Prejudice results

from the fact that when an insurer does not have notice it cannot protect its own interests.

*Unigard Security Ins. Co. v. North River Ins. Co.*, 79 N.Y.2d 579, (N.Y. 1992). For example, the

12

insurer cannot investigate claims rendering it susceptible to fraud, lack of notice prevents the insurer from being able to set a proper reserve, and without notice the insurer cannot exercise early control over a claim and increase the chances of early settlement. *Id.* at 625; *Power Auth. v. Westinghouse Elec. Corp.*, 502 N.Y. Supp. 2d 420, 422 (N.Y. App. Div. 1986); *Argo Corp. v. Greater New York Mut. Ins. Co.*, 2005 N.Y. LEXIS 770, *5 (N.Y. 2005). The "no prejudice" rule recognizes the difficulty in proving this type of prejudice and, thus, assumes it as a matter of law. *See AXA Marine*, 84 F.3d at 625; *Power Auth.*, 502 N.Y. Supp. 2d at 422.

There can be no doubt that the "no prejudice" rule remains in full force in New York. While there are two narrow, and inapplicable, exceptions to the rule, New York courts continue to apply and uphold the rule and have declined to extend the exceptions beyond the unique circumstances of reinsurance and uninsured motorist insurance. *See Unigard Sec. Ins. Co. v. North River Ins. Co.*, 79 N.Y.2d 576 (N.Y. 1992)("no prejudice" rule inapplicable to reinsurance policies); *Rekemeyer v. State Farm*, 2005 N.Y. LEXIS 771 (N.Y. 2005)("no prejudice" rule inapplicable to supplementary uninsured motorist insurance); *Am. Home Assurance Co. v. Int'l Ins. Co.*, 90 N.Y.2d 433 (N.Y. App. Div. 1997)(*Unigard* exception not extended to excess carriers). Additionally, the New York Court of Appeals has reaffirmed the validity of the rule and its strict application in two recent decisions. *Argo Corp. v. Greater New York Mut. Ins. Co.*, 2005 N.Y. LEXIS 770 (N.Y. 2005)("no prejudice" rule not abrogated); *Great Canal Realty Corp. v. Seneca Ins. Co.*, 2005 N.Y. LEXIS 1257 (N.Y. June 16, 2005). Thus, this Court should have no hesitation in strictly applying the rule in this case.

The notice provision at issue in this case is incorporated under the Conditions section of the Lloyd's Policy. Radzik Aff., Ex. "E" & "F". The notice requirement states that "[i]n the

13

event of any accident or occurrence which could give rise to a claim under this Policy, *prompt notice* thereof shall be given to the Underwriters." Radzik Aff., Ex. "E" & Ex. "F" (emphasis added).

Policy conditions requiring "prompt" notice are interpreted, like most other notice provisions, to mean that notice must be made within a reasonable time after the occurrence. *Const. Reins. Corp. v. Stonewall Ins. Co.*, 980 F. Supp. 124, 129 (S.D.N.Y. 1997); *Christiania Gen. Ins. Corp. v. Great Am. Ins. Co.*, 979 F.2d 268, 275 (2d Cir. 1992).

Here, it is undisputed that Iroquois never notified Lloyd's of the February 27, 2003 GULF HORIZON Anchor Drag Incident. R. 56.1, ¶ 84. Further, Iroquois never notified Lloyd's of the Texas Limitation Action, the NYPA cross-claim, or demanded that Lloyd's provide Iroquois cover as an additional insured under the Lloyd's Hull & Machinery Policy. Lloyd's Underwriter's first notice that Iroquois was seeking cover as an additional insured was not officially made until the Amended Complaint was filed in this action on or about March 23, 2005, over two years after the Incident.[8] Radzik Aff., Ex. "S".

An unexcused delay of seven months is untimely as a matter of law. *Howard Fuel*, 588 F. Supp. at 1108. Further, delays of one to two months are routinely found to be unreasonable under New York law. *Am. Ins. Co. v. Fairchild Ind., Inc.*, 56 F.3d 435, 440 (2d Cir. 1995). A two-year delay is undeniably unreasonable in the present circumstances.

