DONOVAN PARRY McDERMOTT & RADZIK
Edward C. Radzik (ER-2473)
Carolyn Elizabeth Meers (CM-1464)
Attorneys for Defendants, Lloyd's Underwriters
Wall Street Plaza
88 Pine Street - 21st Floor
New York, NY 10005-1801
(212) 376-6400

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

IROQUOIS GAS TRANSMISSION
SYSTEM L.P.,

                Plaintiffs,

- against -

ASSOCIATED ELECTRIC & GAS
INSURANCE SERVICES LTD.,
Hamilton, Bermuda; CERTAIN
UNDERWRITERS AT LLOYD'S; AON
RISK SERVICES OF TEXAS, INC.; and
AMERICAN HOME ASSURANCE CO.,

                Defendants.
---------------------------------------------------------------X

**ECF CASE**

05 Civ.2149 (JSR)

**LLOYD'S UNDERWRITERS' RULE 56.1 STATEMENT OF MATERIAL FACTS**

Defendants, Underwriters at Lloyd's and Certain Insurers Subscribing to Marine Hull & Machinery Policy No. LE0280715 (hereinafter "Lloyd's Underwriters"), by and through their attorneys, DONOVAN PARRY McDERMOTT & RADZIK, submit the following statement of facts pursuant to Local Rule 56.1 and in support of Lloyd's Underwriters' motion for summary judgment.

## OVERVIEW

1.   Iroquois Gas Transmission System L.P. ("Iroquois") is seeking a declaration from this Court that Iroquois is covered by a policy of insurance issued by Defendants, Lloyd's Underwriters'. Radzik Aff., Ex. "T", ¶ 8.

2.   The occurrence giving rise to Iroquois' insurance claim took place on February 27, 2003 in the Long Island Sound in New York, where an anchor of a pipe-laying barge, the GULF HORIZON, allegedly struck an underwater power cable, owned by the New York Power Authority ("NYPA"), causing extensive damage (hereinafter "the Incident"). Radzik Aff., Ex. "S", ¶ 15.

3.   The policy that Iroquois is claiming coverage under is a Hull & Machinery policy of marine insurance bearing the number LE0280715 ("the Policy" or "the Lloyd's Policy"). Radzik Aff., Ex. "S", ¶ 30; Radzik Aff., Ex. "E".

4.   The Policy was issued by Lloyd's Underwriters, not to Iroquois, but to Horizon Offshore Contractors, Inc. ("Horizon"), contractors that were hired by Iroquois to perform construction work on a project wholly located within the State of New York. Radzik Aff., Ex. "H".

5.   Horizon is, and was at the time of the Incident, the owner of the GULF HORIZON and the GULF HORIZON was listed as an insured vessel under the Lloyd's Policy. Radzik Aff., Ex. "E".

6.   The Lloyd's Policy incorporated a provision (hereinafter "the Notice Provision") which required that "[i]n the event of any accident or occurrence which could give rise to a claim under this Policy, prompt notice thereof shall be given to the Underwriters." Radzik Aff., Ex. "E"; Radzik Aff., Ex. "F"; Radzik Aff., Ex. "U", No. 44.

7.   The Notice Provision was incorporated under the "Conditions" section of the Lloyd's Policy. Radzik Aff., Ex. "E".

8.   The Notice Provision applies to any party claiming coverage as an insured under the policy. Radzik Aff., Ex. "U", No. 45.

9.   It is undisputed that Iroquois never notified Lloyd's Underwriters of the occurrence, or Incident, giving rise to its present claim for coverage. Radzik Aff., Ex. "BB", p. 18.

10.     It is further undisputed that Horizon did not timely notify Lloyd's Underwriters of the Incident. Radzik Aff., Ex. "J".

11.     Lloyd's did not receive notice from Horizon until December 1, 2004, approximately twenty-one (21) months following the Incident on February 27, 2003. Radzik Aff., Ex. "AA", p. 55.

