HEALY & BAILLIE, LLP
Attorneys for Plaintiff
61 Broadway
New York, NY 10006-2834
(212) 943-3980
Richard V. Singleton (RS-9489)
John C. Koster (JK-4086)
David D. Jensen (DJ-2261)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IROQUOIS GAS TRANSMISSION SYSTEM L.P., | **(ECF Case)** |
| Plaintiff, | 05 Civ. 2149 (JSR) |
| -against- | |
| ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LTD., Hamilton, Bermuda; CERTAIN UNDERWRITERS AT LLOYD'S; AON RISK SERVICES OF TEXAS, INC.; and AMERICAN HOME ASSURANCE CO., | |
| Defendants. | |

## IROQUOIS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT LLOYD'S
## MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .............................................................................2

FACTS.............................................................................................................2

ARGUMENT.....................................................................................................5

POINT I .........................................................................................................5
CHOICE OF LAW:  CHOICE OF LAW DETERMINATIONS TURN ON
CONTACTS WITH THE FORMATION OF THE INSURANCE CONTRACT,
NOT ON CONTACTS WITH THE DISPUTE TRIGGERING COVERAGE,
AND IN THIS CASE MANDATE THE APPLICATION OF TEXAS LAW.......5

       a)    Federal maritime law governs the choice-of-law analysis ..6

       b)    The relevant choice-of-law "contacts" pertain to the
            formation of the insurance contract......................................7

       c)    Application of the Advani choice-of-law factors ..............10

       d)    The contacts relating to the Construction Contract are
            irrelevant..........................................................................11

POINT II........................................................................................................17
LATE NOTICE AND PREJUDICE:  TEXAS FOLLOWS THE MAJORITY
APPROACH AND REQUIRES A SHOWING OF ACTUAL PREJUDICE ......17

       a)    There is no colorable dispute that Texas law requires
            insurers to demonstrate prejudice ......................................17

       b)    Lloyd's proffered "prejudice" fails as a matter of law......19

       c)    Lloyd's did not timely disclaim coverage .........................20

POINT III ......................................................................................................20
RESPONDING TO LLOYD'S NEW YORK LAW CONTENTIONS
REGARDING NOTICE ....................................................................................20

       a)    Iroquois provided the notice required by the Policy..........20

       b)    Even if New York law applies, Iroquois can show that it
            acted reasonably in providing notice to Lloyd's ...............22

POINT IV ............................................................................................24
RESPONSE TO LLOYD'S POINT IV REGARDING HORIZON'S SUB-
CONTRACTOR THALES.................................................................................24

CONCLUSION ...................................................................................................25

## TABLE OF AUTHORITIES

### FEDERAL CASES

*5801 Associates, Ltd. v. Cont'l Insurance Co.*, 983 F.2d 662 (5th Cir. 1993)...................14

*AGIP Petroleum Co. v. Gulf Island Fabrication, Inc.* , 920 F.Supp. 1318, 1996
   AMC 1857 (S.D. Tex. 1996) ........................................................................................15

*Advani Enterprises, Inc. v. Underwriters at Lloyd's*, 140 F.3d 157 (2d Cir. 1998) ........7, 8

*Albany Insurance Co. v. Anh Thi Keiu*, 927 F.2d 882, 1991 AMC 2211 (5th Cir.
   1991)...............................................................................................................................9

*Amador v. A/S J. Ludwig Mowinckels Rederi*, 224 F.2d 437 ...........................................10

*America Gulf VII, Inc. v. Otto Candies, Inc.*, No. 94-3905, 1997 U.S.Dist. LEXIS
   13414 (E.D. La. Aug. 28, 1997) ..................................................................................15

*American Gulf VII, Inc. v. Otto Candies, Inc.*, No. 94-3905, 1997 U.S.Dist.
   LEXIS 20224 (E.D. La. Dec. 11, 1997) ......................................................................14

*Am. S.S. Owners Mut. Protection & Indem. Ass'n, Inc. v. Alcoa S.S. Co.*, 2005
   AMC 1498 (S.D.N.Y. 2005).........................................................................................10

*Baza v. Chevron Oil Serv. Co.*, 972 F.Supp. 375 (E.D. La.), <u>vacated in part on
   other grounds</u>, 22 F. Supp. 2d 556 (E.D. La. 1996) .....................................................14

*Capozziello v. Brasileiro*, 443 F.2d 1155, 1971 AMC 1477 (2d Cir. 1971) .......................6

*Clayton Williams Energy, Inc. v. National Union Fire Insurance Co. of La.*, No.
   03-2980, 2004 U.S.Dist. LEXIS 22094 (E.D. La. Nov. 2, 2004)................................15

*Comm'l Union Insurance Co. v. Horne*, 787 F.Supp. 337 (S.D.N.Y. 1992) .....................10

*Crocker v. National Union Fire Insurance Co.*, No. SA-04-CA-389, 2005
   U.S.Dist. LEXIS 2806 (W.D. Tex. Feb. 15, 2005)......................................................19

*Crosson v. N.V. Stoomvaart Mij "Nederland"*, 409 F.2d 865 (2d Cir. 1969)....................10

*Dicola v. America S.S. Owners Mutual Protection & Indemnity Association, Inc.*,
   153 F.3d 65 (2d Cir. 1998) ...........................................................................................10

*U.S. Fidelity & Guaranty Co. v. Williams*, 676 F.Supp. 123, 1988 AMC 2006
   (E.D. La. 1987), <u>rev'd in part on other grounds</u>, 884 F.2d 223 (5th Cir. 1989)...........14

*Hanson Products Co. v. Americas Insurance Co.*, 108 F.3d 627 (5th Cir. 1997) ............. 18

*Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306 (1970) ......................................................... 7

*International Multifoods Corp. v. Commercial Union Insurance Co.*, 98
    F.Supp.2d 498 (S.D.N.Y. 2000), rev'd in part on other grounds, 309 F.3d 76
    (2d Cir. 2002) ..................................................................................................... 12

*Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 ..................................... 6

*Lauritzen v. Larsen*, 345 U.S. 571 (1953) .......................................................................... 6

*Matador Petroleum Corp. v. St. Paul Surplus Lines Insurance Co.*, 174 F.3d 653
    (5th Cir. 1999) .................................................................................................... 18

*Md. Casualty Co. v. Cont'l Casualty Co.*, 332 F.3d 145 (2d Cir. 2003) ...................... 10, 16

*National Union Fire Insurance Co. v. Travelers Indemnity Co.*, 210 F.Supp.2d
    479 (S.D.N.Y. 2002) ............................................................................................ 13

*Norfolk S. Railway Co. v. James N. Kirby, Pty Ltd.*, 125 S.Ct. 385 (2004) ....................... 7

*Ridglea Estate Condominium Association v. Lexington Insurance Co.*, 398 F.2d
    332 (5th Cir. 2005) .............................................................................................. 18

*Royal Insurance Co. of America v. Deep Sea International*, No. 02 Civ. 3175,
    2004 U.S.Dist. LEXIS 5948 (S.D.N.Y. Mar. 15, 2004) ......................................... 8

*Royal Insurance Co. of America v. Sportswear Group, LLC*, 85 F.Supp.2d 275,
    2001 AMC 154 (S.D.N.Y. 2000) ..................................................................... 6, 10

*St. Paul Guardian Insurance Co. v. Centrum G.S. Ltd.*, No. 3:97-CV-1478, 2003
    U.S.Dist. LEXIS 15337 (N.D. Tex. Aug. 29, 2003) ............................................. 19

*State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409 (2d Cir.
    1990) ................................................................................................................... 12

