HEALY & BAILLIE, LLP
Attorneys for Plaintiff
61 Broadway
New York, NY 10006-2834
(212) 943-3980
Richard V. Singleton (RS-9489)
John C. Koster (JK-4086)
David D. Jensen (DJ-2261)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| IROQUOIS GAS TRANSMISSION SYSTEM L.P., <br><br> Plaintiff, <br> -against- <br><br> ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LTD., Hamilton, Bermuda; CERTAIN UNDERWRITERS AT LLOYD'S; AON RISK SERVICES OF TEXAS, INC.; and AMERICAN HOME ASSURANCE CO., <br><br> Defendants. | **(ECF Case)** <br><br> 05 Civ. 2149 (JSR) <br><br> **IROQUOIS' LOCAL CIVIL RULE 56.1 STATEMENT OF ADDITIONAL MATERIAL FACTS & RESPONSE TO LLOYD'S UNDERWRITERS' STATEMENT OF MATERIAL FACTS** |

Plaintiff Iroquois Gas Transmission System L.P. ("Iroquois") hereby submits pursuant to Local Civil Rule 56.1 (b) its response to defendant Certain Underwriters at Lloyd's ("Lloyd's") Statement of Material Facts dated August 26, 2005 ("Lloyd's Statement") in support of its Motion for Summary Judgment. Each numbered paragraph corresponds to the numbered paragraph in Lloyd's Statement. "Koster Aff." refers to the affidavit of John C. Koster dated September 9, 2005, and its attachments. "Singleton Aff." refers to the affidavit of Richard V. Singleton dated September 9, 2005, and its attachments. "Radzik Aff." refers to the affidavit of Edward C. Radzik dated August 26, 2005 including its attachments. "Iroquois R. 56.1 ex." refers to the exhibits to Iroquois' Rule 56.1 Statement dated August 17, 2005.

## STATEMENT OF ADDITIONAL MATERIAL FACTS

A.    On May 17, 2004 Aon transmitted a loss notice to Lloyd's via JLT Risk Solutions, Inc. ("JLT") in London.  Iroquois R. 56.1 ex. 2, pp. 31-32, 113; ex. 16 at ARS-TX 0043.

B.    On May 17, 2004 Aon also transmitted the Lloyd's notice of loss to Continental Insurance Co., American Employers Insurance Co., Fireman's Fund Insurance Co., Markel Insurance Co., and Royal Insurance Co.  Iroquois R. 56.1 ex. 2, pp. 91-92.

C.    Continental Insurance Co. and Royal Insurance Co. confirmed receipt of the notice soon after May 17, 2004.  Iroquois R. 56.1 ex. 2, pp. 127-28; ex. 16 at ARS-TX 0044-0045.

D.    JLT confirmed receipt of Aon's May 17, 2004 notice on June 1, 2004.  Iroquois R. 56.1 ex. 2, p. 129; ex. 16 at ARS-TX 0046.

E.    Aon sent reports and other documents to Lloyd's on June 7, 2004 and June 14, 2004, concerning developments in the case.  Koster Aff., ex. 26.

F.    On September 20, 2004 JLT advised Aon that it had "received a request from leading Underwriters for an update on this loss."  Iroquois R. 56.1 ex. 2, pp. 102-05; ex. 16 at ARS-TX 0052.

G.    Lloyd's adjuster John Hodgett testified that he did not receive any notice of the Anchor Drag or of Iroquois' claim until December 1, 2004.  Iroquois R. 56.1 ex. 1, pp. 24-26, 47-49.

H.    Iroquois transmitted a demand for coverage to Aon Risk Services of Texas, Inc. ("Aon") on October 20, 2004, and again on November 10, 2004 ("Fall 2004 Demands").  Koster Aff., ex. 23-24; Radzik Aff., ex. AA, at pp. 23-24.

I.    The Fall 2004 Demands included, inter alia, a copy of the cross-claim asserted by NYPA against Iroquois in the Limitation Proceeding and Iroquois' explicit demand for coverage as an additional insured under Horizon's insurance policies. Koster Aff., ex. 23-24.

J.    Aon received the Fall 2004 Demands and transmitted them to JLT. Koster Aff., ex. 24.

K.    Lloyd's adjuster John Hodgett received the Fall 2004 Demands no later than December 1, 2004. Radzik Aff., ex. AA, pp. 47-48, 55.

L.    Lloyd's adjuster John Hodgett received a printed copy of a communication on or about December 1, 2004 that stated (inter alia) that "Healy and Baillie, acting for Iroquois, are demand defence and indemnity iro these claims from Horizon's insurers and, in the absence of a response, will be seeking a declaration from the Courts iro this matter." Mr. Hodgett wrote a note on the printed email and signed it. See Radzik Aff., ex. L; id., ex. AA, pp. 83-85.

M.    Lloyd's adjuster John Hodgett received a document in December of 2004 that was prepared by other underwriters and insurers subscribing to the Policy and that stated (inter alia) that the insurers had received a copy of the NYPA cross-claim and that Iroquois claimed to be an additional insured. Mr. Hodgett signed a copy of this document. See Radzik Aff., ex. K; id., ex. AA, pp. 82-84.

