HEALY & BAILLIE, LLP
Attorneys for Plaintiff
61 Broadway
New York, NY 10006-2834
(212) 943-3980
Richard V. Singleton (RS-9489)
John C. Koster (JK-4086)
David D. Jensen (DJ-2261)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IROQUOIS GAS TRANSMISSION SYSTEM L.P., <br><br> Plaintiff, <br><br> -against- <br><br> ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LTD., Hamilton, Bermuda; CERTAIN UNDERWRITERS AT LLOYD'S; AON RISK SERVICES OF TEXAS, INC.; and AMERICAN HOME ASSURANCE CO., <br><br> Defendants. | **(ECF Case)** <br><br> 05 Civ. 2149 (JSR) <br><br> **AFFIDAVIT OF JOHN C. KOSTER IN OPPOSITION TO DEFENDANT LLOYD'S MOTION FOR SUMMARY JUDGMENT** |

STATE OF NEW YORK      )
                                              : ss.:
COUNTY OF NEW YORK   )

JOHN C. KOSTER, being duly sworn, deposes and says:

1.    I am an attorney admitted to practice before this Honorable Court, and I am

a member of the firm of HEALY & BAILLIE, LLP, attorneys for Plaintiff Iroquois Gas

Transmission System L.P. ("Iroquois").

2.    I am fully familiar with all pleadings and proceedings herein and make this

affidavit in opposition of Defendant Certain Underwriters at Lloyd's ("Lloyd's) motion

for summary judgment on the issue of late notification pursuant to Rule 56 of the Federal Rules of Civil Procedure.

3.      The following facts are asserted on the basis of information contained in records, documents and correspondence forwarded to Healy & Baillie and the undersigned in connection with their representation of Plaintiff Iroquois, as attorneys and on the basis of the undersigned's personal investigation of this matter and I believe these facts to be true.

4.      The first three exhibits submitted by Lloyd's (Exhibits "A" to "C") attached to the affidavit of Edward C. Radzik, dated August 26, 2005, set out an exchange of correspondence between counsel regarding differing interpretations of the permissible scope of summary judgment motions following the hearing of July 22, 2005.  Lloyd's submission fails to include the undersigned's further letter of August 24, 2005 and a true and accurate copy of a letter dated August 24, 2005 from Iroquois' counsel to Lloyd's counsel is annexed hereto as Exhibit 21 to complete the exchange.

5.      Annexed hereto as Exhibit 22 is a true and accurate copy of Lloyd's Response to Iroquois' First Request for Admissions.

6.      Annexed hereto as Exhibit 23 is a true and accurate copy of two documents sent to Aon on behalf of Iroquois on October 20, 2004 and November 10, 2004, respectively,  that bear the Bates numbers IRO/AE 00355-86, regarding Iroquois' demand for coverage.

7.    Annexed hereto as Exhibit 24 is a true and accurate copy of two (2) documents produced by Aon from the files of Aon bearing Bates numbers ARS-TX 0054-87, 0088-91, reflecting receipt of Iroquois' coverage demand.

8.    Annexed hereto as Exhibit 25 is a true and accurate copy of certain pages from the transcript of the deposition of Michelle L. Wieler.

9.    Annexed hereto as Exhibit 26 is a true and accurate copy of two notices produced by Aon from the files of Aon bearing Bates numbers ARS-TX 0047-48.

_____
John C. Koster

Sworn to before me this 9th day
of September, 2005

_____
Notary Public

**ELAINE BONOWITZ**
**Notary Public, State of New York**
**No. 43-4893320**
**Qualified in Richmond County**
**Certificate Filed in New York County**
**Commission Expires May 11, 20__**

## Exhibits

21.  Letter from Iroquois' counsel to Lloyd's counsel

22.  Lloyd's Response to Iroquois' First Request for Admissions

23.  Documents regarding Iroquoi's demand for coverage (IRO/AE 00355-86)

24.  Documents reflecting receipt of Iroquoi's coverage demand (ARS-TX 0054-87, 0088-91)

25.  Michelle Wieler deposition (excerpts)

26.  Aon's notices (ARS-TX 0047-48)

# H&B

## HEALY & BAILLIE, LLP

61 Broadway
New York, NY 10006-2834
T: +1 212-943-3980  F: +1 212-425-0131
www.healy.com

JOHN C. KOSTER
jkoster@healy.com

DIRECT DIAL (212) 709-9236
DIRECT FAX (212) 487-0336

August 24, 2005

**VIA TELEFAX (212) 376-6488**

Edward C. Radzik, Esq.
Donovan Parry McDermott & Radzik
Wall Street Plaza
88 Pine Street, 21st Floor
New York, NY  10005-1801

Re:   Iroquois Gas Transmission System L.P. v.
       Associated Electric & Gas Insurance Services Ltd.
       Our Ref.:  100705.0006

Dear Ed:

I disagree with your interpretation regarding the permissible scope of the parties' summary judgment motions, and with your interpretation of the Court's July 25th order which specifically incorporates "the schedule set forth in the Case Management Plan dated April 15, 2005".

Nonetheless, I agree these matters should be taken up in the parties' summary judgment submissions.

Very truly yours,

HEALY & BAILLIE, LLP

By:

John C. Koster

JCK/bp

Page 2
August 24, 2005

cc:    **VIA FAX (212) 952-0345**
John P. Vayda, Esq.
Nourse & Bowles
One Exchange Plaza
55 Broadway
New York, NY 10006-3030

**VIA FAX (212) 430-0810**
Rodney M. Zerbe, Esq.
Dechert LLP
30 Rockefeller Plaza
New York, NY 10112-2200

**VIA FAX (212) 698-3599**
Charles E. Schmidt, Esq.
Kennedy Lillis Schmidt & English
75 Maiden Lane, Suite 402
New York, NY 10038-4816

282903.1

DONOVAN PARRY McDERMOTT & RADZIK
Edward C. Radzik (ER-2473)
Attorneys for Defendants, Lloyd's Underwriters
Wall Street Plaza
88 Pine Street - 21st Floor
New York, NY 10005-1801
(212) 376-6400

**HEALY & BAILLIE, LLP**

**AUG  5  2005**

MANAGING CLERK'S DEPT.
RECEIVED BY _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

IROQUOIS GAS TRANSMISSION
SYSTEM L.P.,

                 Plaintiff,

      - against -

ASSOCIATED ELECTRIC & GAS
INSURANCE SERVICES LTD.,
Hamilton, Bermuda; CERTAIN
UNDERWRITERS AT LLOYD'S; AON
RISK SERVICES OF TEXAS, INC.; and
AMERICAN HOME ASSURANCE CO.,

                Defendants.

-----------------------------------------------------------X

**ECF CASE**

05 CV 2149 (JSR)

**LLOYD'S UNDERWRITERS
RESPONSE TO PLAINTIFF'S
FIRST REQUEST FOR
ADMISSIONS**

Defendants, Underwriters at Lloyd's and Certain Insurance Companies subscribing to policy number LE0280715 (Lloyd's Underwriters or Defendants), by and through their attorneys, DONOVAN PARRY McDERMOTT & RADZIK, hereby respond to PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS, as follows:

**Request 1:**

Admit that the documents disclosed as exhibits A and B to your Response to Plaintiff's Request for Production of Documents dated June 22, 2005 memorialize the hull policy.

**Response to Request 1:**

Lloyd's Underwriters admit that Exhibit A, the "Lloyd's Slip Policy," memorializes Lloyd's Hull Policy number LE0280715 ("the Lloyd's Policy"). Lloyd's Underwriters, however, deny that the Lloyd's Slip Policy contains the complete language of the all of the clauses incorporated into the Lloyd's Policy. Further, Lloyd's Underwriters admit that portions of the American Hull Institute forms contained in Exhibit B are incorporated into the Lloyd's Policy. Except as specifically admitted, the remainder of this request is denied.

**Request 2:**

Admit that the documents disclosed as exhibits A and B to your Response to Plaintiff's Request for Production of Documents dated June 22, 2005 are a full and complete memorialization of the terms of the hull policy.

**Response to Request 2:**

*See* Response to Request 1. The Lloyd's Slip Policy does not contain the complete language of each and every clause incorporated therein. The document produced by Lloyd's Underwriters on July 12, 2005, and marked as Exhibit 2 at the Deposition of John Hodgett, contains the full language of all clauses incorporated into the Lloyd's Policy memorialized in the Lloyd's Slip Policy (Exhibit A).

**Request 3:**

Admit that the documents disclosed bearing the BATES numbers IRO/AE 00300 through IRO/AE 00341, disclosed by Iroquois in its Response to Defendant Certain Underwriters at Lloyd's (First) Interrogatories under exhibit 3, memorialize the hull policy.

2

**Response to Request 3:**

Lloyd's Underwriters admit that the documents bearing the BATES numbers IRO/AE 00300 through 00341 appear to have been prepared by AON and reflect the terms of the Lloyd's Policy. Except as specifically admitted, the remainder of the Request is denied.

**Request 4:**

Admit that the documents disclosed bearing the BATES numbers IRO/AE 00300 through IRO/AE 00341, disclosed by Iroquois in its Response to Defendant Certain Underwriters at Lloyd's (First) Interrogatories under exhibit 3, are a full and complete memorialization of the terms of the hull policy.

**Response to Request 4:**

Deny. *See* Responses to Requests 1 and 2

**Request 5:**

Admit that the Hull Policy was sold through an insurance broker located within the State of Texas.

**Response to Request 5:**

Deny. Premiums are collected by JLT and deposited with Lloyd's Signing Office in London along with the Lloyd's Slip Policy signed by the lead underwriter in London. *See* Hodgett Deposition p. 18.

**Request 6:**

Admit that the address of the named insured on the Hull Policy is within Texas.

**Response to Request 6:**

Admit.  However, note that, Iroquois is not the named assured on the Hull Policy.  If Iroquois is an additional assured, its status as an additional assured arises *only* out of the Construction Contract between Horizon and Iroquois, which calls for application of New York law and was executed in connection with the Eastchester Extension project in New York.

**Request 7:**

Admit that the sale of the Hull Policy was consummated within Texas.

**Response to Request 7:**

Deny.  *See* Response to Request 5.  Also, the full terms of the policy, as compiled by AON and produced by Lloyd's Underwriters on July 12, 2005, were endorsed by leading underwriters in England.  *See* Hodgett Deposition pp. 95-96.  Additionally, the Lloyd's Slip Policy was approved by lead underwriters in London.  *See* Hodgett Deposition p. 33.

**Request 8:**

Admit that the Hull Policy was sold with forms identifying the Texas Department of Insurance and advising costumers [sic] they could contact that agency.

**Response to Request 8:**

Admit that the document, BATES number IRO/AE 00300, contains a reference to Texas Insurance law.  Except as specifically admitted, the remainder of this Request is denied.

**Request 9:**

Admit that the documents bearing the BATES numbers IRO/AE 00001 through IRO/AE 00031 (which were disclosed in Plaintiff's Response to Defendant Certain Underwriters at

Lloyd's (First) Interrogatories dated June 21, 2005 in exhibit 3) memorialize the Construction Contract.

**Response to Request 9:**

Admit that the documents BATES numbers IRO/AE 00001 through IRO/AE 00031 appear to reflect the terms of the Construction Contract between Iroquois and Horizon. However, it appears that schedules, appendices, and other attachments are missing from the referenced pages.

**Request 10:**

Admit that besides the aforesaid documents, no other documents address the relative responsibilities of Iroquois and Horizon to indemnify and to procure and/or maintain insurance.

**Response to Request 10:**

Lloyd's Underwriters has made a reasonable inquiry and the information known or readily obtainable by Lloyd's Underwriters is insufficient to enable Lloyd's to admit or deny Request 10.

**Request 11:**

Admit that the documents bearing the BATES numbers IRO/AE 00387 through IRO/AE 00417 (which were disclosed in Plaintiff's Response to Defendant certain Underwriters at Lloyd's (First) Interrogatories dated June 21, 2005 in exhibit 4) memorialize the third-party complaint asserted against Iroquois by NYPA.

**Response to Request 11:**

5

Lloyd's Underwriters has made a reasonable inquiry and the information known or readily obtainable by Lloyd's Underwriters is insufficient to enable Lloyd's to admit or deny Request 11.

**Request 12:**

Admit that the factual predicate to all claims in the NYPA Litigation, whether styled in tort or contract or otherwise, is the Anchor Drag Incident.

**Response to Request 12:**

Admit that the claims asserted against Iroquois by the NYPA and the LIPA relate to the Anchor Drag Incident, however, deny that the Incident is the only factual predicate for the entirety of the claims. The contract claim for indemnity asserted against Iroquois arose out of the Crossing Agreement between Iroquois and NYPA/LIPA. Except as specifically admitted, the remainder of Request 12 is denied.

**Request 13:**

Admit that the fault of the Vessel is an issue contested in the NYPA Litigation.

**Response to Request 13:**

Admit.

**Request 14:**

Admit that Iroquois has incurred costs defending the NYPA litigation.

**Response to Request 14:**

6

Lloyd's Underwriters has made a reasonable inquiry and the information known or readily obtainable by Lloyd's Underwriters is insufficient to enable Lloyd's to admit or deny Request 14.

**Request 15:**

Admit that at least one of the claims asserted by NYPA against Iroquois in the NYPA Litigation would be entitled to indemnification under the Hull Policy, if Iroquois were held liable to pay and did pay money damages to NYPA.

**Response to Request 15:**

Deny.

**Request 16:**

Admit that you have a duty to defend Iroquois in the NYPA Litigation.

**Response to Request 16:**

Deny.

**Request 17:**

Admit that as of the date of these Requests for Admission, trial has not commenced in the NYPA Litigation and no judgment has been entered in the NYPA litigation.

**Response to Request 17:**

Admit that the trial has not yet commenced, however note that extensive investigation by experts and discovery of facts has taken place and parties have interposed numerous motions for

dispositive and other relief in the NYPA Litigation without participation from, consultation with, or approval of Lloyd's Underwriters.

**Request 18:**

Admit that as of the date of these Requests for Admission, the scheduled trial date in the NYPA Litigation is not so soon that it would be impossible or impracticable for Lloyd's to investigate the facts underlying the NYPA Litigation and to prepare a defense to the NYPA litigation.

**Response to Request 18:**

Deny.

**Request 19:**

Admit that as of May 17, 2004, the scheduled trial date in the NYPA Litigation was not so soon that it would have been impossible or impracticable for Lloyd's to investigate the facts underlying the NYPA Litigation and to prepare a defense to the NYPA litigation.

**Response to Request 19:**

Deny.

**Request 20:**

Admit that JLT acts as your representative or agent.

**Response to Request 20:**

Deny.

**Request 21:**

Admit that JLT has authority to receive notices of claims, losses and/or suits.

**Response to Request 21:**

Admit that JLT, as the insured's agent, presented Underwriters with notices of claims, losses and/or suits. Except as specifically admitted, the remainder of Request 21 is denied.

**Request 22:**

Admit that the document bearing the BATES number A 0020, produced by AEGIS on June 13, 2005, is a true and correct copy of an e-mail message exchanged between Colin Williams and Mike Roberts, and employee of JLT, on August 6, 2003.

**Response to Request 22:**

The information known or readily obtainable by Lloyd's Underwriters is insufficient to enable Lloyd's to admit or deny Request 22. Notwithstanding the foregoing reservation, Request 22 is admitted.

**Request 23:**

Admit that the document bearing the BATES number A 0087 through A 0091, produced by AEGIS on June 13, 2005, is a true and correct copy of an e-mail message and attached letter exchanged between (inter alia) Colin Williams and Mike Roberts, a JLT employee, on November 10, 2004.

**Response to Request 23:**

The information known or readily obtainable by Lloyd's Underwriters is insufficient to enable Lloyd's to admit or deny Request 23. Notwithstanding the foregoing reservation, Request 23 is admitted.

9

**Request 24:**

Admit that the document disclosed as exhibit C to your Response to Plaintiff's Request for Production of Documents dated June 22, 2005 is a notice that you received on or about May 17, 2004.

**Response to Request 24:**

Deny.  The notice attached as Exhibit C was not received by Lloyd's Underwriters until on or about December 1, 2004.  *See* Hodgett Deposition p. 140.

**Request 25:**

Admit that no later than May 18, 2004 you had actual notice of the Anchor Drag Incident and the NYPA Litigation.

**Response to Request 25:**

Deny.  Lloyd's Underwriters did not have actual notice of the Anchor Drag Incident or the NYPA Litigation until on or about December 1, 2004.  *See* Hodgett Deposition p. 140.

**Request 26:**

Admit that no later than May 18, 2004 you had actual notice of Iroquois' claim to be an additional assured and/or additional insured.

**Response to Request 26:**

Deny.  Lloyd's Underwriters did not have actual notice of Iroquois' claim to be an additional assured/insured until on or about December 1, 2004.  *See* Hodgett Deposition p. 140.

**Request 27:**

Admit that no later than May 18, 2004 you had notice that Iroquois had incurred costs defending the NYPA Litigation and sought to recover the same from you.

**Response to Request 27:**

Deny. Lloyd's Underwriters did not have actual notice of Iroquois' claim for costs in defending the NYPA Litigation until on or about December 1, 2004. *See* Hodgett Deposition p. 140.

**Request 28:**

Admit that no later than May 18, 2004 Iroquois tendered the defense of the NYPA Litigation to you.

**Response to Request 28:**

Deny. *See* Responses to Requests 24 through 27.

**Request 29:**

Admit that you have not specifically objected to Iroquois incurring costs in defense of the NYPA Litigation.

**Response to Request 29:**

Deny. Lloyd's Underwriters could neither object nor approve of Iroquois expenditures in the NYPA Litigation, because it was not timely notified of the Incident or the Litigation.

Dated:      New York, New York
            August 2, 2005

DONOVAN PARRY McDERMOTT & RADZIK
Attorney for Defendants, Lloyd's Underwriters

BY: _____
EDWARD C. RADZIK (ER-2473)

11

Wall Street Plaza
88 Pine Street – 21ST Floor
New York, New York  10005-1801
(212) 376-6400

TO:     John C. Koster, Esq.
        David Jensen, Esq.
        HEALY & BAILLIE, LLP
        *Attorneys for IROQUOIS GAS TRANSMISSION*
        *   SYSTEM L.P.*
        61 Broadway, 32nd Floor
        New York, New York,  10006

        John P. Vayda, Esq.
        NOURSE & BOWLES, LLP
        *Attorneys for ASSOCIATED ELECTRIC & GAS*
        *   INSURANCE SERVICES LTD.*
        One Exchange Plaza
        55 Broadway – 30th Floor
        New York, New York  10006-3030

        Rodney M. Zerbe, Esq.
        James Tolan, Esq.
        Dechert LLP
        *Attorneys for AON RISK SERVICES*
        *   OF TEXAS, INC.*
        30 Rockefeller Plaza – Room 2305
        New York, New York  10112

        Charles E. Schmidt, Esq.
        KENNEDY LILLIS SCHMIDT & ENGLISH
        *Attorneys for AMERICAN HOME*
        *   ASSURANCE COMPANY*
        75 Maiden Lane
        New York, New York  10038

# .HEALY & BAILLIE, LLP

### 61 BROADWAY
### NEW YORK, NY 10006-2701

TELEPHONE: (212) 943-3980
FAX: (212) 425-0131
www.healy.com

RICHARD V. SINGLETON II
RSINGLETON@HEALY.COM

DIRECT DIAL (212) 709-9264
DIRECT FAX (212) 487-0364

October 25, 2004

By Fax:  (832) 476-6590

Aon Risk Services
1330 Post Oak Blvd, Suite 900
Houston, TX 77056
Attn:  James Montano/Karen Cooper

Re:    In the Matter of Horizon Vessels, Inc., etc. et al.
       C.A. No. H-03-3280
       In the United States District Court for the Southern District of
       Texas
       Our Ref.: 100705.0003

Dear Sirs:

    We are attorneys for Iroquois Gas Transmissions System LP. ("Iroquois").  As you
are aware, Iroquois are parties to the above captioned limitation of liability action, which
was commenced by Horizon Offshore Contractors, Inc. ("Horizon") in response to claims
by the New York Power Authority ("NYPA") and others that on February 27, 2003
Horizon damaged NYPA's Y-49 cable crossing in Long Island Sound.  The incident
occurred while Horizon was acting as Iroquois' contractor for the construction of a
natural gas pipeline that was to be laid over NYPA's cable.  NYPA's claim is in excess of
$18,000,000.

