DONOVAN PARRY McDERMOTT & RADZIK
Edward C. Radzik (ER-2473)
Carolyn Elizabeth Meers (CM-1464)
Attorneys for Defendants, Lloyd's Underwriters
Wall Street Plaza
88 Pine Street - 21st Floor
New York, NY 10005-1801
(212) 376-6400

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

IROQUOIS GAS TRANSMISSION                        **ECF CASE**
SYSTEM L.P.,

                              Plaintiff,          05 CV 2149 (JSR)

              - against -

ASSOCIATED ELECTRIC & GAS
INSURANCE SERVICES LTD.,
Hamilton, Bermuda; CERTAIN
UNDERWRITERS AT LLOYD'S; AON
RISK SERVICES OF TEXAS, INC.; and
AMERICAN HOME ASSURANCE CO.,

                              Defendants.
-----------------------------------------------------------X


**MEMORANDUM OF LAW IN OPPOSITION TO
IROQUOIS' MOTION FOR SUMMARY JUDGMENT**

## Table of Contents

**Table of Contents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **i**

**Table of Authorities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **ii**

**Preliminary Statement** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**Statement of Facts** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**Argument** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

**I.**   **Iroquois' Motion Should be Stricken to the Extent that it
Seeks Relief in Violation of the Stay in Place in this Action** . . . . . . . . . . . . . . . . . . **5**

**II.**   **New York Law Applies and Coverage is Precluded by Iroquois'
Failure to Notify Lloyd's Underwriters of the Incident** . . . . . . . . . . . . . . . . . . . . . **6**

**III.**   **Coverage and/or Additional Insured Status Cannot be Determined
at this Time** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

    **a.**   **Iroquois is not Entitled to Coverage Under Clause "a"** . . . . . . . . . . . . . . . . **9**

    **b.**   **Iroquois' Reliance of *Marine Transit* is Misplaced** . . . . . . . . . . . . . . . . . . **12**

    **c.**   **The Cross Liability Clause Does not Apply** . . . . . . . . . . . . . . . . . . . . . . . . . **14**

    **d.**   **Iroquois is not Entitled to Coverage Under Clause "b"** . . . . . . . . . . . . . . . **15**

    **e.**   **Iroquois' Reliance on *Stuyvesant* is Misplaced** . . . . . . . . . . . . . . . . . . . . . **17**

    **f.**   **Iroquois' Attempt to define the Scope of Iroquois' Coverage
Illustrates a Fundamental Misunderstanding of the
Type of Coverage Available Under the Lloyd's Policy** . . . . . . . . . . . . . . . . . **19**

**IV.**   **Iroquois is Already Receiving a Defense and Therefore Lacks Standing** . . . . . . . . **19**

**V.**   **Lloyd's Underwriters Have Not Acted in Bad Faith** . . . . . . . . . . . . . . . . . . . . . . **20**

**Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

## Table of Authorities

**Federal Cases**:

*Agway, Inc. v. Travelers Indem. Co.*, 1993 U.S. Dist. LEXIS (S.D.N.Y. 1993) . . . . . . . . . . . . . 7

*Bee Line Transp. Co. v. Conn. Fire Ins. Co.*, 76 F.2d 759 (2d Cir. 1935) . . . . . . . . . . . . . . . . 13

*Bender Shipbuilding & Repair Co. v. Brasileiro*, 874 F.2d 1551 (11th Cir. 1989) . . . . . . 9,10,11

*Diamond State Tel. Co. v. Atlantic Refining Co.*, 205 F.2d 402 (3d Cir. 1953) . . . . . . . . . . . . 10

*Dow Chem Co. v. Tug Thomas Allen*, 349 F.Supp. 1354 (E.D.N.Y. 1972) . . . . . . . . . . . . . . . . 10

*The Fanny D*, 112 F.2d 347 (5th Cir. 1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gulf Mississippi Marine Corp. v. Cont. Ins. Co.*, 566 F.2d 956 (5th Cir. 1978) . . . . . . . . . . . . 16

*Harbor Towing Corp. v. Atlantic Mut. Ins. Co.*, 189 F.2d 409 (4th Cir. 1951) . . . . . . . . . . . . . 11

*The Java*, 81 U.S. 189 (1872) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lanasse v. Travelers Ins. Co.*, 450 F.2d 580 (5th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Louisiana v. Louisiana Towing Co.*, 692 F.2d 18 (5th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . 8,9,10

*Marine Transit Corp. v. N.W. Fire & Marine Ins.*, 67 F.2d 544 (2d Cir. 1933) . . . . . . . . . . . . . 13

*Reliance Ins. Co. v. Keystone Shipping Co.*, 102 F. Supp. 2d 181 (S.D.N.Y. 2000) . . . . . . . . . . 7

*Royal Ins. Co. v. Commercial Underwriters Ins. Co.* 2004 U.S. Dist.
    LEXIS 23275 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Royal Ins. Co. v. Sportswear Group*, 85 F. Supp. 2d 275 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . 7

*Stuyvesant Ins. Co. v. Nardelli*, 286 F.2d 600 (5th Cir. 1961) . . . . . . . . . . . . . . . . . . . 8,16,17,18

*Wedlock v. Gulf Mississippi Marine Corp.*, 554 F.2d 240 (5th Cir. 1977) . . . . . . . . . . . . . . . . 10

**Texas Statute:**

TEX. INS. CODE ART. 21.42 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Secondary Sources:**

ALEX L. PARKS, THE LAW AND PRACTICE OF MARINE INSURANCE AND AVERAGE,
     VO. II (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

### Preliminary Statement

Defendants, Underwriters at Lloyd's and Certain Insurers subscribing to policy number LE0280715 ("Lloyd's Underwriters"; the "Lloyd's Policy"), submit this memorandum of law in opposition to Plaintiff's Motion for Summary Judgment. Plaintiff's, Iroquois Gas Transmission Systems, L.P. ("Iroquois"), motion should be denied because 1) Iroquois' failure to notify Lloyd's Underwriters of the Incident giving rise to its claim vitiates any coverage which would otherwise be available under the Lloyd's Policy, 2) Iroquois' motion seeks relief in violation of the stay in place in this action, 3) Iroquois' status as an additional insured cannot be determined at this time, and 4) Iroquois is not contesting, or seeking to limit, the liability of the vessel, and, even if it were, Iroquois did not obtain written permission from Lloyd's Underwriters to participate in the Texas Limitation Action. Iroquois has no legitimate basis for seeking affirmative relief and money damages.

