HEALY & BAILLIE, LLP
Attorneys for Plaintiff
61 Broadway
New York, NY 10006
(212) 943-3980
Richard V. Singleton (RS-9489)
John C. Koster (JK-4086)
David D. Jensen (DJ-2261)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IROQUOIS GAS TRANSMISSION SYSTEM L.P., | **(ECF Case)** |
| Plaintiff, | 05 Civ. 2149 (JSR) |
| -against- | |
| ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LTD., Hamilton, Bermuda; CERTAIN UNDERWRITERS AT LLOYD'S; AON RISK SERVICES OF TEXAS, INC.; and AMERICAN HOME ASSURANCE CO., | **AFFIDAVIT OF RICHARD V. SINGLETON** |
| Defendants. | |

Richard V. Singleton, being duly sworn, deposes and says:

1.     I am admitted to practice before this Honorable Court and am a partner of the firm of Healy & Baillie, LLP.

2.     I am the lead attorney representing Iroquois Gas Transmission System LP ("Iroquois") in the litigation now pending in the United States District Court for the Southern District of Texas bearing the caption "In the Matter Of Horizon Vessel's Inc. et al." and bearing Civil No. C.A. No. H-033280. This litigation concerns claims arising out of alleged damage on February 27, 2003 to an undersea electric transmission cable owned by the Power Authority of the State of New York ("NYPA"). This litigation will hereinafter be referred to as the "NYPA Litigation."

284058.1

3.      I was also lead attorney for Iroquois in litigation that was pending in the United States District Court for the Eastern District of New York captioned "In the matter Cal Dive International, Inc." and bearing docket no. 02 Civ. 6397 (LDW)(ETB). This litigation arose out of damage in November, 2002 to a series of power cables jointly owned by the Long Island Power Authority ("LIPA") and Connecticut Light and Power. This litigation, which settled in March 2005, hereinafter will be referred to as the "LIPA Litigation."

4.      Iroquois, Horizon Offshore Contractors, Inc. ("Horizon"), and Thales GeoSolutions, Inc. ("Thales") are parties in the NYPA Litigation, and all three also were parties in the LIPA Litigation.

5.      Thales was represented in the LIPA Litigation by the New York law firm of Thacher Proffitt & Wood. That firm has also represented Thales in the NYPA Litigation from the outset of that action.

6.      Thales had a Professional Indemnity policy, with two excess policies, covering the period of both the LIPA and NYPA casualties. Those underwriters were represented in New York in respect of the LIPA matter by John Olson, Esq. of the New York law firm Hill Rivkins & Hayden. It is my understanding from the settlement discussions relating to the LIPA Litigation that those underwriters paid Thales' legal fees and funded Thales' contribution to the settlement of the LIPA Litigation, subject to the applicable deductible. In addition, Thales' insurers reimbursed Horizon and Iroquois for all legal fees they incurred in connection with the LIPA Litigation based on an indemnity provision in the Horizon/Thales Master Service Agreement that required Thales to indemnify Horizon and its customers, i.e., Iroquois, for damage that occurred during the course of Thales' performance of its work under the Master Service Agreement.

7.      Thales is no longer in business.

284058.1

8.    Thales, through its attorneys, has been actively involved in the NYPA casualty since the incident occurred and has participated in the NYPA Litigation since the action was filed in August 2003.

9.    It is my belief and understanding that Thales' Professional Indemnity underwriters are covering Thales' attorneys' fees and costs in respect of the NYPA Litigation and have been doing so from the outset of that litigation. Supporting this belief is the fact that, in response to Iroquois' request in the NYPA Litigation that Thales produce copies of all insurance policies in force which are applicable to the casualty, Thales produced only professional indemnity policy no. 633/DY112725W and two excess policies. Copies of these three policies are attached hereto as Exhibit A.    I would further note that, in its initial disclosure filed in the NYPA Litigation, Thales indicated that it would produce "a copy of its relevant *policy* of insurance." [Emphasis added.] A copy of Thales' Initial Disclosures is attached hereto as Exhibit B.    These facts taken together indicate to me that Thales does not consider that any other of its policies are applicable in respect of the NYPA casualty.

10.    It is my belief and understanding—though unconfirmed by Thales or its underwriters—that Hill Rivkins & Hayden are representing Thales' Professional Liability Underwriters in respect of the NYPA Litigation.

11.    Thales' policies do not list Iroquois as an additional assured and the policy terms do not appear to cover Iroquois as an additional assured.  Thales's counsel has advised that he is aware of no documents that would indicate that Iroquois was entitled to coverage under Thales' policies.

12.    Iroquois therefore has recently filed a cross-claim in the Texas litigation against Thales and amended its claim against Horizon seeking judgment against Thales and Horizon for failure to name Iroquois as an additional assured on Thales' insurance, as required by the Iroquois/Horizon construction contract and the Horizon/ Thales Master Service Agreement. A copy of Iroquois' Amended Claim and Cross Claim is attached

hereto as Exhibit C.    Thales' deadline to answer Iroquois' cross-claim is currently September 23, 2005.

13.    To date, so far as I am aware, neither Thales nor its underwriters have asserted or indicated in any way that Thales' underwriters received late notice of the NYPA casualty or the ensuing litigation, nor am I aware of any other defense to coverage raised by Thales.

_____
Richard V. Singleton

Sworn to before me this 9th day
of September 2005

_____
Notary Public

ELAINE BONOWITZ
Notary Public, State of New York
No. 43-4893320
Qualified in Richmond County
Certificate Filed in New York County
Commission Expires May 11, 20__

284058.1

SECTION TWO



# Lloyd's
# Co-insurance Policy

(following a leading insurer)

**Whereas** the Assured named in the Schedule herein has paid the premium specified in the Schedule to the Underwriting Members of Lloyd's who have hereunto subscribed their Names (hereinafter called 'the Underwriters'),

**Now We The Underwriters** hereby agree to insure against loss, damage or liability the risk and sum insured stated in the Schedule on the same terms and conditions and at the same rates of the Company specified in the Schedule.

The Underwriters undertake, in the event of a loss, to pay their proportion, it being understood and agreed that the said Company shall, at the time of any loss, and at the same rate, cover at least their proportion stated in the Schedule (subject only to reduction by the amount of any loss not reinstated) for the same risk on the same subject matter, such proportion to be the same on each separate part thereof.

The period of this Insurance is as stated in the Schedule. This Insurance will be subject, without notice, to the general and special conditions, endorsements, assignments and alterations of rates as are or may be assumed in the Company's policy upon which this Insurance is based.

**Now Know Ye** that We the Underwriters, Members of the Syndicates whose definitive numbers in the after-mentioned List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves each for his own part and not one for another, our Executors and Administrators, and in respect of his due proportion only, to pay or make good to the Assured or the Assured's Executors or Administrators all such loss, damage or liability as aforesaid after such loss, damage or liability is proved.

**In Witness** whereof the General Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.



LLOYD'S POLICY SIGNING OFFICE
General Manager

62074 (12/7/90) Printed by Lloyds Corporation of Lloyd's

THALES 066945

SECTION TWO



THE ASSURED IS REQUESTED TO **READ THIS POLICY.** IF IT IS INCORRECT, PLEASE RETURN IT
IMMEDIATELY TO YOUR BROKER OR AGENT FOR ALTERATION.

IN ALL COMMUNICATIONS THE POLICY NUMBER APPEARING OVERLEAF SHOULD BE QUOTED

THALES 066946

SECTION TWO

### THE SCHEDULE

Policy No: 633/DY112725W

**Name of Assured:**

Thales Plc and as more fully defined in the Company's policy

**Address of Assured:**

Western Road
Bracknell
Berkshire
RG12 1RG

**Period of Insurance:**

From:  11th March 2002

To:  31st December 2002

both days at the hour expressed in the Company's policy upon which this Policy is based.

**The Risk and Sum Insured hereunder:**

Professional Indemnity
£3,500,000

**Leading Co-insuring Company:**

Royal & Sun Alliance Insurance plc
with 41.872%

**Premium:**

£212,127.09 being this Policy's proportion plus UK Insurance Premium Tax at the applicable rate

Dated in London the 2nd August 2002                                002612262

17/7/80
NMA2074

Page 1 of 6

THALES 066947

SECTION TWC

## SEVERAL LIABILITY NOTICE

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

08/94
LSW1001 (Insurance)

THALES 066948

SECTION TWO



The Table of Syndicates referred to on the face of this Policy follows:

| Syndicate Number | Percentage | Underwriters' References |
|---|---|---|
| 3210 | 28.079 | 00863D02BA |
| 2488 | 19.704 | AEEM62MC3441 |
| 2245 | 2.956 | 0244702AN000 |
| 2001 | 7.389 | UPL1002802DC |
| **Total Lloyd's Line** | **58.128** | |

The list of Underwriting Members of Lloyd's is for the 2002 year of account

This Insurance, being signed for 58.128% insures only that proportion of any loss, whether total or partial, including but not limited to that proportion of associated expenses, if any, to the extent and in the manner provided in this Insurance.

The percentages signed in the Table are percentages of 100% of the amount(s) of Insurance stated herein.

LPSO Signing Number and Date or Reference: 21191 13/05/2002

THALES 066949



INTERNATIONAL
UNDERWRITING ASSOCIATION

# IUA Policy

We, the Insurers, hereby severally agree, in consideration of the payment to us, or the promise of payment to us, by the Insured of the premium specified in the Schedule, to insure against loss, damage, liability or expense in the proportion and the manner hereinafter provided. Each Insurer shall be liable only for its own respective proportion.

In witness whereof the name of the Chief Executive of the International Underwriting Association of London ("IUA") is subscribed on behalf of each of the IUA members and such entities not being members of the IUA who are participating in a qualifying consortium arrangement with the IUA members in accordance with the Memorandum and Articles of Association of the IUA.

