HEALY & BAILLIE, LLP
Attorneys for Plaintiff
61 Broadway
New York, NY 10006-2834
(212) 943-3980
Richard V. Singleton (RS-9489)
John C. Koster (JK-4086)
David D. Jensen (DJ-2261)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IROQUOIS GAS TRANSMISSION SYSTEM L.P.,<br><br>           Plaintiff,<br><br>    -against-<br><br>ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LTD., Hamilton, Bermuda; CERTAIN UNDERWRITERS AT LLOYD'S; AON RISK SERVICES OF TEXAS, INC.; and AMERICAN HOME ASSURANCE CO.,<br><br>           Defendants. | (ECF Case)<br><br>05 Civ. 2149 (JSR) |

**PLAINTIFF IROQUOIS' *REPLY* MEMORANDUM OF LAW
IN FURTHER SUPPORT OF
IROQUOIS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I. IROQUOIS' MOTION FOR SUMMARY JUDGMENT IS BOTH TIMELY AND APPROPRIATE ..................................................................................................1

II. CHOICE OF LAW: TEXAS LAW APPLIES AS DEMONSTRATED BY THE INSURANCE CODES OF THE RESPECTIVE STATES ..................................1

III. THE PLAIN LANGUAGE OF THE LLOYD'S HULL POLICY REQUIRES LLOYD'S TO REIMBURSE THE DEFENSE COSTS INCURRED BY IROQUOIS ....................2

    a) Recovery under clause (b) is not contingent on recovery under clause (a) ..............2

    b) Lloyd's owes severable, independent duties to Iroquois and it does not matter that Iroquois and Lloyd's interests are partially adverse ..................................5

    c) Iroquois did not commence proceedings to limit the liability of the GULF HORIZON and thus did not need Lloyd's consent ....................................6

    d) Even if consent was required, Lloyd's is barred from demanding compliance because it has taken a position adverse to Iroquois ..................................8

IV. STANDING ...........................................................................................................9

V. BAD FAITH ..........................................................................................................9

CONCLUSION ..........................................................................................................10

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Abyaneh v. Merchants Bank*, 670 F. Supp. 1298 (M.D. Pa. 1987)..................1

*Bender Shipbuilding & Repair Co. v. Brasileiro*, 874 F.2d 1551 (11th Cir. 1989) ..........4

*Blaine Richards & Co. v. Marine Indemnity Insurance Co.*, 635 F.2d 1051 (2d Cir. 1980) ..........4

*Bluewaters, Inc. v. Boag*, 213 F. Supp. 473 (D. Mass. 1963) ..........3

*Cheek v. Williams-McWilliams Co.*, 697 F.2d 649 (5th Cir. 1983)..........3

*Coastal Iron Workers, Inc. v. Petty Ray Geophysical*, 783 F.2d 577, 1987 AMC 571 (5th Cir. 1986)..........8

*Eggers v. S. S.S. Co.*, 112 F.2d 347 (5th Cir. 1940) ..........5

*FDIC v. Booth*, 824 F. Supp. 76 (M.D. La. 1993)..........5

*Gon v. First State Insurance Co.*, 871 F.2d 863 (9th Cir. 1989) ..........5

*Gulf Mississippi Marine Corp. v. Continental Insurance Co.*, 566 F.2d 956 (5th Cir. 1978)..........6, 7

*Kirby Co. v. Hartford Casualty Insurance Co.*, No. 3:02-CV-1616, 2004 U.S. Dist. LEXIS 11736 (N.D. Tex. June 10, 2004)..........8

*Lanasse v. Travelers Insurance Co.*, 450 F.2d 580 (5th Cir. 1971) ..........4

*Little v. MGIC Indemnity Corp.*, 836 F.2d 789 (3d Cir. 1987)..........5

*Louisiana v. Louisiana Towing Co.*, 692 F.2d 18 (5th Cir. 1982)..........3, 4

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..........9

*Marine Transit Corp. v. N.W. Fire & Marine Insurance Co.*, 2 F. Supp. 489 (E.D.N.Y.), aff'd 67 F.2d 544 (2d Cir. 1933)..........9

