```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
IROQUOIS GAS TRANSMISSION SYSTEM         :
L.P.,                                    :
                                         :
                 Plaintiff,              :
                                         :    05 Civ. 2149 (JSR)
                  -v-                    :
                                         :    MEMORANDUM ORDER
ASSOCIATED ELECTRIC & GAS INSURANCE      :
SERVICES LTD., Hamilton, Bermuda;        :
CERTAIN UNDERWRITERS AT LLOYD'S; AON     :
RISK SERVICES OF TEXAS, INC.; and        :
AMERICAN HOME ASSURANCE CO.,             :
                                         :
                 Defendants.             :
---------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

By Order dated July 22, 2005, the Court stayed this matter in its entirety pending the conclusion of an arbitration between plaintiff Iroquois Gas Transmission System L.P. ("Iroquois") and defendant Associated Electric & Gas Insurance Services Ltd., with one exception: Iroquois and co-defendant Certain Underwriters at Lloyd's ("Lloyd's") were each given leave to bring cross-motions for summary judgment on the issue of whether Lloyd's was entitled to deny insurance coverage because of the failure of Iroquois and its general contractor Horizon Offshore Contractors, Inc. ("Horizon") — which was the named insured on the Lloyd's policy here in issue — to provide timely notice to Lloyd's of the insurance claim here disputed. See Order, dated July 22, 2005; transcript, 7/13/05, at 8, 11.[1]

---

[1] After initially consenting to this motion practice, Lloyd's, by letter dated January 25, 2006, asked the Court to defer ruling on these motions because of alleged complications arising from a ruling in a related case by the United States

-1-

By way of brief background, Iroquois owns a natural gas pipeline running from the Canada-United States border to the Bronx, New York.  In April 2002, Iroquois decided to extend the pipeline from the Bronx to Northport, Long Island, and hired Horizon to act as general contractor for the project.  The parties entered into a contract that, among other things, required Horizon to maintain ten lines of insurance, to waive any right of subrogation against Iroquois, to name Iroquois as an additional insured under the policies, and to procure the policies subject to Iroquois's approval. It is alleged that on February 27, 2003, while Horizon's vessel was performing pipe-laying operations as part of the Iroquois project, one of its anchors dragged and damaged a power cable owned by The Power Authority of the State of New York ("NYPA"), leading to substantial losses.[2]

---

District Court for the Southern District of Texas (Sim Lake, Judge), holding that Iroquois is entitled to recover attorneys' fees from Thales Geosolutions ("Thales").  In the matter of Horizon Vessels, Inc., et al., H-03-3280 (S.D.Tex. Dec. 22, 2005).  However, while this ruling suggests that Iroquois might ultimately be able to recover its full loss from Thales, at this point this is no more than a contingent possibility. Furthermore, there is no risk of inconsistent rulings. Accordingly, Lloyd's application is denied.

[2] Following the incident, Horizon commenced the aforementioned proceeding in the United States District Court for the Southern District of Texas to limit its liability for the incident.  Iroquois filed a claim against Horizon in that proceeding for indemnity in the event it was required to pay damages to any other entity.  On July 21, 2004, NYPA, Factory Mutual Insurance Company, and the Long Island Power Authority asserted cross-claims against Iroquois, seeking over $18 million in damages.  As of June 30, 2005, Iroquois had incurred $975,064.46 in attorneys' fees in connection with that

After the incident, Horizon's insurance broker, co-defendant Aon Risk Services of Texas, Inc. ("Aon"), notified most of Horizon's applicable insurers of the incident, but failed to notify Lloyd's, the issuer of the policy here in issue. Nonetheless, on July 17, 2003, Aon advised Horizon and Iroquois that it had notified all appropriate insurers. Iroquois separately sent its own notices to most of Horizon's insurers, but likewise failed to notify Lloyd's. As a result, Lloyd's was not notified of the incident, even constructively, until, at earliest, May 17, 2004, when Aon, at the request of another of Horizon's insurers, transmitted a notice of loss to JLT Risk Solutions, Inc. ("JLT") in London for transmission to Lloyd's.[3]

The policy here in issue provides that "[i]n the event of any accident or occurrence which could give rise to a claim under this Policy, a prompt notice thereof shall be given to the Underwriters." Def. 56.1 St. ¶ 6. Under any reasonable interpretation, a notice that occurred, even on Iroquois's interpretation, more than a year after the substantial accident on which Iroquois's claim is based, was unreasonably late. The question then is whether such tardiness,

---

proceeding.