Undoubtedly, Iroquois will argue that the notice that AON provided to Lloyd's Underwriters, care of Horizon's London broker JLT Risk Solutions, constituted sufficient notice on behalf of Iroquois. This argument however lacks merit. "[A]n insured's obligation to provide

---

[8]    Lloyd's Underwriters were not even a defendant in the original Complaint. Radzik Aff., Ex. "R".

timely notice is not excused on the basis that the insurer has received notice of the underlying occurrence from an independent source." *Travelers Ins. Co. v. Volmar Constr. Co.*, 300 A.D.2d 40 (N.Y. App. Div. 2002). Further, notice requirements apply "equally to both primary and additional insureds and ***notice provided by one insured in accordance with the policy terms will not be imputed to another insured.***" *Id.* (emphasis added, citations omitted). "This is especially true in circumstances such as here, where the insured that has provided notice has taken a position adverse to its coinsured in the underlying litigation."[9] *Id.* The notice AON sent to Lloyd's Underwriters made absolutely no mention of Iroquois. R. 56.1, ¶ 81. Iroquois has no basis to argue that AON's notice was made on its behalf.

Notwithstanding, *even if* AON's notice on behalf of Horizon could be imputed to Iroquois, that notice was untimely as a matter of law. The notice AON sent to JLT was dated May 17, 2004. Radzik Aff., Ex. "J". There is an irrelevant issue of fact as to whether the notice was sent directly to Lloyd's Underwriters or whether JLT delayed in forwarding the notice to Lloyd's. John Hodgett, the claims adjuster for Wellington, the lead underwriter of the Lloyd's Policy, testified that he did not receive Horizon's notice until December 1, 2004. Radzik Aff., Ex. "AA". This dispute however is immaterial. Whether Lloyd's received the notice on or about May 17, 2004 (fifteen months after the Incident) or December 1, 2004 (twenty one months after the Incident), the notice was indisputably untimely.

**b.    Iroquois Has No Excuse for Its Failure to Provide Notice**

Given the insurance requirements in the Construction Contract, the circumstances surrounding the Anchor Drag Incident, the pending Texas Limitation Action, including the

---

[9]    In the Texas Limitation action Iroquois has taken the position that all damage alleged by NYPA was caused by the fault of Horizon. Radzik Aff., Ex. "Z".

NYPA cross-claim, and the fact that Iroquois is a sophisticated corporation whose defense is already being provided by its own general liability insurer, Iroquois has absolutely no excuse for its failure to notify Lloyd's of the Incident. Thus, as a matter of law, Iroquois is barred from seeking coverage under the Lloyd's Policy.

Courts have identified only three potential excuses for failure of an insured to give notice of an occurrence within a reasonable time: 1) lack of knowledge of the occurrence, 2) a reasonable belief of non-liability, or 3) a reasonable belief of non-coverage. *White v. City of New York*, 81 N.Y.2d 955, 957 (N.Y. 1993); *Underwriters at Lloyd's v. 150 Nassau St. Billiards, Inc.*, 2003 U.S. Dist. LEXIS 23028, *23 and *26 (S.D.N.Y. 2003); *Varrichio v. Chicago Ins. Co.*, 2001 U.S. Dist. LEXIS 19744, *13 (S.D.N.Y. 2001). The insured has the burden of establishing the reasonableness of any excuse. *White*, 81 N.Y.2d at 957; *150 Nassau*, 2003 U.S. Dist. LEXIS 23028 at *24. Iroquois cannot meet this burden as a matter of law because it has absolutely no good faith excuse for its delay.

The first two excuses are not available when the additional insured, gave notice to its primary insurers and its primary insurers are tendering their defense.   In such a case, the additional insured clearly knew of the occurrence and the possibility of liability. *Travelers Ins. Co. v. Volmar Construction Co.*, 300 A.D.2d 40, 43 (N.Y. App. Div. 2002). Here, Liberty Mutual is providing Iroquois' defense in the Limitation Action. Thus, Iroquois cannot claim lack of knowledge or reasonable belief of non-liability. *See id.*

With respect to a reasonable belief of non-liability, "[a]t issue is not whether the insured believes he will ultimately be found liable for the injury, but whether he has a reasonable basis for a belief that no claim will be asserted against him." *SSBSS Realty Corp. v. Pub. Serv. Mut.*

*Ins. Co.*, 235 A.D.2d 538 (N.Y. App. Div. 1998); *Ogden Corp. v. The Travelers Indem. Co.*, 739 F. Supp. 796, 802 (S.D.N.Y. 1989)(a good faith belief in non-liability means no possibility of a claim).    There is no dispute that Iroquois knew of this Incident almost immediately after it occurred and commenced an investigation into the cause.    Radzik Aff., Ex. "BB".    Further, Iroquois knew that the Crossing Agreement with NYPA called for complete indemnity if any damage occurred to the power cables.    Radzik Aff., Ex. "N".    Thus, Iroquois knew immediately of the potential exposure.