12.     The only basis for Iroquois' claim of coverage under the Lloyd's Policy is as an additional insured pursuant to the terms of a construction contract ("the Construction Contract") between Iroquois' agent, Iroquois Pipeline Operating Company ("IPOC"), and Horizon, the named insured, for the completion of a project known as the "Eastchester Extension" to be performed within the State of New York. Radzik Aff., Ex. "T", ¶ 40-4.

13.     The Construction Contract required Horizon to maintain certain insurance policies covering the Eastchester Extension project. Radzik Aff., Ex. "U", No.16.

14.     Among other insurance requirements, the Contract provided in its "Schedule of Insurance Requirements" that:

> **2.1**   **Contractor's Insurance.** [Horizon] shall prior to commencing the Work furnish and maintain, at its own expense the following insurance:
>
> . . .
>
> **2.1.8** **Marine Hull and Machinery insurance**, if watercraft are involved, ***including collision liability***, with sister ship clause unamended, and with limits of liability at least equal to the full value of each water craft used in connection with the performance of the Work required under this contract, and with navigational limitations adequate for the Contractor to perform or cause to perform the specified Work. . . .

Radzik Aff., Ex. "H"; Radzik Aff., Ex. "U", No.17. (emphasis added).

15.     The Construction Contract further required that all insurance policies provided by Horizon be endorsed to provide that Iroquois is included as an additional insured. Radzik Aff., Ex. "H"; Radzik Aff., Ex. "U", No. 18.

16. Horizon did maintain a Hull & Machinery policy with Lloyd's Underwriters, Policy No. LE0280715 ("the Lloyd's Policy"), which included coverage for the vessels engaged by Horizon in the Eastchester Extension Project. Radzik Aff., Ex. "E".

17. Horizon was the named insured on the Lloyd's Policy. Radzik Aff., Ex. "U", No. 19.

18. Horizon's plowing and pipe-laying barge the GULF HORIZON was listed as an insured vessel under the Lloyd's Policy. Radzik Aff., Ex. "U", No. 21.

19. The GULF HORIZON was stationed in the Long Island Sound in New York during the Eastchester Extension Project and the crew worked and lived on the barge from November 2002 until April 2003. Radzik Aff., Ex. "U", No. 22.

20. Iroquois is not specifically listed or identified as an insured on the Lloyd's Policy. Radzik Aff., Ex. E"; Radzik Aff., Ex. "U", No. 23.

21. The Lloyd's Policy is governed by United States law and is subject to United States jurisdiction. Radzik Aff., Ex. "E"; Radzik Aff., Ex. "U", No. 24.

22. The Lloyd's Policy "Institute Service of Suit Clause (U.S.A.)" appoints New York agents for service of process in New York. Radzik Aff., Ex. "E"; Radzik Aff., Ex. "U", No. 16.

23. The Lloyd's Policy contains an incorporation provision stating that:

> It is understood and agreed that ***where required by contract***, bid or work order, ***Additional Insured and/or Waivers of the Rights of Subrogation are automatically included hereunder***, subject further to Notice Clauses as may be required by written contract only and that coverage provided hereunder shall be primary in respect of any coverage carried by said additional insured where required by written contract.

Radzik Aff., Ex. "E"; Radzik Aff., Ex. "U", No. 16. (emphasis added).

24. It is this language of the Lloyd's Policy upon which Iroquois bases its claim for coverage. Radzik Aff., Ex. "E"; Radzik Aff., Ex. "T", ¶ 40.

25.  Thus, any coverage afforded to Iroquois under the Lloyd's Policy is governed by the terms and conditions of the Construction Contract including the choice of law provision. Radzik Aff., Ex. "T", ¶ 40; Radzik Aff., Ex. "H".

26.  The Construction Contract between Iroquois and Horizon contains both a choice of law provision and forum selection provision selecting a New York forum and application of New York law. Radzik Aff., Ex. "U", No. 11; Radzik Aff., Ex. "H".