*Sundance Cruises Corp. v. America Bureau of Shipping*, 7 F.3d 1077 (2d Cir.
    1993) ..................................................................................................................... 7

*Thomas v. NASL Corp.*, No. 99 Civ. 11901, 2000 U.S.Dist. LEXIS 16761
    (S.D.N.Y. 2000) .................................................................................................. 14

*Transamerica Leasing, Inc. v. Institute of London Underwriters*, 7 F.Supp.2d
    1340 (S.D. Fla. 1998), rev'd on other grounds, 267 F.3d 1303 (11th Cir. 2001) ........ 14

*Travelers Indemnity Co. of Conn. v. Presbyterian Healthcare Resources*, No. 3:02-CV-1881, 2004 U.S.Dist. LEXIS 6373 (N.D. Tex. Feb. 25, 2004) ................... 19

*Truehart v. Blandon*, 884 F.2d 223 (5th Cir. 1989) ...................................................... 9, 14

*U.S. Underwriters Insurance Co. v. Falcon Construction Corp.*, No. 02 Civ. 4182, 2003 U.S.Dist. LEXIS 14817 (S.D.N.Y. Aug. 23, 2003) .................................. 21

*Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310 (1955) ................. 7, 17

## STATE CASES

*America Manufacturings Mutual Insurance Co. v. CMA Enterprises, Ltd.*, 246 A.D.2d 373, 667 N.Y.S.2d 724 (1st Dept. 1998) ....................................................... 20

*Brandon v. Nationwide Mutual Insurance Co.*, 97 N.Y.2d 491, 743 N.Y.S.2d 53 (2002) ............................................................................................................................ 22

*Chiles v. Chubb Lloyds Insurance Co.*, 858 S.W.2d 633 (Tex. Ct. App. 1993) ................ 18

*Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181 (Tex. Ct. App. 2003) ............................................................................................................... 20

*Dairyland County Mutual Insurance Co. v. Roman*, 498 S.W.2d 154 (Tex. 1973) .......... 17

*Employers Casualty Co. v. Glen Falls Insurance Co.*, 484 S.W.2d 570 (Tex. Ct. App. 1972) ...................................................................................................................... 22

*Great Canal Realty Corp. v. Seneca Ins. Co.*, No. 148 SSM 13, 2005 N.Y. LEXIS 1257 (June 16, 2005) ..................................................................................................... 22

*Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691 (Tex. 1994) ...................................... 18

*Kimble v. Aetna Casualty & Surety Co.*, 767 S.W.2d 846 (Tex. Ct. App. 1989) .............. 17

*Lennar Corp. v. Great America Insurance Co.*, No. 14-02-00860-CV, 2005 Tex.App. LEXIS 4214 (Tex. Ct. App. June 2, 2005) .................................................. 18

*P.G. Bell Co. v. United States Fidelity & Guaranty Co.*, 853 S.W.2d 187 (Tex. Ct. App. 1993) ............................................................................................................... 19

*Seemann v. Sterling Insurance Co.*, 267 A.D.2d 677, 699 N.Y.S.2d 542 (3d Dept. 1999) ............................................................................................................................. 23

*Travelers Insurance Co. v. Volmar Construction Co.*, 300 A.D.2d 40, 752 N.Y.S.2d 286 (1st Dept. 2002) ...................................................................................... 20

*Wheeler v. Allstate Insurance Co.*, 592 S.W.2d 2 (Tex. Ct. App. 1979)............................17

*Winstead v. Uniondale Union Free Sch. District*, 201 A.D.2d 721, 608 N.Y.S.2d
    487 (2d Dept. 1994)....................................................................................................23

## STATE STATUTES

N.Y. Ins. Law §§ 3103, 3104 ............................................................................................9

Tex. Ins. Code Art. 21.42 ..................................................................................................9

## MISCELLANEOUS

Charles Alan Wright, et al., Federal Practice and Procedure § 4520 ...............................6

Rest. 2d Conflicts of Law § 193 ......................................................................................10

Rest. 2d Contracts §6......................................................................................................9

This memorandum of law is submitted on behalf of the plaintiff Iroquois Gas Transmission System L. P., ("Iroquois") in opposition to the motion for summary judgment of defendant Certain Underwriters at Lloyd's ("Lloyd's"), filed on August 26, 2005 pursuant to this Court's order of July 25, 2005.

## PRELIMINARY STATEMENT

Lloyd's motion for summary judgment should be denied and Iroquois' motion for summary judgment should be granted solely on the agreed facts. Under no circumstances should Lloyd's motion for summary judgment be granted as the material facts in dispute make summary judgment in favor of Lloyd's wholly inappropriate at this time.[1]

The resolution of the coverage issues amongst the various underwriters (AEGIS, Lloyd's and American Home) and the insurance broker Aon, turns on this court's determination of the instant summary judgment motions. The relative positions of the underwriters, *inter se*, will be left in a hopeless muddle absent a clear determination of Lloyd's status. Moreover, a resolution of the threshold choice of law issue is fundamental to a resolution of virtually all the other issues in dispute between Iroquois and Lloyd's.

## FACTS

The general facts are otherwise adequately stated in the Parties' respective submissions and need be but briefly addressed herein.

---

[1] A number of facts are undisputed as reflected in Iroquois' response to Lloyd's Rule 56.1 Statement. Unfortunately, Lloyd's Statement also contains a number of "ultimate" facts (or "legal conclusions," as the case may be), as opposed to material facts, and these "facts" are appropriately controverted in Iroquois' Counter-Statement of Facts pursuant to Rule 56.1. As used herein, references to Lloyd's Rule 56.1 Statement are abbreviated "Lloyd's R. 56.1" and references to Iroquois Rule 56.1 Statement are abbreviated "Iroquois R. 56.1." References to Iroquois Statement of Additional Material Facts & Response to Lloyd's Rule 56.1 Statement are abbreviated "Iroquois Supp. R. 56.1."

a.    **Notice: What really happened**

Lloyd's statement of facts places a substantial slant on the events surrounding Iroquois' claim for coverage under Horizon's Hull Policy with Lloyd's. After the Anchor Drag Incident on February 27, 2003, Aon Risk Services of Texas, Inc., the Texas insurance agency that placed the Hull Policy, undertook to notify all of Horizon's insurers of the incident. Lloyd's R. 56.1, ¶ 81; Iroquois R. 56.1, ¶ 44. Iroquois independently reported the loss to a number of insurance companies, including the insurers of Horizon. Lloyd's R. 56.1, ¶¶ 82-83; Iroquois R. 56.1, ¶ 47. Aon subsequently advised Iroquois that it had notified "all appropriate insurers." Iroquois R. 56.1, ¶ 45. In addition, Aon prepared a chart showing which of the Horizon policies were applicable to the incident. Iroquois R. 56.1, ¶ 46. Over a year later, at the request of another insurer, Aon sent a notice of loss to Lloyd's on May 17, 2004. Iroquois R. 56.1, ¶¶ 50-52, ex. 15.

Iroquois' employee Michelle Wieler testified she did not identify the Hull Policy earlier because the Aon document that she worked from to determine which insurers were involved did not indicate that the Hull Policy provided liability coverage. Lloyd's R. 56.1, ¶¶ 85, 94-95; Iroquois R. 56.1, ¶ 48. In addition, both Aon and Lloyd's testified that the coverage provided by the Hull Policy essentially duplicated the coverage provided by Associated Electric & Gas Insurance Services (Aegis), an unusual coverage situation, and that this could be a source of confusion for an insured. Iroquois R. 56.1, ¶ 49. Nevertheless, Iroquois was eventually able to determine that the Hull Policy was applicable and contacted Horizon's current broker (McGriff), who told Michelle Weiler her that the claim had already been reported. Iroquois Supp. R. 56.1, ¶ O; Lloyd's R. 56.1, ¶ 89.