N.    Lloyd's admits that it had "actual notice of Iroquois' claim to be an additional assured/insured . . . on or about December 1, 2004." Koster Aff., ex. 22, ¶ 26.

O.    Iroquois employee Michelle Wieler contacted Iroquois' current insurance broker (McGriff) but was advised that the loss had already been reported. Koster Aff., ex. 25, p. 21.

P.    The Hull Policy does not provide any contact information for Lloyd's except for a service-of-suit clause. See Iroquois R. 56.1, ex. 10-11; Lloyd's R. 56.1, ex. E-G.

Q.    It is normal practice for JLT to carry the loss notice to Lloyd's by hand, and that is how JLT delivered the loss notice at issue here.  See Radzik Aff., ex. AA, pp. 24-27.

R.    Thales GeoSolutions ("Thales") did not name Iroquois as an additional insured under its policies.  Singleton Aff.

S.    Iroquois has asserted cross-claims against Thales in the Limitation Proceeding concerning (inter alia) its failure to name Iroquois as an additional insured under its policies. Singleton Aff., ex. C; Radzik Aff., ex. Y, ¶¶ 51-56, 70-78.

T.    Thales's insurers were notified of the Anchor Drag Incident and have defended Thales in the Limitation Proceeding.  Singleton Aff.

U.    Iroquois received only the Policy Slip and did not receive copies of the incorporated forms.  Iroquois R. 56.1 ex. 2, pp. 15-18.

V.    There is no evidence that the "reservation or rights" letter identified by Lloyds, see Radzik Aff., ex. K, was ever sent to Iroquois.

## REPLY TO LLOYD'S RULE 56.1 STATEMENT OF FACTS

### OVERVIEW

1.    Iroquois is seeking a declaration from this Court that Iroquois is covered by a policy of insurance issued by Defendant Lloyd's.  Radzik Aff., Ex. "T", ¶ 8.

**Response:    Admit.**

2.    The occurrence giving rise to Iroquois' insurance claim took place on February 27, 2003 in the Long Island Sound in New York, where an anchor of a pipe-laying barge, the GULF HORIZON, allegedly struck an underwater power cable, owned by the New York Power Authority ("NYPA"), causing extensive damage (hereinafter "the Incident").  Radzik Aff., Ex. "S", ¶ 15.

**Response:    Admit.**

3.    The policy that Iroquois is claiming coverage under is a Hull & Machinery policy of marine insurance bearing the number LE0280715 ("the Policy" or "the Lloyd's Policy"). Radzik Aff., Ex. "S", ¶ 30; Radzik Aff., Ex. "E".

**Response:    Admit.**

4.    The Policy was issued by Lloyd's, not to Iroquois, but to Horizon Offshore Contractors, Inc. ("Horizon"), contractors that were hired by Iroquois to perform construction work on a project wholly located within the State of New York. Radzik Aff., Ex. "B".

**Response:    Admit.**

5.    Horizon is, and was at the time of the Incident, the owner of the GULF HORIZON and the GULF HORIZON was listed as an insured vessel under the Lloyd's Policy. Radzik Aff., Ex. "E".

**Response:    Admit.**

6.    The Lloyds Policy incorporated a provision (hereinafter "the Notice Provision") which required that "[in the event of any accident or occurrence which could give rise to a claim under this Policy, prompt notice thereof shall be given to the Underwriters." Radzik Aff, Ex. "E", Radzik Aff., Ex. "F"; Radzik Aff., Ex. "U", No. 44.

**Response:    Admit.**

7.    The Notice Provision was incorporated under the "Conditions" section of the Lloyd's Policy. Radzik Aff., Ex. "E".

**Response:    Admit, with the qualification that the portion of the Lloyd's Policy labeled "Conditions" incorporates numerous policy forms, and that the Notice Provision is merely a subpart contained within one of those forms.**

8.    The Notice Provision applies to any party claiming coverage as an insured under the policy. Radzik Aff., Ex. "U", No. 45.

**Response:    Admit as a conclusion of law.**

9.    It is undisputed that Iroquois never notified Lloyd's of the occurrence, or Incident, giving rise to its present claim for coverage. Radzik Aff., Ex. "BB", p. 18.

**Response:    Deny.**
**Iroquois notified Lloyd's by transmitting a demand for defense to Aon on October 25, 2004, and again on November 10, 2004, including copies of pertinent documents such as the NYPA Cross-Claim from to the Limitation Proceeding.    Lloyd's received the documents no later than December 1, 2004, including the suit documents and the letter**

demanding coverage as an additional insured, and was aware of Iroquois' claim for coverage at that point.

In addition, Aon transmitted a notice of occurrence on May 17, 2004, which was received by Lloyd's no later than December 1, 2004 and which may have been received earlier.

Finally, Iroquois demanded coverage by filing the instant litigation.

See Iroquois' Statement of Additional Facts, above, at ¶¶ A-O.

10.    It is further undisputed that Horizon did not timely notify Lloyd's of the Incident. Radzik Aff., Ex. "J".

**Response:    Admit, but deny any implication that Lloyd's was prejudiced or that Iroquois acted unreasonably.**

11.    Lloyd's did not receive notice from Horizon until December 1, 2004, approximately twenty-one (21) months following the Incident on February 27, 2003.  Radzik Aff., Ex. "AA", p. 55.