    NYPA and LIPA have now filed a cross-claim against Iroquois in Horizon's
limitation action seeking recovery for their full damages resulting from the incident.  A
copy of the cross-claim is attached.  NYPA and its insurer have also recently filed a
motion for partial summary judgment against Iroquois.

    Iroquois is an additional insured under Horizon's various insurance policies in
effect at the time of the incident and covering Horizon's liabilities in this matter.  A copy
of Aon's letter of July 17, 2003 confirming coverage on behalf of Iroquois is attached for
ease of reference.  The law is well established that, as an additional insured, Iroquois is
entitled to immediate coverage by Horizon's insurers for its attorneys' fees and costs

269955.1

IRO/AE 00355

Page 2
October 25, 2004

incurred in the defense of this matter irrespective of the insurers' position with regard to ultimate liability.

We therefore renew Iroquois' demand that Horizon's insurers immediately assume Iroquois' defense in connection with the Y49 Cable Incident, including covering Iroquois' attorneys' fees and costs incurred to date and on a going-forward basis. Please confirm coverage as soon as possible and advise to whom our/Iroquois' statements for legal services should be addressed. A prompt response is necessary due to NYPA's pending motion for partial summary judgment. If we do not have a response within two weeks of the date of this letter, Iroquois will have no choice but to petition the appropriate court for a declaration of underwriters' obligation to cover.

Very truly yours,

HEALY & BAILLIE, LLP

By

Richard V. Singleton II

RVS/BT

cc:    Mr. Charles A. Cerise, Jr.
       Mr. Edwin C. Lazier
       Adams and Reese LLP
       One Shell Square
       701 Poydras, Suite 4500
       New Orleans, LA 70139

       Mr. Daryl G. Dursum
       Adams and Reese LLP
       4400 One Houston Center
       1221 McKinney
       Houston, TX 77010

269955.1

IRO/AE 00356



Aon Risk Services

Natural Resources
Group

July 17, 2003

Mr. Jeffery A. Bruner
Iroquois Gas Transmission System
One Corporate Drive, Suite 500
Shelton, CT 06484-6211

                                    Re.:    Claims by Long Island Power Authority
                                            (November 16, 2002) and New York Power
                                            Authority (February 27, 2003)
                                            Insurance Information

Dear Mr. Bruner:

We refer to your letter of June 9, 2003 to Horizon Offshore Contractors and enclose the
following:

1) Aon Risk Services, fax message of November 27, 2002 to American
   International Marine Adjusters.

2) Aon Risk Services, "Accord" General Liability Notice of
   Occurrence/Claim" of November 27, 2002 to American Home
   Assurance Co.

3) Aon Natural Resources, "Report of Loss", dated 5 December 2002 to
   Aegis.

4) Aon Risk Services, fax message of January 17, 2003 (without
   enclosures) to A. I. Marine Adjusters and JLT Risk Solutions, with
   copy addressees as noted therein.

5) Aon Risk Services, fax message of December 12, 2002 to A. I. Marine
   Adjusters, Navigators Insurance Company, Liberty Insurance
   Underwriters and XL Specialty.

6) Aon Natural Resources, "Report of Loss" dated March 4, 2003 to
   Aegis.

7) Aon Natural Resources, "Report of Loss" dated April 18, 2003 to The
   Steamship Mutual Underwriting Association (Bermuda) Ltd.

8) Aon Natural Resources, "Report of Loss" dated May 21, 2003 to
   American Home Assurance Company.

9) Aon Natural Resources, "Report of Loss" dated July 16, 2003 to
   Various excess liability underwriters.

*Aon Risk Services of Texas, Inc.*
1330 Post Oak Blvd., Suite 900 • Houston, Texas 77056 • tel: (832) 476-6000 • fax: (832) 476-6590

**IRO/AE 00357**

07/17/2003 16:09 FAX 203 926 88^    IROQUOIS LEGAL FAX    → HEALY SINGLETON    @005
JUL. -17'05(THU) 13:41    P. 004



*Aon Risk Services*

*Natural Resources Group*

We believe the enclosures clearly evidence notice to all appropriate insurers with respect to the subject casualties. Moreover, the "Reports of Loss" enclosed herein indicate the limits of liability of each policy noticed as well as other relevant information.

Regarding the issue of "specialist operations", please note that the exclusion regarding such in the Steamship rules was deleted from the AEGIS policy (ARS-3175) as evidenced in the attached portions of such policy. What may have led to some confusion on this issue is that AEGIS uses the Steamship Mutual rules and modifies same to meet the needs of its insureds, including Horizon. In this case Horizon required that the exclusion be removed and AEGIS complied.

As to excess liability coverage, the two incidents are distinct in their facts and, as you will note, in an abundance of caution, all appropriate excess liability underwriters have been advised of the occurrences. How the policies apply to each incident will be determined by what the investigations relative to each clearly establish. To assist you in your understanding of the structure of Horizon's insurance program, attached is a bar chart which graphically depicts the casualty portion of such program. Please note that certain coverages depicted on such chart are not relevant to the claims at hand and all information shown is proprietary and confidential to Horizon.

With respect to your inquiries regarding the M/V MR SONNY, please note inasmuch as Horizon was not the owner of such vessel, Horizon did not undertake to insure it. However, we believe Horizon, as charterer, is protected for any liability as charterer by its primary general liability policy provided by American Home per "Amendatory Endorsement to Form CG 00 01 10 93 Marine Liability Insurance, Etc.", a copy of which is also attached hereto for your review.

Regarding the issue of contractual indemnities, the AEGIS policy (ARS-3175) refers to the Steamship rules and with respect to Rule 25, provides " . . . Including coverage for liabilities as provided under Rule 25 xx (Contract and Indemnities) and its subparagraphs *and it is agreed to waive the requirement for approval of the terms of any such contracts."* (emphasis supplied.) The Steamship Mutual policy on an excess basis does not evidence the waiver noted. However, these underwriters are aware of the contractual necessity of "naming and waiving" Horizon's principles as a general matter and with respect to the project at issue in particular.

**IRO/AE 00358**

*Aon Risk Services of Texas, Inc.*
1330 Post Oak Blvd., Suite 900 • Houston, Texas 77056 • tel: (832) 476-6000 • fax: (832) 476-6590

07/17/2003 16:09 FAX 203 926 88´      IROQUOIS LEGAL FAX     → HEALY SINGLETON   ☑ 006
JUL. -17'03(THU) 13:41                                                  P. 005

**AON**

*Aon Risk Services*

*Natural Resources*
*Group*

We understand that Iroquois has been provided policies and certificates of insurance evidencing all required and necessary coverages although same might not have reached your desk. You may wish to review the documents provided with your insurance department and outside insurance brokers to confirm the contents herein. In addition, if you still have questions or remain uncertain of certain issues, we are available to meet and discuss.

Very truly yours,

**Aon Natural Resources**

James I. Montano

*Aon Risk Services of Texas, Inc.*
1350 Post Oak Blvd., Suite 900 • Houston, Texas 77056 • tel: (832) 476-6000 • fax: (832) 476-6590

07/17/2003 THU 15:56  [TX/RX NO 8207]  ☑ 005

**IRO/AE 00359**

07/17/2003 16:10 FAX 203 926 88'    IROQUOIS LEGAL FAX    → HEALY SINGLETON    ☑007
JUL. -17'03(THU) 13:41                                                              P. 006

AON

## ✱✱✱  Transmit Conf.Report  ✱✱✱

P.1                                                              Nov 27 2002  14:43

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 97133612693 | NORMAL | 27,14:43 | 0'45" | 2 | ✱ O K | |



Aon Risk Services
Natural Resources Group

1330 Post Oak Blvd, Suite 900
Houston, TX 77056-3089
832-476-6810    Fax 832-476-6510
Karen _Cooper@ars.aon.com

| | |
|---|---|
| Telecopier No.: | 713-268-9680 |
| Date: | November 27, 2002 |
| Company: | American International Marine Adjusters |
| Attention: | John Molkentin |
| Cc: | Bill Arnold, Horizon Offshore (w/att.) 713-361-2693<br>Peter Mortlock, Aon (w/att.)<br>Margie Goodall, Aon (w/att.)<br>Jim Montario, Aon (w/att.) |
| From: | Karen Cooper |
| No. of Pages Sent: | 2        (Including this page) |
| Subject: | Insured:   Horizon Offshore Contractors<br>D/L:      November 16, 2002<br>Policy No: C1727<br>Claimant:  Long Island Power Authority<br>Our Ref:   02-M4842 |

Please accept this as notice of an incident that may give rise to a claim under the captioned policy.
On November 16, 2002 at approximately 5:30 P.M. EST, an anchor of the CalDive DSV "Mr.
Sonny" became entangled in four (4) cables of the Long Island Power Authority. No injuries were
reported. The extent of financial damage has not yet been determined.

Please contact Mr. Bill Arnold, Director of Risk Management, Horizon Offshore, 713-243-2740, for
additional information.

Please acknowledge receipt and advise your claim number.

Regards,

*[signature]*

07/17/2003 THU 15:56  [TX/RX NO 8207] ☑006

**IRO/AE 00360**

07/17/2003 16:10 FAX 203 926 887    IROQUOIS LEGAL FAX    → HEALY SINGLETON    @008
JUL.-17'03(THU) 13:42    P. 007

2

# ACORD GENERAL LIABILITY NOTICE OF OCCURRENCE/CLAIM     DATE 11-27-02

| PRODUCER   PHONE (A/C, No, Ext): 832-476-6810 | NOTICE OF OCCURRENCE | DATE OF OCCURRENCE AND TIME | | AM | DATE OF CLAIM | PREVIOUSLY REPORTED |
|---|---|---|---|---|---|---|
| AON RISK SERVICES | NOTICE OF CLAIM | 11/16/02 | 5:30 | X PM | | YES X NO |
| NATURAL RESOURCES GROUP | EFFECTIVE DATE | EXPIRATION DATE | POLICY TYPE | | | RETROACTIVE DATE |
| 1330 POST BLVD SUITE 900 | 02/20/02 | 05/01/03 | OCCURRENCE | CLAIMS MADE | | |
| HOUSTON TX 77056 | COMPANY   NAIC CODE: | | MISCELLANEOUS INFO (Site & location code) | | | |
| | AMERICAN HOME ASSURANCE CO. | | | | | |
| CODE:   SUB CODE: | POLICY NUMBER | | REFERENCE NUMBER | | | |
| AGENCY CUSTOMER ID: | C1727 (ARS-3177) | | Aon Claim No: 02-M4842 | | | |

| INSURED | CONTACT   CONTACT INSURED | WHERE TO CONTACT |
|---|---|---|
| NAME AND ADDRESS   SOC SEC #: | NAME AND ADDRESS | |
| HORIZON OFFSHORE CONTRACTORS | BILL ARNOLD | |
| 2500 CITYWEST BLVD, SUITE 2200 | | WHEN TO CONTACT |
| HOUSTON TX 77042 | | |
| RESIDENCE PHONE (A/C, No)   BUSINESS PHONE (A/C, No, Ext) | RESIDENCE PHONE (A/C, No)   BUSINESS PHONE (A/C, No, Ext) 713-243-2740 | |

## OCCURRENCE

| LOCATION OF OCCURRENCE (include city & state): IROQUOIS PROJECT. | AUTHORITY CONTACTED |
|---|---|

DESCRIPTION OF OCCURRENCE (Use separate sheet, if necessary): ON NOVEMBER 16, 2002 AT APPROXIMATELY 5:30 P.M., EST, AN ANCHOR OF THE CalDive DSV "MR SONNY" BECME ENTANGLED IN 4 SUBSEA POWER CALBES OF LONG ISLAND POWER AUTHORITY

## POLICY INFORMATION

COVERAGE PART OR FORMS (Insert form # and edition dates)

| GENERAL AGGREGATE | PROD/COMP OP AGG | PERS & ADV INJ | EACH OCCURRENCE | FIRE DAMAGE | MEDICAL EXPENSE | DEDUCTIBLE | | PD |
|---|---|---|---|---|---|---|---|---|
| 2,000,000 | 2,000,000 | 1,000,000 | 1,000,000 | Incl. | Incl. | | | BI |
| UMBRELLA EXCESS   UMBRELLA   EXCESS   CARRIER: American Home (Part B)   LIMITS: $10,000,000 AGGR | | | | | | PER CLAIM/OCC | | SIR DED |

## TYPE OF LIABILITY

| PREMISES: INSURED IS | OWNER | TENANT | OTHER: | TYPE OF PREMISES |
|---|---|---|---|---|
| OWNER'S NAME & ADDRESS (if not insured) | | | | OWNERS PHONE (A/C, No, Ext) |
| PRODUCTS: INSURED IS | MANUFACTURER | VENDOR | OTHER: | TYPE OF PRODUCT |
| MANUFACTURER'S NAME & ADDRESS (if not insured) | | | | MANUFACT PHONE (A/C, No, Ext) |

WHERE CAN PRODUCT BE SEEN?

OTHER LIABILITY INCLUDING COMPLETED OPERATIONS (Explain)

## INJURED/PROPERTY DAMAGED

| NAME & ADDRESS (Injured/Owner): LONG ISLAND POWER AUTHORITY (LIPA) | | | PHONE (A/C, No, Ext) |
|---|---|---|---|
| AGE | SEX | OCCUPATION   EMPLOYER'S NAME & ADDRESS | PHONE (A/C, No, Ext) |
| DESCRIBE INJURY | | WHERE TAKEN   WHAT WAS INJURED DOING? | |
| FATALITY | | | WHEN CAN PROPERTY BE SEEN? |
| DESCRIBE PROPERTY (Type, model, etc): 4 Subsea Power Cables | ESTIMATE AMOUNT Unknown | WHERE CAN PROPERTY BE SEEN? | |

## WITNESSES

| NAME & ADDRESS | BUSINESS PHONE (A/C, No, Ext) | RESIDENCE PHONE (A/C, No) |
|---|---|---|

REMARKS

| REPORTED BY BILL ARNOLD, INSD. | REPORTED TO | SIGNATURE OF INSURED | SIGNATURE OF PRODUCER Karen A. Cooper |
|---|---|---|---|

ACORD 3 (7/97)    NOTE: IMPORTANT STATE INFORMATION ON REVERSE SIDE    © ACORD CORPORATION 1986

07/17/2003 THU 15:56   [TX/RX NO 8271] @007

**IRO/AE 00361**

07/17/2003 16:10 FAX 203 926 89       IROQUOIS LEGAL FAX      ~ HEALY SINGLETON      ☒009
JUL. -17' 03(THU) 13:42                                                               P. 008

CC:    Peter Mortlock, Margie Goodall - Aon

# AON

## *Aon Natural Resources*
### 1330 Post Oak Boulevard, Suite 900
### Houston, Texas 77056
### Telephone: (832) 476-6000; Telefax: (832) 476-6590

**REPORT OF LOSS ON:**    ENERGY PACKAGE        **DATE:**    5 December 2002

To:    **COMPANY**                 **POLICY NO.**               **INTEREST**
       Associated Electric & Gas Insurance Services    LE0280741 (ARS-3175)      100%
       Ltd. (AEGIS), Hamilton Bermuda Per Origin
       Limited, London, UK (via JLT Risk Solutions)

Please accept notice of the following casualty which may result in a claim for:    Property Damage

Name of the Assured:    Horizon Offshore Contractors, Inc.

Policy Inception:   20 Feb 02    Date of Casualty:   16 Nov 02   Policy Expiration:    01 May 03   Form:

Insured Vessel or Property:             Insured Value/Limit of Liability $    US950,000 any accident/occurrence

Excess of: $   US$50,000    Deductible: $       AAD: $       Stop Loss: $

Place where casualty occurred:    Iriquois Project

Nature of Casualty    On 16 November 2002 at approximately 5:30 PM Eastern Standard Time an anchor of the Cal Dive DSV

   "MR SONNY" became entangled in four (4) subsea power cables of Long Island Power Authority (LIPA)

Estimated amount of entire loss Primary $    Unknown            Excess $

            Instructed:

Remarks:    Also reported to AI Marine Adjusters, Houston on behalf of Excess (American Home)

Claim #:   02-M4842          Producer:   Peter Mortlock       Claims Made:    No

Client's Claim #:                      by:    *Karen Cooper*

*If you have any instructions to give, please advise us promptly.*

### PLEASE ACKNOWLEDGE RECEIPT BY SIGNING AND RETURNING A COPY OF THIS NOTICE

Signature:

Claim Number:

\\HSTNWFS2\SYS\Apps\USERS\Claims Shared\Horizon\Karen-Rensel\clm 02-M4842\Marine Loss Notice.doc-1
The information contained in this fax is confidential and/or privileged. That fax is intended to be reviewed initially by only the individual named above. If the reader of this transmitted page is not the intended recipient or a representative of the intended recipient, you are hereby notified that any review, dissemination, copying of this fax or the information contained herein is prohibited. If you have received this fax in error, please immediately notify the sender by telephone and return this fax to the sender at the address above.

07/17/2003 THU 15:56   [TX/RX NO 8207] ☒008

07/17/2003 16:10 FAX 203 926 88    IROQUOIS LEGAL FAX    → HEALY SINGLETON    @010
JUL.-17'03(THU) 13:42                                   P. 009

# AON

### *Aon Risk Services*
### *Natural Resources Group*

1330 Post Oak Boulevard, Suite 900
Houston, Texas 77056
Telephone: (832) 476-6840; Telefax: (832) 476-6510
Renee_Glidewell@ars.aon.com

| | |
|---|---|
| **Date:** | January 17, 2003 |
| **Fax Number:** | 713-268-8680<br>011-44-207-247-4488 |
| **Attention:** | Jack Molkentin (ref: 36451)<br>Mike Roberts (ref: LG0260741/001) |
| **Company:** | **A. I. Marine Adjusters**<br>**JLT Risk Solutions Limited** |
| **From:** | Renee Glidewell<br>Sr. Consultant |
| **Copies:** | Julie Bowen, Navigators (ref: LIA115037) 713-960-0870<br>Liberty Insurance Underwriters (ref: unknown) 212-208-4112<br>Liz Monroe, XL Marine & Offshore (ref: EX002266) 212-894-9242<br>William Gibbens, Horizon Offshore (cover only) 713-361-2693<br>Jim Montano, Aon (cover only) |
| **No. of Pages Sent:** | 16 *(including this page)* |
| **Subject:** | Insured:   Horizon Offshore Contractors, Inc.<br>Claimant:  Long Island Power Authority (LIPA)<br>DOL:      November 16, 2002<br>Our Ref:   02-M4842 |

---

Attached for your file and review are various documents as received from the insured. Included is a copy of the demand for defense and indemnity from Iroquois Gas Transmission System, LP along with the insured's declination to them. For your reference, a copy of the insurance exhibit from the Iroquois contract is also attached. We also provide a copy of the insured's tender letter to Thales Geosolutions, Inc. requesting their soonest response with regard to defense and indemnity of Horizon.