### Statement of Facts

Lloyd's Underwriters' Rule 56.1 Statement, Affidavit of Edward C. Radzik dated August 26, 2005, together with Exhibits "A" through "FF", and Opposition to Iroquois' Rule 56.1 Statement are incorporated by reference. For ease of reference, the following is a recitation of the relevant portions of the Lloyd's Policy and the Horizon/Iroquois Construction Contract.

**I.      Relevant Provisions of the Lloyd's Policy**

Under the "Conditions" section of the Lloyd's Policy, the following language from the American Institute Tug Form (August 1, 1976) is incorporated:

COLLISION AND TOWER"S LIABILITY

And it is further agreed that:

(a)      if the Vessel hereby insured shall come into collision [or contact] with any other vessel, craft or structure, floating or otherwise

1

(including her tow); or shall strand her to or shall cause her to come into collision with any other vessel, craft or structure, floating or otherwise, or shall cause any other loss or damage to her tow or to the freight thereof or to the property on board, and the Assured, or the Surety, *in consequence of the insured Vessel being at fault, shall become liable to pay and shall pay* by way of damages to any other person or persons any sum or sums, we the Underwriters, will pay the Assured or the Surety, whichever shall have paid, such proportion of such sum or sums so paid as our subscriptions hereto bear to the value of the Vessel hereby insured, provided always that our liability in respect of any one such casualty shall not exceed our proportionate part of the value of the Vessel hereby insured;

(b)     in cases where *the liability of the Vessel has been contested or proceedings have been taken to limit liability with the consent in writing, of a majority (in amount) of the Underwriters on the hull and machinery*, we will also pay a like proportion of the costs which the Assured shall thereby incur or be compelled to pay.

Radzik Aff., Ex. "E" and "G" (emphasis added).

Iroquois claims coverage under both of these provisions asserting that they cover Iroquois as an additional insured pursuant to the following clause of the Lloyd's Policy:

It is understood and agreed that *where required by contract*, bid work order, *Additional Assured* and/or Waivers of Rights of Subrogation *are automatically included hereunder*, subject further to Notice Clauses as may be required by written contract only and that coverage provided hereunder shall be primary in respect of any coverage carried by said additional assureds where required by contract.

Radzik Aff., Ex. "E" (emphasis added).

## II.    Relevant Portions of the Iroquois/Horizon Construction Contract

The Construction Contract between Iroquois and Horizon, governing the terms of the contracting agreement for the Eastchester Extension project in New York, contains a "Schedule of Insurance Requirements," which required Horizon to maintain ten (10) different types of policies to cover the project and name Iroquois as an additional insured. Among the ten (10) types of insurance required was the Hull and Machinery Policy (Lloyd's Policy). The Insurance Requirement section states in part:

2

    **1.2**    **Insurance**. [Horizon] and [Iroquois] shall furnish and maintain insurance in accordance with this Schedule of Insurance requirements.

         . . .

    **2.1**    **Contractor's Insurance**. [Horizon] shall prior to commencing the Work furnish and maintain, at its own expense the following insurance:

         . . .

        2.1.7.  **Marine Hull and Machinery Insurance**, if watercraft are involved, ***including collision liability***, with sister ship clause unamended, and with limits of liability at least equal to the full value of each water craft used in connection with the performance of the Work required under this contract, and ***with navigational limitations adequate for the Contractor to perform or cause to perform the specified Work***.  Where vessels engage in towing operations, said insurance shall include full towers liability up to hull value with the sister ship clause unamended.

Radzik Aff., Ex. "H".

    Additionally, under the "Schedule of Insurance Requirements" Iroquois and Horizon agreed to the following "Additional Terms":

    **Additional Terms.**  All insurance policies provided by the Contractor and Subcontractors shall be endorsed to provide that:

  .1    [Iroquois] . . . shall be included as additional insured . . . except Worker's Compensation insurance.

  .2    [Horizon] will waive insurers rights of subrogation and the insurers will include blanket waivers of subrogation on all policies and the insurers will have no right of recovery or subrogation against [Iroquois] . . . and [Horizon's] carrier shall be primarily liable for any and all losses covered by the above described insurance for the risks assumed by [Horizon] herein; and

  .3    in the event of one insured incurring liability to any other insured, the policy or policies shall cover the insured against whom claim is or may be made, in the same manner as if separate policies had been issued to each insured, except that the limits of insurance shall not be increased thereby.

  .4    any requirement to name [Iroquois] . . . as an additional insured or waive subrogation on any of [Horizon's] policies or that [Horizon's] policies shall be primary to those of [Iroquois] and its parent, partner, divisional, affiliate or subsidiary companies' policies shall be excess and non-contributing to any other policies of [Horizon] shall be limited to those risks covered by [Horizon's] insurances for which [Horizon] has agreed under the terms of the contract to assume responsibility or indemnify [Iroquois] . . . .

Radzik Aff., Ex. "H".

## **Argument**

I.    **Iroquois' Motion Should be Stricken to the Extent that it Seeks Relief in Violation of the Stay in Place in This Action**

On July 22, 2005, all of the parties to this action appeared before the Honorable Jed S. Rakoff for a hearing on Defendant, Associated Electric & Gas Insurance's (AEGIS), motion to stay this action pending London arbitration. Radzik Aff., Ex. "A". During the hearing, this Court stayed the entire action as to all parties except for two (2) depositions and Lloyd's Underwriters' and Iroquois' respective motions for summary judgment on the issue of late notice. Radzik Aff., Ex. "A". Iroquois now seeks affirmative relief from Lloyd's Underwriters beyond the issue of late notice. Thus, Iroquois' motion is improper to the extent it violates the stay entered by the Court.