_____ Chief Executive

This policy is not valid unless it bears the embossment of the Policy Department of the International Underwriting Association of London.



THALES 066950

SECTION TWO

The Insured is requested to read this Policy and, if it is incorrect, return it immediately for alteration.

In all communications the Policy Number appearing in line one of the Schedule should be quoted.

In the event of any occurrence likely to result in a claim under this Policy immediate notice should be given to:

**AON LIMITED**
*Professions*
Alexander House
205-207 Kings Road
Reading
Berkshire
RG1 4LW

THALES 066951

SECTION TW(

# <u>CONTENTS</u>

POLICY NO:   633/DY112725W

## PROFESSIONAL INDEMNITY POLICY

Page   1      The Schedule

Page   3      Insuring Agreements

Page   4      Excess
             Indemnity Limit
             Defence Costs

Page   5      Definitions
             Cross Liabilities Clause
             Indemnity to Principals Clause
             Exclusions

Page   7      Conditions

Page   9      Endorsements and Attachments

DY112725W

THALES 066952

SECTION TW(

WHEREVER THE TERMS "ASSURED" AND "UNDERWRITER" SHALL APPEAR
THROUGHOUT THE ENTIRETY OF THE WORDING THEY SHALL BE
REPLACED WITH "INSURED" AND "INSURER"

## THE SCHEDULE

Policy Number:     633/DY112725W

The Insured:       Thales Plc and its subsidiary companies
                   Thales TRC Inc and its subsidiary companies
                   Thomson Marconi Sonar NV and its subsidiary
                   Companies
                   Thomson Support Services Limited
                   Quintec Associates Limited

Address:           Western Road
                   Bracknell
                   Berkshire
                   RG12 1RG

Period:            From:  11th March, 2002
                   To:    31st December, 2002
                   Both days inclusive

Limit of Indemnity:  £3,500,000 any one claim and in all(including costs
                     and expenses)

Excess Of          £250,000 each and every claim

Interest:          Professional Indemnity Insurance

Premium:           £152,803.91 plus £1,818.36 Insurance Premium Tax
                   Being this policy's proportion

Dated in London:   10th July, 2002

DY112725W

THALES 066953

SECTION TW(

This Page is Intentionally Left Blank

Page 2 of 12

DY113723W

THALES 066954

SECTION TWC

# THALES PLC

## PROFESSIONAL INDEMNITY INSURANCE

1.  Insuring Agreements

    Underwriters will indemnify the Insured:-

1.1. for their legal liability to pay damages and claimants' costs, fees and expenses in accordance with the law of any country in respect of any claim which is first made against them, in writing, during the period stated in Item 4 of the Schedule as a result of any actual or alleged negligent act, or error, or omission, or libel, or slander, or defamation, or infringement or innocent breach of confidential information, trade secret, copyright, trademark, design or patent occurring in connection with the business outlined in Item 3 of the Schedule on the part of:-

    1.1a. the Insured,

    1.1b. any firm, company or individual acting for or on behalf of the Insured,

    1.1c. any firm, company or individual with whom the Insured is or has been acting jointly,

    1.1d. a subsidiary of the Insured whilst it was a subsidiary but which has since been sold,

    1.1e. a company in which the Insured, or any of the above under 1.1b, c and d, has a financial interest, but only if the work giving rise to the claim was undertaken for a party other than those detailed under 1.1a,b,c and d above;

1.2. for their legal liability arising from any claims first made, in writing, against them during the period of insurance by reason of any dishonest, fraudulent, criminal or malicious act or omission of any Employee or any party named in paragraph 1.1b or 1.1c provided always that no Indemnity shall be afforded to any person committing or condoning such dishonest, fraudulent, criminal or malicious act or omission and the sums payable under this Policy shall only be for the balance of liability in excess of the amounts recoverable from the dishonest or fraudulent person or persons and the Excess stated in Item 6 of the Schedule;

1.3. for any legal liability that they may incur in consequence of any documents (as defined herein), either the property of or entrusted to the Insured or in the custody of any person to or with whom such documents have been entrusted, lodged or deposited, having been discovered, during the Period of Insurance, to be damaged, destroyed, lost or mislaid and which, after diligent search, cannot be found;

1.4. for the costs and expenses, of whatsoever nature, incurred by the Insured in replacing or restoring such documents;

1.5. for legal liability in respect of any costs and expenses incurred by any Insured with the written consent of the Insurers in being represented at or in connection with any investigation, examination or other proceedings ordered or commissioned by any official body or institution empowered to investigate

DY117725W

THALES 066955

SECTION TWO

the affairs of the Insured during the Period of Insurance in connection with any claim against the Insured the circumstances of which are first notified hereunder during the Period of Insurance;

The Insured shall be entitled to choose the representative to be instructed to act on their behalf or on the behalf of any director, officer or employee in any investigation, examination or other proceedings referred to in this Extension.

2.  **Excess**

Except as stated below, Underwriters shall only be liable in excess of the amounts stated in Item 6 of the Schedule (hereinafter referred to as the "Excess").

The Excess shall not apply to libel or slander or defamation.

It being understood and agreed by the Insured that the Excess shall only comprise the payment of damages and claimants' costs, fees and expenses and Defence Costs which would, except for the amount thereof, be insured by this Policy.

Underwriters agree that the Insured may obtain insurance in respect of all or any part of the Excess (and the legal costs and expenses in addition thereto) but this Policy shall not in any way be construed to be subject to the terms, definitions, conditions and limitations of such insurance nor shall Underwriters contribute with such insurance in the event that such insurance covers damages also covered by this Policy.

3.  **Indemnity Limit**

Underwriters' total liability to pay damages and/or claimants' costs, fees and expenses shall not exceed the Indemnity Limit stated in the Schedule, which shall be the total amount payable during the Period of Insurance.

4.  **Defence Costs**

The Underwriters will, inclusive within the Indemnity Limit stated in the Schedule, pay all costs, fees and expenses incurred with their consent by the Insured in the defence or settlement of any claim under this Policy (hereinafter called "Defence Costs").

DYI11272SW

THALES 066956

SECTION TWO

5.  **Definitions**

    5.1.   The Insured shall mean:-

        5.1.1.  the Insured stated in the Schedule or their predecessors in business;

        5.1.2.  persons being at any time Partners, Directors or Employees of the Named Insured, or their predecessors in business;

        5.1.3.  the estates of the legal representatives of any of the persons noted under 6.1.2. in the event of their death, incapacity, insolvency or bankruptcy;

        5.1.4.  any business acquired or formed by the Insured during the Period of Insurance provided that the Insured shall declare to Underwriters after expiry of the Period of Insurance a list of those, firms/businesses acquired or formed during the Period of Insurance.

    5.2.   "Documents" shall mean deeds, wills, agreements, maps, plans, records, books, letters, certificates, computer systems records, forms and documents of whatsoever nature whether written, printed or reproduced by any other method (other than bearer bonds, coupons, bank notes, currency notes and negotiable instruments), either the property of or entrusted to the Insured or in the custody of any person to or with whom such documents have been entrusted, lodged or deposited.

    5.3.   "Employee" shall mean any person including any trainee or consultant who is or has been directly employed by the Insured or the predecessors in business of the Insured. "Employee" shall not include any persons supplied by the Insured in their capacity as employment agents.

6.  **Cross Liabilities Clause**

This Policy extends to indemnify Racal Group Services in respect of claims made against them by any other Insured or any firm, company or individual with whom the Insured is or has been acting jointly.

7.  **Indemnity to Principals Clause**

If the Insured requests, Underwriters will indemnify any past or current principal of the Insured in respect of claims made against such principal for which the Insured would have been entitled to indemnity under this Policy if the claim had been made against the Insured. Furthermore, Underwriters agree to waive subrogation rights against such principal.

8.  **Exclusions**

This Policy does not cover liability:-

    8.1    directly or indirectly occasioned by happening through or in consequence of war, invasion, act of foreign enemy, hostilities



DY113725W

THALES 066957

(whether war be declared or not) civil war, rebellion, revolution, insurrection, military or usurped power;

8.2    directly or indirectly caused by or contributed to by or arising from:-

    a)  ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combusion of nuclear fuel

    b)  the radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof;

8.3    which forms the subject of insurance by any other policy and this Policy shall not be drawn into contribution with such other insurance except in respect of any excess beyond the amount which would have been payable under such other policy or policies had this insurance not been effected;

8.4    arising out of death, bodily injury or damage to property unless arising out of professional advice or omission to perform a professional duty;

8.5    which arises solely because of a contract, for:-

    a)  any amount which the Insured becomes liable to pay in respect of liquidated damages, fines or penalties but only to the extent that such liquidated damages, fines or penalties exceed the quantifiable losses incurred by the claimant;

    b)  damages due to the Insured's contract works or materials to be incorporated in the said works;

8.6    for punitive or exemplary damages relating to claims brought against the Insured in the Courts of the United States of America and Canada;

8.7    arising out of any products manufactured, supplied or distributed by the Insured where the annual volume of products manufactured, supplied or distributed exceeds twenty items, but this exclusion shall not apply to advice given in connection with all products manufactured, supplied or distributed by the Insured or any advice given in connection with products manufactured by third parties; the consequences of infringement or innocent breach of confidential information, trade secret, copyright, trademark, design or patent;

8.8    in respect of any loss, payments or claims expenses directly or indirectly brought about by, arising out of, or attributable to:-

any actual or alleged violation of the Racketeer Influenced and Corrupt Organisations Act, 18 USC Sections 1961 et seq., and any amendments thereto, or any rules or regulations promulgated thereunder;

8.9    arising from the business activities of Racal Telecom Plc and/or Vodafone Plc and/or Chubb Security Plc;

8.10    arising out of those claims matters referred to in question 16 of proposal form dated t.b.a.