*Norfolk Shipbuilding & Drydock Corp. v. Seabulk Transmarine Partnership, Ltd.*, No. 93-1312, 2000 U.S. Dist. LEXIS 14879 (E.D. Va. Oct. 4, 2000) ..........3

*Okada v. MGIC Indemnity Corp.*, 823 F.2d 276 (9th Cir. 1986) ..........5

*Pepsico, Inc. v. Cont'l Casualty Co.*, 640 F. Supp. 656 (S.D.N.Y. 1986) .......................... 5

*Stuyvesant Insurance Co. of New York v. Nardelli*, 286 F.2d 600 (5th Cir. 1961) ............. 3, 8, 9

## STATE CASES

*Comm'l Stand. Insurance Co. v. America General Insurance Co.*, 455 S.W.2d 714 (Tex. 1970) .............................................................................................................................. 6

*McQueen v. Stephens*, 100 S.W.2d 1053 (Tex. Ct. App. 1937) ........................................... 7

*National Union Fire Insurance Co. of Pittsburgh, Pa. v. Ambassador Group, Inc.*, 157 A.D.2d 293, 556 N.Y.S.2d 549 (1st Dept. 1990) ................................................................ 5

*Pecker Iron Works of N.Y., Inc. v. Traveler's Insurance Co.*, 99 N.Y.2d 391, 756 N.Y.S.2d 822 (2003) ............................................................................................................ 6

*Stracener v. U.S. Automobile Association*, 777 S.W.2d 378 (Tex. 1989) ............................ 7

## MISCELLANEOUS

Alex L. Parks, The Law and Practice of Marine Insurance and Average 702-03 (1987) ........ 5

Healy & Sweeney, The Law of Marine Collision 380 *et seq* ............................................... 7

Schoenbaum, Admiralty and Maritime Law 330 *et seq* ....................................................... 7

Texas Insurance Code § 21.42 ................................................................................................ 1

## IROQUOIS' RESPONSE TO LLOYD'S ANSWERING BRIEF

### I. IROQUOIS' MOTION FOR SUMMARY JUDGMENT IS BOTH TIMELY AND APPROPRIATE

Lloyd's argument that Iroquois' Summary Judgment motion is precluded by this Court's order of July 22, 2005 is in error since:

1. The order of July 25th does not limit any motion by Iroquois (nor does the colloquy at the July 22, 2005 hearing provide any justification for such a limitation). Any issue as to the scope of the stay in relation to Lloyd's did not limit the scope of the summary judgment motions to be presented by both Iroquois and Lloyd's.

2. In order to move to address the "late notice" issue at all, Iroquois must demonstrate that it is otherwise entitled to recover on its claim. See Abyaneh v. Merchants Bank, 670 F. Supp. 1298, 1300 (M.D. Pa. 1987). Any failure to do so would preclude Iroquois from addressing the "late notice" issue, save in response to Lloyd's motion. That was never Iroquois' intent.

Pursuit of a claim against Aon turns only on the result of the instant motions. American Home's position also turns in part on the result of the summary judgment motions. In either case a decision on these motions is required to fully determine the alignment of the other insurance coverages. A London arbitration award alone will not have that effect. Iroquois' action likewise is not barred by the order of the Texas Limitation Court (see Texas Court Order, Radzik Aff ex. X, pp. 16-17).[1]

### II. CHOICE OF LAW: TEXAS LAW APPLIES AS DEMONSTRATED BY THE INSURANCE CODES OF THE RESPECTIVE STATES

Lloyd's mistakenly contends that the Texas Insurance Code § 21.42 "is a choice of law statute," Lloyd's Opp. Br. at 7. Neither this section nor §§ 3103-04 of the New York Insurance Law are "choice of law" statutes. Instead, they reflect the interests asserted by the respective States in the subject matter of the Lloyd's Hull Policy. Specifically, Texas asserts regulatory control, and New York does not. The statutes are relevant to the "choice-of-law" analysis because