[3] John Hodgett, the claims adjuster for Wellington, the lead underwriter of the Lloyd's policy, testified that he did not actually receive the notice until December 1, 2004. See Def. Resp. to Pl. 56.1 St. ¶ 55. However, on September 20, 2004, JLT advised Aon that it had "received a request from leading Underwriters for an update on this loss," suggesting, Iroquois argues, that Lloyd's likely had notice by that date. See Def. Resp. to Pl. 56.1 St. ¶ 58. It is unnecessary to resolve this dispute on these motions.

per se, warrants denial of coverage or whether denial is permitted only if the insurer can show prejudice from the delay.  This, in turn, depends on whether the Policy is governed by the law of New York (as Lloyd's asserts) or the law of Texas (as Iroquois asserts).

Both parties agree, of course, that in interpreting a marine insurance policy, such as the one at issue here, federal courts, sitting in admiralty, apply state law absent a conflicting federal statute or rule (neither of which is asserted here).  See Commercial Union Ins. Co. v. Flagship Marine Servs., 190 F.3d 26, 30 (2d Cir. 1999), citing Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 319-21 (1955).  To determine which state law to apply (unless the contract otherwise specifies[4]), a court must "ascertain[] and valu[e] points of contact between the transaction [giving rise to the cause of action] and the states or governments whose competing laws are involved," control.  See Advani Enters. v. Underwriters at Lloyds, 140 F.3d 157, 162 (2d Cir. 1998), quoting Lauritzen v. Larsen, 345 U.S. 571, 582 (1953).  Specifically, in interpreting an insurance contract, the Court should consider "(1) any choice-of-law

---

[4] Lloyd's argues that the underlying construction contract, which contains a New York choice of law and New York forum selection clause, controls the choice of law here, because the insurance policy does not name Iroquois and hence Iroquois's right to coverage, if any, derives from the fact that the construction contract requires Horizon to name Iroquois as an additional assured on any policy.  This, however, is unpersuasive, because the issue pending before the Court concerns the construction of the late notice provision of the insurance contract, rather than a question of to whom it applies.  Indeed, were the Court to accept Lloyd's argument, insurers would be involuntarily subjected to the laws of any state in which the primary insured and additional insured happen to contract — a choice over which the insurer has no control.

provision contained in the contract; (2) the place where the contract was negotiated, issued, and signed; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties." Advani Enters., 140 F.3d at 162.

Applying these factors, it is clear that Texas has more significant contacts with the insurance contract than New York. As to the first factor, the choice of law provision in the insurance contract requires only that U.S. law apply, and therefore favors neither Texas nor New York. As to the second factor, the policy, which includes notices required by the Texas Department of Insurance, was procured through Horizon's Texas insurance agent and delivered to Horizon in Texas, with nothing of relevance occurring in New York (Lloyd's acted in London). As to the third factor, the place of performance was "worldwide," and therefore is neutral. As to the fourth factor, the incident occurred in New York but Horizon's fleet is based in Texas and the policy covers the entire fleet. As to the fifth factor, Horizon is located and has its principal place of business in Texas, while Lloyd's is a consortium of insurers located throughout the world. Thus, on balance, it is plain that Texas has more significant contacts with the contract than New York.

Under Texas law (in contrast with New York law), Lloyd's must show prejudice from the late notice to deny coverage. See, e.g., Hernandez v. Gulf Group Lloyds, 875 S.W.2d 691, 693 (Tex. 1994); Lennar Corp. v. Great Am. Ins. Co., 2006 Tex. App. LEXIS 1457 at *93 & n.4 (Tex. App. 2006); Comsys Info. Tech. Servs. v. Twin City Fire

Ins. Co., 130 S.W.3d 181, 191 (Tex. App. 2003); accord, e.g., Ridglea Estate Condo. Ass'n v. Lexington Ins. Co., 2005 U.S. App. LEXIS 16724 (5th Cir. 2005); Hanson Prod. Co. v. Americas Ins. Co., 108 F.3d 627, 630 (5th Cir. 1997). Whether such prejudice can be shown remains a genuinely disputed issue of fact that must be resolved by a jury.

Accordingly, the parties' respective motions for summary judgment are hereby denied (as is Iroquois' motion for attorneys' fees in connection therewith). Because the stay otherwise remains in place, the Clerk is directed to transfer this case to the Court's suspense docket. All parties are reminded to submit a letter to the Court every three months regarding the status of the arbitration, the next such letter being due on or about July 5, 2006.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       April 5, 2006

-6-