Lest Iroquois had any doubt of its potential exposure, on March 13, 2003, NYPA put Iroquois on written notice of its intent to hold Iroquois responsible for all damage to the power cables arising out of the February 27, 2003 Incident.    R. 56.1, ¶ 76.    Any claim that Iroquois did not know of the occurrence or any exposure to liability resulting there from would be entirely disingenuous.

It is anticipated that Iroquois will attempt, improperly, to rely most heavily on the last excuse.    This third excuse, sometimes considered in the context of untimely notice, provides that "a reasonable belief of non-coverage" may excuse failure to give notice.    This "excuse" does not, however, mean that unexcused "ignorance" of coverage constitutes a valid excuse.    *Aetna Cas. & Sur. Co. v. Penn. Mfr. Assoc. Ins. Co.*, 57 A.D.2d 982, 984 (N.Y. App. Div. 1977).    Lack of awareness of potential coverage "is actually no excuse at all, and if accepted could be utilized to justify any manner or length of delay in any conceivable case."    *Koretnicki v. Firemen's Ins. Co.*, 109 A.D.2d 993, 994 (N.Y. App. Div. 1985).[10]    In order to prevail on this theory, Iroquois would

---

[10]    The *Koretnicki* holding was made in the context of an injured third party bringing a direct action against an insurance company, rather than the context here where Iroquois is claiming coverage as an additional insured.    In third party direct action cases, the timely notice requirement is treated with more lenience than when an additional

17

have to prove not only that they were ignorant of the available coverage, but also that they made "reasonably diligent efforts to ascertain whether coverage existed." *Winstead v. Uniondale Union Free Sch. Dist.*, 201 A.D.2d 721, 723 (N.Y. App. Div. 1994).

There is one fact alone that makes this excuse impossible for Iroquois to validly assert. This fact is that Iroquois specifically required in its contract with Horizon, not only Hull & Machinery insurance coverage, but Hull & Machinery "including collision liability." Radzik Aff., Ex. "H". If the insured party had a document, or documents, that "would have prompted any person of ordinary prudence" to take further steps to determine what coverage was afforded, and such steps were not taken, their delay cannot be excused. *See id.* Michelle Wieler, the individual appointed by Iroquois' legal department to place Iroquois' insurers on notice of this Incident, admitted that she never looked at the Construction Contract when deciding what insurance companies to place on notice. R. 56.1, ¶ 86; Radzik Aff., Ex. "BB". Ms. Wieler offered no explanation for Iroquois failure to review the Contract in determining coverage. "[A]n unexplained failure to exercise due diligence to ascertain coverage manifests failure to meet the notice requirements as a matter of law." *Whitney M. Young, Jr. Health Ctr., Inc. v. New York State Dep't of Ins.*, 152 A.D.2d 835, 836 (N.Y. App. Div. 1989). Clearly Iroquois did not exercise due diligence in ascertaining what coverage was available as it failed to look at the one document creating a basis for is claim for coverage, not only under the Lloyd's Policy, but under

assured is seeking coverage. Thus, the holding that lack of knowledge of coverage is "no excuse" is even more persuasive in this context, where Iroquois had every reason to know of the potential for coverage.

18

all of Horizon's policies. This failure on Iroquois part is unreasonable and renders this excuse invalid at a matter of law.[11]

Iroquois may try to argue that it did not undertake to notify Horizon's insurers of the Incident or its claim as an additional insured, because it relied on Horizon's broker, AON, to notify the appropriate insurers. *Sparacino v. Pawtucket Mut. Ins. Co.*, 50 F.3d 141 (2d. Cir. 1994).[12] This argument, however, would be disingenuous and without merit. First, because Michelle Wieler testified that Iroquois' legal department directed her to personally notify Horizon's insurers of the Incident and Iroquois' potential claim as an additional insured. R. 56.1, ¶ 79;Radzik Aff., Ex. "BB". Pursuant to this direction from Iroquois' legal department, Ms. Wieler personally sent, by certified mail, on behalf of Iroquois, written notice to every other one of Horizon's insurers that issued policies of insurance to Horizon under which Iroquois could assert a claim as an additional insured, excluding Lloyd's Underwriters. Radzik Aff., Ex. "Q". Iroquois did not rely on Horizon's broker to effect notice on its behalf because Iroquois independently undertook, as it was legally obligated,[13] to notify Horizon's insurers. Second, AON was acting as Horizon's insurance broker and Iroquois had no basis to rely on AON to provide notice on its behalf. Radzik Aff. "AA", p. 127.