27.  The Construction Contract between Iroquois and Horizon specifically provides that:

> The Contract shall be governed by and construed and enforced in accordance with, the substantive laws of the State of New York, exclusive of conflicts of law provisions. [Horizon] and [Iroquois] agree that *any action or proceeding arising from or in connection with this Contract shall be brought in a state or federal court of appropriate jurisdiction in New York State.* In the event of any litigation with respect to this Contract or any instrument or document executed and delivered in connection herewith, each party waives the right to a trial by jury.

Radzik Aff., Ex. "H"; Radzik Aff., Ex. "U", No. 15. (emphasis added).

28.  This forum selection and choice of law provision was not part of a form contract, but was specifically negotiated and fought for by Iroquois. Radzik Aff., Ex. "W".

29.  Horizon requested a clause calling for arbitration in Houston, Texas in the event that any disputes arise under the contract. Radzik Aff., Ex. "U", No.12; Radzik Aff., Ex. "W".

30.  Iroquois refused to agree to Texas arbitration and insisted on a New York forum with New York law since the work would be performed in New York and the project would be heavily regulated by local New York governments and agencies. Radzik Aff., Ex. "U", No. 13; Radzik Aff., Ex. "W".

31.  Thus, any disputes arising from or in connection with the Contract must be adjudicated in New York pursuant to New York law, including insurance coverage disputes. Radzik Aff., Ex. "H".

32. The Incident, for which Iroquois is now claiming coverage under the Lloyd's Policy, arose out of the performance of the Construction Contract in New York State. Radzik Aff., Ex. "T".

33. Determination of any coverage afforded to Iroquois under the Lloyd's Policy must be made in accordance with the terms of the Construction Contract and therefore, governed by and interpreted pursuant to New York law as required by the Contract and specifically negotiated by Horizon and Iroquois.

## THE NEW YORK EASTCHESTER EXTENSION PROJECT

34. Iroquois is a limited partnership organized and existing under the laws of the State of Delaware, having its principal place of business in Connecticut. Radzik Aff., Ex. "U", No. 1.

35. Iroquois is the owner of a 412-mile natural gas pipeline extending from the United States/Canadian border at Waddington, New York to South Commack, New York with a main line extension from Northport, New York, to the Bronx ("the Pipeline"). Radzik Aff., Ex. "U", No. 2.

36. The Pipeline is operated by Iroquois' agent, Iroquois Pipeline Operating Company ("IPOC"), headquartered in Shelton, Connecticut. Radzik Aff., Ex. "U", No. 3.

37. Iroquois and IPOC do business, operate the Pipeline, and maintain places of business in New York. Radzik Aff., Ex. "U", No. 4.

38. The majority of the Pipeline is located in the state of New York with a small portion extending across the southwest corner of Connecticut. Radzik Aff., Ex. "U", No. 5.

39. The Construction Contract between Iroquois and Horizon, pursuant to which Iroquois claims status as an additional insured under the Lloyd's Policy, was dated April 12, 2002, and was for Horizon to serve as general contractor in the construction of a 35-mile underwater extension to Iroquois' existing Pipeline to cross the Long Island Sound between Northport, New York and Hunts Point, New York. Radzik Aff., Ex. "U", No. 6.

40. The construction project consisting of the above described pipeline extension, and the construction of five compressor stations in upstate New York, is known collectively as the "Eastchester Extension" of the Iroquois Pipeline. Radzik Aff., Ex. "U", No. 7.

41. The Eastchester Extension portion of the Pipeline is located solely within New York State. Radzik Aff., Ex. "U", No. 8.

42. The purpose of the Eastchester Extension is to provide natural gas for use in electrical power generation in New York and to provide natural gas to residential, industrial and commercial customers in New York. Radzik Aff., Ex. "W".

43. In preparation for the Eastchester Extension project, another subcontractor of Iroquois retained Thales GeoSolutions ("Thales") to conduct an underwater survey of the route for the new pipeline. Radzik Aff., Ex. "W".

44. In order the obtain the proper and necessary approvals for the construction of the Eastchester Extension, Iroquois filed applications with, and received permits form the following agencies: the Federal Energy Regulatory Commission in Washington D.C., the New York offices of the United States Army Corps of Engineers, the New York Department of Environmental Conservation, the New York Department of State, and the New York State Office of General Services. Radzik Aff., Ex. "W", ¶ 10.