The Hull Policy does not provide <u>any</u> contact information for the 17 insurers underwriting the Hull Policy save a service-of-suit clause appointing New York attorneys to

receive service of process. Iroquois Supp. R. 56.1, ¶ P. The only way to "notify" Lloyd's is to transmit a message to Aon, who then transmits the message to JLT Risk Solutions (a London broker), who then carries the notice to Lloyd's by hand. Lloyd's R. 56.1, ¶ 90; Iroquois R. 56.1, ¶¶ 52-53; Iroquois Supp. R. 56.1, ¶ Q. Thus, when Iroquois undertook to notify Lloyd's of the loss, the normal course was to notify Aon and say, in substance, "pass it along." Again, when Iroquois' employee Michelle Wieler attempted to contact Lloyd's she was told that Lloyd's had already been notified and that everyone was waiting for a response. Lloyd's R. 56.1 ¶ 89; Iroquois Supp. R. 56.1, ¶ O. Thus, Iroquois did not send its own *written* notice of loss.

However, at about the same time Iroquois' counsel prepared a demand for coverage (including a copy of the Limitation Petition) and sent that demand to Aon on October 20, 2004. Iroquois Supp. R. 56.1, ¶¶ H-I. Aon forwarded the documents transmitted by Iroquois to JLT, and JLT then transmitted the documents to Lloyd's. Iroquois R. 56.1, ¶¶ 52, 57; Iroquois Supp. R. 56.1, ¶¶ J-K. In fact, Lloyd's admits it received those documents, including Iroquois' demand to Aon, and was aware that Iroquois sought coverage under the Hull Policy, but maintains that this did not occur until December 1, 2004. Iroquois R. 56.1, ¶ 55; Iroquois R. 56.1, ¶¶ K-N. There is substantial evidence and a triable issue of fact as to whether Lloyd's received notice of the Anchor Drag Incident prior to this date, and if so, as to precisely what notice Lloyd's received. Iroquois R. 56.1, ¶¶ 56, 58, disputed 1-4; Iroquois Supp. R. 56.1, ¶¶ A-G.

Lloyd's sums up these facts as: "Here, it is undisputed that Iroquois *never* notified Lloyd's of the February 27, 2003 GULF HORIZON Anchor Drag Incident." Lloyd's Brief, at 14 (emphasis added). That assessment is unsupported by the evidence. Iroquois gave notice to Lloyd's when it instructed Aon to provide notice to Lloyd's. Lloyd's has admitted that the materials Aon thereafter provided to Lloyd's alerted Lloyd's of the occurrence and of Iroquois'

claim for coverage. Under the circumstances, Iroquois had no ability to contact Lloyd's except through Aon or any reason to believe it was required to do so. Iroquois filed the present action well after Lloyd's should have responded to that submission.

### b.    Thales did not have any insurance coverage

Iroquois is at a loss to determine how Lloyd's came under the impression that Thales Geosolutions (a Horizon subcontractor) carried liability insurance covering Iroquois. In fact, Iroquois' claims against Thales concern (among other things) recovery for Thales's *failure* to procure insurance protecting Iroquois. Iroquois Supp. R. 56.1, ¶ L. Because Iroquois apparently never had coverage under Thales's policy, it is erroneous to assert that Thales's insurer is denying coverage. Iroquois Supp. R. 56.1, ¶¶ R-T.

## ARGUMENT

### POINT I

**CHOICE OF LAW: CHOICE OF LAW DETERMINATIONS TURN ON CONTACTS WITH THE FORMATION OF THE INSURANCE CONTRACT, NOT ON CONTACTS WITH THE DISPUTE TRIGGERING COVERAGE, AND IN THIS CASE MANDATE THE APPLICATION OF TEXAS LAW**

Lloyd's argues that New York law applies to the Lloyd's Hull Policy because "in this case, it is the circumstances surrounding the Construction Contract, rather than the Policy itself, that have the most significance in determining what state law to apply." Lloyd's Brief, at 9.

Lloyd's is mistaken. The proper focus under the law is on the contacts with the insurance policy, not on the facts that trigger coverage under that policy. This only makes sense -- it is Iroquois' right to coverage under the insurance contract that is in dispute -- not Iroquois' rights against Horizon under the construction contract or any other claim arising out of performance of

the pipeline's construction.  It also is the only way to promote uniformity and certainty in the interpretation of insurance policies.  Any other rule, such as Lloyd's choice-of-law analysis, would subject the hull policy to differing state laws based on the fortuitous circumstance of where the triggering event occurred -- and thereby frustrate the reasonable expectations of the parties to the insurance contract.

### a)  Federal maritime law governs the choice-of-law analysis

While Iroquois agrees that New York's "interest"-based choice-of-law test is similar to the maritime choice-of-law rule established in Lauritzen v. Larsen, 345 U.S. 571 (1953), Lloyd's is incorrect in asserting that New York's choice-of-law rules apply.  This is assuredly not the case just because initially "Iroquois pled both diversity and admiralty jurisdiction."  Lloyd's Brief, at 6.  Iroquois' claim is based on a contract to provide maritime services (insurance covering a vessel), and the claim arises in admiralty regardless of the bases of jurisdiction pleaded by the parties.  See, e.g., Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 627-28 (even though plaintiff based jurisdiction on diversity, subject matter of dispute occurred on navigable waters and district court thus should not have applied New York substantive law); Capozziello v. Brasileiro, 443 F.2d 1155, 1157, 1971 AMC 1477 (2d Cir. 1971) ("That the district court's diversity, rather than its admiralty, jurisdiction had been invoked does not change the applicable law.").  Because choice-of-law is a component of substantive law, admiralty choice-of-law principles apply to disputes in the admiralty jurisdiction, and Wilburn Boat and its progeny specifically apply to insurance disputes in admiralty.  See, e.g., Royal Ins. Co. of Am. v. Sportswear Group, LLC, 85 F. Supp. 2d 275, 278, 2001 AMC 154 (S.D.N.Y. 2000) ("Because this case falls within the Court's admiralty jurisdiction, federal choice-of-law rules control which state's law applies."); see also Charles Alan Wright, et al., Federal Practice

and Procedure § 4520 (2d ed. 2005) ("the choice of applicable law turns upon the source of the right or issue being adjudicated").

### b) The relevant choice-of-law "contacts" pertain to the formation of the insurance contract

To determine which state's laws to apply, a court sitting in admiralty applies federal choice-of-law analysis by "ascertaining and valuing points of contact between the transaction [giving rise to the cause of action] and the states or governments whose competing laws are involved." Advani Enters., Inc. v. Underwriters at Lloyd's, 140 F.3d 157, 162 (2d Cir. 1998) (alteration in original) (quoting Lauritzen v. Larsen, 345 U.S. 571, 582 (1953)). The Advani court directed courts to consider the "contacts" set forth in Laurtizen v. Larsen: (1) any choice-of-law provision; (2) the place a contract was negotiated, issued and signed; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the places of business and incorporation of the parties. See id. Which choice-of-law factors are pertinent to any given dispute depends on the nature of the interests involved in that dispute. See Hellenic Lines, Ltd. v. Rhoditis, 398 U.S. 306, (1970) (the place of the wrong and the employer's base of operations were predominant factors in whether Jones Act remedies applied to foreign seaman's U.S. injury); Sundance Cruises Corp. v. Am. Bureau of Shipping, 7 F.3d 1077, 1082 (2d Cir. 1993) (ship's country of registration was most important factor where issues related to ship's classification). Here, the relevant interest is the preservation of state control over the regulation of insurers and insurance policies. See Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 311 (1955) (case is about "the power of States to regulate the terms and conditions of marine insurance contracts").[2]

---

[2] The Court found that "control" of insurance policies and contracts had "been primarily a state function since the States came into being," that at least since 1869 the Court itself had held

Indeed, the Advani court went out of its way to clarify that it was points of contact *with the factual circumstances that create the cause of action* that mattered, not simply generalized contacts with the events triggering a claim. See Advani, 140 F.3d at 162. Determining which state's law to apply thus entails an examination of each forums' contacts with the "dealings . . . relating to the issuance of the Subject Policy" or "concerning the underwriting of its coverage." Royal Ins. Co. of Am. v. Deep Sea Int'l, No. 02 Civ. 3175, 2004 U.S. Dist. LEXIS 5948, *16-17 (S.D.N.Y. Mar. 15, 2004).