**Response:    Deny.**

**Whether Lloyd's received this notice between May 17, 2004 and December 1, 2004 is disputed.  See Iroquois' Statement of Additional Facts, above, ¶¶ A-G.**

12.    The only basis for Iroquois' claim of coverage under the Lloyd's Policy is as an additional insured pursuant to the terms of a construction contract ("the Construction Contract") between Iroquois' agent, Iroquois Pipeline Operating Company ("IPOC"), and Horizon, the named insured, for the completion of a project known as the "Eastchester Extension" to be performed within the State of New York. Radzik Aff., Ex. "T", ¶ 40-4.

**Response:    Admit, but deny any inference that Iroquois' claim is based on the Construction Contract.**

13.    The Construction Contract required Horizon to maintain certain insurance policies covering the Eastchester Extension project. Radzik Aff., Ex. "U", No.16.

**Response:    Admit.**

14.    Among other insurance requirements, the Contract provided in its "Schedule of Insurance Requirements" that:

2.1    Contractor's Insurance. [Horizon] shall prior to commencing the Work furnish and maintain, at its own expense the following insurance:

2.1.8   Marine Hull and Machinery insurance, if watercraft are involved, including collision liability, with sistership clause

> unamended, and with limits of liability at least equal to the
> full value of each water craft used in connection with the
> performance of the Work required under this contract, and
> with navigational limitations adequate for the Contractor to
> perform or cause to perform the specified Work....

Radzik Aff., Ex. "H"; Radzik Aff., Ex. "U", No. 17. (emphasis added).

**Response:    Admit.**

15.    The Construction Contract further required that all insurance policies provided by Horizon be endorsed to provide that Iroquois is included as an additional insured. Radzik Aff., Ex. "H", Radzik Aff., Ex. "U", No. 18.

**Response:    Admit.**

16.    Horizon did maintain a Hull & Machinery policy with Lloyd's Underwriters, Policy No. LE0280715 ("the Lloyd's Policy"), which included coverage for the vessels engaged by Horizon in the Eastchester Extension project. Radzik Aff., Ex. "E".

**Response:    Admit.**

17.    Horizon was the named insured on the Lloyd's Policy. Radzik Aff. Ex. "U", No. 19.

**Response:    Admit.**

18.    Horizon's plowing and pipe-laying barge the GULF HORIZON was listed as an insured vessel under the Lloyd's Policy. Radzik Aff., Ex. "U", No. 21.

**Response:    Admit, with the qualification that the Hull Policy insured 14 named vessels in Horizon's fleet for their worldwide operations. Radzik Aff., ex. E, pp. 2, 11.**

19.    The GULF HORIZON was stationed in the Long Island Sound in New York during the Eastchester Extension project and the crew worked and lived on the barge from November 2002 until April 2003. Radzik Aff., Ex. "U", No. 22.

**Response:    Admit.**

20.    Iroquois is not specifically listed or identified as an insured on the Lloyd's Policy. Radzik Aff., Ex. "E"; Radzik Aff., Ex. "U", No. 23.

**Response:    Admit.**

21.    The Lloyd's Policy is governed by United States law and is subject to United States jurisdiction. Radzik Aff., Ex. "E"; Radzik Aff., Ex. "U", No. 24.

**Response:     Admit.**

22.    The Lloyd's Policy "Institute Service of Suit Clause (U.S.A.)" appoints New York agents for service of process in New York. Radzik Aff., Ex. "E"; Radzik Aff., Ex. "U", No. 16.

**Response:     Admit.**

23.    The Lloyd's Policy contains an incorporation provision stating that:

> It is understood and agreed that *where required by contract*, bid or work order, *Additional Insured and/or Waivers of the Rights of Subrogation are automatically included hereunder*, subject further to Notice Clauses as may be required by written contract only and that coverage provided hereunder shall be primary in respect of any coverage carried by said additional insured where required by written contract.

Radzik Aff., Ex. "E"; Radzik Aff., Ex. "U", No. 16. (emphasis added).

**Response:     Admit.**

24.    It is this language of the Lloyd's Policy upon which Iroquois bases its claim for coverage. Radzik Aff, Ex. "E"; Radzik Aff, Ex. "T",¶ 40.

**Response:     Objection based on ambiguity.  Iroquois contends that the quoted provision requires the Policy to protect it as an insured and to this extent the "fact" is admitted.  The balance of the "fact" is denied:  coverage is subject to numerous other terms and conditions set forth in the Hull Policy, and it is not accurate to imply that Iroquois' claim is based on this portion of the Policy alone.**

25.    Thus, any coverage afforded to Iroquois under the Lloyd's Policy is governed by the terms and conditions of the Construction Contract including the choice of law provision. Radzik Aff, Ex. "T", ¶ 40; Radzik Aff., Ex. "H".

**Response:     Deny as a conclusion of law.**

26.    The Construction Contract between Iroquois and Horizon contains both a choice of law provision and forum selection provision selecting a New York forum and application of New York law. Radzik Aff., Ex. "U", No. 11; Radzik Aff., Ex. "H".