Also included is correspondence from the claimant's attorney demanding securities for their claims be posted in the amount of $33.75 million by January 21, 2003. After your review, please response accordingly.

Should you have any questions or not receive all of the documents noted, please contact our office.

Regards,

*Renee Glidewell*

NOTE: The information contained in this fax is confidential and/or privileged. This fax is intended for the sole use of the individual named above. If the reader of this transmittal page is not the intended recipient or a representative of the intended recipient, you are hereby notified that any review, dissemination, distribution, or copying of this fax or the information contained herein is prohibited. If you have received this fax in error, please immediately notify the sender by telephone and return this fax to the sender at the address above.

**IRO/AE 00363**



*Aon Risk Services*
*Natural Resources Group*

1330 Post Oak Boulevard, Suite 900
Houston, Texas 77056
Telephone: (832) 476-6840; Telefax: (832) 476-6510
Renee_Glidewell@ars.aon.com

| | |
|---|---|
| Date: | December 12, 2002 |
| Attention: | Excess Claims |
| Company: | A. I. Marine Adjusters  713-268-8680 (ref: C1769)<br>Navigators Insurance Co.  713-960-0870 (ref: 02L1799-01)<br>Liberty Insurance Underwriters 212-208-4112 (ref: NY039204002)<br>XL Specialty  212-894-9242 (ref: PMEX847027) |
| From: | Renee Glidewell (for Karen Cooper)<br>Sr. Consultant |
| Copies: | Peter Mortlock, Aon (cover only)<br>Margie Goodall, Aon (cover only) |
| No. of Pages Sent: | 2  (Including this page) |
| Subject: | Assured:  Horizon Offshore Contractors<br>Policy:  ARS-3215<br>Effective:  04/09/02 – 05/01/03<br>Claimant:  Long Island Power Authority<br>DOL:  November 16, 2002<br>Our Ref:  02-M4842-C |

Please accept this as notice of an incident that could give rise to a claim under the captioned policy. It is reported that the anchor of the CalDive DSV "Mr. Sonny" became entangled in four (4) cables of the Long Island Power Authority. No injuries were reported. The extent of financial damage has not yet been determined. We shall, of course, forward additional information as it is available.

The incident has also been reported to A. I. Marine Adjusters on behalf of American Home Assurance Company. Jack Molkentin is handling the claim in AIMA's Houston office. The incident has also been reported to JLT Risk Solutions on behalf of AEGIS. Terry Cornick is handling the claim in their London office.

Please acknowledge your receipt of this notice and advise who in your respective offices will be handling this matter, along with your claim numbers. Should you have any questions, please feel free to call or e-mail.

Regards,

Renee Glidewell

NOTE:  The information contained in this fax is confidential and/or privileged. This fax is intended *for the sole use* of the individual named above. If the reader of this transmittal page is not the intended recipient or a representative of the intended recipient, you are hereby notified that any review, dissemination, *distribution*, or copying of this fax or the information contained herein is prohibited. If you have received this fax in error, please immediately notify the sender by telephone and return this fax to the sender at the address above.

**IRO/AE 00364**

<u>VIA FAX</u>



**Aon Natural Resources**
1330 Post Oak Boulevard, Suite 900
Houston, Texas 77056
Telephone: (832) 476-6000; Telefax: (832) 476-6590

REPORT OF LOSS ON:   Protection & Indemnity                     DATE:   March 4, 2003

To:      **COMPANY**                              **POLICY NO.**                    **INTEREST**
         Associated Electric & Gas Insurance
         Services Limited (AEGIS), Hamilton,      ARS-3175                          100%
         Bermuda per Origin Limited, London, U.K.
         c/o JLT Risk Solutions Limited
             London, England, U.K.
         Attn: Mr. Simon Dawes

Please accept notice of the following casualty which may result in a claim for:     Damage to Property

Name of the Assured:   Horizon Offshore, Inc. and Horizon Offshore Contractors, et al.

Policy Inception:  2/20/02     Date of Casualty:  2/27/03          Policy Expiration:  5/1/03

Insured Vessel:    GULF HORIZON                        Limit of Liability $     950,000 O. A. O.

Excess of: $  ·50,000      Deductible: $    N/A     AAD: $     N/A     Stop Loss: $    N/A

Place where casualty occurred:   Long Island Sound, NY

Nature of Casualty:     Whilst performing pipelaying operations (pipe burial) the insured vessel's anchor cable parted and allegedly

  damaged a sub-sea power cable owned by the New York Power Authority.

Estimated amount of entire loss $     (unknown)                          Excess $     N/A

                    Instructed:

Remarks:    Details of casualty and developments will be reported in due course.

Claim #:   03-M5058               Producer:    BJ                    Claims Made:    No

Client's Claim #:

                                                by:  _____
                                                        James I. Montano

If you have any instructions to give, please advise us promptly.

        PLEASE ACKNOWLEDGE RECEIPT BY SIGNING AND RETURNING A COPY OF THIS NOTICE

Signature:

\\utchbox2k1\sicore\BUSINESS UNITS\NR\Claims\Claims Shared\Horizon\03-M5058.doc-1
The information contained in this fax is confidential and/or privileged. This fax is intended to be reviewed initially by only the individual named above. If the reader of this transmittal page is not the
intended recipient or a representative of the intended recipient, you are hereby notified that any review, dissemination copying of this fax or the information contained herein is prohibited. If you have
received this fax in error, please immediately notify the sender by telephone and return this fax to the sender at the address above.

07/17/2003 16:11 FAX 203 926 887      IROQUOIS LEGAL FAX      → ¤EALY SINGLETON    ☒013
JUL.-17'03(THU) 13:42                                                          P. 012

VIA FAX



**Aon Natural Resources**
1330 Post Oak Boulevard, Suite 900
Houston, Texas 77056
Telephone: (832) 476-6000; Telefax: (832) 476-6582

REPORT OF LOSS ON:    Excess P & I                              DATE:   April 18, 2003

To:   **COMPANY**                              **POLICY NO.**         **INTEREST**
      The Steamship Mutual
      Underwriting Association (Bermuda) Ltd.    ARS-3176              100.0%
      c/o JLT Risk Solutions Limited
      Attn: Terry Cornick

Please accept notice of the following casualty which may result in a claim for:   Damage to Property

Name of the Assured:   Horizon Offshore, Inc. and Horizon Offshore Contractors, et al.

Policy Inception:  02/20/02    Date of Casualty:  2/27/03         Policy Expiration:  5/1/03

Insured Vessel:   GULF HORIZON                   Limit of Liability $    Per Rules

Excess of: $   1,000,000    Deductible: $   50,000    AAD: $   16,000,000    Stop Loss: $   N/A

Place where casualty occurred:    Long Island Sound, NY

Nature of Casualty:    Whilst performing pipelaying operations (pipe burial) the insured vessel's anchor cable parted and allegedly

 damaged a sub-sea power cable owned by the New York Power Authority.


Estimated amount of entire loss    $   1,000,000                  Excess  $   1,000,000

 Assured have    Instructed    Lyons, Skoufalos, Proios & Flood, LLP to represent their interests.


Remarks:   Our email message of 16 April 2003 refers.

Claim #:   03-M5058-X                  Producer:   BJ          Claims Made:   No

Client's Claim #:

                                                by:    James J. Montano

If you have any instructions to give, please advise us promptly.

          PLEASE ACKNOWLEDGE RECEIPT BY SIGNING AND RETURNING A COPY OF THIS NOTICE

Signature:

Claim Number:


X:\BUSINESS UNITS\ANR\Claims\Claims Shared\Horizon\Loss Notices\Amended 03-M5058-X.doc-]
The information contained in this fax is confidential and/or privileged. This fax is intended to be received initially by only the individual named above. If the reader of this transmittal page is not the
intended recipient or a representative of the intended recipient, you are hereby notified that any review, dissemination copying of this fax or the information contained hereto is prohibited. If you have
received this fax in error, please immediately notify the sender by telephone and return this fax to the sender at the address above.

VIA FAX



**Aon Natural Resources**
1330 Post Oak Boulevard, Suite 900
Houston, Texas 77056
Telephone: (832) 476-6000; Telefax: (832) 476-6582

**REPORT OF LOSS ON:** Excess Liabilities    **DATE:** May 21, 2003

To:    **COMPANY**    **POLICY NO.**    **INTEREST**
American Home Assurance Company    ARS-3177    100.0%
via American International Marine Agency
Attn: Jack Molkentin

Please accept notice of the following casualty which may result in a claim for:    Damage to Property

Name of the Assured:    Horizon Offshore, Inc. and Horizon Offshore Contractors, et al.

Policy Inception:    02/20/02    Date of Casualty:    2/27/03    Policy Expiration:    5/1/03

Insured Vessel:    GULF HORIZON    Limit of Liability $    10,000,000

Excess of: $    1,000,000    Deductible: $    N/A    AAD: $    N/A    Stop Loss: $    N/A

Place where casualty occurred:    Long Island Sound, NY

Nature of Casualty:    Whilst performing pipelaying operations (pipe burial) the insured vessel's anchor cable parted and allegedly

damaged a sub-sea power cable owned by the New York Power Authority.

Estimated amount of entire loss $    (unknown)

Assured have    Instructed    Lyons, Skoufalos, Proios & Flood, LLP to represent their interests.

Remarks:    Primary carrier AEGIS have posted policy limit reserve. Additional information to follow.

Claim #:    03-M5058-X    Producer:    BJ    Claims Made:    No

Client's Claim #:    by:    James I. Montano

*If you have any instructions to give, please advise us promptly.*

**PLEASE ACKNOWLEDGE RECEIPT BY SIGNING AND RETURNING A COPY OF THIS NOTICE**

Signature:

Claim Number:

\\gatdm2kt\shared\BUSINESS UNITS\MARINE\claims Shared\Horizon\Loss Notices\03-M5058-X.doc-1
The information contained in this fax is confidential and/or privileged. This fax is intended to be reviewed initially by only the individual named above. If the reader of this transmittal page is not the intended recipient or a representative of the intended recipient, you are hereby notified that any review, dissemination copying of this fax or the information contained herein is prohibited. If you have received this fax in error, please immediately notify the sender by telephone and return this fax to the sender at the address above.

07/17/2003 16:12 FAX 203 926 88°`    IROQUOIS LEGAL FAX    → ℲEALY SINGLETON    ☒015
JUL -17°03(THU) 13:43    P. 014



**Aon Natural Resources**
1330 Post Oak Boulevard, Suite 900
Houston, Texas 77055
Telephone: (832) 476-6000; Telefax: (832) 476-6582

REPORT OF LOSS ON:    Excess Liabilities    DATE:    July 16, 2003

To:    **COMPANY**    **POLICY NO.**    **INTEREST**
XL Specialty Insurance Company (PMEX857027)    ARS-3215    20.00%
   via Brockbank Insurance Services, Inc.    25.00%
Liberty Insurance Underwriters (NY039204002)    26.43%
American Home Assurance Company (C1769)
   via American International Marine Agency, Inc.
Navigators Insurance Company (02L1799-01)    26.57%
   via Navigators Insurance Services of Texas, Inc.    100.00%

Please accept notice of the following casualty which may result in a claim for:    Property Damage

Name of the Assured:   Horizon Offshore, Inc. and Horizon Offshore Contractors, et al.

Policy Inception:  04/09/02    Date of Casualty:  2/27/03    Policy Expiration:  5/1/03

Insured Vessel:   GULF HORIZON    Limit of Liability $   140,000,000

Excess of: $   10,000,000    Deductible: $   N/A    AAD: $   N/A    Stop Loss: $   N/A

Place where casualty occurred:   Long Island Sound, NY

Nature of Casualty:   Whilst performing pipelaying operations (pipe burial) the insured vessel's anchor cable parted and allegedly

damaged a sub-sea power cable owned by the New York Power Authority.


Estimated amount of entire loss    $  (Unknown)    Excess  $

The Assured    Instructed    attorneys Lyons, Skoufalos, Proios & Flood, to investigate.  Additional information to follow.


Remarks:

Claim #:   03-MS058-XA    Producer:   BJ    Claims Made:   No

Client's Claim #:

                               by:
                                   James I. Montano

*If you have any instructions to give, please advise us promptly.*

PLEASE ACKNOWLEDGE RECEIPT BY SIGNING AND RETURNING A COPY OF THIS NOTICE

Signature:

Claim Number:


\\uckzhou2k1\ahara\BUSINESS UNITS\ANR\Claims\Claims Shared\Horizon\Loss Notices\Amended 03-MS058-XA.doc-1
*The information contained in this fax is confidential and/or privileged. This fax is intended to be reviewed only by the individual named above. If the reader of this transmittal page is not the intended recipient or a representative of the intended recipient, you are hereby notified that any review, dissemination copying of this fax or the information contained herein is prohibited. If you have received this fax in error, please immediately notify the sender by telephone and return this fax to the sender at the address above.*

**IRO/AE 00368**

ARS-3175

*Aon Risk Services*

*Natural Resources
Group*

### CONDITIONS:

The "Class 1 Rules - Protection and Indemnity" of the Steamship Mutual Underwriting Association (Bermuda) Limited (the "Rules") in effect at the attachment date are hereby incorporated into this certificate, insofar as they may be applicable, subject to the following amendments and exceptions. All references in the Rules to "the Club" shall be read as references to "AEGIS" and/or where the context permits, its agent; all references to "the Directors" shall be read as references to AEGIS; all references to "the Member" shall be read as references to the "Assured" or "Insured"; all references to "the Managers" shall be read as references to "ORIGIN"; and references to "entry" and "entered" shall be read as references to "insurance" and "Assured"; and the Rules shall be deemed amended accordingly.

The following Rules are hereby excluded from this Certificate: Rule numbers: 1, 3 to 9, 11 to 13, 15(ii), 16(iii) to (iv); 33, 34 and 36(ii). Any written notice of termination of cover shall only be effective no less than 15 days from receipt by the Assured. Further amendments or exclusions to the Rules are as specified below.

### INSURED:

As declared.

### LIMIT OF LIABILITY:

As declared.

### DEDUCTIBLE:

As declared.

### RISKS COVERED:

1)    Risks covered under "Class 1 Rules - Protection and Indemnity" of the Steamship Mutual Underwriting Association (Bermuda) Limited.

2)    Including risks otherwise excluded under Rule 17b (Specialist Operations), Rule 17c (Drilling Operations), Rule 17d (Diving Operations) and Rule 17e (Salvage Operations).

3)    Notwithstanding the inclusion of risks otherwise excluded by Rule 17d (Diving Operations), the cover afforded hereunder is limited to liabilities, costs and expenses incurred by the Insured arising out of diving operations performed by third party contractors; warranted the Insured shall obtain indemnity and defense indemnities from diving contractors for personal injuries to the diving contractor personnel.

**IRO/AE 00369**

\\HSTNWF61\SYS\CLIENTS\AON\Horizon Offshore\Policies\ARS-3175 P&I - AEGIS\Cover Note.doc - 7

ARS-3175

*Aon Risk Services*

*Natural Resources*
*Group*

4)    Notwithstanding the inclusion of risks otherwise excluded by Rule 17e (Salvage Operations), the cover afforded hereunder shall be limited to liabilities, costs and expenses associated with salvage operations incidental to activities associated with risks described under Rule 17b (Specialist Operations), Rule 17c (Drilling Operations) and Rule 17d (Diving Operations), and this insurance shall not cover liabilities, costs and expenses arising out of salvage operations as a professional salvor.

5)    Including coverage for Contractual Liabilities in respect of seamen for death, injury or illness and it is agreed to waive the requirement for approval of any crew agreements and other contracts of service or employment and contracts for services.

6)    Including coverage for liabilities assumed by the Insured not otherwise provided under Rule 25 xix (Towage) and its subparagraphs and it is agreed to waive the requirement for approval of the terms of any such contracts, but excluding amounts recoverable under Hull Risks insurance effected by the Insured.

7)    Including coverage for liabilities as provided under Rule 25 xx (Contract and Indemnities) and its subparagraphs and it is agreed to waive the requirement for approval of the terms of any such contracts.

8)    Including liabilities, costs and expenses in respect of wreck and debris removal whether liability be compulsory under law or assumed under contract, or whether voluntarily assumed where it is determined that the wreck or debris interferes with the operation of the Insured, but excluding amounts recoverable under Hull Risks insurance effected by the Insured.

9)    Including 4/4ths Collision Liability and damage to Fixed and Floating Objects, but excluding amounts recoverable under Hull Risks insurance effected by the Insured.

10)    Subject otherwise to the terms, conditions and risks covered, including liabilities, costs and expenses for death, injury or illness in respect of any person performing work in connection with any offshore or maritime operation of the Insured, whether such person is an employee of the Insured or is engaged by the Insured under contract of services or for services, whether or not such operations are performed from a entered ship.

11)    Subject otherwise to the terms, conditions and risks covered, including liabilities, costs and expenses incurred by the Insured in respect of the short term charter or hire of miscellaneous barges and tugs used in support of the operations of the entered Vessels/Units; including liabilities, costs and expenses for risks otherwise excluded by Rule 17(a) Hull Risks, subject such support craft are not bareboat chartered by the Insured and excepting craft rented or hired where the Insured has assumed a "first party" risk or the obligation to provide Hull Risks insurance.

**IRO/AE 00370**

ARS-3175

*Aon Risk Services*

*Natural Resources*
*Group*

## OTHER TERMS, CLAUSES AND CONDITIONS:

1.   NON GUARANTEE CLAUSE

   a)   This insurance is evidence only of a contract of Indemnity insurance between the above named Insured and AEGIS and shall not be construed as evidence of any undertaking, financial or otherwise, on the part of AEGIS to any other party.

   b)   In the event that an Insured tenders this insurance as evidence of insurance under any applicable law relating to financial responsibility, or otherwise shows or offers it to any other party as evidence of insurance, such use of this insurance by the Insured is not to be taken as any indication that AEGIS thereby consents to act as guarantor or to be sued directly in any jurisdiction whatsoever. AEGIS does not so consent.

2.   ADDITIONAL INSURED CLAUSE AND OTHER PROVISIONS

   i.)   The Insured has privilege to name others as an additional insured for their respective rights and interests and/or waive any rights of recovery, but only to the extent as may be required under contract or agreement.

   ii.)   In connection with any person, firm or corporation included as an additional insured, the provisions of Rule 14ii and any other reference within the Rules purporting to limit coverage to any "Co-Insured" to that of the "Member" is deleted. It is further noted and agreed any person, firm, or corporation included as an additional insured has no obligation for payment of premium hereunder.

   iii.)   It is agreed that in respect of additional insured(s), the coverage provided hereunder shall be primary in respect of any coverage carried by said additional insured(s) but only to the extent as may be required by contract or agreement.

   iv.)   In the event of an Insured incurring liability to any other Insured, this insurance shall cover the Insured against whom claim is or may be made in the same manner as if separate policies had been issued to each Insured. Nothing contained herein shall operate to increase the limit of liability as set forth in this insurance.

   v.)   Such coverage as is afforded by this insurance shall not be denied solely on the basis that the claim or suit against the Insured is based upon an "in Rem" proceeding.

   vi.)   It is agreed that a claim against any person, firm or organization by an employee of the Insured on the "Borrowed Servant Doctrine" will, for the purpose of this insurance, be treated as a claim arising under this insurance, against the Insured

**IRO/AE 00371**

*Aon Risk Services*

**Amendatory Endorsement To Form CG 00 01 10 93**
**Marine Liability Insurance, Etc.**  *Natural Resources*
*Group*

The following amendments to form CG 00 01 10 93 shall apply:

SECTION I COVERAGE A 2. Exclusions are amended as follows:

Exclusion g. is deleted and replaced with the following:

> g. *"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any "aircraft" or "auto" owned or operated by or rented or loaned to any insured. Use includes operation and "loading" and "unloading".*
>
> *This exclusion does not apply to:*
> i. *Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured.*
>
> ii. *Liability assumed under "insured contract" for the ownership, maintenance or use of aircraft.*

It is a condition of this insurance that the Named Insured shall maintain Protection and Indemnity Insurance on watercraft in excess of 25' that the Named Insured operates or owns.