The transcript from the July 22nd hearing illustrates that the Court's intention was to limit the motions, to be submitted by Iroquois and Lloyd's Underwriters, to the issue of late notice. From the outset, the Court stated that if Lloyd's Underwriters' motion were granted, the case as against Lloyd's would be dismissed, and, in the alternative, if the motion were denied, the claim against Lloyd's would be stayed with the rest of the action. Radzik Aff., Ex. "A", pp. 5 and 8. These statements indicate the Court's intention to allow the parties to address only the issue of notice. Allowing coverage issues to proceed before this Court, while the arbitration in London is pending, would create a risk of inconsistent decisions with respect to the various covearges sought by Iroquois. Further, when Plaintiff's counsel stated Iroquois' intention to file a cross-motion, he stated that it would be "on the late notice defense." Radzik Aff., Ex. "A", p. 8. The purpose of allowing the two (2) summary judgment motions to proceed while the remainder of the case was stayed was to promote efficiency. If Lloyd's Underwriters' motion is granted Iroquois' claims against Lloyd's Underwriters will be dismissed. Radzik Aff., Ex. "A", p. 9.

4

Thus, the Court only sought to determine whether Lloyd's Underwriters could be released from the action before the stay took full effect.

In correspondence between counsel for Iroquois and counsel for Lloyd's Underwriters, following submission of Iroquois' Motion for Summary Judgment, Iroquois asserted that its motion was allowed because the Court stated that "[a]ny cross-summary judgment motion against Lloyd's by Iroquois will go forward." Radzik Aff., Ex. "C". This statement, taken in isolation and out of context, ignores the clear intention of the Court to limit discovery and summary judgment motions to the issue of late notice.

Lastly, the intention of the Court to limit the summary judgment motions is illuminated by the fact that the Court granted AON's request that it only be required to produce one (1) witness for deposition. Originally, AON was required to produce two (2) fact witnesses, one on the issue of notice and the other regarding the placement of the Lloyd's Policy. Near the end of the conference, counsel for AON, requested that AON only be required to produce one (1) witness on the issue of notice. Radzik Aff., Ex. "A", p. 15. The Court agreed. Radzik Aff., Ex. "A", p. 15. The Court's assent to limit discovery to the issue of late notice further underscores the fact that Iroquois' motion is overreaching.

The Court issued a stay in this action with the limited exception of two (2) depositions and two (2) motions for summary judgment; both on the issue of late notice. Thus, Iroquois' Motion for Summary Judgment is improper and should be stricken to the extent that it seeks a determination of coverage and money damages.[1]

---

[1]    In correspondence between the parties, Iroquois suggests that Lloyd's Underwriters' Motion is untimely, as Lloyd's did not file written notice of its intention to file its motion one week prior to the August 26, 2005 filing deadline. Radzik Aff., Ex. "C". Any suggestion that Lloyd's Underwriters' Motion is untimely is wholly without merit. The Court and all parties to this action were aware of Lloyd's Underwriters intention to file this motion and the August 26, 2005 filing deadline was discussed during the July 22, 2005 hearing. Radzik Aff., Ex. "A". Thus, further written notice was unnecessary and Lloyd's Underwriters' Motion for Summary Judgment was filed on August 26, 2005 in compliance with the April 15, 2005 scheduling order.

**II.    New York Law Applies and Coverage is Precluded By Iroquois' Failure to Notify Lloyd's Underwriters of the Incident**

Lloyd's Underwriters incorporate by reference all arguments presented in their Memorandum of Law in Support of Motion for Summary Judgment for Lack of Notice. Any coverage that would otherwise be available under the Lloyd's Policy was forfeited by virtue of Iroquois' failure to notify Lloyd's Underwriters of the February 27, 2003 Incident.

Iroquois' argument that Texas law applies to the analysis of cover under the Lloyd's Policy is without merit. Iroquois completely ignores the significance of the Construction Contract in the determining the applicable state law. Absent the Construction Contract, Iroquois would have no basis for seeking coverage under the Lloyd's Policy. Thus, the New York choice of law and forum selection clause of the Construction Contract, which pertains to any dispute arising under or in connection with the Contract, must be enforced. Radzik Aff., Ex. "H", p. 16. Further, Iroquois ignores the fact that with respect to Iroquois, the primary location of any risk covered by Horizon's policies was New York, the location of the Eastchester Extension project.[2] Iroquois' statement that "the event or events giving rise to an insurance claim could have occurred anywhere" is unfounded. Iroquois Memo, p. 10. Any coverage applicable to Iroquois pursuant to the Construction Contract was not likely to occur anywhere other than New York.

Iroquois' reliance on the boilerplate language contained on the cover sheet of AON's Confirmation of Coverage, issued to Horizon by AON, and certain provisions of the Texas Insurance Code, is equally misplaced. First, the language on the cover sheet was added to the policy by Horizon's broker, AON, and was not subject to the approval of, or actually approved

---

[2]    The Marine Hull and Machinery provision in the Construction Contract required "navigational limitations adequate for [Horizon] to perform or cause to perform the specified Work." Radzik Aff., Ex. "H". The "specified Work" was the Eastchester Extension project located entirely within New York State. Thus, given that coverage is only extended to Iroquois as "required by contract" and the Construction Contract only required navigational limitations adequate to perform the Eastchester Extension, as to Iroquois, cover only extends to the location of the project, i.e. New York.

by, Lloyd's Underwriters. Radzik Aff., Ex. "I". The language has no bearing on the interpretation of the policy, including, what state's law should apply to its interpretation. This is further illustrated by the second page of the cover sheet, which specifically states that "[t]his notice is for information only and does not become a part or condition of the attached document." Radzik Aff., Ex. "I". The cover pages are not part of the policy, thus, they should not be reviewed in determining coverage or choice of law. If anything, the first page of the cover sheet would suggest that Texas law would *not* govern the policy as it discloses the fact that Lloyd's is a foreign insurer not regulated by the Texas Insurance Board. *See Reliance Ins. Co. v. Keystone Shipping Co.*, 102 F. Supp. 2d 181, 187 (S.D.N.Y. 2000)(the place of business of the parties is a factor in determining what state's law to apply). Radzik Aff., Ex. "I", IRO/AE 00300-00301.