DV112725W

THALES 066958

SECTION TWO

9    Conditions

9.1.    **Notice of Circumstance**

The Insured shall give written notice to Underwriters as soon as possible after:-

9.1.1.    Becoming aware of a circumstance which may give rise to a claim or;

9.1.2.    Receiving information of a claim for which there may be liability under this Policy.

Any claim arising from such circumstance or information shall be deemed to have been made in the Period of Insurance in which such notice has been given. The Underwriters will not seek to avoid any claim on the grounds of any breach of this Condition.

9.2.    **Assistance and Co-operation**

The Insured shall give all such assistance as Underwriters may require but the Insured shall not be required to contest any legal proceedings unless a Queen's Counsel or similar authority (to be mutually agreed upon by the Insured and Underwriters) shall advise that such proceedings could be contested with the probability of success.

No admission, offer, promise or payment shall be made or given by or on behalf of the Insured without the written consent of the Underwriters who shall be entitled to take over and conduct in the name of the Insured the defence or settlement of any claim or to prosecute in the name of the Insured for their own benefit any claim for indemnity or damages or otherwise and shall have full discretion in the conduct of any proceedings and in the settlement of any claim and the Insured shall give all such information and assistance as the Underwriters may reasonably require.

9.3.    **Non-Disclosure and Misrepresentation**

Underwriters will not exercise their right to void this Policy where it is alleged there has been non-disclosure or misrepresentation of facts or untrue statements in the information provided to Underwriters or failure to notify a possible claim under any previous Policy provided always that the Insured shall establish to Underwriters' satisfaction that such alleged non-disclosure, misrepresentation, untrue statement or failure to notify a possible claim was innocent and free of any fraudulent conduct or intent to deceive.

However, in any case where the Insured should have notified under any preceding insurance either a claim made against them or circumstances which could give rise to a claim and the indemnity or cover available under this Policy is greater or wider in scope than the indemnity or cover to which the Insured would have been entitled under any

DY112725W

THALES 066959

SECTION IV

preceding insurance (whether with other Insurers or not) then Underwriters shall only be liable to indemnify the Insured in respect of that claim to the extent of the indemnity or cover which would have been afforded by such preceding insurance.

9.4.    **Non-Compliance with Policy Conditions**

Where the Insured's breach of or non-compliance with any condition of this Policy has resulted in prejudice to the handling or settlement of any claim the indemnity afforded by this Policy in respect of such claims (including costs and expenses) shall be reduced to such sums, as, in Underwriters' opinion, would have been payable by them in the absence of such prejudice.

9.5.    **Arbitration**

In the event of a dispute or disagreement between the Insured and Underwriters regarding the application of Conditions 10.1 and 10.3 such dispute or disagreement shall be referred for arbitration and the decision of the arbitrator shall be final and binding upon both parties. If the Insured and Underwriters are unable to agree upon the appointment of an arbitrator then the arbitrator will be appointed by the President for the time being of the Institute of Arbitrators, whose decision shall be final and binding on both parties.

9.6.    **Jurisdiction**

Any phrase or word in this Policy and the Schedule will be interpreted in accordance with the laws of England.

9.7.    **Cancellation**

The Insured may cancel this policy at any time during the Period of Insurance by sending 30 days written notice to Underwriters, and a return premium shall be payable to the Insured calculated at pro-rata of the annual premium for the unexpired period.

Underwriters may cancel this policy at any time during the Period of Insurance by sending 75 days written notice to the Insured, and a return premium shall be payable to the Insured calculated at pro-rata of the annual premium for the unexpired period.

DY112725W

THALES 066960

SECTION TWO

ATTACHING TO AND FORMING PART OF POLICY NUMBER:

<u>633/DY112725W</u>

The Insured:     Thales Plc and its subsidiary companies
Thales TRC Inc and its subsidiary companies
Thomson Marconi Sonar NV and its subsidiary companies.
Thomson Support Services Limited
Quintec Associates Limited

<u>ENDORSEMENT</u>

It is hereby noted and agreed that with effect from 11th March, 2002 this policy is subject to:

1.     Date Recognition Exclusion Clause          RJW2001(c)
As attached

War and Terrorism Exclusion          NMA2918
As attached

2.     It is hereby understood and agreed that if the insured so requests, Insurers will indemnify the Joint Authority in respect of claims made against the Joint Authority for which the Insured would have been entitled to indemnity under this Policy if the claim has been made against the Insured, but only in respect of the activities of the Insured.

3.     In the event that the Insured divest any part of their business and in the Insured's opinion the return premium offered by Insurers is not adequate, the Insured may cancel this Policy and will receive a return premium from the Insurers calculated on a pro rata basis in relation to the unexpired period.

4.     This Policy excludes liability arising out of work carried out by Thales Information Systems (Finance) Ltd

ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED

DY112725W

THALES 066961

SECTION TWO

## DATE RECOGNITION EXCLUSION

It is hereby understood and agreed that this Policy shall not indemnify the Assured in respect of any claim, loss, liability or costs and expenses directly or indirectly caused by or contributed to by or arising from or in connection with any Computer System, whether or not the property of the Assured, not being Year 2000 Compliant.

In addition this Policy shall not indemnify the Assured in respect of any claim, loss, liability or costs and expenses directly or indirectly caused by or contributed to by or arising from or in connection with any or any attempted correction, conversion, renovation, rewriting or replacement of any Computer System related to Year 2000 Compliance.

The following definitions shall apply:

"Year 2000 Compliant/Compliance" shall mean that neither performance nor functionality of the Computer System is affected by dates prior to, during and/or after the Year 2000.  In particular:

Rule 1 No value for current date will cause or give rise to any interruption in operating of the Computer System.

Rule 2 Date based functionality and performance of the Computer System must behave consistently for dates prior to, during and/or after the Year 2000.

Rule 3 In all interfaces and data storage of the Computer System the century in any date must be specified either explicitly or by unambiguous algorithms or inferencing rules.

Rule 4 The Year 2000 must be recognised as a leap year by the Computer System.

"Computer System" shall mean any computer, data processing equipment media or part thereof, or system of data storage and retrieval, or communications system, network, protocol or part thereof, or storage device, microchip, integrated circuit, real-time clock system or similar device or any computer software (including but not limited to application software, operating systems, runtime environments or compilers), firmware or microcode.

ALL OTHER POLICY TERMS AND CONDITIONS REMAIN UNALTERED.

RJW2001(C)
386RJW00071

DY112725W

THALES 066962

SECTION TWO

## WAR AND TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

1.  war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2.  any act of terrorism.

    For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1 and/or 2 above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

08/10/01
NMA2918

DY112723W

THALES 066963

## LINES CLAUSE

This Insurance, being signed for 41.872% of 100.00% insures only that proportion of any loss, whether total or partial, including but not limited to that proportion of associated expenses, if any, to the extent and in the manner provided in this Insurance.

The percentages signed in the Table are percentages of 100.00% of the amount(s) of Insurance stated herein.

DYI12725W

THALES 066964

SECTION TWO

everal Liability

he subscribing Insurers' obligations under this contract are several and not joint and
re limited solely to the extent of their individual signed subscriptions. The subscribing
Insurers are not responsible for the subscription of any co-subscribing Insurer who for
ny reason does not satisfy all or part of its obligations.

Insurers Proportions

AU REFERENCE        0205090005419

ORTION    CODE      MEMBER COMPANY AND REFERENCE
%

'20000    R1504     ROYAL & SUN ALLIANCE INSURANCE PLC
                    PI11026B02

20000 % TOTAL                              Page 1 of 1

THALES 066965



# Lloyd's

# Co-insurance Policy

### (following a leading insurer)

**Whereas** the Assured named in the Schedule herein has paid the premium specified in the Schedule to the Underwriting Members of Lloyd's who have hereunto subscribed their Names (hereinafter called 'the Underwriters'),

**Now We The Underwriters** hereby agree to insure against loss, damage or liability the risk and sum insured stated in the Schedule on the same terms and conditions and at the same rates of the Company specified in the Schedule.

The Underwriters undertake, in the event of a loss, to pay their proportion, it being understood and agreed that the said Company shall, at the time of any loss, and at the same rate, cover at least their proportion stated in the Schedule (subject only to reduction by the amount of any loss not reinstated) for the same risk on the same subject matter, such proportion to be the same on each separate part thereof.

The period of this Insurance is as stated in the Schedule. This Insurance will be subject, without notice, to the general and special conditions, endorsements, assignments and alterations of rates as are or may be assumed in the Company's policy upon which this Insurance is based.

**Now Know Ye** that We the Underwriters, Members of the Syndicates whose definitive numbers in the after-mentioned List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves each for his own part and not one for another, our Executors and Administrators, and in respect of his due proportion only, to pay or make good to the Assured or the Assured's Executors or Administrators all such loss, damage or liability as aforesaid after such loss, damage or liability is proved.

**In Witness** whereof the General Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

*J Benjamin*

LLOYD'S POLICY SIGNING OFFICE
General Manager

FOR EMBOSSMENT BY
LLOYD'S POLICY SIGNING OFFICE

SECTION THREE

THALES 066966

SECTION THREE



THE ASSURED IS REQUESTED TO READ THIS POLICY. IF IT IS INCORRECT, PLEASE RETURN IT
IMMEDIATELY TO YOUR BROKER OR AGENT FOR ALTERATION.

IN ALL COMMUNICATIONS THE POLICY NUMBER APPEARING OVERLEAF SHOULD BE QUOTED

THALES 066967

## THE SCHEDULE

Policy No: 633/DY000251W

Name of Assured:

Thales Plc and as more fully defined in the Company's policy

Address of Assured:

Western Road
Bracknell
Berkshire
RG12 1RG

Period of Insurance:

From:  11th March 2002

To:  31st December 2002

both days at the hour expressed in the Company's policy upon which this Policy is based.