---

[1] Lloyd's incorrectly states at p. 20, n. 11 that discovery is to be completed in Texas by July 8, 2005. "Pacer" reveals that the current discovery cut-off date in the Limitation Proceeding is February 10, 2006, and even this date will likely be extended because of Hurricane Katrina.

they identify the contacts each respective State claims in the Hull Policy, which demonstrates that Texas has the greatest interest.

### III. THE PLAIN LANGUAGE OF THE LLOYD'S HULL POLICY REQUIRES LLOYD'S TO REIMBURSE THE DEFENSE COSTS INCURRED BY IROQUOIS

While Lloyd's acknowledges that Irouquois' claim is under clause (b), it argues that Iroquois is not entitled to recover *under clause (a)* because: (1) the insured vessel has not been found liable; and (2) Iroquois has not been compelled to pay a judgment. See Lloyd's Opp. Br. at 9-12, 19. Lloyd's superimposes clause (a) onto *clause (b)*, and then based on its tortured reading of the now combined clauses advances several arguments as to why Iroquois is not entitled to coverage under clause (b). None of Lloyd's arguments have merit.

#### a) Recovery under clause (b) is not contingent on recovery under clause (a)

While Lloyd's appears to agree that clause (b) is independent of clause (a), it goes on to contend that Iroquois cannot recover because no one knows whether Iroquois will ultimately be entitled to recover under clause (a). See id. at 12. Lloyd's thus contends that Iroquois must await the termination of the Texas litigation before it can recover its defense costs. This construction is equivalent to striking most of the operative language of clause (b) as follows:

> And it is further agreed that:
> (a) if the Vessel hereby insured shall come into collision or contact with any . . . structure, floating or otherwise . . . and the Assured,  . . . in consequence of the insured Vessel being at fault, shall become liable to pay and shall pay . . . the Underwriters, will pay the Assured . . . such proportion of such sum or sums so paid . . . .;
> (b) ~~in cases where the liability of the Vessel has been contested or proceedings have been taken to limit liability with the consent in writing, of a majority (in amount) of the Underwriters on the hull and machinery,~~ [and] we will also pay a like proportion of the costs which the Assured shall thereby incur or be compelled to pay.

The problem with Lloyd's argument is that clause (b) was *not* written in the above edited manner. While clause (a) applies only when the insured pays a judgment in consequence of the vessel's fault, clause (b) applies "where the liability of the Vessel has been contested." If the intent of the parties was to require coverage only when clause (a) requires indemnity, they would

2

have written the policy as indicated. Instead, Lloyd's promised to pay "incurred" costs when liability is "contested." Here, NYPA seeks to hold Iroquois liable for damages sustained when the GULF HORIZON allegedly struck a NYPA Power Cable. The liability of the GULF HORIZON is an issue (*the* issue) in the Limitation Proceeding, and Iroquois has incurred fees defending itself against the imposition of this liability. Nothing more is required.

Lloyd's contention that there is no coverage under clause (b) unless there is recovery under clause (a) has been rejected by at least two courts. First, the court in Stuyvesant Insurance Co. of New York v. Nardelli, 286 F.2d 600 (5th Cir. 1961), held that the additional insured could recover its defense costs under clause (b) even though it had *not* paid a judgment under clause (a). See id. at 603. Lloyd's attempts to distinguish Stuyvesant on the illogical ground that its fees "were, in fact, incurred in the defense of the vessel," while here, Iroquois "is defending cross-claims by asserting that the Vessel is liable." Lloyd's Opp. Br. at 19. But if clause (a) were tied to clause (b) in the manner argued by Lloyd's, the Fifth Circuit would not have granted relief because coverage under clause (a) had not been triggered. Second, the court in Louisiana v. Louisiana Towing Co., 692 F.2d 18 (5th Cir. 1982), likewise stated that the insurer must reimburse defense costs incurred to successfully defeat a claim that would have been within clause (a), if proven. See id. at 21.