---

[11]     While the reasonableness of an excuse for late notice is generally a question of fact for the jury, a delay can be found unreasonable as a matter of law if the "proffered excuse is meritless" or "not credible." *Green Door Realty Corp. v. TIG Ins. Co.*, 329 F.3d 282, 287 (2d Cir. 2003); *Underwriters at Lloyd's v. 150 Nassau St. Billiards, Inc.*, 2003 U.S. Dist. LEXIS 23028, *24 (S.D.N.Y. 2003).

[12]     In *Sparacino* the Second Circuit held that it was reasonable for an insured to rely on its insurance broker's statement that the insured's policy did not cover a certain incident. *Sparancio*, 50 F.3d at 144. This holding is not applicable to Iroquois because AON never stated that the Lloyd's Policy did not provide coverage for this Incident and AON was not Iroquois' broker, thus any reliance on AON would be unreasonable. Notwithstanding, it is clear from the record that Iroquois did not rely on AON as it independently notified all of Horizon's insurers.

[13]     Additional insureds have an independent obligation to provide notice of an occurrence that would potentially give rise to a claim by the additional insured. *Travelers Ins. Co. v. Volmar Construction Co.*, 300 A.D.2d 40, 43 (N.Y. App. Div. 2002).

A good-faith belief by the insured that an incident does not trigger coverage under a policy is only excusable if the belief is "reasonable under all the circumstances" and if the insured made reasonable inquiries into the existence of coverage. *See Green Door Realty Corp. v. TIG Ins. Co.*, 329 F.3d 282, 287 (2d Cir. 2003). It was not reasonable for Iroquois to undertake to personally notify every potential insurer, other than Lloyd's, of the Incident without making, *at least,* a cursory investigation into the possibility of coverage under the Lloyd's Policy. First, by looking at the insurance requirements in the Construction Contract, and second, by seeking further information regarding the terms of the actual policy issued by Lloyd's Underwriters to Horizon, both of which Iroquois inexcusably failed to do. Radzik Aff., Ex. "AA", "DD" and "EE". Iroquois never requested a copy of the Lloyd's Policy in order to determine what coverage was actually procured by Horizon, and, if it had a copy, it never reviewed its terms. R. 56.1, ¶ 86. Ms. Wieler testified that the only document she referenced in determining what insurers to notify was the insurance certificate Iroquois' was provided by AON. R. 56.1, ¶ 94. Ms. Wieler testified that, under the direction of the legal department, if the certificate did not say "liability" next to a certain policy, then Iroquois did not provide notice. Radzik Aff., Ex. "BB". Thus, because the portion of the certificate indicating that Lloyd's had issued a Hull & Machinery Policy did not specifically say "liability," Iroquois did not notify Lloyd's. Radzik Aff., Ex. "BB". This basis for determining potential coverage was unreasonable, again, because the Construction Contract specifically required collision liability coverage and it was Iroquois' expectation that the required coverage would be procured. R. 56.1, ¶ 98; Radzik Aff., Ex. "BB". "Where a reasonable person could envision liability, that person has a duty to make some inquiry." *White*, 81 N.Y.2d at 958. Iroquois cannot claim

ignorance of coverage that Iroquois demanded of Horizon by including it as a requirement in the Construction Contract merely because the insurance certificate for the Lloyd's Policy did not say "liability."

An additional insured may be excused from failure to notify the primary insured's insurer if the additional insured did not know that the policy existed but only after the additional assured took steps to determine what cover the primary insured had and was told that none existed. *See 237 Park Investors v. Royal and Son Alliance*, 2004 U.S. Dist. LEXIS 3132 (S.D.N.Y. 2004). Iroquois cannot dispute that it knew the Lloyd's Policy existed, and yet Iroquois took no steps to determine what cover was obtained. Thus, the excuse is unavailable.