45. The Eastchester Extension of the pipeline was designed to cross several existing electrical cables located beneath the Long Island Sound. Radzik Aff., Ex. "W", ¶ 11.

46. One of the cable systems, the Y-49, consists of four cables owned by The Power Authority of the State of New York (NYPA). Radzik Aff., Ex. "W", ¶ 11.

47. Iroquois and NYPA negotiated a Crossing Agreement dated October 30, 2002, whereby NYPA gave its consent to the crossing of the pipeline over the electrical cables in consideration of Iroquois agreement to indemnify NYPA for any damages to the Y-49 cables arising out of the crossing of the pipeline. Radzik Aff., Ex. "N".

48. The Crossing Agreement required Iroquois to procure insurance to cover its contractual liability to NYPA and to name NYPA as an additional insured on Iroquois' insurance policies. Radzik Aff., Ex. "N".

49. The Crossing Agreement contained a New York choice of law provision and a New York forum selection clause for the adjudication of any disputes arising under the Crossing Agreement. Radzik Aff., Ex. "N".

50. The Crossing Agreement provides that if a cable is damaged or rendered inoperable during the construction of the pipeline due to the "negligence, acts, omissions or willful misconduct of Iroquois Gas, its contractors, subcontractors, agents or employees", then Iroquois is obligated to pay for all repairs to the cable, as well as providing equivalent replacement electrical capacity during the time the cable it out of service. Radzik Aff., Ex. "N.

51. This means that Iroquois owes NYPA complete contractual indemnity for all of the repair and loss of use damages sustained by NYPA. Radzik Aff., Ex. "N".

52. The Construction Contract between Iroquois and Horizon does not provide for indemnity for contractually assumed obligations to others. Radzik Aff., Ex. "H".

53. Rather, the Construction Contract provides that each party is liable to the other for its own negligence. Radzik Aff., Ex. "H".

54. Horizon's work under the land portion of the Contract required pipe to be installed underground in horizontally directionally drilled holes in two locations, Hunts Point and Huntington, New York. Easements were required and obtained from New York City and the Town of Huntington to allow Horizon to perform this work. Radzik Aff., Ex. "W".

55. Horizon's marine work under the Contract was to proceed in multiple stages. After the equipment preparation and mobilization, the pipe segments would be welded together on the deck of a barge, which would serve as a floating assembly line work platform. The welded continuous pipe then would be laid (concurrent with ongoing welding, inspection and coating activities) in the bottom of the Long Island Sound along the intended route. Concrete mattresses were to be placed over NYPA's cables where the pipeline crossed tem. Dependent upon the location, the sea bottom would either be pre-dredged or the pipe would be plowed/lowered into a trench on the sea bottom. In some locations the pipe was backfilled using either conventional clamshell equipment or a plow. The pipe was lowered and/or buried to depths of up to 8 feet. Additional concrete mattresses were to be placed over the pipeline where it crossed NYPA's cables and rock placed on the pipeline in between NYPA's cables for stability purposes and to provide protective cover. Radzik Aff., Ex. "W".

56. In the fall of 2002 Horizon sent employees, materials and equipment, including its pipe lay barge, the GULF HORIZON from its fleet of vessels to perform the job in New York. Iroquois neither designated this vessel nor selected it, but did agree to pay for modifications to the barge proposed by the contractor as necessary to perform the work contemplated under the Contract. Radzik Aff., Ex. "W", ¶ 22.

57.   The GULF HORIZON has no motive power of its own. Thus, during pipe laying operations, the barge advances by using its mooring winches and anchors and with the help of assist tugs. Horizon contracted for the service of assist tugs. Radzik Aff., Ex. "W", ¶ 23.

## THE NEW YORK INCIDENT

58.   On or about February 27, 2003, while Horizon's barge the GULF HORIZON was performing pipe laying operations, as part of the Eastchester Extension project, in the Long Island Sound one of the NYPA's underwater cables (the Y-49 cable) tripped off line. Radzik Aff., Ex. "W", ¶¶ 31-2.