The Court of Appeals for the Fifth Circuit articulated the relationship between the identification of relevant contacts and the analysis of those contacts regarding marine insurance as follows:

> [T]he application of the most significant relationship approach does not simply turn on the number of contacts each state has with the controversy. The most significant relationship approach instead examines the relative interests of all of the states which share a sufficient relationship with the transaction and the parties.
> We conclude that the first two choice of law rules this Court has applied in marine insurance disputes -- requiring the application of the law of the state in which the policy was formed or the law of the state in which the policy was issued and delivered -- identify only the states which have sufficient contact with the policy and the parties that their laws can be applied. The third choice of law rule -- requiring the application of the law of the state with the greatest interest -- identifies the state law that *should* be applied. A federal court in a marine insurance dispute must apply the first two rules to isolate the "eligible" states; of these states, the court then must determine which state has "the greatest interest in the resolution of the issues."

---

"that States possessed regulatory power over the insurance business," and that "it is clear that at least until 1944 this Court has always treated marine insurance contracts, like all others, as subject to state control." Id. at 316-17. Moreover, Congress' passage of the McCarran Act "was designed to assure that existing state power to regulate insurance would continue." Id. at 319. For these reasons, the Court declined to develop a rule of maritime insurance and instead opted to "leave the regulation of marine insurance where it has been -- with the States." Id. at 321; see also Norfolk S. Ry. Co. v. James N. Kirby, Pty Ltd., 125 S. Ct. 385, 395 (2004) (Wilburn was decided "because of state regulatory power over insurance industry").

Albany Insurance Co. v. Anh Thi Keiu, 927 F.2d 882, 891, 1991 AMC 2211 (5th Cir. 1991) (citing Rest. 2d Contracts §6 and quoting Truehart v. Blandon, 884 F.2d 223, 226 (5th Cir. 1989)).  While the Fifth Circuit's prior rulings on the place of formation, issuance and delivery are not binding in this Circuit, the rationale of Albany Insurance is exactly that expressed in Advani:  The Court should first identify the relevant contacts (between individual states and the contractual promises memorialized by the terms of the policy) and should then assess which of those states has the strongest interest in regulating the insurance policy that resulted.

      Contacts with the creation of the policy are predominantly important because only the state in which the policy is formed and issued has the ability to exercise its general police powers to control the contract that results.  Once the policy has been consummated, its obligations are fixed, even though it is unknown whether the conditions that trigger coverage will ever come into existence in the future.  In this case, only Texas had the ability to require inclusion of policy terms and notices and to prohibit the inclusion of provisions deemed unfair.  Indeed, the Texas Insurance Code asserts control over the policy, see Tex. Ins. Code Art. 21.42, while the New York Insurance Law does not, see N.Y. Ins. Law § 3103 (a) (which states that only policies "delivered or issued for delivery in this state" must conform to New York requirements), § 3104(b) (insurer delivering policy in another jurisdiction subject to its laws can include terms required by that jurisdiction regardless of any conflict with New York requirements).  As the parties' discussion of the evolution of "late notice" and prejudice issues under Texas law demonstrates, see infra; Lloyd's Brief at 5 n.4, the Texas Department of Insurance has in fact asserted its police power to regulate the content of "late notice" provisions included in insurance policies sold in Texas.

### c)  Application of the <u>Advani</u> choice-of-law factors

In addition to the <u>Advani</u> case, numerous maritime decisions of the Court of Appeals for the Second Circuit focus on the location of the named insured and the place where the policy was negotiated, issued, and delivered to the insured ("made") to find the place with the strongest connection to the policy. <u>See, e.g., Crosson v. N.V. Stoomvaart Mij "Nederland"</u>, 409 F.2d 865, 868 (2d Cir. 1969) (in <u>Wilburn</u> "the Court held that the validity of certain policy provisions was governed by the law of the state where the policy was made"); <u>Am. S.S. Owners Mut. Protection & Indem. Ass'n. Inc. v. Alcoa S.S. Co.</u>, 2005 AMC 1498, 1504 (S.D.N.Y. 2005) ("The Complaint alleges that the defendants did and continues to do business in New York, the contracts were negotiated and delivered here, and some of those contracts specifically require the application of New York law.  Accordingly, New York law determines whether the Movants have a claim against the Club.");[3] <u>cf. also</u> <u>Md. Cas. Co. v. Cont'l Cas. Co.</u>, 332 F.3d 145, 152 (2d Cir. 2003) (New York law).  The location of the insured subject matter is also an important factor, but because a vessel can travel the world it is normally deemed "located" at its owner's base of operations.  <u>See</u> <u>Comm'l Union Ins. Co. v. Horne</u>, 787 F. Supp. 337, 339 & n.4 (S.D.N.Y. 1992); <u>see also</u> Rest. 2d Conflicts of Law § 193 cmt. a ("There may be no principle location of the insured risk in the case of contracts for the insurance of things such as <u>ships,</u>

---

[3] <u>See also, e.g.,</u> <u>Dicola v. Am. S.S. Owners Mut. Protection & Indem. Ass'n, Inc.</u>, 153 F.3d 65, 72 n.3 (2d Cir. 1998) ("As the bankruptcy court noted, New York has the most significant connections to the policies:  American Club drafted and issued its policies in New York, and the parties negotiated coverage here as well."); <u>Amador v. A/S J. Ludwig Mowinckels Rederi</u>, 224 F.2d 437, 441 (2d Cir. 1955) (in <u>Wilburn</u> "the Supreme Court held that a marine insurance contract is to be construed under the law of the state where it was made"); <u>Royal Ins. Co. of Am. v. Sportswear Group, LLC</u>, 85 F. Supp. 2d 275, 279, 2001 AMC 154 (S.D.N.Y. 2000) ("The contract was negotiated and issued through Rampart, a New York licensed insurance broker.  Sportswear, the insured, is a New York corporation with its principal place of business in New York.  Although [the insurer] is an Illinois corporation with its principal place of business in North Carolina, it maintains an office in New York.  The policy contemplates world-wide coverage and the alleged theft occurred in New Jersey; nevertheless, balancing the factors, I conclude that New York has the most substantial contacts with the insurance policy at issue and that New York law governs the dispute.").  This is not intended as an exhaustive list of cases.

trucks, airplanes, and railroad cars that are constantly on the move from state to state. <u>In such a case the location of the risk can play little role in the determination of the applicable law.</u>" (emphasis added)).