**Response:     Admit.**

27.    The Construction Contract between Iroquois and Horizon specifically provides that:

> The Contract shall be governed by and construed and enforced in accordance with, the substantive laws of the State of New York, exclusive of conflicts of law provisions. [Horizon] and [Iroquois] agree that any action or proceeding arising from or in connection with this Contract shall be brought in a state or federal court of appropriate jurisdiction in New York State.  In the event of any litigation with respect to this Contract or any instrument or document executed and delivered in connection herewith, each party waives the right to a trial by jury.

Radzik Aff., Ex. "H"; Radzik Aff., Ex. "U", No. 15, (emphasis added).

**Response:    Admit.**

28.    This forum selection and choice of law provision was not part of a form contract, but was specifically negotiated and fought for by Iroquois. Radzik Aff., Ex. "W".

**Response:    Admit, but deny that Iroquois "fought for" the provision.**

29.    Horizon requested a clause calling for arbitration in Houston, Texas in the event that any disputes arise under the contract. Radzik Aff., Ex. "U", No. 12; Radzik Aff., Ex. "W".

**Response:    Admit.**

30.    Iroquois refused to agree to Texas arbitration and insisted on a New York forum with New York law since the work would be performed in New York and the project would be heavily regulated by local New York governments and agencies. Radzik Aff., Ex. "U", No. 13; Radzik Aff., Ex. "W".

**Response:    Admit.**

31.    Thus, any disputes arising from or in connection with the Contract must be adjudicated in New York pursuant to New York law, including insurance coverage disputes. Radzik Aff., Ex. "H".

**Response:    Deny as a conclusion of law.**

32.    The Incident, for which Iroquois is now claiming coverage under the Lloyd's Policy, arose out of the performance of the Construction Contract in New York State. Radzik Aff., Ex. "T".

**Response:    Admit.**

33.    Determination of any coverage afforded to Iroquois under the Lloyd's Policy must be made in accordance with the terms of the Construction Contract and, therefore, governed by and interpreted pursuant to New York law as required by the Contract and specifically negotiated by Horizon and Iroquois.

**Response:    Deny as a conclusion of law.**

## THE NEW YORK EASTCHESTER EXTENSION PROJECT

34.    Iroquois is a limited partnership organized and existing under the laws of the State of Delaware, having its principal place of business in Connecticut. Radzik Aff., Ex. "U", No. 1.

**Response:    Admit.**

35.    Iroquois is the owner of a 412-mile natural gas pipeline extending from the United States/Canadian border at Waddington, New York to South Commack, New York with a main line extension from Northport, New York, to the Bronx ("the Pipeline"). Radzik Aff., Ex. "U", No. 2.

**Response:    Admit.**

36.    The Pipeline is operated by Iroquois' agent, Iroquois Pipeline Operating Company ("IPOC"), headquartered in Shelton, Connecticut. Radzik Aff., Ex. "U", No. 3.

**Response:    Admit.**

37.    Iroquois and IPOC do business, operate the Pipeline, and maintain places of business in New York. Radzik Aff., Ex. "U", No. 4.

**Response:    Admit.**

38.    The majority of the Pipeline is located in the State of New York with a small portion extending across the southwest corner of Connecticut. Radzik Aff., Ex. "U", No. 5.

**Response:    Admit.**

39.    The Construction Contract between Iroquois and Horizon, pursuant to which Iroquois claims status as an additional insured under the Lloyd's Policy, was dated April 12, 2002, and was for Horizon to serve as general contractor in the construction of a 35-mile underwater extension to Iroquois' existing Pipeline to cross the Long Island Sound between Northport, New York and Hunts Point, New York.  Radzik Aff, Ex. "U", No. 6.

**Response:    Admit.**

40.    The construction project consisting of the above described pipeline extension, and the construction of five compressor stations in upstate New York, is known collectively as the "Eastchester Extension" of the Iroquois Pipeline.  Radzik Aff., Ex. "U", No. 7.

**Response:    Admit, with the qualification that only two compressor stations were constructed.  Radzik Aff., ex. U, No. 7.**

41.    The Eastchester Extension portion of the Pipeline is located solely within New York State.  Radzik Aff., Ex. "U", No. 8.

**Response:    Admit, with the qualification that Eastchester Extension project work took place in states besides New York.  Razik Aff., ex. W, ¶¶ 6-7, 9-10, 15, 22.**

42.    The purpose of the Eastchester Extension is to provide natural gas for use in electrical power generation in New York and to provide natural gas to residential, industrial and commercial customers in New York.  Radzik Aff., Ex. "W".

**Response:    Admit.**

43.    In preparation for the Eastchester Extension project, another subcontractor of Iroquois retained Thales GeoSolutions ("Thales") to conduct an underwater survey of the route for the new pipeline.  Radzik Aff, Ex. "W".

**Response:    Admit.**

44.    In order to obtain the proper and necessary approvals for the construction of the Eastchester Extension, Iroquois filed applications with, and received permits from the following agencies:  the Federal Energy Regulatory Commission in Washington D.C., the New York offices of the United States Army Corps of Engineers, the New York Department of Environmental Conservation, the New York Department of State, and the New York State Office of General Services.  Radzik Aff., Ex. "W", ¶ 10.

**Response:    Admit.**

45.    The Eastchester Extension of the pipeline was designed to cross several existing electrical cables located beneath the Long Island Sound. Radzik Aff., Ex. "W", ¶ 11.