Exclusion j. Item (4) is deleted. Furthermore, exclusions k., l., and m. shall not apply to "property damage" which arises in connection with operations, activities or the business of the Insured in their capacity as an energy or marine construction or service contractor. However, this insurance shall not apply to liability for "property damage" arising out of the failure of "your work" or "your product" to meet any warranty or representation by any Insured as to the level of performance, quality, fitness or durability or to perform their function or serve their purpose, to the extent that such liability is for the diminished value or utility of "your work" or "your product".

SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS is amended as follows:

4. Other Insurance – the following Condition is added:

> f. *Notwithstanding a. and b. above, if the loss arises out of the ownership, maintenance, use or entrustment to others of any watercraft owned or operated by or rented or loaned or chartered by or to the Named Insured, this insurance shall only respond on the basis of difference in conditions with, and not excess of, any other insurance available to the Insured.*

The following Condition is added:

> 11. *In Rem*
>
> *Such coverage as is afforded by this insurance shall not be denied solely on the basis that the claim or suit against the Insured is based upon an "in Rem" proceeding.*

**IRO/AE 00372**

# Horizon Offshore Contractors, Inc.

Current Insurance Program Limits Graphic at December 5, 2002
(Not to Scale)



Legend:
- ☐ Zurich American Insurance Company
- ☐ AEGIS / ORIGIN
- ☐ XL Specialty Insurance Company
- ☐ XL Specialty, Liberty, American Home & Navigators
- ■ XL Specialty, Liberty, Continental & NY Marine & General
- ■ American Home
- ☐ Steamship Mutual

Workers' Comp — Statutory
Employer's Liability — $1M
Auto Liability — $1M
General Liability (and as modified)* — 
P&I (and as modified) — $900MK
Non-Owned Aircraft Liability — $15M
Second Layer Excess $140M
Excess Protection & Indemnity as per Rules of Steamship Mutual

* Including MEL/Charterer's Liability and excess of amounts afforded under Marine Package to War P&I, Collision and ROW Liabilities
** EXCEDIL with P&I

x:\clients\PNR\Horizon Offshore\Program for Iroquois at 12-5-02.ppt

**IRO/AE 00373**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF HORIZON | § | |
| VESSELS, INC., AS OWNER and | § | |
| HORIZON OFFSHORE | § | |
| CONTRACTORS, INC., HORIZON | § | |
| OFFSHORE, INC., AND TEXAS | § | C. A. NO. H-03-3280 |
| OFFSHORE CONTRACTORS CORP., | § | ADMIRALTY |
| AS OWNERS, OPERATORS, OWNERS | § | |
| PRO HAC VICE, OF THE L/B GULF | § | |
| HORIZON, PRAYING FOR | § | |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |
| REGARDING THE INCIDENT OF | § | |
| FEBRUARY 27, 2003 | § | |

## CROSS-CLAIMS OF LIMITATION DEFENDANTS/CROSS-CLAIMANTS, THE POWER AUTHORITY OF THE STATE OF NEW YORK, THE LONG ISLAND LIGHTING COMPANY D/B/A LIPA, AND FACTORY MUTUAL INSURANCE COMPANY

Limitation Defendants/Cross-Claimants, the Power Authority of the State of New York (hereinafter referred to as "NYPA"), the Long Island Lighting Company d/b/a/ LIPA, a wholly-owned subsidiary of the Long Island Power Authority (hereinafter referred to as "LIPA"), and Factory Mutual Insurance Company (FM Global) (hereinafter referred to as "FMIC") (hereinafter collectively referred to as "Utility Claimants"), by and through undersigned counsel, allege cross-claims against: Iroquois Gas Transmission System, L.P. (hereinafter referred to as "Iroquois") and Thales GeoSolutions, Inc., (hereinafter referred to as "Thales"), upon information and belief as follows:

### JURISDICTION

1.      This Court has jurisdiction of the subject matter of the within action under 28 U.S.C. §§ 1332, 1333, 1367; and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims, and the claims herein exceed $75,000.

**IRO/AE 00374**

2.    Horizon Vessels, Inc., as owner, and Horizon Offshore Contractors, Inc., Horizon Offshore, Inc. and Texas Offshore Contractors Corp., as owners, operators, owners *pro hac vice*, of the L/B GULF HORIZON (collectively "Horizon") have filed a Limitation Complaint in this Court, Civ. Action No. H-03-3280 02/6397 (SL)(NKJ). A copy of the Limitation Complaint and Amended Complaint are attached as Exhibit A.

3.    Utility Claimants cross-claims come within the admiralty and maritime jurisdiction of the federal court, as hereinafter more fully appears and are admiralty and maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

4.    The cross-claims are permitted by Federal Rule of Civil Procedure 13(g), as the claims against Iroquois and Thales arise from the same transaction and/or occurrence which constitute the subject matter of Horizon's limitation proceeding.

## THE PARTIES

5.    NYPA is a corporate municipal instrumentality of the State of New York created by the Legislature of the State by Chapter 772 of the laws of 1931, as amended, Public Authorities Law § 1002. NYPA is a body corporate and politic and a political subdivision of the State of New York, exercising essential governmental and public powers. NYPA's principal office is in Albany, New York.

6.    LIPA is a business corporation organized under the laws of the State of New York, and is a wholly-owned subsidiary of the Long Island Power Authority (hereinafter referred to as the "Authority"). The Authority is a corporate municipal instrumentality of the State of New York which is a body corporate and politic and a political subdivision of the State of New York, exercising essential governmental and public powers. The Authority was created by the Laws of 1986, Chapter

-2-

IRO/AE 00375

517, §1, Public Authorities Law § 1020-c. The Authority's executive offices are located in Uniondale, New York.

7.   FMIC is a corporation duly organized and existing under and by virtue of the laws of the State of Rhode Island, with a principal place of business in Johnston, Rhode Island. At all times relevant to this action, FMIC was the first party physical damage insurer of the Y-49 Cable System, described below.

8.   Iroquois, upon information and belief, was and is a limited partnership formed under the laws of the State of Delaware having a principal place of business in Connecticut.

9.   Thales, upon information and belief, was and is a corporation organized and existing under the laws of the State of Delaware having a principal place of business at Houston, Texas.

## FACTUAL ALLEGATIONS

10.   On or about February 27, 2003, NYPA was the owner of four parallel, self-contained, fluid filled, 345,000 volt cables (Cables Nos. 1- 4) buried beneath Long Island Sound (hereinafter referred to as the "Y-49 Cable System").

11.   The Self-Contained Fluid Filled ("SCFF") portion of the Y-49 Cable System runs from a transition station in the City of New Rochelle, Westchester County, New York to a transition station in the Town of North Hempstead, Nassau County, New York. On or about February 27, 2003, the Y-49 Cable System was in active use and operation.

12.   On or about February 27, 2003, the Y-49 Cable System was operated and managed by LIPA, acting in conjunction with its subcontractor, KeySpan Electric Services, LLC ("KeySpan"), a company located in Hicksville, New York.   LIPA is the primary or dedicated user of the Y-49 Cable System's electrical transmission capacity.

-3-

IRO/AE 00376

13. The Y-49 Cable System was prominently marked on all relevant navigation charts and its location was well known to all mariners or other users of the Long Island Sound.

14. On or about February 27, 2003, Iroquois was engaged in the construction of a 33 mile extension to the interstate natural gas pipeline extending from the United States-Canadian border to Eastchester, New York, sometimes referred to as the Eastchester Expansion Project (hereinafter "Iroquois Pipeline Project"). The Iroquois Pipeline Project, in large part, was to be buried in the Long Island Sound.

15. Iroquois contracted with Horizon as its principal or general contractor on the Iroquois Pipeline Project.

16. Iroquois and/or Horizon contracted with various subcontractors, including Thales, to perform pipeline construction, surveying and other marine related services on the Iroquois Pipeline Project.

17. As the Iroquois Pipeline Project, by its design and planned route, was to cross over the buried Y-49 Cable System, Iroquois and NYPA reached a contractual understanding of their respective rights and duties with respect to the natural gas pipeline crossing over the Y-49 Cable System (the contract hereinafter is referred to as the "Crossing Agreement"). As part of the obligations of the Crossing Agreement, prior to any construction of the Iroquois Pipeline Project, NYPA provided "as built" information to Iroquois which depicted the locations of the SCFF portions of the Y-49 Cable System. In the Crossing Agreement, Iroquois and NYPA recognized that the electrical capacity of the Y-49 Cable System is primarily dedicated to LIPA.

18. The Crossing Agreement necessarily and explicitly recognized that Iroquois and its contractors and subcontractors were required to do their work in a manner so as not to harm or damage the Y-49 Cable System.

-4-

**IRO/AE 00377**

19.    The Crossing Agreement also explicitly contained indemnification provisions whereby Iroquois agreed to wholly and fully indemnify and hold harmless NYPA against any costs and expenses resulting from damage to the Y-49 Cable.

20.    On or about February 27, 2003, as part of the Iroquois Pipeline Project, Horizon was operating the LB GULF HORIZON with one or more of its anchors deployed in the immediate vicinity of the Y-49 Cable System. At the time, Iroquois's contractor Horizon was or should have been aware of the location and existence of the Y-49 Cable System.

21.    Horizon and the L/B GULF HORIZON were working as described above pursuant to instructions from Iroquois and/or information or navigational guidance from Thales. At the time, Iroquois and Thales were aware or should have been aware of the existence and location of the Y-49 Cable System.

22.    On February 27, 2003, at about 21:41 hours, the feeder for the Y-49 Cable System tripped offline. Immediate indications were that Cable No. 4 of the Y-49 Cable System had experienced a phase to ground fault. Given Iroquois' activity in the area, NYPA surmised this situation was a result of physical impact on Cable No. 4 as subsequent investigation established.

23.    Informed of the impact damage to Cable No. 4, NYPA, pursuant to the terms of the Crossing Agreement, instructed Iroquois to stop all work aboard the L/B GULF HORIZON, and to stop work on the Iroquois Pipeline.

24.    The Federal Energy Regulatory Commission and United States Coast Guard were notified promptly. Emergency response personnel were summoned to investigate. It soon was discovered that an anchor deployed by the LB GULF HORIZON had dragged against and/or across Cable No. 4 of the Y-49 Cable. This contact caused severe damage, including a cable rupture, and required NYPA to remove the entire Y-49 Cable System from service.

IRO/AE 00378

25.    Pursuant to agreements between NYPA and LIPA, NYPA promptly requested LIPA to implement its emergency response plan, whereby maintenance subcontractor KeySpan would monitor, supervise and effect temporary repairs to Cable No. 4 of the Y-49 Cable System. Further investigation revealed that the bottom of the sound had been disturbed where the LB GULF HORIZON's anchor CP1 dragged against and/or across Cable No. 4.

26.    Pirelli Construction Services, Inc. (hereinafter referred to as "Pirelli") the original designer and manufacturer of the Y-49 Cable System, was awarded an emergency contract to recover and cap the damaged Cable No. 4 at the impact point, near the north shore of Long Island Sound. This work and further testing and inspection having been accomplished, the three remaining undamaged cables of the Y-49 Cable System were returned to service on March 8, 2003.

27.    During the following months, with due notice to Iroquois, Thales and Horizon, NYPA prepared a Request for Proposal(s) to distribute to pre-qualified marine and cable contractors. This process resulted in award of a permanent repair contract to Pirelli. Permanent repair of Cable No. 4 of the Y-49 Cable System was effected in August and September of 2003.

28.    As a result of the negligent, grossly negligent, reckless, careless, willful and wanton actions and/or omissions of Iroquois, in conjunction with Horizon and Thales, in the manner, method, navigation and operation of the LB GULF HORIZON, and of its masters, officers, and crews, and their servants, agents, employees, contractors and consultants, and the unseaworthiness of said vessel, the Cable No. 4 of the Y-49 Cable System was severely damaged and/or destroyed.

29.    Cable No. 4 of the Y-49 Cable System did not in any way obstruct or interfere with navigation, and was lawfully placed and existing in accordance with and pursuant to the terms of permits issued for that purpose by the appropriate authorities.

-6-

IRO/AE 00379

30.    Up until the aforesaid cable severance on or about February 27, 2003, the Y-49 Cable System had been in active use and operation by NYPA and LIPA providing a conduit for electrical transmission between the electrical systems in Westchester and Nassau Counties, New York.

31.    The conduct of Iroquois, Horizon, and Thales in causing the rupture and destruction of Cable No. 4 of the Y-49 Cable System resulted in, *inter alia*, a loss of service to the Y-49 Cable System and the disruption and degradation of reliability to NYPA's and LIPA's electrical operating systems.

32.    At all times relevant to this matter, FMIC provided first-party physical damage insurance to NYPA for the Y-49 Cable System subject to the terms, conditions, exclusions and limitations of Policy No. LB664.

33.    Pursuant to the terms of Policy No. LB457, FMIC has paid NYPA $10,000,000 to indemnify NYPA in part for the cost of repairing damage to the Y-49 Cable System caused by the acts or omissions of Iroquois, Horizon and/or Thales.

34.    By virtue of its payment to NYPA under the terms of Policy No. LB664, FMIC is legally and equitably subrogated to the extent of its payment to the rights, claims, and causes of action that NYPA has, whether in contract, tort or otherwise, against third parties for damage to the Y-49 Cable System including rights, claims or causes of action against Iroquois, Horizon and/or Thales.

## AS AND FOR FIRST COUNT
## (INDEMNIFICATION AGAINST IROQUOIS)

35.    Utility Claimants repeat, reallege, and incorporate by reference the allegations of Paragraphs 1-34 as if fully set forth herein.

IRO/AE 00380

36.    Article III (D) of the Crossing Agreement entered into between NYPA and Iroquois provides:

> D. Iroquois Gas shall defend, indemnify and hold harmless the Grantee [NYPA] from and against any and all costs and expenses incurred as a result of damage to the Y-49 Cable arising out of or connected with the negligence, acts, omissions or willful misconduct of Iroquois Gas, its contractors, subcontractors, agents and employees in connection with the Work.

37.    Article III (G) of the Crossing Agreement provides:

> In the event that the Y-49 Cable is damaged or rendered inoperable, during the Work, and such damage or inoperability arises out of the negligence, acts, omissions or willful misconduct of Iroquois Gas, its contractors, subcontractors, agents or employees: (i) Iroquois Gas shall pay all costs and expenses to repair and restore the Y-49 Cable to the operational status as existed before the damage or rendering of inoperability; and (ii) the Grantee shall make arrangements for and provide, at Iroquois Gas' sole cost and expense, equivalent replacement electrical capacity during the period the Y-49 Cable is inoperable....

38.    The damage that occurred to the Y-49 Cable System on or about February 27, 2004, including the rupturing and complete destruction of a segment of Cable No. 4, arose out of or was connected with the negligence, acts, omissions, or willful misconduct of Iroquois, its contractors, subcontractors, agents, or employees in connection with the Iroquois Pipeline Project.

39.    Under the terms of the Crossing Agreement, Iroquois is liable to and bound to indemnify NYPA, FMIC, as NYPA's subrogee, and LIPA, as an intended third-party beneficiary of the Crossing Agreement, in whole for any and all damages, costs and expenses as a result of the ruptured Y-49 Cable.

40.    NYPA, FMIC and LIPA have already incurred substantial losses, costs and expenses for which Iroquois has refused to indemnify them, in breach of the Crossing Agreement, despite due demand.

IRO/AE 00381

41.    More specifically, NYPA, FMIC and LIPA have incurred substantial costs and expenses to investigate the damages to the Y-49 Cable System, to secure the damaged Y-49 Cable System, and to restore the related electrical operating systems including, *inter alia*, hiring outside contractors (including attorneys and other experts and consultants), conducting diving inspections, expenses for emergency response measures, engineering work, and the supervision and planning for the temporary and permanent repairs to Cable No. 4 of the Y-49 Cable System, resulting in damages, costs and expenses, which, so nearly as can be estimated at this time, are in excess of $18,000,000.

## AS AND FOR SECOND COUNT
## (NEGLIGENCE AGAINST IROQUOIS)

42.    Utility Claimants repeat, reallege, and incorporate by reference the allegations of Paragraphs 1-41 as if fully set forth herein.

43.    Iroquois owed a duty to Utility Claimants to perform its construction activities with reasonable care and diligence and also to oversee its contractors to ensure they acted in a prudent manner.

44.    Iroquois knew or should have known based on the service in which the LB GULF HORIZON was involved that special supervision and care was necessary to ensure all actions were undertaken in a safe, coordinated, and prudent manner.

45.    Iroquois breached its duty by failing to exercise reasonable care, *inter alia*, in monitoring, supervising and conducting the operations of the LB GULF HORIZON in a safe manner.

46.    Iroquois breached its duty by failing to exercise reasonable care, *inter alia*, in monitoring and supervising the work of its contractors and sub-contractors.

47.    Iroquois's breach of its duties of reasonable care were the proximate cause of the damages and harm suffered by Utility Claimants.

-9-

IRO/AE 00382

48.    By virtue of the above, Iroquois violated the General Maritime Law of the United States and other applicable laws.  Said violations were a direct and proximate cause of the damages suffered by Utility Claimants.

49.    As a result of the foregoing, Utility Claimants incurred substantial costs and expenses to investigate the damages to the Y-49 Cable System, to secure the damaged Y-49 Cable System, and to restore the related electrical operating systems including, *inter alia*, hiring outside contractors, conducting diving inspections, expenses for emergency response measures, engineering work, and the supervision and planning for the temporary and permanent repairs to Cable No. 4 of the Y-49 Cable System. In summary, Utility Claimants have suffered property damage to the Y-49 Cable System, repair costs and other expenditures all caused by Iroquois's negligence, lack of due care, and reckless and grossly negligent conduct resulting in damages which, so nearly as can be estimated at this time, are in excess of $18,000,000.

50.    LIPA required the use and service of the Y-49 Cable System in order to meet certain New York Independent System Operator ("NYISO") requirements. As a result of Iroquois's negligence, lack of due care, and reckless and grossly negligent conduct, LIPA has suffered congestion and rent shortfalls and related damages, during the period the Y-49 Cable System was out of service and/or inoperable. Such damages currently are estimated in excess of $445,000.

## AS AND FOR THIRD COUNT
### (NEGLIGENCE AGAINST THALES)

51.    Utility Claimants repeat, reallege, and incorporate by reference the allegations of Paragraphs 1-50 as if fully set forth herein.

IRO/AE 00383

52.    Thales owed a duty to Utility Claimants to perform its surveying work with reasonable care and diligence so as to avoid any harm to underwater objects, like the Y-49 Cable System, which Thales failed to do.

53.    Thales knew or should have known based on the layout of the Long Island Sound that the LB GULF HORIZON was near underwater objects, like the Y-49 Cable System, and that the vessel and its anchor should carefully steer clear of said object while performing its pipe-laying duties.

54.    Thales breached its duty of reasonable care owed to Utility Claimants by allowing Iroquois and/or Horizon to perform their duties in a negligent manner.

55.    Thales' breach of its duties of reasonable care were the proximate cause of the damages and harm suffered by Utility Claimants.

56.    By virtue of the above, Thales violated the common law, General Maritime and Admiralty laws of the United States and other applicable laws. Said violations were a direct and proximate cause of the damages suffered by Utility Claimants.