Second, the Texas Insurance Code provision cited by Iroquois, TEX. INS. CODE ART. 21.42, is a choice of law statute only applicable to a Texas choice of law analysis. Texas choice of law rules are irrelevant here as this Court must apply maritime and/or New York choice of law rules. *See Royal Ins. Co. v. Sportswear Group*, 85 F. Supp. 2d 275 (S.D.N.Y. 2000); *Agway, Inc. v. Travelers Indem. Co.*, 1993 U.S. Dist. LEXIS (S.D.N.Y. 1993). Iroquois cites no case to support application of a Texas choice of law statute in a maritime or New York choice of law analysis. Since Iroquois chose a New York forum to adjudicate this dispute it cannot seek to rely on inapplicable choice of law rules from another forum. Iroquois' argument that Texas law should govern is not persuasive and not supported by the applicable choice of law precedent.

Regardless of whether Iroquois is an additional insured or entitled to any coverage under the Lloyd's Policy, its claim must be construed according to New York law and be precluded as

7

a result of its unexcused failure to notify Lloyd's Underwriters of the Incident giving rise to this claim.

## III.    Coverage and/or Additional Insured Status Cannot be Determined at this Time

Notwithstanding the fact that Iroquois' claim is precluded by its failure to notify Lloyd's Underwriters of the underlying Incident, and that Iroquois' motion violates that stay in place in this action, Iroquois is not entitled to any cover under the Lloyd's Policy. Lloyd's Underwriters do not dispute that the Lloyd's Policy permits parties such as Iroquois to be designated as additional insureds. However, it is Lloyd's position, that any coverage that would be available to Iroquois is limited. Moreover, because of the stay at place in this litigation, and because there has been no adjudication of fault in the Texas Limitation Action, Iroquois' quest for a determination of coverage under the Lloyd's Policy is not ripe for determination.

Iroquois contends that the Lloyd's Policy sets forth two (2) independent obligations to indemnify its insureds when collision liability arises. Iroquois Memo, p. 11. *See Stuyvesant Ins. Co. v. Nardelli*, 286 F.2d 600 (5th Cir. 1961). These provisions are set forth in clause "a" and "b" of the Collision and Tower's Liability section of the of the Lloyd's Policy. Radzik Aff., Ex. "G". While, Iroquois is correct that two (2) types of indemnity are provided for in the Collision and Tower's Liability section of the Lloyd's Policy, each provision must be reviewed in light of the other and in the context of the Policy as a whole. "An insurance policy must be construed in its entirety, and conditions attached cannot be interpreted in isolation so as to render other provisions of the policy ineffective." *Louisiana v. Louisiana Towing Co.*, 692 F.2d 18, 20 (5th Cir. 1982). Similarly, the fact that Iroquois may be an additional insured because it is "required by contract" cannot change the coverage afforded under the Lloyd's Policy, which is limited to liability "in consequence of the insured Vessel being at fault." *See id.*

It appears that Iroquois is only seeking coverage only under clause "b." In order to understand the context in which coverage could arise under clause "b", and to illustrate why Iroquois' attempt to obtain coverage pursuant to clause "b" is misplaced, coverage under clause "a" must be reviewed.

**a.    Iroquois is Not Entitled to Coverage Under Clause "a"**

This significant language in clause "a" of the Collision and Tower's Liability clause, commonly referred to as a "running down" clause, contained in the American Institute Tug Form (August 1, 1976), and incorporated by the Lloyd's Policy, is that coverage is limited to liability arising "in consequence of the insured Vessel being at fault." Radzik Aff., Ex. "6". There are no cases in New York interpreting the Collision and Tower's Liability clause, generally, or as it specifically applies to claims of additional insureds. Various other federal courts have, however, addressed the clause and provide guidance as to its application with respect to additional insureds.

"The Collision Liability clause's primary purpose is to protect a vessel owner from liability to owners of other vessels and property which the owner's vessel might damage." *Bender Shipbuilding & Repair Co. v. Brasileiro*, 874 F.2d 1551 (11th Cir. 1989). "The history of the Collision Liability clause demonstrates that the clause is intended to indemnify a shipowner for damage done to vessels which the insured's vessel has damaged." *Id.* The type of Collision Liability coverage included in hull policies is narrow and must be construed in the context in which it is provided.

The most recent, and relevant case interpreting the "at fault" language of the Collision Liability clause, *Louisiana v. Louisiana Towing Co.*, 692 F.2d 18 (5th Cir. 1982), was not cited

by Iroquois.[3]  In interpreting the same clause at issue in this case, clause "a", the Fifth Circuit stated that "[t]he emphasis in this collision and tower's liability clause, of course, is upon the fault of the vessel which is insured under the policy." *Id.* at 19.  Because fault of the vessel is the focus of coverage, any party claiming coverage as an additional insured is only covered if it becomes liable as a result of an insured vessel being at fault.[4]  *Id.*  Additional insureds are not protected against loss resulting from anything other than the negligence of the insured vessel. *See id.* at 20.  Thus, the independent negligence of any additional insured will not be covered unless said negligence can be ascribed to the insured vessel. *See id.*

Courts interpreting similar Collision Liability clauses have reached different conclusions when the clause did not include the phrase "in consequence of the insured Vessel being at fault." *See e.g., The Fanny D*, 112 F.2d 347 (5th Cir. 1940).  In *The Fanny D*, the owner of an insured barge was covered under the collision liability clause for his own personal negligence which caused a collision and liability to a third party, even though the insured barge was not found to be at fault.  *Id.*  This conclusion was predicated on the fact that the policy did not have "at fault" language to limit its coverage.  *Id.*  Thus, in cases, such as here, where the limiting "at fault" language is included, even the owner of the insured vessel, i.e. Horizon, could not recover for its personal negligence. *See id.*

Iroquois cannot recover for damage arising from its own negligence, because coverage is limited to the negligence or fault of the vessel.  If Horizon would not be covered for its own

---

[3]    There is another line of cases interpreting similar collision liability clauses, containing "as owner" instead of "at fault" language, which also supports Lloyd's Underwriters' position that Iroquois is not entitled to recover under the Lloyd's Policy.  *See, e.g., Wedlock v. Gulf Mississippi Marine Corp.*, 554 F.2d 240 (5th Cir. 1977); *Lanasse v. Travelers Ins. Co.*, 450 F.2d 580 (5th Cir. 1971); *Dow Chem Co. v. Tug Thomas Allen*, 349 F.Supp. 1354 (E.D.N.Y. 1972).  While not exactly on point, these cases also acknowledge the importance of liability arising out of the fault of the vessel.