The Risk and Sum Insured hereunder:

Excess Professional Indemnity
£3,500,000 in excess of £3,500,000

Leading Co-insuring Company:

Zurich Specialties London Limited
with 30%

Premium:

£109,479.60 being this Policy's proportion plus UK Insurance Premium Tax at the applicable rate

Dated in London the 2nd August 2002                    002612311

17/7/80
NMA2074

Page 1 of 6

THALES 066968

SECTION THREE

## SEVERAL LIABILITY NOTICE

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

08/94
LSW1001 (Insurance)

THALES 066969



The Table of Syndicates referred to on the face of this Policy follows:

| Syndicate Number | Percentage | Underwriters' References |
|---|---|---|
| | | L00206Q021CR |
| 3000 | 20.00 | AEEM62MD3800 |
| 2488 | 12.50 | BG06063BA001 |
| 1211 | 12.50 | |
| Total Lloyd's Line | 45.00 | |

The list of Underwriting Members of Lloyd's is for the 2002 year of account

This Insurance, being signed for 45% insures only that proportion of any loss, whether total or partial, including but not limited to that proportion of associated expenses, if any, to the extent and in the manner provided in this Insurance.

The percentages signed in the Table are percentages of 100% of the amount(s) of Insurance stated herein.

LPSO Signing Number and Date or Reference: 21203 13/05/2002

Page 5 of 6

THALES 066970



**OF LONDON**

INTERNATIONAL
UNDERWRITING ASSOCIATION

SECTION THREE

## IUA Policy

We, the Insurers, hereby severally agree, in consideration of the payment to us, or the promise of payment to us, by the Insured of the premium specified in the Schedule, to insure against loss, damage, liability or expense in the proportion and the manner hereinafter provided. Each Insurer shall be liable only for its own respective proportion.

In witness whereof the name of the Chief Executive of the International Underwriting Association of London ("IUA") is subscribed on behalf of each of the IUA members and such entities not being members of the IUA who are participating in a qualifying consortium arrangement with the IUA members in accordance with the Memorandum and Articles of Association of the IUA.

_____ Chief Executive

This policy is not valid unless it bears the embossment of the Policy Department of the International Underwriting Association of London



THALES 066971

SECTION THREE

Assured is requested to read this Policy and, if it is incorrect, return it immediately for
ation.

ll communications the Policy Number appearing in line one of the Schedule should be
ed.

he event of any occurrence likely to result in a claim under this Policy immediate
ce should be given to:

ı Limited
ⱪander House
-207 Kings Road
ding
kshire
ı 4LW

DY000251W

THALES 066972

SECTION THREE

## CONTENTS

Policy No.      633/DY000251W

The Insured:   Thales Plc and as more fully described herein.


### EXCESS PROFESSIONAL INDEMNITY INSURANCE


Schedule

W.G.S. Excess Wording

Endorsements and Attachments.

DY000251W

THALES 066973

SECTION THREE

[EREVER THE WORDS "ASSURED" AND "UNDERWRITERS" SHALL
PEAR THROUGHOUT THE ENTIRETY OF THIS POLICY THEY SHALL BE
EMED TO BE DELETED AND REPLACED WITH "INSURED" AND
SURERS"

## SCHEDULE

icy No.:        633/DY000251W

URED:        Thales Plc and its subsidiary companies
             Thales TRC Inc and its subsidiary companies
             Thomson Marconi Sonar NV and its subsidiary
             Companies
             Thomson Support Services Limited
             Quintec Associates Limited

DRESS:       Western Road
             Bracknell
             Berkshire
             RG12 1RG

RIOD:        From: 11th March, 2002        To:    31st December, 2002
             Both days inclusive

REON:        55.00% of 100.00% of liabilities stated herein.

MIT OF INDEMNITY:          £3,500,000 any one claim and in all (including costs
                           and expenses)

CESS:                      £3,500,000 any one claim and in all (including costs
                           and expenses)

NDITIONS:    As per underlying Policy

EMIUM:       £133,808.40 plus £1,893.39 Insurance Premium Tax being this
             Policy's proportion

TED IN LONDON:    11th July, 2002

DY000251W

THALES 066974

SECTION THREE

A.W.G.S. EXCESS WORDING

(COSTS INCLUSIVE)

ATTACHING to and forming part of Policy No: 633/DY000251W

To indemnify the Assured for claim or claims First Made against the Assured during the Period of Insurance hereon up to this Policy's amount of liability (as hereinafter specified) in the aggregate, the excess of the Underlying Policy/ies limits (as hereinafter specified) in the aggregate, the latter amount being the subject of Indemnity Policy/ies (as hereinafter specified) or any Policy/ies issued in substitution or renewal thereof for the same amount effected by the Assured and hereinafter referred to as "the Underlying Policy/ies".

| | |
|---|---|
| This Policy's amount of liability | £3,500,000 any one claim and in all (including costs and expenses) |
| Underlying Policy/ies limits | £3,500,000 any one claim and in all (including costs and expenses) |
| Underlying Policy/ies Number/s | 633/ DY112725W |

1.   Liability to pay under this Policy shall not attach unless and until the Underwriters of the Underlying Policy/ies shall have paid or have admitted liability or have been held liable to pay, the full amount of their indemnity inclusive of costs and expenses.

2.   It is a condition of this Policy that the Underlying Policy/ies shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims or of legal costs and expenses incurred in defence or settlement of such claims.

3.   If by reason of the payment of any claim or claims or legal costs and expenses by the Underwriters of the Underlying Policy/ies during the Period of this Insurance, the amount of indemnity provided by such Underlying Policy/ies is:-

(a)   Partially reduced, then this Policy shall apply in excess of the reduced amount of the Underlying Policy/ies for the remainder of the Period of Insurance;

(b)   Totally exhausted, then this Policy shall continue in force as Underlying Policy until expiry hereof.

LSW 055 (10/85)                                    1 of 2                                    PIDLSW055

DY000251W

THALES 066975

SECTION THREE

4.  In the event of a claim arising to which the Underwriters hereon may be liable to contribute, no costs shall be incurred on their behalf without their consent being first obtained (such consent not to be unreasonably withheld). No settlement of a claim shall be effected by the Assured for such a sum as will involve this Policy without the consent of Underwriters hereon.

5.  Any claim(s) made against the Assured or the discovery by the Assured of any loss(es), or any circumstances of which the Assured becomes aware during the subsistence hereof which are likely to give rise to such a claim or loss, shall, if it appears likely that such claim(s) plus costs and expenses incurred in the defence or settlement of such claim(s) or loss(es) may exceed the indemnity available under the policy/ies of the Primary and Underlying Excess Insurers, be notified immediately by the Assured in writing to the Underwriters hereon.

6.  All recoveries or payments recovered or received subsequent to a loss settlement under this Policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters provided always that nothing in this Policy shall be construed to mean that loss settlements under this Policy are not payable until the Assured's ultimate net loss has been finally ascertained.

7.  Except as otherwise provided herein this Policy is subject to the same terms, exclusions, conditions and definitions as the policy of the Primary Insurers. No amendment to the policy of the Primary Insurers during the period of this Policy in respect of which the Primary Insurers require an additional premium or a deductible shall be effective in extending the scope of this Policy until agreed in writing by the Underwriters.

8.  If the Assured shall prefer any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claims hereunder shall be forfeited.

2 of 2

LSW 055 (10/85)

PIDLSW055

DY0002S1W

<u>ATTACHING TO AND FORMING PART OF POLICY NUMBER:</u>

<u>633/DY000251W</u>

.The Insured:    Thales Plc and as more fully described herein.
<u>ENDORSEMENT</u>

It is noted and agreed that with effect from 11th March, 2002 this policy is subject to the following:

1.    War and Terrorism Exclusion                        NMA2918
      As attached

      Premium Payment Warranty                            LSW 3000
      As attached

      Intellectual Property Rights (United States of America and Canada) Exclusion
      As attached

2.    In the event that the Insured divest any part of their business and in the Insured's opinion the return premium offered by Underwriters is not adequate, the Insured may cancel this Policy and will receive a return premium from the Underwriters calculated on a pro rata basis in relation to the unexpired period.

3.    Clause 9.3 Non-disclosure and Misrepresentation contained within the Primary Policy Wording is deemed not to apply to this policy and is of no effect.

ALL OTHER TERMS AND CONDITION REMAIN UNALTERED

DY000251W

THALES 066977

## WAR AND TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

1.  war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2.  any act of terrorism.

    For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1 and/or 2 above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

08/10/01
NMA2918

DV000251W

THALES 066978

## PREMIUM PAYMENT CLAUSE

The (Re)Insured undertakes that premium will be paid in full to Underwriters within 60 days of inception of this policy (or, in respect of instalment premiums, when due).

If the premium due under this policy has not been so paid to Underwriters by the 60th day from the inception of this policy (and, in respect of instalment premiums, by the date they are due) Underwriters shall have the right to cancel this policy by notifying the (Re)Insured via the broker in writing.  In the event of cancellation, premium is due to Underwriters on a pro rata basis for the period that Underwriters are on risk but the full policy premium shall be payable to Underwriters in the event of a loss or occurrence prior to the date of termination which gives rise to a valid claim under this policy.

It is agreed that Underwriters shall give not less than 15 days prior notice of cancellation to the (Re)Insured via the broker.  If premium due is paid in full to Underwriters before the notice period expires, notice of cancellation shall automatically be revoked.  If not, the policy shall automatically terminate at the end of the notice period.

Unless otherwise agreed, the Leading Underwriter (and Agreement Parties if appropriate) are authorised to exercise rights under this clause on their own behalf and on behalf of all Underwriters participating in this contract.

If any provision of this clause is found by any court or administrative body of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability will not affect the other provisions of this clause which will remain in full force and effect.

Where the premium is to be paid through a London Market Bureau, payment to Underwriters will be deemed to occur on the day of delivery of a premium advice note to the Bureau.