The critical inquiry is whether the *risk* sued upon would be within the coverage of clause (a) if proven. See Norfolk Shipbuilding & Drydock Corp. v. Seabulk Transmarine P'ship, Ltd., No. 93-1312, 2000 U.S. Dist. LEXIS 14879, *14-18 (E.D. Va. Oct. 4, 2000); Bluewaters, Inc. v. Boag, 213 F. Supp. 473, 475-76 (D. Mass. 1963). Otherwise stated, "Lloyd's duty to reimburse [the insured] for the costs of its defense arises if [the insured]'s potential liability to [the plaintiff] would have been covered by the policy." Cheek v. Williams-McWilliams Co., 697 F.2d 649, 653 (5th Cir. 1983) (construing similar P&I provision requiring indemnity against defense costs).

Lloyd's attempts to confuse the issue by arguing that many different factors may have played a role in causing the insured vessel to allegedly strike the NYPA Cables. See Lloyd's Opp.

Br. at 12. These concerns are irrelevant because marine insurance policies "apply rather strictly the doctrine of *causa proxima non remota spectatur* ('the immediate not the remote cause is considered'), and hence [do] not attempt[] to trace the origin of losses back to their remote causes." Blaine Richards & Co. v. Marine Indem. Ins. Co., 635 F.2d 1051, 1054 (2d Cir. 1980). The immediate cause of all the Limitation Proceeding claims is the GULF HORIZON's allegedly faulty act of striking the NYPA Cables, regardless of any factors that may have contributed.

Although Lloyd's cites several cases to show that Iroquois cannot recover because inclusion of an additional insured does not enlarge an insurance policy's coverage, all are inapposite because they concern incidents in which the immediate cause of the loss was something other than a *covered risk*. In Louisiana Towing (referenced above) the additional insured sought to recover for liability imposed on an uninsured barge because the barge had been towed by an insured tug. See Louisiana, 692 F.2d at 19.[2] In fact, the Fifth Circuit went out of its way to note that the insurer *was* required to reimburse the insured for the fees it incurred resisting the claim against the insured tug, even though the insured never paid damages because the tug was exonerated. See id.

Bender Shipbuilding & Repair Co. v. Brasileiro, 874 F.2d 1551, 1553 (11th Cir. 1989), concerned an insured vessel (a drydock) that *damaged only itself* and thus was not within the coverage of the policy. In fact, the Eleventh Circuit went out of its way to note that liquidated damages *resulting from covered risks* would be covered under the policy. See id. at 1560-61. In The Fanny D the trial court found the tug entirely at-fault and imposed liability on the owner *in*

---

[2] The Fifth Circuit denied recovery of the main claim based on the "Lanasse rule" turning on the "as owner" language of the policy. Lanasse v. Travelers Ins. Co., 450 F.2d 580, 584 (5th Cir. 1971). Lloyd's concedes, Lloyd's Opp. Br. p. 10 n.3, that the Lanasse line of cases are "not exactly on point." In fact, in the absence of "as owner" language, they are not on point at all.

*personam*. See Eggers v. S. S.S. Co., 112 F.2d 347, 348 (5th Cir. 1940).³ The enduring teaching of The Fanny D is that it does not matter whether liability is *in rem* or *in personam* so long as the liability results from a covered risk -- a collision causing damage. See Alex L. Parks, The Law and Practice of Marine Insurance and Average 702-03 (1987).⁴

In sum, Lloyd's argument that clause (b) cannot apply because coverage might never be triggered under clause (a) contravenes the plain language of the Hull Policy and cuts against the authorities that have construed similar language to the Hull Policy.⁵ If Lloyd's did not want to pay for the defense of claims that seek damages from the insured vessel's contact with fixed objects, then it should not have underwritten the Hull Policy.