Sometimes courts will excuse delay in notice where there are mitigating factors such as personal injury to an unsophisticated individual who was not aware of coverage. However, no such factors apply when the delay is caused by a large corporation with legal advisors responsible for properly notifying insurance companies of potential losses. *See Power Authority v. Westinghouse Elec. Corp.*, 502 N.Y. Supp. 2d 420, 423 (N.Y. App. Div. 1986). Iroquois is a large sophisticated corporation equipped with a legal department to advise on issues such as insurance coverage and notice. Radzik Aff., Ex. "BB". There are no mitigating factors excusing Iroquois' failure to make the requisite notice.

It is possible that Iroquois will argue that they did not provide notice to Lloyd's because they believed that they had sufficient coverage under the other policies issued by insurers that Iroquois did notify. This argument would not stand. Belief that another policy provided coverage over the policy at issue is not a reasonable excuse for delay. *Whitney M. Young, Jr.*

21

*Health Ctr. Inc. v. New York State Dep't of Ins.*, 152 A.D.2d 835, 836 (N.Y. App. Div. 1989);
*see also Travelers Ins. Co. v. Volmar Constr. Co.*, 300 A.D.2d 40, 43 (N.Y. App. Div. 2002).

Iroquois has no excuse for its failure to provide notice and must therefore be precluded
from seeking coverage under the Lloyd's Policy.

c.    **Lloyd's Underwriters are Entitled to Summary Judgment Dismissing Iroquois' Claim for Coverage as an Additional Insured Under the Lloyd's Policy**

Summary judgment is appropriate to determine whether notice was given within a
reasonable time when " (1) the facts bearing on the delay in providing notice are not in dispute
and (2) the insured has not offered a valid excuse for the delay." *Const. Reins. Corp. v.
Stonewall Ins. Co.*, 980 F. Supp. 124, 130 (S.D.N.Y. 1997). As discussed at length herein, it is
undisputed that Iroquois never notified Lloyd's Underwriters of the Incident giving rise to its
claim for coverage as an additional insured. Even if the notice provided by AON, on behalf of
Horizon, could be imputed to Iroquois, such notice was untimely as a matter of law. Further,
Iroquois has no excuse for its failure to notify Lloyd's Underwriters. Iroquois did not rely on
AON to provide notice, and even if it did, such reliance would not have been reasonable given
that AON was the broker for Horizon, not Iroquois. Iroquois failed to exercise even minimal due
diligence in determining the scope of coverage afforded. Iroquois knew, or should have known,
that the Hull & Machinery Policy included collision liability as required by the Construction
Contract. Iroquois, as a party claiming coverage as an additional insured, had an independent
obligation to notify Lloyd's Underwriters of the February 27, 2003 Anchor Drag Incident.
Iroquois unreasonably failed to meet this obligation and is thus precluded from seeking coverage

22

under the Lloyd's Policy. Lloyd's Underwriters are entitled to an order dismissing Iroquois claim on summary judgment.

## III.  Lloyd's Underwriters Did Not, and Could Not, Waive the Defense of Late Notice

Typically, when an insurance company asserts the defense of late notice, the issue of waiver arises, i.e. whether the insurer properly disclaimed coverage under the policy. *See e.g. Travelers Ins. Co. v. Volmar Construction Co.*, 300 A.D.2d 40 (N.Y. App. Div. 2002); *Marino v. New York Tel. Co.*, 1992 U.S. Dist. LEXIS 12705 (S.D.N.Y. 1992). Waiver is not an issue in this case. Since Iroquois never made a demand for coverage under the policy until the Amended Complaint was filed in this action, Iroquois had no occasion to disclaim coverage to Iroquois. *See id.* Further, although not relevant to Iroquois claim, upon receipt of Horizon's late notice, John Hodgett noted the defense of late notice by making a handwritten note on JLT's, (Horizon's London broker) claim file when the claim was presented to Lloyd's Underwriters. Radzik Aff., Ex. "AA" and "L". Further, a reservation of rights letter signed by, among others, John Hodgett, the lead underwriter, and the lead company was submitted to Horizon's brokers soon after Horizon's notice was received. Radzik Aff., Ex. "AA" and "K". Thus, there is no basis to assert that Lloyd's waived its notice defense. *See id.*