59.   It is alleged that one of the anchors of the GULF HORIZON struck and damaged NYPA's Y-49 cable. Radzik Aff., Ex. "U", No. 43.

60.   Immediately following the Incident, NYPA activated its emergency response and maintenance subcontractor to locate the source and extent of the damage to the Y-49 cable system and to minimize the escape of the liquid coolant in the cable and effectuate temporary repairs of the cable system. These temporary repairs all took place in New York. Radzik Aff., Ex. "W", ¶ 34.

61.   Shortly after the Incident, Iroquois commenced an investigation into the cause of the damage. Radzik Aff., Ex. "W", ¶ 37.

62.   Iroquois retained surveyors to conduct underwater surveys to assess the cause of the Incident and resulting damage. Radzik Aff., Ex. "W", ¶ 38.

63.   Additionally, following the Incident, experts were retained to monitor the repair efforts in New York. Radzik Aff., Ex. "U", No. 77.

64.   Lloyd's Underwriters were not notified of the retention of surveyors, experts, or the repair efforts. Radzik Aff., Ex. "AA".

65.   Had Lloyd's Underwriters been promptly notified, they would have appointed surveyors, experts and attorneys to analyze and evaluate the evidence and make an early determination in respect of liability and coverage and assess whether an early settlement would be appropriate before incurring any substantial legal and expert expenses. Lloyd's Underwriters would have also been able to set up an appropriate reserve if coverage was warranted. Radzik Aff., Ex. "AA", pp. 58-60.

66.   Ongoing investigation and repair work ensued in addition to arrangements for completion of the Eastchester Extension Project. Radzik Aff., Ex. "W".

67.   Permanent repairs to the NYPA Y-49 cable line system were complete on or about September 12, 2005. Radzik Aff., Ex. "W", ¶¶ 46-7.

## **TEXAS LIMITATION ACTION**

68.   Following the Incident, Horizon filed a limitation action in United States District Court for the Southern District of Texas seeking to limit its liability for any damage caused by the Incident, if any, to the value of the Gulf Horizon (approximately $19 Million). *In re Horizon Vessels Inc, et al.*, 4:03-CV-03280; Radzik Aff., Ex. "Z".

69.   Among others, Iroquois and NYPA filed claims in the limitation action. Iroquois alleges that Horizon is responsible for all of NYPA's and LIPA's alleged damages and is seeking indemnification for any amount Iroquois is found liable to pay. *In re Horizon Vessels Inc, et al.*, 4:03-CV-03280; Radzik Aff., Ex. "Z".

70.   Additionally, NYPA filed a cross-claim against Iroquois for breach of the Crossing Agreement. *In re Horizon Vessels Inc, et al.*, 4:03-CV-03280; Radzik Aff., Ex. "Z".

71.   Both Iroquois and NYPA filed motions to transfer the Limitation Action to New York. *In re Horizon Vessels Inc, et al.*, 4:03-CV-03280; Radzik Aff., Ex. "Z.

72.   Iroquois argued that transfer was warranted because all the relevant disputes were governed by New York law. Radzik Aff., Ex. "V".

73.   The Southern District of Texas has not yet adjudicated the cause of the damage to the NYPA power cable. Radzik Aff., Ex. "Z".

74.   Iroquois is seeking coverage under Horizon's Lloyd's Policy as an additional insured to cover its legal fees in the Limitation Action, thus far and continuing, and for indemnification in the event that Iroquois is adjudged liable for any of the damages caused to the Y-49 cable. Radzik Aff., Ex. "T".

## IROQUOIS' FAILURE TO NOTIFY LLOYD'S OF THE OCCURRENCE AND HORIZON'S LATE NOTICE

75. Iroquois has no excuse for its failure to place Lloyd's Underwriters on notice of the Incident and its claim for coverage as an additional insured. Radzik Aff., Ex. "BB".