The <u>Advani</u> contacts that relate to the transaction giving rise to the cause of action (Lloyd's agreement to insure against liability resulting from the operation of Horizon's ships) are as follows:

a)    Choice-of-law provision: "Subject U.S. Jurisdiction & Law and Practice";

b)    Place of negotiation, issuance and signing:  the policy was procured through Horizon's Texas insurance agent and delivered to Horizon in Houston, Texas; Lloyd's acted in London;

c)    Place of performance: "Worldwide" per the policy; Horizon is located in Houston, Texas;

d)    Location of the subject matter of the contract:  Horizon's base of operations is in Houston, Texas; at any given point in time Horizon's fleet might be located anywhere in the world.

e)    Place of business and incorporation of the parties: Horizon is domiciled in Delaware with its principal place of business in Texas; Lloyd's is a consortium of insurers domiciled and residing all over the world.

As an additional assured, Iroquois was not a direct party to the Hull Policy negotiations and it thus has <u>no</u> contacts with the formation of the Hull Policy.  The state with the strongest interest in regulating the coverage provided by the Hull policy is unquestionably Texas.

### d)  The contacts relating to the Construction Contract are irrelevant

Lloyd's concedes that while courts "[t]ypically . . . place considerable emphasis on the location where an insurance policy is issued, . . . [here] the placement of the Lloyd's Policy itself is of little significance." Lloyd's Brief, at 8. According to Lloyd's, this is because: "Were it not for the Construction Contract, Iroquois would have no basis to allege coverage under the policy. In a sense, the Construction Contract *is* the insurance policy. . . ." <u>Id.</u> at 9. Lloyd's position

fundamentally misconstrues the analysis of which state has "the most significant nexus *with the insurance contract*," State Trading Corp. of India v. Assuranceforeningen Skuld, 921 F.2d 409, 417 (2d Cir. 1990) (quotations omitted) (emphasis added), and substitutes in its place a choice-of-law analysis that looks to the most significant nexus *with the Construction Contract*, all because the Construction Contract is relevant to one issue: whether Horizon was "required by contract" to include Iroquois as an insured. While Lloyd's details the State of New York's interest in the Construction Contract, it fails to show how the State of New York has any interest in having its laws applied to the Hull Policy. Lloyd's argument in favor of New York law falls apart once analysis turns from "contacts" to contacts with the insurance policy."

For example, Lloyd's cites International Multifoods Corp. v. Commercial Union Insurance Co., 98 F. Supp. 2d 498 (S.D.N.Y. 2000), rev'd in part on other grounds, 309 F.3d 76 (2d Cir. 2002), in which the court stated that analysis should begin by looking to the choice of law "intended by the parties as expressed in *their* contract." Id. at 502 (emphasis added); Lloyd's Brief, at 9. This statement is true enough, but Lloyd's then turns the case on its head with "The relevant contract here is the Construction Contract." Lloyd's Brief, at 9. In fact, the International Multifoods case concerned an additional insured's claim for damage to cargo shipped under a contract with the named insured. See Int'l Multifoods, 98 F. Supp. 2d at 500. Although the additional insured was located in Minnesota and the applicable shipment traveled from Mississippi to Russia, see id., the court's choice-of-law analysis did not consider these factors, see id. at 502-03. The court applied New York law because the policy documents were negotiated, signed and delivered in New York. See id. at 502. The court did not even consider the terms of the contract of carriage between the named insured and the additional insured, but Lloyd's cites this case as supporting such an analytic approach.

Lloyd's also cites <u>National Union Fire Insurance Co. v. Travelers Indemnity Co.</u>, 210 F. Supp. 2d 479 (S.D.N.Y. 2002), to support the proposition that "The location of the party claiming coverage supports application of that state's law." Lloyd's Brief, at 10. The <u>National Union</u> case concerned a dispute on a reinsurance contract between two insurance companies. <u>Nat'l Union</u>, 210 F. Supp. 2d at 484. The court did consider the domicile of one insurer, National Union, but National Union was a direct party to the reinsurance contract, not an additional insured. <u>See id.</u> (Moreover, the factor that was considered more important was that the contract was "negotiated and entered into in New York." <u>See id.</u>) The <u>National Union</u> case really concerns the location of the *named insured* as a factor supporting application of that state's law.

In fact, the <u>National Union</u> case is contrary to Lloyd's position. National Union made a claim under its reinsurance policy with Travelers in consequence of a loss that occurred on a policy *between National Union and Integrated Packaging*,. <u>See id.</u> at 482. In determining what law applied to the reinsurance claim, the court refused to consider the contacts of Integrated Packaging, the insured on the underlying claim: "While New Jersey is the corporate home of Integrated Packaging and the location of the insured property, Integrated Packaging *is not a party* in the instant dispute and has already received payment pursuant to the terms of the National Union policy." <u>Id.</u> at 484 (emphasis added). The <u>National Union</u> decision thus teaches that even though a contractual obligation sets in motion an insurer's obligations under an insurance policy, the law governing the policy does not depend on the contacts of that underlying contractual obligation. Even though National Union would have no claim in the absence of its contract with Integrated Packing (even though Iroquois would have no claim in the absence of its

contract with Horizon), choice-of-law still turns on the contacts with the insurance policy that is actually at issue.

In *numerous* choice-of-law disputes involving additional insureds, courts do not even consider the "contacts" of the additional insured.[4] After all, the additional insured's "claim under the policy is subject to the terms and conditions therein," even though the additional insured is "not a contracting party to the insurance contract." Transamerica Leasing, Inc. v. Institute of London Underwriters, 7 F. Supp. 2d 1340, 1346 (S.D. Fla. 1998) (additional insured is subject to policy's choice-of-law clause), rev'd on other grounds, 267 F.3d 1303, 1307, 2002 AMC 436 (11th Cir. 2001) (approving choice-of-law conclusion).

Moreover, Lloyd's argument was squarely raised and rejected in American Gulf VII. Inc. v. Otto Candies, Inc., No. 94-3905, 1997 U.S. Dist. LEXIS 20224, *3 (E.D. La. Dec. 11, 1997). There, the additional insured argued that "because it, a Texas corporation, was named as an additional insured in a contract of insurance, which insurance was purchased and paid for by American Gulf, a Louisiana corporation, Texas law applies to the construction of the policy." Id.

---

[4] See 5801 Assocs., Ltd. v. Cont'l Ins. Co., 983 F.2d 662, 665 (5th Cir. 1993) (considering place where policy was negotiated and contracted but in no way addressing domicile of additional insured or terms of relationship with named insure); Baza v. Chevron Oil Serv. Co., 972 F. Supp. 375, 378, (E.D. La.) (same, and also not considering terms of the underlying charter), vacated in part on other grounds, 22 F. Supp. 2d 556 (E.D. La. 1996); U.S. Fidelity & Guaranty Co. v. Williams, 676 F. Supp. 123, 125-26, 1988 AMC 2006 (E.D. La. 1987) (same), rev'd in part on other grounds, 884 F.2d 223, 226 (5th Cir. 1989) (approving district court's choice-of- law analysis). Compare Thomas v. NASL Corp., No. 99 Civ. 11901, 2000 U.S. Dist. LEXIS 16761, *23-24 (S.D.N.Y. 2000) (considering as one factor the additional insured's location, but where coverage for the additional insured had been specifically negotiated with the underwriters). Lloyd's makes it a point to emphasize that Iroquois was not formally named as an additional insured under the Policy, even though this formality was not required under the "required by contract" provision of the policy. See Lloyd's Brief, at 2, 3, 8-9.

at *3. The court summarily concluded that the additional assured's "theory" was "devoid of merit" because the additional insured "neither paid a single premium, nor entered into a contract directly with the insurer," i.e. it was not a direct party to the contract. Id. Moreover, in an earlier proceeding in the same case, the court concluded that while the insurance policy was subject to Louisiana law, the crane lease between the additional insured and the named insured was subject to Texas law. See Am. Gulf VII, Inc. v. Otto Candies, Inc., No. 94-3905, 1997 U.S. Dist. LEXIS 13414, *15-17 (E.D. La. Aug. 28, 1997). Other courts have had no difficulty applying one body of law to an agreement requiring a party to provide insurance for the benefit of another and another body of law to the insurance contract itself. See Clayton Williams Energy, Inc. v. Nat'l Union Fire Ins. Co. of La., No. 03-2980, 2004 U.S. Dist. LEXIS 22094, *34-35, *54-55 (E.D. La. Nov. 2, 2004) (maritime law applied to contract and additional insured requirement but Louisiana law applied to policy).