**Response:    Admit.**

46.    One of the cable systems, the Y-49, consists of four cables owned by The Power Authority of the State of New York (NYPA). Radzik Aff., Ex. "W", ¶ 11.

**Response:    Admit.**

47.    Iroquois and NYPA negotiated a Crossing Agreement dated October 30, 2002, whereby NYPA gave its consent to the crossing of the pipeline over the electrical cables in consideration of Iroquois' agreement to indemnify NYPA for any damages to the Y-49 cables arising out of the crossing of the pipeline. Radzik Aff., Ex. "N".

**Response:    Admit.**

48.    The Crossing Agreement required Iroquois to procure insurance to cover its contractual liability to NYPA and to name NYPA as an additional insured on Iroquois' insurance policies. Radzik Aff., Ex. "N".

**Response:    Deny.**
**The Crossing Agreement required Iroquois to procure the insurance "and/or [to] cause its contractors and subcontractors to procure" the insurance.    The Crossing Agreement required Iroquois "and its contractors and subcontractors" to name NYPA as an additional insured. Radzik Aff., ex. N.**

49.    The Crossing Agreement contained a New York choice of law provision and a New York forum selection clause for the adjudication of any disputes arising under the Crossing Agreement. Radzik Aff., Ex. "N".

**Response:    Admit.**

50.    The Crossing Agreement provides that if a cable is damaged or rendered inoperable during the construction of the pipeline due to the "negligence, acts, omissions or willful misconduct of Iroquois Gas, its contractors, subcontractors, agents or employees", then Iroquois is obligated to pay for all repairs to the cable, as well as providing equivalent replacement electrical capacity during the time the cable is out of service. Radzik Aff., Ex. "N".

**Response:    Admit that the Crossing Agreement contains the cited language. Radzik Aff., ex. N.**

51.    This means that Iroquois owes NYPA complete contractual indemnity for all of the repair and loss of use damages sustained by NYPA. Radzik Aff., Ex. "N".

**Response:    Deny as to "complete contractual indemnity" because the meaning of this term is unclear. Admit Iroquois is obligated to indemnify NYPA as provided in response to no. 50 above.**

52.    The Construction Contract between Iroquois and Horizon does not provide for indemnity for contractually assumed obligations to others. Radzik Aff., Ex. "H".

**Response:    Deny as a conclusion of law, but admit the authenticity of the Construction Contract set forth as exhibit H.**

53.    Rather, the Construction Contract provides that each party is liable to the other for its own negligence. Radzik Aff., Ex. "H".

**Response:    Deny as a conclusion of law, but admit the authenticity of the Construction Contract set forth as exhibit H.**

54.    Horizon's work under the land portion of the Contract required pipe to be installed underground in horizontally directionally drilled holes in two locations, Hunts Point and Huntington, New York. Easements were required and obtained from New York City and the Town of Huntington to allow Horizon to perform this work. Radzik Aff., Ex. "W".

**Response:    Admit.**

55.    Horizon's marine work under the Contract was to proceed in multiple stages. After the equipment preparation and mobilization, the pipe segments would be welded together on the deck of a barge, which would serve as a floating assembly line work platform. The welded continuous pipe then would be laid (concurrent with ongoing welding, inspection and coating activities) in the bottom of the Long Island Sound along the intended route. Concrete mattresses were to be placed over NYPA's cables where the pipeline crossed them. Dependent upon the location, the sea bottom would either be pre-dredged or the pipe would be plowed/lowered into a trench on the sea bottom. In some locations the pipe was backfilled using either conventional clamshell equipment or a plow. The pipe was lowered and/or buried to depths of up to 8 feet. Additional concrete mattresses were to be placed over the pipeline where it crossed NYPA's cables and rock placed on the pipeline in between NYPA's cables for stability purposes and to provide protective cover. Radzik Aff., Ex. "W".

**Response:    Admit.**

56.    In the fall of 2002 Horizon sent employees, materials and equipment, including its pipe lay barge, the GULF HORIZON, from its fleet of vessels to perform the job in New York. Iroquois neither designated this vessel nor selected it, but did agree to pay for modifications to the barge proposed by the contractor as necessary to perform the work contemplated under the Contract. Radzik Aff., Ex. "W", ¶ 22.

**Response:**    **Admit.**

57.    The GULF HORIZON has no motive power of its own. Thus, during pipe laying operations, the barge advances by using its mooring winches and anchors and with the help of assist tugs. Horizon contracted for the service of assist tugs. Radzik Aff., Ex. "W", ¶ 23.

**Response:**    **Admit.**

### THE NEW YORK INCIDENT

58.    On or about February 27, 2003, while Horizon's barge the GULF HORIZON was performing pipe laying operations, as part of the Eastchester Extension project, in the Long Island Sound one of the NYPA's underwater cables (the Y-49 cable) tripped off line. Radzik Aff., Ex. "W", ¶¶ 31-2.

**Response:**    **Admit.**

59.    It is alleged that one of the anchors of the GULF HORIZON struck and damaged NYPA's Y-49 cable. Radzik Aff., Ex. "U", No. 43.