57.    As a result of the foregoing, Utility Claimants incurred substantial costs and expenses to investigate the damages to the Y-49 Cable System, to secure the damaged Y-49 Cable System, and to restore the related electrical operating systems including, *inter alia*, hiring outside contractors, conducting diving inspections, expenses for emergency response measures, engineering work, and the supervision and planning for the temporary and permanent repairs to Cable No. 4 of the Y-49 Cable System. In summary, Utility Claimants have suffered property damage to the Y-49 Cable System, repair costs and other expenditures all caused by Thales' negligence, lack of due care, and reckless and grossly negligent conduct resulting in damages which, so nearly as can be estimated at this time, are in excess of $18,000,000.

-11-

IRO/AE 00384

58.    LIPA required the use and service of the Y-49 Cable System in order to meet certain

NYISO requirements. As a result of Thales' negligence, lack of due care, and reckless and grossly

negligent conduct, LIPA has suffered congestion and rent shortfalls and related damages, during the

period the Y-49 Cable System was out of service and/or inoperable. Such damages currently are

estimated in excess of $445,000.

**WHEREFORE**, Utility Claimants demand judgment as follows:

1.    As to the First Count: that judgment be entered against Iroquois for Utility Claimants'

damages, costs and expenses (including attorneys' fees and disbursements) as may be finally

determined by this Court together with interest and (legal) costs;

2.    As to the Second Count:  that judgment be entered against Iroquois for Utility

Claimants' damages as may be finally determined by this Court together with interest and costs;

3.    As to the Third Count: that judgment be entered against Thales for Utility Claimants'

damages as may be finally determined by this Court together with interest and costs; and,

4.    That the Court grant such other and further relief as may be just and proper in the

circumstances.

Respectfully submitted,

By: _____
        Mark Cohen
        State Bar No. 04508395
        Federal Bar No. 2807
        Richard L. Gorman
        State Bar No. 00784155
        Federal I.D. No. 15685
        1010 Lamar Street, Suite 1000
        Houston, Texas 77002-6314
        Telephone: (713) 224-0628
        Facsimile: (713) 224-7487

-12-

**IRO/AE 00385**

Attorneys-in-Charge for
Limitation Defendants/Cross-Claimants,
The Power Authority of the State of New York,
the Long Island Lighting Company d/b/a
LIPA, and Factory Mutual Insurance
Company (FM Global)

James H. Hohenstein
Vincent Foley
Holland & Knight LLP
195 Broadway
New York, New York 10007
·Telephone: (212) 513-3200
Telefax: (212) 385-9010

- and -

Robert F. Cossolini
Robert B. Meola
Budd Larner
150 John F. Kennedy Parkway, 3rd Floor
Short Hills, NJ 07078
Telephone: (973) 315-4415
Telefax: (973) 379-7734

OF COUNSEL:

-13-

**IRO/AE 00386**



**Jim Montano**
11/10/2004 10:10 AM

To: "Molkentin, John" <John.Molkentin@AIG.com>,
Liz.monroe@xlinsurance.com, "Mike Ticheli"
<PTICHELI@navg.com>, Anthony.Schiavone@libertyiu.com,
Mike_Roberts@JLTGROUP.com, "Williams, Colin"
<colin.williams@simsl.com>, Ron White <rwhite@wmbpc.com>,
"Gina Hartdegen" <ghartdegen@g-c-m.com>,
Brenda.Bowman@CNA.com, Paul_Bennett@JLTGROUP.COM

cc:
Subject: Horizon Offshore Contractors/GULF HORIZON/Alleged damage to
NYPA Power Cables/27 Feb 03/

Attachment below is a letter from attorneys Healy & Baillie who represent Iroquois Gas Transmissions System with regard to the captioned matter. We believe most, if not all, of you have received direct notice of claim from Iroquois as additional assureds under all of Horizon's insurance policies. Pls advise if you have a response to the attached letter.

For your information, we have suggested to the Assured that a meeting with you and handling attorneys be convened to discuss the many aspects and issues which this matter presents. We are awaiting the Assured's response and will advise of suggested dates. We have also requested a report on the status of the litigation from handling attorneys and will forward to you as soon as received.
Regards,
Jim Montano
—— Forwarded by Jim Montano/TX/ARS/US/AON on 11/10/2004 09:54 AM ——



**Jamie Burnett**
11/10/2004 09:53 AM

To: Jim Montano/TX/ARS/US/AON@AONNA
cc:
Subject: Message received from 2124250359 on 10/25/2004 at 2:57:34 PM.
[Virus Checked]

—— Forwarded by Mack Mitchell/TX/ARS/US/AON on 10/25/2004 02:57 PM ——



**2124250359**
10/25/2004 02:57 PM

To: hou_ars@ars.aon.com
cc:
Subject: Message received from 2124250359 on 10/25/2004 at 2:57:34 PM.
[Virus Checked]

The attached fax was received from 2124250359 on
10/25/2004 at 2:57:34 PM

JobID: 1392502

ARS-TX 0054

# HEALY & BAILLIE, LLP
## 61 BROADWAY
## NEW YORK, NY 10006-2834
Telephone (212) 943-3980
Fax (212) 425-0131
www.healy.com

Richard V. Singleton II
rsingleton@healy.com

Direct Dial (212) 709-9264
Direct Fax (212) 487-0364

PLEASE NOTE:  The information contained in this facsimile message may be privileged and confidential and is intended only for the use of the individual named below and others who have been specifically authorized to receive it. Additionally, if you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you received this communication in error, or if any problems occur with this transmission, please notify us immediately by telephone: (212) 943-3980.

October 25, 2004

|  |  | Fax#/City/State/Country |
|---|---|---|
| To: | Company/Name<br>Aon Risk Services<br>Attn: James Montano/Karen Cooper | (832) 476-6590<br>Houston, Texas |
| cc: | Adams and Reese LLP<br>Daryl G. Dursum | 713-652-5152<br>Houston, Texas |
|  | Adams and Reese LLP<br>Charles A. Cerise, Jr./Edwin C. Lazier | 504-566-0210α<br>New Orleans, Louisiana |
| From: | Richard V. Singleton II<br>Page 1 of 33 pages |  |
| Re: | C.A. No. H-03-3280<br>In the Matter of Horizon Vessels, Inc., etc. et al.<br>In the United States District Court<br>for the Southern District of Texas, Houston Division<br>Our Ref.: 100705.0003 |  |

Please see attached

270129.1

ARS-TX 0055

# HEALY & BAILLIE, LLP

61 BROADWAY
NEW YORK. NY 10006-2701

TELEPHONE: (212) 943-3980
FAX: (212) 425-0131
www.healy.com

DIRECT DIAL (212) 709-9264
DIRECT FAX (212) 487-0364

RICHARD V. SINGLETON II
RSINGLETON@HEALY.COM

October 25, 2004

By Fax: (832) 476-6590

Aon Risk Services
1330 Post Oak Blvd, Suite 900
Houston, TX 77056
Attn: James Montano/Karen Cooper

Re:   In the Matter of Horizon Vessels, Inc., etc. et al.
      C.A. No. H-03-3280
      In the United States District Court for the Southern District of
      Texas
      Our Ref.: 100705.0003

Dear Sirs:

We are attorneys for Iroquois Gas Transmissions System LP. ("Iroquois"). As you are aware, Iroquois are parties to the above captioned limitation of liability action, which was commenced by Horizon Offshore Contractors, Inc. ("Horizon") in response to claims by the New York Power Authority ("NYPA") and others that on February 27, 2003 Horizon damaged NYPA's Y-49 cable crossing in Long Island Sound. The incident occurred while Horizon was acting as Iroquois' contractor for the construction of a natural gas pipeline that was to be laid over NYPA's cable. NYPA's claim is in excess of $18,000,000.

NYPA and LIPA have now filed a cross-claim against Iroquois in Horizon's limitation action seeking recovery for their full damages resulting from the incident. A copy of the cross-claim is attached. NYPA and its insurer have also recently filed a motion for partial summary judgment against Iroquois.

Iroquois is an additional insured under Horizon's various insurance policies in effect at the time of the incident and covering Horizon's liabilities in this matter. A copy of Aon's letter of July 17, 2003 confirming coverage on behalf of Iroquois is attached for ease of reference. The law is well established that, as an additional insured, Iroquois is entitled to immediate coverage by Horizon's insurers for its attorneys' fees and costs

269955.1

HEALY & BAILLIE, LLP · CONNECTICUT - TELEPHONE: (203) 354-1360 · FAX: (203) 354-1363
HEALY & BAILLIE · NEW JERSEY · TELEPHONE: (973) 912-8955 · FAX: (973) 912-9767
HEALY & BAILLIE · HONG KONG · TELEPHONE: (852) 2537-5628 · FAX: (852) 2521-9072

ARS-TX 0056

Page 2
October 25, 2004

incurred in the defense of this matter irrespective of the insurers' position with regard to ultimate liability.

We therefore renew Iroquois' demand that Horizon's insurers immediately assume Iroquois' defense in connection with the Y49 Cable Incident, including covering Iroquois' attorneys' fees and costs incurred to date and on a going-forward basis. Please confirm coverage as soon as possible and advise to whom our/Iroquois' statements for legal services should be addressed. A prompt response is necessary due to NYPA's pending motion for partial summary judgment. If we do not have a response within two weeks of the date of this letter, Iroquois will have no choice but to petition the appropriate court for a declaration of underwriters' obligation to cover.

Very truly yours,

HEALY & BAILLIE, LLP

By _____
Richard V. Singleton II

RVS/BT

cc:    Mr. Charles A. Cerise, Jr.
       Mr. Edwin C. Lazier
       Adams and Reese LLP
       One Shell Square
       701 Poydras, Suite 4500
       New Orleans, LA 70139

       Mr. Daryl G. Dursum
       Adams and Reese LLP
       4400 One Houston Center
       1221 McKinney
       Houston, TX 77010

269955.1

**AON**

*Aon Risk Services*

*Natural Resources*
*Group*

July 17, 2003

Mr. Jeffery A. Bruner
Iroquois Gas Transmission System
One Corporate Drive, Suite 500
Shelton, CT  06484-6211

Re.: Claims by Long Island Power Authority
(November 16, 2002) and New York Power
Authority (February 27, 2003)
Insurance Information

Dear Mr. Bruner:

We refer to your letter of June 9, 2003 to Horizon Offshore Contractors and enclose the
following:

1) Aon Risk Services, fax message of November 27, 2002 to American
International Marine Adjusters.

2) Aon Risk Services, "Accord" General Liability Notice of
Occurrence/Claim" of November 27, 2002 to American Home
Assurance Co.

3) Aon Natural Resources, "Report of Loss", dated 5 December 2002 to
Aegis.

4) Aon Risk Services, fax message of January 17, 2003 (without
enclosures) to A. I. Marine Adjusters and JLT Risk Solutions, with
copy addressees as noted therein.

5) Aon Risk Services, fax message of December 12, 2002 to A. I. Marine
Adjusters, Navigators Insurance Company, Liberty Insurance
Underwriters and XL Specialty.

6) Aon Natural Resources, "Report of Loss" dated March 4, 2003 to
Aegis.

7) Aon Natural Resources, "Report of Loss" dated April 18, 2003 to The
Steamship Mutual Underwriting Association (Bermuda) Ltd.

8) Aon Natural Resources, "Report of Loss" dated May 21, 2003 to
American Home Assurance Company.

9) Aon Natural Resources, "Report of Loss" dated July 16, 2003 to
Various excess liability underwriters.

*Aon Risk Services of Texas, Inc.*
1330 Post Oak Blvd.. Suite 900 • Houston, Texas 77056 • tel: (832) 476-6000 • fax: (832) 476-6590

ARS-TX 0058

*Aon Risk Services*

*Natural Resources Group*

**AON**

We believe the enclosures clearly evidence notice to all appropriate insurers with respect to the subject casualties. Moreover, the "Reports of Loss" enclosed herein indicate the limits of liability of each policy noticed as well as other relevant information.

Regarding the issue of "specialist operations", please note that the exclusion regarding such in the Steamship rules was deleted from the AEGIS policy (ARS-3175) as evidenced in the attached portions of such policy. What may have led to some confusion on this issue is that AEGIS uses the Steamship Mutual rules and modifies same to meet the needs of its insureds, including Horizon. In this case Horizon required that the exclusion be removed and AEGIS complied.

As to excess liability coverage, the two incidents are distinct in their facts and, as you will note, in an abundance of caution, all appropriate excess liability underwriters have been advised of the occurrences. How the policies apply to each incident will be determined by what the investigations relative to each clearly establish. To assist you in your understanding of the structure of Horizon's insurance program, attached is a bar chart which graphically depicts the casualty portion of such program. Please note that certain coverages depicted on such chart are not relevant to the claims at hand and all information shown is proprietary and confidential to Horizon.

With respect to your inquiries regarding the M/V MR SONNY, please note inasmuch as Horizon was not the owner of such vessel, Horizon did not undertake to insure it. However, we believe Horizon, as charterer, is protected for any liability as charterer by its primary general liability policy provided by American Home per "Amendatory Endorsement to Form CG 00 01 10 93 Marine Liability Insurance, Etc.", a copy of which is also attached hereto for your review.

Regarding the issue of contractual indemnities, the AEGIS policy (ARS-3175) refers to the Steamship rules and with respect to Rule 25, provides " ... Including coverage for liabilities as provided under Rule 25 xx (Contract and Indemnities) and its subparagraphs *and it is agreed to waive the requirement for approval of the terms of any such contracts.*" (emphasis supplied.) The Steamship Mutual policy on an excess basis does not evidence the waiver noted. However, these underwriters are aware of the contractual necessity of "naming and waiving" Horizon's principles as a general matter and with respect to the project at issue in particular.

*Aon Risk Services of Texas, Inc.*
1330 Post Oak Blvd., Suite 500 • Houston, Texas 77056 • tel: (832) 476-6000 • fax: (832) 476-6590

ARS-TX 0059

HEALY & BAILLIE, LLP    FAX:212-425-0359    Oct 25 2004  15:54    P.08
Case 1:05-cv-02149-JSR    Document 47-5    Filed 09/09/2005  SINGLETON  Page 7 of 305
IROQUOIS LEGAL FAX

07/17/2003 16:09 FAX 203 926 85—-
JUL. -17 03(THU) 13:41

**AON**

*Aon Risk Services*

*Natural Resources Group*

We understand that Iroquois has been provided policies and certificates of insurance evidencing all required and necessary coverages although same might not have reached your desk. You may wish to review the documents provided with your insurance department and outside insurance brokers to confirm the contents herein. In addition, if you still have questions or remain uncertain of certain issues, we are available to meet and discuss.

Very truly yours,

Aon Natural Resources

James I. Montano

*Aon Risk Services of Texas, Inc.*
1350 Post Oak Blvd., Suite 900 • Houston, Texas 77056 • tel: (832) 476-6000 • fax: (832) 476-6590

07/17/2003 THU 15:56  [TX/RX NO 8207]  ☑005

ARS-TX 0060

AON

**✳✳ Transmit Conf.Report ✳✳**

P.1                                                            Nov 27 2002  14:43

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 97133612693 | NORMAL | 27,14:43 | 0'45" | 2 | * O K | |

**AON** *Aon Risk Services*
*Natural Resources Group*

1330 Post Oak Blvd, Suite 900
Houston, TX 77056-3089
832-476-6810    Fax 832-476-8510
Karen_Cooper@ars.aon.com

| | |
|---|---|
| Telecopier No.: | 713-269-8680 |
| Date: | November 27, 2002 |
| Company: | American International Marine Adjusters |
| Attention: | John Molkentin |
| Cc: | Bill Arnold, Horizon Offshore (w/att.) 713-361-2693<br>Peter Mortlock, Aon (w/att.)<br>Margie Goodall, Aon (w/att.)<br>Jim Montann, Aon (w/att.) |
| From: | Karen Cooper |
| No. of Pages Sent: | 2    (Including this page) |
| Subject: | Insured: Horizon Offshore Contractors<br>D/L: November 16, 2002<br>Policy No: C1727<br>Claimant: Long Island Power Authority<br>Our Ref: 02-M4842 |

Please accept this as notice of an incident that may give rise to a claim under the captioned policy. On November 16, 2002 at approximately 5:30 P.M. EST, an anchor of the CalDive DSV "Mr. Sonny" became entangled in four (4) cables of the Long Island Power Authority. No injuries were reported. The extent of financial damage has not yet been determined.

Please contact Mr. Bill Arnold, Director of Risk Management, Horizon Offshore, 713-243-2740, for additional information.

Please acknowledge receipt and advise your claim number.

Regards,

*[signature]*

07/17/2003 THU 15:56  [TX/RX NO 8207]  @008

07/17/2003 16:10 FAX 203 926 8[ ]    IROQUOIS LEGAL FAX    [ ]002

JUL -17'03(THU) 13:42

# ACORD. GENERAL LIABILITY NOTICE OF OCCURRENCE/CLAIM

| | | | | | DATE 11-27-02 |
|---|---|---|---|---|---|

| PRODUCER | PHONE (A/C, No, Ext) 832-476-6810 |
|---|---|

| | NOTICE OF OCCURRENCE | DATE OF OCCURRENCE AND TIME 11/16/02    5:30    X AM PM | DATE OF CLAIM | PREVIOUSLY REPORTED? YES X NO |
|---|---|---|---|---|

AON RISK SERVICES
NATURAL RESOURCES GROUP
1330 POST BLVD SUITE 900
HOUSTON TX 77056

| NOTICE OF CLAIM | | | | | RETROACTIVE DATE |
|---|---|---|---|---|---|
| EFFECTIVE DATE 02/20/02 | EXPIRATION DATE 05/01/03 | POLICY TYPE | | | |
| | | OCCURRENCE | CLAIMS MADE | | |
| | | MISCELLANEOUS INFO (Site & location code) | | | |

| COMPANY AMERICAN HOME ASSURANCE CO. | NAIC CODE |
|---|---|

| POLICY NUMBER C1727 (ARS-3177) | REFERENCE NUMBER Aon Claim No: 02-M4842 |
|---|---|

| CODE: | SUB CODE: |
|---|---|
| AGENCY CUSTOMER ID: | |

| CONTACT | | WHERE TO CONTACT |
|---|---|---|
| NAME AND ADDRESS | CONTACT INSURED | |

**INSURED**

| NAME AND ADDRESS | SOC SEC #: |
|---|---|

HORIZON OFFSHORE CONTRACTORS
2500 CITYWEST BLVD, SUITE 2200
HOUSTON TX 77042

**CONTACT**
NAME AND ADDRESS
BILL ARNOLD

| | WHEN TO CONTACT |
|---|---|

| RESIDENCE PHONE (A/C, No) | BUSINESS PHONE (A/C, No, Ext) |
|---|---|

| RESIDENCE PHONE (A/C, No) | BUSINESS PHONE (A/C, No, Ext) 713-243-2740 |
|---|---|

| | AUTHORITY CONTACTING |
|---|---|

## OCCURRENCE

| LOCATION OF OCCURRENCE (including city & state) | IROQUOIS PROJECT. |
|---|---|

| DESCRIPTION OF OCCURRENCE (use separate sheet if necessary) | ON NOVEMBER 16, 2002 AT APPROXIMATELY 5:30 P.M., EST, AN ANCHOR OF THE CalDive DSV "MR SONNY" BECME ENTANGLED IN 4 SUBSEA POWER CALBES OF LONG ISLAND POWER AUTHORITY |
|---|---|