[4]    A vessel is not automatically at fault merely because it collides with another vessel or object. *See e.g. The Java*, 81 U.S. 189 (1872); *Diamond State Tel. Co. v. Atlantic Refining Co.*, 205 F.2d 402 (3d Cir. 1953).

negligence unless it is attributable to the vessel, it is axiomatic that Iroquois would not. *See id.*
Iroquois as an additional insured is only covered to the same extent Horizon would be, no
greater. The "at fault" language added to the policy in the current form was inserted to clarify
any doubt regarding the parties' intent regarding the limited extent of coverage. Notwithstanding
the fact that the clause at issue is distinguishable from that in the *Fanny D*, the Fourth Circuit
rejected the holding in *Fanny D* and found that even if there were no "at fault" language, a
finding that the vessel is at fault is an implicit requirement for collision liability coverage.
*Harbor Towing Corp. v. Atlantic Mut. Ins. Co.*, 189 F.2d 409 (4th Cir. 1951).

   Iroquois attempts to establish that it is an additional insured for all claims asserted by
NYPA. Iroquois' arguments in this regard are misguided because coverage under the Policy
cannot be interpreted in this manner. There can be no determination that Iroquois is covered for
all damages arising out of a collision whether it be in tort or contract or otherwise. Coverage is
predicated upon the existence of a specific occurrence, in particular, a finding that the vessel is at
fault.[5] Thus, until, and unless, a court finds that the GULF HORIZON was at fault, this Court
cannot determine whether any party claiming coverage under the policy is entitled to
indemnification.

   It is undisputed that a determination of fault has not been made in the Texas Limitation
Action. Radzik Aff., Ex. "Z". Additionally, the parties cannot anticipate how fault will be
allocated in the Limitation Action. Thus, any discussion of coverage under clause "a" is
premature and advisory at this time. Findings with respect to Iroquois' status as an insured, or
the extent to which Iroquois is entitled to cover under the Lloyd's Policy are not warranted.

---

[5]   Even if the insured vessel is found to be at fault, there are types of damages that that are still not
recoverable. *See e.g., Bender Shipbuilding & Repair Co. v. Brasileiro*, 874 F.2d 1551 (11th Cir. 1989)(liquidated
damages not recoverable if they arise out of a contract not incorporated by the policy).

There are, at least, four (4) possibilities of how the Court in the Texas Limitation Action could allocate liability for NYPA's alleged damages. First, the Texas district court could find Horizon, as the owner/operator of the GULF HORIZON, responsible for the damage. It is also equally plausible that Iroquois could be found responsible, as it is alleged that Iroquois provided charts to identify marking the location of the power cables. There has been no determination whether the surveys provided by Iroquois were accurate and/or whether the accuracy of the information on those charts was the proximate cause of the damage. Likewise, Thales, a subcontractor of Horizon that had previously worked for Iroquois, may have held some responsibility for charting the location of the underwater power cables and, therefore, could be held responsible for the loss. Further, is it is possible that NYPA itself will be found responsible for providing inaccurate information about the location of the power cables. Lastly, the possibility cannot be ruled out, that the damage did not result from a collision with the anchor of the GULF HORIZON, but from some other, and completely unrelated, cause.

Of these various possibilities, coverage will only extend to Iroquois under the Lloyd's Policy if the vessel is determined to be at fault and Iroquois pays damages as a result. Regardless of the fact that Iroquois' claim is premature, it is unlikely that this situation will ever arise. In the Texas Limitation Action, NYPA has asserted claims against both Iroquois and Horizon. Consequently, if Horizon is found liable for the alleged damages, NYPA will recover directly against Horizon, not Iroquois. Thus, the Court should have no hesitation in dismissing Iroquois' claim as premature, improper, precluded by late notice, and sought in violation of the Court's stay.

### b.     Iroquois' Reliance on *Marine Transit* is Misplaced

Iroquois' reliance upon the Second Circuit's 1933 decision in *Marine Transit Corp. v. N.W. Fire & Marine Ins.*, 67 F.2d 544 (2d Cir. 1933) and its progeny[6], is misplaced. *Marine Transit* is distinguishable from the case at bar for several important reasons. First, the party seeking coverage in *Marine Transit* was the actual owner/operator of the vessel. Here, Iroquois is not the owner of the GULF HORIZON, nor was Iroquois actively engaged in the navigation of the vessel at the time of the collision. *Marine Transit*, 67 F.2d at 544. Second, in *Marine Transit,* contrary to here, there was an actual adjudication of fault. *Id.* The district court found the ship owner liable for causing the collision. *Id.* Here, there has been no adjudication that Iroquois (or Horizon) was at fault in respect of NYPA's alleged cable damage. Third, the wording of the Collision and Towers Liability clause in *Marine Transport* differed from the current form incorporated by the Lloyd's Policy. The earlier version of the clause did not contain the phrase "in consequence of the insured Vessel being at fault." One prominent maritime commentator has concluded that the inclusion of the "at fault" language limits underwriters' liability in collision cases to the insured's (or additional insured's) tort liability in respect of the operation of the vessel. ALEX L. PARKS, THE LAW AND PRACTICE OF MARINE INSURANCE AND AVERAGE, Vo. II, 702-3 (1987). Thus, *Marine Transit* does not support Iroquois' claim for coverage under Lloyd's Collision and Tower's Liability provision.