11/01
LSW3000

DY000251W

THALES 066979

SECTION THREE

## INTELLECTUAL PROPERTY RIGHTS (USA/CANADA EXCLUSION)

It is hereby noted and agreed that Insurers shall not be liable for any claim arising out of unintentional breach or infringement of or unauthorised use of confidential information, trade secrets, trade marks, patents, copyrights, or the systems or programs of others, whether such breach, infringement or unauthorised use was unintentional or not.

This endorsement will only apply to any claims made or actions instituted:-

a.    within the United States of America and Canada or any territories which come within the jurisdiction of the United States of America and Canada.

b.    to enforce a judgement obtained in any Court of the United States of America and Canada or any territories which come within the jurisdiction of the United States of America and Canada.

DY000251W

THALES 066980

SECTION THREE

## LINES CLAUSE

This Insurance, being signed for 55.00% of 1000.00% insures only that proportion of any loss, whether total or partial, including but not limited to that proportion of associated expenses, if any, to the extent and in the manner provided in this Insurance.

The percentages signed in the Table are percentages of 100.00% of the amount(s) of Insurance stated herein.

MA2419

DY000251W

**Several Liability**

The subscribing Insurers' obligations under this contract are several and not joint and are limited solely to the extent of their individual signed subscriptions. The subscribing Insurers are not responsible for the subscription of any co-subscribing Insurer who for any reason does not satisfy all or part of its obligations.



Insurers Proportions

BUREAU REFERENCE        0205090005393

| PROPORTION % | CODE | MEMBER COMPANY AND REFERENCE |
|---|---|---|
| 30.0000000 | Z4508 | ZURICH SPECIALTIES LONDON LIMITED 701458902 |
| 12.5000000 | W3206 | WUERTTEMBERGISCHE VERSICHERUNG A.G. 100856000102 |
| 12.5000000 | F8205 | GE FRANKONA REINSURANCE LIMITED 0Z87045A02 |

55.0000000 %  TOTAL

Page 1 of 1

THALES 066982



# Lloyd's
# Co-insurance Policy

### (following a leading insurer)

**Whereas** the Assured named in the Schedule herein has paid the premium specified in the Schedule to the Underwriting Members of Lloyd's who have hereunto subscribed their Names (hereinafter called 'the Underwriters'),

**Now We The Underwriters** hereby agree to insure against loss, damage or liability the risk and sum insured stated in the Schedule on the same terms and conditions and at the same rates of the Company specified in the Schedule.

The Underwriters undertake, in the event of a loss, to pay their proportion, it being understood and agreed that the said Company shall, at the time of any loss, and at the same rate, cover at least their proportion stated in the Schedule (subject only to reduction by the amount of any loss not reinstated) for the same risk on the same subject matter, such proportion to be the same on each separate part thereof.

The period of this Insurance is as stated in the Schedule. This Insurance will be subject, without notice, to the general and special conditions, endorsements, assignments and alterations of rates as are or may be assumed in the Company's policy upon which this Insurance is based.

**Now Know Ye** that We the Underwriters, Members of the Syndicates whose definitive numbers in the after-mentioned List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves each for his own part and not one for another, our Executors and Administrators, and in respect of his due proportion only, to pay or make good to the Assured or the Assured's Executors or Administrators all such loss, damage or liability as aforesaid after such loss, damage or liability is proved.

**In Witness** whereof the General Manager of Lloyd's Policy Signing Office has subscribed his Name on behalf of each of Us.

*JBenjamin*

LLOYD'S POLICY SIGNING OFFICE
General Manager

FOR EMBOSSMENT BY
LLOYD'S POLICY SIGNING OFFICE

NMA2074 (17/7/80) Printed by the Corporation of Lloyd's

THALES 066983



THE ASSURED IS REQUESTED TO READ THIS POLICY. IF IT IS INCORRECT, PLEASE RETURN IT
IMMEDIATELY TO YOUR BROKER OR AGENT FOR ALTERATION.

IN ALL COMMUNICATIONS THE POLICY NUMBER APPEARING OVERLEAF SHOULD BE QUOTED

THALES 066984

THE SCHEDULE

Policy No: 633/DY000241W

Name of Assured:

    Thales Plc and as more fully defined in the Company's policy

Address of Assured:

    Western Road
    Bracknell
    Berkshire
    RG12 1RG

Period of Insurance:

    From:  11th March 2002

      To:  31st December 2002

        both days at the hour expressed in the Company's policy upon which this Policy is based.

The Risk and Sum Insured hereunder:

    Excess Professional Indemnity
    £3,000,000 in excess of £7,000,000

Leading Co-insuring Company:

    Liberty Mutual Insurance Company (U.K.) Limited
    with 50%

Premium:

    £12,164.40 being this Policy's proportion plus UK Insurance Premium Tax at the applicable rate

Dated in London the 2nd August 2002                002612219

17/7/80
NMA2074

Page 1 of 6

THALES 066985

SEVERAL LIABILITY NOTICE

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

08/94
LSW1001 (Insurance)

THALES 066986



The Table of Syndicates referred to on the face of this Policy follows:

| Syndicate Number | Percentage | Underwriters' References |
|---|---|---|
| 1211 | 10.00 | BG06063AA002 |
| **Total Lloyd's Line** | **10.00** | |

The list of Underwriting Members of Lloyd's is for the 2002 year of account

This Insurance, being signed for 10% insures only that proportion of any loss, whether total or partial, including but not limited to that proportion of associated expenses, if any, to the extent and in the manner provided in this Insurance.

The percentages signed in the Table are percentages of 100% of the amount(s) of Insurance stated herein.

LPSO Signing Number and Date or Reference: 21177 13/05/2002

THALES 066987



INTERNATIONAL
UNDERWRITING ASSOCIATION

## IUA Policy

We, the Insurers, hereby severally agree, in consideration of the payment to us, or the promise of payment to us, by the Insured of the premium specified in the Schedule, to insure against loss, damage, liability or expense in the proportion and the manner hereinafter provided. Each Insurer shall be liable only for its own respective proportion.

In witness whereof the name of the Chief Executive of the International Underwriting Association of London ("IUA") is subscribed on behalf of each of the IUA members and such entities not being members of the IUA who are participating in a qualifying consortium arrangement with the IUA members in accordance with the Memorandum and Articles of Association of the IUA.



_Marie - Louise Rossi_ _____ Chief Executive

This policy is not valid unless it bears the embossment of the Policy Department of the International Underwriting Association of London

THALES 066988



The Insured is requested to read this Policy and, if it is incorrect, return it immediately for alteration.

In all communications the Policy Number appearing in line one of the Schedule should be quoted.

In the event of any occurrence likely to result in a claim under this Policy immediate notice should be given to:

Aon Limited
Professional Risks
Alexander House
205-207 Kings Road
Reading
Berkshire
RG1 4LW



THALES 066989

## SCHEDULE

POLICY NO:       633/DY000241W

THE NAME AND ADDRESS OF THE INSURED

Thales Plc and as more fully described in the Co-Insuring Policy
Western Road
Bracknell
Berkshire
RG12 1RG

PERIOD OF INSURANCE

FROM:     11th March, 2002    TO:    31st December, 2002
Both Days Inclusive

RISK:      EXCESS PROFESSIONAL INDEMNITY INSURANCE

SUM(S) INSURED:   32.50%of 100.00% of liabilites stated herein.

LIMITS OF
INDEMNITY:    £3,000,000 any one claim and in all (including costs and expenses)

ALL AS MORE FULLY SET FORTH IN THE COINSURING POLICY.

THE PREMIUM:   £39,534.30 plus £559.41 Insurance Premium Tax being this Policy's
proportion

This Policy is subject to the same terms, conditions, limitations and exclusions as more fully
defined in Policy Number 633/ DY000241W signed on behalf of Liberty Mutual Insurance
Company on the identical subject matter and risk.

DATED IN LONDON THE  12th July, 2002

Form Co-Insuring Sched.
Aon July 1997

THALES 066990

ATTACHING TO AND FORMING PART OF POLICY NUMBER:

633/DY000241W

### LINES CLAUSE

This Insurance, being signed for 32.50% of 100.00% insures only that proportion of any loss, whether total or partial, including but not limited to that proportion of associated expenses, if any, to the extent and in the manner provided in this Insurance.

The percentages signed in the Table are percentages of 100.00% of the amount(s) of Insurance stated herein.

NMA2419



THALES 066991

## Several Liability

The subscribing Insurers' obligations under this contract are several and not joint and are limited solely to the extent of their individual signed subscriptions. The subscribing Insurers are not responsible for the subscription of any co-subscribing Insurer who for any reason does not satisfy all or part of its obligations.

### Insurers Proportions

**BUREAU REFERENCE**    0205090005377

| PROPORTION % | CODE | MEMBER COMPANY AND REFERENCE |
|---|---|---|
| 12.5000000 | Z4508 | ZURICH SPECIALTIES LONDON LIMITED 701458802 |
| 20.0000000 | F8205 | GE FRANKONA REINSURANCE LIMITED OZ87048A02 |

32.5000000 %  TOTAL

Page 1 of 1

THALES 066992

# COMPANIES COLLECTIVE POLICY

IN CONSIDERATION of the Insured named in the Schedule hereto having paid the premium set forth in the said Schedule to the Insurers who have subscribed their Names (hereinafter referred to as "the Insurers")

THE INSURERS HEREBY AGREE for the proportion set forth herein to indemnify the Insured or the Insured's Executors, Administrators and Assigns against Loss as more fully set forth in the attached wording and any amendments which are endorsed hereon during the period of Insurance stated in the said Schedule or during any subsequent period of Insurance stated in the said Schedule or during any subsequent period as may be mutually agreed upon between the Insured and the Insurers.

PROVIDED that the liability of the Insurers shall not exceed the Sum Insured expressed in the said Schedule.