### b) Lloyd's owes severable, independent duties to Iroquois and it does not matter that Iroquois and Lloyd's interests are partially adverse

The language of the Policy provides that where the vessel's liability "has been contested" the Underwriters will pay "the costs which the Assured shall *thereby incur*" (emphasis added). Iroquois is thus entitled to recover its costs in defending a claim if the claim seeks to hold it liable

---

³ The significance of the "in consequence of the insured Vessel being at fault" language was that the at-fault tug was uninsured but was towing a barge that *was* insured. The inclusion of the phrase limits coverage to faults of the *insured* vessel. See infra note 4 and accompanying text.

⁴ Lloyd's cites the same pages in the same source. See Lloyd's Opp. Br. at 13; supra note 3.

⁵ It also cuts against the language of other policies promising indemnity against defense costs. For example, a directors and officers ("D&O") liability policy provides that the insurer "will pay . . . all Loss which the [insured] shall become legally obligated to pay" and then defines "Loss" as including amounts the insured is "legally obligated to pay . . . for a claim or claims made against the [insured] for Wrongful Acts and shall include but not be limited to . . . defense of legal actions." See Okada v. MGIC Indem. Corp., 823 F.2d 276, 278 (9th Cir. 1986). Courts have been relatively uniform in concluding that the D&O policy's promise to indemnify against Loss is triggered once the insured incurs defense costs, even though the insured has not been held liable to pay damages. See Okada at 280; see also Gon v. First State Ins. Co., 871 F.2d 863, 868 (9th Cir. 1989); Little v. MGIC Indem. Corp., 836 F.2d 789, 793-94 (3d Cir. 1987); FDIC v. Booth, 824 F. Supp. 76, 80-81 (M.D. La. 1993); Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ambassador Group, Inc., 157 A.D.2d 293, 299, 556 N.Y.S.2d 549, 553 (1st Dept. 1990). Moreover, they have been uniform in requiring payment of defense costs subject to a right of reimbursement where some claims may not ultimately be covered. See Gon, 871 F.2d at 868-69; Pepsico, Inc. v. Cont'l Cas. Co., 640 F. Supp. 656, 659 (S.D.N.Y. 1986); Nat'l Union, 157 A.D.2d at 299, 556 N.Y.S.2d at 553.

for a faulty act of the vessel that is covered by the Policy. This is undoubtedly the case here: NYPA's suit seeks to compel Iroquois to pay damages it sustained when the GULF HORIZON allegedly struck the NYPA Cables. Lloyd's dovetails its argument that Iroquois is not entitled to coverage unless it is "defending the liability of the insured vessel, or seeking to limit the liability of the insured vessel," Lloyd's Opp. Br. at 15, into its argument that it has been prejudiced because Iroquois and Horizon have adverse interests in the Limitation Proceeding. Lloyd's even asserts that it "would certainly not have permitted the instruction of duplicate counsel" to protect both insureds. See id. at 16-17.

The relevant inquiry is not what Lloyd's would have permitted, but what the language of the Policy requires. Lloyd's owes separate and independent duties to both Horizon and Iroquois. Comm'l Stand. Ins. Co. v. Am. Gen. Ins. Co., 455 S.W.2d 714, 721 (Tex. 1970) (a severability clause creates separate and independent duties to the named insured and additional insured); see also Pecker Iron Works of N.Y., Inc. v. Traveler's Ins. Co., 99 N.Y.2d 391, 393, 756 N.Y.S.2d 822, 823 (2003). The Hull Policy includes a cross-liability clause "where required by contract," and the Construction Contract requires Horizon's policies to include provisions that "in the event of one insured incurring liability to another insured, the policy or policies shall cover the insured against whom claim is or may be made, in the same manner as if separate policies had been issued to each insured." Radzik Aff., ex. E, H.[6] Hence, Lloyd's is obligated to provide separate coverage to each of its insureds and has no right to demand that the two share counsel.