## IV.  Iroquois' Failure to Meet the Notice Requirement Was Prejudicial to Lloyd's Underwriters

Although Lloyd's Underwriters need not show prejudice to succeed on this notice defense, there is ample evidence establishing that Lloyd's has suffered prejudiced. Lloyd's Underwriters were deprived of the opportunity to appoint their own surveyors and experts at the time of the incident and before temporary and permanent repairs to the cable were affected. R. 56.1, ¶ 65; Radzik Aff., Ex. "AA", pp. 58-60. Lloyd's Underwriters were deprived of the

23

opportunity to appoint their own counsel at an early stage so that the proper strategies for litigation could be assessed and a proper reserve for claims and expenses could be set. R. 56.1, ¶ 56; Radzik Aff., Ex. "AA", pp. 58-60. Further, whether Lloyd's Underwriters involvement in the matter early on could have facilitated settlement at an early stage and before substantial legal fees were incurred, will never be known.

The most compelling evidence that Lloyd's Underwriters have been prejudiced by the late notice is evidenced by the recent filing of Iroquois in the Texas Limitation Action. Radzik Aff., Ex. "Y". In particular, Iroquois' Motion for Leave to File an Amended Claim and Cross-Claims reveals the substantial prejudice involved. Radzik Aff., Ex. "Y". Iroquois now seeks to amend its cross-claims against a subcontractors in the Eastchester Extension project, Thales Geosolutions, to add the allegation that Thales failed to procure insurance covering Iroquois and/or failed to name Iroquois as an additional insured under Thales' Commercial General Liability and Excess Coverage Policies. Radzik Aff., Ex. "Y". It now appears that Thales' policies may provide coverage over any of Horizon's policies, and, it is now expected that Thales' insurers will respond to this claim (which is asserted 2 ½ years after the incident and 2 years after the Texas Limitation Action was started) by declining coverage to Thales (or any parties it was supposed to insure, i.e. Iroquois) because of late notification. It is submitted that had Lloyd's Underwriters been timely notified of the occurrence and claims arising there from, Lloyd's itself would have undertaken to put Thales and its insurers on notice in a timely fashion.

The foregoing, in conjunction with the adversarial position taken by Iroquois against the primary insured Horizon in the Texas Limitation Action[14], illustrates that Lloyd's Underwriters

---

[14] Radzik Aff., Ex. "Z".

24

are prejudiced because they did not receive notice from Iroquois, Horizon, or anyone, within a reasonable time following the Incident.

## Conclusion

Based on the forgoing, Lloyd's Underwriters request that 1) this Motion be Granted, 2) this Court find that Iroquois is precluded as a matter of law from seeking coverage under the Lloyd's Policy, 3) Iroquois' Complaint as against Lloyd's Underwriters be Dismissed, 4) Iroquois' motion for summary judgment be stricken to the extent it seeks a determination beyond the issue of notice and that any remainder be denied, and 5) for such other relief as the Court may deem just and proper.


Dated:      New York, New York
            August 26, 2005

                        DONOVAN PARRY McDERMOTT & RADZIK
                        Attorney for Defendants, Lloyd's Underwriters

                BY: _____
                        EDWARD C. RADZIK (ER-2473)
                        CAROLYN ELIZABETH MEERS (CM-1464)
                        Wall Street Plaza
                        88 Pine Street – 21ST Floor
                        New York, New York  10005-1801
                        (212) 376-6400

TO:    Richard V. Singleton, Esq.
       John C. Koster, Esq.
       David Jensen, Esq.
       HEALY & BAILLIE, LLP
       *Attorneys for IROQUOIS GAS TRANSMISSION*
        *SYSTEM L.P.*
       61 Broadway, 32nd Floor
       New York, New York,  10006

John P. Vayda, Esq.
NOURSE & BOWLES, LLP
*Attorneys for ASSOCIATED ELECTRIC & GAS*
 *INSURANCE SERVICES LTD.*
One Exchange Plaza
55 Broadway – 30th Floor
New York, New York  10006-3030

Rodney M. Zerbe, Esq.
James Tolan, Esq.
Dechert LLP
*Attorneys for AON RISK SERVICES*
 *OF TEXAS, INC.*
30 Rockefeller Plaza – Room 2305
New York, New York  10112

Charles E. Schmidt, Esq.
KENNEDY LILLIS SCHMIDT & ENGLISH
*Attorneys for AMERICAN HOME*
 *ASSURANCE COMPANY*
75 Maiden Lane
New York, New York  10038