76. On or about March 13, 2003, NYPA put Iroquois on notice that they were holding Iroquois responsible for all damages arising out of the repairs and loss of use of the damaged Power Cables. Radzik Aff., Ex. "U", No. 49.

77. Additionally, the Long Island Power Authority (LIPA), who claims to be a primary user of the damaged cable's electrical transmissions capability, stated in the same letter that it intends to claim against Iroquois for its losses arising out of the loss of use of the Y-49 cable. Radzik Aff., Ex. "W", ¶ 48.

78. NYPA's and LIPA's claims at the time totaled approximately $21,000,000. Radzik Aff., Ex. "W", ¶ 48,

79. Michelle Weiler, Iroquois' Senior Accountant, was instructed by Iroquois' legal department to report the Incident to Iroquois' and Horizon's insurance providers. Radzik Aff., Ex. "BB", p. 10.

80. Ms. Weiler stated that Bill Arnold, Horizon's risk manager, told her that AON was notifying all of Horizon's insurers about the incident. Radzik Aff., Ex. "BB", p. 12.

81. By notices dated May 4, 2003 through July 16, 2003, AON, Horizon's insurance broker at the time, undertook, on behalf of Horizon, to notify the following of Horizon's insurers of the Incident:

    AEGIS – Policy Number ARS-3175

    Steamship Mutual Underwriting – Policy Number ARS-3176

    American Home Assurance Co. – Policy Number ARS-3177

    XL Specialty Insurance Co. – Policy Number ARS-3215

    Liberty Insurance Underwriters - Policy Number ARS-3215

>American Home Assurance Co. - Policy Number ARS-3215

>Navigators Insurance Co. - Policy Number ARS-3215

Radzik Aff., Ex. "P.

 82. Notwithstanding the statements of Mr. Arnold, Ms. Weiler testified that Iroquois undertook to notify Horizon's insurers directly and that she was directed to do so by Iroquois' legal department. Radzik Aff., Ex. "BB", pp. 12 and 17.

 83. By letters dated March 17, 2003 and March 18, 2003, Iroquois personally undertook to notify the following of Horizon's insurers of the Incident:

>AEGIS – Protection and Indemnity Policy Number ARS-3175

>American Home Insurance Co.

>Excess Liabilities Policy Number ARS-3215 and General and Excess Liabilities Policy Number ARS-3177

>Navigators Insurance Company – Excess Liabilities Policy Number ARS-3215

>Steamship Mutual Underwriting – Protection and Indemnity Policy Number ARS-3176

>Liberty Insurance Underwriters – Excess Liabilities Policy Number ARS-3215

>Navigators Insurance Co. – Excess Liabilities Policy Number ARS-3215

>XL Specialty Insurance Co. – Excess Liabilities Policy Number ARS-3215

Radzik Aff., Ex. "Q".

 84. Iroquois never sent notice to Horizon's Hull & Machinery underwriters (Lloyd's Underwriters). Radzik Aff., Ex. "BB", p. 18.

85. Ms. Weiler stated that notice was not given to Lloyd's because Iroquois was not aware that the Lloyd's Policy included collision liability coverage. Radzik Aff., Ex. "BB", p. 19.

86. In determining what insurers to notify following the Incident, Iroquois never looked at the insurance requirements of its own Construction Contract with Horizon, nor did it request copies of Horizon's policies. Radzik Aff., Ex. "BB".

87. Ms. Weiler said that Iroquois did not become aware the Lloyd's Policy included collision liability coverage until November or December of 2004. Radzik Aff., Ex. "BB", p. 19.

88. Even upon realization of the collision liability coverage, Iroquois never notified Lloyd's Underwriters of the incident. Radzik Aff., Ex. "BB", p. 21.

89. Ms. Weiler stated that notice was not made to Lloyd's because Horizon's new insurance broker (McGriff) had told her that AON had notified Lloyd's of the Incident. Radzik Aff., Ex. "BB", p. 21.

90. The only notice ever received by Lloyd's Underwriters was on December 1, 2005 from JLT, Horizon's London broker, by way of a Report of Loss from AON, Horizon's Texas broker, dated May 17, 2004. Radzik Aff., Ex. "AA"; Radzik Aff., Ex. "L".