Finally, Lloyd's contention that New York law should apply because the work to be performed under the Construction Contract was largely within its boundaries, Lloyd's Brief at 10-11, was raised and rejected in AGIP Petroleum Co. v. Gulf Island Fabrication, Inc. , 920 F. Supp. 1318, 1996 AMC 1857 (S.D. Tex. 1996). There, the additional insured was a Louisiana company that contracted to construct a drilling platform off the Louisiana coast. See id. at 1321. Even though the construction contract was the basis of the additional insured's claim for coverage under the policy, see id. at 1325-26, the court's Wilburn "most significant relationship" analysis appropriately focused on "the state where the policy was formed or where it was issued and delivered," see id. at 1323-24.

Lloyd's proffered choice-of-law analysis is incorrect because it fails to distinguish between contacts with the insurance policy and contacts with the events triggering a claim.

Lloyd's approach would create the indefensible result that the Hull Policy would be subject to New York law with respect to Iroquois (because New York law governs the Construction Contract), but would be subject to Texas law with respect to Horizon (the location of the policy contacts). Maritime law choice-of-law principles do not justify such a result, nor would it serve any rational maritime law purpose. Lloyd's obligation with respect to both insureds is the same: Under clause (a) of the insuring clause, Lloyd's promises to indemnify against damages that are paid because of the insured vessel's "contact with any other . . . structure" "in consequence of the insured Vessel being at fault." Iroquois' status as an additional insured does not enlarge the scope of this coverage, and Lloyd's is on the hook for exactly that which it has already promised: indemnity against damages and legal costs that result from the GULF HORIZON's allegedly faulty act of striking a fixed object.

Under Lloyd's choice-of-law analysis, anytime Horizon agreed to perform work for a party and to cover that party under its insurance policies, the Hull Policy would become subject to whatever law governed the work contract. Such a result is untenable. See Md. Cas. Co. v. Cont'l Cas. Co., 332 F.3d 145, 152-53 (2d Cir. 2003) (the Restatement choice-of-law rule does "not intend for courts to apply the laws of more than one state to a single insurance policy", and the New York choice-of-law rule likewise provides that "barring extraordinary circumstances, only one state's law should govern an insurance agreement").

Wilburn Boat did not directly discuss choice of law, but Justice Frankfurter contributed the following:

> Is it to be assumed that were the Queen Mary, on a world pleasure cruise, to touch at New York City, New Orleans and Galveston, a Lloyd's policy covering the voyage would be subjected to the varying insurance laws of New York, Louisiana and Texas? Such an assumption, I am confident, would not prevail were decision necessary.

<u>Wilburn</u>, 348 U.S. at 323 (Frankfurter, J., concurring).  Fortuitous contacts unrelated to the formation of the insurance contract are irrelevant to determining which state has the strongest interest in the policy.  The State of Texas has the bulk of relevant contacts and the strongest interest in regulating the policy.

**POINT II**

**LATE NOTICE AND PREJUDICE:   TEXAS FOLLOWS THE   MAJORITY   APPROACH   AND   REQUIRES   A SHOWING OF ACTUAL PREJUDICE**

### a) There is no colorable dispute that Texas law requires insurers to demonstrate prejudice

Lloyd's suggests that a prejudice requirement is "somewhat less clear" under Texas law and that "insurers may be required to show prejudice."  Lloyd's Brief, at 5-6.  There is no lack of clarity.  Over 30 years ago, the Texas Supreme Court ruled in <u>Dairyland County Mutual Insurance Co. v. Roman</u>, 498 S.W.2d 154 (Tex. 1973), that an insurer need not show prejudice to deny coverage due to late notice.  The Texas Department of Insurance, however, found this rule too harsh to impose on insureds and thereafter required "must show prejudice" terms in insurance policies delivered in Texas.  <u>See</u> <u>Crocker v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.</u>, No. SA-04-CA-0389, 2005 U.S. Dist. LEXIS 2806, *19-20 (W.D. Tex. Feb. 15, 2005) (detailing history).  While the "must show prejudice" provision did not apply to all types of insurance policies, in the 1970s and 80s two Texas appellate courts ruled that the regulatory change had affected a change in the common law of Texas, and that <u>all</u> insurers must henceforth show prejudice before denying claims for late notice.  <u>See</u> <u>Kimble v. Aetna Cas. & Surety Co.</u>, 767 S.W.2d 846, 850 (Tex. Ct. App. 1989); <u>Wheeler v. Allstate Ins. Co.</u>, 592 S.W.2d 2, 3 (Tex. Ct. App. 1979).

Finally, the Texas Supreme Court ruled in Hernandez v. Gulf Group Lloyds, 875 S.W.2d 691, 692 (Tex. 1994), that it is a "fundamental principle of contract law" that only a "material breach" of contract will excuse an obligation to perform, and that a material breach exists in an insurance contract only where there is actual prejudice. See Hernandez v. Gulf Group Lloyds, 875 S.W.2d 691, 692 (Tex. 1994). After Hernandez, the Fifth Circuit has ruled *on three separate occasions* that prejudice is required under Texas law in order to sustain a late notice defense. See Ridglea Estate Condominium Ass'n v. Lexington Ins. Co., 398 F.2d 332, 338 (5th Cir. 2005) ("we conclude that the prejudice requirement applies equally to all insurance policies issued in Texas, including the property policy at issue here"); Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co., 174 F.3d 653, 658 (5th Cir. 1999); Hanson Prods. Co. v. Ams. Ins. Co., 108 F.3d 627, 630-31 (5th Cir. 1997) (in light of change effected by Hernandez, surplus lines insurer must show prejudice to deny cover due to late notice, even though surplus lines insurance was never subject to the Department of Insurance "prejudice" order).

In 2005, the Court of Appeals for the Fourteenth District of Texas ruled as follows:

> Compliance with a notice provision is a condition precedent to coverage under a policy. However, to enforce a condition precedent to coverage, the insurer must prove that it was prejudiced by the insured's failure to comply with the condition. Specifically, an insurer is required to show that it was prejudiced by the insured's failure to give the insurer notice of a claim. Whether an insurer is prejudiced by lack of notice is generally a question of fact. <u>In requiring the insurer to show prejudice, Texas law recognizes that only a material breach excuses performance. If the insurer is not prejudiced, the insured's breach is not material.</u>

Lennar Corp. v. Great Am. Ins. Co., No. 14-02-00860-CV, 2005 Tex. App. LEXIS 4214, *84-85 (Tex. Ct. App. June 2, 2005) (citations omitted) (emphasis added).