**Response:**    **Admit.**

60.    Immediately following the Incident, NYPA activated its emergency response and maintenance subcontractor to locate the source and extent of the damage to the Y-49 cable system and to minimize the escape of the liquid coolant in the cable and effectuate temporary repairs of the cable system. These temporary repairs all took place in New York. Radzik Aff., Ex. "W", ¶ 34.

**Response:**    **Admit.**

61.    Shortly after the Incident, Iroquois commenced an investigation into the cause of the damage. Radzik Aff., Ex. "W", ¶ 37.

**Response:**    **Admit.**

62.    Iroquois retained surveyors to conduct underwater surveys to assess the cause of the Incident and resulting damage. Radzik Aff., Ex. "V", ¶ 38.

**Response:    Admit.**

63.    Additionally, following the Incident, experts were retained to monitor the repair efforts in New York. Radzik Aff., Ex. "U", No. 77.

**Response:    Admit.**

64.    Lloyd's were not notified of the retention of surveyors, experts, or the repair efforts. Radzik Aff., Ex. "AA".

**Response:    Deny.**
**Aon notified Lloyd's of developments in the case on June 7, 2004 and on June 24, 2004. See Iroquois' Statement of Additional Facts, above, ¶ E.**

65.    Had Lloyd's been promptly notified, they would have appointed surveyors, experts and attorneys to analyze and evaluate the evidence and make an early determination in respect of liability and coverage and assess whether an early settlement would be appropriate before incurring any substantial legal and expert expenses. Lloyd's would have also been able to set up an appropriate reserve if coverage was warranted. Radzik Aff., Ex. "AA", pp. 58-60.

**Response:    Admit that the Lloyd's adjuster stated that Lloyd's would have so acted and otherwise deny.**

66.    Ongoing investigation and repair work ensued in addition to arrangements for completion of the Eastchester Extension project. Radzik Aff., Ex. "W".

**Response:    Admit.**

67.    Permanent repairs to the NYPA Y-49 cable line system were complete on or about September 12, 2005. Radzik Aff., Ex. "W", ¶¶ 46-7.

**Response:    Admit that such repairs were completed on or about September 12, 2003.**

## TEXAS LIMITATION ACTION

68.    Following the Incident, Horizon filed a limitation action in United States District Court for the Southern District of Texas seeking to limit its liability for any damage caused by the Incident, if any, to the value of the Gulf Horizon (approximately $19 Million). *In re Horizon Vessels Inc., et al.*, 4:03-CV-03280; Radzik Aff., Ex. "Z".

**Response:    Admit.**

69.     Among others, Iroquois and NYPA filed claims in the limitation action. Iroquois alleges that Horizon is responsible for all of NYPA's and LIPA's alleged damages and is seeking indemnification for any amount Iroquois is found liable to pay. *In re Horizon Vessels Inc., et at.*, 4:03-CV-03280; Radzik Aff., Ex. "Z".

**Response:     Admit.**

70.     Additionally, NYPA filed a cross-claim against Iroquois for breach of the Crossing Agreement. *In re Horizon Vessels Inc., et al.*, 4:03-CV-03280; Radzik Aff., Ex. "Z".

**Response:     Objection due to ambiguity. Deny, but admit that NYPA's cross-claim seeks recovery under theories of negligence and contractual indemnity. Iroquois R. 56.1, ¶ 40.**

71.     Both Iroquois and NYPA filed motions to transfer the Limitation Action to New York. *In re Horizon Vessels Inc., et al.*, 4:03-CV-03280; Radzik Aff., Ex. "Z".

**Response:     Admit.**

72.     Iroquois argued that transfer was warranted because all the relevant disputes were governed by New York law. Radzik Aff., Ex. "V".

**Response:     Admit.**

73.     The Southern District of Texas has not yet adjudicated the cause of the damage to the NYPA power cable. Radzik Aff., Ex. "Z".

**Response:     Admit.**

74.     Iroquois is seeking coverage under Horizon's Lloyd's Policy as an additional insured to cover its legal fees in the Limitation Action, thus far and continuing, and for indemnification in the event that Iroquois is adjudged liable for any of the damages caused to the Y-49 cable. Radzik Aff., Ex. "T".

**Response:     Admit.**

## IROQUOIS' FAILURE TO NOTIFY LLOYD'S OF THE OCCURRENCE AND HORIZON'S LATE NOTICE

75.     Iroquois has no excuse for its failure to place Lloyd's on notice of the incident and its claim for coverage as an additional insured. Radzik Aff., Ex, "BB".

**Response: Deny. See Iroquois' Statement of Additional Facts, above, ¶¶ N-P, U.**

76.     On or about March 13, 2003, NYPA put Iroquois on notice that they were holding Iroquois responsible for all damages arising out of the repairs and loss of use of the damaged Power Cables. Radzik Aff., Ex. "U", No. 49.

**Response:     Admit.**

77.     Additionally, the Long Island Power Authority (LIPA), who claims to be a primary user of the damaged cable's electrical transmissions capability, stated in the same letter that it intends to claim against Iroquois for its losses arising out of the loss of use of the Y-49 cable. Radzik Aff., Ex. "W", No. 48.

**Response:     Admit.**

78. NYPA's and LIPA's claims at the time totaled approximately $21,000,000. Radzik Aff., Ex. "W", No. 48.

**Response:     Admit.**

79.     Michelle Wieler, Iroquois' Senior Accountant, was instructed by Iroquois' legal department to report the Incident to Iroquois' and Horizon's insurance providers. Radzik Aff., Ex. "BB", p. 10.