## POLICY INFORMATION

| COVERAGE PART OR FORMS (insert form # and edition dates) | PRODUCTS/COMP OP AGG | PERS & ADV INJ | EACH OCCURRENCE | FIRE DAMAGE | MEDICAL EXPENSE | DEDUCTIBLE | PD BI SAU DED |
|---|---|---|---|---|---|---|---|
| GENERAL AGGREGATE 2,000,000 | 2,000,000 | 1,000,000 | 1,000,000 | Incl. | Incl. | PER CLAIM/OCC | |
| | | | | $10,000,000 AGGR | | | |

| UMBRELLA/EXCESS | UMBRELLA | EXCESS | CARRIER: American Home (Part B) | LIMITS: |
|---|---|---|---|---|

## TYPE OF LIABILITY

| PREMISES/INSURED IS | OWNER | TENANT | OTHER: | TYPE OF PREMISES |
|---|---|---|---|---|

| OWNER'S NAME & ADDRESS (if not insured) | | OWNER'S PHONE (A/C, No, Ext) |
|---|---|---|
| | | TYPE OF PRODUCT |

| PRODUCTS/INSURED IS | MANUFACTURER | VENDOR | OTHER: |
|---|---|---|---|

| MANUFACTURER'S NAME & ADDRESS (if not insured) | MANUFACT PHONE (A/C, No, Ext) |
|---|---|

| WHERE CAN PRODUCT BE SEEN? | |
|---|---|

| OTHER LIABILITY INCLUDING COMPLETED OPERATIONS (Explain) | PHONE (A/C, No, Ext) |
|---|---|

## INJURED/PROPERTY DAMAGED

| NAME & ADDRESS (Injured/Owner) LONG ISLAND POWER AUTHORITY (LIPA) | PHONE (A/C, No, Ext) |
|---|---|

| AGE | SEX | OCCUPATION | EMPLOYER'S NAME & ADDRESS | | | |
|---|---|---|---|---|---|---|
| | | | WHERE TAKEN | WHAT WAS INJURED DOING? | | |

| DESCRIBE INJURY | | | | WHEN CAN PROPERTY BE SEEN? |
|---|---|---|---|---|
| FATALITY | | ESTIMATE AMOUNT Unknown | WHERE CAN PROPERTY BE SEEN? | |

| DESCRIBE PROPERTY (Type, model, etc) 4 Subsea Power Cables | BUSINESS PHONE (A/C, No, Ext) | RESIDENCE PHONE (A/C, No) |
|---|---|---|

| WITNESSES | NAME & ADDRESS |
|---|---|

| REMARKS | |
|---|---|

| | SIGNATURE OF PRODUCER Karan W. Cooper |
|---|---|

| REPORTED BY BILL ARNOLD, INSD. | REPORTED TO | SIGNATURE OF INSURED | © ACORD CORPORATION 1986 |
|---|---|---|---|

ACORD 3 (7/97)    NOTE: IMPORTANT STATE INFORMATION ON REVERSE SIDE

07/17/2003 THU 15:56  [TX/RX NO 8907]  [ ]007

ARS-TX 0062

CC:    Peter Mortlock, Margie Goodall - Aon



## Aon Natural Resources
1330 Post Oak Boulevard, Suite 900
Houston, Texas 77056
Telephone: (832) 476-6000; Telefax: (832) 476-6590

**DATE:** 5 December 2002

REPORT OF LOSS ON:    ENERGY PACKAGE

To:    **COMPANY**    **POLICY NO.**    **INTEREST**
Associated Electric & Gas Insurance Services    LE0280741 (ARS-3175)    100%
Ltd. (AEGIS), Hamilton Bermuda Per Origin
Limited, London, UK (via JLT Risk Solutions)

Please accept notice of the following casualty which may result in a claim for:    Property Damage

Name of the Assured:    Horizon Offshore Contractors, Inc.

Policy Inception:    20 Feb 02    Date of Casualty:    16 Nov 02    Policy Expiration:    01 May 03    Form:

Insured Vessel or Property:    Insured Value/Limit of Liability $    US$50,000 any accident/occurrence

Excess of: $    US$50,000    Deductible: $    AAD: $    Stop Loss: $

Place where casualty occurred:    Iriquois Project

Nature of Casualty    On 16 November 2002 at approximately 5:30 PM Eastern Standard Time an anchor of the Cal Dive DSV

"MR SONNY" became entangled in four (4) subsea power cables of Long Island Power Authority (LIPA)

Estimated amount of entire loss Primary $    Unknown    Excess $

Instructed:

Remarks:    Also reported to AI Marine Adjusters, Houston on behalf of Excess (American Home)

Claim #:    02-M4842    Producer:    Peter Mortlock    Claims Made:    No

Client's Claim #:    by:    *Karen Cooper*

If you have any instructions to give, please advise us promptly.

PLEASE ACKNOWLEDGE RECEIPT BY SIGNING AND RETURNING A COPY OF THIS NOTICE

Signature:

Claim Number:

W:\STN\FS\AGYS\App\USERS\Claims Shared\Horizon\Karen-Ronse\cim 02-M4842\Marine Loss Notice.Aon-1
The information contained in this fax is confidential and/or privileged. This fax is intended to be reviewed initially by only the individual named above. If the reader of this transmittal page is not the intended recipient or a representative of the intended recipient, you are hereby notified that any review, dissemination copying of this fax or the information contained herein is prohibited. If you have received this fax in error, please immediately notify the sender by telephone and return this fax to the sender at the address above.

ARS-TX 0063

07/17/2003 16:10 FAX 203 926 8
JUL -17'03(THU) 13:42

# AON

*Aon Risk Services*
*Natural Resources Group*

1330 Post Oak Boulevard, Suite 900
Houston, Texas 77056
Telephone: (832) 476-5840; Telefax: (832) 476-6510
Renee_Glidewell@ars.aon.com

| | |
|---|---|
| Date: | January 17, 2003 |
| Fax Number: | 713-268-8680<br>011-44-207-247-4488 |
| Attention: | Jack Molkentin (ref: 36451)<br>Mike Roberts (ref: LG0260741/001) |
| Company: | A. L. Marine Adjusters<br>JLT Risk Solutions Limited |
| From: | Renee Glidewell<br>Sr. Consultant |
| Copies: | Julie Bowen, Navigators (ref: LIA115037) 713-960-0870<br>Liberty Insurance Underwriters (ref: unknown) 212-208-4112<br>Liz Monroe, XL Marine & Offshore (ref: EX002266) 212-894-9242<br>William Gibbens, Horizon Offshore (cover only) 713-361-2693<br>Jim Montano, Aon (cover only) |
| No. of Pages Sent: | 16    (Including this page) |
| Subject: | Insured:    Horizon Offshore Contractors, Inc.<br>Claimant:    Long Island Power Authority (LIPA)<br>DOL:    November 16, 2002<br>Our Ref:    02-M4642 |

Attached for your file and review are various documents as received from the Insured. Included is a copy of the demand for defense and indemnity from Iroquois Gas Transmission System, LP along with the Insured's declination to them. For your reference, a copy of the Insurance exhibit from the Iroquois contract is also attached. We also provide a copy of the Insured's tender letter to Thales Geosolutions, Inc. requesting their soonest response with regard to defense and indemnity of Horizon.

Also included is correspondence from the claimant's attorney demanding securities for their claims be posted in the amount of $33.75 million by January 21, 2003. After your review, please response accordingly.

Should you have any questions or not receive all of the documents noted, please contact our office.

Regards,

*Renee Glidewell*

NOTE: The information contained in this fax is confidential and/or privileged. This fax is intended *for the sole use* of the individual named above. If the reader of this transmittal page is not the intended recipient or a representative of the intended recipient, you are hereby notified that any review, dissemination, *distribution*, or copying of this fax or the information contained herein is prohibited. If you have received this fax in error, please immediately notify the sender by telephone and return this fax to the sender at the address above.

ARS-TX 0064

# AON

*Aon Risk Services*
*Natural Resources Group*
1330 Post Oak Boulevard, Suite 900
Houston, Texas 77056
Telephone: (832) 476-6840; Telefax: (832) 476-8510
Renee_Glidewell@ars.aon.com

| | |
|---|---|
| Date: | December 12, 2002 |
| Attention: | Excess Claims |
| Company: | A. I. Marine Adjusters  713-268-8680 (ref: C1769)<br>Navigators Insurance Co.  713-960-0870 (ref: 02L1799-01)<br>Liberty Insurance Underwriters 212-208-4112 (ref: NY039204002)<br>XL Specialty  212-894-9242  (ref: PMEX847027) |
| From: | Renee Glidewell (for Karen Cooper)<br>Sr. Consultant |
| Copies: | Peter Mortlock, Aon  (cover only)<br>Margie Goodall, Aon  (cover only) |
| No. of Pages Sent: | 2    (Including this page) |
| Subject: | Assured:      Horizon Offshore Contractors<br>Policy:       ARS-3215<br>Effective:   04/08/02 – 05/01/03<br>Claimant:   Long Island Power Authority<br>DOL:         November 16, 2002<br>Our Ref:    02-M4842-C |

Please accept this as notice of an incident that could give rise to a claim under the captioned policy. It is reported that the anchor of the CalDive DSV "Mr. Sonny" became entangled in four (4) cables of the Long Island Power Authority. No injuries were reported. The extent of financial damage has not yet been determined. We shall, of course, forward additional information as it is available.

The incident has also been reported to A. I. Marine Adjusters on behalf of American Home Assurance Company. Jack Molkentin is handling the claim in AIMA's Houston office. The incident has also been reported to JLT Risk Solutions on behalf of AEGIS. Terry Cornick is handling the claim in their London office.

Please acknowledge your receipt of this notice and advise who in your respective offices will be handling this matter, along with your claim numbers. Should you have any questions, please feel free to call or e-mail.

Regards,

Renee Glidewell

NOTE:   The information contained in this fax is confidential and/or privileged. This fax is intended for the sole use of the individual named above. If the reader of this transmittal page is not the intended recipient or a representative of the intended recipient, you are hereby notified that any review, dissemination, distribution, or copying of this fax or the information contained herein is prohibited. If you have received this fax in error, please immediately notify the sender by telephone and return this fax to the sender at the address above.

VIA FAX



### Aon Natural Resources
1330 Post Oak Boulevard, Suite 900
Houston, Texas 77056
Telephone: (832) 476-6000; Telefax: (832) 476-6590

REPORT OF LOSS ON:        Protection & Indemnity        DATE:    March 4, 2003

|  |  | INTEREST |
|---|---|---|
| To: | COMPANY | 100% |
|  | Associated Electric & Gas Insurance | |
|  | Services Limited (AEGIS), Hamilton, | |
|  | Bermuda per Origin Limited, London, U.K. | |
|  | c/o JLT Risk Solutions Limited | |
|  | London, England, U.K. | |
|  | Attn: Mr. Simon Dawes | |

POLICY NO.      ARS-3175

Please accept notice of the following casualty which may result in a claim for:    Damage to Property

Name of the Assured:   Horizon Offshore, Inc. and Horizon Offshore Contractors, et al.

Policy Inception:   2/20/02    Date of Casualty:   2/27/03    Policy Expiration:   5/1/03

Insured Vessel:   GULF HORIZON    Limit of Liability $    950,000 O. A. O.

Excess of: $   50,000    Deductible: $   N/A    AAD: $   N/A    Stop Loss: $   N/A

Place where casualty occurred:    Long Island Sound, NY

Nature of Casualty:    Whilst performing pipelaying operations (pipe burial) the insured vessel's anchor cable parted and allegedly

damaged a sub-sea power cable owned by the New York Power Authority.

Estimated amount of entire loss $    (unknown)    Excess $   N/A

Instructed:

Remarks:    Details of casualty and developments will be reported in due course.

Claim #:   03-M5058    Producer:   BJ    Claims Made:   No

Client's Claim #:

by:    James I. Montano

If you have any instructions to give, please advise us promptly.

PLEASE ACKNOWLEDGE RECEIPT BY SIGNING AND RETURNING A COPY OF THIS NOTICE

Signature:

\\houz2k1\xxxxBUSINESS UNITS\ANR\Claims\Claims Shared\Horizon\03-M5058.docx1
The information contained in this fax is confidential and/or privileged. This fax is intended to be received initially by only the individual named above. If the reader of this transmitted page is not the
intended recipient or a representative of the intended recipient, you are hereby notified that any review, dissemination copying of this fax or the information contained herein is prohibited. If you have
received this fax in error, please immediately notify the sender by telephone and return this fax to the sender at the address above.

ARS-TX 0066



**Aon Natural Resources**
1330 Post Oak Boulevard, Suite 900
Houston, Texas 77056
Telephone: (832) 476-6000; Telefax: (832) 476-6582

DATE:    April 18, 2003

**REPORT OF LOSS ON:**    Excess P & I

| | |
|---|---|
| | POLICY NO. | INTEREST |

To:    **COMPANY**
The Steamship Mutual
Underwriting Association (Bermuda) Ltd.
c/o JLT Risk Solutions Limited
Attn: Terry Corniok

POLICY NO.    ARS-3176    INTEREST    100.0%

Please accept notice of the following casualty which may result in a claim for:    Damage to Property

Name of the Assured:    Horizon Offshore, Inc. and Horizon Offshore Contractors, et al.

Policy Inception:    02/20/02    Date of Casualty:    2/27/03    Policy Expiration:    5/1/03

Insured Vessel:    GULF HORIZON    Limit of Liability $    Per Rules

Excess of: $    1,000,000    Deductible: $    50,000    AAD: $    16,000,000    Stop Loss: $    N/A

Place where casualty occurred:    Long Island Sound, NY

Nature of Casualty:    Whilst performing pipelaying operations (pipe burial) the insured vessel's anchor cable parted and allegedly

damaged a sub-sea power cable owned by the New York Power Authority.

Estimated amount of entire loss    $    1,000,000    Excess    $    1,000,000

Assured have    instructed    Lyons, Skoufalos, Proios & Flood, LLP to represent their Interests.

Remarks:    Our email message of 16 April 2003 refers

Claim #:    03-M5058-X    Producer:    BJ    Claims Made:    No

Client's Claim #:

by:    James H. Montano

If you have any instructions to give, please advise us promptly.

**PLEASE ACKNOWLEDGE RECEIPT BY SIGNING AND RETURNING A COPY OF THIS NOTICE**

Signature:

Claim Number:

X:\BUSINESS UNITS\ANR\Claims\Claims Shared\Horizon\Loss Notices\Amended 03-M5058-X.doc-1
The information contained in this fax is confidential and/or privileged. This fax is intended to be received solely by any the individual named above. If the reader of this transmittal page is not the intended recipient or a representative of the intended recipient, you are hereby notified that any review, dissemination copying of this fax or the information contained herein is prohibited. If you have received this fax in error, please immediately notify the sender by telephone and return this fax to the sender at the address above.



**Aon Natural Resources**
1330 Post Oak Boulevard, Suite 900
Houston, Texas 77056
Telephone: (832) 476-6000; Telefax: (832) 476-6582

DATE: May 21, 2003

**REPORT OF LOSS ON:** _Excess Liabilities_

POLICY NO. | INTEREST
|100.0%

To: **COMPANY**
American Home Assurance Company
via American International Marine Agency
Attn: Jack Molkenbn

POLICY NO. ARS-3177

Please accept notice of the following casualty which may result in a claim for: Damage to Property

Name of the Assured: Horizon Offshore, Inc. and Horizon Offshore Contractors, et al.

Policy Inception: 02/20/02   Date of Casualty: 2/27/03   Policy Expiration: 5/1/03

Insured Vessel: GULF HORIZON   Limit of Liability $ 10,000,000

Excess of: $ 1,000,000   Deductible: $ N/A   AAD: $ N/A   Stop Loss: $ N/A

Place where casualty occurred: Long Island Sound, NY

Nature of Casualty: Whilst performing pipelaying operations (pipe burial) the insured vessel's anchor cable parted and allegedly damaged a sub-sea power cable owned by the New York Power Authority.

Estimated amount of entire loss $ (unknown)

Assured have Instructed Lyons, Skoufalos, Proios & Flood, LLP to represent their interests.

Remarks: Primary carrier AEGIS have posted policy limit reserve. Additional information to follow.

Claims Made: No

Claim #: 03-M5058-X   Producer: BJ

Client's Claim #:   by: _Chris I. Montano_

If you have any instructions to give, please advise us promptly.

**PLEASE ACKNOWLEDGE RECEIPT BY SIGNING AND RETURNING A COPY OF THIS NOTICE**

Signature: _____

Claim Number: _____

The information contained in this fax is confidential and/or privileged. This fax is intended to be reviewed initially by only the individual named above. If the reader of this transmittal page is not the intended recipient or a representative of the intended recipient, you are hereby notified that any review, dissemination copying of this fax or the information contained herein is prohibited. If you have received this fax in error, please immediately notify the sender by telephone and return this fax to the sender at the address above.

ARS-TX 0068



## *Aon Natural Resources*
1330 Post Oak Boulevard, Suite 900
Houston, Texas 77056
Telephone: (832) 476-6000; Telefax: (832) 476-6582

**REPORT OF LOSS ON:**  Excess Liabilities

**DATE:**  July 16, 2003

To:

| COMPANY | POLICY NO. | INTEREST |
|---|---|---|
| XL Specialty Insurance Company (PMEXB57027) |  | 20.00% |
| via Brockbank Insurance Services, Inc. |  | 25.00% |
| Liberty Insurance Underwriters (NY039204002) | ARS-3215 | 26.43% |
| American Home Assurance Company (C1789) |  |  |
| via American International Marine Agency, Inc. |  | 28.57% |
| Navigators Insurance Company (02L1799-01) |  | 100.00% |
| via Navigators Insurance Services of Texas, Inc. |  |  |

Please accept notice of the following casualty which may result in a claim for: **Property Damage**

Name of the Assured: **Horizon Offshore, Inc. and Horizon Offshore Contractors, et al.**

Policy Inception: **04/09/02**    Date of Casualty: **2/27/03**    Policy Expiration: **5/1/03**

Insured Vessel: **GULF HORIZON**    Limit of Liability $ **140,000,000**

Excess of: $ **10,000,000**  Deductible: $ **N/A**    AAD: $ **N/A**    Stop Loss: $ **N/A**

Place where casualty occurred: **Long Island Sound, NY**

Nature of Casualty: **Whilst performing pipelaying operations (pipe burial) the insured vessel's anchor cable parted and allegedly**

**damaged a sub-sea power cable owned by the New York Power Authority.**

Estimated amount of entire loss  $ **(Unknown)**    Excess $ _____

The Assured    Instructed    attorneys Lyons, Skoufalos, Prolos & Flood, to investigate.  Additional information to follow.

Remarks: _____

Claim #: **03-M5058-XA**    Producer: **BJ**    Claims Made: **No**

Client's Claim #: _____

by: _James I. Montano_

*If you have any instructions to give, please advise us promptly.*

**PLEASE ACKNOWLEDGE RECEIPT BY SIGNING AND RETURNING A COPY OF THIS NOTICE**

Signature: _____

Claim Number: _____

\\unix\hou2x Naharan\BUSINESS UNIT\SIANA\Claims\Claims Shared\Horizon\Loss Notices\Amended 03-M5058-XA.doc-1
*The information contained in this fax is confidential and/or privileged. This fax is intended to be covered only by the individual named above. If the reader of this transmittal page is not the intended recipient or a representative of the extended recipient, You are hereby notified that any review, dissemination copying of this fax or the information contained herein is prohibited. If you have received this fax in error, please immediately notify the sender by telephone and return this fax to the sender at the address above.*

ARS-TX 0069

ARS-3175

*Aon Risk Services*

*Natural Resources*
*Group*

## CONDITIONS:

The "Class 1 Rules - Protection and Indemnity" of the Steamship Mutual Underwriting Association (Bermuda) Limited (the "Rules") in effect at the attachment date are hereby incorporated into this certificate, insofar as they may be applicable, subject to the following amendments and exceptions. All references in the Rules to "the Club" shall be read as references to "AEGIS" and/or where the context permits, its agent; all references to "the Directors" shall be read as references to AEGIS; all references to "the Member" shall be read as references to the "Assured" or "Insured"; all references to "the Managers" shall be read as references to "ORIGIN"; and references to "entry" and "entered" shall be read as references to "insurance" and "Assured"; and the Rules shall be deemed amended accordingly.