---

[6]     *Bee Line Transp. Co. v. Conn. Fire Ins. Co.*, 76 F.2d 759 (2d Cir. 1935), is also cited by Iroquois and improperly relied upon. The "running down" clause in *Bee Line* is similarly distinguishable, as it does not contain the language "in consequence of the insured Vessel being at fault." *Bee Line*, 76 F.2d at 760. Notwithstanding, the language in both *Bee Line* and *Marine Transit* actually support Lloyd's Underwriters' argument that there is no coverage under the Lloyd's Policy that would extend to Iroquois in connection with this Incident. First, because no determination of liability has been made, nor payment of same, but more importantly, because legal liability arises under this type of policy "from the occurrence of a named contingency." *Id.* Here, the named contingency is "the insured Vessel being at fault" and Iroquois being held liability for damages resulting from that fault. *See id.* Since this contingency has not occurred, there is no coverage.

## c.    The Cross Liability Clause Does Not Apply

Iroquois' reliance on the Cross Liability clause is misplaced for two reasons: first, because the clause is not "required by contract," and second, because the clause is not applicable to the present circumstance.

Iroquois contends, without support, that the Cross Liability clause is "required by contract" because the Additional Terms section of the Construction Contract "clearly required Horizon to maintain insurance for the benefit of Iroquois for all covered risks arising out of the Construction Contract." Iroquois Memo, p. 14. How this translates to the Cross-Liability clause being required by contract, escapes Lloyd's Underwriters. Given that Horizon maintained ten (10) different policies, as required by the Construction Contract, and that Horizon was required to procure coverage for all potential risks, does not translate to a requirement that every risk that could potentially arise be covered by the Hull Policy alone. If anything, the language emphasized by Iroquois has nothing to do with Cross Liability and specifically limits Iroquois' coverage under all of Horizons policies to liabilities "which [Horizon] has agreed under the terms of the contract to assume responsibility or indemnify [Iroquois]." Radzik Aff., Ex. "H", ¶ 2.4.4. Since Horizon has only assumed responsibility under the Construction Contract for its own negligence[7], Horizon's policies are limited to coverage for the negligence of Horizon and its covered vessels, and do not extend to Iroquois' negligence as the owner of the Pipeline.

Furthermore, the Cross Liability clause is inapplicable to Iroquois' claim. Iroquois indisputably is not the owner of the NYPA power cable and, thus, has suffered no damage to its

---

[7]    The indemnity provisions in the Construction Contract are set out in sections 11.1.2 through 11.1.5. Radzik Aff., Ex. "H". The provisions essentially allocate liability as it would be allocated by operation of law, providing that each party will be responsible for its own negligence and that in the event that liability arises as a result of both parties' negligence "each party shall be liable to the extent or degree of their respective negligence, as determined by mutual agreement of both parties or in the absence thereof, as determined by adjudication of comparative negligence." Radzik Aff., Ex. "H", ¶ 11.1.5.

own property.  The clause, even if incorporated, contemplates a situation where one insured asserts a claim against another insured for personal injury or property damage.  For example, if two vessels, operated by different parties yet covered by the same hull and machinery policy, came into collision with one another causing one or both of the insureds to assert property damage or personal injury claims against the other.  That is not the case here.  The property damage claim is being asserted by NYPA and NYPA is not an assured under the Lloyd's Policy. Thus, the Cross Liability clause has no bearing on Iroquois' coverage, if any, arising out of the Incident at issue in this case.

### d.    Iroquois is Not Entitled to Coverage Under Clause "b"

There are few cases which address the meaning of the language in clause "b" of the Collision and Tower's Liability provision.  However, the plain language of the clause, reviewed in the context of the Lloyd's Policy as a whole and the requirements of Construction Contract, illustrates that clause "b" is not intended to cover Iroquois' involvement in the Texas Limitation Action.

Clause "b" states that:

> [I]n cases where the liability of the Vessel has been contested or proceedings have been taken to limit liability with the consent in writing, of a majority (in amount) of the Underwriters on the hull and machinery, we will also pay a like proportion of the costs which the Assured shall thereby incur or be compelled to pay.

Radzik Aff., Ex. "6".  The clear meaning of this clause is that, if no adjudication of fault has been reached which would afford coverage under clause "a", an insured party who is defending the liability of the insured vessel, or seeking to limit the liability of the insured vessel, will be entitled to recover costs incurred in doing so pursuant to clause "b".  It would be irrational to conclude that a party, such as Iroquois, who is seeking to establish that the Insured vessel is at fault, could recover for costs, merely because it is a party to a limitation proceeding where the

insured vessel's liability is being contested by another insured. Because Iroquois is neither seeking to limit the liability of the vessel, nor defend the liability of the vessel, it is not entitled to recovery under clause "b".

Further, notably absent from Iroquois argument is any recognition that recovery under clause "b" is conditional upon written consent of Lloyd's Underwriters. The consent requirement applies to both contesting the vessel's liability and/or seeking to limit the vessel's liability. *Gulf Mississippi Marine Corp. v. Cont. Ins. Co.*, 566 F.2d 956 (5th Cir. 1978). Thus, even if Iroquois were defending or seeking to limit the GULF HORIZON's liability, it could not recover under clause "b" as Iroquois never asked for, nor received, written consent from any of the underwriters, let alone a majority.[8]

The consent requirement of clause "b," highlights the significance of Iroquois' failure to notify Lloyd's Underwriters of the Incident and the resulting prejudice. Because Iroquois did not notify Lloyd's Underwriters of the Incident, Lloyd's Underwriters were precluded from protecting their own interests in the Limitation Action, and Iroquois' involvement therein is prejudicial to Lloyd's for several reasons. Iroquois is alleging in the Texas Limitation Action that Horizon and the GULF HORIZON are responsible for the loss.[9] Radzik Aff., Ex. "Z". By taking a position adverse to Horizon, Iroquois is simultaneously seeking to establish that Horizon is liable and therefore covered by the Lloyd's Policy. Had Lloyd's been notified of the Incident