If the Insured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

IN WITNESS WHEREOF I, being a representative of the Insurers and authorised by the said Insurers to sign this Policy on their behalf, have hereunto subscribed my name this 30th day of December Two Thousand and Two



DY000241W

THALES 066993

| The Insurers | Proportion | Reference Numbers |
|---|---|---|
| Liberty Mutual Insurance Company(UK) Limited Trading As: Liberty International Underwriters | 50.00% | 083661-001 |
| Gulf Insurance Company UK Limited | 7.50% | UK0699462 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

DY000241W

THALES 066994

The Assured is requested to read this Policy and, if it is incorrect, return it immediately for alteration.

In all communications the Policy Number appearing in line one of the Schedule should be quoted.

In the event of any occurrence likely to result in a claim under this Policy immediate notice should be given to:

Aon Limited
Alexander House
205-207 Kings Road
Reading
Berkshire
RG1 4LW

DY000241W

THALES 066995

<u>CONTENTS</u>

Policy No.        633/DY000241W

The Insured:   Thales Plc and as more fully described herein.

### EXCESS PROFESSIONAL INDEMNITY INSURANCE

Schedule

W.G.S. Excess Wording

Endorsements and Attachments.

DY000241W

THALES 066996

WHEREVER THE WORDS "ASSURED" AND "UNDERWRITERS" SHALL
APPEAR THROUGHOUT THE ENTIRETY OF THIS POLICY THEY SHALL BE
DEEMED TO BE DELETED AND REPLACED WITH "INSURED" AND
"INSURERS"

## SCHEDULE

| | |
|---|---|
| **Policy No.:** | 633/DY000241W |
| **INSURED:** | Thales Plc and its subsidiary companies<br>Thales TRC Inc and its subsidiary companies<br>Thomson Marconi Sonar NV and its subsidiary<br>Companies<br>Thomsen Support Services Limited<br>Quintec Associates Limited |
| **ADDRESS:** | Western Road<br>Bracknell<br>Berkshire<br>RG12 1RG |

**PERIOD:**    From:  11th March, 2002        To:    31st December, 2002
Both days inclusive

**HEREON:**    57.500% of 100.00% of liabilities stated herein.

**LIMIT OF INDEMNITY:**    £3,000,000 any one claim and in all (including costs
and expenses)

**EXCESS:**    £7,000,000 any one claim and in all (including costs
and expenses)

**CONDITIONS:**    As per underlying Policy

**PREMIUM:**    £69,945.30 plus £989.73 Insurance Premium Tax being this Policy's
proportion

**DATED IN LONDON:**    11th July, 2002

DY000241W

THALES 066997

### A.W.G.S. EXCESS WORDING

### (COSTS INCLUSIVE)

ATTACHING to and forming part of Policy No: 633/DY000241W

To indemnify the Assured for claim or claims First Made against the Assured during the Period of Insurance hereon up to this Policy's amount of liability (as hereinafter specified) in the aggregate, the excess of the Underlying Policy/ies limits (as hereinafter specified) in the aggregate, the latter amount being the subject of Indemnity Policy/ies (as hereinafter specified) or any Policy/ies issued in substitution or renewal thereof for the same amount effected by the Assured and hereinafter referred to as "the Underlying Policy/ies".

| | |
|---|---|
| This Policy's amount of liability | £3,000,000 any one claim and in all (including costs and expenses) |
| Underlying Policy/ies limits | £7,000,000 any one claim and in all (including costs and expenses) |
| Underlying Policy/ies Number/s | 633/ DY112725W & 633/DY000251W |

1. Liability to pay under this Policy shall not attach unless and until the Underwriters of the Underlying Policy/ies shall have paid or have admitted liability or have been held liable to pay, the full amount of their indemnity inclusive of costs and expenses.

2. It is a condition of this Policy that the Underlying Policy/ies shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims or of legal costs and expenses incurred in defence or settlement of such claims.

3. If by reason of the payment of any claim or claims or legal costs and expenses by the Underwriters of the Underlying Policy/ies during the Period of this Insurance, the amount of indemnity provided by such Underlying Policy/ies is:-

    (a) Partially reduced, then this Policy shall apply in excess of the reduced amount of the Underlying Policy/ies for the remainder of the Period of Insurance;

    (b) Totally exhausted, then this Policy shall continue in force as Underlying Policy until expiry hereof.

1 of 2

LSW 055 (10/85)                                                      PIDLSW055

DY000241W

THALES 066998

4.  In the event of a claim arising to which the Underwriters hereon may be liable to contribute, no costs shall be incurred on their behalf without their consent being first obtained (such consent not to be unreasonably withheld). No settlement of a claim shall be effected by the Assured for such a sum as will involve this Policy without the consent of Underwriters hereon.

5.  Any claim(s) made against the Assured or the discovery by the Assured of any loss(es), or any circumstances of which the Assured becomes aware during the subsistence hereof which are likely to give rise to such a claim or loss, shall, if it appears likely that such claim(s) plus costs and expenses incurred in the defence or settlement of such claim(s) or loss(es) may exceed the indemnity available under the policy/ies of the Primary and Underlying Excess Insurers, be notified immediately by the Assured in writing to the Underwriters hereon.

6.  All recoveries or payments recovered or received subsequent to a loss settlement under this Policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters provided always that nothing in this Policy shall be construed to mean that loss settlements under this Policy are not payable until the Assured's ultimate net loss has been finally ascertained.

7.  Except as otherwise provided herein this Policy is subject to the same terms, exclusions, conditions and definitions as the policy of the Primary Insurers. No amendment to the policy of the Primary Insurers during the period of this Policy in respect of which the Primary Insurers require an additional premium or a deductible shall be effective in extending the scope of this Policy until agreed in writing by the Underwriters.

8.  If the Assured shall prefer any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claims hereunder shall be forfeited.

2 of 2

LSW 055 (10/85)                                      PIDLSW055

DY000241W

THALES 066999

<u>ATTACHING TO AND FORMING PART OF POLICY NUMBER:</u>

<u>633/DY000241W</u>

The Insured:   Thales Plc and as more fully described herein.
<u>ENDORSEMENT</u>

It is noted and agreed that with effect from 11th March, 2002 this policy is subject to the following:

1.     War and Terrorism Exclusion                              NMA2918
       As attached

       Premium Payment Warranty                            LSW 3000
       As attached

       Intellectual Property Rights (United States of America and Canada) Exclusion
       As attached

2.     In the event that the Insured divest any part of their business and in the Insured's opinion the return premium offered by Underwriters is not adequate, the Insured may cancel this Policy and will receive a return premium from the Underwriters calculated on a pro rata basis in relation to the unexpired period.

       Clause 9.3 Non-disclosure and Misrepresentation contained within the Primary Policy Wording is deemed not to apply to this policy and is of no effect.

ALL OTHER TERMS AND CONDITION REMAIN UNALTERED

DY000241W

THALES 067000

## WAR AND TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

1.  war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2.  any act of terrorism.

    For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1 and/or 2 above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

08/10/01
NMA2918

DY000241W

THALES 067001

## PREMIUM PAYMENT CLAUSE

The (Re)Insured undertakes that premium will be paid in full to Underwriters within 60 days of inception of this policy (or, in respect of instalment premiums, when due).

If the premium due under this policy has not been so paid to Underwriters by the 60th day from the inception of this policy (and, in respect of instalment premiums, by the date they are due) Underwriters shall have the right to cancel this policy by notifying the (Re)Insured via the broker in writing. In the event of cancellation, premium is due to Underwriters on a pro rata basis for the period that Underwriters are on risk but the full policy premium shall be payable to Underwriters in the event of a loss or occurrence prior to the date of termination which gives rise to a valid claim under this policy.

It is agreed that Underwriters shall give not less than 15 days prior notice of cancellation to the (Re)Insured via the broker. If premium due is paid in full to Underwriters before the notice period expires, notice of cancellation shall automatically be revoked. If not, the policy shall automatically terminate at the end of the notice period.

Unless otherwise agreed, the Leading Underwriter (and Agreement Parties if appropriate) are authorised to exercise rights under this clause on their own behalf and on behalf of all Underwriters participating in this contract.

If any provision of this clause is found by any court or administrative body of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability will not affect the other provisions of this clause which will remain in full force and effect.

Where the premium is to be paid through a London Market Bureau, payment to Underwriters will be deemed to occur on the day of delivery of a premium advice note to the Bureau.

11/01
LSW3000

DY000241W

THALES 067002

## INTELLECTUAL PROPERTY RIGHTS (USA/CANADA EXCLUSION)

It is hereby noted and agreed that Insurers shall not be liable for any claim arising out of unintentional breach or infringement of or unauthorised use of confidential information, trade secrets, trade marks, patents, copyrights, or the systems or programs of others, whether such breach, infringement or unauthorised use was unintentional or not.

This endorsement will only apply to any claims made or actions instituted:-

a.     within the United States of America and Canada or any territories which come within the jurisdiction of the United States of America and Canada.

b.     to enforce a judgement obtained in any Court of the  United States of America and Canada or any territories which come within the jurisdiction of the United States of America and Canada.

DY000241W

THALES 067003

## LINES CLAUSE

This Insurance, being signed for 57.500% of 100.000% insures only that proportion of any loss, whether total or partial, including but not limited to that proportion of associated expenses, if any, to the extent and in the manner provided in this Insurance.

The percentages signed in the Table are percentages of 57.500% of 100.00% of the amount(s) of Insurance stated herein.