### c) Iroquois did not commence proceedings to limit the liability of the GULF HORIZON and thus did not need Lloyd's consent

Lloyd's relies on Gulf Mississippi Marine Corp. v. Continental Insurance Co., 566 F.2d 956 (5th Cir. 1978), wherein the court construed an earlier version of the 1978 form incorporated

---

[6] Lloyd's devotes a section of its brief to the argument that no cross-liability or severability clause was "required by contract," but in the same brief it quotes this portion of the Construction Contract. See Lloyd's Opp. Br. at 3, 14-15. The Construction Contract's requirements are clear.

into the Hull Policy. That provision provided that coverage would apply "in cases where the liability of the Vessel has been contested or proceedings have been taken to limit liability, with the consent in writing, . . ." of the Underwriters. Id. at 956. The court concluded that the "consent" term modified both parts of the antecedent clause because: "There is no comma between the phrases describing the two different types of proceedings," and, by implication, because there <u>was</u> a comma after the words "taken to limit liability."

Lloyd's mistakenly focuses on the result of the case and ignores the reasoning. The case turned, in part, on the intent to be demonstrated from the placement of commas including the placement of the initial comma that was there -- a comma that is absent here. The missing comma is significant. Under the grammatical rule of the last antecedent, a word or phrase is presumed to modify only the words or phrases that immediately precede it. See <u>McQueen v. Stephens</u>, 100 S.W.2d 1053, 1058-59 (Tex. Ct. App. 1937) (applying to will). A comma generally indicates that the parties intended the modifying clause to apply to the entire comma-delimited clause it follows. See <u>Stracener v. U.S. Auto. Ass'n.</u>, 777 S.W.2d 378, 383 (Tex. 1989). The consent term in the present case therefore applies only when the insured affirmatively invokes limitation of liability -- which Iroquois did not do.

Moreover, this construction of the form (as it now exists) acknowledges that there is a fundamental distinction between merely *responding* to a suit that seeks damages and *initiating* a limitation action. The assured usually has no choice but to defend itself. But the decision to file an affirmative limitation action involves a number of choices (e.g., jurisdiction, statutory limitation amount, potential direct action, inference of fault in some non-U.S. jurisdictions, to name a few), all of which could significantly impact underwriters. See <u>Schoenbaum, Admiralty and Maritime Law</u> 330 *et seq.* (3d ed. 2001) and <u>Healy & Sweeney, The Law of Marine Collision</u> 380 *et seq.* (1998). The <u>Gulf Mississippi</u> case is not controlling here.

7

### d) Even if consent was required, Lloyd's is barred from demanding compliance because it has taken a position adverse to Iroquois

Lloyd's cannot require Iroquois to obtain its consent before defending against NYPA's claims because: (1) Lloyd's is colluding with Iroquois' party opponent to deprive Iroquois of coverage; and (2) Lloyd's claims it does not have any obligation to provide coverage.

After Lloyd's received Iroquois' claim, it "instantly" (in the words of the Lloyd's adjuster, Iroquois R. 56.1 ex. 1, pp. 35-36) referred the claim to outside counsel for a coverage opinion. Id. ¶ 59. Lloyd's refused to provide the coverage opinion to Iroquois, but *did* provide it to Horizon -- even though it was Iroquois, not Horizon, seeking coverage. See id. ¶¶ 59-61. An email produced by Lloyd's indicates that, as of April 8, 2005, Lloyd's coverage attorney was "in contact with Horizon and *he tells me that they have no problem with his or our position*." Id. ex. 1, pp. 72-73, ex. 6 (emphasis added). Thus, Lloyd's simultaneously ignored Iroquois and collaborated with Horizon about how to handle (defeat) Iroquois' claim for coverage. It would be manifestly unjust to require Iroquois to share its litigation strategy with an insurer that is colluding with its litigation opponent, and it is thus totally impracticable to enforce any "consent" requirement. See, e.g., Kirby Co. v. Hartford Casualty Insurance Co., No. 3:02-CV-1616, 2004 U.S. Dist. LEXIS 11736, *27-28 (N.D. Tex. June 10, 2004) (additional insured was entitled to retain independent counsel because insurer had ignored the "apparent" conflict-of-interest between its adverse insureds).