91. The late notice sent by AON on behalf of Horizon to Lloyd's Underwriters does not make any reference to Iroquois. Radzik Aff., Ex. "J".

92. Following this late notice, Lloyd's Underwriters, through their lead underwriter, prepared a reservation of rights signed, *inter alia*, by the lead underwriter and lead insurance company of the Lloyd's Policy, on or about December 4, 2005. Radzik Aff., Ex. "AA"; Radzik Aff., Ex. "K".

93. Ms. Weiler stated that the insurance portion of the Construction Contract contained the standard insurance provisions required by Iroquois' in all of its contracts with contractors. Radzik Aff., Ex. "BB", p. 25.

94. Ms. Weiler stated that when determining which of Horizon's insurer's to notify, Iroquois relied exclusively on the insurance certificate provided by AON and did not refer to the insurance provisions of the Construction Contract. Radzik Aff., Ex. "BB", pp.26-7; Radzik Aff., Ex. "DD"; Radzik Aff., Ex. "EE".

95. Thus, according to Ms. Weiler, the only reason that Iroquois did notify Lloyd's of the Incident was because the certificate of insurance provided by AON did not specifically say "liability." Radzik Aff., Ex. "BB", p. 27.

96. However, Iroquois' Construction Contract with Horizon specifically required Horizon to procure Hull & Machinery coverage "including collision liability." Radzik Aff., Ex. "H".

97. Thus, Iroquois knew, or should have known, that the Incident created a potential insurance claim under the Lloyd's Policy. Radzik Aff., Ex. "H"; Radzik Aff., Ex. "DD"; Radzik Aff., Ex. "EE".

98. When Iroquois entered into the Construction Contract with Horizon, Iroquois expected Horizon to procure all the insurance required under the Contract and name Iroquois as an additional insured under the required policies. Radzik Aff., Ex. "BB", p. 79.

99. In addition to notifying Iroquois' own insurers and Horizon's insurers, except for Lloyd's Underwriters, Iroquois notified various other subcontractors and their insurers of the incident. Radzik Aff., Ex. "BB", pp. 54-7.

100. Iroquois primary general liability insurer Liberty Mutual has been defending Iroquois in connection with the Incident for which it now seeks coverage from Lloyd's Underwriters. Radzik Aff., Ex. "BB", pp. 43-4.

Dated:   New York, New York
         August 26, 2005

>                           DONOVAN PARRY McDERMOTT & RADZIK
>                           Attorneys for Defendants, Lloyd's Underwriters
>
>                           BY: _____
>                               EDWARD C. RADZIK (ER-2473)
>                               CAROLYN ELIZABETH MEERS (CM-1464)
>                               Wall Street Plaza
>                               88 Pine Street
>                               New York, New York 10005-1801
>                               (212) 376-6400
>                               (FILE: GM-05-3502 ECR/CEM)

TO:   Richard V. Singleton, Esq.
John C. Koster, Esq.
David D. Jensen, Esq.
Healy & Baillie
*Attorneys for Plaintiff, Iroquois Gas Transmission System L.P.*
61 Broadway - 32nd Floor
New York, NY 10006-2701
(212) 709-9264

John P. Vayda, Esq.
*Attorneys for Defendant, Associated Electric & Gas Insurance Services Ltd., Hamilton, Bermuda (AEGIS)*
Nourse & Bowles
One Exchange Plaza
55 Broadway - 30th Floor
New York, NY 10006-3030
(212) 952-6202

Rodney M. Zerbe, Esq.
James Tolan, Esq.
*Attorneys for Defendant, AON Risk Services of Texas, Inc.*
Dechert LLP
30 Rockefeller Plaza - Room 2305
New York, NY 10112
(212) 698-3500

Charles E. Schmidt, Esq.
Kennedy Lillis Schmidt & English
*Attorneys for Defendant, American Home Assurance Company*
75 Maiden Lane
New York, NY 10038
(212) 430-0800