There is no support for Lloyd's contention that a "late notice" defense can succeed under Texas law absent a showing of actual prejudice. The authority that Lloyd's cites is inapplicable: Chiles v. Chubb Lloyds Insurance Co., 858 S.W.2d 633 (Tex. Ct. App. 1993), predated

Hernandez, and the two federal district court opinions cited are clearly displaced by Lennar and overruled by the Fifth Circuit's subsequent three rulings on the issue.

### b) Lloyd's proffered "prejudice" fails as a matter of law

The bases offered for Lloyd's claim of prejudice are that: (1) Lloyd's could not appoint its own surveyors; (2) Lloyd's could not appoint its own counsel; and (3) Lloyd's could not have effected a hypothetical settlement, the details of which "will never be known." Lloyd's Brief, at 23-24. Taking these proffered facts as true (for purposes of summary judgment) they fail to establish actual prejudice as a matter of law -- especially since Lloyd's has no right to defend Iroquois under the Hull Policy, only the obligation to reimburse Iroquois for incurred defense costs.

Moreover, under Texas law: "Generally, an insured's failure to notify the insurance company of a claim filed against it by a third party will not constitute prejudice unless that notice is given after a default judgment is taken against the insured." P.G. Bell Co. v. United States Fidelity & Guaranty Co., 853 S.W.2d 187, 191 (Tex. Ct. App. 1993) (emphasis added). The fact that an insurer might have been able to mitigate damages to some extent does not establish prejudice. See Crocker v. Nat'l Union Fire Ins. Co., No. SA-04-CA-389, 2005 U.S. Dist. LEXIS 2806, *37 (W.D. Tex. Feb. 15, 2005). The hypothetical ability to have obtained a more favorable settlement also does not establish prejudice. See St. Paul Guardian Ins. Co. v. Centrum G.S. Ltd., No. 3:97-CV-1478, 2003 U.S. Dist. LEXIS 15337, *36 (N.D. Tex. Aug. 29, 2003). To show prejudice, Lloyd's must show a *specific* settlement it could have reached that it cannot now reach or a *specific* defense that it could have asserted that it cannot now assert. See Travelers Indem. Co. of Conn. v. Presbyterian Healthcare Res., No. 3:02-CV-1881, 2004 U.S. Dist. LEXIS

6373, *26-27 (N.D. Tex. Feb. 25, 2004). Since the underlying action was and still is in a relatively early state of trial preparation, no such showing can possibly be made by Lloyd's.

In short, all of Lloyd's arguments regarding prejudice are hypothetical and do not set forth facts that demonstrate actual prejudice. Lloyd's defense thus fails as a matter of law.

### c) Lloyd's did not timely disclaim coverage

Lloyd's was under an affirmative duty to affirm or deny coverage within a reasonable period of time after it became aware that Iroquois was making a claim. See Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co., 130 S.W.3d 181, 190 (Tex. Ct. App. 2003). Apparently cognizant of this, the underwriters prepared and signed a letter stating various policy defenses -- and then never gave that purported "reservation of rights" to Iroquois. See Radzik Aff., ex. K; Iroquois Supp. R. 56.1, ¶ V. Lloyd's cannot rely on a "reservation of rights" letter it never gave to Iroquois to show that it timely disclaimed coverage.

### POINT III

### RESPONDING TO LLOYD'S NEW YORK LAW CONTENTIONS REGARDING NOTICE

#### a) Iroquois provided the notice required by the Policy

Lloyd's asserts that "it is undisputed that Iroquois never notified Lloyd's of the February 27, 2003 GULF HORIZON Anchor Drag Incident." Lloyd's Brief, at 14. This is not true. See, e.g., Am. Mfgs. Mut. Ins. Co. v. CMA Enters., Ltd., 246 A.D.2d 373, 373, 667 N.Y.S.2d 724, 724 (1st Dept. 1998). The case Lloyd's relies on to demonstrate Iroquois' alleged non-compliance with the notice provision concerned a provision requiring *written* notice. See Travelers Ins. Co. v. Volmar Constr. Co., 300 A.D.2d 40, 41, 752 N.Y.S.2d 286, 287 (1st Dept. 2002). For example, when a notice-of-loss provision does not require written notice, but instead requires only that "You must see to it that we are notified as soon as practicable," the insured can

rely upon claim notices it provides to other parties for onward transmission to the insurer. <u>See</u> <u>U.S. Underwriters Ins. Co. v. Falcon Constr. Corp.</u>, No. 02 Civ. 4182, 2003 U.S. Dist. LEXIS 14817, *15-16 (S.D.N.Y. Aug. 28, 2003) ("Neither policy at issue required written notice to come directly from NYCHA's fax machine; each simply required that NYCHA 'see to it' that plaintiff received notice."). The Lloyd's Hull Policy provision at issue here states: "In the event of any accident or occurrence which could give rise to a claim under this Policy, prompt notice thereof shall be given to Underwriters." Lloyd's R. 56.1, ¶ 6. Iroquois satisfied this provision by providing notice to Aon for onward transmission to Lloyd's. This is especially true in light of the fact that Lloyd's admits it received that notice and had actual knowledge of Iroquois' claim at least as of December 1, 2004. Iroquois Supp. R. 56.1, ¶ G. (On or about December 1, 2004, the Lloyd's adjuster wrote instructions on an email that stated "We note that Healy & Baillie, acting for Iroquois, are demand [sic] defence and indemnity iro [in respect of] these claims from Horizon's insurers." Iroquois Supp. R. 56.1, ¶ L; Aff. of E. Radzik, ex. L.) Indeed, Mr. Montano, testifying for Aon, stated his belief that the loss was actually reported to Mr. Hodgett of Lloyd's in May of 2004, but that, ". . . Mr. Hodgett told him he wasn't accepting notice until he was able to provide him with the full wording of the policy." Iroquois R. 56.1, ex. 2, pp. 93-95. Thus, Lloyd's statements regarding notice are highly suspect and unquestionably misleading. An unaccepted or disregarded notice does not constitute a failure to provide notice.

Lost in Lloyd's hyper-technical argument are the actual facts surrounding transmission of the notice of loss to Lloyd's. <u>The Hull Policy did not provide any contact information for Lloyd's.</u> Iroquois therefore was entirely justified in relying on the placing agent, Aon, to forward its notice. Lloyd's demand for a more specific notice turns a blind eye to this reality.

Finally, Lloyd's argument that Iroquois was required to discern its contact information and provide it with a more specific notice does not address the law that governs the Hull Policy. Under Texas law, notice is sufficient if it places the insurer on notice of its possible liability under the policy. See Employers Cas. Co. v. Glen Falls Ins. Co., 484 S.W.2d 570, 575 (Tex. Ct. App. 1972). This was undoubtedly satisfied here, because (again) Lloyd's has admitted that it received notice of the incident and of Iroquois' claim for coverage as an additional insured at least as of December 1, 2004. Iroquois Supp. R. 56.1, ¶ N.

### b) Even if New York law applies, Iroquois can show that it acted reasonably in providing notice to Lloyd's

In 2002 the New York Court of Appeals intimated that its "no prejudice" rule had likely become outmoded and had been overruled by virtually every other state of the Union. See Brandon v. Nationwide Mut. Ins. Co., 97 N.Y.2d 491, 496 n.3, 743 N.Y.S.2d 53, 56 n.3 (2002). Nevertheless, this past June the Court of Appeals declined to overturn the rule outright, instead directing courts to address the insured's reasonableness in failing to provide sufficiently prompt notice. See Great Canal Realty Corp. v. Seneca Ins. Co., No. 148 SSM 13, 2005 N.Y. LEXIS 1257, *1 (N.Y. June 16, 2004). A court construing a "notice of occurrence" provision in a New York insurance policy should examine whether the insured's failure was "reasonable under all the circumstances." See id. at *2.