**Response:     Admit.**

80.     Ms. Wieler stated that Bill Arnold, Horizon's risk manager, told her that AON was notifying all of Horizon's insurers about the incident. Radzik Aff., Ex. "BB", p. 12.

**Response:     Admit.**

81.     By notices dated May 4, 2003 through July 16, 2003, AON, Horizon's insurance broker at the time, undertook, on behalf of Horizon, to notify the following of Horizon's insurers of the Incident:

> AEGIS - Policy Number ARS-3175
> Steamship Mutual Underwriting - Policy Number ARS-3176
> American Home Assurance Co. - Policy Number ARS-3177 XL
> Specialty Insurance Co. - Policy Number ARS-3215
> Liberty Insurance Underwriters - Policy Number ARS-3215
> American Home Assurance Co. - Policy Number ARS-3215
> Navigators Insurance Co. - Policy Number ARS-3215

Radzik Aff., Ex. "P".

**Response:     Admit.**

82.    Notwithstanding the statements of Mr. Arnold, Ms. Wieler testified that Iroquois undertook to notify Horizon's insurers directly and that she was directed to do so by Iroquois' legal department. Radzik Aff., Ex. "BB", pp. 12 and 17.

**Response:    Admit.**

83.    By letters dated March 17, 2003 and March 18, 2003, Iroquois personally undertook to notify the following of Horizon's insurers of the Incident:

> AEGIS - Protection and Indemnity Policy Number ARS-3175
>
> American Home Insurance Co.
>
> Excess Liabilities Policy Number ARS-3215 and General and Excess Liabilities Policy Number ARS-3177
>
> Navigators Insurance Company - Excess Liabilities Policy Number ARS-3215
>
> Steamship Mutual Underwriting - Protection and Indemnity Policy Number ARS-3176
>
> Liberty Insurance Underwriters - Excess Liabilities Policy Number ARS-3215
>
> Navigators Insurance Co. - Excess Liabilities Policy Number ARS-3215
>
> XL Specialty Insurance Co. - Excess Liabilities Policy Number ARS-3215

Radzik Aff., Ex. "Q".

**Response:    Admit.**

84.    Iroquois never sent notice to Horizon's Hull & Machinery underwriters (Lloyd's). Radzik Aff., Ex. "BB", p. 18.

**Response:    Deny.  See Iroquois' Statement of Additional Facts, above, ¶¶ A-O.**

85.    Ms. Wieler stated that notice was not given to Lloyd's because Iroquois was not aware that the Lloyd's Policy included collision liability coverage. Radzik Aff., Ex. "BB", p. 19.

**Response:    Admit.**

86.    In determining what insurers to notify following the Incident, Iroquois never looked at the insurance requirements of its own Construction Contract with Horizon, nor did it request copies of Horizon's policies. Radzik Aff., Ex. "BB".

**Response:    Admit.**

87.    Ms. Wieler said that Iroquois did not become aware the Lloyd's Policy included collision liability coverage until November or December of 2004. Radzik Aff., Ex. "BB", p. 19.

**Response:    Admit.**

88.    Even upon realization of the collision liability coverage, Iroquois never notified Lloyd's of the incident. Radzik Aff., Ex. "BB", p. 21.

**Response:    Deny. See Iroquois' Statement of Additional Facts, above, ¶¶ A-O.**

89.    Ms. Wieler stated that notice was not made to Lloyd's because Horizon's new insurance broker (McGriff) had told her that AON had notified Lloyd's of the Incident. Radzik Aff, Ex. "BB", p. 21.

**Response:    Admit.**

90.    The only notice ever received by Lloyd's was on December 1, 2005 from JLT, Horizon's London broker, by way of a Report of Loss from AON, Horizon's Texas broker, dated May 17, 2004. Radzik Aff, Ex. "AA"; Radzik Aff., Ex. "L".

**Response:    Deny. See Iroquois' Statement of Additional Facts, above, ¶¶ A-O.**

91.    The late notice sent by AON on behalf of Horizon to Lloyd's does not make any reference to Iroquois. Radzik Aff., Ex. "J".

**Response:    Admit that the form does not itself say "Iroquois," but deny the legal conclusion that the form was "late."**

92.    Following this late notice, Lloyd's, through their lead underwriter, prepared a reservation of rights signed, *inter alia*, by the lead underwriter and lead insurance company of the Lloyd's Policy, on or about December 4, 2005. Radzik Aff., Ex. "AA"; Radzik Aff., Ex. "K".

**Response:    Admit that following receipt of the aforesaid notice the referenced letter was so prepared and signed, but deny the legal conclusion that the notice was "late" and deny the legal conclusion that the referenced letter constituted a "reservation of rights" as to Iroquois.**

93.    Ms. Wieler stated that the insurance portion of the Construction Contract contained the standard insurance provisions required by Iroquois' in all of its contracts with contractors. Radzik Aff., Ex. "BB", p. 25.