The following Rules are hereby excluded from this Certificate: Rule numbers: 1, 3 to 9, 11 to 13, 15(ii), 16(iii) to (iv); 33, 34 and 38(ii). Any written notice of termination of cover shall only be effective no less than 15 days from receipt by the Assured. Further amendments or exclusions to the Rules are as specified below.

## INSURED:

As declared.

## LIMIT OF LIABILITY:

As declared.

## DEDUCTIBLE:

As declared.

## RISKS COVERED:

1) Risks covered under "Class 1 Rules - Protection and Indemnity" of the Steamship Mutual Underwriting Association (Bermuda) Limited.

2) Including risks otherwise excluded under Rule 17b (Specialist Operations), Rule 17c (Drilling Operations), Rule 17d (Diving Operations) and Rule 17e (Salvage Operations).

3) Notwithstanding the inclusion of risks otherwise excluded by Rule 17d (Diving Operations), the cover afforded hereunder is limited to liabilities, costs and expenses incurred by the Insured arising out of diving operations performed by third party contractors; warranted the Insured shall obtain indemnity and defense indemnities from diving contractors for personal injuries to the diving contractor personnel.

ARS-3175

*Aon Risk Services*

*Natural Resources*
*Group*

4)   Notwithstanding the inclusion of risks otherwise excluded by Rule 17e (Salvage Operations), the cover afforded hereunder shall be limited to liabilities, costs and expenses associated with salvage operations incidental to activities associated with risks described under Rule 17b (Specialist Operations), Rule 17c (Drilling Operations) and Rule 17d (Diving Operations), and this insurance shall not cover liabilities, costs and expenses arising out of salvage operations as a professional salvor.

5)   Including coverage for Contractual Liabilities in respect of seamen for death, injury or illness and it is agreed to waive the requirement for approval of any crew agreements and other contracts of service or employment and contracts for services.

6)   Including coverage for liabilities assumed by the Insured not otherwise provided under Rule 25 xix (Towage) and its subparagraphs and it is agreed to waive the requirement for approval of the terms of any such contracts, but excluding amounts recoverable under Hull Risks insurance effected by the Insured.

7)   Including coverage for liabilities as provided under Rule 25 xx (Contract and Indemnities) and its subparagraphs and it is agreed to waive the requirement for approval of the terms of any such contracts.

8)   Including liabilities, costs and expenses in respect of wreck and debris removal whether liability be compulsory under law or assumed under contract, or whether voluntarily assumed where it is determined that the wreck or debris interferes with the operation of the Insured, but excluding amounts recoverable under Hull Risks insurance effected by the Insured.

9)   Including 4/4ths Collision Liability and damage to Fixed and Floating Objects, but excluding amounts recoverable under Hull Risks insurance effected by the Insured.

10)  Subject otherwise to the terms, conditions and risks covered, including liabilities, costs and expenses for death, injury or illness in respect of any person performing work in connection with any offshore or maritime operation of the Insured, whether such person is an employee of the Insured or is engaged by the Insured under contract of services or for services, whether or not such operations are performed from a entered ship.

11)  Subject otherwise to the terms, conditions and risks covered, including liabilities, costs and expenses incurred by the Insured in respect of the short term charter or hire of miscellaneous barges and tugs used in support of the operations of the entered Vessels/Units; including liabilities, costs and expenses for risks otherwise excluded by Rule 17(a) Hull Risks, subject such support craft are not bareboat chartered by the Insured and excepting craft rented or hired where the Insured has assumed a "first party" risk or the obligation to provide Hull Risks insurance.

ARS-3175

*Aon Risk Services*

*Natural Resources*
*Group*

## OTHER TERMS, CLAUSES AND CONDITIONS:

**1.    NON GUARANTEE CLAUSE**

a)      This insurance is evidence only of a contract of indemnity insurance between the above named insured and AEGIS and shall not be construed as evidence of any undertaking, financial or otherwise, on the part of AEGIS to any other party.

b)      In the event that an insured tenders this insurance as evidence of insurance under any applicable law relating to financial responsibility, or otherwise shows or offers it to any other party as evidence of insurance, such use of this insurance by the insured is not to be taken as any indication that AEGIS thereby consents to act as guarantor or to be sued directly in any jurisdiction whatsoever.  AEGIS does not so consent.

**2.    ADDITIONAL INSURED CLAUSE AND OTHER PROVISIONS**

i.)     The insured has privilege to name others as an additional insured for their respective rights and interests and/or waive any rights of recovery, but only to the extent as may be required under contract or agreement.

ii.)    In connection with any person, firm or corporation included as an additional insured, the provisions of Rule 14ii and any other reference within the Rules purporting to limit coverage to any "Co-Insured" to that of the "Member" is deleted.  It is further noted and agreed any person, firm, or corporation included as an additional insured has no obligation for payment of premium hereunder.

iii.)   It is agreed that in respect of additional insured(s), the coverage provided hereunder shall be primary in respect of any coverage carried by said additional insured(s) but only to the extent as may be required by contract or agreement.

iv.)    In the event of an insured incurring liability to any other insured, this insurance shall cover the insured against whom claim is or may be made in the same manner as if separate policies had been issued to each insured.  Nothing contained herein shall operate to increase the limit of liability as set forth in this insurance.

v.)     Such coverage as is afforded by this insurance shall not be denied solely on the basis that the claim or suit against the insured is based upon an "in Rem" proceeding.

vi.)    It is agreed that a claim against any person, firm or organization by an employee of the insured on the "Borrowed Servant Doctrine" will, for the purpose of this insurance, be treated as a claim arising under this insurance, against the insured

*Aon Risk Services*

### Amendatory Endorsement To Form CG 00 01 10 93 *Natural Resources*
### Marine Liability Insurance, Etc. *Group*

The following amendments to form CG 00 01 10 93 shall apply:

SECTION I COVERAGE A 2. Exclusions are amended as follows:

Exclusion g. is deleted and replaced with the following:

g.  "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any "aircraft" or "auto" owned or operated by or rented or loaned to any insured.  Use includes operation and "loading" and "unloading".

This exclusion does not apply to:
i.  Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured.

ii. Liability assumed under "insured contract" for the ownership, maintenance or use of aircraft.

It is a condition of this insurance that the Named Insured shall maintain Protection and Indemnity Insurance on watercraft in excess of 25' that the Named Insured operates or owns.

Exclusion j. Item (4) is deleted.  Furthermore, exclusions k., l., and m. shall not apply to "property damage" which arises in connection with operations, activities or the business of the Insured in their capacity as an energy or marine construction or service contractor.  However, this insurance shall not apply to liability for "property damage" arising out of the failure of "your work" or "your product" to meet any warranty or representation by any insured as to the level of performance, quality, fitness or durability or to perform their function or serve their purpose, to the extent that such liability is for the diminished value or utility of "your work" or "your product".

SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS is amended as follows:

4.  Other Insurance – the following Condition is added:

f.  Notwithstanding a. and b. above, if the loss arises out of the ownership, maintenance, use or entrustment to others of any watercraft owned or operated by or rented or loaned or chartered by or to the Named Insured, this insurance shall only respond on the basis of difference in conditions with, and not excess of, any other insurance available to the Insured.

The following Condition is added:

11.  In Rem

Such coverage as is afforded by this insurance shall not be denied solely on the basis that the claim or suit against the Insured is based upon an "in Rem" proceeding.

ARS-TX 0073

## Current Insurance Program Limits Graphic at December 5, 2002
(Not to Scale)

*Horizon Offshore Contractors, Inc.*

Zurich American Insurance Company

AEGIS / ORIGIN

XL Specialty Insurance Company

XL Specialty, Liberty, American Home & Navigators

XL Specialty, Liberty, Continental & NV Marine & General

American Home

Steamship Mutual

Second Layer Excess $100M

Excess Protection & Indemnity as per Rules of Steamship Mutual

$100M

$100M

Non-Owned Aircraft Liability

P&I (and as modified) *

General Liability (and as modified) **

$1M

Auto Liability

$1M

Employer's Liability

Statutory

Workers' Comp

* Including all EL/Charterer's Liability and excess of amounts afforded under Marine Package to Wat-P&I, Collision and FD&W Liabilities

** EXCP/DIL with P&I

x:\Yourself\MRD\Horizon Offshore\Program Info Inception at 12-5-02.ppt

ARS-TX 0074

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF HORIZON VESSELS, INC., AS OWNER and HORIZON OFFSHORE CONTRACTORS, INC., HORIZON OFFSHORE, INC., AND TEXAS OFFSHORE CONTRACTORS CORP., AS OWNERS, OPERATORS, OWNERS PRO HAC VICE, OF THE L/B GULF HORIZON, PRAYING FOR EXONERATION FROM OR LIMITATION OF LIABILITY REGARDING THE INCIDENT OF FEBRUARY 27, 2003 | § § § § § § § § § § § § § | C. A. NO. H-03-3280 ADMIRALTY |

## CROSS-CLAIMS OF LIMITATION DEFENDANTS/CROSS-CLAIMANTS, THE POWER AUTHORITY OF THE STATE OF NEW YORK, THE LONG ISLAND LIGHTING COMPANY D/B/A LIPA, AND FACTORY MUTUAL INSURANCE COMPANY

Limitation Defendants/Cross-Claimants, the Power Authority of the State of New York (hereinafter referred to as "NYPA"), the Long Island Lighting Company d/b/a/ LIPA, a wholly-owned subsidiary of the Long Island Power Authority (hereinafter referred to as "LIPA"); and Factory Mutual Insurance Company (FM Global) (hereinafter referred to as "FMIC") (hereinafter collectively referred to as "Utility Claimants"), by and through undersigned counsel, allege cross-claims against: Iroquois Gas Transmission System, L.P. (hereinafter referred to as "Iroquois") and Thales GeoSolutions, Inc.; (hereinafter referred to as "Thales"), upon information and belief as follows:

## JURISDICTION

1.     This Court has jurisdiction of the subject matter of the within action under 28 U.S.C. §§ 1332, 1333, 1367; and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims, and the claims herein exceed $75,000.

ARS-TX 0075

2.     Horizon Vessels, Inc., as owner, and Horizon Offshore Contractors, Inc., Horizon

Offshore, Inc. and Texas Offshore Contractors Corp., as owners, operators, owners *pro hac vice*, of

the L/B GULF HORIZON (collectively "Horizon") have filed a Limitation Complaint in this Court,

Civ. Action No. H-03-3280 02/6397 (SL)(NKJ). A copy of the Limitation Complaint and Amended

Complaint are attached as Exhibit A.

3.     Utility Claimants cross-claims come within the admiralty and maritime jurisdiction

of the federal court, as hereinafter more fully appears and are admiralty and maritime claims within

the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

4.     The cross-claims are permitted by Federal Rule of Civil Procedure 13(g), as the

claims against Iroquois and Thales arise from the same transaction and/or occurrence which

constitute the subject matter of Horizon's limitation proceeding.

## THE PARTIES

5.     NYPA is a corporate municipal instrumentality of the State of New York created by

the Legislature of the State by Chapter 772 of the laws of 1931, as amended, Public Authorities Law

§ 1002. NYPA is a body corporate and politic and a political subdivision of the State of New York,

exercising essential governmental and public powers. NYPA's principal office is in Albany, New

York.

6.     LIPA is a business corporation organized under the laws of the State of New York,

and is a wholly-owned subsidiary of the Long Island Power Authority (hereinafter referred to as the

"Authority"). The Authority is a corporate municipal instrumentality of the State of New York which

is a body corporate and politic and a political subdivision of the State of New York, exercising

essential governmental and public powers. The Authority was created by the Laws of 1986, Chapter

-2-

ARS-TX 0076

517, §1, Public Authorities Law § 1020-c. The Authority's executive offices are located in Uniondale, New York.

7.     FMIC is a corporation duly organized and existing under and by virtue of the laws of the State of Rhode Island, with a principal place of business in Johnston, Rhode Island. At all times relevant to this action, FMIC was the first party physical damage insurer of the Y-49 Cable System, described below.

8.     Iroquois, upon information and belief, was and is a limited partnership formed under the laws of the State of Delaware having a principal place of business in Connecticut.

9.     Thales, upon information and belief, was and is a corporation organized and existing under the laws of the State of Delaware having a principal place of business at Houston, Texas.

## FACTUAL ALLEGATIONS

10.     On or about February 27, 2003, NYPA was the owner of four parallel, self-contained, fluid filled, 345,000 volt cables (Cables Nos. 1- 4) buried beneath Long Island Sound (hereinafter referred to as the "Y-49 Cable System").

11.     The Self-Contained Fluid Filled ("SCFF") portion of the Y-49 Cable System runs from a transition station in the City of New Rochelle, Westchester County, New York to a transition station in the Town of North Hempstead, Nassau County, New York. On or about February 27, 2003, the Y-49 Cable System was in active use and operation.

12.     On or about February 27, 2003, the Y-49 Cable System was operated and managed by LIPA, acting in conjunction with its subcontractor, KeySpan Electric Services, LLC ("KeySpan"), a company located in Hicksville, New York. LIPA is the primary or dedicated user of the Y-49 Cable System's electrical transmission capacity.

-3-

ARS-TX 0077

13.   The Y-49 Cable System was prominently marked on all relevant navigation charts and its location was well known to all mariners or other users of the Long Island Sound.

14.   On or about February 27, 2003, Iroquois was engaged in the construction of a 33 mile extension to the interstate natural gas pipeline extending from the United States-Canadian border to Eastchester, New York, sometimes referred to as the Eastchester Expansion Project (hereinafter "Iroquois Pipeline Project"). The Iroquois Pipeline Project, in large part, was to be buried in the Long Island Sound.

15.   Iroquois contracted with Horizon as its principal or general contractor on the Iroquois Pipeline Project.

16.   Iroquois and/or Horizon contracted with various subcontractors, including Thales, to perform pipeline construction, surveying and other marine related services on the Iroquois Pipeline Project.

17.   As the Iroquois Pipeline Project, by its design and planned route, was to cross over the buried Y-49 Cable System, Iroquois and NYPA reached a contractual understanding of their respective rights and duties with respect to the natural gas pipeline crossing over the Y-49 Cable System (the contract hereinafter is referred to as the "Crossing Agreement"). As part of the obligations of the Crossing Agreement, prior to any construction of the Iroquois Pipeline Project, NYPA provided "as built" information to Iroquois which depicted the locations of the SCFF portions of the Y-49 Cable System. In the Crossing Agreement, Iroquois and NYPA recognized that the electrical capacity of the Y-49 Cable System is primarily dedicated to LIPA.

18.   The Crossing Agreement necessarily and explicitly recognized that Iroquois and its contractors and subcontractors were required to do their work in a manner so as not to harm or damage the Y-49 Cable System.

-4-

ARS-TX 0078

19.    The Crossing Agreement also explicitly contained indemnification provisions whereby Iroquois agreed to wholly and fully indemnify and hold harmless NYPA against any costs and expenses resulting from damage to the Y-49 Cable.

20.    On or about February 27, 2003, as part of the Iroquois Pipeline Project, Horizon was operating the LB GULF HORIZON with one or more of its anchors deployed in the immediate vicinity of the Y-49 Cable System. At the time, Iroquois's contractor Horizon was or should have been aware of the location and existence of the Y-49 Cable System.

21.    Horizon and the L/B GULF HORIZON were working as described above pursuant to instructions from Iroquois and/or information or navigational guidance from Thales. At the time, Iroquois and Thales were aware or should have been aware of the existence and location of the Y-49 Cable System.

22.    On February 27, 2003, at about 21:41 hours, the feeder for the Y-49 Cable System tripped offline. Immediate indications were that Cable No. 4 of the Y-49 Cable System had experienced a phase to ground fault. Given Iroquois' activity in the area, NYPA surmised this situation was a result of physical impact on Cable No. 4 as subsequent investigation established.

23.    Informed of the impact damage to Cable No. 4, NYPA, pursuant to the terms of the Crossing Agreement, instructed Iroquois to stop all work aboard the L/B GULF HORIZON, and to stop work on the Iroquois Pipeline.

24.    The Federal Energy Regulatory Commission and United States Coast Guard were notified promptly. Emergency response personnel were summoned to investigate. It soon was discovered that an anchor deployed by the L/B GULF HORIZON had dragged against and/or across Cable No. 4 of the Y-49 Cable. This contact caused severe damage, including a cable rupture, and required NYPA to remove the entire Y-49 Cable System from service.

-5-

ARS-TX 0079

25.     Pursuant to agreements between NYPA and LIPA, NYPA promptly requested LIPA to implement its emergency response plan, whereby maintenance subcontractor KeySpan would monitor, supervise and effect temporary repairs to Cable No. 4 of the Y-49 Cable System. Further investigation revealed that the bottom of the sound had been disturbed where the LB GULF HORIZON's anchor CP1 dragged against and/or across Cable No. 4.

26.     Pirelli Construction Services, Inc. (hereinafter referred to as "Pirelli") the original designer and manufacturer of the Y-49 Cable System, was awarded an emergency contract to recover and cap the damaged Cable No. 4 at the impact point, near the north shore of Long Island Sound. This work and further testing and inspection having been accomplished, the three remaining undamaged cables of the Y-49 Cable System were returned to service on March 8, 2003.

27.     During the following months, with due notice to Iroquois, Thales and Horizon, NYPA prepared a Request for Proposal(s) to distribute to pre-qualified marine and cable contractors. This process resulted in award of a permanent repair contract to Pirelli. Permanent repair of Cable No. 4 of the Y-49 Cable System was effected in August and September of 2003.

28.     As a result of the negligent, grossly negligent, reckless, careless, willful and wanton actions and/or omissions of Iroquois, in conjunction with Horizon and Thales, in the manner, method, navigation and operation of the LB GULF HORIZON, and of its masters, officers, and crews, and their servants, agents, employees, contractors and consultants, and the unseaworthiness of said vessel, the Cable No. 4 of the Y-49 Cable System was severely damaged and/or destroyed.

29.     Cable No. 4 of the Y-49 Cable System did not in any way obstruct or interfere with navigation, and was lawfully placed and existing in accordance with and pursuant to the terms of permits issued for that purpose by the appropriate authorities.

-6-

ARS-TX 0080

30.    Up until the aforesaid cable severance on or about February 27, 2003, the Y-49 Cable System had been in active use and operation by NYPA and LIPA providing a conduit for electrical transmission between the electrical systems in Westchester and Nassau Counties, New York.

31.    The conduct of Iroquois, Horizon, and Thales in causing the rupture and destruction of Cable No. 4 of the Y-49 Cable System resulted in, *inter alia*, a loss of service to the Y-49 Cable System and the disruption and degradation of reliability to NYPA's and LIPA's electrical operating systems.

32.    At all times relevant to this matter, FMIC provided first-party physical damage insurance to NYPA for the Y-49 Cable System subject to the terms, conditions, exclusions and limitations of Policy No. LB664.

33.    Pursuant to the terms of Policy No. LB457, FMIC has paid NYPA $10,000,000 to indemnify NYPA in part for the cost of repairing damage to the Y-49 Cable System caused by the acts or omissions of Iroquois, Horizon and/or Thales.

34.    By virtue of its payment to NYPA under the terms of Policy No. LB664, FMIC is legally and equitably subrogated to the extent of its payment to the rights, claims, and causes of action that NYPA has, whether in contract, tort or otherwise, against third parties for damage to the Y-49 Cable System including rights, claims or causes of action against Iroquois, Horizon and/or Thales.