---

[8]       In its reply, Iroquois may try to argue that consent would not have been required under the current circumstances by relying upon *Stuyvesant Ins. Co. v. Nardelli*, 286 F.2d 600 (5th Cir. 1961). In *Stuyvesant*, Nardelli was relieved of the consent requirement because Stuyvesant was treating Nardelli as a stranger to the policy. *Stuyvesant*, 286 F.2d at 603. This is not the case here, since Iroquois was not notified of the Incident, or, of Iroquois' claim as an additional insured, until the Second Amended Complaint was filed in this action, Lloyd's cannot be said to have been treating Iroquois as a stranger. Lloyd's had taken no position with respect to Iroquois because Iroquois had not claimed coverage. For the same reasons that Iroquois' failure to notify Lloyd's precludes coverage, Iroquois failure to obtain consent to enter the limitation action must preclude any coverage under clause "b".

[9]       Iroquois' defense in the limitation action is primarily that Horizon was negligent and therefore responsible to the damage to the NYPA power cable. Radzik Aff., Ex. "Z", p. 9. This is clearly not the type of "defense" covered under clause "b".

and the Limitation Action, it may have been able to negotiate a unified defense, whereby its potential insureds were not asserting adverse positions against one another, and thereby facilitate early settlement. Lloyd's is prejudiced because, if notified timely, they would certainly not have permitted the instruction of duplicate counsel to represent the interests of the vessel.

Iroquois' attempt to recover attorneys fees is also manifestly prejudicial and inappropriate in light of the February 27, 2004 Order in the Texas Limitation Action, wherein the Court there held that Iroquois was not a proper party to the Limitation Action. Radzik Aff., Ex. "X", p. 14. It is completely illogical to conclude that Lloyd's Underwriters' should be required to cover Iroquois' costs in filing an improper claim in a Limitation Action, to assert "Unrelated Claims" against a primary assured, without ever seeking Underwriters' consent or giving notice to Underwriters of the underlying Incident.

The Lloyd's Policy included the consent requirement for the same reason that it included the notice provision, to allow Lloyd's to protect its interests when potential liabilities arise. Because Iroquois failed to provide notice or seek Underwriters consent prior to engaging in extensive legal activity, Iroquois cannot recover under the policy for any liability resulting from the Incident.

### e.    Iroquois' Reliance on *Stuyvesant* is Misplaced

Iroquois' reliance upon the Fifth Circuit's decision in *Stuyvesant Ins. Co. of New York v. Nardelli*, 286 F.2d 600, to support its claim for coverage under clause "b", is also misplaced. *Stuyvesant* involved a collision between two vessels, the M/V Narco and the M/V Lolita off the coast of Mexico. *Stuyvesant*, 286 F.2d at 602. Vincent Nardelli was the charterer/operator of the Narco under a lease-purchase agreement from her actual owner. The district court found the Narco solely at fault in causing the collision and entered judgment against the vessel *in rem* and

against Nardelli *in personam*. *Id.* Nardelli thereafter filed suit against Stuyvesant, the hull underwriters of the vessel under a policy taken out by the actual owners. *Id.* Stuyvesant argued, *inter alia*, that Nardelli was not covered under the hull policy. The district court agreed with Stuyvesant but the Fifth Circuit reversed holding that the "running down" clause of the hull policy extended coverage to Nardelli as the "Charterer" of the vessel. *Id.* In a later appeal, Stuyvesant argued successfully that the Towers and Collision coverage extends to indemnity and not liability. This means that in order to be paid by underwriters under the policy the insured (or anyone claiming coverage) must prove that it has first paid the judgment to the third party. *Id.* Since Nardelli could not prove that he had paid the judgment to the owners of the Lolita, the circuit court reversed the district court's award of $25,000 to Nardelli. The circuit court did, however, keep intact the award of $6,000 in attorneys' fees in favor of Nardelli and against underwriters. The circuit court reasoned that even though Nardelli could not prove that it paid the underlying judgment to the owners of Lolita, thus precluding recovery under clause "a", it was nonetheless entitled to recoup his attorneys' fees under clause "b" because they were, in fact, incurred in the defense of the vessel and because Nardelli as Charterer was covered under the "Running Down" clause. *Id.* at 603-4.

Iroquois cannot recover under clause "a" for, *inter alia*, the same reason that Nardelli could not; because Iroquois has not actually paid damages. However, in this case, Iroquois is not entitled to recovery under clause "b" regardless of the fact that fees have been incurred. Iroquois is not defending the GULF HORIZON in the Texas Limitation Action, nor is Iroquois the petitioner seeking exoneration from and/or limitation of liability. Horizon, as the owner of the GULF HORZON, has initiated the limitation action and is defending the liability of the vessel. Iroquois has been adjudicated to be an improper claimant in the Limitation Action and is

defending cross-claims by asserting that the Vessel is liable.[10]  This does not entitle Iroquois to coverage under clause "b".  By claiming that Horizon is the party at fault for the NYPA cable damage, Iroquois has put itself in an adversarial position to Horizon and has compromised Horizon's defense and, to that extent, has further prejudiced Lloyd's Underwriters' interests.

> **f.    Iroquois' Attempt to Define the Scope of Iroquois' Coverage Illustrates a Fundamental Misunderstanding of the Type of Coverage Available Under the Lloyd's Policy**

Iroquois argues that Iroquois is covered by the Lloyd's Policy for all claims asserted against Iroquois by NYPA in the limitation action.  Iroquois Memo, pp. 13 and 17.  This assertion, on its face, illustrates that Iroquois fails to comprehend the type of coverage afforded under the policy.  The relevant inquiry is not the type of claims asserted, but rather, whether Iroquois has been held liable, and paid damages, "in consequents of the insured Vessel being at fault," here the GULF HORIZON.  The type of claims asserted by NYPA against Iroquois are irrelevant unless and until a determination of the GULF HORIZON's fault is reached and Iroquois is required to pay for such liability.  Iroquois is not entitled to a determination of coverage under the Lloyd's Policy.