NMA2419

DY000241W

THALES 067004

# COMPANIES
# COLLECTIVE
# POLICY

---

### Policy No:633/DY000241W

Name: Thales Plc as more fully described herein

Expiry Date: 31st December, 2002

DY000241W

THALES 067005

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF HORIZON VESSELS, INC., AS OWNER, and HORIZON OFFSHORE CONTRACTORS, INC., HORIZON OFFSHORE, INC., and TEXAS OFFSHORE CONTRACTORS CORP., AS OWNERS, OPERATORS, OWNERS PRO HAC VICE, OF THE L/B GULF HORIZON, PRAYING FOR EXONERATION FROM OR LIMITATION OF LIABILITY REGARDING THE INCIDENT OF FEBRUARY 27, 2003 | § § § § § § § § § § § § § | CIVIL ACTION NO. H-03-3280 (ADMIRALTY) Rule 9(h) THALES GEOSOLUTIONS, INC.'S INITIAL DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26 |
| Plaintiffs | | |

NOW COMES Claimant Thales GeoSolutions, Inc. ("Thales"), by and through its attorneys Akin Gump Strauss Hauer & Feld LLP and Thacher Proffitt & Wood LLP, and submits the initial disclosures required by Rule 26(a)(1) of the Federal Rules of Civil Procedure as follows:

A.    The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.

Walt Dunham
Anchor Foreman
Horizon Offshore Contractors, Inc.

Don Ramsey
Winch Operator
Horizon Offshore Contractors, Inc.

"Jimbo"
Deck Foreman
Horizon Offshore Contractors, Inc.

David Kyle
Project Manager
Horizon Offshore Contractors, Inc.

Larry Blalock
Barge Superintendent
Horizon Offshore Contractors, Inc.

Ken Pierce
Iroquois Gas Transmission System L.P.

Glen Chaffey
Iroquois Gas Transmission System L.P./Pegasus International, Inc.

Mark Dreyer
Party Chief
Thales Geosolutions, Inc.

Captain
MV MISS JESSICA
North Bank Towing Corp.

B.    **A copy of, or a description by category and location of, all documents, data
compilations, and tangible things that are in the possession, custody, or control of
the party and that the disclosing party may use to support its claims or defenses,
unless solely for impeachment.**

1.    Master Service Agreement No. 98-3083 between Horizon Offshore Contractors,
Inc. and Racal NCS, Inc. (Bates Thales 000001 - Thales 000022)

2.    Letter agreement between Horizon Offshore Contractors, Inc. and Thales
GeoSolutions, Inc. dated July 27, 2001 (Bates Thales 000023)

3.    Letter agreement between Horizon Offshore Contractors, Inc. and Thales
GeoSolutions, Inc. dated September 10, 2002 (Bates Thales 000024 - Thales
000025)

4.    Technical Procedure, rev. October 21, 2002 (Bates Confidential Thales 000025 -
Thales 000078).

**C.**     **A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.**

Thales holds Horizon responsible for all damages that Thales may sustain by reason of claims allowed and adjudged against Thales, and for all moneys which Thales may be called upon to pay to other persons or corporations for losses arising from the Incident,[1] including but not limited to, consequential damages, punitive, exemplary and treble damages, as well as interest, reasonable costs and its attorneys' fees.

It is currently not possible to state the amount of any claims that may be allowed or proved against Thales arising from the Incident. To the extent that the damages resulting from the Incident are quantifiable at this point, they are expected to be in excess of $20 million.

**D.**     **Any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.**

Thales will produce a copy of its relevant policy of insurance.

---

[1] The "Incident" is that alleged incident on or about February 27, 2003, when an anchor deployed by the L/B GULF HORIZON, which was allegedly owned and operated by the Horizon Interests, allegedly snagged and damaged a submarine power cable and related transmission and distribution systems located on the seabed of the Long Island Sound.

These initial disclosures are based upon the information reasonably available to Thales at this time. Thales reserves the right to supplement or amend the disclosures in the event that additional information or documentation becomes available.

Dated: May 17, 2004

AKIN GUMP STRAUSS HAUER & FELD LLP

By: _R. Laurence Macon (by JPDoherty w/ permission)_

R. Laurence Macon
Melanie G. Cowart
300 Convent Street, Suite 1500
San Antonio, Texas 78205
(210) 281-7000

THACHER PROFFITT & WOOD LLP

By: _John P. Doherty_

John M. Woods (*pro hac vice*)
John P. Doherty (*pro hac vice*)
Brendan E. Zahner (*pro hac vice*)
Amie S. Murphy (*pro hac vice*)
Two World Financial Center
New York, New York 10281
(212) 912-7400

*Attorneys for Thales GeoSolutions, Inc.*

United States Courts
Southern District of Texas
FILED

AUG 2 5 2005

 Michael N. Milby, Clerk of Court

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

IN THE MATTER OF HORIZON VESSELS,
INC., AS OWNER, and HORIZON
OFFSHORE CONTRACTORS, INC.,
HORIZON OFFSHORE, INC., and TEXAS
OFFSHORE CONTRACTORS CORP., AS
OWNERS, OPERATORS, OWNERS PRO
HAC FICE, OF THE L/B GULF HORIZON,
PRAYING FOR EXONERATION FROM OR
LIMITATION OF LIABILITY REGARDING
THE INCIDENT OF FEBRUARY 27, 2003

CIVIL ACTION NO. H-03-3280

**ADMIRALTY RULE 9(h)**

Plaintiffs.

**AMENDED CLAIM AGAINST PETITIONERS**
**AND CROSS-CLAIMS AGAINST THALES GEO SOLUTIONS, INC.**

Claimant IROQUOIS GAS TRANSMISSION SYSTEM, L.P. by its attorneys

McLeod Powell Alexander & Apfell, hereby claims against petitioners in limitation

Horizon Vessels, Inc., Horizon Offshore Contractors, Inc., Horizon Offshore, Inc., and

Texas Offshore Contractors Corp. (hereafter collectively the "Horizon Group" or

"Petitioners") as follows:

1.    This is an admiralty or maritime claim within the meaning of Rule 9(h) of

the Federal Rules of Civil Procedure.

2.    Claimant Iroquois Gas Transmissions System, L.P. ("Iroquois") is a Delaware Limited Partnership with its principal place of business at Shelton, Connecticut.

3.    On information and belief, at all relevant times the Horizon Group were and still are corporations organized and existing under the laws of the state of Delaware, having a place of business in Houston, Texas.

4.    On information and belief, at all relevant times one or more companies in the Horizon Group, including Horizon Offshore Contractors, Inc. ("Horizon"), were and still are the owners and operators of the vessel L/B GULF HORIZON.

5.    Iroquois is the owner of a 377-mile natural gas pipeline extending from the United States-Canadian border to Northport, Long Island, New York.  The pipeline is operated by Iroquois' agent, Iroquois Pipeline Operating Company ("IPOC"), also headquartered in Shelton, Connecticut.

6.    On April 12, 2002, Iroquois, through IPOC acting as agent for a disclosed principal, entered into a contract with Horizon whereby Horizon undertook as general contractor to construct a 35-mile long underwater extension to Iroquois' existing pipeline to cross Long Island Sound between Northport, Long Island and Hunts Point in the Bronx, New York (the "Contract").  The construction project is known as the Eastchester Extension.

7.    The Contract obligated Horizon, among other things, to provide all labor,

supervision, equipment and vessels necessary to construct the pipeline, and contained the

following relevant provisions:

- Paragraph 11.1.3 provides that Horizon will indemnify and hold Iroquois harmless from all liabilities or damages for "any damage to property or any losses of any kind suffered by third parties" which are caused by the breach of Horizon's obligations under the Contract or "the negligence of [Horizon] or its Subcontractors in carrying out its responsibilities under this agreement".

- Paragraph 4.1 of the Contract requires Horizon to diligently perform the work after commencement and to acquire the necessary additional equipment, hire additional manpower and perform other acts necessary to avoid delay in the completion of the pipeline.

- Paragraph 13.1 "warrants" that Horizon's work shall be "new, free of defects in construction and workmanship and shall conform to the Final project plans and specifications and descriptions set forth herein and all other requirements of this Contract".

- Paragraph 14.2 requires Horizon to "do the work in a workmanlike manner by qualified, careful and efficient workers in strict conformity with the contract."

- Paragraph 8.1 requires Horizon to use "reasonable care to properly maintain and operate the vessels under its control".

- Paragraph 10.4 provides that Horizon shall be fully responsible for any act or omission of its subcontractors.

- Paragraph 16.4 of the Contract provides that "the Contract shall be governed by and construed and enforced in accordance with the substantive laws of the State of New York, exclusive of conflicts of laws provisions" and further provides that any action or proceeding arising from or in connection with the Contract "shall be brought in a state or federal court of appropriate jurisdiction in New York State".

8.    Horizon was to perform the contract in three stages. The first stage required Horizon to weld the sections of pipe together to form a continuous pipeline and lower that pipeline to the bottom of Long Island Sound along the specified route. The second stage of the Contract required Horizon, after all 35 miles of the pipeline was welded and resting on the seabed, to trench the sea bottom, place the pipe in the trench and then backfill the trench so that the pipe was buried below the sea bottom up to depths of 10 feet. The third stage required Horizon, among other things, to place concrete mattresses over the pipe where it crossed NYPA's cables and cover the pipeline between NYPA's cables with rock as protection.

9.    Horizon commenced work under the Contract on or about November 6, 2002. To fulfill its obligations under the Contract, Horizon utilized the L/B GULF HORIZON, one of the vessels in its fleet. Horizon also subcontracted for the use of other vessels, including contracting with Don Jon Marine Co., Inc. and Weeks Marine, Inc. for the use of tugs to assist in the pipe-laying operations.

10.    Horizon subcontracted with Thales Geo Solutions, Inc. to provide surveying and positioning services for Horizon during the construction. To perform its obligations under its subcontract with Horizon, Thales placed positioning equipment on board the L/B GULF HORIZON and on board the anchor-handling tugs that were assisting the Gulf Horizon in the pipe laying operations. Thales also provided surveyors who lived and worked on board the L/B GULF HORIZON during the pipeline project to operate and monitor Thales' positioning equipment.

44. Horizon's hull insurers have advised that Horizon agrees with their position.

45. Had Horizon's hull insurers provided coverage, they promptly would have indemnified Iroquois for any liability Iroquois would be found to have to NYPA, FMIC, LIPA or any other entity as a result of the alleged NYPA cable strike, and would have indemnified Iroquois for the costs and attorneys' fees incurred in the investigation and defense of this action, up to the policy limits and in excess of the deductible.