Moreover, Lloyd's cannot demand consent while simultaneously maintaining that it owes no coverage to Iroquois. A provision requiring an insurer's consent for reimbursement of defense costs requires the insurer to grant consent *reasonably*, and a "consent" provision is thus "only a right to be notified of legal expenditures before they are undertaken." Coastal Iron Workers, Inc. v. Petty Ray Geophysical, 783 F.2d 577, 585, 1987 AMC 571 (5th Cir. 1986) (applying Texas law). When an insurer denies coverage under a policy it waives its right to demand compliance with its consent provisions. See id.; see also Stuyvesant Ins. Co. of N.Y. v. Nardelli, 286 F.2d 600,

8

602-03 (5th Cir. 1961); Marine Transit Corp. v. N.W. Fire & Marine Ins. Co., 2 F. Supp. 489, 492 (E.D.N.Y.), aff'd 67 F.2d 544 (2d Cir. 1933).

Lloyd's attempts to distinguish Stuyvesant on the ground that Iroquois never notified it of a claim. Lloyd's Opp. Br. at 16 n.8. This position disregards the abundant evidence showing that Lloyd's specifically knew that Iroquois was demanding coverage. See Iroquois R. 56.1, ¶¶ 55; Iroquois Supp. R. 56.1, ¶¶ G, L. Even if Lloyd's contentions were sound, Stuyvesant would still support Iroquois' case; its only reference to notification indicated that after the insured filed its complaint, the insurer "answered that its insurance agreement did not cover Nardelli." Stuyvesant, 286 F.2d at 602. If notice prior to this date occurred, it apparently was not important to the court's decision. The court's actual ruling was simply that "Stuyvesant waived its right to rely on the consent provision when it denied that its policy covered Nardelli." Id. at 603.

Lloyd's entered an answer denying that Iroquois was covered under the Hull Policy. Before that, Lloyd's chose to ignore Iroquois' claim and to collude with Iroquois' party opponent to deny Iroquois coverage. Having chosen its course, Lloyd's cannot now demand compliance with a "consent" provision that is fundamentally based on mutual cooperation.

## IV. STANDING

One of Lloyd's arguments is that Iroquois lacks standing because Liberty Mutual has provided Iroquois with a defense. Lloyd's Opp. Br., Pt. IV, at 19-20. This is meritless because Iroquois seeks to redress an injury-in-fact (liability to pay attorney's fees) that is traceable to the defendant (who has not paid the claim) and for which the Court can grant relief (with a judgment ordering payment). See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

## V. BAD FAITH

Lloyd's argues that there is no bad faith because it "issued a Reservation of Rights letter" (that it did not send to Iroquois) and sought a coverage opinion (that it refused to disclose). See Lloyd's Opp. Br. at 20. But Lloyd's misses the point: when Lloyd's received Iroquois' claim it immediately ("instantly") placed its interests ahead of its insured, Iroquois. Its only concern was

9

in finding a way to avoid coverage, as demonstrated by the fact that it never communicated with Iroquois, but only with Horizon -- whom it asserts has still not lodged a claim. Nevertheless, if any additional discovery is warranted on the bad faith issue (see id. at 20-21), the following issues need to be covered: (1) whether Lloyd's adjuster lied about the date that Lloyd's received notice of the Anchor Drag;[7] (2) what Lloyd's discussed with Horizon about Iroquois' claim; and, (3) what Lloyd's coverage counsel advised Lloyd's regarding Iroquois' claim.