The following facts show that Iroquois' failure to earlier notify Lloyd's was reasonable under the circumstances:

1. Aon, which prepared the first round of notices, did not itself identify the Hull Policy as one of the applicable policies. Lloyd's R. 56.1, ¶ 81; Iroquois R. 56.1, ¶ 44.
2. The materials that Aon provided to Iroquois indicated that the Hull Policy was inapplicable. Iroquois R. 56.1, ¶¶ 45-46.
3. Both Aon (through its agent who handled this claim) and Lloyd's (through its adjuster) testified that the fact that the Hull Policy provided coverage that was essentially duplicative to the coverage provided by other

insurance policies could readily have misled an insured into thinking there was no coverage for the same risk under the Hull Policy. Iroquois R. 56.1, ¶ 49.

4. Iroquois endeavored to investigate the coverage available for the incident. Iroquois sent its own notices to the other insurers to make sure they were all notified. Iroquois R. 56.1, ¶¶ 47-48; Lloyd's R. 56.1, ¶¶ 82-83. Iroquois would undoubtedly have notified Lloyd's earlier if any of the parties, Horizon, Aon, JLT Risk, etc., much more familiar with the applicable cover had indicated such coverage existed.

5. Iroquois never had copies of any of the policy forms except the Policy Slip (which does not set forth the insuring clauses). Iroquois Supp. R. 56.1, ¶ U.

6. No document associated with the Lloyd's Policy provided contact information, Iroquois Supp. R. 56.1, ¶ P, requiring the insured to rely on agents Aon and JLT to relay notice to Lloyd's.

Lloyd's "no excuse" argument is basically that because an insurance coverage attorney could have used the Insuring Slip to obtain copies of the incorporated policy forms and, upon performing a coverage analysis, would have concluded that the hull policy should provide coverage, Iroquois' failure to notify Lloyd's at an earlier point in time was unreasonable as a matter of law. However, Iroquois should only be held to the standard of a reasonable insured, not to the standard of an insurance specialist or a coverage attorney. After all, Aon (a specialist, and the specialist that placed the Hull Policy in the first place) did not initially find the Hull Policy applicable either. Lloyd's argument that Iroquois cannot "rely" on Aon misses the point. Lloyd's Brief, at 19. The point is that it was not unreasonable for Iroquois to fail to promptly realize that the Hull Policy might provide coverage because Aon (the insurance agent that placed the coverage, a party with a heightened standard of care) also failed to realize this, and, moreover, provided documents to Iroquois indicating that the Hull Policy did *not* provide coverage. All of these circumstances, taken together, show that Iroquois exercised "reasonably diligent efforts to ascertain whether coverage existed." Winstead v. Uniondale Union Free Sch. Dist., 201 A.D.2d 721, 723, 608 N.Y.S.2d 487, 489 (2d Dept. 1994); see also Seemann v.

Sterling Ins. Co., 267 A.D.2d 677, 677-79, 699 N.Y.S.2d 542, 543-44 (3d Dept. 1999) (court determined after trial that insured's failure to realize the existence coverage earlier and concomitant delay in reporting loss were reasonable -- key was insured's "good-faith belief"). Nothing more is required.

**POINT IV**

**RESPONSE TO LLOYD'S POINT IV REGARDING HORIZON'S SUB-CONTRACTOR THALES**

Lloyds' prejudice argument based on Iroquois' supposed rights to coverage under Thales's insurance, Lloyd's Brief, at 24, is without merit. Lloyd's contends, without citation or reference to any documents (other than the cross-claim filed by Iroquois against Thales in the NYPA litigation) that Iroquois is entitled to coverage under Thales's policies of insurance. Lloyd's next contends that Thales's underwriters will probably decline coverage under the policy because notice given now is too late. Based on these two unsupported assumptions, Lloyd's argues that it has been prejudiced because if it had been given timely notice of Iroquois' claim, it would have preserved Iroquois' rights to coverage under Thales's policies by providing prompt notice of the incident to Thales's underwriters. Putting aside for the moment that Lloyd's factual assumptions are not supported by any admissible evidence and therefore should not be considered on a motion for summary judgment, Lloyd's assumptions are simply wrong.

First, Thales's underwriters apparently *were* given notice of the incident and are actively defending the claims. Iroquois Supp. R. 56.1, ¶ T. Thus, there is no late notice issue and therefore no prejudice to Lloyds. Secondly, while contractually obligated under its contract with Horizon to name Horizon and Horizon's customers (*i.e.*, Iroquois) as additional assureds on Thales's policies, *it appears that Thales never did so*. Iroquois Supp. R. 56.1, ¶ R. In fact,

Thales's failure to do so is one of the grounds for Iroquois' claims against Horizon and cross-claims against Thales.  Iroquois Supp. R. 56.1, ¶ S.

Lloyds' prejudice argument therefore is baseless.  Nothing Lloyds could have done if it had been earlier notified of the incident would have created coverage for Iroquois under Thales's insurance policies.  And even if it is later determined that there is some basis for coverage, Thales's insurers apparently were given timely notice of the incident and have been defending the claims.  Thales's insurers therefore would have no basis for declining coverage to Iroquois based on late notice.  Accordingly, Lloyd's has not and cannot demonstrate any prejudice such as would avoid coverage.

## CONCLUSION

Lloyd's is not entitled to deny coverage due to its asserted defense of late notice, or any of its other recently raised contentions.

Dated: New York, New York
      September 9, 2005

                      Respectfully submitted,

                      HEALY & BAILLIE, LLP

By:          _____
                      John C. Koster (JK-4086)
                      Richard V. Singleton (RS-9489)
                      David D. Jensen (DJ-2261)
                      Attorneys for Plaintiff
                      61 Broadway, 32nd Floor
                      New York, New York 10006-2834
                      (212) 943-3980

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK          )
                                                     ) ss.:
COUNTY OF NEW YORK   )

      Elaine Bonowitz, being duly sworn, deposes and says that she is over the age of eighteen (18) years and is not a party to this action; that on the 9th day of September, 2005, she served the within **IROQUOIS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT LLOYD'S MOTION FOR SUMMARY JUDGMENT** by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to the following persons at the last known address set forth after their names:

DONOVAN  PARRY  McDERMOTT  &
RADZIK
Attorneys for Defendant
  Certain Underwriters at Lloyds
Wall Street Plaza
88 Pine Street, 21st Floor
New York, New York 10005-1801
Attention:  Edward C. Radzik, Esq.

DECHERT, LLP
Attorney for Defendant
  Aon Risk Services of Texas, Inc.
30 Rockefeller Plaza
New York, New York 10112-2200
Attention:  Rodney M. Zerbe, Esq.

NOURSE & BOWLES
Attorneys for Defendant
  Associated Electric & Gas Insurance
Services Ltd., Hamilton, Bermuda (AEGIS)
One Exchange Plaza
55 Broadway, 30th Floor
New York, New York  10006-3030
Attention:  John P. Vayda, Esq.

KENNEDY LILLIS SCHMIDT &
ENGLISH
Attorneys for Defendant
  American Home Assurance Co.
75 Maiden Lane - Suite 402
New York, New York 10038-4816
Attention:  Charles E. Schmidt, Esq.

_Elaine Bonowitz_
Elaine Bonowitz

Sworn to before me this
9th day of September, 2005

_Michael F. Watson_
Notary Public

MICHAEL F. WATSON
Notary Public, State of New York
No. 01WA6056615, Qual. in Kings Cty.
Certificate Filed in New York County
Commission Expires    6/19/07