**Response:    Admit.**

94.    Ms. Wieler stated that when determining which of Horizon's insurer's [sic] to notify, Iroquois relied exclusively on the insurance certificate provided by AON and did not refer to the insurance provisions of the Construction Contract.   Radzik Aff., Ex. "BB", pp.26-7; Radzik Aff., Ex. "DD"); Radzik Aff., Ex. "EE".

**Response:    Admit.**

95.    Thus, according to Ms. Wieler, the only reason that Iroquois did notify Lloyd's of the Incident was because the certificate of insurance provided by AON did not specifically say "liability," Radzik Aff., Ex. "BB", p. 27.

**Response:    Admit that this is this is the reason Ms. Wieler did not direct transmission of an additional notice. Radzik Aff., ex. BB, p. 27.**

96.    However, Iroquois' Construction Contract with Horizon specifically required Horizon to procure Hull & Machinery coverage "including collision liability."  Radzik Aff., Ex. "H".

**Response:    Admit.**

97.    Thus, Iroquois knew, or should have known, that the Incident created a potential insurance claim under the Lloyd's Policy. Radzik Aff., Ex. "R"; Radzik Aff., Ex. "DD"; Radzik Aff., Ex. "EE".

**Response:    Deny as a conclusion of law.**

98.    When Iroquois entered into the Construction Contract with Horizon, Iroquois expected Horizon to procure all the insurance required under the Contract and name Iroquois as an additional insured under the required policies. Radzik Aff., Ex. "BB", p. 79.

**Response:    Admit.**

99.    In addition to notifying Iroquois' own insurers and Horizon's insurers, except for Lloyd's, Iroquois notified various other subcontractors and their insurers of the incident.  Radzik Aff., Ex. "BB", pp. 54-7.

**Response:    Admit.**

100.   Iroquois' primary general liability insurer Liberty Mutual has been defending Iroquois in connection with the Incident for which it now seeks coverage from Lloyd'. Radzik Aff., Ex. "BB", pp. 43-4.

**Response:**   **Admit, with the qualification that it is Iroquois that is seeking coverage.**

Dated: New York, New York
        September 9, 2005

HEALY & BAILLIE, LLP

By:    _____

John C. Koster (JK-4086)
Richard V. Singleton (RS-9489)
David D. Jensen (DJ-2261)
Attorneys for Plaintiff
61 Broadway, 32nd Floor
New York, New York 10006-2834
(212) 943-3980

TO:    DONOVAN, PARRY, McDERMOTT & RADZIK
       Attorney for Defendant
         Certain Underwriters at Lloyd's
       Wall Street Plaza, 88 Pine Street
       New York, New York 10005-1801
       (212) 376-6400
       Attention: Edward C. Radzik, Esq.

       NOURSE & BOWLES
       Attorneys for Defendant
         Associated Electric & Gas Insurance Services Ltd.,
         Hamilton, Bermuda (AEGIS)
       One Exchange Plaza
       55 Broadway, 30th Floor
       New York, New York  10006-3030
       (212) 952-6202
       Attention: John P. Vayda, Esq.

       DECHERT, LLP
       Attorney for Defendant
         Aon Risk Services of Texas, Inc.
       30 Rockefeller Plaza
       New York, New York 10112-2200
       (212) 698-3500
       Attention: Rodney M. Zerbe, Esq.

       KENNEDY LILLIS SCHMIDT & ENGLISH
       Attorneys for Defendant
         American Home Assurance Co.
       75 Maiden Lane, Suite 402
       New York, New York 10038-4816
       (212) 430-0800
       Attention: Charles E. Schmidt, Esq.

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK          )
                                                    ) ss.:
COUNTY OF NEW YORK  )

      Elaine Bonowitz, being duly sworn, deposes and says that she is over the age of eighteen (18) years and is not a party to this action; that on the 9th day of September, 2005, she served the within **IROQUOIS' LOCAL CIVIL RULE 56.1 STATEMENT OF ADDITIONAL MATERIAL FACTS & RESPONSE TO LLOYD'S UNDERWRITERS' STATEMENT OF MATERIAL FACTS** by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to the following persons at the last known address set forth after their names:

DONOVAN  PARRY  McDERMOTT  &
RADZIK
Attorneys for Defendant
  Certain Underwriters at Lloyds
Wall Street Plaza
88 Pine Street, 21st Floor
New York, New York 10005-1801
Attention:  Edward C. Radzik, Esq.

DECHERT, LLP
Attorney for Defendant
  Aon Risk Services of Texas, Inc.
30 Rockefeller Plaza
New York, New York 10112-2200
Attention:  Rodney M. Zerbe, Esq.

NOURSE & BOWLES
Attorneys for Defendant
  Associated Electric & Gas Insurance
Services Ltd., Hamilton, Bermuda (AEGIS)
One Exchange Plaza
55 Broadway, 30th Floor
New York, New York  10006-3030
Attention:  John P. Vayda, Esq.

KENNEDY LILLIS SCHMIDT &
ENGLISH
Attorneys for Defendant
  American Home Assurance Co.
75 Maiden Lane - Suite 402
New York, New York 10038-4816

Elaine Bonowitz

Sworn to before me this
9th day of September, 2005

Notary Public

MICHAEL F. WATSON
Notary Public, State of New York
No. 01WA6056615, Qual. in Kings Cty.
Certificate Filed in New York County
Commission Expires     6/19/07

284110.1