## AS AND FOR FIRST COUNT
## (INDEMNIFICATION AGAINST IROQUOIS)

35.    Utility Claimants repeat, reallege, and incorporate by reference the allegations of Paragraphs 1-34 as if fully set forth herein.

ARS-TX 0081

36.    Article III (D) of the Crossing Agreement entered into between NYPA and Iroquois provides:

> D.  Iroquois Gas shall defend, indemnify and hold harmless the Grantee [NYPA] from and against any and all costs and expenses incurred as a result of damage to the Y-49 Cable arising out of or connected with the negligence, acts, omissions or willful misconduct of Iroquois Gas, its contractors, subcontractors, agents and employees in connection with the Work. .

37.    Article III (G) of the Crossing Agreement provides:

> In the event that the Y-49 Cable is damaged or rendered inoperable, during the Work, and such damage or inoperability arises out of the negligence, acts, omissions or willful misconduct of Iroquois Gas, its contractors, subcontractors, agents or employees: (i) Iroquois Gas shall pay all costs and expenses to repair and restore the Y-49 Cable to the operational status as existed before the damage or rendering of inoperability; and (ii) the Grantee shall make arrangements for and provide, at Iroquois Gas' sole cost and expense, equivalent replacement electrical capacity during the period the Y-49 Cable is inoperable....

38.    The damage that occurred to the Y-49 Cable System on or about February 27, 2004, including the rupturing and complete destruction of a segment of Cable No. 4, arose out of or was connected with the negligence, acts, omissions, or willful misconduct of Iroquois, its contractors, subcontractors, agents, or employees in connection with the Iroquois Pipeline Project.

39.    Under the terms of the Crossing Agreement, Iroquois is liable to and bound to indemnify NYPA, FMIC, as NYPA's subrogee, and LIPA, as an intended third-party beneficiary of the Crossing Agreement, in whole for any and all damages, costs and expenses as a result of the ruptured Y-49 Cable.

40.    NYPA, FMIC and LIPA have already incurred substantial losses, costs and expenses for which Iroquois has refused to indemnify them, in breach of the Crossing Agreement, despite due demand.

ARS-TX 0082

41.    More specifically, NYPA, FMIC and LIPA have incurred substantial costs and expenses to investigate the damages to the Y-49 Cable System, to secure the damaged Y-49 Cable System, and to restore the related electrical operating systems including, *inter alia*, hiring outside contractors (including attorneys and other experts and consultants), conducting diving inspections, expenses for emergency response measures, engineering work, and the supervision and planning for the temporary and permanent repairs to Cable No. 4 of the Y-49 Cable System, resulting in damages, costs and expenses, which, so nearly as can be estimated at this time, are in excess of $18,000,000.

## AS AND FOR SECOND COUNT
## (NEGLIGENCE AGAINST IROQUOIS)

42.    Utility Claimants repeat, reallege, and incorporate by reference the allegations of Paragraphs 1-41 as if fully set forth herein.

43.    Iroquois owed a duty to Utility Claimants to perform its construction activities with reasonable care and diligence and also to oversee its contractors to ensure they acted in a prudent manner.

44.    Iroquois knew or should have known based on the service in which the LB GULF HORIZON was involved that special supervision and care was necessary to ensure all actions were undertaken in a safe, coordinated, and prudent manner.

45.    Iroquois breached its duty by failing to exercise reasonable care, *inter alia,* in monitoring, supervising and conducting the operations of the LB GULF HORIZON in a safe manner.

46.    Iroquois breached its duty by failing to exercise reasonable care, *inter alia,* in monitoring and supervising the work of its contractors and sub-contractors.

47.    Iroquois's breach of its duties of reasonable care were the proximate cause of the damages and harm suffered by Utility Claimants.

-9-

ARS-TX 0083

48.    By virtue of the above, Iroquois violated the General Maritime Law of the United States and other applicable laws. Said violations were a direct and proximate cause of the damages suffered by Utility Claimants.

49.    As a result of the foregoing, Utility Claimants incurred substantial costs and expenses to investigate the damages to the Y-49 Cable System, to secure the damaged Y-49 Cable System, and to restore the related electrical operating systems including, *inter alia*, hiring outside contractors, conducting diving inspections, expenses for emergency response measures, engineering work, and the supervision and planning for the temporary and permanent repairs to Cable No. 4 of the Y-49 Cable System. In summary, Utility Claimants have suffered property damage to the Y-49 Cable System, repair costs and other expenditures all caused by Iroquois's negligence, lack of due care, and reckless and grossly negligent conduct resulting in damages which, so nearly as can be estimated at this time, are in excess of $18,000,000.

50.    LIPA required the use and service of the Y-49 Cable System in order to meet certain New York Independent System Operator ("NYISO") requirements. As a result of Iroquois's negligence, lack of due care, and reckless and grossly negligent conduct, LIPA has suffered congestion and rent shortfalls and related damages, during the period the Y-49 Cable System was out of service and/or inoperable. Such damages currently are estimated in excess of $445,000.

AS AND FOR THIRD COUNT
(NEGLIGENCE AGAINST THALES)

51.    Utility Claimants repeat, reallege, and incorporate by reference the allegations of Paragraphs 1-50 as if fully set forth herein.

ARS-TX 0084

52.   Thales owed a duty to Utility Claimants to perform its surveying work with reasonable care and diligence so as to avoid any harm to underwater objects, like the Y-49 Cable System, which Thales failed to do.

53.   Thales knew or should have known based on the layout of the Long Island Sound that the LB GULF HORIZON was near underwater objects, like the Y-49 Cable System, and that the vessel and its anchor should carefully steer clear of said object while performing its pipe-laying duties.

54.   Thales breached its duty of reasonable care owed to Utility Claimants by allowing Iroquois and/or Horizon to perform their duties in a negligent manner.

55.   Thales' breach of its duties of reasonable care were the proximate cause of the damages and harm suffered by Utility Claimants.

56.   By virtue of the above, Thales violated the common law, General Maritime and Admiralty laws of the United States and other applicable laws. Said violations were a direct and proximate cause of the damages suffered by Utility Claimants.

57.   As a result of the foregoing, Utility Claimants incurred substantial costs and expenses to investigate the damages to the Y-49 Cable System, to secure the damaged Y-49 Cable System, and to restore the related electrical operating systems including, *inter alia*, hiring outside contractors, conducting diving inspections, expenses for emergency response measures, engineering work, and the supervision and planning for the temporary and permanent repairs to Cable No. 4 of the Y-49 Cable System. In summary, Utility Claimants have suffered property damage to the Y-49 Cable System, repair costs and other expenditures all caused by Thales' negligence, lack of due care, and reckless and grossly negligent conduct resulting in damages which, so nearly as can be estimated at this time, are in excess of $18,000,000.

-11-

ARS-TX 0085

58.    LIPA required the use and service of the Y-49 Cable System in order to meet certain NYISO requirements. As a result of Thales' negligence, lack of due care, and reckless and grossly negligent conduct, LIPA has suffered congestion and rent shortfalls and related damages, during the period the Y-49 Cable System was out of service and/or inoperable. Such damages currently are estimated in excess of $445,000.

WHEREFORE, Utility Claimants demand judgment as follows:

1.    As to the First Count: that judgment be entered against Iroquois for Utility Claimants' damages, costs and expenses (including attorneys' fees and disbursements) as may be finally determined by this Court together with interest and (legal) costs;

2.    As to the Second Count: that judgment be entered against Iroquois for Utility Claimants' damages as may be finally determined by this Court together with interest and costs;

3.    As to the Third Count: that judgment be entered against Thales for Utility Claimants' damages as may be finally determined by this Court together with interest and costs; and,

4.    That the Court grant such other and further relief as may be just and proper in the circumstances.

Respectfully submitted,

By: _____

Mark Cohen
State Bar No. 04508395
Federal Bar No. 2807
Richard L. Gorman
State Bar No. 00784155
Federal I.D. No. 15685
1010 Lamar Street, Suite 1000
Houston, Texas 77002-6314
Telephone: (713) 224-0628
Facsimile: (713) 224-7487

-12-

ARS-TX 0086

Attorneys-in-Charge for
Limitation Defendants/Cross-Claimants,
The Power Authority of the State of New York,
the Long Island Lighting Company d/b/a
LIPA, and Factory Mutual Insurance
Company (FM Global)

James H. Hohenstein
Vincent Foley
Holland & Knight LLP
195 Broadway
New York, New York 10007
Telephone: (212) 513-3200
Telefax: (212) 385-9010

    - and -

Robert F. Cossolini
Robert B. Meola
Budd Larner
150 John F. Kennedy Parkway, 3rd Floor
Short Hills, NJ 07078
Telephone: (973) 315-4415
Telefax: (973) 379-7734

OF COUNSEL:

**ARS-TX 0087**

 **Jim Montano**

11/15/2004 10:01 AM

To: "Molkentin, John" <John.Molkentin@AIG.com>,
Liz.monroe@xlinsurance.com, "Mike Ticheli"
<PTICHELI@navg.com>, Anthony.Schiavone@libertyiu.com,
Mike_Roberts@JLTGROUP.com, "Williams, Colin"
<colin.williams@simsl.com>, Ron White <rwhite@wmbpc.com>,
"Gina Hartdegen" <ghartdegen@g-c-m.com>,
Brenda.Bowman@CNA.com, Paul_Bennett@JLTGROUP.COM

cc: Charles.Cerise@arlaw.com, Edwin.Laizer@arlaw.com

Subject: Horizon Offshore Contractors/GULF HORIZON/Alleged damage to
NYPA Power Cable/ 27 February 03

Further to our msg of 10 November 04, pls see attachment below and msg from handling attorneys. We await your instructions with regard to responding to Iroquois's demand.

Regards,

Jim Montano

—— Forwarded by Jim Montano/TX/ARS/US/AON on 11/15/2004 09:50 AM ——

 **Mack Mitchell**

11/12/2004 03:29 PM

To: Jim Montano/TX/ARS/US/AON@AONNA

cc: Karen Cooper/TX/ARS/US/AON@AONNA, Jamie
Burnett/TX/ARS/US/AON@AONNA

Subject: Message received from 12124250131 on 11/12/2004 at 3:17:14 PM.
[Virus Checked]

Mack Mitchell Jr.
Office Services
ext. 6775

—— Forwarded by Mack Mitchell/TX/ARS/US/AON on 11/12/2004 03:29 PM ——

 **12124250131**

11/12/2004 03:17 PM

To: hou_ars@ars.aon.com

cc:

Subject: Message received from 12124250131 on 11/12/2004 at 3:17:14 PM.
[Virus Checked]

The attached fax was received from 12124250131 on
11/12/2004 at 3:17:14 PM

JobID: 1506078

ARS-TX 0088

# HEALY & BAILLIE, LLP
## 61 BROADWAY
### NEW YORK, NY 10006-2834
Telephone (212) 943-3980
Fax (212) 425-0131
www.healy.com

Richard V. Singleton II
rsingleton@healy.com

**Direct Dial (212) 709-9264**
**Direct Fax (212) 487-0364**

**PLEASE NOTE:** The information contained in this facsimile message may be privileged and confidential and is intended only for the use of the individual named below and others who have been specifically authorized to receive it. Additionally, if you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this communication in error, or if any problems occur with this transmission, please notify us immediately by telephone: (212) 943-3980.

November 12, 2004

| To: | Company/Name | Fax#/City/State/Country |
|---|---|---|
| | Aon Risk Services | (832) 476-6590 |
| | Attn: James Montano/Karen Cooper | Houston, Texas |
| | | |
| cc: | Adams and Reese LLP | 713-652-5152 |
| | Daryl G. Dursum | Houston, Texas |
| | | |
| | Adams and Reese LLP | 504-566-0210q |
| | Charles A. Cerise, Jr./Edwin C. Lazier | New Orleans, Louisiana |

From: Richard V. Singleton II
   Page 1 of 3 pages

Re:  C.A. No. H-03-3280
   In the Matter of Horizon Vessels, Inc., etc. et al.
   In the United States District Court
   for the Southern District of Texas, Houston Division
   Our Ref.: 100705.0003

Dear Sirs:

   We have received no response to our fax of October 25, 2004, and the deadline for a response has now past. A copy of our letter is attached (without enclosures) for your convenience. We assume that from your silence that Horizon's underwriters have no intention of honoring their commitment to Iroquois as an additional assured and Iroquois intends to act accordingly. Please immediately advise if we are mistaken.

         Very truly yours,
         HEALY & BAILLIE, LLP
         By
         Richard V. Singleton II

RVS/nb

271025.1

ARS-TX 0089

# .HEALY & BAILLIE, LLP

61 BROADWAY

NEW YORK, NY 10006-2701

TELEPHONE: (212) 943-3980
FAX: (212) 425-0131
www.healy.com

RICHARD V. SINGLETON II
RSINGLETON@HEALY.COM

DIRECT DIAL (212) 709-9264
DIRECT FAX (212) 487-0364

October 25, 2004

By Fax: (832) 476-6590

Aon Risk Services
1330 Post Oak Blvd, Suite 900
Houston, TX 77056
Attn: James Montano/Karen Cooper

> Re:  In the Matter of Horizon Vessels, Inc., etc. et al.
> C.A. No. H-03-3280
> In the United States District Court for the Southern District of
> Texas
> Our Ref.: 100705.0003

Dear Sirs:

We are attorneys for Iroquois Gas Transmissions System LP. ("Iroquois"). As you are aware, Iroquois are parties to the above captioned limitation of liability action, which was commenced by Horizon Offshore Contractors, Inc. ("Horizon") in response to claims by the New York Power Authority ("NYPA") and others that on February 27, 2003 Horizon damaged NYPA's Y-49 cable crossing in Long Island Sound. The incident occurred while Horizon was acting as Iroquois' contractor for the construction of a natural gas pipeline that was to be laid over NYPA's cable. NYPA's claim is in excess of $18,000,000.

NYPA and LIPA have now filed a cross-claim against Iroquois in Horizon's limitation action seeking recovery for their full damages resulting from the incident. A copy of the cross-claim is attached. NYPA and its insurer have also recently filed a motion for partial summary judgment against Iroquois.

Iroquois is an additional insured under Horizon's various insurance policies in effect at the time of the incident and covering Horizon's liabilities in this matter. A copy of Aon's letter of July 17, 2003 confirming coverage on behalf of Iroquois is attached for ease of reference. The law is well established that, as an additional insured, Iroquois is entitled to immediate coverage by Horizon's insurers for its attorneys' fees and costs

269955.1

HEALY & BAILLIE, LLP • CONNECTICUT • TELEPHONE: (203) 354-1360 • FAX: (203) 354-1363
HEALY & BAILLIE • NEW JERSEY • TELEPHONE: (973) 912-8955 • FAX: (973) 912-9767
HEALY & BAILLIE • HONG KONG • TELEPHONE: (852) 2537-8628 • FAX: (852) 2521-9072

ARS-TX 0090

Page 2
October 25, 2004

incurred in the defense of this matter irrespective of the insurers' position with regard to ultimate liability.

We therefore renew Iroquois' demand that Horizon's insurers immediately assume Iroquois' defense in connection with the Y49 Cable Incident, including covering Iroquois' attorneys' fees and costs incurred to date and on a going-forward basis. Please confirm coverage as soon as possible and advise to whom our/Iroquois' statements for legal services should be addressed. A prompt response is necessary due to NYPA's pending motion for partial summary judgment. If we do not have a response within two weeks of the date of this letter, Iroquois will have no choice but to petition the appropriate court for a declaration of underwriters' obligation to cover.

Very truly yours,

HEALY & BAILLIE, LLP

By

Richard V. Singleton II

RVS/BT

cc:    Mr. Charles A. Cerise, Jr.
       Mr. Edwin C. Lazier
       Adams and Reese LLP
       One Shell Square
       701 Poydras, Suite 4500
       New Orleans, LA 70139

       Mr. Daryl G. Dursum
       Adams and Reese LLP
       4400 One Houston Center
       1221 McKinney
       Houston, TX 77010

269955.i

ARS-TX 0091

1

1

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

3

------------------------------------------------

IROQUOIS GAS TRANSMISSION SYSTEM L.P.,

4

5

                    Plaintiff,

6

          -against-

ASSOCIATED ELECTRIC & GAS INSURANCE

7

SERVICES LTD., Hamilton, Bermuda; CERTAIN
UNDERWRITERS AT LLOYD'S; AON RISK SERVICES

8

OF TEXAS, INC.; and AMERICAN HOME
ASSURANCE CO.,

9

                    Defendants.

10

05 CV 2149 (JSR)

11

12

------------------------------------------------

                    August 3, 2005

13

                    10:16 a.m.

14

15

16

17

          DEPOSITION of MICHELLE L.

18

WIELER, taken by Defendants, pursuant to

19

Notice, held at the offices of HEALY &

20

BAILLIE, LLP, 61 Broadway, New York, New

21

York before Wayne Hock, a Notary Public of

22

the State of New York.

23

24

25

21

1                        M. L. Wieler

2        A.    I believe Cal Dive was somehow

3    involved.

4        Q.    But my question --

5        A.    But it was not the incident that

6    you're referring to, that November of

7    2002.

8        Q.    My question to you is when you

9    realized that the hull and machinery

10   policy had collision and liability

11   features to it, did you undertake to

12   notify those underwriters of the

13   February 27, 2003 incident?

14       A.    We did not directly because we

15   found out from Willy Farmer, Horizon's

16   broker at the time, he sent over a letter

17   from Aon showing that there was

18   notification to the hull underwriter.

19       Q.    Do you have copies of that

20   correspondence?

21       A.    We do.

22       Q.    This is a letter from Willy

23   Farmer?

24       A.    It's not a letter from Willy

25   Farmer, it's Aon's notification sheet to



*Natural Resources*
*Group*

June 7, 2004

Underwriters at Lloyd's and Insurance
   Companies
   c/o JLT Risk Solutions Limited
Continental Insurance Company via Marine
   Office of America/CNA (M4005714)
American Employers Insurance Company
Fireman's Fund Insurance Company
Markel Insurance Company
Royal Insurance Company via Gulf Coast
   Marine Inc. (014857)

                Re.:   Horizon Offshore Contractors, Inc.
                           D/B GULF HORIZON
                           Alleged damage to Subsea Power Cable
                           February 27, 2003
                           Our File:  03-M5058-A

Gentlemen:

Further to our Report of Loss dated May 17, 2004 enclosed are various documents, reports and items of correspondence relative to the subject casualty.

Please advise if you have any questions, comments, advice or instructions regarding this matter.

                Very truly yours,

                **Aon Natural Resources**

                James I. Montano

Enclosures



*Natural Resources*
*Group*

June 24, 2004

Underwriters at Lloyd's and Insurance Companies
  c/o JLT Risk Solutions Limited
Continental Insurance Company via Marine
  Office of America/CNA (M4005714)
American Employers Insurance Company
Fireman's Fund Insurance Company
Markel Insurance Company
Royal Insurance Company via Gulf Coast
  Marine Inc. (014857)

Re.:    Horizon Offshore Contractors, Inc.
        D/B GULF HORIZON
        Alleged damage to Subsea Power Cable
        February 27, 2003
        Our File:  03-M5058-A

Gentlemen:

Further to our letter of June 7, 2004 attached is handling attorneys' latest report with respect
to the subject casualty.  As we expect future reports will also be received electronically, we
request that each of you provide us with your email address and your respective file numbers.

Please make the attached report a part of your respective files.  Should there be any questions,
comments, advice or instructions regarding this matter, please advise.

                            Very truly yours,

                            Aon Natural Resources

                            James I. Montano

Attachment