## IV.    Iroquois is Already Receiving a Defense and Therefore Lacks Standing

Iroquois' defense in the Limitation Action is currently being provided by its own insurer Liberty Mutual.  Radzik Aff., Ex. "BB".  Thus, even if Iroquois were entitled to recover attorneys' fees for its participation in the Limitation Action and in defending against the claims asserted by NYPA, this right now belongs to Liberty Mutual, the party currently providing the defense.  Thus, the proper procedure would be for Liberty Mutual to assert a claim against Lloyd's for contribution.  However, even if Liberty Mutual asserted a claim for contribution, the

---

[10]     Iroquois claims that the GULF HORIZON was unseaworthy and that Horizon's crewmembers were not competent and that these factors let to the NYPA cable damage incident.

claim would be invalid for the same reasons asserted herein as against Iroquois and in Lloyd's Underwriters' Motion for Summary Judgment for Lack of Notice. Further, the fact that Iroquois is already being defended by its own insurers supports a finding that Iroquois cannot seek coverage for defense costs until the Texas Limitation Action has been adjudicated.[11] *See Royal Ins. Co. v. Commercial Underwriters Ins. Co.* 2004 U.S. Dist. LEXIS 23275 (S.D.N.Y. 2004). Iroquois' Motion for Summary Judgment is improper and should be denied.

## V.    Lloyd's Underwriters Have Not Acted In Bad Faith

Iroquois' contention that once notified, Lloyd' Underwriters actions were anything other than responsible is untenable. Upon receiving notice of the Incident (albeit not from Iroquois) Lloyd's immediately made a notation on JLT's file that it was asserting the late notification defense and was sending the file to coverage counsel for an opinion on late notice and coverage. Radzik Aff., Ex. "L". Lloyd's also issued a Reservation of Rights letter and placed it in JLT's file in December, 2004. Radzik Aff., Ex. "K".

Iroquois' first notice to Lloyd's was its Amended Complaint dated March 23, 2005. Lloyd's timely interposed its Answer on April, 25 2005 without seeking an extension of the time in which to file an Answer. Lloyd's dutifully listed all of its affirmative defenses including late notification of claim and lack of coverage. For Iroquois to assert that Lloyd's acted irresponsibly or in bad faith in not supported by the record.

For the same reason, Iroquois' attempt to recover attorneys' fees in connection with this litigation is disingenuous. There has been no showing of bad faith whatsoever on the part of Lloyd's. There has been no discovery in respect of this issue and all discovery, except for late

---

[11]     The current scheduling order in the Texas Limitation Action indicates that all discovery must be completed by July 8, 2005 and that this case be ready for trial by September 9, 2005. However, in view of the fact that Horizon's lead counsel is from New Orleans it is anticipated that the scheduling order will be extended to accommodate those affected by Hurricane Katrina.

notice, has been expressly stayed.  If anything, Lloyd's should be entitled to recover its attorneys' fees from Iroquois for being forced to respond to issues raised which clearly go beyond the late notification issue in violation of the stay and cannot be determined at this time.

Iroquois' suggestion at p. 19, n. 5 of its Memorandum that Lloyd's should pay Iroquois' legal bills in full and then seek reimbursement for any overpayment is improper and wholly unjustified.  Iroquois has produced not one iota of proof of how much of its $975,064.46 attorneys' fee[12], if any, was attributable to defending GULF HORIZON as opposed to prosecuting its "Unrelated Claims" against Horizon, filing an extensive motion to transfer venue of the Texas Limitation Action, and/or alleging that Horizon is responsible for all claims asserted by NYPA. The fact that Iroquois has been vigorously seeking to undermine Horizon's defenses in respect of the February 27, 2003 Incident, coupled with the fact that Iroquois failed to notify Lloyd's of the Incident, and that Iroquois engaged in substantial legal activity without consultation with or consent from Lloyd's Underwriters, underscores the fact that there has been clear prejudice. Iroquois is not entitled to recover attorneys' fees from Lloyd's Underwriters for claims asserted in this action or, for Iroquois' participation in the Texas Limitation Action.

### Conclusion

Based on the forgoing, Iroquois' Motion for Summary Judgment should be denied and Summary Judgment should be entered in favor of Lloyd's Underwriters.

---

[12]    There has been no discovery on the issue of the entitlement to attorneys' fees and quantum, nor has there been any discovery in respect to the per-occurrence deductible and annual aggregate deductible under the Lloyd's Policy.

21

Dated:     New York, New York
           September 9, 2005

                          DONOVAN PARRY McDERMOTT & RADZIK
                          Attorneys for Defendants, Lloyd's Underwriters

                   BY:    *Edward C. Radzik* (signature)
                          EDWARD C. RADZIK (ER-2473)
                          CAROLYN ELIZABETH MEERS (CM-1464)
                          Wall Street Plaza
                          88 Pine Street – 21ST Floor
                          New York, New York  10005-1801
                          (212) 376-6400


TO:   Richard V. Singleton, Esq.
      John C. Koster, Esq.
      David Jensen, Esq.
      HEALY & BAILLIE, LLP
      *Attorneys for IROQUOIS GAS TRANSMISSION
         SYSTEM L.P.*
      61 Broadway, 32nd Floor
      New York, New York,  10006

      John P. Vayda, Esq.
      NOURSE & BOWLES, LLP
      *Attorneys for ASSOCIATED ELECTRIC & GAS
         INSURANCE SERVICES LTD.*
      One Exchange Plaza
      55 Broadway – 30th Floor
      New York, New York  10006-3030

      Rodney M. Zerbe, Esq.
      James Tolan, Esq.
      Dechert LLP
      *Attorneys for AON RISK SERVICES
         OF TEXAS, INC.*
      30 Rockefeller Plaza – Room 2305
      New York, New York  10112

      Charles E. Schmidt, Esq.
      KENNEDY LILLIS SCHMIDT & ENGLISH
      *Attorneys for AMERICAN HOME
         ASSURANCE COMPANY*
      75 Maiden Lane
      New York, New York  10038