46. Horizon's alleged failure to provide timely notice to its hull insurers is a breach of Horizon's aforesaid contractual obligations to Iroquois to maintain the hull insurance and a breach of said insurance, which has caused Iroquois damages and may cause Iroquois to suffer further damages up to $17 million dollars (in excess of $500,000), representing the insurance coverage that is unavailable to Iroquois.

47. Horizon also procured a policy of insurance through AEGIS, on which policy Iroquois was named as an additional insured. That policy provided $1 million of coverage in excess of $50,000. AEGIS has also refused to provide coverage to Iroquois.

48. Horizon has failed to indemnify Iroquois in accordance with its contractual obligations, notwithstanding demands from Iroquois that it do so.

49. Accordingly, in the event Iroquois is found liable to NYPA, LIPA, FMIC or any other entity for the alleged damage to NYPA's cable, then Iroquois is entitled to

indemnification by Petitioners for all such liability up to $17.5 million and judgment should be entered in favor of Iroquois for that amount.

50.    Regardless of whether Iroquois is found liable to NYPA, LIPA, FMIC or any other entity, Iroquois is entitled to indemnity for all costs and attorneys' fees incurred in investigating and defending this action and in pursuing this claim against Horizon, as Iroquois would not have suffered such losses but for Horizon's breach. Iroquois also is entitled to indemnity for all attorneys' fees and costs incurred in pursuing coverage from Horizon's insurers.

## SIXTH CLAIM AGAINST PETITIONERS--INDEMNITY AND BREACH OF CONTRACT

51.    The Contract required Horizon to require Horizon's subcontractors to name Iroquois as an additional insured on all of Horizon's subcontractors' insurance policies.

52.    Thales, one of Horizon's subcontractors, failed to name Iroquois as an additional insured on its policies.

53.    Horizon therefore is in breach of its obligations to Iroquois under the contract and is liable to Iroquois for all consequences thereof.

54.    Had Thales named Iroquois as an additional insured on its policies, Thales' insurers would have indemnified Iroquois for any liability Iroquois is found to have to NYPA, FMIC, LIPA or any other entity as a result of the alleged NYPA cable strike, and would have provided Iroquois with coverage for the costs and attorneys' fees incurred

during the investigation and defense of this action that would have been primary to Iroquois' insurance.

55.    Accordingly, if Iroquois is determined to have any liability to NYPA, FMIC, LIPA or any other entity as a result of the alleged cable strike, then Iroquois is entitled to indemnify from Horizon for all such liability.

56.    In addition, whether or not Iroquois is determined to have any liability, Iroquois is entitled to indemnity for all costs and attorneys' fees incurred to investigate and defend this action, as well as the costs and attorneys' fees incurred to pursue this indemnity claim, as such losses were directly caused by Horizon's aforesaid breach.

## GENERAL ALLEGATIONS AGAINST
## PETITIONERS AND RESERVATION OF RIGHTS

57.    Neither Horizon nor the Horizon Group is entitled to the benefits or protections of the Shipowner's Limitation of Liability Act, 46 U.S.C. § 181 et seq. (the "Limitation Act") and Iroquois is not subject to Petitioners' limitation proceeding with respect to this claim because Iroquois' claim is based on Horizon's personal contractual undertakings in the Contract, including Horizon's personal contractual undertaking to indemnify and hold Iroquois harmless from all such liability. Iroquois therefore is free to pursue any or all of its claims outside of the limitation proceeding.

58.    In the alternative, neither Horizon nor the Horizon Group is entitled to the benefits or protections of the Limitation Act because the casualty resulted from a cause that was within the privity and knowledge of Horizon and/or the Horizon Group.

59.    Petitioners' Complaint is vague, indefinite and does not define the voyage for which Petitioners seek exoneration or limitation.  Iroquois therefore reserves the right to supplement this claim as events and additional facts may warrant, including the right to modify or withdrawal any of the claims asserted herein and/or to add new claims by Iroquois and/or IPOC.

## FIRST CROSS-CLAIM AGAINST THALES

60.    Iroquois repeats and realleges the allegations contained in paragraphs 1 through 59 as if set forth in full herein.

61.    If any damage was caused to NYPA's cables, then such damage was caused in whole or in part by Thales' negligence, gross negligence, recklessness, fault or lack of due care in the performance of Thales' surveying and positioning duties in connection with the Iroquois pipeline project, and not by any act or omission on the part of Iroquois.

62.    Accordingly, should Iroquois be found liable to NYPA, FMIC, LIPA, or any other entity for damage to NYPA's cable, then Iroquois is entitled to indemnification or contribution for any and all such liability, as well as for all costs and attorneys' fees incurred in investigating and defending this action.

## SECOND CROSS-CLAIM AGAINST THALES

63.    Iroquois repeats and realleges the allegations contained in paragraphs 1 through 62 as if set forth herein in full.

64.    The contract between Horizon and Thales required Thales to indemnify and defend Horizon and Horizon's "customers" for any liability "incident to or connected with the performance of work under this Agreement or breach thereof."

65.    The alleged damage to NYPA's cable occurred during and was incident to and connected with Thales' provision of surveying and positioning services to Horizon under the Horizon/Thales Contract, and Thales' acts or omissions and/or breach of the Horizon/Thales contract caused or contributed to the alleged incident.

66.    Iroquois was Horizon's "customer" as contemplated in the Horizon/Thales contract, Thales and Horizon intended for Iroquois to be covered by and to benefit from said provision of the Horizon/Thales Contract, and Iroquois therefore is a third-party beneficiary of such contract.

67.    Thales has failed to indemnify Iroquois pursuant to said contractual provisions, notwithstanding demands that Thales do so.

68.    Accordingly, if Iroquois is determined to have any liability to NYPA,
LIPA, FMIC or any other entity as a result of the incident, then Iroquois is entitled to
indemnity from Thales for such liability and judgment should be entered accordingly.

69.    In addition, whether or not Iroquois is determined to have any liability,
Iroquois is entitled to indemnification for all costs and attorneys' fees incurred to
investigate and defend this action, as well as the costs and attorneys' fees incurred to
pursue this indemnity claim, as such losses were directly caused by Thales' breach of its
contractual indemnity obligations.

## THIRD CROSS-CLAIM AGAINST THALES

70.    Iroquois repeats and realleges the allegations set forth in paragraphs 1
through 69 as if set forth in full herein.

71.    The Horizon/Thales contract provided that Thales would procure certain
insurance sufficient to cover the maximum liability for the claims alleged in this action.

72.    The Iroquois/Horizon Contract required Horizon to require its
subcontractors to name Iroquois as an additional insured under Horizon's insurance
policies and the Horizon/Thales contract required Thales to name Iroquois as an
additional insured under Thales' insurance policies.

73.    This insurance was to be primary to any other insurance of Horizon or
Iroquois.

74.    Horizon and Thales intended that Iroquois be covered by and benefit from said provision of the Horizon/Thales Contract and Iroquois therefore is a third-party beneficiary of such contract.

75.    Thales procured the required policies of insurance but, in breach of its contract with Horizon and in breach of its contractual obligations to Iroquois, failed to name Iroquois or Horizon as an additional insured in its insurance policies.

76.    Thales' policies, had they named Iroquois as an additional insured, would have indemnified Iroquois for any liability Iroquois may be found to have to NYPA, FMIC, LIPA or any other entity as a result of the alleged cable strike and would have provided Iroquois with coverage for the costs of investigation and defense of this action.

77.    Accordingly, should Iroquois be found liable to NYPA, LIPA, FMIC or any other entity in whole or in part for the damage claimed by those entities, then Iroquois is entitled to indemnity from Thales for Thales' breach of its obligation to name Iroquois as an additional insured on Thales' insurance policies.

78.    In addition, whether or not Iroquois is determined to have any liability, Iroquois is entitled to indemnification for all costs and attorneys' fees incurred to investigate and defend this action, as well as the costs and attorneys' fees incurred to pursue this indemnity claim, as such losses were directly caused by Thales' aforesaid breach of contract and would not have been incurred if Thales were not in breach.

282113.1

WHEREFORE, claimant Iroquois prays as follows:

a. That Petitioner's Complaint for Exoneration from or Limitation of Liability be dismissed in its entirety as to Iroquois based on the "personal contract doctrine" and/or that the limitation injunction be lifted to permit Iroquois to pursue its personal contract claims in the forum of its choice; or

b. In the alternative, that Petitioners' Complaint for Exoneration From or Limitation of Liability be denied in full and that Iroquois' claims against Petitioners for indemnity and breach of contract be granted in full;

c. That if Iroquois is determined to have any liability to NYPA, LIPA, FMIC or another entity as a result of the cable strike, Iroquois be granted judgment on its Cross-Claims against Thales for full indemnity or contribution as more fully specified in the Cross-Claims, for any such liability and, even if Iroquois is not found liable, that it be granted judgment against Thales for all costs and attorneys' fees incurred in connection with investigating and defending this action and pursuing its cross-claims;

d. That Iroquois be awarded its costs and attorneys' fees incurred in connection with this action; and

    e.  That Iroquois be granted such other and further relief as may be just and

appropriate.

Dated:       Houston, Texas
              August 1, 2005

                          By:    _Michael B. Hughes_

                                   Michael B. Hughes
                                   Attorney in Charge for Claimant
                                      Iroquois Gas Transmission Systems,
                                      L.P.
                                 Texas State Bar # 10227200
                                 P.O. Box 629
                                 Houston, Texas
                                 409-795-2018 (phone)
                                 409-726-1155 (fax)

\

                                 Richard V. Singleton
                                 (admitted *pro hac vice* )
                                 Healy & Baillie, LLP
                                 29 Broadway
                                 New York, NY  10006
                                 (212) 943-3980