## CONCLUSION

The Court should enter a declaratory and money judgment for Iroquois' incurred defense costs. Alternatively, the Court should grant declaratory relief, examine Iroquois' bills *in camera*,[8] and award Iroquois its fees and costs in prosecuting the instant action due to Lloyd's bad faith in attempting to avoid coverage.

Dated: New York, New York
September 16, 2005

By: [signature]

Respectfully submitted,
HEALY & BAILLIE, LLP

Richard V. Singleton (RS-9489)
John C. Koster (JK-4086)
David D. Jensen (DJ-2261)
Attorneys for Plaintiff
61 Broadway, 32nd Floor
New York, New York 10006-2834
(212) 943-3980

---

[7] Lloyd's admitted it had notice as of May 17, 2004, see Answer, Doc. No. 18, ¶ 60, then as of December 1, 2004, see Koster Aff., ex. 22 (Admissions), ¶ 25, and now says it never had notice.

[8] Lloyd's objection to Iroquois' attorney's fees, see Lloyd's Opp. Br. at 20-21, is appropriately handled by an *in camera* review of the bills in light of Lloyd's collusion with Horizon.

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK            )
                             : ss.:
COUNTY OF NEW YORK           )

Bonnie Pitera, being duly sworn, deposes and says that she is over the age of eighteen (18) years and is not a party to this action; that on the 16th day of September, 2005, she served the within **PLAINTIFF IROQUOIS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF IROQUOIS' MOTION FOR SUMMARY JUDGMENT** by hand upon the following persons at the last known address set forth after their names:

> DONOVAN PARRY McDERMOTT & RADZIK
> Attorneys for Defendant
>   Certain Underwriters at Lloyds
> Wall Street Plaza
> 88 Pine Street, 21st Floor
> New York, New York 10005-1801
> Attention: Edward C. Radzik, Esq.

_____
Bonnie Pitera

Sworn to before me this the
16th day of September, 2005

_____
Notary Public

ELAINE BONOWITZ
Notary Public, State of New York
No. 43-4893320
Qualified in Richmond County
Certificate Filed in New York County
Commission Expires May 11, 20___

284170.4

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK         )
                          : ss.:
COUNTY OF NEW YORK        )

      Bonnie Pitera, being duly sworn, deposes and says that she is over the age of eighteen (18) years and is not a party to this action; that on the 16th day of September, 2005, she served the within **PLAINTIFF IROQUOIS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF IROQUOIS' MOTION FOR SUMMARY JUDGMENT** by Federal Express upon the following persons at the last known address set forth after their names:

    DECHERT, LLP
    Attorney for Defendant
      Aon Risk Services of Texas, Inc.
    30 Rockefeller Plaza
    New York, New York 10112-2200
    Attention: Rodney M. Zerbe, Esq.

    NOURSE & BOWLES
    Attorneys for Defendant
      Associated Electric & Gas Insurance Services Ltd.,
      Hamilton, Bermuda (AEGIS)
    One Exchange Plaza
    55 Broadway, 30th Floor
    New York, New York 10006-3030
    Attention: John P. Vayda, Esq.

    KENNEDY LILLIS SCHMIDT & ENGLISH
    Attorneys for Defendant
      American Home Assurance Co.
    75 Maiden Lane - Suite 402
    New York, New York 10038-4816
    Attention: Charles E. Schmidt, Esq.

                                              _____
                                                      Bonnie Pitera

Sworn to before me this the
16th day of September, 2005
_____
Notary Public

                ELAINE BONOWITZ
           Notary Public, State of New York
                  No. 43-4893320
            Qualified in Richmond County
          Certificate Filed in New York County
284170.4     Commission Expires May 11, 20___